UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
STATE FARM MUTUAL AUTOMOBILE INSURANCE
COMPANY AND STATE FARM FIRE AND CASUALTY
COMPANY

        Docket No.: 21-CV-05523
            (MKB)(PK)

               Plaintiffs,

            -against-

METRO PAIN SPECIALISTS P.C., et al,

               Defendants.

------------------------------------------------------------------------X


**DEFENDANTS REUVEN ALON (A/K/A ROB ALON), COLUMBUS IMAGING
CENTER LLC, MEDAID RADIOLOGY LLC, YAN MOSHE (A/K/A YAN LEVIEV),
HACKENSACK SPECIALTY ASC LLC (F/K/A DYNAMIC SURGERY CENTER LLC),
AND INTEGRATED SPECIALTY ASC LLC (F/K/A HEALTHPLUS SURGERY
CENTER LLC)'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION AND STAY**


**THE RUSSELL FRIEDMAN LAW GROUP, LLP**
400 Garden City Plaza, Suite 500
Garden City, New York 11530
Tel: 516.355.9696

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ i

PRELIMINARY STATEMENT .................................................................................................. 1

STATEMENT OF RELEVANT FACTS ..................................................................................... 2

ARGUMENT ................................................................................................................................ 6

    I.    Legal Standard .............................................................................................................. 6

    II.   Plaintiffs Cannot Establish Irreparable Harm ............................................................... 9

    III.  Plaintiffs' Arguments Fail With Regard to Either Avenue Through
          Which They Could Obtain an Injunction ..................................................................... 13

        (a)   Plaintiffs Have Not Established a Likelihood of Success on the
              Merits or Sufficiently Serious Questions Going to the Merits to
              Make Them a Fair Ground for Litigation .......................................................... 13

        (b)   The Balance of Hardships Tips Decidedly in Defendants' Favor ..................... 16

    IV.  The Relief Sought By Plaintiffs Is Precluded By The Anti-Injunction Act ............... 19

    V.   If This Court Grants Plaintiffs' Motion, Plaintiffs Should Be Required to
          Post Bond ..................................................................................................................... 21

CONCLUSION ........................................................................................................................... 22

# TABLE OF AUTHORITIES

## Cases

*Allstate Ins. Co. v. Avetisyan,*
  No. 17-cv-04275(LDH)(RML), 2018 WL 6344249, at *2 (E.D.N.Y. Oct. 30, 2018)............... 9
*Allstate Ins. Co. v. Elzanaty,*
  929 F. Supp. 2d 199, 217 (E.D.N.Y. 2013).................................................................................. 6
*Allstate Ins. Co. v. Harvey Family Chiropractic,*
  677 F. App'x 716, 718 (2d Cir. 2017) .............................................................................. 10, 11
*Allstate Insurance Co. v. Baturov,*
  No. 21-cv-2967(BMC) (EDNY June 14, 2021) ...................................................................... 13
*Allstate Property and Casualty Insurance Co. v. Northeast Anesthesia and*
  *Pain Management,*
  41 N.Y.S.3d 448 (1st Dept. 2016)..................................................................................... 17, 18
*Amalgamated Clothing Workers of Am. v. Richman Bros.,*
  348 U.S. 511, 514 [1955] ...................................................................................................... 20
*Atl. Coast Line R. Co. v. Bhd. of Locomotive Engineers,*
  398 U.S. 281, 286 [1970] ...................................................................................................... 20
*Bascom Food Products Corp. v. Reese Finer Foods, Inc.,*
  715 F. Supp. 616, 624 n.14 (D.N.J. 1989) ............................................................................... 7
*Brenntag Int'l Chem., Inc. v. Bank of India,*
  175 F.3d 245, 249 (2d Cir. 1999)............................................................................................. 9
*Brijmohan v. State Farm Ins. Co.,*
  92 N.Y.2d 821, 823, 699 N.E.2d 414 (1998) ......................................................................... 17
*Chandler v. Graham,*
  2016 WL 4411407, at *2 (N.D.N.Y. Aug. 19, 2016)................................................................ 7
*Countrywide Ins. Co. v. Sawh,*
  272 A.D.2d 245 (2000) ......................................................................................................... 17
*GEICO v. Big Apple Med. Equip.,* Inc,
  No. 20-cv-5786 (E.D.N.Y. Mar. 25, 2021) ...................................................................... 14, 15
*GEICO v. Wallegood, Inc.,*
  No. 21-cv-1986 (E.D.N.Y. Jul. 16, 2021) ........................................................................ 14, 15
*Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.,*
  598 F.3d 30, 35 (2d Cir. 2010)............................................................................................... 13
*Gov't Emps. Ins. Co. v. Cean,*
  19-cv-2363, 2019 WL 6253804 (E.D.N.Y. Nov. 22, 2019).................................................... 15
*Gov't Emps. Ins. Co. v. Zaitsev,*
  No. 20-cv-3495, 2021 WL 3173171, at *2 (E.D.N.Y. July 27, 2011) .................................... 15
*Gov't Employees Ins. Co. v. Strut,*
  No. 19-CV-728V, 2019 WL 6338023, at *9 (W.D.N.Y. Nov. 26, 2019),
  *report and recommendation adopted,*
  No. 19-CV-728 (JLS), 2020 WL 1820500 (W.D.N.Y. Apr. 10, 2020) ............................ 15, 21
*Grand River Enters. Six Nations v. Pryor,*
  2006 WL 1517603, at *6, (S.D.N.Y. June 1, 2006) ................................................................. 6

*Green Party of New York State v. New York State Bd. of Elections*,
  389 F.3d 411, 418 (2d Cir.2004).................................................................... 6, 16

*Gulf Oil Corp. v. Dep't of Energy*,
  514 F.Supp. 1019, 1026 (D.D.C. 1981) ...................................................... 10, 12

*Harmonic Physical Therapy, P.C. v. Praetorian Ins. Co.*,
  47 Misc. 3d 137(A) (App. Term 1st Dept. 2015)........................................ 17, 18

*Hi–Tech Pharmacal Co., Inc. v. U.S. Food & Drug Admin.*,
  587 F.Supp.2d 1, 11 (D.D.C. 2008) ................................................................. 10

*Hosp. for Joint Diseases v. Hertz Corp*,
  22 AD3d 724, 725 (2nd Dept. 2005)............................................................... 16

*Interlink Int'l Fin. Servs., Inc. v. Block*,
  145 F. Supp. 2d 312, 315 (S.D.N.Y. 2001) .................................................... 21

*Jayaraj v. Scappini*,
  66 F.3d 36, 39 (2d Cir. 1995) ......................................................................... 10

*Mazurek v. Armstrong*,
  520 U.S. 968, 972, 117 S. Ct. 1865, 1867, 138 L. Ed. 2d 162 (1997) ............ 7

*McMahon v. Johnson*,
  2014 WL 6886096, at *1 (E.D.N.Y. Dec. 8, 2014)..................................... 6, 16

*MLE Realty Assoc. v. Handler*,
  192 F.3d 259, 261 (2d Cir. 1999)................................................................... 20

*Moore v. Consol. Edison Co. of New York*,
  409 F.3d 506, 510 (2d Cir. 2005) ..................................................................... 9

*Nyack Hospital v. General Motors Acceptance Corp.*,
  8 N.Y.3d 294, 832 N.Y.S.2d 880 (2007) ................................................... 17, 18

*Perkins v. Schriro*,
  2014 WL 2003014, at *2 (E.D.N.Y. May 14, 2014)..................................... 6, 13

*Presbyterian Hospital in the City of New York v. Liberty Mutual Ins. Co.*,
  216 A.d.2d 448 (2nd Dept. 1995)................................................................... 16

*Retirement Sys. Of Ala. v. J.P. Morgan Chase & Co.*,
  386 F.3d 419, 429 (2d Cir. 2004).................................................................... 20

*Rodriguez DeBuono*,
  175 F.3d 227, 234 (2d Cir.1999)...................................................................... 9

*Societe Comptoir De L'Industrie Cotonniere, Etablissements Boussac v. Alexander's
  Dep't Stores, Inc.*,
  190 F. Supp. 594, 601–02 (S.D.N.Y. 1961),
  <u>affd</u>, 299 F.2d 33 (2d Cir. 1962) ................................................................ 7, 13

*SR Intern. Bus. Ins. Co. Ltd. v. World Trade Ctr. Properties, LLC*,
  445 F. Supp. 2d 356 at 360............................................................................ 20, 21

*State Farm Mutual Automobile Insurance Company v. Parisien*,
  352 F. Supp. 3d 215, 234 (E.D.N.Y. 2018)................................................... 8, 15

*T-Mobile Ne. LLC v. Water Auth. of W. Nassau Cty.*,
  249 F. Supp. 3d 680, 684 (E.D.N.Y. 2017)...................................................... 7

*Tough Traveler, Ltd. v. Outbound Prods.*,
  60 F.3d 964, 968 (2d Cir.1995)...................................................................... 10

*Town of Riverhead v. CSC Acquisition-NY, Inc. (Cablevision)*,
  618 F. Supp. 2d 256, 262 (E.D.N.Y. 2009)..................................................... 6

ii

*Toxco, Inc. v. Chu,*
   724 F.Supp.2d 16, 30 (D.D.C. 2010) ............................................................ 10, 12
*Tucker Anthony Realty Corp. v. Schlesinger,*
   888 F.2d 969, 975 (2d Cir.1989) ......................................................................... 9
*UBS Fin. Servs., Inc. v. W. Virginia Univ. Hosps., Inc.,*
   660 F.3d 643, 648 (2d Cir. 2011) ......................................................................... 7
*Wisdom Imp. Sales Co. v. Labatt Brewing Co.,*
   339 F.3d 101, 113 (2d Cir. 2003) ......................................................................... 9

**Statutes**

11 N.Y.C.R.R. § 65-3.15 ........................................................................................ 17
11 N.Y.C.R.R. § 65-4.4 .................................................................................... 11, 12
11 N.Y.C.R.R. § 65-4.5 ........................................................................................ 12
18 U.S.C. § 1962 (c) ........................................................................................... 2, 7
18 U.S.C. § 1962 (d) ........................................................................................... 2, 7
Federal Anti-Injunction Act ("AIA"), 28 U.S.C. § 2283 .................................... 19
F.R.C.P. § 65(c) ................................................................................................... 21
N.J.A.C. 8:43A ..................................................................................................... 19

## PRELIMINARY STATEMENT

Defendants Reuven Alon (a/k/a Rob Alon), Columbus Imaging Center LLC, and Medaid Radiology LLC ("Alon Defendants") and Yan Moshe (a/k/a Yan Leviev), Hackensack Specialty ASC LLC (f/k/a Dynamic Surgery Center LLC), and Integrated Specialty ASC LLC (f/k/a HealthPlus Surgery Center LLC) ("Moshe Defendants," and collectively "Opposing Defendants") submit this memorandum in opposition to Plaintiffs' Motion and Memorandum of Law in Support of Plaintiffs' Motion for Preliminary Injunction and Stay ("Br.") with regard to Opposing Defendants' collection proceedings. Opposing Defendants are owners of licensed medical facilities. Through these entities, Opposing Defendants lawfully provided health care services to insureds injured in motor vehicle accidents who are covered by policies issued by Plaintiffs State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company (collectively "State Farm" or "Plaintiffs"). Despite Plaintiffs' assertions that this case involves the use of "state-court litigation and arbitrations…to further a *massive* fraud against [State Farm]", State Farm's papers supporting its motion do not support such allegations as against the Opposing Defendants. Specifically, with regard to the Alon Defendants, State Farm seeks to stay merely one (1) pending arbitration and three (3) pending New York State court proceedings, and with regard to the Moshe Defendants, State Farm seeks to stay only six (6) pending arbitrations and ten (10) pending New York State court proceedings resulting from services rendered during the approximately five year period during which the alleged scheme operated. Br. at 1 (emphasis added). Even considering the Opposing Defendants <u>combined</u>, their collections actions represent just over a mere <u>one percent</u> (1%) of those which State Farm seeks to enjoin. Instead, the majority of the collections proceedings involve Metro Pain and Tri-Borough NY.

The applicability of State Farm's broad assertions of fraud with regard to the Opposing Defendants is further belied by the First Amended Complaint ("FAC"), wherein State Farm sets

forth a detailed narrative of the inner workings of Dr. Shapiro's Metro Pain Specialists P.C. and Tri-Borough NY Medical Practice P.C. ("Shapiro Defendants").  Conspicuously absent from Plaintiffs' Complaint is similar detail as to the basis of Plaintiffs' allegations as against the Opposing Defendants.  Specifically, the only nexus between the Opposing Defendants and the purported scheme proffered by Plaintiffs are a recitation of legal and legitimate business relationships from which State Farm makes wholly unsupported and conclusory accusations in an attempt to connect the Opposing Defendants to the purported scheme.  Accordingly, Plaintiffs do not and cannot meet the heavy burden required to obtain the relief sought and the motion should be denied in its entirety.

As set forth below, State Farm has not established that it will suffer irreparable harm, nor that there is a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation, nor does a balance of hardships tip decidedly in State Farm's favor.  Accordingly, State Farm's motion must be denied with regard to Moving Defendants.

## STATEMENT OF RELEVANT FACTS

This action purports to be a civil RICO action (18 U.S.C 1962(c) and (d)), with additional causes of action for common law fraud, aiding and abetting fraud, and unjust enrichment. Plaintiffs are seeking damages totaling more than $15.4 million.  Additionally, Plaintiffs seek a declaratory judgment absolving their obligations to pay all defendants of all charges for examinations, treatment, MRIs, Supplies, tests, and pain management and orthopedic procedure and related services that have not been paid to date and through the pendency of this litigation.

**Moshe Entities**

Yan Moshe ("Moshe") was the majority owner of Defendant Hackensack Specialty ASC LLC ("Hackensack") f/k/a Dynamic Surgery ("Dynamic") and remains the majority owner of Integrated Specialty ASC LLC ("Integrated") f/k/a HealthPlus Surgery ("HealthPlus").  Moshe Dec., ¶ 1.  In the regular course of business, Hackensack, Dynamic, Integrated, and HealthPlus do and have provided medically necessary healthcare services to State Farm Insured.  Moshe Dec., ¶ 4.

On February 1, 2014, Dr. Shapiro took over as the medical director and director of anesthesia services at Excel Surgery Center, LLC ("Excel"), pursuant to a written agreement.  Moshe Dec., ¶ 5.  Dr. Shapiro was an active medical director and anesthesia provider at Excel.  *Id*.  In January 2017, a new entity, Dynamic, began to operate at that location with a new business model.  Moshe Dec., ¶ 6. Dynamic was a licensed ambulatory surgery center ("ASC"), accredited by the Accreditation Association for Ambulatory Health Care.   Moshe Dec., ¶ 6. In June 2019, Dynamic's name was changed to Hackensack Specialty ASC LLC, through which medically necessary healthcare services were provided until the entity was sold in March 2021.  Moshe Dec., ¶ 7.

In 2016, Dr. Shapiro began to serve as the medical director of HealthPlus pursuant to a written employment agreement.  Moshe Dec., ¶ 8.  At that time, Dr. Shapiro's time was split between Dynamic and HealthPlus, and his compensation was limited to the work he performed as the active medical director of the different ambulatory surgery centers.  *Id*.

State Farm states that "[b]etween August 2013 and January 2020, "NJDOH cited Excel Surgery, Dynamic Surgery, HealthPlus Surgery, and Hudson Regional on multiple occasions for regulatory and health and safety violations, the most egregious of which occurred in September

2018."  In September 2018, HealthPlus was cited with several violations including (i) failure to develop written job descriptions and ensure that personnel were assigned duties based upon their education, training, and competencies, and in accordance with their job descriptions, as required by N.J.A.C. 8:43A-3.5(a); (ii) failure to ensure the development and implementation of policies regarding the administration, control, and storage of medications, including the preparation and use of parenteral medications, as required by N.J.A.C. 8:43A-9.3(b)(4) and N.J.A.C. 8:43A-9.5(b); (iii) failure to develop and implement policies and procedures regarding the control of controlled dangerous substances, as required by N.J.A.C. 8:43A-9.3(b)(7); and (iv) failure to develop and implement policies and procedures regarding infection prevention and control, as required by N.J.A.C. 8:43A-12.6(a)(16)(ii), N.J.A.C. 8:43A-14.1, N.J.A.C. 8:43A-14.2, and N.J.A.C. 8:43A-14.3.  HealthPlus temporarily closed during the implementation of a plan of correction, and was permitted to reopen thereafter.  Moshe Dec., ¶ 10.

Although State Farm states that "[t]he failure of Dynamic Surgery and HealthPlus Surgery to hire a qualified medical director to perform specific duties enumerated under New Jersey law, and to instead retain nominal, disengaged medical directors, including Shapiro, constitute licensing violations that rendered them ineligible to obtain reimbursement," it is important to note that NJDOH did not issue any such violation for failure to hire a qualified medical director.  Moshe Dec., ¶ 12.

CitiMedical I, PLLC is a medical practice solely owned by Regina Moshe, M.D. ("Dr. Moshe"), Moshe's sister.  Moshe Dec., ¶ 17.  Despite State Farm's unsupported allegations to the contrary, Moshe does not own or control, and never has owned or controlled, CitiMedical I, PLLC or any other practice owned by Dr. Moshe.  Moshe Dec., ¶ 18.

**Alon Entities**

Rob Alon provides advertising and marketing services through Beshert Corp. Columbus Imaging Center L.L.C. was a licensed Ambulatory Care Facility, which provided medically necessary imaging services from 2011 until 2018. In June 2018, Alon formed Medaid Radiology LLC. In August 2018, the name of Columbus Imaging Center, LLC was changed to Medaid Radiology, LLC. Medaid Radiology continues to provide medically necessary imaging services, in accordance with all laws and regulations, as ordered by licensed medical providers.

**First Amended Complaint**

Plaintiffs' FAC asserts they are entitled to relief based on their generally plead allegations that "[t]he bills and supporting documentation Defendants submitted or caused to be submitted to State Farm Mutual and State Farm Fire were fraudulent because the services were ineligible for reimbursement and/or medically unnecessary." Specifically, State Farm alleges that patients were subjected to a predetermined treatment protocol, which with regard to the Opposing Defendants, included purportedly unnecessary MRIs provided by Alon or CitiMedical I (which as discussed *supra*, is not owned by Moshe) and procedures performed by Metro Pain physicians at Dynamic Surgery or HealthPlus.

With regard to the Opposing Defendants, Plaintiffs' memorandum contains nothing more than unsupported conclusory allegations involving lawful and proper business and/or personal relationships in an attempt to cast Opposing Defendants in a negative light, which, as detailed below, is legally and factually insufficient to warrant the relief sought.

# ARGUMENT

For the reasons set forth below, Plaintiffs' motion to stay all pending collections proceedings, including arbitrations and New York State court litigations, and to enjoin defendants from filing new collections proceedings should be denied.

## I.    Legal Standard

Plaintiffs seek to stay all pending no-fault insurance collection arbitrations, and to enjoin Defendants from commencing any further no-fault insurance collection arbitrations or litigation against State Farm pending the resolution of State Farm's claims in this litigation "pursuant to Federal Rules of Civil Procedure 13(a) and 65". Notice of Motion, at 1. To prevail on such a motion, the Plaintiffs must establish that they will suffer irreparable harm absent the injunction and either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor." *McMahon v. Johnson*, 2014 WL 6886096, at *1 (E.D.N.Y. Dec. 8, 2014) citing *Green Party of New York State v. New York State Bd. of Elections*, 389 F.3d 411, 418 (2d Cir.2004). See also *Perkins v. Schriro*, 2014 WL 2003014, at *2 (E.D.N.Y. May 14, 2014)(the failure to present a factual basis for likelihood of success on the merits warrants denial of application). Courts have considered the dual request for a stay and injunction of future proceedings in tandem, utilizing the same standard. *Allstate Ins. Co. v. Elzanaty*, 929 F. Supp. 2d 199, 217 (E.D.N.Y. 2013).

Such relief is "one of the most drastic tools in the arsenal of judicial remedies." *Town of Riverhead v. CSC Acquisition-NY, Inc. (Cablevision)*, 618 F. Supp. 2d 256, 262 (E.D.N.Y. 2009) (quoting *Grand River Enters. Six Nations v. Pryor*, 2006 WL 1517603, at *6, (S.D.N.Y. June 1, 2006). Within the context of a motion to stay a FINRA arbitration, the Second Circuit has held

JS/D242456/FL3171

"preliminary injunction is an extraordinary remedy never awarded as of right." *UBS Fin. Servs., Inc. v. W. Virginia Univ. Hosps., Inc.*, 660 F.3d 643, 648 (2d Cir. 2011). However, in the context of litigations alleging fraud and causes of action pursuant to 18 U.S.C.§ 1962 (c)-(d), insurers such as Plaintiffs in this action, have come to expect the granting of such remedies as a matter of course – arguing they "are entitled" to such relief even when it is not warranted by the facts set forth in the record - glossing over and disregarding the key determinative factors that made such remedies viable in the instances where they were granted. Br. at 9.

The Supreme Court has explained that the burden on a movant seeking a preliminary injunction is <u>even higher</u> than a motion for summary judgment. *Mazurek v. Armstrong*, 520 U.S. 968, 972, 117 S. Ct. 1865, 1867, 138 L. Ed. 2d 162 (1997) ("[at] issue here is not even a defendant's motion for summary judgment, but a plaintiff's motion for preliminary injunctive relief, as to which the requirement for substantial proof is much higher."). A party seeking such drastic relief must make a "clear showing" of such entitlement. *Id*.

Further, courts in the Second Circuit have repeatedly held that as "support for a preliminary injunction <u>the court can consider only facts presented by affidavit or testimony and cannot consider facts provable under the modern liberal interpretation of the complaint but which have not been proved</u>." *Societe Comptoir De L'Industrie Cotonniere, Etablissements Boussac v. Alexander's Dep't Stores, Inc.*, 190 F. Supp. 594, 601–02 (S.D.N.Y. 1961), <u>affd</u>, 299 F.2d 33 (2d Cir. 1962); *see, e.g., T-Mobile Ne. LLC v. Water Auth. of W. Nassau Cty.*, 249 F. Supp. 3d 680, 684 (E.D.N.Y. 2017) (rejecting application where there was no evidence to support allegations)(emphasis added); *Chandler v. Graham*, 2016 WL 4411407, at *2 (N.D.N.Y. Aug. 19, 2016) (noting motion must be supported by admissible evidence); *accord Bascom Food Products Corp. v. Reese Finer Foods, Inc.*, 715 F. Supp. 616, 624 n.14 (D.N.J. 1989) ("It has always been the rule that the movant bears

the burden of persuasion to establish that the situation meets the standard for a preliminary injunction, and must offer proof beyond the unverified allegations of the pleadings").

State Farm argues that Courts in the Eastern District of New York "have recognized in circumstances similar to those here that irreparable harm would result absent an injunction". Br. at 10, citing *State Farm Mutual Automobile Insurance Company v. Parisien*, 352 F. Supp. 3d 215, 234 (E.D.N.Y. 2018).  However, in *Parisien*, the Court's conclusion that State Farm "adequately detailed a complicated scheme of alleged fraud activity" was based on State Farm's submission of detailed grids purporting to show the initial evaluations made of patients, the services and supplies rendered, and how those services and supplies were billed, the submission of copies of documents allegedly containing false statements by some of the Defendants, and the presentation of a sworn affidavit on behalf of a Defendant that contained apparently false information. Such supporting evidence has not been set forth in this litigation, specifically with regard to the Opposing Defendants.

Plaintiffs herein instead provide only spreadsheets of services provided to patients as a result of a prescription from a licensed physician.  For the "MRI Providers," this amounts to 208 bills over the course of the roughly five (5) years covered by the Complaint, or approximately 42 scans per year, split between essentially two providers ((1)Alon, through Columbus Imaging and then Medaid, and (2) CitiMedical) – an average of 21 scans per year.  For the "Metro Pain Operative Procedures performed at Moshe Surgery Center," Plaintiffs list 63 arthroscopy procedures (approximately 12/year), two (2) ablation procedures (approximately 0.4/year), and 170 injection procedures (approximately 34/year). Unlike *Parisien*, Plaintiffs fail "adequately detail" the purported scheme, pointing only to payments for legitimate services provided, - *i.e.*, as a medical director of multiple facilities (Dr. Shapiro), marketing (Alon), factoring receivables, and

familial relationships.  The absurdity of Plaintiffs' theory is apparent when one considers the amount of the purported "kickbacks" with the limited amount of services actually provided by Moving Defendants to Metro Pain patients. Accordingly, absent factual evidence supporting the relief sought with regard to Opposing Defendants, Plaintiffs' motion should be denied.

## II.    Plaintiffs Cannot Establish Irreparable Harm

It is well settled that showing irreparable harm is "the single most important prerequisite for the issuance of a preliminary injunction." *Rodriguez v. DeBuono*, 175 F.3d 227, 234 (2d Cir.1999).  "To establish irreparable harm, plaintiffs must demonstrate an injury that is neither remote nor speculative, but actual and imminent." *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir.1989) (internal quotations omitted). *See also Brenntag Int'l Chem., Inc. v. Bank of India*, 175 F.3d 245, 249 (2d Cir. 1999) (explaining that irreparable harm exists "where, but for the grant of equitable relief, there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied").  This element is so critical to the Court's inquiry that the Court need not reach any of the other requirements necessary for the grant of injunctive relief where irreparable harm has not been demonstrated *Allstate Ins. Co. v. Avetisyan*, No. 17-cv-04275(LDH)(RML), 2018 WL 6344249, at *2 (E.D.N.Y. Oct. 30, 2018).

Where the damages sought in an underlying lawsuit are exclusively monetary in nature, it has been frequently noted that irreparable harm does not exist. *Moore v. Consol. Edison Co. of New York*, 409 F.3d 506, 510 (2d Cir. 2005). *See also Wisdom Imp. Sales Co. v. Labatt Brewing Co.*, 339 F.3d 101, 113 (2d Cir. 2003)(irreparable harm is "certain and imminent harm for which a monetary award does not adequately compensate").  For economic injury to be irreparable, a plaintiff must show that it will suffer harm that is "'more than simply irretrievable; it must also be

serious in terms of its effect on the plaintiff.'" *Toxco, Inc. v. Chu,* 724 F.Supp.2d 16, 30 (D.D.C. 2010) (*quoting Hi–Tech Pharmacal Co., Inc. v. U.S. Food & Drug Admin*., 587 F.Supp.2d 1, 11 (D.D.C. 2008)). "Purely economic harm is not considered sufficiently grave under this standard unless it will cause extreme hardship to the business, or even threaten destruction of the business." *Id.* (*quoting Gulf Oil Corp. v. Dep't of Energy*, 514 F. Supp. 1019, 1026 (D.D.C. 1981). Irreparable harm is also predicated on urgency.  When a party knows the potential injury but fails "to act sooner, the sense of urgency that ordinarily accompanies a motion for preliminary relief is undercut and suggests that there is, in fact, no irreparable injury." *Tough Traveler, Ltd. v. Outbound Prods.,* 60 F.3d 964, 968 (2d Cir.1995).

In *Allstate Insurance Co. v. Harvey Family Chiropractic*, 677 Fed. Appx. 716 (2d Cir. 2017), a RICO case against a no-fault healthcare provider, wherein the carrier, Allstate Insurance Company, sought an injunction against pending and future state court litigations and arbitrations in New York's No-Fault System, the Second Circuit unambiguously held that the necessity to go forward with underlying state claims during the pendency of the federal action was not by any means "irreparable harm" so as to justify that the state proceedings be enjoined. Specifically, the Court held:

> There is no evidence in the record that, upon the conclusion of this matter, the plaintiffs cannot be fully compensated through money damages for the alleged harm suffered from the defendants' fraudulent claims. **Even if the defendants obtain other No-Fault reimbursements in state court and arbitrations while this case is pending, the plaintiffs are free to recover those payments should they prevail on their RICO claim. Moreover, the "mere injuries ... in terms of money, time and energy necessarily expended" absent a stay of ongoing state court and arbitration proceedings "are not enough" to establish irreparable harm.** *Jayaraj v. Scappini*, 66 F.3d 36, 39 (2d Cir. 1995) (internal quotation marks omitted). Nor is the declaratory relief sought by the plaintiffs threatened by the other proceedings.

*Allstate Ins. Co. v. Harvey Family Chiropractic*, 677 F. App'x 716, 718 (2d Cir. 2017) (emphasis added).

State Farm argues that they will be irreparably harmed because "the State Farm Companies will be saddled with expensive, time-consuming, piecemeal litigation of claims that may lead to inconsistent results" and that "if the arbitrations and State-Court litigation are permitted to proceed, they will be proceeding on an incomplete factual record that risks denying the State Farm Companies their day in court". Br., 9.  To address this perceived issue, State Farm proposes instead that the defendants "be saddled with expensive, time consuming" treatment of State Farm insured, and that defendants do so knowing full well that the patients' respective policies will be exhausted and, therefore, deprive defendants of any compensation of same.

While it is true that the American Arbitration Association (AAA) administers a program in New York Statethat is designed to provide consumers, health service providers, and insurance carriers with a forum for the *speedy* resolution of disputes concerning claims for benefits under No-Fault automobile insurance, the program also affords more robust options for parties presenting with more complicated No-Fault disputes. See, AAA, NY No-Fault Frequently Asked Questions, available at http://go.adr.org/rs/294-SFS-516/images/AAA_NY_NoFault_FAQs.pdf.

Specifically, 11 N.Y.C.R.R. § 65-4.4, which establishes the Insurance Department Arbitration forum procedures, provides for the following:

(a) <u>Consolidation</u>—If the claims involved arose out of the same accident and involve common issues of fact;

(b) <u>Evidence</u>—The arbitrator or an attorney of record in the arbitration may subpoena witnesses or documents upon the arbitrator's own initiative or upon the request of any party, when the issues to be resolved require such witnesses or documents.  See, 11

NYCRR 65-4.4(e) and 11 NYCRR 65-4.5(o)(2).

(c) <u>Extended Hearing Slots</u>—Each hearing is slotted for fifteen (15) minutes unless the parties request additional time. For example, parties may require additional time to allow testimony by witnesses.  AAA, NY No-Fault Frequently Asked Questions, available at http://go.adr.org/rs/294-SFS-516/images/AAA_NY_NoFault_FAQs.pdf.

Based on the foregoing, it is clear that the nature of the No-Fault AAA forum does not render it "unduly difficult at best" for a party to present evidence to defend its position.  Br., 9. Rather, Plaintiffs need only avail themselves of these procedures afforded in the AAA forum. Plaintiffs, therefore, will not suffer irreparable harm absent the requested relief, nor will they suffer or even allege extreme hardship or possible destruction of the business as required by the applicable caselaw.  *Toxco,* F.Supp.2d at 30 (*quoting Gulf Oil Corp.* 514 F. Supp. at 1026).

Instead, it is Opposing Defendants who will suffer severe injury if they are not able to continue with their efforts to obtain payment on bills for services that have already been outstanding for a significant period of time.  Medical providers rely on the timely payment of claims to conduct their business*, i.e.*, to cover such expenses as payroll, insurance, rent, etc.  A cessation of such payments directly impedes a providers' ability to continue to run a practice. Further, and more critical to this analysis, as discussed *infra*, a prolonged delay in obtaining payment, such as a delay resulting from a stay of all collections proceedings for claims that are the subject of this litigation, subjects Defendants to the added risk of policy exhaustion.  If policy exhaustion were to occur during the pendency of a stay, from bills submitted by other providers, upon the lifting of the stay Defendants would be precluded from ever receiving payments from policies that were exhausted.  Plaintiffs are aware that the longer payment to a provider is delayed,

the greater the risk of policy exhaustion, allowing Plaintiffs to use this motion to force the Opposing Defendants into an untenable financial position and compel their ultimate capitulation.

## III.   Plaintiffs' Arguments Fail With Regard to Either Avenue Through Which They Could Obtain an Injunction

### (a)   Plaintiffs Have Not Established a Likelihood of Success on the Merits or Sufficiently Serious Questions Going to the Merits to Make Them a Fair Ground for Litigation

Plaintiffs have not established a "sufficiently serious questions going to the merits to make them a fair ground for litigation".  The Second Circuit has held that the overall burden of the "serious questions" standard is "no lighter" than the "likelihood of success" standard, because it requires the balance of hardships to "decidedly" tip in the movant's favor.  See *Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010). The failure to present a factual basis for likelihood of success on the merits warrants denial of application.  *Perkins,* 2014 WL 2003014, at *2.   Plaintiffs have not demonstrated they have competent proofs, beyond the conclusory allegations, to satisfy either the likelihood of success or the serious question standard.  *Societe Comptoir De L'Industrie Cotonniere, Etablissements Boussac*, 190 F. Supp. at 601–02 (rejecting application where there was no evidence to support allegations).

First, despite Plaintiffs' contention that it has set forth "well-pleaded allegations" and "considerable evidence," to support its allegations, those allegations, and the purported evidence, are severely lacking.  As discussed above, with regard to Opposing Defendants, Plaintiffs rely on tenuous link between legitimate business and familial relationships and a modest number of services provided by Opposing Defendants to rope Opposing Defendants into a scheme State Farm believes exists within Metro Pain and Tri-Borough NY.  Opposing Defendants' participation in the purported scheme however, is unclear and wholly unsupported.  *See, e.g.*, *Allstate Insurance*

JS/D242456/FL3171

*Co. v. Baturov*, No. 21-cv-2967(BMC) (EDNY June 14, 2021) (discussing "Frankenstein's monster actions" with multiple defendants and different alleged schemes as "often hard to follow due to the disconnected allegations against dozens of unrelated bad actors").

Further, Plaintiffs cite various cases to support their contention that "numerous courts have concluded – under identical circumstances – that the balance of hardships tips in the plaintiff-insurer's favor". However, unlike Plaintiffs' complaint, the allegations in the cases relied on by Plaintiffs were actually supported by substantial factual basis. This is evident upon reviewing *GEICO v. Big Apple Med. Equip.,* Inc, No. 20-cv-5786 (E.D.N.Y. Mar. 25, 2021) and *GEICO v. Wallegood, Inc.*, No. 21-cv-1986 (E.D.N.Y. Jul. 16, 2021), attached to the Declaration of Jonathan L. Marks in Support of Plaintiffs' Motion for Preliminary Injunction. In *Big Apple*, with regard to kickbacks, the Court noted that "the Complaint identifies several specific payments Big Apple Defendants made between May and July 2019 to third-party entities that allegedly served no legitimate purpose, including a $10,675.23 payment to Statewide Employment Professionals, Inc., when Abayev is Big Apple's only employee ...; a $9,632.38 payment to Prompt Process Serving & Investigation Inc., which is not a licensed process serving agency...; almost $50,000 in payments within a two-month period to Med Supply Professionals, Inc….; and more than $63,000 in payments within a two-month prior to NY & EU Supply, Inc., which is not a licensed DME and orthotic devices supplier". Id. at 13-14. In further support of the allegation that the prescriptions for Equipment were fraudulent and the result of "unlawful financial arrangements," the Complaint also provides specific examples of five Insureds who received Equipment without any involvement with Rig Apple Defendants, and often without ever being measured for or instructed on the use of such Equipment. With regard to medical necessity, the Court noted that "[t]he Complaint includes specific examples of individual Insureds' experiences, thereby illustrating patterns of treatment

JS/D242456/FL3171

that support the allegation that prescriptions were based on "predetermined fraudulent protocols," not medical necessity". Id. at 16. Further, the "allegations are bolstered by the Declaration of Robert Borzone[1], offered in support of Plaintiffs' instant motion, who reviewed treatment records for approximately 150 Insureds billed to Plaintiffs through Big Apple, and concluded, to a reasonable degree of medical certainty, that the Equipment "provided to the Insureds by Big Apple were not medically necessary and were provided as a result of predetermined protocols employed without regard for actual patient care." Id. Additionally, the Complaint in *Big Apple* includes examples of instances where Insureds either never received the product for which Plaintiffs were billed or received only one of two products fro which Plaintiffs were billed. Id. at 17.[2,3] The Amended Complaint in the instant action wholly lacks any support with regard to baseless allegations made against the Opposing Defendants. As such, the cited cases are not analogous and do nothing to establish a serious question going to the merits to make them a fair ground for litigation and Plaintiffs' motion must be denied.

---

[1] Identified as a licensed chiropractor and acupuncturist with 35 years experience as a chiropractor and 19 years experience as an acupuncturist.

[2] The Court granted the injunction and stay in *Wallegood* based on a pre-motion request and opposition for same, after issuing an order directing Defendants to show cause why the Court should not rule as it did in *Big Apple* and grant the request for a stay and injunction where the factual allegations and causes of action in this matter and those presented in *Big Apple* are virtually identical. In the instant action, the factual allegations are not even similar to those set forth in *Big Apple*.

[3] Other cases State Farm relies on to support its entitlement to relief are also distinguishable. With regard to *Gov't Emps. Ins. Co. v. Zaitsev*, No. 20-cv-3495, 2021 WL 3173171, at *2 (E.D.N.Y. July 27, 2011), State Farm notes that the "allegations [were] not conclusory since they are supported by detailed examples throughout the Complaint. Such examples are absent in the instant action with regard to Opposing Defendants. See also *Gov't Emps. Ins. Co. v. Cean*, 19-cv-2363, 2019 WL 6253804 (E.D.N.Y. Nov. 22, 2019), (the holding with regard to the unopposed motion not analogous as the complaint cited to a criminal indictment and guilty plea of a co-conspirators for health care fraud and included multiple exhibits detailing the fraudulent claims); *State Farm Mu. Auto. Ins. Co. v. Parisien*, 352 F. Supp. 3d 215, 234 (E.D.N.Y. 2018) (State Farm submitted detailed grids purporting to show the initial evaluations made of patients, the services and supplies rendered, and how those services and supplies were billed, provided copies of documents allegedly containing false statements by some of the Defendants, and presented a sworn affidavit on behalf of Defendant containing apparently false information); *Gov't Emps. Ins. Co. v. Strut*, 2019 WL 6338023 (W.D.N.Y. Nov. 26, 2011) at *2-3, 9 (the "prior circumstances" including a guilty plea to a criminal indictment "knowingly and willfully make materially false and fraudulent statements and representations in connection with the delivery of, and payment for, health care services" added some context to the considerable detail that GEICO has placed in the present complaint").

JS/D242456/FL3171

**(b)** **The Balance of Hardships Tips Decidedly in Defendants' Favor**

When a party moves for a preliminary injunction asserting that there are "sufficiently serious questions going to the merits," as argued by Plaintiffs herein, the movant must also demonstrate "a balance of hardships decidedly tipped in the movant's favor." *McMahon v. Johnson*, 2014 WL 6886096, at *1 (E.D.N.Y. Dec. 8, 2014) *citing Green Party of New York State v. New York State Bd. of Elections*, 389 F.3d 411, 418 (2d Cir.2004). Here, however, the balance of hardships weighs overwhelmingly in favor of Defendants due to the very real and present threat of policy exhaustion, which jeopardizes Defendants' ability to obtain <u>any</u> reimbursement for the valid medical treatment that they collectively rendered to these many patients, should the Court grant the stay and other injunctive relief sought by Plaintiffs. This detrimental impact to Defendants is only exacerbated by the substantial financial burden on the medical industry caused by the Covid-19 pandemic and the market share of the No-Fault market possessed by Plaintiffs.

It is a basic tenet of the no-fault statutory framework is that there are a finite amount of no-fault benefits available under each automobile insurance policy, statutory minimum amount of required coverage being $50,000.00 in New York and $15,000 in New Jersey.  Once the no-fault insurer has issued a sufficient number of payments to exhaust the policy limits, any medical provider seeking reimbursement for services rendered will find its claim denied on the grounds of policy exhaustion, and will be unable to recover from the no-fault insurer.

The prevailing law favors the no-fault insurer in this regard.  It is well established that where an insurer has paid the full monetary limits set forth in a policy, its duties under the contract of insurance cease.  See *Hosp. for Joint Diseases v. Hertz Corp*,. 22 AD3d 724, 725 (2nd Dept. 2005); *Presbyterian Hospital in the City of New York v. Liberty Mutual Ins. Co*., 216 A.d.2d 448

JS/D242456/FL3171

(2nd Dept. 1995).  There are almost no circumstances where the insurer can be required to issue payments over and above the policy limits, with limited exceptions for certain types of bad faith or mishandling of claims by the insurer. *See generally,* 11 NYCRR § 65-3.15; *Harmonic Physical Therapy, P.C. v. Praetorian Ins. Co.*, 47 Misc. 3d 137(A) (App. Term 1st Dept. 2015); *Nyack Hospital v. General Motors Acceptance Corp.,* 8 N.Y.3d 294, 832 N.Y.S.2d 880 (2007). An arbitrator's award directing payment in excess of the $50,000 limit of a no-fault insurance policy exceeds the arbitrator's power and constitutes grounds for vacatur of the award.  See *Brijmohan v. State Farm Ins. Co.*, 92 N.Y.2d 821, 823, 699 N.E.2d 414 (1998) ("the arbitrator's award was beyond the policy limits and therefore in excess of the arbitrator's powers"); *Countrywide Ins. Co. v. Sawh*, 272 A.D.2d 245 (2000) ("arbitrators exceeded their authority in directing the payment of the $2,250 at issue, as the award was in excess of the $50,000 limit of the subject insurance policy").  As such, policy exhaustion effectively forecloses the healthcare provider's ability to recover from the no-fault insurer.

Accordingly, a stay of the collection proceedings would permanently prejudice Defendants' ability to recover on those claims, even if Plaintiffs' instant declaratory judgment action is ultimately unsuccessful. Specifically, despite 11 NYCRR 65-3.15's requirement that "payments for basic economic loss shall be made to the applicant and/or an assignee in the order in which each service was rendered or each expense was incurred," insurers are not precluded from paying claims submitted by other providers subsequent to the denial of Opposing Defendants' claims for previously incurred services*. Allstate Property and Casualty Insurance Co. v. Northeast Anesthesia and Pain Management*, 41 N.Y.S.3d 448 (1st Dept. 2016). Specifically, in *Northeast Anesthesia*, the court held that "requir[ing] petitioner to delay payment of uncontested claims pending resolution of [the] disputed claims 'runs counter to the no-fault regulatory scheme, which

is designed to promote prompt payment of legitimate claims'". *Id.* (citing *Nyack Hosp. v. General Motors Acceptance Corp.*, 8 NY 3d 294, 300 (2007); *Harmonic*, 47 Misc. 3d 137[A].) Thus, any claims that accrue and are billed during the pendency of a stay, if granted, will be paid prior to the claims subject to the stay.  Should policy exhaustion occur with regard to specific policies during that time, Plaintiffs will have no obligation to pay Opposing Defendants for the pending claims. See *Northeast Anesthesia*, 41 N.Y.S.3d at 448.  There is no cure for the inevitable economic harm that Defendants will face from policy exhaustion resulting from a stay of collection proceedings.

As State Farm could and would continue to pay out on other claims during the period of the stay to non-defendant medical providers exhausting the available funds, the stay could result in a virtually irreversible bar to Defendants' recovery from Plaintiffs, regardless of the outcome of the litigation. Conversely, if those collection actions are allowed to proceed, and Plaintiffs do prevail in this litigation, Plaintiffs will still have recourse and an opportunity to pursue reimbursement of those funds if they are ultimately successful in the instant litigation.

Plaintiffs assert that the balance of hardships favors granting the stay because the parties will be "will be well-served by the efficiency of resolving the issues in a single proceeding." Br., 15.  While efficiency is certainly a worthy goal, the danger of not being able to collect on the claims at all – regardless of the ultimate outcome of this litigation – is a significantly weightier threat, tipping the balance of hardships definitively in favor of the Opposing Defendants.

The hardship on Defendants resulting from a delay in collecting insurance benefits from Plaintiffs for services provided to their insureds is further exacerbated by the financial toll caused by the prolonged Covid-19 pandemic, which essentially halted the operation of the Opposing Defendants' medical practices in an effort to preserve the capacity of the healthcare system and to combat the further spread of the virus, and has continued to strain healthcare providers as the virus

JS/D242456/FL3171

continues to overwhelm the healthcare system.  This resulted in a substantially decreased revenue stream from all sources throughout the course of the pandemic.

Plaintiffs' applications should be summarily denied.  However, *assuming arguendo* that the Court is inclined to grant Plaintiffs' motion, as an alternative to the stay and injunction, to better balance the equities among the parties, another option would be for the Court deny the stay and injunction and instead allow collections on outstanding claims to proceed in the ordinary course.  However, for every claim on which a defendant provider is successful, instead of issuing payment to the defendant provider, in furtherance of maintaining the status quo, the Court could direct State Farm to deposit the amount awarded pursuant to litigation or arbitration into an escrow account pending resolution of this matter.  By doing so, exhaustion would no longer be a factor that will preclude the defendant providers' ability to collect payment on the claims if successful in this litigation.  Additionally, State Farm's interests would be served as they would not be required to pay the proceeds from the collections actions to defendant providers on claims they believe to be invalid. This will also effectively streamline the instant litigation, where absent an affirmative finding on Plaintiffs' claims grounded in fraud as alleged in the Amended Complaint, all of the claims which are the subject matter of this litigation will have to be adjudicated to determine the medical necessity of each service provided.  This will allow that adjudication to go forward during the pendency of this action, leaving fewer matters to be determined at the resolution of this action.

## IV.   The Relief Sought By Plaintiffs Is Precluded By The Anti-Injunction Act

The Federal Anti-Injunction Act ("AIA"), 28 U.S.C. §2283, expressly prohibits a federal court from enjoining a state court proceeding as follows:

> A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

JS/D242456/FL3171

There are three exceptions to the AIA, one of which – the "necessary in aid of jurisdiction" exception – has been utilized in the District to stay pending New York collections suits by defendants in similar matters.  The Supreme Court, however, has recognized this as an "absolute prohibition against enjoining state court proceedings" unless one of these three "specifically defined exceptions" applies.  *See generally, MLE Realty Assoc. v. Handler*, 192 F.3d 259, 261 (2d Cir. 1999) (*quoting Atl. Coast Line R. Co. v. Bhd. of Locomotive Engineers*, 398 U.S. 281, 286 [1970]).  Moreover, the Court noted in that case that "[a]ny doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy." *Id.* at 297. Furthermore, these narrowly defined exceptions "should not be enlarged by loose statutory construction" *Id.* at 287, and "Congress made clear beyond cavil that the prohibition [codified by the AIA] is not to be whittled away by judicial improvisation." *Amalgamated Clothing Workers of Am. v. Richman Bros.*, 348 U.S. 511, 514 [1955].

In their motion, Plaintiffs argue that they will be irreparably harmed because "the State Farm Companies will be saddled with expensive, time-consuming, piecemeal litigation of claims that may lead to inconsistent results".  Br., 9.   However, "it is settled law that 'a district court may not issue an injunction simply to be the first court to reach a judgment and thereby avoid issues' of preclusion and prevent duplicative litigation."  *SR Intern. Bus. Ins. Co. Ltd. v. World Trade Ctr. Properties, LLC*, 445 F. Supp. 2d 356 at 360 (*citing Retirement Sys. Of Ala. v. J.P. Morgan Chase & Co.*, 386 F.3d 419, 429 (2d Cir. 2004)). Further, where the injunction to stay the state actions "would serve no other purpose than to prevent duplicative litigation and the preclusive effect of state rulings, the aid-of-jurisdiction exception to the Anti-Injunction Act does not apply."

*SR Intern. Bus. Ins. Co. Ltd. v. World Trade Ctr. Properties, LLC*, 445 F. Supp. 2d 356 at 366.[4]
Therefore, State Farm's motion should be denied.

**V.      If This Court Grants Plaintiffs' Motion, Plaintiffs Should Be Required to Post Bond**

        "The court may issue a preliminary injunction or a temporary restraining order only if the
movant gives security in an amount that the court considers proper to pay the costs and damages
sustained by any party found to have been wrongfully enjoined or restrained."  Fed. R. Civ. P.
65(c). "Security furnished under Rule 65(c) will not include any damages for claims against the
party who instituted the action other than those directly attributable to the improvidently issued
injunction."  *Interlink Int'l Fin. Servs., Inc. v. Block*, 145 F. Supp. 2d 312, 315 (S.D.N.Y. 2001)
(internal quotation marks and citations omitted).  Plaintiff insurance carriers have previously been
required to post such bond in this district.  See *Gov't Employees Ins. Co. v. Strut*, No. 19-CV-728V,
2019 WL 6338023, at *9 (W.D.N.Y. Nov. 26, 2019), *report and recommendation adopted,* No.
19-CV-728 (JLS), 2020 WL 1820500 (W.D.N.Y. Apr. 10, 2020)("In the event that GEICO does
not ultimately prevail, some protection should be in place for payments that defendants will not be
receiving. GEICO itself suggested in the complaint that, as of June 2019, approximately $500,000
in pending no-fault insurance claims potentially had to be paid. That number should suffice, as it
is grounded in actual pending claims and is not speculative.")(internal citations omitted).

        Further, despite Plaintiffs' assertions that "movant has not demonstrated any proof of
likelihood of actual harm," in actuality, defendants have shown substantial likelihood of harm if

---

[4] State Farm also argues that if arbitration and state court litigations are permitted to proceed, they will be proceeding
on an incomplete factual record.  However, as discussed *supra*, the no-fault arbitration regulations, as well as New
York State court proceedings, afford Plaintiffs procedures to adequately defend themselves against what they allege
are fraudulent claims – they need only avail themselves of these procedures afforded in the AAA forum and in the
C.P.L.R. See *supra*, 9-10.

JS/D242456/FL3171

the Court grants the relief sought in Plaintiffs' motion.  As such, if Plaintiffs' motion is granted, Plaintiffs should be required to post bond sufficient to cover the amount of the pending claims.

### CONCLUSION

For the reasons set forth herein, Plaintiffs' motion to stay until the resolution of the instant litigation all arbitrations and New York State court litigations seeking no-fault insurance benefits for services or supplies provided by Defendants to patients of Metro Pain and Tri-Borough NY, and to enjoin Defendants from commencing any new arbitrations or New York State court proceedings seeking no-fault insurance benefits for services or supplies provided by Defendants to patients of Metro Pain and Tri-Borough NY should be denied.

Dated: Garden City, New York
        January 4, 2022

**THE RUSSELL FRIEDMAN LAW GROUP, LLP**
*Attorneys for Defendants Reuven Alon (a/k/a Rob Alon), Columbus Imaging Center LLC,Medaid Radiology LLC, Yan Moshe (a/k/a Yan Leviev), Hackensack Specialty ASC LLC (f/k/a Dynamic Surgery Center LLC), and Integrated Specialty ASC LLC (f/k/a HealthPlus Surgery Center LLC)*

By:     /s/*Jennifer B. Strong*
        Jennifer B. Strong
        400 Garden City Plaza, Suite 500
        Garden City, New York 11530
        Tel: 516.355.9696
        jstrong@rfriedmanlaw.com

JS/D242456/FL3171