**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

---

STATE FARM MUTUAL AUTOMOBILE INSURANCE
COMPANY AND STATE FARM FIRE AND CASUALTY
COMPANY,

                            PLAINTIFFS,

       v.

METRO PAIN SPECIALISTS P.C., ET AL.

                        DEFENDANTS.

Case No.: 1:21-cv-05523 (MKB)(PK)

---

**DEFENDANTS METRO PAIN SPECIALISTS P.C., LEONID SHAPIRO, M.D., AND**
**TRI-BOROUGH NY MEDICAL PRACTICE P.C.'S MEMORANDUM OF LAW**
**IN OPPOSITION TO PLAINTIFFS' MOTION FOR**
**PRELIMINARY INJUNCTION AND STAY**

KAUFMAN DOLOWICH
  & VOLUCK, LLP

Peter A. Stroili
Kevin J. Windels
Matthew H. Lee
40 Exchange Place, 20th Floor
New York, New York 10005
Tel: (212) 485-9600
Email: pstroili@kdvlaw.com
      kwindels@kdvlaw.com
      mlee@kdvlaw.com
*Attorneys for Defendants Metro Pain*
*Specialists P.C., Leonid Shapiro, M.D., and*
*Tri-Borough NY Medical Practice P.C.*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ........................................................................................................................... 3

   I. PLAINTIFFS CANNOT MEET THEIR HEAVY BURDEN FOR A PRELIMINARY
   INJUNCTION ..................................................................................................................... 3

      A.   Plaintiffs' Insufficient Showing of Irreparable Harm ................................................... 4

      B.   Plaintiffs' Failure to Provide the Detailed Allegations and/or Proof Needed to Show
          Likelihood of Success/Serious Question Going to Merits ........................................... 6

      C.   The Balance of Hardships Tips Decidedly On the Metro Pain Defendants Which State
          Farm Is Seeking to Put Out of Business By Delaying Payments During A Pandemic  8

      D.   Public Policy Further Militates Against Eschewing New York's Statutory No-Fault
          Framework and Replacing it with a Blunderbuss Federal Complaint ........................ 10

   II. THE COURT DOES NOT HAVE THE AUTHORITY TO ISSUE THE BROAD
   INJUNCTION SOUGHT BY STATE FARM ........................................................................ 11

      A.   The Federal Arbitration Act Bars The Injunction Sought By State Farm .................. 11

      B.   The Anti-Injunction Act Bars Injunction of the Pending State No-Fault Actions ...... 13

   III. ANY INJUNCTION SHOULD BE NARROWLY TAILORED AND REQUIRE A HUGE
   INSURER LIKE STATE FARM TO POST AN ADEQUATE BOND ................................. 14

CONCLUSION ....................................................................................................................... 16

## TABLE OF AUTHORITIES

CASES

*Agudath Israel of Am. v. Cuomo*, 983 F.3d 620 (2d Cir. 2020) ..................................................... 4

*Aliens Creek/Corbetts Glen Pres. Grp., Inc. v. Caldera*, 88 F.Supp.2d 77 (W.D.N.Y. 200) ......... 3

*Allstate Ins. Co. v. Avetisyan*, 2018 WL 6344249 (E.D.N.Y. 2018) .......................................... 2, 4

*Allstate Ins. Co. v. Elzanaty*, 929 F. Supp. 199 (E.D.N.Y. 1983) ................................................ 12

*Allstate Ins. Co. v. Harvey Fam. Chiropractic*, 677 Fed. App'x 716 (2d Cir. 2017) .................... 5

*Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213 (1985) ........................................................... 12

*Doc.'s Assocs., LLC v. Tripathi*, 794 F. App'x 91 (2d Cir. 2019) ............................................... 13

*Dorsett v. Cty. of Nassau*, 762 F.Supp.2d 500 (E.D.N.Y. 2011) ................................................... 3

*Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110 (2d Cir. 2009) ................................. 4

*Friends of the E. Hampton Airport, Inc. v. Town of E. Hampton*, 841 F.3d 133 (2d Cir. 2016).... 4

*GEICO v. Grand Med. Supply, LLC*, No. 11-CV-5339, 2012 WL 2577577 (E.D.N.Y. July 4, 2012) ...................................................................................................................................... 13

*GEICO v. Mayzenberg*, 2018 WL 6031156 (E.D.N.Y. Nov. 16, 2018) ................................... 12, 14

*Government Employees Ins. Co. v. Benin*, 2021 WL 1146051 (E.D.N.Y. 2021) ........................... 6

*Government Employees Ins. Co. v. Relief Medical, P.C.*, 2021 WL 3565739 (E.D.N.Y. Aug. 12, 2021) ................................................................................................................................... 3, 14

*Government Employees Ins. Co. v. Strut*, 2019 WL 6338023 (W.D.N.Y. 2019) ......................... 14

*Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60 (2d Cir. 2007) .............................. 4, 5

*Green Party of New York State v. New York State Bd. of Elections*, 389 F.3d 411 (2d Cir. 2004) 8

*Hall Street Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576 (2008) ................................................. 12

*Hanson Trust PLC v. ML SCM Acquisition, Inc.*, 781 F.2d 264 (2d Cir. 1986) ............................ 3

*In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d 113 (2d Cir. 2011)..........................................13

*In re Baldwin-United Corp.*, 770 F.2d 328 (2d Cir. 1985) ...........................................................14

*Jayaraj v. Scappini*, 66 F.3d 36 (2d Cir. 1995)...............................................................................5

*Jefferson v. Soe*, 2017 WL 2881138 (E.D.N.Y. July 6, 2017)..........................................................3

*Kamerling v. Massanari*, 295 F.3d 206 (2d Cir. 2002)....................................................................4

*Lou v. Belzberg*, 834 F.2d 730 (9th Cir. 1987) ..............................................................................14

*Madison Acquisition Group, LLC v. Local 259 United Auto Workers, AFL-CIO*, 2021 WL
    5399453 (E.D.N.Y. Nov. 18, 2021) .......................................................................................3

*McMahon v. Johnson*, 2014 WL 6886096 (E.D.N.Y. Dec. 8, 2014) ...............................................8

*Moore v. Consol. Edison Co. of N.Y.*, 409 F.3d 506 (2d Cir. 2005)................................................5

*Munaf v. Geren*, 553 U.S. 674 (2008)..............................................................................................3

*Pena-Canela v. Searls*, 2018 WL 5519561 (W.D.N.Y. Oct. 29, 2018)..........................................3

*Rodriguez v. DeBuono*, 175 F.3d 227 (2d Cir. 1999) .....................................................................4

*SAM Party of N.Y. v. Kosinski*, 987 F.3d 267 (2d Cir. 2021) .........................................................4

*United States v. Rural Elec. Convenience Co–Op Co.*, 922 F.2d 429 (7th Cir. 1991) ...................5

*We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266 (2d Cir. 2021) ..........................................2, 3

*Yang v. Kosinski*, 960 F.3d 119 (2d Cir. 2020)...............................................................................4

**STATUTES**

Fed. R. Civ. P. 65(c) ......................................................................................................................14

New York Insurance Law § 5106(b) ..............................................................................................11

**PRELIMINARY STATEMENT**

Defendants Metro Pain Specialists, P.C. ("Metro Pain"), Leonid Shapiro, M.D. ("Dr. Shapiro") and Tri-Borough NY Medical Practice P.C. ("Tri-Borough") (collectively, the "Metro Pain defendants") submit this memorandum in opposition to the motion for preliminary injunction and stay of Plaintiffs State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company (together, "Plaintiffs" or "State Farm").  State Farm, a giant insurer, without any detailed allegations or facts, by its own admission, seeks to do away with the statutory framework mandated by New York State of which State Farm freely chose to purposefully avail itself, and to prevent the Metro Pain defendants from "taking advantage of New York's streamlined no-fault system" and the "mechanism through which Defendants receive payment." (ECF Doc. No. 80, Plaintiffs' Memorandum of Law – "P. Bf.," p. 6).  State Farm further seeks to effectively quash the Metro Pain defendants' statutory right to arbitrate, as assignee of its patients' No-Fault benefits (*Id*., at p. 8: complaining about being "required to waste time defending numerous no-fault actions when those same proceedings could be resolved globally in a single, pending declaratory judgment action").

State Farm further seeks to avoid its statutory obligation to provide individualized proof or waste time with arbitrations -- or, on this motion, to provide any evidentiary proof or set forth particularized allegations. (P. Bf., p. 15: "If the State Farm Companies prevail here, then Defendants' State-court actions and arbitrations will necessarily be resolved in the State Farm Companies' favor;" *Id*. at p. 8: asserting that State Farm should "not be required to waste time litigating numerous no-fault actions when those same proceedings could be resolved globally.").  Rather, State Farm would have the necessity to challenge the medical necessity of any particular treatment for any particular patient swept up in the aftermath of a preliminary injunction based

1

on a blunderbuss First Amended Complaint (ECF Doc. 63, the "Complaint") against some sixty Defendants. By the same token, State Farm further seeks to financially cripple Defendants by withholding and further delaying payment of $9 million it owes them based on the same conclusory, generalized allegations, and unfounded speculation, repeated over and over again.

If State Farm succeeds in its attempt to supplant the statutory framework created by New York State for resolving disputed medical bills with No Fault insurance carriers straightaway, with an injunction and stay based on nothing more than a blunderbuss federal complaint devoid of any evidentiary proof, the results would be catastrophic for Defendants. As set forth in the accompanying Declaration of Leonid Shapiro ("Shapiro Decl.") and supporting case law (*See, e.g., Allstate Ins. Co. v. Avetisyan*, 2018 WL 6344249 (E.D.N.Y. 2018)), the devastating impact and threat to the Metro Pain defendants by the resulting delay in payments on which they rely for their very economic survival and on their ability to treat their patients during a pandemic, could never be overcome, or ameliorated by any statutory interest.[1]

Fortunately, neither the very heavy burden and stringent requirements for the "extraordinary and drastic remedy" of a mandatory preliminary injunction (*See, e.g., We The Patriots USA Inc. v. Hochul*, 17 F.4th 266, 279 (2d Cir. 2021)), nor the strong policy of enforcing arbitration and the Federal Arbitration Act adopted by the United States Supreme Court and its caution to district courts not to limit such enforcement in the name of judicial economy, nor the Anti-Injunction Act's prohibition on enjoining pending state court proceedings, allow for such an unconscionable result.

---

[1] *Avetisyan*, 2018 WL 6344249, n.6 at *4) ("[T]he Court has no basis to conclude that such interest payments would adequately protect the Retailers against non-payment of their pending no-fault claims, as well as unknown future claims, during the pendency of this large, complex RICO action that may take years to resolve. Given the number of Parallel Proceedings implicated by the proposed injunction, . . . the potential for recovering accrued interest would not significantly alleviate the Retailers' hardship created by their inability to obtain reimbursements for the duration of this potentially lengthy litigation.").

## ARGUMENT

**I.     PLAINTIFFS CANNOT MEET THEIR HEAVY BURDEN FOR A PRELIMINARY INJUNCTION**

Issuance of a preliminary injunction is "an extraordinary and drastic remedy" that "is never awarded as of right[.]" *Munaf v. Geren*, 553 U.S. 674, 689–90, 128 S.Ct. 2207, 2219 (2008) (internal citations and quotation marks omitted); *We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 279 (2d Cir. 2021); *Government Employees Ins. Co. v. Relief Medical, P.C.*, 2021 WL 3565739, at *3 (E.D.N.Y. Aug. 12, 2021). A preliminary injunction "'should not be routinely granted.'" *Madison Acquisition Group, LLC v. Local 259 United Auto Workers, AFL-CIO*, 2021 WL 5399453, at *2 (E.D.N.Y. Nov. 18, 2021) (quoting *Jefferson v. Soe*, 2017 WL 2881138, at *2 (E.D.N.Y. July 6, 2017); *Hanson Trust PLC v. ML SCM Acquisition, Inc.*, 781 F.2d 264, 273 (2d Cir. 1986 (noting that a preliminary injunction is "one of the most drastic tools in the arsenal of judicial remedies"). "As a result, to obtain a preliminary injunction, the movant must make carry its burden by a 'clear showing.'" *Madison Acquisition*, 2021 WL 5399453 at *2 (quoting *Jefferson*, 2017 WL 2881138 at *3).

As such, "a party seeking preliminary injunctive relief has a heavy burden to sustain, . . ., and, importantly, must offer proof beyond the unverified allegations of the pleadings." *Pena-Canela v. Searls*, No. 1:18-CV-00949 EAW, 2018 WL 5519561, at *2 (W.D.N.Y. Oct. 29, 2018) (internal quotation marks omitted) (citing *Dorsett v. Cty. of Nassau*, 762 F.Supp.2d 500, 534 (E.D.N.Y. 2011); *Aliens Creek/Corbetts Glen Pres. Grp., Inc. v. Caldera*, 88 F.Supp.2d 77, 83 (W.D.N.Y. 200)). "A party seeking a preliminary injunction 'must establish (1) that it is likely to succeed on the merits, (2) that it is likely to suffer irreparable harm if the injunction is not granted, (3) that the balance of the equities tips in its favor, and (4) that the injunction serves the public

interest.'" *Relief Medical,* 2021 WL 3565739 at *3 (quoting *SAM Party of N.Y. v. Kosinski*, 987 F.3d 267, 273-74 (2d Cir. 2021). Where, as here, the preliminary injunction sought "'will affect government action taken in the public interest pursuant to a statute or regulatory scheme, the moving party must demonstrate (1) irreparable harm absent injunctive relief, (2) a likelihood of success on the merits, and (3) public interest weighing in favor of granting the injunction.'" *Hampton Airport, Inc. v. Town of E. Hampton*, 841 F.3d 133, 143 (2d Cir. 2016)). The movant must also show that the balance of equities supports the issuance of an injunction. *See Yang v. Kosinski*, 960 F.3d 119, 127-28 (2d Cir. 2020).

## A.      Plaintiffs' Insufficient Showing of Irreparable Harm

"A showing of irreparable harm is 'the single most important prerequisite for the issuance of a preliminary injunction.'" *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) (quoting *Rodriguez v. DeBuono*, 175 F.3d 227, 234 (2d Cir. 1999)); *Allstate Ins. Co. v. Avetisyan*, 2018 WL 6344249, at *2  (E.D.N.Y. Oct. 30, 2018). "This element is so critical to the Court's inquiry that the Court need not reach any of the other requirements necessary for the grant of injunctive relief where irreparable harm has not been demonstrated." *Id.* (citing *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66–67 (2d Cir. 2007) ("[T]he moving party must first demonstrate [irreparable harm] before the other requirements for the issuance of an injunction will be considered.")).

"To establish irreparable harm, a party . . . must show that there is a continuing harm which cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation." *Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002) (internal quotation marks and citations omitted). Further, "[p]laintiffs must demonstrate that absent a preliminary injunction they will suffer an injury that is neither remote nor speculative, but

actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *Faiveley Transp. Malmo AB*, 559 F.3d at 118 (quoting *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007)).

Absent "extraordinary circumstances," injunctions are also unavailable "[w]here there is an adequate remedy at law, such as an award for money damages[.]" *Id.* (quoting *Moore v. Consol. Edison Co. of N.Y.*, 409 F.3d 506, 510 (2d Cir. 2005)).  While State Farm acknowledges this (P. Bf., at p. 8) it nevertheless argues that it will be irreparably harmed by being "required to waste time and resources." *Id*.  However, the Second Circuit held in *Allstate Ins. Co. v. Harvey Fam. Chiropractic*, 677 Fed. App'x 716 (2d Cir. 2017), that the prospect of pending no-fault arbitrations does not constitute irreparable harm and rejected this same argument:

> We need not reach the question of whether the District Court had the authority to issue an injunction under the AIA and RICO because plaintiffs have failed to establish the irreparable harm necessary for a preliminary injunction. There is no evidence in the record that, upon the conclusion of this matter, the plaintiffs cannot be fully compensated through money damages for the alleged harm suffered from the defendants' fraudulent claims. Even if the defendants obtain other No-Fault reimbursements in state court and arbitrations while this case is pending, the plaintiffs are free to recover those payments should they prevail on their RICO claim. Moreover, the "mere injuries . . . in terms of money, time and energy necessarily expended" absent a stay of ongoing state court and arbitration proceedings "are not enough" to establish irreparable harm.

*Id*. at 718 (quoting *Jayaraj v. Scappini*, 66 F.3d 36, 39 (2d Cir. 1995) (Emphasis added.).[2]

Nor do "inconsistent judgments . . . necessarily amount to 'irreparable harm.'" *United States v. Rural Elec. Convenience Co–Op Co.* 922 F.2d 429, 438 (7th Cir.1991) *Avetisyan*, 2018 WL 6344249 at *4 (holding that, while "it could be argued that Plaintiffs may have been unable

---

[2] While it is true that Harvey was a summary order, as the District Court noted in *Avetisyan* in rejecting a similar argument, courts in this district have relied on summary orders by the Second Circuit as 'highly persuasive'" authorities." *Avetisyan*, 2018 WL 6344249 at *2 (collecting cases).

in each of the Parallel Proceedings to prove a pattern of fraud necessary to make out a federal

RICO claim … nothing prevented Plaintiffs from raising fraud as a defense to non-payment of any

given claim."). Similarly, here, State Farm has not -- because it cannot -- assert that it made a claim

for fraud in the hundreds of arbitrations and lawsuits it seeks to enjoin.  Rather, by State Farm's

own admission, it issued automatic denials of coverage, forcing the Metro Pain Defendants to

undergo repeated requests for verifications and rigorous examinations under oath ("EUOs").

(Complaint, ¶¶ 324-26).

Accordingly, Plaintiff have failed to demonstrate as they must the most critical element of

irreparable harm.

### B.      Plaintiffs' Failure to Provide the Detailed Allegations and/or Proof Needed to Show Likelihood of Success/Serious Question Going to Merits

It is true that some cases in this District have held that in no-fault cases, "a complaint alone

can be sufficient to grant an injunction," where it alleges detailed *facts* – not merely the same

repeated conclusory assertions – which "comprehensively detail[] regulatory violations,

unnecessary medical services, and unlawful referrals." *See*, *e.g., Government Employees Ins. Co.

v. Benin*, 2021 WL 1146051 at \*7 (E.D.N.Y. 2021).  However here, in 156 pages and 477

paragraphs, Plaintiffs have failed to allege detailed facts or patient examples, but rather repeat over

and over again the same mantra and conclusory assertions.

The Complaint's allegations against the Metro Pain defendants are two-fold.  First, the

Complaint alleges that the initial patient examinations" performed by Metro Pain were "not

legitimately performed to determine the true nature and extent of patient injuries, but rather as a

pretext to justify unnecessary treatment and services" (Complaint, ¶ 10), which State Farm labels

a "Predetermined Treatment Protocol" (*Id.*, ¶¶ 17, 20).  However, State Farm fails to provide a

single patient example where this allegedly occurred.  To the contrary, Stare Farm eschews the

necessity or its ability on this motion to prove its allegations with the required specificity on a claim-by-claim basis. (P. Bf., p. 1: "The fraud, however, is not readily apparent when viewed on a claim-by-claim basis," but rather "become apparent only when the scheme and all of the fraudulent claims are viewed together;" *Id*. at p. 9: "The State Farm Companies' theories of fraud are not susceptible to proof in such piecemeal arbitrations and litigations because the fraud involves a predetermined treatment protocol … that becomes apparent only when the claims are viewed as a whole.").

Unfortunately for State Farm, in order to meet the very stringent requirements for obtaining a preliminary injunction against the Metro Pain defendants, State Farm was required -- but wholly failed to -- provide some support on a case-by-case, patient-by-patient, basis of its overly broad and unsupported mantra that the Metro Pain defendants prescribed a "Predetermined Treatment Protocol" that was medically unnecessary with respect to even a single alleged patient. *See, e.g., Benin*, 2021 WL 1146051 at *7 (holding that plaintiffs in that case demonstrated a serious question going to the merits, where, unlike here, the Complaint did not "speak in generalities," but provided "patient-by-patient examples").

The second allegation against the Metro Pain defendants is that other Defendants made "payments to Metro Pain in exchange for patient referrals, typically disguised as 'rent' pursuant to a sublease for space in the clinic." (Complaint, ¶ 10). However, State Farm fails to provide any support for these allegations other than the same repeated rank speculation regarding whether the total amount of rent paid slightly exceeded the fair market value of the premises. (*Id*., ¶¶ 125, 134, 144). Such speculation does not suffice to prove anything.

Accordingly, Plaintiffs have failed to show likelihood of success on the merits or a serious question going to the merits.

**C.      The Balance of Hardships Tips Decidedly on the Metro Pain Defendants
Which State Farm Is Seeking to Put Out of Business by Delaying Payments
During A Pandemic**

When a party moves for a preliminary injunction asserting that there are "sufficiently
serious questions going to the merits," as argued by Plaintiffs herein, the movant must also
demonstrate "a balance of hardships decidedly tipped in the movant's favor." *McMahon v.
Johnson*, 2014 WL 6886096, at *1 (E.D.N.Y. Dec. 8, 2014). Here, the balance of hardships tips
decidedly in favor of the Metro Pain Defendants due to the severe detrimental impact of a further
prolonged delay in State Farm's overdue payments of "almost $9 million of Defendants' total
submitted bills currently unpaid." (ECF Doc. No. 79, Affidavit of Doug Babin in Support of
Plaintiffs' Motion For Preliminary Injunction" – "Babin Aff." ¶ 7).  As asserted by Dr. Shapiro,
"[t]he failure of large insurers like State Farm to reimburse my companies, as has been done here,
has a resulting catastrophic adverse effect on the medical providers' ability to treat patients and to
pay for the provider's day-to-day operations, including payment for salaries, medical supplies, and
its overall operations. The actions taken to date by State Farm have already caused significant
additional harm to our ability to function during the pandemic which over the past two years has
already been a very difficult time for the healthcare profession." (Shapiro Decl., ¶ 11).  The impact
of the delay is particularly severe due to the pandemic, which for a long period halted and, even
now, continues to threaten to halt, the operation of the Metro Pain defendants' medical practice,
resulting in a substantially decreased revenue stream.

State Farm simply brushes aside the delay as of no moment.  (P. Bf., p. 15: "[A]t
worst," an injunction will cause "Defendants' recovery of the no fault benefits to which they
are entitled [to] be delayed."). State Farm further asserts that Defendants "will not be
disadvantaged if the stay is granted, since they will be entitled to statutory interest on unpaid

claims" (P. Bf., pp. 15-16).  However, as the District Court in *Avetisyan* observed in rejecting

both of these arguments, the delay would cause undue hardship to Defendants, which most

likely could never be remedied and no potential recovery of accrued interest could alleviate:

> However, the Court notes that it disagrees with Plaintiffs' assertion that the balance of hardships tips decidedly in their favor. On this point, Plaintiffs argue that an injunction would not cause the Retailers undue hardship because if the Retailers ultimately prevailed in the instant action and the Parallel Proceedings, they would be awarded two-percent interest under New York's No-Fault Law on each outstanding no-fault payment for every month the payment is overdue…. Although such interest payments may be adequate to protect claimants while they pursue litigation or arbitration of their discrete claims under the No-Fault Law, the Court has no basis to conclude that such interest payments would adequately protect the Retailers against non-payment of their pending no-fault claims, as well as unknown future claims, during the pendency of this large, complex RICO action that may take years to resolve. Given the number of Parallel Proceedings implicated by the proposed injunction, … the potential for recovering accrued interest would not significantly alleviate the Retailers' hardship created by their inability to obtain reimbursements for the duration of this potentially lengthy litigation….This is all the more concerning in a case such as this one, where Plaintiffs have not established a likelihood of success on the merits but instead have opted to base their request for a preliminary injunction, in part, on the complexity of the matter….As such, Plaintiffs have failed to meet their burden in establishing that the balance of hardships tips decidedly in their favor.

*Avetisyan*, 2018 WL 6344249 at *4, fn.6 (Emphasis added.).

State Farm, by its own admission, seeks to do away with the ordinary process of

payment under New York's No-Fault statutory framework on which Defendants rely for their

very survival.  ( P. Bf., p. 15: "If the State Farm Companies prevail here, then Defendants'

State-court actions and arbitrations will necessarily be resolved in the State Farm Companies'

favor."). However, Defendants' viewpoint as to the imposition of a stay is starkly different. As

Dr. Shapiro attests, "if Metro Pain and Tri-Borough are prevented from pursuing payment and

collecting on no-fault claims from State Farm through arbitration and/or lawsuits during the

pendency of this action, they will effectively be prevented from being reimbursed for at least

$1,550,063 in medical services and supplies already expended by Defendants in treating such

patients." (Shapiro Decl., ¶ 13). Dr. Shapiro attests that "[t]his is a very significant amount of

revenue that State Farm is seeking to avoid paying," and, as the owner of Metro Pain and Tri-

Borough, further attests that "the imposition of a stay will have an immediate and very likely

irreversible debilitating impact on our cash flow and will impair our ability to continue

operating and to pay Tri-Borough's operating costs, including employee salaries.  In short, a

stay will cause irreparable harm to the companies and to me personally from which we will be

unable to recover." *Id*.

Accordingly, the balance of hardships is not even close, as Defendants' very economic

survival and continued ability to treat patients is on the line, whereas State Farm is a mega-

insurer, which has failed to show with any specificity in monetary terms how, if at all, it will

be harmed.

### D. Public Policy Further Militates Against Eschewing New York's Statutory No-Fault Framework and Replacing it with a Blunderbuss Federal Complaint

The issuance of a preliminary injunction and stay of pending arbitrations and lawsuits is

not in the public interest. As Plaintiffs concede they are trying to supplant the statutory

framework created by New York State for resolving disputed medical bills with No Fault

insurance carriers straightaway, on which the Metro Pain defendants rely for their economic

survival and continued ability to treat patients during a pandemic, with a blunderbuss federal

complaint devoid of any evidentiary proof.  (P. Bf., p. 6: attacking Defendants for "taking

advantage of New York's streamlined no-fault system, [that] are a mechanism through which

Defendants receive payment"; *Id*. at p. 8: complaining about being "required to waste time

defending numerous no-fault actions when those same proceedings could be resolved globally in a single, pending declaratory judgment action"; *Id.* at p. 15: "If the State Farm Companies prevail here, then Defendants' State-court actions and arbitrations will necessarily be resolved in the State Farm Companies' favor"; *Id*. at p. 8: complaining Plaintiffs should "not be required to waste time litigating numerous no-fault actions when those same proceedings could be resolved globally [in a single bound]."

That is clearly not what New York State intended when it provided in New York Insurance Law § 5106(b) that "[e]very insurer shall provide a claimant with the option of submitting any dispute ... to arbitration." Public policy and New York statutory law forbids what Plaintiffs seeks to achieve: to eschew and swallow up the statutory framework for resolution of medical bills created by New York State's legislature and the need to challenge the medical necessity of the Metro Pain defendants' services with individualized proof, with a blunderbuss federal action based on conclusory "global" assertions and "irresistible inferences," i.e., unfounded speculation. (P. Bf., p. 9). Rather, public interest and New York statutory law calls for this Court to uphold New York's No-Fault statutory framework -- including the right to arbitrate, which provides for timely resolution and payment of medical bills and individualized proof on medical necessity of a patient's treatment.

## II.    THE COURT DOES NOT HAVE THE AUTHORITY TO ISSUE THE BROAD INJUNCTION SOUGHT BY STATE FARM

### A.    The Federal Arbitration Act Bars the Injunction Sought by State Farm

The Federal Arbitration Act ("FAA") mandates that agreements to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The United States Supreme Court has therefore made

clear: "the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original).  The Supreme Court has further cautioned, not even courts' strong interest in judicial economy allows courts to override the public policy of enforcing arbitration agreements, whether by statute or private agreement.  *Hall Street Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 588 (2008) (holding "inefficiency and difficulty of conducting simultaneous arbitration and federal-court litigation [is] not a good enough reason to defer the arbitration").  Accordingly, a "court must compel arbitration of otherwise arbitrable claims, when a motion to compel arbitration is made," even if it leads to procedural inefficiencies and piecemeal litigation. *Dean Witter*, 470 U.S. at 219.

While the Supreme Court's strong policy favoring arbitration should leave no doubt, some courts in this District have attempted to create an exception that does not exist by questioning "whether a federal district court has the power to stay and enjoin private arbitration proceedings when there is a valid agreement to arbitrate." *GEICO v. Mayzenberg*, 2018 WL 6031156 at *3 (E.D.N.Y. Nov. 16, 2018).  Some district courts in this District as Plaintiffs note (P. Bf., pp. 23-24) have even held that the FAA does not apply to no-fault insurance policies because they are mandated by New York statute rather than the result of a negotiated, bargained for agreement between the parties. (P. Bf., pp. 23-24, citing *Relief Medical*, 2021 WL 3565739 at *5; *Allstate Ins. Co. v. Elzanaty*, 929 F. Supp. 199, 221 (E.D.N.Y. 1983)).  However, as noted above, neither the Supreme Court nor the Second Circuit has sanctioned such a distinction.  Nor does it make sense.  The fact that arbitration is mandated by public policy, as implemented by New York's legislature in a comprehensive statutory framework, should, if anything, merit strong enforcement

12

of the requirement to arbitrate disputes, which mega-insurers like State Farm should not be granted special dispensation to avoid.

Further as the District Court observed in *GEICO v. Grand Med. Supply, LLC*, No. 11-CV-5339, 2012 WL 2577577, at \*2 (E.D.N.Y. July 4, 2012), the right to arbitrate provided by New York statute is not "a 'creation' of state law; rather, it is a 'requirement' of state law" because the plaintiffs "'bargain[ed] for' the right to arbitrate claims that fall within the policies' arbitration clause by choosing to do business in New York and offering the arbitration clause required by New York's Insurance Law." *See In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d 113, 142 (2d Cir. 2011) (reversing district court's decision enjoining active arbitration claims and holding the district court "lacked the authority to enjoin the arbitration," where financial service company agreed to arbitrate by virtue of its membership in FINRA).

Having agreed to arbitrate by virtue of its participation in New York's statutory scheme providing for the right to arbitrate, State Farm cannot eradicate the Metro Pain defendants' codified right to arbitrate or override the Supreme Court's clear holdings enforcing that right in no uncertain terms.

**B.      The Anti-Injunction Act Bars Injunction of the Pending State No-Fault Actions**

The Anti-Injunction Act "'bars a federal court from enjoining a proceeding in state court unless that action is 'expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.'" *Relief Medical*, 2021 WL 3565739 at \*7 (quoting *Doc.'s Assocs., LLC v. Tripathi*, 794 F. App'x 91, 93 (2d Cir. 2019)). "Because 'the statutory prohibition against such injunctions in part rests on the fundamental constitutional independence of the [s]tates and their courts, the exceptions should not be enlarged by loose

13

statutory construction.'" *Relief Medical*, 2021 WL 3565739 at *7 (quoting *Edible Int'l, LLC v. Google, LLC*, No. 18-CV-216, 2019 WL 1052180, at *1 (D. Conn. Mar. 5, 2019)).

It is therefore settled law that the Anti-Injunction Act prohibits federal district courts from enjoining pending, previously filed state court proceedings. *In re Baldwin-United Corp.*, 770 F.2d 328, 336 (2d Cir. 1985); *Mayzenberg*, 2018 WL 6031156, at *8-9 ("The mere existence of a parallel action in state court does not rise to the level of interference with federal jurisdiction necessary to permit injunctive relief under the "necessary in aid of" exception."); *Lou v. Belzberg*, 834 F.2d 730, 740 (9th Cir. 1987). As the District Court held in Mayzenberg, a no-fault insurer "is not prevented from asserting its fraud defenses in the state court proceedings," and therefore, "cannot satisfy the 'necessary in aid' of the court's jurisdiction exception to the [Anti-Injunction] Act." *Mayzenberg*, 2018 WL 6031156, at *9.

While the above-cited cases holding that the Anti-Injunction bars injunctions of pending state no-fault actions all involve RICO claims, Plaintiffs, undeterred, assert without any support that because they have alleged RICO claims they are entitled to a special exception. (P. Bf., p. 22: "The federal right or remedy at issue – preventing and restraining RICO violations – can be given its intended scope only by stay of State-court proceedings."). Not surprisingly, no such exception, which would turn comity on its head, exists. State courts are perfectly capable of handling large, consolidated, complex no-fault fraud/RICO claims.

### III. ANY INJUNCTION SHOULD BE NARROWLY TAILORED AND REQUIRE A HUGE INSURER LIKE STATE FARM TO POST AN ADEQUATE BOND

"The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c); *Government Employees Ins. Co. v. Strut*, 2019 WL 6338023 at *9 (W.D.N.Y. 2019)

14

(holding, "[i]n the event that GEICO does not ultimately prevail, some protection should be in place for payments that defendants will not be receiving" and ordering GEICO to post a bond adequate to cover approximately $500,000 in pending no-fault insurance claims).  Here, State Farm seeks to wipe off the map scores of defendants by recovering over $7 million in No-Fault payments already made and preventing payment of almost $9 million in bills submitted by Defendants which State Farm has yet to pay.  (ECF Doc. No. 79, Babin Aff." ¶ 7).  "Currently, approximately $2.3 million is at issue in pending arbitration and state court proceedings between State Farm . . . and Defendants." (*Id.* at ¶ 8).

Given that State Farm could easily afford to post a bond in an amount commensurate with the claims it has refused to pay of almost $9 million it should be ordered to do so if it is granted the extraordinary and drastic relief it seeks in the form of an injunction and stay which will threaten Defendants' very existence and ability to provide treatment to their patients during a pandemic.

## CONCLUSION

For all of the foregoing reasons, the Metro Pain defendants respectfully request this Court

to: (1) deny Plaintiffs' motion for a preliminary injunction and stay in its entirety; and (2) grant

the Metro Pain defendants such other and further relief as the Court deems appropriate.

Dated: New York, New York
      January 4, 2022

                                      **KAUFMAN, DOLOWICH & VOLUCK, LLP**
                                      *Attorneys for Defendants Metro Pain*
                                      *Specialists, P.C., Leonid Shapiro, M.D. and*
                                      *Tri-Borough NY Medical Practice P.C.*

                  By:     */s/ Peter A. Stroili*
                              Peter A. Stroili
                              Kevin J. Windels
                              Matthew H. Lee
                              40 Exchange Place, 20th Floor
                              New York, New York 10005
                              Tel: (212) 485-9600
                              Email: pstroili@kdvlaw.com
                                      kwindels@kdvlaw.com
                                      mlee@kdvlaw.com