**Katten**

KattenMuchinRosenman LLP

September 29, 2022

**525 W. Monroe Street**
**Chicago, IL 60661-3693**
**312.902.5200 tel**
**www.katten.com**

**VIA ECF**

Magistrate Judge Peggy Kuo
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

**JONATHAN L. MARKS**
jonathan.marks@katten.com
312.902.5337 direct
312.902.1061 fax

**Re:**    *State Farm Mut. v. Metro Pain*, **1:21-cv-05523 – Motion for Order to Show Cause**

Dear Judge Kuo:

Plaintiffs State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company (together, "Plaintiffs") respectfully move this Court for an order requiring non-party iNJured Magazine LLC ("iNJured Magazine") to appear before the Court and show cause why it should not be held in contempt for failing to comply with a subpoena *duces tecum* served upon it. iNJured Magazine is expected to have relevant documents, has not objected or otherwise responded to the subpoena, and should be ordered to appear before the Court and explain its failure to comply.

This motion arises out of Plaintiffs' subpoena *duces tecum* seeking documents served on iNJured Magazine on August 6, 2022, with a return date of August 22, 2022. *See* Ex. 1. iNJured Magazine has not responded in any way to this subpoena despite Plaintiffs' follow up letter sent on August 23, 2022. Accordingly, Plaintiffs have no choice but to move this Court for assistance.

The First Amended Complaint alleges defendants submitted fraudulent claims for healthcare services provided to automobile accident victims. One part of the alleged scheme is that defendants Leonid Shapiro, M.D. and his entities Metro Pain Specialists P.C. and Tri-Borough NY Medical Practice P.C. (collectively, the "Shapiro Defendants") control clinics at which patients receive medically unnecessary services. These services are provided by, among others, physical therapists, chiropractors, and acupuncturists who pay for access to patients through kickbacks, sometimes disguised as "rent" pursuant to sublease agreements.[1] Another part of the alleged scheme is the Shapiro Defendants refer patients for MRI services, pain management, and orthopedic procedures at facilities owned or controlled by defendants Yan Moshe and Reuven Alon based on financial relationships between Shapiro, Moshe, Alon, and their various entities.

---

[1] The purported "rent" payments made to Metro Pain by subleasing providers are untethered to any fair market value for the use of space, and demonstrably tied to the value of services that could be rendered to Metro Pain's patients and reimbursed by No-Fault carriers, such as Plaintiffs. In particular, Metro Pain collected "rent" from its subtenants that exceeded the total rent it paid pursuant to its leases with building owners, certain subleases expressly bargained for the right to perform and bill for particular services in exchange for rent payments, and the subleases typically omitted material terms, including an entitlement to the dedicated use of specified office space. The lease agreements and referral arrangements entered into between Metro Pain and its subleasing providers are illegitimate and violate New York law. *See, e.g.*, N.Y. Pub. Health L. §§ 238-a(5)(b)(i), 238-d(1)(b).

KATTEN MUCHIN ROSENMAN LLP

CENTURY CITY    CHARLOTTE    CHICAGO    DALLAS    LOS ANGELES
NEW YORK    ORANGE COUNTY    SHANGHAI    WASHINGTON, DC
A limited liability partnership including professional corporations
LONDON: KATTEN MUCHIN ROSENMAN UK LLP

Discovery to date appears to support allegations in the complaint that Metro Pain illegally paid for patients to be sent to its clinics for treatment and sent those patients to other providers in exchange for kickbacks. Among this recently discovered information is evidence the Shapiro Defendants paid more than $250,000 to a shell company known as Law Cash Advances owned by Jelani Wray. Wray recently pled guilty to federal criminal charges in connection with a scheme involving bribes to 911 operators and hospital personnel in exchange for contact information of automobile accident victims. Wray and his co-conspirators used a call center to contact the accident victims and direct them to healthcare providers and lawyers who paid for the referrals. Discovery reveals not only that the Shapiro Defendants paid Law Cash Advances and Wray, but also took steps to hide the transactions. For example, payments to Law Cash Advances were made by wire from a brokerage account of Shapiro and his wife, and from accounts of Shapiro businesses LegalMDConsult.com LLC and Neurological Diagnostics P.A. Additionally, on one day, December 20, 2017, three sequentially numbered Metro Pain checks for Wray's benefit were issued in transactions structured to hide their purpose, namely: (1) check number 1241, dated December 19, 2017, payable to Accelerated Medical Supply, which was owned by Wray, with a memo notation "Office Med Supply"; (2) check number 1242, dated December 22, 2017, payable to Law Cash Advances, with a memo notation "Funding Company"; and (3) check number 1243, dated December 21, 2017, payable to Certified Medical Supply, which was owned by Wray, with a memo notation "Med Supply." Significantly, bank records of Law Cash Advances reflect that payments from the Shapiro Defendants were often made when the Law Cash Advances account reached zero for the apparent purpose of replenishing the account. The transactions strongly suggest knowing participation by the Shapiro Defendants in the scheme to obtain patients through bribes to 911 operators and hospital personnel and that those patients are at issue in this case.

iNJured Magazine appears to be another component of the Shapiro Defendants' efforts to solicit patients who could be referred to other providers in exchange for kickbacks. Outwardly, iNJured Magazine purports to be a magazine publisher offering a magazine directed to auto accident victims, and is owned by three individuals, including Dimitri Ivanovksi. Plaintiffs have learned that between at least 2013 and 2019, Ahmed Alkum, an employee of iNJured Magazine, regularly submitted requests for motor vehicle accident reports from municipalities in New Jersey. The address Alkum used on many of these requests is the address Metro Pain lists on its checks and is also used by other Shapiro businesses. Alkum also regularly received payments from entities owned by Shapiro and Ivanovski as well as iNJured Magazine. The same Shapiro entities that operated at addresses listed on Alkum's requests for accident reports also paid Law Cash Advances. In other words, the same entities used by Shapiro to pay Law Cash Advances appear to have been used in connection with iNJured Magazine to obtain accident reports. Moreover, Metro Pain and another Shapiro entity paid iNJured Magazine more than $40,000 between February 2016 and May 2017. Thus, it appears iNJured Magazine may be an additional vehicle through which funds are funneled to obtain patient referrals for Metro Pain.

Rule 45 authorizes subpoenas to be issued to non-parties directing them to produce designated documents in that person's possession, custody, or control. *See* Fed. R. Civ. P. 45(a)(1)(A)(iii). The scope of non-party subpoenas under Rule 45 is as broad as that permitted under the discovery rules and reaches all documents in the possession, custody, or control of the subpoena recipient. *See* Fed. R. Civ. P. 45 (advisory committee's notes to 1970 amendment). To preserve the right to object to a subpoena, a non-party must serve written objections within 14 days after

2

service of the subpoena.  *Cruz v. Green Tree Mortg. Serv., LLC*, 2017 WL 658054, at *1 (D. Conn. Feb. 17, 2017) ("The failure to serve written objections to a subpoena within the time frame specified by Rule 45[] typically constitutes a waiver of such objections.").

Here, iNJured Magazine has not responded to the subpoena with objections or produced any documents, and its responses are now overdue.  By failing to respond within 14 days of service, as set forth in Rule 45, iNJured Magazine has failed to comply with the subpoena.  Given that the subpoena was properly served, is reasonable, and iNJured Magazine has not asserted any objections, iNJured Magazine should be ordered to appear before the Court and show cause why it should not be held in contempt for failing to comply with the subpoena.  *See State Farm Mut. Auto. Ins. Co. v. Tabakman*, 2008 WL 4527731, at *3 (E.D.N.Y. Oct. 8, 2008).

Accordingly, Plaintiffs respectfully request that this Court issue an order directing iNJured Magazine to appear before the Court and show cause why it should not be held in contempt for failing to comply with the subpoena served upon it.

Respectfully submitted,

*/s/ Jonathan L. Marks*


Encl. (Exhibit 1)

*cc*:  iNJured Magazine LLC (by U.S. Mail)

3