# ANDERSON KILL P.C.

Attorneys and Counsellors at Law

1251 AVENUE OF THE AMERICAS ■ NEW YORK, NY 10020
TELEPHONE: 212-278-1000 ■ FAX: 212-278-1733
www.andersonkill.com

Paul M. Kaplan, Esq.
Shareholder
pkaplan@andersonkill.com
212-278-1023

<u>Via E-mail (leon@docsnopain.com)</u>     November 18, 2022

Leonid Shapiro, M.D.
Metro Pain Specialists P.C.
Tri-Borough NY Medical Practice P.C.
185 Kingsland Street
Nutley, New Jersey 07110

Re:     Retention of Anderson Kill P.C. –
<u>Possible Antitrust Counterclaims or Other Counterclaims in
Connection with State Farm Mutual Automobile Insurance Co.
v. Metro Pain Specialists P.C., et al. (Index No.21-cv-5523)
filed in the U.S. District Court for the Eastern District of New
York</u>

Dear Dr. Shapiro:

      We are pleased that you have selected Anderson Kill P.C. ("AK" or "the firm") to represent you, Metro Pain Specialists P.C. and Tri-Borough NY Medical Practice P.C.(together the "Client") in respect to Possible Antitrust Counterclaims or Other Counterclaims in connection with the above-named case (the "Matter"). Your confidence in AK is appreciated. Upon your execution of this letter agreement (the "Agreement"), we will undertake your representation in connection with this Matter.

      **Scope of Engagement**. Our engagement will be limited to providing legal services in connection with the Matter. Services you may request of us in connection with any other matter, action or proceeding are not included, but may be undertaken with written confirmation of an expanded engagement. Any such expanded engagement shall be limited to the scope stated in AK's written confirmation and unless expressly agreed otherwise shall be subject to all other terms of this Agreement. AK's receipt or use of confidential or other information in the course of this engagement does not mean that AK will render any other advice or services either to Client or any other person or entity.

      Client acknowledges and agrees that Client has retained the Firm to advise and represent it regarding the substantive merits of the claims or defenses at issue in the Matter. If claims have been or are asserted against the Client in connection with the Matter, then unless we mutually agree in writing to expand the scope of the Firm's

**Anderson Kill P.C.**

Leonid Shapiro, M.D.
November ___, 2022
Page 2

engagement to include insurance coverage as well as the underlying merits, it shall be Client's responsibility to confirm whether Client is or may be entitled to a defense or indemnity against such claims under any liability insurance policy or policies. At Client's request, the scope of this engagement may be expanded to encompass such insurance coverage matters, but any expansion of the scope of our engagement to encompass insurance coverage (or any other issues) shall only be upon mutual agreement in writing.

**Fees, Disbursements and Billing.** The fees to be charged would be based on our firm's regular hourly rates, subject to periodic increases. The current rates for the attorneys expected to work on this Matter are $830.00 per hour for the undersigned, who will be the responsible attorney supervising this Matter for the initial review period and after the determination of a counterclaim, the rate will be $1050.00 per hour. Rates for other attorneys will depend on seniority and experience. The most junior attorneys in the firm are billed at $350.00 per hour. The firm reviews rates annually, typically in January of each year. Unless otherwise agreed, the hourly rates charged will be the firm's regular rates in effect when services are rendered. Changes to billing at the rates referenced above and any other modification of amounts incurred or invoiced require the prior written approval of the firm's Executive Committee, and no individual firm attorney is authorized to make such changes without such approval.

A Retainer in the amount of $10,000.00 is required with the execution of this Agreement, which you agree to maintain monthly on an "evergreen" basis, against which monthly Invoices will be deducted for the duration of this Agreement.

We will bill you on a monthly basis for time charges and disbursements. Client agrees to pay those bills upon receipt, and in the absence of any particularized written objection to our bills will be deemed to accept and acknowledge the statements as correct through the period covered by the bill. If you do not provide such written objections within 20 days of receipt of a bill, you will be deemed to have waived any objection thereto. If you object to only a portion of the charges on a bill, then you agree to promptly pay the remainder, which will not constitute a waiver of the objection. Client acknowledges that the firm may terminate its representation of Client in the Matter if Client fails to make timely payment of any invoice (as further detailed in the Duration of Engagement Section below). The firm reserves the right to charge interest, at the rate of .667% per month (8% per annum) on any bill outstanding for more than thirty (30) days. Our acceptance of any late payment shall not constitute a waiver of your obligation to make timely payments in the future or of our right to charge interest on any subsequent late payment.

Our normal disbursements consist of such items as photocopy, messenger service, travel, lodging, secretarial overtime, obtaining copies of documents from governmental authorities, filing fees, recording charges, computerized legal research and other items of like import. We expect that Client will either pay directly or reimburse us

**Anderson Kill P.C.**

Leonid Shapiro, M.D.
November ___, 2022
Page 3

for such costs. If such costs may be calculated beforehand and appear to be substantial, we may ask Client to advance us those sums before we expend them, or to reimburse the vendor directly.

If this Matter requires electronic document management, the firm will provide the processing, document review, analysis, redaction and production services as a time charge or a disbursement. We will seek your approval prior to engaging any expert or consultant on your behalf or incurring any third-party database hosting expense, and Client will be solely responsible for the payment of any expert or consultant fees or expenses and any third-party database expense. At the conclusion of your Matter, Client also will be solely responsible for the payment of data archiving cost prior to termination of any third-party database hosting arrangement.

If the Matter involves any claim which may be settled by way of a payment to you, then we may collect any undisputed overdue fees or disbursements from any such settlement payment. Client acknowledges that the firm has a lien on any and all claims or causes of action that are subject to this agreement, extending to all fees and costs due to the firm.

If the Matter involves any claim for which a court or other tribunal may award your fees and costs pursuant to a contractual, statutory or other fee-shifting provision, or if you seek reimbursement of attorney fees and costs from a third party, Client acknowledges and agrees that it shall pay the firm's regular monthly bills upon receipt without regard to the timing or amount of Client's recovery of fees and costs, if any, from such third party or adverse party. Your obligation to the firm shall not be reduced if a court or tribunal awards less than the full amount billed, if an adverse party fails to pay any portion of any award of fees and costs, or if you do not obtain reimbursement of fees and costs from a third party.

**Communications And Records.** We make no guarantee as to the outcome of the Matter. In the course of this engagement, I or others at AK may from time to time express opinions or beliefs regarding the likely effectiveness of various courses of action or about results that may be anticipated. You understand that any such statements are opinions and beliefs only and are not promises or guarantees.

We will provide you with copies of correspondence and legal documents relating to the Matter and will keep you apprised of its status. We understand that such communications should be directed to you as the designated contact for this Matter and that you will communicate with all others within the Client as to the Matter. In turn, we expect that the Client will cooperate fully with AK and provide complete, timely and accurate information regarding the Matter, so that we can provide proper representation.

**Anderson Kill P.C.**

Leonid Shapiro, M.D.
November ___, 2022
Page 4

AK routinely communicates with its clients using unencrypted email, but also maintains e-mail encryption and encrypted filing sharing capabilities for communications which might warrant additional security. Please identify whether and to what extent, or for what types of communications or documents, you request that we use encryption or other heightened security measures.

Client should not use text messages to seek legal advice or to provide confidential information or documents. Client communications seeking legal advice or providing confidential information or documents should be conveyed by secure and private methods.

AK may on occasion reference our clients' names in a context (such as biographies, practice and website descriptions) which may be deemed to constitute lawyer advertising. Please let us know if you would prefer that we do not identify you in such contexts. Otherwise, by signing a copy of this letter you consent to AK's doing so, subject of course to our obligation to preserve client confidences and any other obligation with which lawyers must comply under any applicable disciplinary rules.

We also enclose for your reference the Statement of Client's Rights and the Statement of Client's Responsibilities adopted by the Administrative Board of the Courts of the State of New York.

**Duty to Preserve Documents and Electronically Stored Information.** To the extent Client has not done so already with regard to the Matter and to the extent any issue develops to the point you believe that litigation is reasonably foreseeable, Client agrees to take all prudent steps and diligent efforts to protect, preserve and maintain any documents that could be relevant to this Matter, including any documents that might be captured or stored electronically.

Some courts sanction litigants who fail to take steps to protect data and electronically stored information ("ESI") when litigation is imminent or pending. As such, all employees, officers and Client representatives or agents who have generated or have maintained files concerning a matter that can reasonably be anticipated to result in litigation should be advised and/or reminded to preserve all related documents, if litigation is imminent. You should consult your information technology group or consultant/vendor, if you have one, to see if there is any automatic purging of electronic records such as emails, Word documents, or spreadsheets. If or when litigation is reasonably anticipated or appears imminent, it is very important to suspend and halt any document purging program or policy that could involve relevant information to the Matter. One alternative if there is auto purging is to save the subject documents to a safe hard drive or other format to store relevant electronic documents to preserve them until this Matter is finally concluded.

**Anderson Kill P.C.**

Leonid Shapiro, M.D.
November ___, 2022
Page 5

An understanding of these issues, which relate to the duties of preservation and discovery of ESI, is an essential prerequisite to the development of a successful litigation strategy for every client. The duty to preserve potentially relevant information is triggered when litigation is reasonably foreseeable or commenced. Failure to comply with these rules can have dire consequences as noted above (including monetary sanctions and/or dismissal of claims or defenses). Accordingly, if litigation is reasonably foreseeable or already commenced, you should provide information to us concerning your information systems and digital data (including social media if any), and we should discuss this issue further.

**Compliance with United States Laws and Other Laws**. The firm expects its clients to comply fully with all federal, state and local laws in the conduct of their business activities. Among these laws are the USA Patriot Act, the Bulk Cash Statute, the Money Laundering Control Act of 1986, the Bank Secrecy Act, and most recently, the reporting requirements imposed by the United States Treasury Department's Financial Crimes Enforcement Network. These laws and enforcement of these laws can change frequently. You have not retained us for advice as to such laws. By executing this agreement, you represent to us that you are not aware of any circumstance that might give rise to a claim that funds you might use to pay the firm's fees and costs are subject to one or more of the above-referenced laws and that you had an opportunity to consult independent counsel with respect to your representation.

We will follow the firm's Records Policy, attached hereto.

**Arbitration of Disputes**. Although the firm believes it is unlikely to occur, it is possible that a dispute will later arise between us and you concerning some aspect of this representation. We believe most, if not all, disputes can be resolved amicably through informal discussions. We believe those that remain can be resolved more expeditiously and with less expense by binding arbitration than in court. This provision will explain under what circumstances such disputes shall be subject to binding arbitration.

Any and all disputes that we are unable to resolve between ourselves (including disputes concerning fees or costs, concerning any aspect of the attorney-client relationship, and/or concerning any claim arising out of or relating to this Agreement, including, without limitation, claims for breach of contract, professional negligence or malpractice, breach of fiduciary duty, misrepresentation or fraud) shall be arbitrated in accordance with the commercial arbitration rules of the American Arbitration Association ("AAA") (available on the AAA website, www.adr.org, at https://adr.org/rules), and any award issued in any such arbitration shall be enforceable in any court with jurisdiction. To the extent permitted by applicable law, the arbitration proceedings shall be confidential. Unless otherwise agreed in writing, the arbitration shall occur in the city in which the AK attorney primarily responsible for work on this Matter is officed at the time

**Anderson Kill P.C.**

Leonid Shapiro, M.D.
November ___, 2022
Page 6

that work on the Matter begins.  In this case, that would be New York City, County of New York.

By signing this Agreement, AK and Client acknowledge that they have had an opportunity to read the official written instructions and procedures for both Part 137 of the Rules of the Chief Administrator of the Courts of New York (22 NYCRR), enclosed herewith, and the commercial arbitration rules of the AAA, and Client has been advised: (1) that Client has the right to use the fee arbitration procedures of Part 137; and (2) that Client is not required to agree to arbitrate this fee dispute in an arbitral forum outside Part 137.  By signing this form, the firm and Client agree to waive their rights with regard to arbitration pursuant to Part 137, which includes the right to reject the arbitration award by commencing an action on the merits (trial de novo) in a court of law.  Client further acknowledges that this agreement to arbitrate results in a waiver of the right to a court or jury trial for any fee dispute and malpractice claim.  This also means that Client may be giving up rights to discovery and appeal, to compel witnesses and documents, to seek all available relief (except punitive damages which are provided for under state law), and to have the Matter heard in a public forum.  Client acknowledges that, before signing this Agreement and agreeing to binding arbitration, Client is entitled to, and has been given, a reasonable opportunity to seek the advice of independent counsel.

**Anderson Kill P.C.**

Leonid Shapiro, M.D.
November ___, 2022
Page 7

### Duration of the Engagement.

Please note that AK is not obligated to perform services in connection with the Matter until you have returned a copy of this Agreement to me duly countersigned and have provided us the required Retainer in the amount of $10,000 to be replenished each month after each monthly invoice is paid. However, the effective date of this engagement is the date on which we first in fact perform services. The date at the beginning of this letter is for reference only. If this letter is not signed and returned for any reason, Client will nevertheless be obligated to pay us the reasonable value of any services we have in fact performed, as well as the costs we have incurred on your behalf.

This matter does not include an appeal, which would be subject to another letter agreement. Client may terminate this representation at any time, and Client agrees that upon such termination it will pay reasonable fees and costs for reproducing a copy of the firm's file regarding the Matter. Subject to the applicable rules of professional conduct, we also reserve the right to withdraw, if among other things, Client fails to make timely payment of any invoice, fail to cooperate appropriately with AK, or if any fact or circumstance arises that renders our continuing representation unlawful or unethical. Any withdrawal from our representation would be subject to such approval as may be required from any court(s) in which we are appearing on your behalf. In the event of termination by either of us, fees and costs for work performed prior to termination would still be payable to the extent permitted by law.

The engagement will be considered terminated at the earliest of (i) Client's termination of the representation, (ii) AK's withdrawal from the representation, or (iii) the completion of AK's substantive work for Client, which, in the absence of a letter notifying you of the completion of the engagement, shall be presumed to occur six months after the rendition of the final bill.

**Miscellaneous.** This letter agreement states the total understanding between us as to our engagement. It may not be modified except in a writing executed by both of us. It shall be governed by the laws of the State of New York, without regard to conflict-of-law principles. This agreement may be signed in counterparts, and its execution indicates a commitment by all parties to be bound by its terms.

**Anderson Kill P.C.**

Leonid Shapiro, M.D.
November ___, 2022
Page 8

<u>**Conclusion**</u>. If these arrangements are satisfactory to you, we request that you countersign a copy of this letter and return it to us. Please let me know as soon as possible if you have any questions regarding anything set forth herein.

        Very truly yours,

        ANDERSON KILL P.C.

        By:_____
           Paul M. Kaplan

Agreed to and Accepted:

Metro Pain Specialists P.C.
Tri-Borough NY Medical Practice P.C.
Leonid Shapiro, M.D.

By: _*[signature]*_ Leonid Shapiro, M.D.
Its:____owner_____
Duly Authorized

PK:leh

Attachments

cc:    Records Department

docs-100534356.1

## ANDERSON KILL P.C.
## RECORDS POLICY

During the course of our representation of the Client, we will create or receive a variety of records, documents and data. These will include administrative records such as accounting records, but also records directly related to the work that we do during our representation of the Client, such as pleadings, correspondence, documents received from the Client and from third parties and so on. These may be paper or electronic, and if electronic may be maintained on our computer system, "cloud" computer systems as to which reasonable care is taken to ensure that the system is secure and that client confidentiality will be maintained, and/or on movable media such as tapes, CDs or DVDs. The records directly related to the work we do for the Client are collectively called the "Matter file."

At the close of a representation, we will re-organize and compact the file by removing duplicates and other extraneous material and returning original documents and other important documents to the Client or other parties from whom they were received. The file will then be sent to storage for a period of years as determined on our records retention schedule. Generally, the remaining file will be held in storage for seven years after the close of the Matter, although there may be some exceptions depending on the type of document.

At the end of the storage period, closed files that have no further value will be destroyed by a bonded records destruction service. Prior to any destruction, a responsible attorney conducts a review to determine that the file is of no further value, and to identify documents that may require longer retention. Some documents, determined on a case-by-case basis, may be segregated for longer term maintenance.

Prior to final disposition of the file, we will notify the Client of the impending disposition of the file. The notification will be sent by U.S. mail to the last address and contact person we have on file for the Client. If you are interested in receiving the notification, the Client must provide us with current contact information in the event that it changes after the close of the representation. If, after having received the notification, the Client would prefer that the file be returned, at the Client's expense, rather than being destroyed, the Client must respond to the notification with your instructions, within the time period stated in the notification letter. If the Client does not respond, we will assume that it has no further interest in the file and are authorizing its destruction.

docs-100534356.1

## STATEMENT OF CLIENT'S RIGHTS
### Section 1210.1 of the Joint Rules of the Appellate Division
### (22 NYCRR §1210.1)

1. You are entitled to be treated with courtesy and consideration at all times by your lawyer and the other lawyers and personnel in your lawyer's office.

2. You are entitled to an attorney capable of handling your legal Matter competently and diligently, in accordance with the highest standards of the profession. If you are not satisfied with how your Matter is being handled, you have the right to withdraw from the attorney-client relationship at any time (court approval may be required in some matters and your attorney may have a claim against you for the value of services rendered to you up to the point of discharge).

3. You are entitled to your lawyer's independent professional judgment and undivided loyalty uncompromised by conflicts of interest.

4. You are entitled to be charged a reasonable fee and to have your lawyer explain at the outset how the fee will be computed and the manner and frequency of billing. You are entitled to request and receive a written itemized bill from your attorney at reasonable intervals. You may refuse to enter into any fee arrangement that you find unsatisfactory. In the event of a fee dispute, you may have the right to seek arbitration; your attorney will provide you with the necessary information regarding arbitration in the event of a fee dispute, or upon your request.

5. You are entitled to have your questions and concerns addressed in a prompt manner and to have your telephone calls returned promptly.

6. You are entitled to be kept informed as to the status of your Matter and to request and receive copies of papers. You are entitled to sufficient information to allow you to participate meaningfully in the development of your Matter.

7. You are entitled to have your legitimate objectives respected by your attorney, including whether or not to settle your Matter (court approval of a settlement is required in some matters).

8. You have the right to privacy in your dealings with your lawyer and to have your secrets and confidences preserved to the extent permitted by law.

9. You are entitled to have your attorney conduct himself or herself ethically in accordance with the Code of Professional Responsibility.

10. You may not be refused representation on the basis of race, creed, color, religion, sex, sexual orientation, age, national origin or disability.

## STATEMENT OF CLIENT'S RESPONSIBILITIES
### (As adopted by the Administrative Board of the Courts)

Reciprocal trust, courtesy and respect are the hallmarks of the attorney-client relationship. Within that relationship, the client looks to the attorney for expertise, education, sound judgment, protection, advocacy and representation. These expectations can be achieved only if the client fulfills the following responsibilities:

1. The client is expected to treat the lawyer and the lawyer's staff with courtesy and consideration.

2. The client's relationship with the lawyer must be one of complete candor and the lawyer must be apprised of all facts or circumstances of the Matter being handled by the lawyer even if the client believes that those facts may be detrimental to the client's cause or unflattering to the client.

3. The client must honor the fee arrangement as agreed to with the lawyer, in accordance with law.

4. All bills for services rendered which are tendered to the client pursuant to the agreed upon fee arrangement should be paid promptly.

5. The client may withdraw from the attorney-client relationship, subject to financial commitments under the agreed to fee arrangement, and, in certain circumstances, subject to court approval.

6. Although the client should expect that his or her correspondence, telephone calls and other communications will be answered within a reasonable time frame, the client should recognize that the lawyer has other clients equally demanding of the lawyer's time and attention.

7. The client should maintain contact with the lawyer, promptly notify the lawyer of any change in telephone number or address and respond promptly to a request by the lawyer for information and cooperation.

8. The client must realize that the lawyer need respect only legitimate objectives of the client and that the lawyer will not advocate or propose positions which are unprofessional or contrary to law or the Lawyer's Code of Professional responsibility.

9. The lawyer may be unable to accept a case if the lawyer has previous professional commitments which will result in inadequate time being available for the proper representation of a new client.

10. A lawyer is under no obligation to accept a client if the lawyer determines that the cause of the client is without merit, a conflict of interest would exist or that a suitable working relationship with the client is not likely.



# THE NEW YORK STATE ATTORNEY-CLIENT FEE DISPUTE RESOLUTION PROGRAM (FDRP)

Published as a public service by the Board of Governors
New York State Attorney-Client Fee Dispute Resolution Program
C/O UCS Office of ADR & CI Programs

**25 BEAVER STREET, 8TH FLOOR • NEW YORK, NY 10004 • (877) FEES 137**

VISIT US AT WWW.NYCOURTS.GOV/FEEDISPUTE FOR FEE ARBITRATION FORMS OR ADDITIONAL INFORMATION.

## INTRODUCTION

The New York State court system has established a Statewide Fee Dispute Resolution Program (FDRP) to resolve attorney-client disputes over legal fees through arbitration (and in some cases mediation). The FDRP is established by Part 137 of the Rules of the Chief Administrator of the Courts, which is reprinted in this booklet.

This booklet has been designed to educate you about the FDRP and to help you make informed choices about whether the FDRP is right for you. Use this booklet if:

- You are trying to decide whether to use the FDRP process to resolve a fee dispute with your attorney, either because your attorney has given you notice of your right to use the FDRP or because you have learned about the FDRP on your own, or

- You are trying to decide whether you and your attorney should agree ahead of time in writing that any fee disputes that may arise between you will be resolved through the FDRP instead of the courts. (If this situation applies to you, it is very important that you read page 3 and the local program brochure located inside of this booklet.)

Please note that the FDRP's jurisdiction is limited to resolving attorney-client disputes over legal fees.

- The FDRP cannot address claims of lawyer misconduct. [1]

- The FDRP cannot address claims of lawyer malpractice. If you believe that your attorney committed malpractice in your case, you should not utilize the FDRP because it is possible that an arbitration decision against you with regard to the fee dispute could adversely affect your ability to pursue malpractice in court at a later date.

## WHAT IS FEE ARBITRATION AND THE FDRP?

Lawyers in New York State are generally required to provide their clients with retainer agreements or letters of engagement which discuss the fees and expenses to be charged. At the initial conference with your lawyer, you should request a retainer agreement or letter of engagement and ask any questions you may have regarding the fee to be charged.

Despite the letter of engagement and discussions about fees, sometimes disputes arise. In general, your lawyer may not sue you in court over a fee dispute unless he or she first provided you with notice of your right to utilize the FDRP. Once you have received this notice you have 30 days to decide whether to use the FDRP. If you don't choose to participate in the FDRP within 30 days, your lawyer is free to pursue the matter in court.

---

[1] In New York State, there are special attorney disciplinary or grievance committees charged with investigating complaints of professional misconduct. They operate under the authority of the Appellate Divisions of the Supreme Court: First Judicial Department, Manhattan (212) 401-0800; Second Judicial Department, Brooklyn (718) 923-6300; Hauppauge (631) 231-3775; White Plains (914) 949-4540; Third Judicial Department, Albany (518) 474-8816; Fourth Judicial Department, Syracuse (315) 471-1835; Rochester (585) 530-3180; Buffalo (716) 845-3630.

#### WHAT IS FEE ARBITRATION AND THE FDRP? (CONT.)

The FDRP is made up of a network of State-approved and monitored local programs that resolve attorney-client fee disputes outside of court through arbitration. Arbitration is a hearing conducted by one or more neutral persons who have special training and experience. One arbitrator or a panel of three arbitrators (at least one of whom must be a nonlawyer) listen to the arguments on both sides and decide the outcome of the dispute. Fee arbitration is fair, inexpensive and usually faster than going to court.

In addition to arbitration, some local programs may offer mediation. This is a process by which both sides meet with the assistance of a trained mediator to clarify issues and explore options for a mutually acceptable resolution. Mediation provides the opportunity for you and your attorney to discuss your concerns and reach a satisfactory result without going to court. Unlike an arbitrator, the mediator does not issue a decision. Participation in mediation is voluntary for your attorney and you, and it does not waive your right to arbitration. If you are interested in resolving your dispute through mediation, you may indicate this on the Request for Arbitration form. However, not every local program offers mediation.

If you are interested in using the FDRP process to resolve your dispute, or just want to learn more about the FDRP, please visit the FDRP web site at WWW.NYCOURTS.GOV/FEEDISPUTE.

#### WHEN DOES THE FDRP APPLY?

- Your attorney practices in New York and your case involved a civil matter (personal injury and criminal cases are not covered)
- The amount in dispute is between $1,000 and $50,000 (fee disputes can involve fees that you have already paid your attorney and for which you seek a refund, or fees that your attorney claims are owed by you)
- The legal representation began on or after January 1, 2002
- Your attorney has rendered services to you within two years prior to the filing of the request for fee arbitration

#### ALTERNATIVES TO FEE ARBITRATION

Fee arbitration provides clients and attorneys with an out-of-court option for resolving fee disputes, but that doesn't mean it's necessary or a good idea in your case. If you have a problem with your lawyer's bill, you should say so. Sometimes much unpleasantness can be prevented if you and your lawyer simply talk things over. Ask your lawyer to explain why the bill is higher than you expected. You may find out that your case was more complicated than you expected and took more time than you realized. Or your lawyer may agree that it is appropriate to adjust the bill. If discussion does not solve the problem, you can take the dispute to arbitration under the FDRP or choose to resolve it in court.

#### WHO ADMINISTERS THE PROGRAM AND HOW MUCH DOES IT COST?

The FDRP's Board of Governors has approved a number of local programs which administer the FDRP on a region by region basis. These local programs are run by bar associations or by the court system's regional Administrative Judges. All local programs have been carefully reviewed to ensure that they will resolve fee disputes in a fair, impartial and efficient manner. To find out which local program has jurisdiction over your fee dispute you need to identify the county in which the majority of the legal services in your case were performed. This is usually (but not always) the county where your lawyer's office is located. If you have a question about which local program will handle your dispute, please visit the FDRP's web site, WWW.NYCOURTS.GOV/FEEDISPUTE for an updated list of local programs.

The cost of utilizing the FDRP varies from program to program. You can find out about local program fees by checking the local programs section of the FDRP web site. Local programs charge about the same or less than it costs to file a case in court.

#### HOW DOES THE FEE ARBITRATION PROCESS START?

There are three ways in which you can enter the FDRP. In all three situations, the filing of a Request for Fee Arbitration form, available at WWW.NYCOURTS.GOV/FEEDISPUTE, officially starts the process.

### A. YOUR LAWYER HAS MAILED YOU A NOTICE OF CLIENT'S RIGHT TO ARBITRATE.

A dispute over fees exists between you and your lawyer and he or she has provided you with a form entitled "Notice of Client's Right to Arbitrate" (UCS 137-1). If you are reading this booklet, chances are that you have received this form. You now have 30 days to decide whether to utilize the FDRP by filing a form entitled "Client Request for Fee Arbitration" (UCS 137-4a) with the appropriate local program. (See page 4). Once you file the Client Request for Fee Arbitration your attorney will be required to participate in the FDRP unless your dispute is one that the FDRP is not designed to handle. (See page 4 to find out how the rest of the process works.)

If you do not file the Request for Fee Arbitration within 30 days, you lose your right to utilize the FDRP and your lawyer will be free to take legal action. (CONTINUED ON BACK COVER)

*PART 137 OF THE RULES OF THE CHIEF ADMINISTRATOR OF THE COURTS*

docs-100534356.1

### HOW DOES THE FEE ARBITRATION PROCESS START?
(CONTINUED FROM INSIDE)

**B. YOU HAVE NOT RECEIVED THE NOTICE OF CLIENT'S RIGHT TO ARBITRATE.**

You have not received the Notice of Client's Right to Arbitrate from your lawyer but decided to look into the FDRP on your own. You may have obtained this booklet directly from the FDRP web site, by contacting a local program directly or by asking your attorney to provide you with information about the FDRP. If you believe you have a fee dispute you should read this booklet carefully. If you then want to use the FDRP, complete the Client Request for Arbitration form (UCS 137-4a) and file it with the appropriate local program. Once you file this form, your attorney will be required to participate in the FDRP unless your dispute is one the FDRP is not designed to handle. (See page 4 to find out how the rest of the process works.)

**C. YOU AND YOUR LAWYER HAVE AGREED AHEAD OF TIME TO USE THE FDRP.**

You and your attorney previously agreed in writing to resolve fee disputes through the FDRP rather than in court. You probably agreed to this option when your attorney first began representing you and after you had the opportunity to read about the FDRP and how it works. If you believe that you have a fee dispute, you may simply file the Client Request for Arbitration form (UCS 137 - 4a) with the local program, together with a copy of the agreement to arbitrate. Filing the request form with the local program will start the process and your attorney will be required to participate. (See page 4 to find out how the rest of the process works.)

Alternatively, your attorney can start the process by filing a Request for Arbitration with the appropriate local program. If your attorney starts the process, you will be required to participate under the terms of your agreement.

See page 4 for more information on how you and your attorney can agree to use the FDRP ahead of time.

### I FILED A REQUEST FOR FEE ARBITRATION. WHAT HAPPENS NOW?

The process officially starts once you file the Client Request for Arbitration form with the local program (and pay the administrative fee, if there is one). Upon receiving your Request for Arbitration, the local program administrator will forward it to the attorney, who then has 15 days to complete an Attorney Response form (UCS 137-5a) and return it to the local program, with a copy to you.

Unless the fee dispute is rejected by the local program for jurisdictional reasons, you will then be given 15 days advance notice of the time and place of the arbitration hearing and the identity of the arbitrator(s).

Prior to the arbitration hearing someone from the local program may contact you in an effort to settle the dispute. In addition, some local programs may offer mediation services and you may be asked whether you wish to participate in mediation. Mediation is voluntary for both sides. If one side does not wish to mediate, or the attempt at mediation proves unsuccessful, the next step in the process is the arbitration hearing.

### WHAT IS THE PROCEDURE AT THE ARBITRATION HEARING?

Both parties have the right to present evidence and call witnesses. The burden of proof is on the attorney to prove the reasonableness of the disputed fee by a preponderance of the evidence. The attorney must present documentation of the work performed and the billing history. If witnesses are called, both parties have the right to question the witnesses at the hearing. Arbitration is less formal than court, so you do not necessarily need a lawyer to help you prepare for and/or represent you at the hearing. However, you may, of course, appear with an attorney at your own expense.

### THE ARBITRATION AWARD

Your arbitration hearing will result in a decision (arbitration award) issued by the arbitrator(s) within 30 days of the hearing. The arbitration award will be final and binding on both you and your attorney, unless either of you seeks a trial de novo within 30 days.

### REJECTION OF THE AWARD (TRIAL DE NOVO)

A trial de novo means that either you or your attorney can reject the arbitration award by filing a court action within 30 days after the award has been mailed. The arbitration award is not used as evidence in the court case. Since a trial de novo obviously will add significantly to the time and expense of resolving your fee dispute, you and your attorney may wish to waive this right ahead of time in writing. However, keep in mind that if you do so and agree to final and binding arbitration, the arbitrators' decision can be appealed only on very limited grounds.

### SHOULD I AGREE AHEAD OF TIME WITH MY ATTORNEY TO RESOLVE FEE DISPUTES THROUGH THE FDRP RATHER THAN THE COURTS?

It's up to you. Your attorney cannot force you to enter into such an agreement. The FDRP offers a quick, inexpensive and informal means of resolving fee disputes. Litigation in the courts can take longer and cost more. Unlike litigation in the courts, arbitration is confidential and closed to the public. The speed, informality and less confrontational nature of arbitration allows the parties to quickly get on with their lives.

On the other hand, you may prefer the formality of a lawsuit, and to have your dispute resolved by a judge or jury rather than by arbitrators. In a lawsuit, you have the right to conduct depositions and engage in pretrial fact finding, which are generally not permitted in arbitration, and to appeal a judgment that you think is contrary to law.

So think it over carefully. If you want to preserve your right to go to court to resolve disputes over fees, then you may wish to avoid binding and final arbitration and should not waive your right to a trial de novo. On the other hand, if you are interested in achieving closure quickly and inexpensively and want to avoid litigation in the courts, then you may wish to choose final and binding arbitration by waiving your right to a trial de novo.

To enter into a valid agreement ahead of time, the agreement must be in writing and specify that you read the written materials describing the rules and procedures of the FDRP and the appropriate local program. In addition, if you are agreeing to final and binding arbitration, the written agreement must specify that you understand that you are waiving your right to a trial de novo.

Anderson Kill P.C.

Leonid Shapiro, M.D.
November ___, 2022
Page 8

**Conclusion.** If these arrangements are satisfactory to you, we request that you countersign a copy of this letter and return it to us. Please let me know as soon as possible if you have any questions regarding anything set forth herein.

Very truly yours,

ANDERSON KILL P.C.

By: _____
Paul M. Kaplan

Agreed to and Accepted:

Metro Pain Specialists P.C.
Tri-Borough NY Medical Practice P.C.
Leonid Shapiro, M.D.

By: _Leonid Shapiro, M.D._____
Its: _____owner_____
Duly Authorized

PK:leh

Attachments

cc:   Records Department