**Katten**

KattenMuchinRosenman LLP

January 30, 2024

**Via ECF**

50 Rockefeller Plaza
New York, NY 10020-1605
212.940.8800 tel
www.katten.com

Magistrate Judge Peggy Kuo
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn NY 11201

**Christopher T. Cook**
christopher.cook@katten.com
212.940.6488 direct
212.940.8776 fax

Re:   *State Farm v. Metro Pain,* 21 Civ. 5523 – Response to Motion to Quash (Dkt. 502)

Dear Judge Kuo:

Plaintiffs State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company (collectively, "Plaintiffs") respectfully opposes Rego Park Seniors Club LLC's ("Rego Park") motion to quash Plaintiffs' subpoena seeking Rego Park's corporate bank records (the "Motion"). Dkt. 502; *see* 1/24/2024 Text Order. Contrary to Rego Park's assertions that it "has no relationship with any of the parties in this case" and "no stake in this litigation," defendant Yan Moshe owns 50% of Rego Park. It has received substantial sums from entities owned by Moshe and by his sister Dr. Regina Moshe, and paid substantial sums to Moshe, and thus is operating consistent with other entities used by the fraudulent scheme at issue to siphon proceeds and make those funds available to further the fraud. As a result, the subpoenaed records are relevant to numerous issues in this action, and the motion should be denied.

***Background***: The Second Amended Complaint ("SAC") alleges defendants Moshe, Reuven Alon, Dr. Moshe, Leonid Shapiro, and Vadim Dolsky operate the Metro Pain and Citimedical Clinics[1] and steer patients to ambulatory surgery centers ("ASCs") owned by Moshe. Dkt. 388. Patients receive unnecessary services at the clinics and ASCs for which insurers paid millions, and Moshe secretly owned and controlled the Citimedical Clinics. If, as the SAC alleges, the Citimedical Clinics are not owned by their paper owner, Dr. Moshe, but actually owned and controlled by a layperson (Moshe), then they were not entitled to reimbursement for no fault benefits. *See* 11 N.Y.C.R.R. § 65-3.16(a)(12). As a result, any claim they submitted to Plaintiffs representing they were entitled to benefits would have been false. One of the ways Plaintiffs intend to prove Moshe's ownership of the Citimedical Clinics is to establish his receipt of proceeds from their operations.

Plaintiffs also intend to show Moshe and his co-conspirators use a network of companies to hide the flow of money to advance the scheme for at least two purposes: (1) to get proceeds from the Citimedical Clinics to Moshe; and (2) to make proceeds available so they can be used to secure patients (i.e., payments for kickbacks and other referral sources).[2] For example, the

---

[1] "Citimedical Clinics" refers to the following defendants: Citimedical I PLLC, Citimed Services P.A., Citimedical Services P.C., and Citimed Complete Medical Care P.C.

[2] The SAC discusses Law Cash Advances, which was a shell company through which "corrupt medical clinics and lawyers" paid for the referral of patients and clients who had been injured in motor vehicle accidents. Law Cash Advances is owned by Jelani Wray, who pled guilty in October 2021 to paying bribes and gratuities to 911 operators and hospitals and who has connections to both Shapiro and Moshe. *See* SAC ¶¶ 22, 253–55.

Citimedical Clinics made payments to Star Solution Services Inc., a purported billing entity owned by Moshe, despite the fact that their paper owner, Dr. Moshe, had her own billing entity Citimed Management. Similarly, Dolsky's entity Five Star Services Inc., discussed in another motion (Dkt. 501), received substantial amounts from Citimedical Clinics and transferred those funds to Dolsky's personal bank accounts which were then used to purchase untraceable assets like gold, diamonds, and cryptocurrency. *Id*.

Rego Park appears to be serving a similar function here, despite claims in its motion and claims on its website to be a social, health, and wellness service provider for seniors. In November 2023, Popular Bank produced records, including Rego Park's tax returns, identifying Giga Life LLC as holding a 50% ownership stake in Rego Park, and Moshe as holding a 99% interest in Giga Life (Moshe's wife owns the other 1%). At the same time, Rego Park operates out of and pays rent for space at Yan Moshe's building at 63-36 99th Street in Rego Park, New York — the same location at which the Citimedical Clinics operate and for which Citimedical I and Citimed Management paid more than $1.1 million in purported "rent" payments. Payments by Citimedical I and Citimed Management to 6336 Holdings LLC ("6336 Holdings") are believed to be among the ways funds are siphoned from the Citimedical Clinics to Moshe.

Moshe has hidden his relationship with Rego Park, and even now Rego Park's assertion that "it [has] no relationship with any of the parties in this case" is misleading, if not patently false. Indeed, in response to interrogatories that specifically required him to disclose entities in which he has an interest, Moshe did not disclose (and still has not disclosed) his interest in Rego Park or produced any documents relating to the entity.

Financial records indicate Rego Park's role. On the one hand, it is the recipient of considerable sums from Moshe and Dr. Moshe entities. On one day, Moshe's ASCs Dynamic Surgery and HealthPlus Surgery wired separate payments of $30,000 to Rego Park totaling $60,000. Similarly, Citimed Management (which is alleged to be a passthrough to get proceeds from the Citimedical Clinics to Moshe) has paid Rego Park more than $49,000 for purported "catering" and "events" apparently hosted at 6336 99th Street. Citimed Management has produced no records supporting the services rendered in exchange for these payments. There are real questions as to why a senior center (half owned by Moshe and operating out of his building) is receiving such significant payments from ASCs and no-fault clinics.

As with other entities at issue in this case, what happens to the money next is equally telling. Rego Park purports to pay rent for its use of space in Yan Moshe's building at 63-36 99th Street to the Moshe entity which owns the building, 6336 Holdings. But Rego Park has paid more than $2.3 million to 6336 Holdings in ways inconsistent with how rent is typically paid. Rego Park's payments are made in varying amounts and in intervals inconsistent with rent. For example, in 2018, Rego Park made 11 payments to 6336 Holdings in amounts between $15,000 and $50,000 totaling $440,000. In 2019, it made 18 payments to 6336 Holdings in amounts between $20,000 and $50,000 totaling $690,000.

Rego Park also made other payments to Moshe that do not even purport to be rent. For example, Rego Park made three payments totaling $25,000 to Moshe's Med Capital, which is alleged to pay kickbacks to no-fault providers in exchange for referring patients to Moshe's ASCs. *See* SAC ¶ 209. There appears to be no legitimate reason for these transfers by a senior center to a purported no-fault funding company, and Med Capital has produced no documents supporting

them in response to a subpoena served by Plaintiffs. At the same time, Rego Park's owner Kalendarev has also directed more than $300,000 in payments to 6336 Holdings from another entity with its principal place of business at 63-36 99th Street, Rego Park Consulting LLC.

Simply stated, money is flowing into Rego Park from entities owned by Moshe and by his sister defendant Dr. Regina Moshe on paper, and out of it to Moshe. This pattern is consistent with other entities at issue in the scheme including Star Solutions and Five Star.

***Legal Standard***: On a motion to quash, "the party issuing the subpoena [must demonstrate] the relevance of the requested documents, [and the movant] . . . bears the burden of demonstrating that the subpoena is over-broad, duplicative, or unduly burdensome." *Sky Med. Supply Inc. v. SCS Support Claim Servs., Inc.*, 2017 WL 1133349, at *3 (E.D.N.Y. Mar. 24, 2017). As Rego Park concedes, "relevance" under FRCP 26 "encompass[es] any matter than bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." Mot. at 3 (quoting *Oppenheimer Fund. v. Sanders*, 437 U.S. 340, 351 (U.S. 1978)). "The party moving to quash a subpoena bears a heavy burden of proof." *Kirschner v. Klemons*, 2005 WL 1214330, at *2 (S.D.N.Y. May 19, 2005).

***Analysis***: The subpoenaed records are relevant to numerous issues in the action, including but not limited to Plaintiffs' allegations Moshe owns and controls the Citimedical Clinics and defendants have engaged in a scheme through which fraudulent proceeds are moved through a network of corporations owned or controlled by defendants to hide the movement of money and to further the scheme.

As set forth above, Rego Park's financial records are linked directly to the defendants and likely to lead to new information bearing on the alleged scheme. At a minimum, Rego Park's bank records are relevant to understanding the "scope and details of the fraud scheme, the involvement and relationships among defendants and related third parties involved in the scheme, [and] how the fraud scheme operated." *SFMAIC v. Pointe Physical Therapy, LLC*, 255 F. Supp. 3d 700, 707 (E.D. Mich. 2017) (denying motions to quash subpoenas for nonparties' bank records in health-care fraud case); *see also SFMAIC v. Tabakman*, 2008 WL 4257731, at *2 (E.D.N.Y. Oct. 3, 2008) (rejecting nonparties' argument in health-care fraud case that bank subpoenas were a "fishing expedition" and concluding they were relevant and discoverable); *SFMAIC v. Fayda*, 2016 WL 4530890, at *3 (E.D.N.Y. Mar. 24, 2016) (similar).

Rego Park's only argument in support of quashing the subpoena is a privacy interest rooted in having "no stake in this litigation," which is belied by Rego Park's misleading statements that it "has no relationship with any of the parties in this case" and "[t]here has been no exchange of assets whatsoever between any of the Defendants in this case and Rego Park." Mot. at 1. Moshe not only holds a 50% interest in Rego Park, but has withheld that interest from disclosure despite being served with interrogatories requesting he identify any entity in which he holds an ownership or financial interest and being ordered by this Court to produce complete and accurate interrogatory responses on at least two occasions. *See* 8/25/2023 Text Order; 11/15/2023 Text Order. As the subpoenaed records are relevant and Rego Park cannot show the subpoena is overly broad, duplicative, or unduly burdensome, the motion to quash should be denied.

Respectfully submitted,

*/s/ Christopher T. Cook*

Christopher T. Cook