**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company, | ) ) ) ) | Case No. 1:21-cv-05523-MKB-PK |
| Plaintiffs, | ) ) | Hon. Margo K. Brodie |
| v. | ) ) | Magistrate Peggy Kuo |
| Metro Pain Specialists, P.C. et al., | ) ) | |
| Defendants. | ) | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS DEFENDANTS' COUNTERCLAIMS**

Ross O. Silverman (NY Bar No. 4147922)
Jonathan L. Marks (NY Bar No. 5462874)
KATTEN MUCHIN ROSENMAN LLP
525 West Monroe Street
Chicago, Illinois 60661-3693
Telephone: 312.902.5200
Facsimile: 312.902.1061
ross.silverman@katten.com
jonathan.marks@katten.com

Christopher T. Cook (NY Bar No. 5112123)
KATTEN MUCHIN ROSENMAN LLP
50 Rockefeller Plaza
New York, NY 10020-1605
Telephone: 212.940.8800
christopher.cook@katten.com

*Attorneys for Plaintiffs State Farm Mutual
Automobile Insurance Company and State Farm
Fire and Casualty Company*

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................. 2

  I. The No-Fault Laws ...................................................................................................... 2

  II. State Farm's claims handling processes .................................................................. 3

ARGUMENT ....................................................................................................................... 5

  I. The Metro Pain Defendants' Common-Law Fraud Claim Should be Dismissed .................. 5

    A. The Metro Pain Defendants' fraud claim is impermissibly premised on an alleged breach of a contractual duty. ................................................................................ 6

    B. The Metro Pain Defendants' fraud claim fails on the merits. .......................... 11

  II. The Counterclaim Defendants' Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing Should be Dismissed. ...................................................... 16

    A. The Counterclaim Defendants fail to allege bad faith. ..................................... 16

    B. The Counterclaim Defendants' claim is duplicative of breach of contract claims they have attempted to pursue in New York state court. ......................................... 17

  III. The Counterclaim Defendants' Claim for Deceptive Business Practices Under New York General Business Law § 349 Should be Dismissed. .............................................. 18

    A. State Farm's alleged statements were not directed at consumers. .................... 18

    B. State Farm's alleged conduct is not knowingly misleading in a material way. ............... 22

  IV. The Dolsky Defendants' Counterclaims are Replete with False and Unsupported Allegations and Fail to State a Claim for Relief. ...................................................... 22

  V. Dr. Shapiro and Vadim Dolsky Do Not Have Standing to Assert Claims Based on the Denial of No-Fault Benefits. ...................................................................................... 24

CONCLUSION .................................................................................................................. 25

# TABLE OF AUTHORITIES

## Cases

*Allstate Ins. Co. v. Avetisyan*,
    422 F. Supp. 3d 672 (E.D.N.Y. 2019) ............................................................. 18

*Allstate Ins. Co. v. Batsiyan*,
    No. 05-cv-5933, 2008 WL 11434462 (E.D.N.Y. Mar. 12, 2008) ..................... 25

*Am. Transit Ins. Co. v. PDA NY Chiropractic, P.C.*,
    195 N.Y.S.3d 427 (N.Y. Sup. Ct. 2023) ......................................................... 17

*Bayshore Cap. Advisors, LLC v. Creative Wealth Media Fin. Corp.*
    No. 22-cv-1105, 2023 WL 2751049 (S.D.N.Y. Mar. 31, 2023) ......................... 8

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ....................................................................................... 14

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ....................................................................................... 22

*Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*,
    98 F.3d 13 (2d Cir. 1996) ....................................................................... *passim*

*Cauff Lipman & Co. v. Apogee Fin. Grp., Inc.*,
    No. 90-cv-5970, 1991 WL 64197 (S.D.N.Y. Apr. 18, 1991) ............................. 6

*Cortec Indus., Inc. v. Sum Holding L.P.*,
    949 F.2d 42 (2d Cir. 1991) ............................................................................. 13

*Cronos Grp. Ltd. v. XComIP, LLC*,
    64 N.Y.S.3d 180 (1st Dep't 2017) .................................................................... 8

*Daniels v. Provident Life & Cas. Ins. Co.*,
    No. 00-cv-0668, 2001 U.S. Dist. LEXIS 11388 (W.D.N.Y. 2001) ................... 20

*Deutsche Bank Nat. Tr. Co. v. Quicken Loans Inc.*,
    810 F.3d 861 (2d Cir. 2015) ........................................................................... 17

*Dooley v. Metro. Jewish Health Sys.*,
    No. 02-cv-4640, 2003 WL 22171876 (E.D.N.Y. July 30, 2003) ....................... 6

*E. Cont'l Min. & Dev. Ltd. v. Signet Grp. LLC*,
    No. 13-cv-1930, 2013 WL 6503526 (S.D.N.Y. Dec. 9, 2013) ........................... 9

*Evans v. Nassau County*,
    184 F.Supp.2d 238 (E.D.N.Y. 2002) ........................................................................ 22

*Four Winds of Saratoga, Inc. v. Blue Cross and Blue Shield of Central New York*,
    660 N.Y.S.2d 236 (3d Dep't 1997) ........................................................................ 20

*Ginsburg Dev. Cos., LLC v. Carbone*,
    22 N.Y.S.3d 485 (2d Dep't 2015) ........................................................................ 15

*Green Harbour Homeown'rs' Ass'n., Inc. v. G.H. Dev. & Const., Inc.*,
    763 N.Y.S.2d 114 (N.Y. App. Div. 2003) ........................................................... 19

*Greenspan v. Allstate Ins. Co.*,
    937 F. Supp. 288 (S.D.N.Y. 1996) .............................................................. 7, 15, 21

*Hall v. EarthLink Network, Inc.*,
    396 F.3d 500 (2d Cir. 2005) ................................................................................ 17

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
    No. C 07-5944 SC, 2014 WL 1091095 (N.D. Cal. Mar. 13, 2014) ....................... 23

*In re Fifth Jud. Dist. Asbestos Litig.*,
    784 N.Y.S.2d 829 (N.Y. Sup. Ct. 2004) ............................................................. 15

*In re Nokia Oyj (Nokia Corp.) Sec. Litig.*,
    423 F. Supp. 2d 364 (S.D.N.Y. 2006) ................................................................ 12

*Individuals Sec., Ltd. v. Am. Int'l Grp., Inc.*,
    826 N.Y.S.2d 92 (N.Y. App. Div. 2006) ............................................................... 6

*Inwood Hill Med. P.C. v. Allstate Ins. Co.*,
    No. 43154/03, 2004 WL 1381082 (N.Y. Civ. Ct. June 18, 2004) ......................... 24

*Iwachiw v. GE Corp.*,
    CV 99-3668, 2000 U.S. Dist. LEXIS 9742 (E.D.N.Y. Feb. 22, 2000) ................... 22

*JN Contemp. Art LLC v. Phillips Auctioneers LLC*,
    507 F. Supp. 3d 490 (S.D.N.Y. 2020) ................................................................ 16

*Josephson v. United Healthcare Corp.*,
    No. 11-cv-3665, 2012 WL 4511365 (E.D.N.Y. Sept. 28, 2012) ........................... 20

*Liberty Mut. Ins. Co. v. State*,
    405 N.Y.S.2d 945 (N.Y. Ct. Cl. 1978) ................................................................... 2

*Naughright v. Weiss*,
   826 F. Supp. 2d 676 (S.D.N.Y. 2011) ................................................................ 11

*New York Univ. v. Cont'l Ins. Co.*,
   662 N.E.2d 763 (N.Y. 1995) ......................................................................... 7

*New York v. Feldman*,
   210 F. Supp. 2d 294 (S.D.N.Y. 2002) .............................................................. 19

*O'Hearn v. Bodyonics, Ltd.*,
   22 F. Supp. 2d 7 (E.D.N.Y. 1998) .................................................................. 17

*Oliver Wyman, Inc. v. Eielson*,
   No. 15-cv-5305, 2016 WL 5339549 (S.D.N.Y. Sept. 22, 2016) ................................ 9

*Osan Ltd. v. Accenture LLP*,
   454 F. Supp. 2d 46 (E.D.N.Y. 2006) ............................................................... 10

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,
   647 N.E.2d 741 (N.Y. 1995) ................................................................... 19, 22

*Panwest NCA2 Holdings LLC v. Rockland NCA2 Holdings, LLC*,
   166 N.Y.S.3d 534 (1st Dep't 2022) ................................................................. 9

*Paulicopter-Cia. v. Bank of Am., N.A.*,
   122 N.Y.S.3d 593 (1st Dep't 2020) ................................................................ 16

*Precision Imaging of New York, P.C. v. Allstate Ins. Co.*,
   263 F. Supp. 3d 471 (S.D.N.Y. 2017) .............................................................. 20

*Rombach v. Chang*,
   355 F.3d 164 (2d Cir. 2004) ......................................................................... 12

*Sampson v. Medisys Health Network Inc.*,
   No. 10-cv-1342, 2011 WL 579155 (E.D.N.Y. Feb. 8, 2011) ..................................... 10

*Servedio v. State Farm Ins. Co.*,
   814 F. Supp. 2d 214 (E.D.N.Y. 2011) ............................................................... 8

*Shields v. Citytrust Bancorp, Inc.*,
   25 F.3d 1124 (2d Cir. 1994) ......................................................................... 12

*Shinano Kenshi Corp. v. Honeywell Int'l Inc.*,
   No. 22-cv-3704, 2023 WL 2431327 (S.D.N.Y. Mar. 9, 2023) ..................................... 9

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016) ...................................................................... 25

*State Farm Mut. Auto. Ins. Co. v. Mallela*,
  175 F. Supp. 2d 401 (E.D.N.Y. 2001) ......................................... 21

*Teller v. Bill Hayes, Ltd.*,
  630 N.Y.S.2d 769 (2d Dep't 1995) ............................................... 19

*U.W. Marx, Inc. v. Bonded Concrete, Inc.*,
  776 N.Y.S.2d 617 (3d Dep't 2004) .............................................. 19

*Vaughn v. Consumer Home Mortg.*,
  No. 01-cv-7937, 2003 WL 21241669 (E.D.N.Y. Mar. 23, 2003) ........... 11

*Wilson v. Nw. Mut. Ins. Co.*,
  625 F.3d 54 (2d Cir. 2010) ........................................................... 21

**Statutes**

10 N.Y.C.R.R. § 34-1.3 ................................................................... 3

11 N.Y.C.R.R. pt. 65 ............................................................... *passim*

8 N.Y.C.R.R. § 29.1 ......................................................................... 3

N.Y. Educ. Law § 6530 ................................................................... 3

N.Y. G.B.L. § 349(a) ..................................................................... 18

N.Y. Ins. § 409(a) ...................................................................... 4, 22

N.Y. Ins. Law § 5010 ...................................................................... 2

N.Y. Pub. Health Law §§ 238 ......................................................... 3

**Rules**

Fed. R. Civ. P. 8(a)(2) .................................................................. 22

**Treatises**

Richard E. Givens, Overall Scope of General Business Law §§ 349–350, Supplementary Practice
  Commentaries 166, 167 (McKinney Supp. 1996) ......................... 19

## INTRODUCTION

In an attempt to fabricate a defense to State Farm's comprehensive allegations regarding the Defendants' scheme to perpetrate massive fraud on New York's no-fault insurance system, Defendants Metro Pain Specialists P.C. ("Metro Pain"), Leonid Shapiro, M.D. ("Dr. Shapiro"), Tri-Borough NY Medical Practice, P.C.'s ("Tri-Borough," and together with Metro Pain and Dr. Shapiro, the "Metro Pain Defendants"), asserted three counterclaims against Plaintiffs State Farm Mutual Automobile Insurance Co. and State Farm Fire and Casualty Co. (collectively, "State Farm"). *See* ECF 400. And more recently, Defendants Optimum Health Acupuncture, P.C. ("Optimum") and its owner Vadim Dolsky (together with Optimum, the "Dolsky Defendants") filed their own counterclaims, which appear to copy almost verbatim from the Metro Pain Defendants. *See* ECF 489. According to their conclusory allegations, the Metro Pain Defendants and the Dolsky Defendants (collectively, the "Counterclaim Defendants") allege that, long ago, State Farm made up their minds to deny claims for no-fault benefits submitted by Metro Pain, Tri-Borough, and Optimum, and yet, State Farm continued to make requests for verification of these claims and examinations under oath—as provided by New York's no-fault insurance laws. ECF 400 ¶ 9; ECF 489 ¶ 8. The Counterclaim Defendants allege the requests were a ruse by State Farm to unlawfully delay and ultimately deny valid no-fault claims by Metro Pain, Tri-Borough, and Optimum while obtaining pre-litigation discovery for this case. *Id.*

The Metro Pain Defendants assert three causes of action: (1) fraud/fraudulent misrepresentation, (2) breach of the implied covenant of good faith and fair dealing, and (3) deceptive business practices under New York General Business Law section 349. ECF 400 ¶¶ 10-12, 56-78. The Dolsky Defendants assert two causes of action: (1) breach of the implied covenant of good faith and fair dealing, and (2) deceptive business practices under New York

General Business Law section 349. ECF 489 ¶¶ 10-11, 26-39.

The counterclaims fail to state a claim for relief. To begin, the Metro Pain Defendants' fraud claim fails three times over: it is impermissibly premised on a breach of contract, they failed to allege any knowingly false statement by State Farm, and the Metro Pain Defendants did not— and cannot—allege reliance on any supposed false statement by State Farm. The Counterclaim Defendants' identical claims for breach of the implied covenant of good faith and fair dealing fail twice over because they duplicate breach of contract claims the Counterclaim Defendants have already pursued in other proceedings, and the Counterclaim Defendants fail to allege bad faith. The Counterclaim Defendants' claims for deceptive business practices under New York General Business Law section 349 also fail two times over because State Farm's conduct was not directed at consumers, nor was it misleading in a material way. And because the Dolsky Defendants' counterclaims are copied from the Metro Pain Defendants' counterclaims and built on false and conclusory allegations, they violate Rule 8 of the Federal Rules of Civil Procedure, further warranting their dismissal. Lastly, Dr. Shapiro and Vadim Dolsky have not submitted any claims for No-Fault benefits to State Farm and, therefore, do not have standing to assert claims based on State Farm's denial of other Defendants' No-Fault claims.

## BACKGROUND

### I.   The No-Fault Laws

State Farm provides automobile insurance in the State of New York under New York's Comprehensive Motor Vehicle Insurance Reparations Act (N.Y. Ins. Law § 5010, *et seq.*) and the regulations promulgated pursuant thereto (11 N.Y.C.R.R. pt. 65, *et seq.*) (collectively the "No-Fault Laws"). Where they apply, the No-Fault Laws are incorporated into the insured's contract. *See Liberty Mut. Ins. Co. v. State*, 405 N.Y.S.2d 945, 947 (N.Y. Ct. Cl. 1978) (explaining the No-Fault Laws' provisions are "legislatively mandated" to be "incorporate[ed] into [a] policy with the

insured"). Insureds may assign their benefits to "providers of health care services," who can then submit claims directly to insurers for medical services provided. 11 N.Y.C.R.R. § 65-3.11(a). Pursuant to such assignments, health care providers can then submit claims directly to insurance companies and receive payments. *Id.* When an insurer denies a claim, the provider may bring an action for breach of contract. *See id.* § 65-3.9(c).

A provider of health services is not eligible for reimbursement under § 5102(a)(1) under several circumstances, including if the medical services or goods provided were not medically necessary or were provided pursuant to unlawful referrals or kickbacks. N.Y. Pub. Health Law §§ 238-a, 238-d; 10 N.Y.C.R.R. § 34-1.3; N.Y. Educ. Law § 6530(17)-(19); 8 N.Y.C.R.R. § 29.1(b)(2)-(4).

## II.    State Farm's claims handling processes

Pursuant to the No-Fault Laws, State Farm is permitted to verify claims for No-Fault Benefits are for treatment that is medically necessary and otherwise rendered in compliance with the No-Fault Laws. 11 N.Y.C.R.R. § 65-1.1. State Farm is permitted to deny reimbursement for claims that do not meet those standards. *Id.*

Specifically, when medical providers such as the Counterclaim Defendants submit claims for reimbursement, the No-Fault Laws permit State Farm to request patients' medical records, as well as "any other pertinent information that may assist [State Farm] in determining the amount due and payable." *Id*. The No-Fault Laws also require patients to submit to medical examinations "when, and as often as, [State Farm] may reasonably require" and permit State Farm to take examinations under oath. *Id*. And, in accordance with those laws, State Farm may deny claims for treatment that is medically unnecessary or not rendered in compliance with the No-Fault Laws.

In addition, the No-Fault Laws require insurers to create and follow a "plan for the detection, investigation and prevention of fraudulent insurance activities in this state." N.Y. Ins.

Law § 409(a). Pursuant to this plan, insurers are required to establish "a full-time special investigations unit . . . responsible for investigating information on or cases of suspected fraudulent activity and for effectively implementing fraud prevention and reduction activities." *Id*. § 409(b)(1).

As explained in the Second Amended Complaint, State Farm sought to verify some of the claims received from the Counterclaim Defendants to decide whether to pay them by requesting documents and examinations under oath on multiple occasions based on objective standards justifying the need for the information.  ECF 388, ¶ 509. The Counterclaim Defendants failed or refused to provide the requested verification of their claims, which constituted a material breach of State Farm's insurance policies and No-Fault Laws and in some instances led State Farm to deny claims. *Id*. ¶¶ 510-11. The Counterclaim Defendants assert these verification requests were fraudulent because State Farm already decided to deny the claims. But the details of the counterclaims, and the documents referenced in the Metro Pain Defendants' counterclaims tell a different story.

Most notably, despite years of discovery, the Counterclaim Defendants plead no facts (let alone any smoking gun admissions) showing State Farm had actually made up its mind to deny claims but continued to press for verifications and examinations under oath. Instead, the well-pleaded allegations merely establish—and the documents they incorporate show—State Farm had legitimate concerns about payment. Rather than deny these claims without justification, State Farm scrutinized them carefully and, consistent with their rights and obligations under the No-Fault Laws, *see* 11 N.Y.C.R.R. § 65-1.1, requested more information to evaluate the claims. Rather than providing such information so State Farm could make an informed claims decision about whether to pay the claims, the Counterclaim Defendants resisted the verification process.

For example, one of the documents attached to the Metro Pain Defendants' original counterclaims, ECF 377, shows State Farm was forced to continually press for verification of the Metro Pain Defendants' claims because they were engaging in "continuous billing . . . without additional verification being supplied." ECF 377-7, attached as Exhibit A. That document further shows State Farm "continue[d] to investigate Metro Pain for necessity," and were working to address "items [that] c[ouldn't] be located" regarding Dr. Shapiro. *Id.* Rather than acknowledging this, the Metro Pain Defendants selectively quote from the document—and omit the entire document as an exhibit to their amended counterclaims, ECF 400—to suggest State Farm acknowledged Metro Pain's counsel had "supplied all of the requested verification materials on June 24, 2020." ECF 400 ¶ 37. In reality, the document makes plain the Metro Pain Defendants' "responses to the verification requests were incomplete and required further production of documents." *Id.* Indeed, they show State Farm sought verification of medical providers' claims in good faith based on a legitimate need for additional information.

## ARGUMENT

### I.     The Metro Pain Defendants' Common-Law Fraud Claim Should be Dismissed.

The Metro Pain Defendants fail to state a claim for common-law fraud. To begin, the Metro Pain Defendants' fraud claim is predicated on a legal duty that arises under contract, which "is not sufficient to support a claim of fraud under New York law." *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 19 (2d Cir. 1996). In addition, the Metro Pain Defendants fail to allege two essential elements of common-law fraud: a statement by State Farm that was knowingly false at the time it was made and reliance by the Metro Pain Defendants. These defects warrant dismissal of the Metro Pain Defendants' fraud claim.

**A. The Metro Pain Defendants' fraud claim is impermissibly premised on an alleged breach of a contractual duty.**

Under New York Law, "[a] cause of action to recover damages for fraud does not lie when, as here, the only fraud charged relates to the breach of a contract." *Individuals Sec., Ltd. v. Am. Int'l Grp., Inc.*, 826 N.Y.S.2d 92, 94 (N.Y. App. Div. 2006); *see also Dooley v. Metro. Jewish Health Sys.*, No. 02-cv-4640, 2003 WL 22171876, at *10 (E.D.N.Y. July 30, 2003) (Gleeson, J.) ("a plaintiff cannot maintain a claim for fraud 'when the only fraud charged relates to a breach of contract'" (quoting 60A N.Y. Jur. 2d Fraud and Deceit § 7, at 27 (2001)). Notably, dismissal of fraud claims that arise from a breach of contract are appropriate, even if there is no breach of contract claim pled. *See Cauff Lipman & Co. v. Apogee Fin. Grp., Inc.*, No. 90-cv-5970, 1991 WL 64197, at *2 (S.D.N.Y. Apr. 18, 1991) (Wood, J.) (rejecting a claimant's argument "that because their counterclaim does not allege breach of contract, their fraud claim is not 'redundant'" and explaining that a fraud claim that "concern[s] the performance of a contract" must be dismissed regardless of whether a breach of contract claim is also pled).

As the Second Circuit has explained, "[t]o maintain a claim of fraud in such a situation, a plaintiff must either: (i) demonstrate a legal duty separate from the duty to perform under the contract; or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract; or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages." *Bridgestone*, 98 F.3d at 20 (internal citations omitted). The Metro Pain Defendants cannot satisfy any of these tests.

**i. The Metro Pain Defendants fail to show a legal duty separate from State Farm's duty to perform under contract.**

The legal duty the Metro Pain Defendants are attempting to enforce through their fraud claim is the duty "regarding [State Farm's] obligation to pay the claims submitted by the Metro Pain Defendants." ECF 400 ¶ 57. This is the same legal duty that allegedly arises because the

Metro Pain Defendants' patients have purportedly assigned their rights to payment under their insurance policies with State Farm. *Id.* ¶ 17. Thus, the Metro Pain Defendants have no right to payment from State Farm absent their patients' insurance policies.

In an attempt to plead around this issue, the Metro Pain Defendants allege State Farm had duties "beyond its contractual duty to pay covered claims, including the duty to follow certain 'claim practice principles.'" ECF 443 at 1 (quoting 11 NYCRR § 65-3.2(a)-(c)). But these alleged duties are based solely on the No-Fault Laws incorporated into State Farm's policies with insureds. *See* ECF 400 ¶¶ 18-19. Any alleged breach of these duties does not support a claim for fraud. *See Greenspan v. Allstate Ins. Co.*, 937 F. Supp. 288, 291 (S.D.N.Y. 1996) (holding the alleged misstatement—that the insurer "would honor its contractual obligations and obey the law"—"does not support a fraud claim"); *New York Univ. v. Cont'l Ins. Co.*, 662 N.E.2d 763, 769 (N.Y. 1995) ("To the extent that plaintiff alleges that defendants engaged in a 'sham' investigation to perpetuate their allegedly fraudulent scheme, those allegations merely evidence plaintiff's dissatisfaction with defendants' performance of the contract obligations.").

> ii. **The Metro Pain Defendants have not alleged a fraudulent misrepresentation collateral or extraneous to their patients' insurance contracts with State Farm.**

The Metro Pain Defendants assert their fraud claim is based on "misrepresentations made by State Farm long after the formation of the contract" regarding State Farm's need for information from the Metro Pain Defendants. ECF 443 at 2. But State Farm made alleged requests for verification and examinations under oath pursuant to the No-Fault Laws, which are incorporated into the No-Fault insurance policies of the Metro Pain Defendants' patients. *See* ECF 400 ¶¶ 18-19. Thus, those requests were not "collateral" or "extraneous" to State Farm's contracts with insureds. *See Bridgestone*, 98 F.3d at 20. Rather, State Farm's requests for verification are "intrinsic" to State Farm's contracts with insureds, and as such, these statements—even if they

were false—cannot form the basis of a fraud claim. *Servedio v. State Farm Ins. Co.*, 814 F. Supp. 2d 214, 220 (E.D.N.Y. 2011) (Block, J.) ("A plaintiff relying on representations intrinsic to an agreement is limited to a breach of contract claim."), *on reconsideration in part on other grounds*, 889 F. Supp. 2d 450 (E.D.N.Y. 2012), *aff'd*, 531 F. App'x 110 (2d Cir. 2013) (non-precedential).

The Metro Pain Defendants cite *Bayshore Cap. Advisors, LLC v. Creative Wealth Media Fin. Corp.* for the proposition that "misrepresentations of present facts made post-contract formation are collateral or extraneous to the contract," but that case is inapposite. ECF 443 at 2 (citing No. 22-cv-1105, 2023 WL 2751049, at *25 (S.D.N.Y. Mar. 31, 2023)). In that case, the defendant, after entering into an investment contract with the plaintiff, falsely represented it had obtained certain financing guarantees, which constituted "a misrepresentation of a present fact" collateral to the parties' agreement. *Bayshore*, 2023 WL 2751049, at *25 . Conversely, the Metro Pain Defendants do not identify a "present fact" State Farm misrepresented. Rather, the statements vaguely identified by the Metro Pain Defendants—that State Farm was requesting further information from the Metro Pain Defendants to verify their claims, ECF 400 ¶¶ 32, 37, 41— amount, at most, to implicit "assurances" State Farm "would perform the very same act . . . that [State Farm] was already contractually obligated to do." *Cronos Grp. Ltd. v. XComIP, LLC*, 64 N.Y.S.3d 180, 188 (N.Y. App. Div. 2017). Specifically, State Farm is permitted through its insurance contracts under the No-Fault Laws to demand verification of medical providers' claims where "there are good reasons to do so." 11 N.Y.C.R.R. § 65-3.2(c). State Farm's alleged misrepresentations regarding the reasons for requesting additional information from the Metro Pain Defendants are, at most, implicit assurances State Farm would comply with these contractually imposed and statutorily defined requirements. This is not sufficient to state a claim for fraud. *See Cronos*, 64 N.Y.S.3d at 188.

Moreover, even if a statement can be construed as a "misstatement . . . related to matters of present fact," that does not support a fraud claim where, as here, "the matters in question were . . . within the scope of the parties' rights and obligations" under the contract. *Panwest NCA2 Holdings LLC v. Rockland NCA2 Holdings, LLC*, 166 N.Y.S.3d 534, 535 (N.Y. App. Div. 2022). Rather, "[w]here courts have found viable fraud claims based on fraudulent misrepresentation, the statements concerned matters separate and distinct from the subject matter of the contract." *E. Cont'l Min. & Dev. Ltd. v. Signet Grp. LLC*, No. 13-cv-1930, 2013 WL 6503526, at *6 (S.D.N.Y. Dec. 9, 2013). Conversely, a fraud claim is not viable where the allegedly false statements involve subjects that are "expressly covered" in a contract. *Oliver Wyman, Inc. v. Eielson*, No. 15-cv-5305, 2016 WL 5339549, at *6 (S.D.N.Y. Sept. 22, 2016); *see also Shinano Kenshi Corp. v. Honeywell Int'l Inc.*, No. 22-cv-3704, 2023 WL 2431327, at *6 (S.D.N.Y. Mar. 9, 2023) ("Because the Agreement speaks directly to the subject matter of the alleged misrepresentations, they are not collateral to the contract and cannot support a fraud claim.").

The representations the Metro Pain Defendants allege are false relate to matters squarely within the scope of State Farm's contracts with insureds and the rights and obligations of State Farm thereunder. As such, these alleged misrepresentations are not collateral to the contracts of the Metro Pain Defendants' patients with State Farm and cannot support a claim for fraud.

### iii.   The Metro Pain Defendants are seeking damages recoverable as contract damages.

The Metro Pain Defendants cannot satisfy the final avenue for asserting fraud because the Metro Pain Defendants are seeking the same damages they may pursue for State Farm's alleged breach of contract. Although the Metro Pain Defendants baldly assert they "do not need to allege special damages," ECF 443 at 2 n.1, the Second Circuit has held otherwise.

In *Bridgestone*, the Second Circuit held that, where, as here, neither of the first two tests

for stating a fraud claim distinct from a breach of contract claim is satisfied, the claimant must "seek special damages that are caused by the misrepresentation and unrecoverable as contract damages." 98 F.3d at 20. To determine whether a claim satisfies this test, courts consider "whether the damages Plaintiff claims to have suffered . . . are a special consequence of the alleged fraud and, thus, can be separated from contract damages that could be claimed." *Osan Ltd. v. Accenture LLP*, 454 F. Supp. 2d 46, 55-56 (E.D.N.Y. 2006) (Johnson, J).

In this case, the Metro Pain Defendants seek "the respective amounts ($604,819 to Metro Pain and $1,200,347 to Tri-Borough) of No-Fault claims submitted by Metro Pain and Tri-Borough to State Farm." ECF 400 ¶ 63. To the extent State Farm validly owes the Metro Pain Defendants these "respective amounts," that obligation is based on the benefits assigned to the Metro Pain Defendants under State Farm's contracts with its insureds. As such, these alleged damages are recoverable as contract damages and cannot support a fraud claim. *Sampson v. Medisys Health Network Inc.*, No. 10-cv-1342, 2011 WL 579155, at *6 (E.D.N.Y. Feb. 8, 2011) (Feuerstein, J.) ("As all of plaintiffs' claims rely upon the existence of a contract requiring defendants to pay plaintiffs . . . they cannot make out a claim for fraud.").

The Metro Pain Defendants also assert that "interest and attorney's fees" incurred by the Metro Pain Defendants constitute "special damages" sufficient to support a fraud claim. ECF 443 at 2 n.1. Interest and attorneys' fees, however, are provided for under the No-Fault Laws incorporated into State Farm's contracts with its insureds. *See* 11 N.Y.C.R.R. § 65-3.9 (providing "[a]ll overdue . . . personal injury protection benefits due to an applicant or assignee shall bear interest at a rate of two percent per month"); § 65-3.10 (providing "an assignee shall be entitled to recover their attorney's fees, for services necessarily performed in connection with securing payment, if a valid claim or portion thereof was denied or overdue"). These damages, therefore,

would be recoverable in a breach of contract claim and cannot support a claim for fraud.

* * * * *

Because the Metro Pain Defendants cannot "(i) demonstrate a legal duty separate from the duty to perform under the contract; or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract; or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages," their fraud claim must be dismissed. *Bridgestone*, 98 F.3d at 20.

### B.  The Metro Pain Defendants' fraud claim fails on the merits.

In addition to being premised on a breach of contract, the Metro Pain Defendants' fraud claim fails because they cannot establish its essential elements. Under New York law, common-law fraud consists of four elements: (1) a false statement of material fact, (2) scienter, (3) reasonable reliance, and (4) damages. *Bridgestone*, 98 F.3d at 19. "A claim sounding in fraud is required to comport with the requirements of Fed. R. Civ. P. 9(b)." *Naughright v. Weiss*, 826 F. Supp. 2d 676, 694 (S.D.N.Y. 2011). Therefore, a claim for fraud "requires facts to be alleged which raise a strong inference of fraud." *Vaughn v. Consumer Home Mortg.*, No. 01-cv-7937, 2003 WL 21241669, at *4 (E.D.N.Y. Mar. 23, 2003) (Glasser, J).

Here, the Metro Pain Defendants have not satisfied these basic requirements: They do not identify any specific false statement by State Farm, let alone explain how that statement was false or fraudulent at the time it was made, and they plead no facts showing they relied on anything State Farm might have said to them. The fraud claim, therefore, may be dismissed on the merits.

### i.  The Metro Pain Defendants fail to identify any specific statement of State Farm that was false or misleading, let alone plead facts showing State Farm knowingly made such statements.

To claim for fraud, one must "(1) specify the statements [they] contend[] were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why

the statements were fraudulent." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994). The Metro Pain Defendants' counterclaims do not contain any of this information.

To begin, the Metro Pain Defendants fail to identify any specific statements they contend were fraudulent. Rather, the Metro Pain Defendants vaguely assert State Farm "misrepresented to the Metro Pain Defendants and their counsel that State Farm needed more and more information and documents to determine whether to pay the claims." ECF 400 ¶ 9(d); *see also id*. ¶¶ 10, 32. The Metro Pain Defendants do not identify the specific statements they contend were fraudulent, nor do they allege who made these statements or where and when they were made. Instead, they rely on unspecified allegations that State Farm "consistently made false misrepresentations" in "the verification requests." ECF 400 ¶ 32; *see also id*. ¶ 37. This is plainly insufficient to state a claim under Rule 8, let alone with the particularity required by Rule 9(b).

In addition, to successfully state a claim for fraud, one "must do more than say that the statements . . . were false and misleading; they must demonstrate with specificity why and how that is so." *Rombach v. Chang*, 355 F.3d 164, 174 (2d Cir. 2004); *see also In re Nokia Oyj (Nokia Corp.) Sec. Litig.*, 423 F. Supp. 2d 364, 392 (S.D.N.Y. 2006) ("Under the pleading requirements, a complaint must explain, with adequate specificity, why the alleged false or misleading statements were actually false or misleading when made.").

The Metro Pain Defendants fail to allege how any of State Farm's alleged statements were fraudulent. For example, the Metro Pain Defendants allege State Farm "falsely represent[ed]" that the Metro Pain Defendants' "responses to the verification requests were incomplete and required further production of documents," while "internally acknowledg[ing]" that Metro Pain's counsel had "supplied all of the requested verification materials." ECF 400 ¶ 37. But the Metro Pain Defendants fail to plead facts showing they supplied all the documentation State Farm requested—

12

let alone that State Farm acknowledged this fact. The underlying document from which the Metro Pain Defendants purport to derive such an acknowledgement states there were "items [that] can't be located" for Dr. Shapiro, and that the Metro Pain Defendants were engaged in "continuous billing" "without additional verification being supplied." ECF 377-7. Far from supporting the Metro Pain Defendants' fraud claim, this document, instead supports the notion that State Farm required additional documentation from the Metro Pain Defendants.

Notably, the Metro Pain Defendants attached the document they selectively quoted as an exhibit to their proposed counterclaims, *see* ECF 377-7, but omitted it from their final counterclaims, *see* ECF 399 & 400. In their response to State Farm's pre-motion letter, the Metro Pain Defendants do not dispute they quoted this document in a misleading fashion and omitted the document from their amended counterclaim. Instead, they merely assert they did not include this document with their amended counterclaims because State Farm designated it confidential. *See* ECF 443 at 2 n.2. But that's not a valid excuse. The Metro Pain Defendants included several other documents State Farm designated as "Confidential" with their amended counterclaims. *See* Counterclaims Exs. 1-5, 8. Critically, their use of misleading and selective quotation in their final counterclaims does not prevent the Court from considering the full text of the underlying document on a motion to dismiss. *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 44 (2d Cir. 1991).

Similarly, the Metro Pain Defendants allege in conclusory fashion State Farm "misrepresented" their need for additional information and documents from the Metro Pain Defendants, even though "State Farm knew at the time it had already decided to deny the claims submitted by the Metro Pain Defendants." ECF 400 ¶ 14. But the Metro Pain Defendants allege no facts to support their conclusion State Farm "already decided" to deny the Metro Pain Defendants' claims. Instead, they rely on their own unsupported and inaccurate characterization

of State Farm's claims handling processes, which the Metro Pain Defendants describe as "tailored to delay" and used to "justify the pre-determined denial of the claims." *Id.* ¶ 27. These claim handling processes, however, were necessary to determine whether the claims reflected treatment rendered in compliance with the No-Fault Laws—a task that required significant documentation and information, given the complex relationships among the Metro Pain Defendants and several interrelated parties, the complex flow of funds, and the improper shadow owners of medical practices. And even if the Metro Pain Defendants' allegations were sufficiently detailed, the existence of State Farm's claims-handling processes is equally indicative of lawful conduct. Under *Bell Atlantic Corp. v. Twombly*, the Metro Pain Defendants must plead factual "allegations plausibly suggesting (not merely consistent with)" unlawful behavior. 550 U.S. 544, 557 (2007). They have not done so.

Nor do the Metro Pain Defendants support their assertion that State Farm's alleged statements were false when the Companies said they needed additional documents to "verify whether Metro Pain Specialists is entitled to receive No-Fault benefits," ECF 400 ¶ 40, or that "providing the information was a necessary step in the claims handling process in order for State Farm to make payment," *id.* ¶ 57. The No-Fault Laws permit State Farm to seek patient records, medical examinations, examinations under oath, and "any other pertinent information that may assist the Company in determining the amount due and payable." 11 N.Y.C.R.R. § 65-1.1. No facts show these statements were false when made.

### ii. The Metro Pain Defendants cannot show reasonable reliance on State Farm's alleged statements.

The Metro Pain Defendants' fraud claim also fails because the Metro Pain Defendants cannot allege they relied on State Farm's statements to their detriment. It is well settled that "without reliance, there can be no recovery for fraud." *In re Fifth Jud. Dist. Asbestos Litig.*, 784

N.Y.S.2d 829, 833 (N.Y. Sup. Ct. 2004). "To show reliance, a party 'must demonstrate that [it] was induced to act or refrain from acting to [its] detriment by virtue of the alleged misrepresentation or omission.'" *Ginsburg Dev. Cos., LLC v. Carbone*, 22 N.Y.S.3d 485, 488 (2d Dep't 2015) (quoting *Shea v. Hambros PLC*, 673 N.Y.S.2d 369, 374 (N.Y. App. Div. 1998)). In other words, Defendants must show, "but for the representation[, Defendants] would not have acted or refrained from acting." *Fifth Jud. Dist. Asbestos Litig.*, 784 N.Y.S.2d at 833.

The Metro Pain Defendants cannot plausibly allege, but for State Farm's statements regarding the need for additional documentation, the Metro Pain Defendants would not have submitted claims to State Farm. To the contrary, the Metro Pain Defendants allege Metro Pain and Tri-Borough submitted claims for payment and *then* were subjected to "countless and repeated verification requests" on those claims. ECF 400 ¶ 57. The Metro Pain Defendants fail to explain how they relied on State Farm's allegedly false statements—rendered *after* the Metro Pain Defendants' claims were submitted—in determining whether to submit claims to State Farm or treat patients insured by State Farm.

Rather than engaging with this fundamental defect in their pre-motion letter, the Metro Pain Defendants simply state in a conclusory fashion they "relied to their detriment" on State Farm's statements. *See* ECF 443 at 2. But the Metro Pain Defendants fail to articulate how they allegedly acted in reliance on State Farm's statements. Nor could they. It is illogical to argue the Metro Pain Defendants treated patients in reliance on later-made statements by State Farm. This failure to plausibly allege reliance warrants dismissal of the Metro Pain Defendants' fraud claim. *See Greenspan*, 937 F. Supp. at 291 (dismissing fraud claim where "all of the misrepresentations regarding submitted claims were made after the services were rendered, so plaintiffs could not have relied on them in deciding to provide treatment").

**II.    The Counterclaim Defendants' Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing Should be Dismissed.**

The Counterclaim Defendants' claim for breach of the implied covenant of good faith and fair dealing suffers from two fatal flaws, either of which warrants dismissal. First, the Counterclaim Defendants fail to allege State Farm acted in bad faith—an essential element of a claim for breach of the implied covenant. Second, this claim is duplicative of a breach of contract claim, which the Counterclaim Defendants have not purported to bring here—presumably, because they would prefer to insinuate to a jury that State Farm acted in bad faith.

**A.   The Counterclaim Defendants fail to allege bad faith.**

Where a party asserts a claim for breach of the implied covenant of good faith and fair dealing, "in order to survive a motion to dismiss, a complaint must supply 'specific factual allegations' of bad faith." *JN Contemp. Art LLC v. Phillips Auctioneers LLC*, 507 F. Supp. 3d 490, 505 (S.D.N.Y. 2020) (quoting *Prospect St. Ventures I, LLC v. Eclipsys Sols. Corp.*, 804 N.Y.S.2d 301, 302 (N.Y. App. Div. 2005)), *aff'd*, 29 F.4th 118 (2d Cir. 2022). Indeed, where a complaint "contains no nonconclusory allegations of bad faith," a claim for breach of the implied covenant of good faith and fair dealing must be dismissed. *Paulicopter-Cia. v. Bank of Am., N.A.*, 122 N.Y.S.3d 593, 595 (N.Y. App. Div. 2020).

In this case, the counterclaims contain no allegations of bad faith beyond conclusory statements. Instead, the Counterclaim Defendants rely on their inaccurate and unsupported characterization of State Farm's claims handling processes. *See* ECF 400 ¶ 68; ECF 489 ¶ 29.

Moreover, "[i]t cannot be a breach of the implied covenant of good faith and fair dealing to do what a contract explicitly authorizes a party to do." *JN Contemp. Art LLC*, 507 F. Supp. 3d at 505. Far from reflecting bad faith, State Farm's process of requesting information to verify that claims reflect treatment rendered in compliance with the No-Fault Laws is specifically permitted

16

by the No-Fault Laws, which are incorporated into State Farm's contracts with insureds. 11 N.Y.C.R.R. § 65-1.1.

In addition, "[v]erification of the authenticity of claims is consistent with one of the purposes underlying the adoption of" the No-Fault Laws, which were intended to "rein in fraud in the form of 'medical mills [generating] stacks of medical bills for each passenger, detailing treatments and tests that were unnecessary or never performed.'" *Am. Transit Ins. Co. v. PDA NY Chiropractic, P.C.*,195 N.Y.S.3d 427 (N.Y. Sup. Ct. 2023) (quoting *Matter of Med. Soc'y of State of NY v. Serio*, 800 N.E.2d 854, 861 (N.Y. 2003)). The Counterclaim Defendants fail to allege how State Farm's verification of their claims—in furtherance of the purposes of the No-Fault Laws— constitutes bad faith.

### B. The Counterclaim Defendants' claim is duplicative of breach of contract claims they have attempted to pursue in New York state court.

It is well-settled that "under New York Law . . . a claim for breach of an implied covenant of good faith and fair dealing does not provide a cause of action separate from a breach of contract claim." *O'Hearn v. Bodyonics, Ltd.*, 22 F. Supp. 2d 7, 11 (E.D.N.Y. 1998) (Spatt, J.); *see also Hall v. EarthLink Network, Inc.*, 396 F.3d 500, 508 (2d Cir. 2005) ("If the allegations do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated." (internal quotations omitted)); *Deutsche Bank Nat. Tr. Co. v. Quicken Loans Inc.*, 810 F.3d 861, 869 (2d Cir. 2015) ("[B]ecause the facts underlying both claims are identical and the Trustee seeks identical remedies, the claim for breach of the implied covenant was properly dismissed as duplicative.").

As noted in State Farm's Motion for a Preliminary Injunction and Motion to Modify the Scope of Previously Entered Preliminary Injunction, when State Farm denies the Counterclaim

Defendants' claims, the Counterclaim Defendants routinely file state-court lawsuits and arbitration proceedings asserting breach of contract claims and seeking payment on unpaid No-Fault bills. *See* ECF 80, at 6; ECF 315, at 21. The Counterclaim Defendants' claim for breach of the implied covenant of good faith and fair dealing merely restates these breach of contract claims using the language of "bad faith" by asserting State Farm failed to "investigate in good faith the claims submitted by the . . . Defendants . . . and to pay covered claims." ECF 400 ¶ 66; ECF 489 ¶ 27. And in this action the Counterclaim Defendants seek the same damages they pursued in simple breach of contract claims—by requesting reimbursement for submitted but unpaid No-Fault claims. The Counterclaim Defendants' claim for breach of the implied covenant of good faith and fair dealing, therefore, is duplicative of a claim for breach of contract and must be dismissed.

## III.   The Counterclaim Defendants' Claim for Deceptive Business Practices Under New York General Business Law § 349 Should be Dismissed.

New York General Business Law section 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service." N.Y. G.B.L. § 349(a). To state a claim under New York General Business Law section 349, a plaintiff must demonstrate "(1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." *Allstate Ins. Co. v. Avetisyan*, 422 F. Supp. 3d 672, 676 (E.D.N.Y. 2019) (Hall, J.) (citing *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000)). The Counterclaim Defendants fail to state a claim under this section because State Farm's allegedly "deceptive" conduct was not directed at consumers, nor were State Farm's alleged acts misleading in a material way.

### A.   State Farm's alleged statements were not directed at consumers.

Claims under section 349 must be based on "consumer oriented" conduct. *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 744 (N.Y.

1995); *see also Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264 (2d Cir.1995) ("[T]he gravamen of the complaint must be consumer injury or harm to the public interest."); *Teller v. Bill Hayes, Ltd.*, 630 N.Y.S.2d 769, 772 (N.Y. App. Div. 1995) ("Section 349 of the General Business Law was intended to be a consumer protection statute.").

Indeed, section 349 was not intended to be a "sword to be wielded in business-versus-business disputes . . . where the party asserting the claim is not acting in a consumer role." Richard E. Givens, Overall Scope of General Business Law §§ 349–350, Supplementary Practice Commentaries 166, 167 (McKinney Supp. 1996). "Private contract disputes, unique to the parties, for example, would not fall within the ambit of the statute." *Oswego Laborers*, 647 N.E.2d at 744.

Courts have defined "consumer oriented" acts as those that "have a broad impact on consumers at large." *U.W. Marx, Inc. v. Bonded Concrete, Inc.*, 776 N.Y.S.2d 617, 619 (N.Y. App. Div.); *see also Green Harbour Homeown'rs' Ass'n., Inc. v. G.H. Dev. & Const., Inc.*, 763 N.Y.S.2d 114, 118 (N.Y. App. Div. 2003) ("The threshold under section 349 requires allegations that the defendants' practices 'have a broad impact on consumers at large.'" (*quoting Walsh v. Liberty Mut. Ins. Co.*, 734 N.Y.S.2d 710 (N.Y. App. Div, 2001)). "In other words, the deceptive act or practice may not be limited to just the parties." *Teller*, 630 N.Y.S.2d at 772.

"Based on this standard, courts have found sufficient allegations of injury to the public interest where plaintiffs plead repeated acts of deception directed at a broad group of individuals." *New York v. Feldman*, 210 F. Supp. 2d 294, 301 (S.D.N.Y. 2002). Conversely, liability under section 349 will not attach where a merchant's conduct has only "some tangential effect on members of the public" and "factual allegations of broad, consumer-oriented deceptive conduct are simply lacking." *U.W. Marx*, 776 N.Y.S.2d at 620.

Courts have repeatedly held disputes such as this one between insurers and medical

providers do not concern consumer-oriented conduct, as required to state a claim under section 349. *E.g.*, *Josephson v. United Healthcare Corp.*, No. 11-cv-3665, 2012 WL 4511365, at *8 (E.D.N.Y. Sept. 28, 2012) ("any improprieties in calculating the rate [at which a medical provider was reimbursed] are in the nature of a private dispute between Plaintiffs and Defendants that falls outside the scope" of section 349), *on reconsideration in part on other grounds*, No. 11-cv-3665, 2013 WL 3863921 (E.D.N.Y. July 24, 2013); *Daniels v. Provident Life & Cas. Ins. Co.*, No. 00-cv-0668, 2001 U.S. Dist. LEXIS 11388, at *29 (W.D.N.Y. 2001) ("[P]rivate contract disputes between the insured and insurer over policy coverage or the processing of claims are not covered by the statute because such disputes do not affect the consuming public at large."); *Four Winds of Saratoga, Inc. v. Blue Cross and Blue Shield of Central New York*, 660 N.Y.S.2d 236 (3d Dep't 1997) (holding service provider may not bring action against insurer due to lack of impact on consumers at large). Indeed, an "insurer's denial of claims submitted by physicians' groups is directed, not at the underlying consumers of medical services, but at the physicians themselves" because "it only affects the extent of [the physician's] reimbursement." *Precision Imaging of New York, P.C. v. Allstate Ins. Co.*, 263 F. Supp. 3d 471, 476-77 (S.D.N.Y. 2017).

The counterclaims assert "New York's No-Fault laws are consumer-oriented in that they 'ensure prompt compensation for losses incurred by accident victims without regard to fault or negligence, to reduce the burden on the courts[,] and to provide substantial premium savings to New York motorists.'" ECF 400 ¶ 78 (quoting *Med. Soc'y of State of N.Y. v. Serio*, 100 N.Y.2d 854, 860 (2003)); *see also* ECF 489 ¶ 35 (same). But that assertion is irrelevant. To be actionable under section 349, the relevant merchant's *deceptive acts* must be "directed at consumers." The fact State Farm requested additional documentation and verification from the Counterclaim Defendants pursuant to the allegedly "consumer-oriented" No-Fault Laws does not transform State

Farm's interactions with the Counterclaim Defendants into conduct directed at consumers. Rather, this is a quintessential private dispute that does not concern the sort of consumer-oriented conduct within the ambit of section 349.

In their pre-motion letter, in arguing State Farm's conduct is "consumer oriented," the Metro Pain Defendants misstate the holding of *Greenspan v. Allstate Ins. Co.*, 937 F. Supp. 288 (S.D.N.Y. 1996). In *Greenspan*, the court *dismissed* a similar section 349 claim because "no allegations of injury to the public appear[ed] in the complaint." *Id.* at 294. Nonetheless, the Metro Pain Defendants claim the court "held . . . a No-Fault insurer causes harms to the public by '[d]eliberately erecting barriers to reimbursement and imposing additional social costs' and impeding 'the ability of accident victims to obtain medical treatment.'" ECF 443 at 3 (quoting *Greenspan*, 937 F. Supp. at 294). But the statements they quote are merely *dicta* where the court hypothesized about the ways in which an insurer *might* "affect the public interest." *Greenspan*, 937 F. Supp. at 294.

Not surprisingly, courts have repeatedly dismissed claims premised on *Greenspan*'s dicta. *E.g.*, *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 65 (2d Cir. 2010) (holding "summary judgment in favor of the insurer [wa]s warranted" where the plaintiff failed to "establish facts showing injury or potential injury to the public"); *Avetisyan*, 422 F. Supp. 3d at 677 (explaining "insurers' denials of claims by medical-service providers do not satisfy the consumer-directed element of § 349."); *State Farm Mut. Auto. Ins. Co. v. Mallela*, 175 F. Supp. 2d 401, 422 (E.D.N.Y. 2001) (Sifton, J.) (dismissing section 349 counterclaim brought by a medical provider because "[t]he consumers of State Farm's services are its insureds . . . and the Counterclaimants are not such consumers, nor are they similarly situated to State Farm's consumers."). The Metro Pain Defendants point to no case that has come out the other way.

**B.  State Farm's alleged conduct is not knowingly misleading in a material way.**

The Counterclaim Defendants also fail to allege State Farm engaged "in an act or practice that is deceptive or misleading in a material way," as required to state a claim under section 349. *Oswego Laborers*, 647 N.E.2d at 744.

The Counterclaim Defendants fail to allege State Farm's conduct—requesting verification of claims pursuant to the No-Fault Laws—was materially misleading. Indeed, State Farm lawfully requested information from the Counterclaim Defendants to determine their eligibility for reimbursement under the No-Fault Laws. 11 N.Y.C.R.R. § 65-1.1 (permitting insurers to request patients' medical records, as well as "any other pertinent information that may assist [the insurer] in determining the amount due and payable"); *id*. (requiring patients to submit to medical examinations "when, and as often as, [the insurer] may reasonably require" and permitting insurers to take examinations under oath); N.Y. Ins. Law § 409(a) (requiring insurers to create and follow a "plan for the detection, investigation and prevention of fraudulent insurance activities").

**IV.    The Dolsky Defendants' Counterclaims are Replete with False and Unsupported Allegations and Fail to State a Claim for Relief.**

It is axiomatic a complaint or counterclaim must have "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Under Rule 8 of the Federal Rules of Civil Procedure, a complaint or counterclaim must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). As such, "[c]omplaints containing only vague or conclusory accusations and no specific facts regarding the alleged wrongdoing . . . are subject to dismissal." *Evans v. Nassau County*, 184 F. Supp. 2d 238, 244 (E.D.N.Y. 2002). As this Court has held, a claimant fails to satisfy Rule 8 where the only relevant allegations are "nothing more than the verbatim language" of another complaint. *Iwachiw v. GE Corp.*, No. 99-cv-3668, 2000 U.S. Dist. LEXIS 9742, at *8 (E.D.N.Y. Feb. 22, 2000). Other courts

22

have found the same. *E.g. Vilarreal v. Cap. One, N.A.*, No. 14-cv-3423, 2015 WL 12766256, at *2 (S.D. Tex. Feb. 9, 2015); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 07-cv-5944, 2014 WL 1091095, at *3 (N.D. Cal. Mar. 13, 2014). Here, the Dolsky Defendants copied almost verbatim from the Metro Pain Defendants' counterclaims resulting in demonstrably false and conclusory allegations when applied to the Dolsky Defendants and requiring dismissal under Rule 8.

To begin, the Dolsky Defendants' counterclaims are based, in part, on false allegations regarding documents produced by State Farm. The Dolsky Defendants allege State Farm produced "Project files" that supposedly "reveal" State Farm engaged in a scheme to systematically deny the Dolsky Defendants' requests for reimbursement. ECF 489 ¶ 8. State Farm attempted to produce these files in November 2023. *Id*. ¶ 7. As indicated in the attached correspondence, however, the Dolsky Defendants were unable to access State Farm's production until sometime after December 14, 2023, s*ee* Letter to Counsel for the Dolsky Defendants dated December 15, 2023, attached as Exhibit B – after the Dolsky Defendants filed their counterclaims on December 13, 2023, *see* ECF 489.  Thus, the Dolsky Defendants falsely alleged in their counterclaims on December 13, 2023 a revelation in State Farm "Project files" they could not possibly have discovered (if it existed at all) until at least two days after their filing on December 15, 2023 when they could first actually view the Project files. *E.g.* ECF 489 ¶ 8, 12.

The Dolsky Defendants also allege State Farm "solicit[ed] a superficial global peer review report to justify the uniform denial of thousands of claims *en masse*." *Id*. ¶ 10. But the global peer review report does not mention the Dolsky Defendants and was not used as a basis to deny the Dolsky Defendants' claims. *See* ECF 400-9, attached as Exhibit C. As such, this allegation— copied directly from the Metro Pain Defendants' counterclaims, *see* ECF 400 ¶ 11—is irrelevant

to the Dolsky Defendants' claims.

The Dolsky Defendants' counterclaims are also full of conclusory allegations regarding State Farm's claims handling processes, devoid of any facts. For example, the Dolsky Defendants allege they were "subjected . . . to examinations under oath," wherein State Farm "follow[ed] a predetermined pattern, [and] made little or no attempt to prove that individual underlying claims were for medically unnecessary services." ECF 489 ¶ 9. But the Dolsky Defendants fail to provide a single example of an occasion where they were subjected to any examinations under oath, let alone one that followed a "predetermined pattern." Similarly, the Dolsky Defendants allege the application of "TIN Diversion . . . constituted deception to [State Farm's] insureds," *id*. ¶¶ 10-11, but they fail to define "TIN Diversion," explain how that process is deceptive, or allege the Dolsky Defendants were, in fact, subjected to "TIN Diversion." Nor do they explain how "TIN Diversion," which affects the speed at which a *provider* is paid, could constitute deception to State Farm's *insureds*. These vague and conclusory allegations, without specific facts regarding the alleged wrongdoing, are insufficient to state a claim for relief. *See Evans*, 184 F. Supp .2d at 2244.

### V.   Dr. Shapiro and Vadim Dolsky Do Not Have Standing to Assert Claims Based on the Denial of No-Fault Benefits.

The counterclaims are predicated on denial of No-Fault claims Metro Pain, Tri-Borough, and Optimum submitted to State Farm. ECF 400 ¶¶ 63, 70, 77; ECF 489 ¶¶ 31, 38. They do not allege Dr. Shapiro or Vadim Dolsky personally submitted any such claims. As a result, Dr. Shapiro and Vadim Dolsky lack standing to pursue the counterclaims.

Unsurprisingly, "no-fault benefits actions are no different" from other causes of action and "require standing to be addressed." *Inwood Hill Med. P.C. v. Allstate Ins. Co.*, No. 43154/03, 2004 WL 1381082, at *7 (N.Y. Civ. Ct. June 18, 2004). Parties lack standing to assert claims based on the denial of No-Fault benefits where, as here, they did not submit any claims for reimbursement

that were allegedly "delayed, avoided, and/or denied by the scheme." *Allstate Ins. Co. v. Batsiyan*, No. 05-cv-5933, 2008 WL 11434462, at *4 (E.D.N.Y. Mar. 12, 2008) (Pohorelsky, J.).

Because Dr. Shapiro and Vadim Dolsky have not submitted any No-Fault claims to State Farm, they lack standing to complain about their denial. The Metro Pain Defendants do not even dispute this point as to Dr. Shapiro in their pre-motion letter. *See* ECF 443. Nor could they. A fundamental component of standing is that the claimant suffered "injury in fact." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). A provider who has not submitted any No-Fault claims has not suffered any injury by reason of an insurer's denial of another provider's No-Fault claims. Dr. Shapiro and Vadim Dolsky, therefore, lack standing to pursue the counterclaims.

## CONCLUSION

The counterclaims should be dismissed in their entirety for failure to state a claim. Notably, those claims fail even after the Counterclaim Defendants had the benefit of exhaustive discovery. Given this reality and the many infirmities that plague the counterclaims, they appear to be nothing more than a transparent attempt to distract from State Farm's detailed allegations and evidence of the Defendants' systemic fraud.

Dated: February 5, 2024

Respectfully submitted,

/s/     Jonathan L. Marks

Christopher T. Cook (NY Bar No. 5112123)
KATTEN MUCHIN ROSENMAN LLP
50 Rockefeller Plaza
New York, NY 10020-1605
Telephone: 212.940.8800
christopher.cook@katten.com

Ross O. Silverman (NY Bar No. 4147922)
Jonathan L. Marks (NY Bar No. 5462874)
KATTEN MUCHIN ROSENMAN LLP
525 West Monroe Street
Chicago, Illinois 60661-3693
Telephone: 312.902.5200
Facsimile: 312.902.1061
ross.silverman@katten.com
jonathan.marks@katten.com

*Attorneys for Plaintiffs State Farm Mutual Automobile*
*Insurance Company and State Farm Fire and Casualty Company*

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing Memorandum in Support of Plaintiffs' Motion to Dismiss on the following counsel of record by email:

Steven J. Harfenist
Neil Torczyner
HARFENIST KRAUT & PERLSTEIN, LLP
3000 Marcus Avenue, Suite 2E1 Lake Success, NY 11042
sharfenist@hkplaw.com
ntorczyner@hkplaw.com

Byron A. Divins, Jr.
Alexandra Dominique Mule
CAPETOLA & DIVINS, P.C.
2 Hillside Ave., Building C
Williston Park, NY 11596
bdivins@capetoladivinslaw.com
amule@capetoladivinslaw.com

/s/ Christopher Cook
Christopher T. Cook (NY Bar No. 5112123)
KATTEN MUCHIN ROSENMAN LLP
50 Rockefeller Plaza
New York, NY 10020-1605
Telephone: 212.940.8800
christopher.cook@katten.com