UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------------------------------------------------X

STATE FARM MUTUAL AUTOMOBILE INSURANCE
COMPANY AND STATE FARM FIRE AND CASUALTY
COMPANY,

**Docket No:**
**21-cv-05523(MKB)(PK)**

                                                  Plaintiffs,

      -against-

METRO PAIN SPECIALISTS P.C., TRI-BOROUGH NY
MEDICAL PRACTICE P.C., LEONID SHAPIRO, M.D., et al

                                        Defendants.

--------------------------------------------------------------------------------X


**METRO PAIN SPECIALISTS P.C., TRI-BOROUGH NY MEDICAL PRACTICE P.C.
AND LEONID SHAPIRO, M.D.'S MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFFS' MOTION TO DISMISS DEFENDANTS' COUNTERCLAIMS**


HARFENIST KRAUT & PERLSTEIN, LLP
*Attorneys for Metro Pain Defendants*
3000 Marcus Avenue, Suite 2E1
Lake Success, New York 11042
(516) 355-9600

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................... i

PRELIMINARY STATEMENT ....................................................................................... 1

STATEMENT OF FACTS ................................................................................................ 2

LEGAL STARDARD GOVERNING MOTIONS TO DISMISS .................................... 8

ARGUMENT ..................................................................................................................... 9

    I.      THE COUNTERCLAIMS' FIRST CAUSE OF ACTION STATES A CLAIM
          AGAINST STATE FARM FOR FRAUD/FRAUDULENT
          MISREPRESENTATION .................................................................................. 9

          A.      The Metro Pain Defendants' Fraud Claim Is Not Based on a Breach of
                   Contract, But on State Farm's Misrepresentations of Present Facts ........... 9

          B.      State Farm's Conclusory Assertions that the Counterclaims Fail to
                   Properly Plead a Valid Fraud Claim Are Disproved by the
                   Counterclaims' Detailed Allegations and Exhibits .................................... 13

                   i.      The Counterclaims Allege in Detail State Farm's Knowingly
                           False Statements ............................................................................. 13

                   ii.     The Counterclaims Allege the Metro Pain Defendants'
                           Reasonable Reliance on State Farm's Ongoing False
                           Statements ...................................................................................... 16

    II.     THE COUNTERCLAIMS' SECOND CAUSE OF ACTION STATES A CLAIM
          AGAINST STATE FARM FOR BREACH OF THE COVENANT OF GOOD
          FAITH AND FAIR DEALING ...................................................................... 17

    III.    THE COUNTERCLAIMS' THIRD CAUSE OF ACTION STATES A CLAIM
          AGAINST STATE FARM FOR A VIOLATION OF SECTION 349 OF NEW
          YORK'S GENERAL BUSINESS LAW .................................................... 20

CONCLUSION ................................................................................................................ 25

# TABLE OF AUTHORITIES

**Cases**

*25 Bay Terrace Assocs., L.P. v. Public Serv. Mut. Ins. Co.*
  194 A.D.3d 668, 671-72 (2d Dept. 2021) ......................................................... 17, 18

*Allstate v. Lyons*
  843 F.Supp.2d 358, 376 (E.D.N.Y. 2012).............................................................. 23

*Allstate v. Rosenberg*
  590 F.Supp.2d 384, 395 (E.D.N.Y. 2008)............................................................. 23

*Anexia, Inc. v. Horizon Data Solutions Center, LLC*
  74 Misc.3d 1233(A), 2022 N.Y. Slip. Op. 50320(U) (Sup. Ct., N.Y. Co. April 21, 2022). 18, 19

*Arista Records, LLC v. Doe 3*
  604 F.3d 110, 120-21 (2d Cir. 2010)...................................................................... 9

*Arthur Ave. Med. Servs., P.C. v. GEICO Ins. Co.*
  72 Misc.3d 342, 352 (Civ. Ct., Kings Co. 2021) .................................................... 12

*Ashcroft v. Iqbal*
  556 U.S. 662 (2009) .............................................................................................. 9

*Bayshore Cap. Advsrs, LLC v. Creative Wealth Media Fin. Corp.*
  2023 WL 2751049, at *25 (S.D.N.Y. 2023) ........................................................ 12

*Bell Atlantic v. Twombly*
  550 U.S. 544, 546 (2007). .............................................................................. 8, 25

*Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*
  98 F.3d 13 (2d Cir. 1996)............................................................................... 10, 11

*Brown v. Government Employees Ins. Co.*
  156 A.D.3d 1087, 1088, 66 N.Y.S.3d 733, 735 (3d Dept. 2017)............................ 21

*Dubovoy v. Government Employees Ins. Co.*
  56 Misc.3d 1203(A), 63 N.Y.S.3d 305, 2017 N.Y. Slip. Op. 50843 (U)
  at *3 (Sup. Ct., King. Co. 2017)............................................................................ 18

*East Ramapo Central School Dist. v. New York Schools Ins. Reciprocal*
  199 A.D.3d 881, 158 N.Y.S.3d 173, 177-78, (2d Dept. 2021) .............................. 19

*Elmhurst Dairy, Inc. v. Bartlett Dairy, Inc.*
  97 A.D.3d 781, 784 (2d Dept. 2012)............................................................... 17, 18

*Elias v. Rolling Stone LLC*
  872 F.3d 97, 104 (2d Cir. 2017)............................................................................. 8

*Government Employees Ins. Co. v. Alp Supply, Inc.*
  2023 WL 5846680 at *6, (E.D.N.Y. 2023).............................................................. 14

*Government Employees Ins. Co. v. Sanni-Thomas*
  2015 WL 5692875, at *6 (E.D.N.Y. 2015) ............................................................ 16

*Greenspan v. Allstate Ins. Co.*
  937 F. Supp. 288 (S.D.N.Y. 1996)......................................................................... 23

*Gutierrez v Government Empls. Ins. Co.*
  136 A.D.3d 975, 976 (2d Dept. 2016)..................................................................... 18

*Int'l Elecs., Inc. v. Media Syndication Glob., Inc.*
  2002 WL 1897661, at *2 (S.D.N.Y. 2002) .......................................................... 12

*JM Holdings 1 LLC v. Quarters Holding .GmbH*
  2021 WL 860516, at *6 (S.D.N.Y. 2021) ............................................................ 18

i

*Kim v. Kimm*
 884 F.3d 98, 102-03 (2d Cir. 2018)............................................................................... 8
*Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 729-30 (2d Cir. 2013) .............................................. 9
*Pfizer, Inc. v. Stryker Corp.*
 2003 WL 21660339 at *1 (S.D.N.Y. 2003) ............................................................... 10
*Provepharm, Inc. v. Akorn, Inc.*
 2019 WL 2443185, at*6 (E.D.N.Y. 2019). ................................................................. 9
*Richbell Info. Servs., Inc. v Jupiter Partners, L.P.*
 309 A.D.2d 288, 302-3 (1st Dept. 2003)................................................................... 19
*Riordan v. Nationwide Mut. Ins. Co.*
 756 F. Supp. 732, 739 (S.D.N.Y. 1990)............................................................ *passim*
*Securitron Magnalock Corp. v. Schnabolk*
 65 F.3d 256, 264 (2d Cir.1995)................................................................................. 23
*Sitt v. Nature's Bounty, Inc.*
 2016 WL 5372794, at *15.................................................................................. 13, 14
*V.K. v. J.K.*
 77 Misc.3d 1216(A), 179 N.Y.S.3d 536, 2022 Slip. Op. 1291(U)
 at *6 (Sup. Ct., N.Y. Co, Nov. 28, 2022) ................................................................. 18
*VR Optics, LLC v. Peloton Interactive, Inc.*
 2017 WL 3600427, at *3-4 (S.D.N.Y. 2017) ........................................................... 18

**Statutes & Rules**
New York General Business Law § 349(a) ....................................................... *passim*
11 N.Y.C.R.R. § 65................................................................................................ 13, 20
Fed. R. Civ. P. 12(b)(6)................................................................................................ 8

## PRELIMINARY STATEMENT

Defendants Metro Pain Specialists P.C. ("Metro Pain"), Leonid Shapiro, M.D. ("Dr. Shapiro") and Tri-Borough NY Medical Practice P.C. ("Tri-Borough") (collectively, the "Metro Pain Defendants") submit this memorandum of law opposing the motion of Plaintiffs State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company's (collectively, "State Farm") to dismiss the Metro Pain Defendants' Counterclaims to State Farm's Second Amended Complaint.

The Counterclaims (*see* ECF 400)[1] are based on investigation files belatedly produced by State Farm which reveal that State Farm systematically and meticulously planned and carried out a coordinated scheme, step by step, from October 2017 to the present lawsuit to unlawfully delay and deny valid No-Fault medical claim reimbursement payments due to the Metro Pain Defendants and their patients.

The Counterclaims are not, as State Farm seeks to portray them, simply about verification requests and examinations under oaths conducted under New York's no-fault laws. Rather, they allege that State Farm's decision in 2017 to secretly divert the no-fault claims of Metro Pain and its patients and apply predetermined protocols diametrically opposed to the claim handling principles mandated by New York's no-fault laws was designed to avoid payment.

As a No-Fault insurer, State Farm had various duties beyond its contractual duty to pay covered claims, including the duty to follow certain "claim practice principles," including to: "(a) Have as [its] basic goal the prompt and fair payment to all automobile accident victims;" "(b)

---

[1] A copy of the Counterclaims with the attached exhibits is annexed to the Declaration of Steven J. Harfenist dated March 15, 2024 ("Harfenist Dec.") as Exhibit A. State Farm's Motion to Dismiss Metro Pain Defendants' Counterclaims was made as to the version of the Counterclaims docketed under ECF 400. However, Metro Pain Defendants filed an Amended Answer with Counterclaims on November 16, 2023 (ECF 482), pursuant to the Court's Order of November 11, 2023 (granting and denying in part Metro Pain Defendants' motion to seal [ECF 477]).

Assist the applicant in the processing of a claim [and to] … not treat the applicant as an adversary;" and "(c) … not demand verification of facts unless there are good reasons to do so," and even then, to do so "as expeditiously as possible." 11 NYCRR 65-3.2(a)-(c). (Counterclaims, ¶ 18).

Instead, State Farm treated the Metro Pain Defendants and their patients as "adversaries" from the outset by: (1) tagging and targeting their claims as a "Project" geared toward the denial of all claims (*Id.*, ¶ 22); (2) immediately appointing "Project counsel" to pursue the denial of the claims (*Id.*, ¶¶ 23-24); (3) engaging in TIN diversion, whereby the claims of Metro Pain and its patients were secretly diverted to State Farm's Multi-Claim Investigative Unit ("MCIU"), which employed special claims handling procedures not tailored to the individual merits of their claims, but to the delay and pre-determined denial of the claims (*Id.*, ¶¶ 27-28); (4) applying its "verification protocol," whereby the claims, regardless of their medical necessity, were subject to never-ending and patently intrusive document requests having no relationship to the medical necessity of the claims (*Id.*, ¶¶ 31-41, 52-53); (5) soliciting physicians to submit template peer review reports to justify the predetermined denial of claims, including a superficial global peer review used as a pretext to deny thousands of claims *en masse* (*Id.*, ¶¶ 44-46); and (6) instructing its claim handlers to issue blanket denials of the claims using the same template fill-in-the blank language, regardless of the medical necessity or circumstances of patients' medical treatment. (*Id.*, ¶¶ 48-49, 54).

## STATEMENT OF FACTS

On January 13, 2023, State Farm finally started to produce its investigation files, which it calls its "Project files." (*Id.*, ¶ 8).  The investigation files were requested by the Metro Pain Defendants in their First Set of Document Requests in April 2022. (*See* ECF 379, ¶ 3)[2].

---

[2] A copy of ECF 379 is annexed to the Harfenist Dec. as Exhibit B.

Over the next eight months, State Farm repeatedly promised the production of the investigation files, but failed to do so. (*Id.*, ¶ 4, 7; ECF 379-4)[3]. The Project files reveal that State Farm deviated from the ordinary claims handling principles mandated by New York's No-Fault laws, and instead, secretly diverted the claims to its special investigative MCIU unit which employed a series of protocols designed to delay and justify the predetermined denial of the claims. (Counterclaims, ¶ 9-(b)).

On or about October 23, 2017, before reviewing few if any patient claim files, State Farm secretly targeted Metro Pain as a "Project" for investigation by its MCIU. (*Id.*, ¶ 22; Exs. 1 and 2)[4]. On October 31, 2017, State Farm retained the law firm of Rivkin Radler as "Project counsel" to pursue the delay and predetermined denial of the medical reimbursement claims submitted by Metro Pain and its patients who were insureds of State Farm. (Counterclaims, ¶ 23: Ex. 3, p.1).

By December 27, 2017, State Farm had determined that it would deny the claims submitted by the Metro Pain Defendants that there was a pre-determined treatment plan in place at the Metro Pain clinics. (Counterclaims, ¶ 25). State Farm elevated the Metro Pain Project from Phase 1 to Phase 2. (Ex. 4, at page bate-stamped SFMPS2067643). On January 10, 2018, State Farm reported Metro Pain to the National Insurance Fraud Bureau. (*Id.*, Ex. 4, at page bate-stamped SFMPS2067644).

On or about March 15, 2018, State Farm secretly subjected all claims submitted by the Metro Pain Defendants to "TIN diversion." (Counterclaims, ¶ 27; Ex. 5). "TIN" stands for the tax identification number of a medical provider targeted as a "Project" by State Farm. *Id.* "TIN diversion" is the process by which State farm secretly diverts any claims submitted by or through

---

[3] A copy of ECF 379-4 is annexed to the Harfenist Dec. as Exhibit C.
[4] All references to Exhibits ("Ex.") herein, unless otherwise indicated, are Exhibits to Metro Pain's Answer to the Second Amended Complaint and Counterclaims (*See* ECF 399, 400, Harfenist Dec. Exhibit A).

the healthcare provider from the ordinary claim handling process to State Farm's Special Investigative Unit ("SIU") or MCIU.  (Counterclaims, ¶ 27). State Farm's SIU or MCIU then employs special claims handling procedures or "protocols," not tailored to the individual merits of the subject claims, but tailored to routinely delay the claims based simply on the fact that the medical provider under investigation submitted the claims. (*Id*., ¶¶ 9-(b); 27-30).

Among the protocols employed by State Farm's MCIU against the Metro Pain defendants and their patients with the "TIN diversion" of their claims was State Farm's "verification protocol," whereby the medical claims for reimbursement submitted by the medical provider and their patients are purposefully delayed by seemingly endless document and information requests, in an apparent effort by State Farm to conduct pre-litigation discovery. (*Id*., ¶ 31).

In response to virtually every claim submitted by or on behalf of Metro Pain's patients to State Farm for payment, State Farm required Metro Pain to respond to the same template laundry list of verification requests. (*Id.*, ¶ 32).

The verification requests propounded by State Farm had nothing to do with assessing the reasonableness or necessity of the medical services, but demanded sensitive and confidential financial and personnel information relating to Metro Pain or to anyone with any real or imagined connection to Metro Pain. (*Id.*, ¶ 33).

On October 25, 2018, and November 6, 2018, State Farm conducted the examination under oath ("EUO") of Dr. Shapiro as owner of Metro Pain.  (*Id.*, ¶ 42). State Farm had determined by then to deny the claims submitted by Metro Pain based on assertions of a predetermined treatment protocol. (*Id.*, ¶ 25). State Farm's Project counsel in conducting the EUO spent little or no time examining the medical necessity of any medical treatments rendered by Metro Pain and, instead,

spent the vast majority of the time having Dr. Shapiro identify the rents, front-desk supervisors and physicians employed at each of Metro Pain's thirty clinics. (*Id.*, ¶¶ 42-43; Ex. 8).

On February 20, 2019, State Farm launched "Phase 3" of the Metro Pain "Project," which State Farm terms its "resolution stage," by which stage State Farm had decided to initiate litigation to deny the claims. (Counterclaims, ¶ 39).

Meanwhile, State Farm continued to send out verification request after verification request to the Metro Pain Defendants (*See*, *e.g.,* Exs., 6, 7 and 12), which it represented were necessary "in order to complete Metro Pain's proof of claim as to the claims identified in [an attached] Exhibit A" (Ex. 6, p.4).   The verification requests, including subparts, consisted of scores of requests having nothing to do with the necessity of the medical services at issue, including "bank statements, cancelled checks (copies of the front and back of checks) … signature cards, cancelled checks, withdrawal records, or electronic records in connection with any bank account;" every scrap of paper related to any and every payment ever made by Metro Pain related to the "operation at any of its [thirty] locations or clinics;" and its federal and state tax returns. (Counterclaims, ¶ 34; Ex. 6).

Despite State Farm having determined, in February 2019, to file litigation to support the denial of the claims (Counterclaims, ¶ 39), on June 10, 2020, State Farm's Project Counsel sent a "Request for Verification" to Metro Pain's counsel (the "June 10, 2020 verification requests," Ex. 7) attaching a list of over 1,400 claims already held up several months by State Farm's "verification protocol." (Counterclaims, ¶ 40; Ex. 7, p.1).

State Farm's Project counsel "acknowledge[d] that Metro Pain Specialists [had already] provided certain documents," but then requested a laundry list of further document requests which

State Farm falsely misrepresented it needed "to verify whether Metro Pain Specialists is entitled to receive No-Fault benefits." (Counterclaims, ¶¶ 40-41; Ex. 7, p.1).

Besides requesting bank statements, cancelled checks, subleases, and tax returns, State Farm added whole new requests, including documents and information regarding additional bank accounts and an "American Express Credit Card account" "from January 20017 to present." (Counterclaims, ¶ 41; Ex. 7, pp. 5-6).

While falsely representing to the Metro Pain Defendants and their counsel that their responses to the verification requests were incomplete and required further production of documents, State Farm itself internally acknowledged, on July 5, 2020, that Metro Pain's counsel had "supplied all of the requested verification materials on June 24, 2020." (Counterclaims, ¶ 37). State Farm still continually sought more documentation not specifically requested in its initial delay letters, and kept adding material to the original requests, long after the time to seek such material has passed, and then failed to respond to letters from Metro Pain's counsel, stating that such material is not in possession of Metro Pain. (*Id.*, ¶ 38).

Meanwhile, State Farm used the delay to complete a global peer review report it had commissioned from James N. Dillard, M.D., which was issued on July 16, 2020.  (Ex. 9, the "Dillard Report;" Counterclaims, ¶¶ 44-45). The Dillard Report purported to deny the medical necessity of 1,724 claims all at once, including virtually all of the claims in Exhibit A to the June 10, 2020 verification request. (*Id*. ¶ 46).[5]   The Dillard Report failed to address the medical treatments of the hundreds of Metro Pain patients and 1,724 claims it purported to cover. while

---

[5] Dr. Dillard has issued similar reports purporting to deny the medical necessity of thousands of claims all at once on several occasions. *See, e.g.*, *Government Employees Ins. Co. v. Cereceda*, 2021 WL 148738 (S.D. Fla. 2021), at *4 (noting that Dr. Dillard's report in that case, "taken at face value, … represents that he reviewed more than 450,000 invoices concerning approximately 8,000 patients. But none of his opinions or conclusions mention any specific patient, file or service.").

purporting to deny the medical necessity of future claims not yet in existence by asserting "bills and documentation from Metro Pain Specialists for the above medical services will contain the same issues and concerns as noted in my report." (*Id*.).

On August 3, 2020, State Farm's MCIU claim specialist Doug Babin, emailed (Ex. 10), State Farm claim handlers to issue blanket denials of the claims submitted by the Metro Pain Defendants, including those listed in Exhibit A to the June 10, 2020 verification request, using the same fill-in-the blank template language. (Counterclaims, ¶ 48, Ex. 10). After Mr. Babin's August 3, 2020 email and continuing to the filing of this action, State Farm issued and sent out denials of virtually all the claims submitted by the Metro Pain Defendants held up for months by State Farm's verification protocol and denials of new claims, using this same exact language. (Counterclaims, ¶ 49; Ex. 11).

By October 19, 2020, based on a "Potential Legal Opinion/Affirmative" memorandum, State Farm had outlined the allegations in and approved filing this RICO action. (Counterclaims, ¶ 50).

On July 9, 2021, again unbeknownst to the Metro Pain Defendants, State Farm placed Tri-Borough on "TIN diversion," diverting all claims submitted by Tri-Borough and its patients to State Farm's MCIU. (*Id*., ¶ 51). On September 24, 2021, State Farm again took the EUO of Dr. Shapiro, this time as owner of Tri-Borough, and asked the same questions regarding the operations of Tri-Borough which State Farm had asked three years earlier at the prior EUO of Dr. Shapiro regarding the operations of Metro Pain. (*Id*.)

In September, and again, in October 2021, State Farm sent verification requests to Tri-Borough (Ex. 12), which were similar to the verification requests sent to Metro Pain requested bank records and American Express credit card statements having nothing to do with the medical

necessity of the claims at issue.  (Counterclaims, ¶ 52). State Farm falsely represented that the requested documents were necessary "[i]n order to resolve the issues with Tri Borough and permit State Farm to verify whether Tri Borough is entitled to receive No-Fault benefits," when State Farm had decided to deny the claims and file this RICO action. (*Id.*)

Like Metro Pain, Tri-Borough produced documents in response to the verification requests, totaling thousands of pages of documents, until, finally, on October 22, 2021, in an email to State Farm's counsel, counsel for Tri-Borough, wrote: "Dr. Shapiro has nothing else to provide.  You have bled him dry of all documents. He has been more than forthcoming with documentation and verification responses. Please have your client act in good faith now. Please do not send any other request as nothing else exists." (Ex. 13; Counterclaims, ¶ 53).

State Farm then sent out blanket denials of all the claims submitted to State Farm by Tri-Borough held up by its "verification protocol," using the same exact template language which it had used to deny the claims submitted by Metro Pain. (Counterclaims, ¶ 54).

On December 14, 2021, State Farm amended the Complaint to add Tri-Borough as a Defendant.  (*Id.*, ¶ 55; ECF 63).

## LEGAL STANDARD GOVERNING MOTIONS TO DISMISS

In deciding a motion to dismiss under Rule 12(b)(6), the Court must liberally construe the claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the pleader. *See Kim v. Kimm*, 884 F.3d 98, 102-03 (2d Cir. 2018); *Elias v. Rolling Stone LLC*, 872 F.3d 97, 104 (2d Cir. 2017). Under the *Twombly* standard addressing Fed. R. Civ. P. 12(b)(6), a claim should be dismissed only if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face." *Bell Atlantic v. Twombly,* 550 U.S. 544, 546 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). A party does not have to plead "specific evidence or extra facts beyond what is needed to make the claim plausible." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120-21 (2d Cir. 2010); *accord Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 729-30 (2d Cir. 2013); *Provepharm, Inc. v. Akorn, Inc*., 2019 WL 2443185, at*6 (E.D.N.Y. 2019).

Rather, where, as here, "there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679, 129 S. Ct. 1937; *Provepharm,* 2019 WL 2443185 at *6.

## ARGUMENT

### I. THE COUNTERCLAIMS' FIRST CAUSE OF ACTION STATES A CLAIM AGAINST STATE FARM FOR FRAUD/FRAUDULENT MISREPRESENTATION

#### A. The Metro Pain Defendants' Fraud Claim Is Not Based on a Breach of Contract, But on State Farm's Misrepresentations of Present Facts

The Metro Pain Defendants' fraud claim is not based on a breach of contract, but on fraudulent misrepresentations and material omissions made by State Farm long after the formation of the contract and State Farm's decision to divert the claims and deviate from its duties as a No-Fault insurer. In violation of the "claim handling principles" it had to follow, State Farm misrepresented in numerous verification requests that it needed more and more highly confidential financial and employee information "to verify whether Metro Pain Specialists is entitled to receive No-Fault benefits." (Counterclaims, ¶ 40, and Ex. 7 thereto, p.1).

However, State Farm failed to disclose that, since October 2017, it had pursued the denial of the claims, by secretly diverting the claims and employing protocols all geared toward justifying

the predetermined denial of the claims, rather than investigating in good faith the medical necessity of the claims. (*Id.*, ¶¶ 9, 27).

This is not, as State Farm would have it, the situation where the alleged fraud consists of a false representation to perform under a contract, but the misrepresentation of the present fact that State Farm needed more sensitive and proprietary information and documents "to verify whether [the Metro Pain defendants] is entitled to receive No-Fault benefits" (*Id.*, ¶ 40, Ex. 7, p.1). This representation was false when made, as two years earlier, State Farm had diverted the claims from the no-fault claim handling process to its MCIU to delay the claims long enough to "obtain covert pre-suit discovery" (*Id.*, ¶¶ 27-29, 31-33), and to justify the predetermined denial of the claims. (*Id.*, ¶¶ 9(b), 23-24, 58-59).

Where, as here, the fraud claim is not "based on an alleged intention not to perform or a deliberate breach," but rather on "deliberately and knowingly misrepresented present, existing facts," it is distinguishable from the situation addressed in *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc*., 98 F.3d 13 (2d Cir. 1996), relied on heavily by State Farm. *See*, State Farm's Memorandum of Law in Support of Motion to Dismiss Defendants' Counterclaims ("State Farm Memo.") at pp. 5-11. *Pfizer, Inc. v. Stryker Corp.*, 2003 WL 21660339 at *1 (S.D.N.Y. 2003) (noting that *Bridgestone* "dealt only with a claim of misrepresentation of an intention to perform and therefore does not bear on th[e] question" of a "deliberately misrepresented present fact").

In circumstances such as here, where the fraud is based on the misrepresentation and omission of material present facts, "there simply is no reason why it should not have a remedy in contract for breach of the warranty and a remedy in tort for deliberate, fraudulent misrepresentation, assuming the facts otherwise justify such relief." (*Id.*)

Even if this was a situation, which it is not, where the fraud claim is based on an existing

breach of contract claim, the three alternatives for pleading a fraud claim based on an intention not to perform under a contract in *Bridgestone*, i.e., "(i) … a legal duty separate from the duty to perform under the contract; or (ii) …" a fraudulent misrepresentation collateral or extraneous to the contract; or" (iii) allegations of "special damages that are caused by the misrepresentation and unrecoverable as contract damages" (*Bridgestone,* 98 F.3d at 20), are met here.

As a No-Fault insurer, State Farm had various duties beyond its contractual duty to pay covered claims, including the duty to follow certain "claim practice principles," including to: "(a) Have as [its] basic goal the prompt and fair payment to all automobile accident victims;" "(b) Assist the applicant in the processing of a claim [and to] … not treat the applicant as an adversary;" and "(c) … not demand verification of facts unless there are good reasons to do so," and even then, to do so "as expeditiously as possible." 11 NYCRR 65-3.2(a)-(c). (Counterclaims, ¶ 18).

Instead, State Farm treated the Metro Pain Defendants and their patients as "adversaries" from the outset, by targeting their claims as a "Project" geared toward the denial of all claims (*Id.*, ¶ 22); immediately appointing "Project counsel" to pursue the denial of the claims (*Id.*, ¶¶ 23-24); and secretly diverting the claims of Metro Pain and its patients to its special investigative MCIU unit. (*Id.*, ¶¶ 27-28).

In violation of the "claim handling principles" it had to follow, State Farm then misrepresented in numerous verification requests to the Metro Pain defendants and their patients that State Farm needed more and more highly confidential financial and employee information "to verify whether Metro Pain Specialists is entitled to receive No-Fault benefits." (*See*, *e.g.*, *Id.*, 40, and Ex. 7 thereto, p.1).

State Farm asserts these claim handling principles are "incorporated into the No-Fault insurance policies of the Metro Pain Defendants' patients." (State Farm Memo. at p. 7), and

therefore, it is immune from claims for fraud when it diverts no-fault claims and substitutes its own protocols diametrically opposed to these claim handling principles. That is not the case. *See. Riordan v. Nationwide Mut. Ins. Co.*, 756 F. Supp. 732, 739 (S.D.N.Y. 1990) (holding insurer's "policy and practice of violating New York Insurance Law § 2601 and the rules promulgated thereunder," including the same claim principles violated by State Farm here, "if proven, constitutes a 'deceptive business practice'"); *Arthur Ave. Med. Servs., P.C. v. GEICO Ins. Co*., 72 Misc.3d 342, 352 (Civ. Ct., Kings Co. 2021) (holding "Defendant's subsequent request for additional information through use of the No-Fault claim verification process may … constitute an investigation that goes beyond the purview of the No-Fault reimbursement system.)

Here, the alleged misrepresentations are "of present facts made post-contract formation," they "are collateral or extraneous to the contract." *Bayshore Cap. Advsrs,, LLC v. Creative Wealth Media Fin. Corp*., 2023 WL 2751049, at *25 (S.D.N.Y. 2023); *Int'l Elecs., Inc. v. Media Syndication Glob., Inc.*, 2002 WL 1897661, at *2 (S.D.N.Y. 2002)(holding plaintiff's fraud claim not precluded where defendant was allegedly "misleading [the] plaintiff into believing that [the defendant] was discharging its obligations" under the contract).

State Farm mischaracterizes the alleged fraud as "at most, … implicit 'assurances,'" that State Farm would comply with the requirement that verification requests be "made only where 'there are good reasons to do so.'" (State Farm Memo. at p. 8, quoting 11 N.Y.C.R.R. § 65-3.2(c)). The alleged fraud here is not about the propriety of the verification requests themselves or any "implicit assurances" of future compliance, but about State Farm's failure to disclose that, several years earlier, it had diverted the claims from the ordinary no-fault claim handling system to its MCIU, and that it weaponized the verification process to delay and obtain covert discovery of claims it had decided to deny. (Counterclaims, ¶¶ 27-29, 31-41).

12

Finally, as State Farm acknowledges, the Counterclaims allege special damages in the form of "interest and attorney's fees responding to State Farm's endless verification requests and commencing and pursuing litigation to obtain payment of the claims." (Counterclaims, ¶ 62). Nor are the special damages sought limited to those recoverable in no-fault collection actions "for services necessarily performed in securing payment" (11 N.Y.C.R.R. 65-3.10).

Rather, the Metro Pain defendants seek to recover, as a direct, proximate result of State Farm's misrepresentations, their attorney's fees incurred in responding to innumerable verification requests before State Farm's issuance of the denial of the claims and the Metro Pain defendants' subsequent attempts to secure payment of the claims.

**B.     State Farm's Conclusory Assertions that the Counterclaims Fail to Properly Plead a Valid Fraud Claim Are Disproved by the Counterclaims' Detailed Allegations and Exhibits**

**i.      The Counterclaims Allege in Detail State Farm's Knowingly False Statements**

"To state a claim for fraud under New York law, a plaintiff must allege (1) a material misrepresentation or omission of fact; (2) which the defendant knew to be false; (3) which the defendant made with the intent to defraud; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." *Sitt v. Nature's Bounty, Inc.,* 2016 WL 5372794, at *15 (quoting *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d 395, 402 (2d Cir. 2015)).

To start off, State Farm inaccurately asserts that the Metro Pain Defendants "fail to identify the specific statements they contend were fraudulent." (State Farm Memo. at p. 12).  Contrary to this bald assertion, the fraudulent statements are not only identified, but are attached to the Counterclaims as Exhibits. (*See* Exs. 6, 7 and 12). The specific examples of the statements in the verification requests which the Metro Pain Defendants contend are fraudulent are specifically identified as:

- Counterclaims, ¶ 34 and Ex. 6, p.4: misrepresentation in July 18, 2019 verification request that State Farm needed exhaustive list of banking records, payroll records, and tax returns "in order to complete Metro Pain's proof of claim as to the claims identified in [an attached] Exhibit A;"

- Counterclaims, ¶ 40 and Ex. 7, p.1: June 10, 2020 verification request attaching a list of over 1,400 claims which had already been held up several months by State Farm's "verification protocol" and seeking additional documents which State Farm falsely misrepresented it needed "to verify whether Metro Pain Specialists is entitled to receive No-Fault benefits;" and

- Counterclaims, ¶ 52 and Ex. 12: October 14 and October 22, 2021 verification requests to Tri-Borough, in which State Farm falsely represented that the requested documents were necessary "[i]n order to resolve the issues with Tri Borough and permit State Farm to verify whether Tri Borough is entitled to receive No-Fault benefits" (Ex. 12, Oct. 14, 2021 verification requests, p.2), when State Farm had already decided to deny the claims and file this RICO action. (Counterclaims, ¶ 50).

The specific statements containing the specific alleged misrepresentations are attached as Exhibits to the Counterclaims (*See* Exs. 6, 7, and 12), the requirements of Rule 9(b) are met. *Government Employees Ins. Co. v. Alp Supply, Inc*., 2023 WL 5846680 at *6, (E.D.N.Y. 2023) (holding Rule 9(b) standard met, where "[a]ttached to the Complaint are exhibit charts that detail ALP and PV's claim submissions between October 21, 2019, and February 18, 2022, showing, *inter alia*, the relevant dates, the provider for each claim, product descriptions, and the amount of each claim"); *Sitt v. Nature's Bounty, Inc.,* 2016 WL 5372794, at *15, (S.D.N.Y. Nov. 12, 2015) (MKB) (holding that the plaintiffs "sufficiently alleged the who, what, when, where, and why of the fraud at issue under Rule 9(b)" because the plaintiffs identified the "*specific ads* that made *specific promises*" regarding the products at issue.)

The Counterclaims also allege "the why and how" the above misrepresentations were fraudulent, i.e., because State Farm had years earlier secretly "TIN diverted" the claims and had weaponized the verification process to delay the claims long enough to obtain covert discovery

14

and commission and complete a superficial global peer review report to justify the predetermined denial of the claims in blanket fashion.

The very State Farm note which State Farm falsely accuses Metro Pain's counsel of misquoting (State Farm Memo. at pp. 5, 13), proves the point. In the note, State Farm acknowledges that Metro Pain's counsel "has supplied all of the requested materials," except for items that "can't be located" which are the subject of "the last piece," an "Affidavit from Dr. Shapiro." (ECF 377-7; Ex. A to State Farm Memo.). State Farm thereby acknowledged that the Metro Pain defendants had provided "all the requested materials" they could find in response to scores of verification requests seeking every scrap of their bank records, tax returns, employee records, American Express card statements, etc., in the mistaken belief that State Farm was being truthful when it represented the documents were needed "to verify the claims."

But State Farm had made the decision to deny the claims.  Thus, the same case note -- after a redaction for attorney-client privilege -- indicates that State Farm had prepared *before* telling the Metro Pain defendants that the documents and information were needed to assist its determination whether to pay the claims, a declaratory judgment action ("DJ#2") denying any obligation to pay the claims, which it still would have filed despite Metro Pain's compliance but for the court system being closed due to the pandemic. (*Id*.)

A plethora of other facts in the Counterclaims also indicate that State Farm had made the decision to deny the claims before representing that it needed the documents and information requested in the verification requests to verify the claims, including:

- State Farm's decision, in October 2017, to target Metro Pain as a "project" for an MCIU investigation and appoint Project counsel before State Farm had reviewed few, if any, claim files.  (Counterclaims, ¶ 22; Ex. 2, p.1, indicating only five files reviewed as of November 30, 2017);

- "By December 27, 2017, State Farm had already predetermined as its basis for denying the claims submitted by the Metro Pain Defendants that there was a pre-determined treatment plan in place at the Metro Pain clinics, and therefore, elevated the Metro Pain Project from Phase 1 to Phase 2." (Counterclaims, ¶ 25; Ex. 4, at page bate-stamped SFMPS2067643);

- On January 10, 2018, State Farm reported Metro Pain to the National Insurance Crime Bureau. (Counterclaims, ¶ 25; Ex. 4, at page bate-stamped SFMPS2067644);

- On February 20, 2019, State Farm launched "Phase 3" of the Metro Pain "Project," which State Farm terms its "resolution stage," by which stage State Farm had already decided to initiate litigation to deny the claims. (Counterclaims, ¶ 39);

- Before the June 10, 2020 verification letter to Metro Pain (Ex. 7), State Farm had already commissioned a superficial global peer review report, i.e., the Dillard report, to justify the predetermined denial of hundreds of Metro Pain's patients' claims all at once, and issued the verification request "in bad faith, simply to allow time" to finalize the Dillard Report. (Counterclaims, ¶ 44); and

- Prior to the October 14 and 22, 2021 verification requests to Tri-Borough (Ex. 12), on October 19, 2020, based on a 'Potential Legal Opinion/Affirmative' memorandum," State Farm had outlined the allegations in and approved filing this RICO action." (Counterclaims, ¶ 50).

### ii.    The Counterclaims Allege the Metro Pain Defendants' Reasonable Reliance on State Farm's Ongoing False Statements

"A plaintiff's reliance on intentionally fraudulent statements is reasonable without further investigation when 'matters are held to be peculiarly within defendant's knowledge ... as [plaintiff] has no independent means of ascertaining the truth.'" *Government Employees Ins. Co. v. Sanni-Thomas*, 2015 WL 5692875, at *6 (E.D.N.Y. 2015) (MKB), (quoting *Lazard Freres & Co. v. Protective Life Ins. Co*., 108 F.3d 1531, 1542 (2d Cir. 1997)).

As alleged in the Counterclaims, the "Metro Pain Defendants justifiably relied on State Farm's false and fraudulent statements that the claims-handling process was continuing, and on

this basis continued to provide treatment and services to State Farm's insureds." (Counterclaims, ¶ 60).

The Metro Pain Defendants' reliance argument is not, as State Farm asserts, that "the Metro Pain Defendants treated patients in reliance on later-made statements." (State Farm Memo. at p. 15). Rather, the Metro Pain Defendants continued to treat new patients who were State Farm insureds on an ongoing basis based on repeated misrepresentations in verification request after verification request that the investigation to "verify" the claims was ongoing and being conducted in good faith.

Given that the Metro Pain Defendants had no knowledge or reason to believe that the claims had long ago been secretly diverted to State Farm's MCIU and that the verification requests were part of a "verification protocol" designed to delay and justify the predetermined denial of the claims, the Metro Pain Defendants' reliance was not only plausible, but reasonable. Had the Metro Pain Defendants known of the falsity of State Farm's ongoing misrepresentations, they could have ceased treating State Farm insureds or have billed the patients directly for their treatment, rather than providing treatment and waiting for payment that would never come.

Thus, at this preliminary stage, the Metro Pain Defendants have adequately pleaded a cause of action for fraud.

## II.   THE COUNTERCLAIMS' SECOND CAUSE OF ACTION STATES A CLAIM AGAINST STATE FARM FOR BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

"Implicit in every contract is an implied covenant of good faith and fair dealing." *25 Bay Terrace Assocs., L.P. v. Public Serv. Mut. Ins. Co.*, 194 A.D.3d 668, 671-72 (2d Dept. 2021) (quoting *Gutierrez v Government Empls. Ins. Co.,* 136 A.D.3d 975, 976 (2d Dept. 2016); *Elmhurst Dairy, Inc. v Bartlett Dairy, Inc.*, 97 A.D.3d 781, 784 (2d Dept. 2012). "The implied covenant of

17

good faith and fair dealing is a pledge that neither party to the contract shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruit of the contract, even if the terms of the contract do not explicitly prohibit such conduct." *25 Bay Terrace*, 194 A.D.3d at 672; *Gutierrez.,* 136 A.D.3d at 976.

"New York courts have repeatedly affirmed that a party may be in breach of an implied duty of good faith and fair dealing, even if that party is not in breach of its express contractual obligations, when, as alleged here, that party exercises a contractual right as part of a scheme to realize gains that the contract implicitly denied or to deprive the opposing party of the fruit of its bargain." *V.K. v. J.K.*, 77 Misc.3d 1216(A), 179 N.Y.S.3d 536, 2022 Slip. Op. 1291(U), at *6 (Sup. Ct., N.Y. Co, Nov. 28, 2022); *Anexia, Inc. v. Horizon Data Solutions Center, LLC*, 74 Misc.3d 1233(A), 2022 N.Y. Slip. Op. 50320(U) (Sup. Ct., N.Y. Co. April 21, 2022).

Such a cause of action is not necessarily duplicative nor dependent upon a cause of action alleging breach of contract. *JM Holdings 1 LLC v. Quarters Holding .GmbH*, 2021 WL 860516, at *6 (S.D.N.Y. 2021); *VR Optics, LLC v. Peloton Interactive, Inc.*, 2017 WL 3600427, at *3-4 (S.D.N.Y. 2017); *25 Bay Terrace*, 194 A.D.3d at 672; *Gutierrez,* 136 A.D.3d at 976; *Elmhurst Dairy*, 97 A.D.3d at 784; *Dubovoy v. Government Employees Ins. Co*., 56 Misc.3d 1203(A), 63 N.Y.S.3d 305, 2017 N.Y. Slip. Op. 50843 (U), at *3 (Sup. Ct., King. Co. 2017) (holding claim for "implied covenant of good faith and fair dealing as alleged here is not duplicative of the breach of contract claim complaint" based on insured motorist's allegations of insurer's "bad faith in the handling of the claim for SUM benefits").

Under New York law, which applies to this claim, when a party alleges that the other exercised its contractual rights "malevolently, "i.e., "in bad faith, so as to frustrate the other party's rights to benefit under the agreement," the resulting claim for breach of the implied covenant of

good faith and fair dealing can "stand on its own." *Anexia*, 2022 Slip. Op. 1291(U), at \*6, citing *Maddaloni Jewelers, Inc. v. Rolex Watch U.S.A., Inc.,* 41 A.D.3d 269, 270 (1st Dept. 2007); *Richbell Info. Servs., Inc. v Jupiter Partners, L.P.*, 309 A.D.2d 288, 302-3 (1st Dept. 2003) (upholding claim for breach of implied covenant of good faith where, plaintiff "alleg[ed] that the defendant had exercised its contractual right malevolently, for its own gain, as part of a purposeful scheme designed to deprive the plaintiffs of the benefits of their contract").

"In the context of an insurance-related dispute, the implied covenant of good faith and fair dealing means that the insurer must investigate claims for coverage in good faith, must not manufacture factually incorrect reasons to deny insurance coverage, must not deviate from its own practices or from industry practices, and must not act with 'gross disregard' of the insured's interests." *East Ramapo Central School Dist. v. New York Schools Ins. Reciprocal*, 199 A.D.3d 881, 158 N.Y.S.3d 173, 177-78, (2d Dept. 2021) (collecting cases) (quoting *Smith v. General Accident Ins. Co.*, 91 N.Y.2d 648, 653, 674 N.Y.S.2d 267 (1998)).

Here, the Counterclaims allege that State Farm violated each of the above duties of good faith.  State Farm failed to investigate the claims of the Metro Pain Defendants and their patients in good faith and violated industry practices it had to follow, treating the Metro Pain defendants from the outset  "as an adversary," by secretly tagging and targeting Metro Pain as a "Project" for investigation by its MCIU, and immediately appointing "Project counsel" to pursue the delay and predetermined denial of the medical reimbursement claims submitted by Metro Pain and/or its patients. (Counterclaims, ¶¶ 26-27, 67-68). State Farm then secretly engaged in "TIN diversion," whereby the claims of the Metro Pan defendants and their patients were removed from the ordinary claims handing process to its MCIU, which employed a series of protocols "not tailored to the

19

individual merits of their claims, but to the delay and pre-determined denial of the claims" (*Id.*, ¶¶ 27-28).

Simultaneously, State Farm unleashed its "verification protocol" on the Metro Pain defendants, which  contrary to the prohibition under 11 NYCRR 65-3.2 (c) to "not demand verification of facts unless there are good reasons to do so," and even then, to do so "as expeditiously as possible," purposefully delayed all medical claims for reimbursement submitted by the Metro Pain Defendants and their patients by endless document and information requests, in an apparent effort by State Farm to conduct pre-litigation discovery. (*Id.* ¶¶ 38-45).

State Farm also manufactured factually incorrect reasons to deny insurance coverage by subjecting patients to phony so-called "independent" medical examinations and by commissioning a superficial global peer review report, i.e., the Dillard Report, which denied the medical necessity of 1,724 claims all at once and the medical necessity of future claims not even yet made, without addressing the specific medical treatments or injuries of a single listed patient. (*Id.*, ¶¶ 9-(f); 46; Ex. 9). State Farm then proceeded, in gross disregard of its insureds' interests, to issue blanket denials of hundreds of patients' claims using the same exact fill-in-the-blank language, citing the same Dillard Report as the basis for the denial. (Counterclaims ¶¶ 48-49; Ex. 11).

Therefore, the Metro Pain Defendants have sufficiently plead the second cause of action for breach of the covenant of good faith and fair dealing.

## III. THE COUNTERCLAIMS' THIRD CAUSE OF ACTION STATES A CLAIM AGAINST STATE FARM FOR A VIOLATION OF SECTION 349 OF NEW YORK'S GENERAL BUSINESS LAW

Section 349 of New York's General Business Law declares unlawful "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. General Business Law, § 349(a).

A cause of action to recover damages under General Business Law § 349 has three elements: "first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act." *Brown v. Government Employees Ins. Co.*, 156 A.D.3d 1087, 1088, 66 N.Y.S.3d 733, 735 (3d Dept. 2017) (citing *Benetech, Inc. v. Omni Fin. Group, Inc.*, 116 A.D.3d 1190, 984 N.Y.S.2d 186 (3d Dept. 2014)).

"In that regard, allegations that an insurer engaged in a practice of failing to investigate claims in good faith, or of denying claims without regard to their viability, are sufficient to state a cognizable claim for deceptive practices pursuant to General Business Law § 349." *Brown*, 156 A.D.3d at 1088-89 (holding the trial court erred in dismissing a claim for violation of New York's General Business Law § 349, where plaintiff alleged defendant no-fault insurer "engaged in a consumer-oriented pattern and practice aimed at the public at large of wrongfully denying claims for no-fault benefits by pressuring the physicians it hired to perform IMEs to provide medical reports that would support the denial of benefits"); *Riordan v. Nationwide Mut. Ins. Co.*, 756 F. Supp. 732, 739 (S.D.N.Y. 1990) (holding homeowner insurer's alleged settlement policy and practice in violation of the same claim principles which State Farm violated here, "if proven, constitutes a 'deceptive business practice' sufficient to satisfy the requirements of Section 349").

As the Counterclaims allege, whenever State Farm's no-fault payments to a medical provider reach the point where "State Farm considers them a significant exposure" (Counterclaims, ¶ 22), it secretly employs predetermined protocols which is materially deceptive, misleading and unlawful, and the resulting harm extends not only to the medical provider and their patients, but also to similarly situated medical providers and their patients, including:

- State Farm secretly targets a healthcare provider as a "Project" for investigation by its SIU or MCIU to carry out the delay and to justify the predetermined denial of the claims submitted by the targeted health care provider. (Counterclaims, ¶ 22).

- State Farm appoints Project counsel "to all of the claims involving the targeted provider" who then use "the litigation … as a covert 'shadow discovery' opportunity to gain information on th[e] provider." (*Id.* ¶ 24) (quoting *State Farm Auto. Ins. Co. v. Lugiano*, 2016 WL 11701325 at *2 (E.D. Pa. 2016).

- State Farm engages in the top-secret practice of "TIN diversion," whereby, unbeknownst to the health provider, "any and all claims submitted by or through the healthcare provider are diverted from the ordinary claim-handling process to State Farm's SIU or MCIU," which "then proceed to employ special claims handling procedures not tailored to the individual merits of the subject claims, but tailored to delay … and justify the predetermined denial of the claims…." (Counterclaims, ¶¶ 27-28).

- State Farm subjects the medical provider and their patients to its "verification protocol," whereby all of the claims, regardless of their medical necessity, are subject to never-ending, …requests," which can never be satisfied  in order to "delay informing the medical provider … of State Farm's predetermined denial of the claims long enough to gather 'shadow discovery' to justify the pre-determined denial of the claims and launch a federal action, such as this one." (*Id.* ¶ 31).

Where, as here, an insurer has allegedly adopted a covert policy and practice of violating the claim principles it must follow under New York Insurance Law, such allegations are sufficient to allege a Section 349 claim.  *Riordan v. Nationwide Mut. Ins. Co.*, 756 F. Supp. 732, 739 (S.D.N.Y. 1990) (holding Court had "little difficulty in concluding that a policy and practice of violating New York Insurance Law § 2601 and the rules promulgated thereunder," including the same claim principles violated by State Farm here,[6] "if proven, constitutes a 'deceptive business practice' sufficient to satisfy the requirements of Section 349").[7]

---

[6] Among these claim principles are the duty for the insurer to: "(1) Have as [its] basic goal the prompt and fair payment to all automobile accident victims[;] (2) Assist the applicant in the processing of a claim [; and] "(3) … not demand verification of facts unless there are good reasons to do so," and even then, to do so "as expeditiously as possible."  *Riordan*, 756 F. Supp.  at 738; Counterclaims, ¶18).

[7] By contrast, cases cited in State Farm's Memo. at p. 20, as not directed at consumers, do not involve allegations of an insurers' pattern and practices. *See, e.g., Josephson v. United Healthcare*

State Farm asserts that the Counterclaims' "third" cause of action for violation of GBL Section 349 should be dismissed because it is brought by medical providers and not consumers. However, the "critical question [under § 349] is whether the matter affects the public interest in New York," not who brings the claim. *Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264 (2d Cir.1995); *Allstate v. Lyons*, 843 F.Supp.2d 358, 376 (E.D.N.Y. 2012).

As the District Court held in *Greenspan v. Allstate Ins. Co.,* 937 F. Supp. 288 (S.D.N.Y. 1996), where a No-Fault insurer causes great harm to the public by "[d]eliberately erecting barriers to reimbursement and imposing additional social costs" and impeding "the ability of accident victims to obtain medical treatment," a Section 349 claim may lie. *Id.*, at 294 (granting leave to replead on this basis).

That is precisely the situation here. The Counterclaims allege in considerable detail State Farm's "deception to its insureds" and the broad impact on consumers, i.e., its insureds, by launching its predetermined protocols on medical providers whenever they reach a certain level of exposure, in violation of the claim principles State Farm must follow.

As a result, State Farm "obtain[s] windfall premiums" from its insureds, while having no intent to investigate their claims in good faith or to pay their covered claims, but having a predetermined intent to summarily deny them." (Counterclaims, ¶ 12). *See Lyons*, 843 F. Supp.2d at 376 (holding consumers' increased premiums resulting from alleged no-fault insurance scheme "sufficiently consumer-oriented to fall withing ambit of § 349"); *Allstate v. Rosenberg*, 590 F.Supp.2d 384, 395 (E.D.N.Y. 2008) (declining "to find, as a matter of law," that alleged no fault scheme fails to state a claim under GBL Section 349, where the "fact that Defendants' alleged

---

*Corp.*, 2012 WL 4511365 at *8 (E.D.N.Y. 2012) (alleging private dispute involving calculation of UCR rate); *Precision Imaging of New York v. Allstate Ins. Co*., 263 F. Supp.3d 471 (S.D.N.Y. 2017) (private dispute involving reimbursement of radiology technicians).

scheme will almost certainly result in higher premiums … [which] is sufficient, at this stage, to show … 'ramifications for the public at large'").

By secretly targeting and tagging high-exposure medical providers, such as Metro Pain and Tri-Borough as "Projects" and secretly subjecting the claims of all the medical providers patients to "TIN diversion," the medial provider's patients, through no fault of their own," have their claims diverted, "swept up into an investigation" (*Id.*, ¶¶ 22, 27-28), and placed "in limbo" (*Id.*, ¶ 9-(c)).

The patients themselves are subjected to examinations under oath during which State Farm's "Project" counsel makes little or no attempt to investigate the medical necessity of the patients' claims, but bombards the patients with questions having nothing to do with their treatment, but seek "to elicit information on every aspect of the operations of the medical provider in an apparent effort to create a false presumption of fraud." (*Id.*, ¶¶ 9-(e); 25).

The patients are also subjected to phony so-called "independent" medical examinations" and their claims are subject to superficial global peer review reports, which fail to address their particular treatments or injuries, but are mere pretexts to justify the predetermined denial of their claims (*Id.*, ¶¶ 9(f); 46). In the end, the patients' claims, along with thousands of claims of hundreds of other patients, are denied by means of template denials containing the same verbatim language (other than blanks for the State Farm claim handler to fill in as to the "the date the services were rendered," "the procedure/service/CPT code" at issue, and the date the medical reports were reviewed). (*Id.*, ¶¶9-(f); 48; and Exs. 10 and 11).

Accordingly, the Counterclaims' third cause of action for violation of Section 349 of New York's General Business Law is also sufficiently "plausible on its face." *See Twombly*, 550 U.S. at 546.[8]

## CONCLUSION

For all of the foregoing reasons, the Metro Pain Defendants respectfully request that the Court deny State Farm's Motion to Dismiss their Counterclaims in its entirety.

Dated: Lake Success, New York
       March 15, 2024

HARFENIST KRAUT & PERLSTEIN, LLP

By:        *Steven J. Harfenist*

Steven J. Harfenist
Jake S. Lader
*Attorneys for Metro Pain Defendants*
3000 Marcus Avenue, Suite 2E1
Lake Success, New York 11042
T: (516) 355-9600
F: (516) 355-9601
SHarfenist@hkplaw.com
JLader@hkplaw.com

---

[8] The Metro Pain Defendants do not contest that only Metro Pain and Tri-Borough (and not Dr. Shapiro) have standing to assert the Counterclaims, since State Farm's misrepresentations and bad faith were directed at the corporate entities and not Dr. Shapiro personally.