IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>Metro Pain Specialists, P.C. et al.,<br><br>　　　　Defendants. | Case No. 1:21-cv-05523-MKB-PK<br><br>Hon. Margo K. Brodie<br><br>Magistrate Peggy Kuo |

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS DEFENDANTS' COUNTERCLAIMS**

Ross O. Silverman (NY Bar No. 4147922)
Jonathan L. Marks (NY Bar No. 5462874)
KATTEN MUCHIN ROSENMAN LLP
525 West Monroe Street
Chicago, Illinois 60661-3693
Telephone: 312.902.5200
Facsimile: 312.902.1061
ross.silverman@katten.com
jonathan.marks@katten.com

Christopher T. Cook (NY Bar No. 5112123)
KATTEN MUCHIN ROSENMAN LLP
50 Rockefeller Plaza
New York, NY 10020-1605
Telephone: 212.940.8800
christopher.cook@katten.com

*Attorneys for Plaintiffs State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

REPLY ARGUMENT .............................................................................................................1

    I.    The Metro Pain Defendants Fail to State a Claim for Common-Law Fraud. ....................1

        A.   The Metro Pain Defendants' opposition confirms their fraud claim is impermissibly premised on a breach of a contractual duty......................................1

        B.   The Metro Pain Defendants' fraud claim fails on the merits. ................................4

    II.   The Metro Pain Defendants' Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing Fails Twice Over. .......................................................................7

        A.   The Metro Pain Defendants fail to allege bad faith. ..............................................7

        B.   The Metro Pain Defendants' claim for breach of the implied covenant of good faith and fair dealing is duplicative of breach of contract claims it has brought against State Farm in other proceedings. ............................................8

    III.  The Metro Pain Defendants Fail to State a Claim for Violation of New York General Business Law Section 349. .....................................................................................9

    IV.  The Metro Pain Defendants Concede Dr. Shapiro Lacks Standing..................................10

CONCLUSION........................................................................................................................10

## TABLE OF AUTHORITIES

**Cases:**

*Allstate v. Lyons*,
    843 F. Supp. 2d 358 (E.D.N.Y. 2012) ..........................................................................9, 10

*Allstate v. Rozenberg*,
    590 F. Supp. 2d 384 (E.D.N.Y. 2008) ..........................................................................9, 10

*Anexia, Inc. v. Horizon Data Solutions Center, LLC*,
    2022 N.Y. Slip. Op. 50320(U) (Sup. Ct., N.Y. Co. April 21, 2022) ..................................8

*Arthur Avenue Medical Services, PC v. GEICO Insurance Co.*,
    148 N.Y.S.3d 356 (N.Y. Civ. Ct. 2021)...............................................................................2

*Bayshore Cap. Advsrs., LLC v. Creative Wealth Media Fin. Corp.*,
    667 F. Supp. 3d 83 (S.D.N.Y. 2023)....................................................................................4

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007).........................................................................................................5, 6

*Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*,
    98 F.3d 13 (2d Cir. 1996) ................................................................................................1, 2

*Brown v. GEICO*,
    66 N.Y.S.3d 733 (3d Dep't 2017).........................................................................................9

*Frontier-Kemper Constructors, Inc. v. Am. Rock Salt Co.*,
    224 F. Supp. 2d 520 (W.D.N.Y. 2002)................................................................................2

*International Electronics, Inc. v. Media Syndication Glob., Inc.*,
    No. 02-cv-4274, 2002 WL 1897661 (S.D.N.Y. 2002) ........................................................3

*JM Holdings 1 LLC v. Quarters Holding GmbH*,
    No. 20-cv-3480, 2021 WL 860516 (S.D.N.Y. 2021) ..........................................................8

*Konecranes, Inc. v. Cranetech, Inc.*,
    No. 03-cv-6082, 2005 WL 246916 (W.D.N.Y. Feb. 2, 2005).............................................8

*Liberty Mut. Ins. Co. v. State*,
    405 N.Y.S.2d 945 (N.Y. Ct. Cl. 1978).................................................................................2

*Pfizer, Inc. v. Stryker Corp.*,
    No. 02-cv-8613, 2003 WL 21660339 (S.D.N.Y. 2003) ......................................................2

*Precision Imaging of New York, P.C. v. Allstate Ins. Co.*,
    263 F. Supp. 3d 471 (S.D.N.Y. 2017)................................................................................10

*Richbell Info. Servs., Inc. v Jupiter Partners, L.P.*,
    309 A.D.2d 288 (1st Dept. 2003).........................................................................................9

*Riordan v. Nationwide Mutual Insurance Co.*,
  756 F. Supp. 732 (S.D.N.Y. 1990)..................................................................................2, 9

*VR Optics, LLC v. Peloton Interactive, Inc.*,
  No. 16-cv-6392, 2017 WL 3600427 (S.D.N.Y. 2017) ......................................................8

**Statutes:**

New York General Business Law § 349................................................................................9, 10

New York Insurance Law § 409(a)...............................................................................................5

New York Insurance Law § 5102(a)(1) ........................................................................................5

New York Public Health Law § 238..............................................................................................5

**Regulations:**

10 N.Y.C.R.R. § 34-1.3 .................................................................................................................5

11 N.Y.C.R.R. § 65-1.1 .................................................................................................................5

11 N.Y.C.R.R. § 65-3.10 ...............................................................................................................4

Case 1:21-cv-05523-MKB-PK   Document 529   Filed 03/26/24   Page 4 of 16 PageID #: 9437

**REPLY ARGUMENT**

Two sets of defendants filed near-identical counterclaims against State Farm: the Metro Pain Defendants and the Dolsky Defendants. After State Farm moved to dismiss the counterclaims, the Dolsky Defendants sought leave to amend their answer to withdraw their counterclaims. Dkt. No. 522. Only the Metro Pain Defendants have persisted through a response in opposition to State Farm's motion to dismiss. The arguments they raise there are meritless.

At their core, the Metro Pain Defendants complain that State Farm breached contractual duties it owed to them by denying their claims for reimbursement. If State Farm incorrectly denied those claims, the Metro Pain Defendants might have a claim for breach of contract, which they may enforce through an assignment of their patients' benefits under insurance contracts with State Farm. But for strategic reasons or otherwise, the Metro Pain Defendants have not alleged counterclaims for breach. They are attempting instead to put conclusory allegations of fraudulent, bad-faith, and deceptive conduct before a jury. The Counterclaims should be dismissed.

**I.     The Metro Pain Defendants Fail to State a Claim for Common-Law Fraud.**

  **A.     The Metro Pain Defendants' opposition confirms their fraud claim is impermissibly premised on a breach of a contractual duty.**

The Metro Pain Defendants' fraud claim fails because it is impermissibly premised on a breach of a contractual duty, and their Opposition does not show otherwise. In fact, the Metro Pain Defendants specifically argue their fraud claim is premised on the same contractual claims-handling duties that supposedly give rise to their claim for breach of the implied duty of good faith—a species of breach of contract. *See* Opp. 19-20.

Perhaps for that reason, the Metro Pain Defendants attempt to make an end-run around *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 19 (2d Cir. 1996), which held representations are not actionable as fraud if they relate to an existing contractual duty. And

yet, their main case, *Pfizer, Inc. v. Stryker Corp.*, No. 02-cv-8613, 2003 WL 21660339, at *1 (S.D.N.Y. 2003), is readily distinguishable. *See* Opp. 10. In *Pfizer*, the alleged fraudulent statements were made at the time of *contract formation* and induced the claimant to enter the contract. 2003 WL 21660339 at *1. Thus, as another court noted, "*Bridgestone/Firestone* did not affect the law pertaining to fraudulent *inducement* of a contract." *Frontier-Kemper Constructors, Inc. v. Am. Rock Salt Co.*, 224 F. Supp. 2d 520, 529 (W.D.N.Y. 2002) (emphasis added).

The Metro Pain Defendants do not allege fraud in the inducement, which makes sense: They entered no contract directly with State Farm. Instead, they allege State Farm misrepresented its performance of existing contractual duties. In these circumstances, *Bridgestone* controls, and the Metro Pain Defendants cannot satisfy any of the three exceptions discussed there.

> **i. The Metro Pain Defendants fail to allege breach of a duty separate from State Farm's duty to perform under contract.**

The Metro Pain Defendants assert State Farm's fraud reflects a breach separate from contractual duties because State Farm violated duties to "follow certain claim practice principles" under the No-Fault law. Opp. 11. But these duties are "incorporat[ed] into" State Farm's "polic[ies] with [its] insured[s]." *Liberty Mut. Ins. Co. v. State*, 405 N.Y.S.2d 945, 947 (N.Y. Ct. Cl. 1978). And Defendants' right to enforce these duties is premised on the assignment of contractual rights.

The Metro Pain Defendants cite *Riordan v. Nationwide Mutual Insurance Co.*, 756 F. Supp. 732, 739 (S.D.N.Y. 1990), and *Arthur Avenue Medical Services, PC v. GEICO Insurance Co.*, 148 N.Y.S.3d 356, 364 (N.Y. Civ. Ct. 2021), for the proposition that State Farm is not "immune from claims for fraud" if it violates the claims-practice principles mandated by the No-Fault laws. Opp. 11-12. But those cases speak generally to an insurer's duties to comply with the No-Fault and other insurance laws. *Arthur Ave.*, 148 N.Y.S.3d at 363; *Riordan*, 756 F. Supp. at 739. They do not undermine the reality that the Metro Pain Defendants may enforce these duties only through their

2

patients' assignment of contractual benefits. Thus, the duties here are unquestionably contractual.

In any event, the Metro Pain Defendants confirm the duties at issue are contractual, because those same duties form the basis of their claim for breach of the covenant of good faith and fair dealing—a species of breach of contract. *See* Opp. 19-20. Thus, the duties the Defendants attempt to enforce through their fraud claim—*e.g.*, to "not demand verification of facts unless there are good reasons to do so," Opp. 11—are the same duties they claim are contractually implied by the covenant of good faith. As contractual duties, they cannot form the basis of a fraud claim.

### ii. The Metro Pain Defendants fail to allege a misrepresentation collateral or extraneous to their patients' contracts with State Farm.

The statements the Metro Pain Defendants allege are fraudulent are also not collateral to State Farm's contracts with insureds. Their cases do not suggest otherwise.

The Metro Pain Defendants cite *International Electronics, Inc. v. Media Syndication Glob., Inc.*, No. 02-cv-4274, 2002 WL 1897661, at *2 (S.D.N.Y. 2002), for the proposition that a fraud claim is viable where the defendant was "misleading [the] plaintiff into believing that [the defendant] was discharging its obligations" under the contract. Opp. 12. But in that case, the defendant "induced plaintiff to disclose proprietary information for use in developing [a competing product] and deterred plaintiff from selling its product directly to certain accounts that [defendant] wished to capture for itself by misleading plaintiff into believing that [defendant] was discharging its obligations." *Int'l Elecs.*, 2002 WL 1897661, at *2. The court emphasized the plaintiff's "injuries flowed *not from any failure by [defendant] to do what it contracted to do*, but from its related but nevertheless distinct deception, and would not be compensable in plaintiff's action on the contract." *Id*. (emphasis added). The Metro Pain Defendants, in contrast, are seeking to collect No-Fault benefits they claim they are entitled to receive through an assignment of their patients' rights under contracts with State Farm. Thus, their fraud claim does not concern matters separate

3

and distinct from the subject matter of State Farm's contracts with its insureds.

Similarly, the Metro Pain Defendants cite *Bayshore Cap. Advsrs., LLC v. Creative Wealth Media Fin. Corp.*, 667 F. Supp. 3d 83, 133 (S.D.N.Y. 2023), for the proposition that misrepresentations "of present facts made post-contract formation . . . are collateral or extraneous to the contract." Opp. 12. But *Bayshore* is inapposite. In that case, the defendant falsely represented it had obtained certain financing guarantees, which the court considered collateral to the parties' investment contract. 667 F. Supp. 3d at 133. Here, in contrast, the alleged misrepresentations concern matters exclusively within the scope of State Farm's contracts with insureds.

### iii. The Metro Pain Defendants have not alleged special damages.

The Metro Pain Defendants fail to satisfy the final method of differentiating their fraud claim from a claim for breach of contract: special damages. They allege "their attorney's fees incurred in responding to innumerable verification requests . . . [and] subsequent attempts to secure payment of the claims" constitute special damages. Opp. 13. But they fail to explain how these are distinct from "attorney's fees[ ] for services necessarily performed in connection with securing payment," which are recoverable under the No-Fault laws incorporated into State Farm's contracts with insureds. 11 N.Y.C.R.R. § 65-3.10. And they do not otherwise dispute the main object of their fraud claim is the same damages they could pursue for breach of contract based on the denial of their claims for reimbursement.

## B. The Metro Pain Defendants' fraud claim fails on the merits.

Even if the Metro Pain Defendants could assert a fraud claim distinct from a contractual breach (which they cannot), their fraud claim fails on the merits and must be dismissed.

### i. The Metro Pain Defendants fail to allege any statement that was knowingly false when made.

The Metro Pain Defendants fail to allege facts giving rise to an inference that any statement

4

by State Farm was knowingly false when made. Rather, the allegedly fraudulent statements show State Farm was attempting to verify the claims in good faith, in accordance with its obligations under the No-Fault Laws. Under *Bell Atlantic Corp. v. Twombly*, the Metro Pain Defendants must plead factual "allegations plausibly suggesting (not merely consistent with)" unlawful behavior. 550 U.S. 544, 557 (2007). It is not sufficient to plead facts, as the Metro Pain Defendants have done here, which are "just as much in line with" lawful behavior. *Id*. at 554.

State Farm has its own duty under the No-Fault laws to have anti-fraud protocols in place. New York Insurance Law § 409(a) requires insurers to create and follow a "plan for the detection, investigation and prevention of fraudulent insurance activities in this state." As a part of this plan, insurers are required to establish a "special investigations unit . . . responsible for investigating information on or cases of suspected fraudulent activity and for effectively implementing fraud prevention and reduction activities." *Id*. § 409(b)(1). In conducting such investigations, State Farm is permitted to request any "pertinent information that may assist [State Farm] in determining the amount due and payable." 11 N.Y.C.R.R. § 65-1.1. And a provider of health services is not eligible for reimbursement under § 5102(a)(1) if the medical services or goods were provided pursuant to unlawful referrals or kickbacks. N.Y. Pub. Health Law §§ 238-a, 238-d; 10 N.Y.C.R.R. § 34-1.3. The Metro Pain Defendants take issue with requests for information related to providers' financial arrangements and suggest the only permissible inquiry would have been about the medical necessity of treatment. But such financial arrangements are relevant to potentially unlawful referral or kickback schemes, which would render claims ineligible for reimbursement. Thus, in requesting such information, State Farm was fulfilling its duties under the No-Fault laws, and the statements identified by the Metro Pain Defendants fail to raise any reasonable inference to the contrary.

Indeed, the allegedly fraudulent statements identified by the Metro Pain Defendants, when

read in context, make plain State Farm was requesting information to fulfill its duties under the No-Fault laws, not to conduct covert "pre-litigation discovery." For example, Exhibit 6 to their Counterclaims shows "Metro Pain ha[d] not . . . produce[d] all of the documents requested by State Farm," necessitating State Farm's further verification requests. Exhibit 7 explains the requested documents were "necessary to determine the eligibility of Metro Pain Specialists to collect No-Fault reimbursement" because Dr. "Shapiro's [EUO] testimony raised concerns which necessitate the production of the [requested] documents." Similarly, Exhibit 12 explains Defendants' "EUO testimony raised concerns, which necessitates that documentary information be provided" and that "Tri Borough has failed to fully comply with State Farm's request for additional verification."

In addition, the Metro Pain Defendants continue to quote a State Farm note in a misleading fashion to suggest, falsely, that State Farm continued requesting information after Metro Pain had fully complied with the verification requests. *See* Opp. 15 (selectively quoting Exh. A to State Farm Mem. of Law). In fact, that document states Metro Pain had engaged in "continuous billing . . . without additional verification being supplied." Exh. A to State Farm Mem. of Law. Thus, this document shows why State Farm continued to pursue verification of the Metro Pain Defendants' claims—to verify their continued entitlement to No-Fault benefits—not to conduct covert "pre-litigation discovery." Opp. 20.

Under *Twombly*, it is not enough to plead facts that are merely consistent with unlawful behavior—and the Metro Pain Defendants haven't even done that. Instead, after exhaustive discovery, the Metro Pain Defendants have no document showing State Farm had already decided to deny the Metro Pain Defendants' claims at the time State Farm made any of the allegedly false requests for additional verification. Thus, even if the Metro Pain Defendants were not attempting to enforce a contractual duty, they failed to allege an essential element of fraud.

6

### ii. The Metro Pain Defendants fail to plausibly allege reliance.

The Metro Pain Defendants concede they cannot plausibly allege they relied on any statement made by State Farm *after* they had already submitted a claim to State Farm for reimbursement; they argue instead only that they "continued to treat *new* patients who were State Farm insureds" in reliance on State Farm's statements. Opp. 17 (emphasis added). Thus, even if the Metro Pain Defendants' claim for fraud were cognizable, they concede they cannot assert fraud for any claims for treatment rendered before July 18, 2019—the earliest allegedly false statement identified by the Metro Pain Defendants. *See id.*. 14.

In any event, the Metro Pain Defendants cannot plausibly allege they reasonably relied on State Farm's verification requests as promises they would be paid on subsequent claims for treatment. To be sure, the Metro Pain Defendants argue that, had they known State Farm's statements were false, they would have ceased treating patients insured by State Farm, rather than "waiting for payment that would never come." Opp. 17. But the allegedly fraudulent statements do not promise payment once they provided the requested information. *See* Counterclaims, Exhs, 6, 7, and 12; State Farm Mem. of Law, Exh. A. Rather, these statements make plain that State Farm continued to harbor concerns over the Metro Pain Defendants' entitlement to receive No-Fault benefits State Farm needed to resolve before paying any claims. And the continuing nature of State Farm's requests shows the Metro Pain Defendants had not allayed those concerns. As a result, the Metro Pain Defendants cannot plausibly allege they reasonably relied on State Farm's requests as a promise that State Farm would not have concerns with their treatment of new patients.

## II. The Metro Pain Defendants' Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing Fails Twice Over.

### A. The Metro Pain Defendants fail to allege bad faith.

The Metro Pain Defendants allege State Farm breached the implied covenant by acting in

bad faith in pursuing the "delay and predetermined denial" of their claims. Opp. 19. But the Metro Pain Defendants cannot point to a single document showing State Farm decided to deny their claims before requesting material to verify those claims. Rather, as explained above, the exhibits attached to the Counterclaims show State Farm was exercising its rights and obligations under the No-Fault Laws to determine whether the Metro Pain Defendants were entitled to payment under State Farm's insurance policies with its insureds. This is not sufficient to show the kind of bad faith required to state a claim for breach of the implied covenant of good faith and fair dealing.

The cases cited by the Metro Pain Defendants hold that a claim for breach of the implied covenant will arise when a party engages in conduct "'that while technically not constituting a breach of contract, nevertheless deprives the plaintiff of the benefit of its bargain.'" *VR Optics, LLC v. Peloton Interactive, Inc.*, No. 16-cv-6392, 2017 WL 3600427, at *4 (S.D.N.Y. 2017) (quoting *Konecranes, Inc. v. Cranetech, Inc.*, No. 03-cv-6082, 2005 WL 246916, at *3 (W.D.N.Y. Feb. 2, 2005); *JM Holdings 1 LLC v. Quarters Holding GmbH*, No. 20-cv-3480, 2021 WL 860516, at *6 (S.D.N.Y. 2021) (similar). But the Metro Pain Defendants fail to articulate how State Farm's verification requests "deprive [them] of the benefit of [their patients'] bargain." *VR Optics, LLC*, 2017 WL 3600427, at *4. Rather, State Farm's verification requests were *consistent* with its obligations under the No-Fault laws, which are incorporated into its contracts with its insureds. The Metro Pain Defendants cannot reasonably claim otherwise.

### B. The Metro Pain Defendants' claim for breach of the implied covenant of good faith and fair dealing duplicates breach of contract claims they have brought against State Farm in other proceedings.

The Metro Pain Defendants argue a claim for breach of the implied covenant can "stand on its own" where a claimant alleges "the defendant had exercised its contractual right malevolently, for its own gain, as part of a purposeful scheme designed to deprive the plaintiffs of the benefits of their contract." Opp. 19 (quoting *Anexia, Inc. v. Horizon Data Solutions Center,*

8

*LLC*, 2022 N.Y. Slip. Op. 50320(U) (Sup. Ct., N.Y. Co. April 21, 2022); *Richbell Info. Servs., Inc. v Jupiter Partners, L.P.*, 309 A.D.2d 288, 302-3 (1st Dept. 2003)). But the exhibits attached to the Counterclaims show State Farm did not exercise a contractual right "for its own gain" to "deprive [the Metro Pain Defendants] of the benefits of their contract[s]." *Richbell*, 309 A.D.2d 288 at 302. Rather, State Farm exercised its contractual right to demand verification of the Metro Pain Defendants' claims because of their concerning testimony and refusal to provide requested documentation. *See* Counterclaims, Exhs. 6-7, 12. The Metro Pain Defendants fail to allege facts suggesting State Farm exercised its contractual rights "malevolently" such that this claim could be considered distinct from the breach of contract claims they have attempted to pursue in other proceedings. This claim should be dismissed for this reason, too.

**III.     The Metro Pain Defendants Fail to State a Claim for Violation of New York General Business Law Section 349.**

The Metro Pain Defendants fail to allege State Farm's conduct was consumer-oriented, as required to state a claim under New York General Business Law Section 349, and they do not plead any deceptive conduct on State Farm's part. Defendants' cases do not undermine this reality.

The Metro Pain Defendants cite *Brown v. GEICO*, 66 N.Y.S.3d 733, 735 (3d Dep't 2017), and *Riordan*, 756 F. Supp. at 739, for the proposition that an insurer's process for denying claims is consumer oriented. Opp. 21-22. In those cases, however, the suits were brought by *consumers* against their insurance company. *Brown*, 66 N.Y.S.3d at 734; *Riordan*, 756 F. Supp. at 734. Thus, the insurance company's conduct giving rise to those claims was unquestionably consumer oriented. The Metro Pain Defendants also cite *Allstate v. Lyons*, 843 F. Supp. 2d 358, 376 (E.D.N.Y. 2012), and *Allstate v. Rozenberg*, 590 F. Supp. 2d 384, 395 (E.D.N.Y. 2008), for the proposition that State Farm's verification process financially harms consumers. Opp 23-24. But both cases considered whether a *provider's* fraudulent No-Fault claims harm consumers—not

9

whether an *insurer's* process for verifying a *provider's* claims was consumer oriented. *Lyons*, 843 F.Supp.2d at 375; *Rozenberg*, 590 F. Supp. 2d at 395. Moreover, in both cases, Allstate specifically alleged the defendants' conduct harmed consumers by "causing an escalation in insurance premiums and requiring that insured consumers pay for health services that were not covered by insurance because of defendants' fraud." Compl. ¶ 705, *Lyons*, No. 11-cv-2190, ECF 1 (E.D.N.Y. May 5, 2011); Compl. ¶ 435, *Rozenberg*, No. 08-cv-0565, ECF 1 (E.D.N.Y. Feb. 12, 2008).

The Metro Pain Defendants, by contrast, do not articulate how State Farm's *provider*-oriented verification process harms consumers. They allege State Farm receives "windfall premiums" from its insureds, Opp. 23, but they fail to explain how State Farm's receipt of premium payments constitutes a "windfall" harmful to insureds when State Farm exercises its obligations to investigate potentially fraudulent claims for No-Fault benefits which have been assigned to the Metro Pain Defendants. Nor can they. State Farm's verification process "only affects the extent of [a provider's] reimbursement"; it is not consumer oriented. *Precision Imaging of New York, P.C. v. Allstate Ins. Co.*, 263 F. Supp. 3d 471, 476-77 (S.D.N.Y. 2017).

In any event, for the reasons explained above, the Metro Pain Defendants fail to allege facts showing that State Farm's requests were deceptive. Their Section 349 claim should be dismissed.

## IV. The Metro Pain Defendants Concede Dr. Shapiro Lacks Standing.

Lastly, the Metro Pain Defendants concede Dr. Shapiro lacks standing to pursue any of the counterclaims. Opp. 25 n.8. That's because Dr. Shapiro submitted no claims for reimbursement directly to State Farm, underscoring that the Metro Pain Defendants' claims stem from contractual assignments and are not cognizable for fraud, breach of an implied covenant, or Section 349.

## CONCLUSION

The Court should dismiss the Metro Pain Defendants' Counterclaims in their entirety.

Dated: March 26, 2024             Respectfully submitted,

KATTEN MUCHIN ROSENMAN LLP

By: */s/ Jonathan L. Marks*
Ross O. Silverman (NY Bar No. 4147922)
Jonathan L. Marks (NY Bar No. 5462874)
KATTEN MUCHIN ROSENMAN LLP
525 West Monroe Street
Chicago, Illinois 60661-3693
Telephone: 312.902.5200
Facsimile: 312.902.1061
ross.silverman@katten.com
jonathan.marks@katten.com

Christopher T. Cook (NY Bar No. 5112123)
KATTEN MUCHIN ROSENMAN LLP
50 Rockefeller Plaza
New York, NY 10020-1605
Telephone: 212.940.8800
christopher.cook@katten.com

*Attorneys for Plaintiffs State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company*

11

## CERTIFICATE OF SERVICE

I hereby certify that on March 26, 2024, I served the foregoing Reply in Support of Plaintiffs' Motion to Dismiss electronically through ECF filing upon all counsel of record.

                                              */s/ Christopher Cook*
                                              Christopher T. Cook (NY Bar No. 5112123)
                                              KATTEN MUCHIN ROSENMAN LLP
                                              50 Rockefeller Plaza
                                              New York, NY 10020-1605
                                              Telephone: 212.940.8800
                                              christopher.cook@katten.com