

Katten Muchin Rosenman LLP

525 W. Monroe Street
Chicago, IL  60661-3693
312.902.5200 tel
www.katten.com

JONATHAN L. MARKS
jonathan.marks@katten.com
312.902.5337 direct
312.902.1061 fax

June 20, 2024

**VIA ECF**

Magistrate Judge Peggy Kuo
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re: *State Farm Mut. v. Metro Pain*, 1:21-cv-05523 – Motion for Disqualification

Dear Judge Kuo:

Plaintiffs State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company (together, "Plaintiffs") respectfully move this Court for an order disqualifying Nima Ameri, Esq. from representing nonparty Damon Minus ("Minus") at a deposition noticed in this action. Mr. Ameri has a concurrent conflict due to his representation of Yan Moshe ("Moshe"), Regina Moshe M.D. ("Dr. Moshe"), and many of the corporate defendants and nonparties owned by each,[1] his role as Vice Chairman of the Board of one of the defendants in this case, Moshe's hospital Hudson Regional, and his personal participation is some of the very transactions that will be the subject of the deposition of Minus. As described below, Minus's testimony is highly relevant to Plaintiffs' allegations that Moshe owns and controls professional service corporations owned on paper by Dr. Moshe, and Plaintiffs' questioning is likely to solicit testimony adverse to Mr. Ameri's other clients, namely Moshe, Dr. Moshe, and their corporate defendants, as well as to Mr. Ameri personally given his position since March 2021 as Vice Chairman of the Hudson Regional board of directors and his personal involvement in the transactions at issue.

Pursuant to this Court's rules, Plaintiffs attempted to confer with Mr. Ameri and another lawyer who has been representing Minus, John Vieira. On June 5, 2024, Plaintiffs sent a letter detailing their concerns to Mr. Ameri and Mr. Vieira, which is attached hereto as Exhibit 1. Plaintiffs spoke with Mr. Vieira and were unable to resolve the issue. Mr. Ameri requested time to respond to the letter in writing and then promised a written response by June 17, 2024. To date, no response from Mr. Ameri has been received. As the deposition of Minus is scheduled for this Friday, June 21, 2024, Plaintiffs had no choice but to file this motion.

Plaintiffs respectfully seek an order precluding Mr. Ameri from representing Minus.

***Background***:  Plaintiffs have alleged a scheme in which defendants have conspired to submit fraudulent claims for healthcare services rendered to individuals involved in automobile accidents. As part of the scheme, Moshe owns and operates ambulatory surgery centers (the "Moshe ASCs")

---

[1] Mr. Ameri has served as counsel for at least defendants Yan Moshe ("Moshe"), NJMHMC LLC ("Hudson Regional"), HealthPlus Surgery Center LLC ("HealthPlus Surgery"), Star Solution Services Inc. ("Star Solution"), Regina Moshe M.D. ("Dr. Moshe"), Citimedical I, PLLC ("Citimedical I"), Citimed Surgery Center LLC ("Citimed Surgery"), Citimed Complete Medical Care P.C. ("Citimed Complete"), and Citimed Management Services Inc. ("Citimed Management").

KATTEN MUCHIN ROSENMAN LLP
CENTURY CITY    CHARLOTTE    CHICAGO    DALLAS    LOS ANGELES
NEW YORK    ORANGE COUNTY    SHANGHAI    WASHINGTON, DC
A limited liability partnership including professional corporations
LONDON: KATTEN MUCHIN ROSENMAN UK LLP

in New York and New Jersey at which patients receive pain management and orthopedic procedures, and he owns Hudson Regional, at which some patients receive preoperative testing and drug screening. Moshe is neither a physician nor a licensed healthcare practitioner, and he is reliant on medical providers to refer patients to his facilities. Two primary referral sources for the Moshe ASCs are Metro Pain Specialists P.C. ("Metro Pain"), which is owned by Leonid Shapiro M.D., and medical clinics operating as "Citimed,"[2] which are owned on paper by Moshe's sister, Dr. Moshe. Plaintiffs allege Moshe paid kickbacks to Shapiro in exchange for the referrals from Metro Pain, and secretly owns and controls Citimed. If, as the complaint alleges, Citimed is not owned by its paper owner Dr. Moshe, but is actually owned and controlled by a layperson (Moshe), then it was not entitled to reimbursement for No-Fault benefits. As a result, any claim Citimed submitted to Plaintiffs representing it was entitled to benefits would have been false.

Plaintiffs have developed significant evidence supporting Moshe's ownership and control of Citimed and the myriad ways in which he shares in its proceeds. Financial discovery reflects payments from Citimed and Citimed Management to a network of Moshe-owned entities providing billing, leasing, and equipment services. Indeed, Moshe owns through holding companies much of the real estate from which Citimed operates and receives millions in rent annually. This real estate and Citimed's status as the primary, if not exclusive, tenant is at the center of tens of millions in loans issued by Popular Bank to entities owned and controlled by Moshe.

Minus is a former Vice President at Popular Bank who worked as a Senior Commercial Relationship Officer for the Middle Market and Specialty Finance Group. In that position, Minus served as the client relationship manager for Moshe. Records produced by Popular Bank in discovery reflect Minus was involved in the evaluation of risk associated with the loans Popular Bank issued to Moshe. Among other things, Minus is critical to understanding whether these transactions and Moshe's relationship to Citimed reflect legitimate arms-length agreements or evidence of Moshe's control of Citimed and his use of its assets and business proceeds for his personal benefit. For example, documents produced by Popular Bank include instances in which it questions the economics of a purported "lease" between Citimed and a Moshe entity, and whether the lease "may stress Citimed's cash flow."

Mr. Ameri not only represents Moshe and his entities, he served as Moshe's counsel in its dealings with Popular Bank. As one example, Moshe secured more than $15.5 million in loans using as collateral the assets of Citimed, Citimed Surgery, and/or Citimed Management. Mr. Ameri represented Moshe and Dr. Moshe in these transactions. As another example, Moshe restructured leases between his real estate holding companies and Citimed to obtain loan approvals that would fund Moshe's other businesses, including the Moshe ASCs and Hudson Regional. Again, Mr. Ameri represented Moshe and Dr. Moshe in these transactions. Notably, Dr. Moshe testified at the Rule 30(b)(6) deposition of Citimed Management she knows nothing about how the rent identified in leases was established or about the transactions involving Popular Bank. Rather, Moshe and his lawyers (*i.e.*, Mr. Ameri) handled such matters.

Defendants have not been forthcoming about the financial relationships between and among Moshe, Dr. Moshe, and their entities. Moshe and Dr. Moshe each failed to identify in response to

---

[2] "Citimed" is comprised of the following defendants: Citimedical I, Citimed Services, P.A., Citimedical Services P.C., and Citimed Complete.

interrogatories entities in which they share an ownership interest and the agreements entered into between their companies securing the Popular Bank loans. Moshe also failed to preserve or to produce any records relating to his transactions with Popular Bank. Only after Plaintiffs moved for an order requiring Moshe to show cause for failing to produce records relating to the Popular Bank transactions did counsel for Moshe disclose in a letter to the Court that all emails had been destroyed. Dkt. 451. Five months later, Plaintiffs obtained records from the email service provider Yahoo showing Moshe ***does possess*** emails between him and Popular Bank, including over 3,200 emails with Minus and emails believed to relate to the very transactions about which Plaintiffs intend to question Minus. Yet, Moshe still has not produced a single email from this account, and Plaintiffs only recently learned that his emails had not even been collected for review.

To explore issues relating to the Popular Bank transactions, Plaintiffs served a subpoena *ad testificandum* on Minus on March 27, 2024. On April 15, Plaintiffs were contacted by in-house counsel at Popular Bank, John Vieira, Esq., who advised in correspondence he "will be representing Minus at deposition solely in his capacity as a former employee of Popular Bank." Plaintiffs and Mr. Vieira negotiated dates for the deposition and agreed the deposition would occur on June 21. On May 29, Plaintiffs were advised Minus was seeking additional counsel. The next day, Mr. Ameri contacted Plaintiffs to advise he "will be representing Minus in an individual capacity" and that Mr. Vieira does not represent Minus. Plaintiffs then noticed and served a new subpoena for Minus to appear and testify at a deposition on June 21.

Based on concerns with Mr. Ameri's representation of Minus and questions concerning the dual representation of Minus at the deposition, on June 5, Plaintiffs served a letter on Mr. Ameri and Mr. Vieira advising that Plaintiffs intended to limit the scope of questioning during the deposition to Minus's role as a former employee of Popular Bank and raising concerns about Mr. Ameri's representation given the conflict. *See, e.g.*, Ex. 1. Plaintiffs' letter stated that, given the conflict for Mr. Ameri and Plaintiffs' intention to limit questioning, Mr. Vieira's representation should be more than sufficient. Plaintiffs asked both counsel for their position on the issues. Neither counsel responded to the issues raised in Plaintiffs' letter, and on June 14, Plaintiffs requested a response by June 17, or advised they would raise the issues with the Court. That same day, Mr. Vieira responded that Popular Bank takes no position on the issues raised in the letter, all future communications should be directed to Mr. Ameri as personal counsel to Minus, and it was "unclear whether Mr. Minus would still like me to appear with him at deposition." Mr. Ameri promised to provide a response to Plaintiffs' letter in writing by June 17, but to date no response has been provided. This letter follows.

***Legal Standard***: A motion to disqualify is left to the sound discretion of the district court. *See Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990). Disqualification may be appropriate if "the movant can show that the presence of a particular counsel will taint the trial by affecting his or her representation of a case," such as "where an attorney's conflict of interests in violation of Canons 5 and 9 of the Code of Professional Responsibility undermines the court's confidence in the vigor of the attorney's representation of his client." *Galloway v. Nassau Cty.*, 569 F. Supp. 3d 143, 147 (E.D.N.Y. 2021), *aff'd sub nom. Galloway v. Cty. of Nassau*, 589 F. Supp. 3d 271 (E.D.N.Y. 2022) (quoting *M & T Mortg. Corp. v. White*, 2007 WL 2816186, at *3 (E.D.N.Y. Sept. 26, 2007). Canon 5 "is substantially similar to . . . Rule 1.7 of the New York Rules of Professional Conduct," which prohibits a "representation [that] will involve the lawyer in representing differing interests" or where "there is a significant risk that the lawyer's professional

judgment on behalf of a client will be adversely affected by the lawyer's own financial, business, property, or other personal interests." *All Star Carts and Vehicles, Inc. v. BFI Canada Income Fund*, 2010 WL 2243351, at *3, n.3 (E.D.N.Y. June 1, 2010); N.Y. R. Pro. Conduct 1.7(a). This analysis is determined in the context of the particular facts presented by each case. *See id.* ("the conclusion in a particular case can be reached only after ***painstaking analysis of the facts***") (emphasis in original and internal quotations omitted). While motions for disqualification are generally disfavored, "'any doubt is to be resolved in favor of disqualification.'" *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 126 F. Supp. 3d 413, 419 (S.D.N.Y. 2015) (quoting *Hull v. Celanese Corp.*, 513 F.2d 568, 571 (2d Cir. 1975)).

*Analysis*:   Mr. Ameri's representation of defendants Moshe, Dr. Moshe, and their corporate entities, his personal involvement in the transactions at issue, and his role as a Board member for defendant Hudson Regional warrant his disqualification as counsel for Minus at deposition in this action.

Mr. Ameri cannot disentangle the interests of his clients Moshe, Dr. Moshe, and their entities from that of Minus in this action. Moshe, Dr. Moshe and their corporate defendants are defending claims that may expose them to $66 million in compensatory liability and losses on unpaid claims totaling tens of millions of dollars. Central to Plaintiffs' theories of liability is Moshe's role as an owner in Citimed and his use of Citimed's assets and operations to financially enrich himself. Despite Moshe's and Dr. Moshe's best efforts to conceal the scope of these relationships, Plaintiffs have obtained directly from Popular Bank communications reflecting the ways in which Moshe siphons proceeds from Citimed and how Citimed operates to serve Moshe's personal interests. Minus is a nonparty with no interest in the outcome of this litigation. His only obligation is to provide complete and truthful testimony in response to questions posed at deposition. If he is complete and truthful in his testimony, it could constitute evidence that would be consistent with Plaintiffs' allegations and harmful to the defenses of Mr. Ameri's clients — Moshe, Dr. Moshe, and their entities. This is where the conflict resides.

Plaintiffs will question Minus on documents and issues adverse to Moshe, Dr. Moshe, and their corporate defendants. Such topics will include Moshe's use of Citimed assets as collateral for more than $15.5 million in loans from Popular Bank, Moshe's ability to unilaterally set rent and other leasing provisions for Citimed's use of space at Moshe-owned real estate, Moshe's business plan for the acquisition of real estate at which Dr. Moshe's Citimed Surgery would operate, the role of Dr. Moshe in transactions involving Popular Bank, and Minus's understanding of Moshe's relationship with Citimed, among other issues.

Heightening concerns with the concurrent conflict is Mr. Ameri's role in the very transactions at issue. Mr. Ameri represented Moshe, Dr. Moshe, and their corporate entities in transactions with Popular Bank and Minus. Indeed, documents on which Minus will be questioned reflect: (1) Mr. Ameri modifying a lease agreement between a Moshe holding company and Citimed Management to adjust the rent paid and term of the lease; (2) Mr. Ameri discussing with Popular Bank whether leases between Moshe and Citimed "may stress Citimed's cash flow"; and (3) Mr. Ameri obtaining and providing Citimed financial and business records to Popular Bank in evaluating risk associated with the loan applications.

Finally, Mr. Ameri appears to have a personal financial and business interest in the outcome of this litigation that could impact his ability to provide unbiased counsel to Minus. Mr. Ameri serves as Vice Chairman of the board of directors of Hudson Regional and has provided legal services to Moshe, Dr. Moshe, and their entities in both transactional and litigation matters. A finding in Plaintiffs' favor on the causes of action in this case would result in significant compensatory liability for Moshe and Dr. Moshe, and may have broader implications on their ability to collect on bills submitted to other insurance carriers and their ability to service existing debt or qualify for additional lending. As a lawyer for the Moshes, Mr. Ameri's mere presence in the deposition room could hamper Plaintiffs' ability to obtain complete and candid testimony from Minus regarding the transactions at issue.

The purpose of the conflict rules is to ensure that a lawyer's loyalty to her client remains undivided and devoted. "A lawyer's duty of absolute loyalty to his client's interests does not end with his retainer." *T.C. Theatre Corp. v. Warner Bros. Pictures, Inc.,* 113 F. Supp. 265, 268 (S.D.N.Y. 1953). Here, Mr. Ameri cannot reconcile his professional and personal conflicts with his representation of Minus. Moreover, given Plaintiffs intend to question Minus about his role as a former employee of Popular Bank, Mr. Ameri's representation of Minus is unnecessary given Minus is already represented by Mr. Vieira.

For the reasons stated above, Plaintiffs respectfully request the Court grant this motion and enter an order disqualifying Mr. Ameri from representing Minus at deposition in this matter.

Respectfully submitted,

*/s/ Jonathan L. Marks*

Jonathan L. Marks

## CERTIFICATE OF SERVICE

  I, Christopher T. Cook, an attorney, hereby certify that on June 20, 2024, I served the foregoing Motion for Disqualification of Counsel for Damon Minus on the following counsel of record by email:

  Nima Ameri, Esq. (by electronic mail to Nima.Ameri@amerilawfirm.com)
  John Vieira, Esq. (by electronic mail to jvieira@popular.com)

              */s/ Christopher T. Cook*
              *Attorney for Plaintiffs State Farm*
              *Mutual and State Farm Fire*