

July 25, 2024

**VIA ECF**

Magistrate Judge Peggy Kuo
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

525 W. Monroe Street
Chicago, IL  60661-3693
312.902.5200 tel
www.katten.com

**JONATHAN L. MARKS**
jonathan.marks@katten.com
312.902.5337 direct
312.902.1061 fax

Re:  *State Farm Mut. v. Metro Pain*, 1:21-cv-05523 – Response to Dkt. 594

Dear Judge Kuo:

Pursuant to this Court's July 18, 2024 order, Plaintiffs State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company (together, "Plaintiffs") respond to non-party Damon Minus's motion to quash a subpoena seeking his deposition and opposition to disqualification of his attorney. Dkt. 594. Minus is a critical witness with firsthand knowledge of information relevant to defendant Yan Moshe's secret ownership and control of medical clinics owned on paper by his sister, defendant Dr. Regina Moshe. The recent filing by Minus, and attorney Nima Ameri, a long-time attorney for Moshe who was involved in the very transactions about which Minus is expected to testify, joins a litany of other efforts by the Moshe defendants to block access to evidence that will uncover the details of defendants' fraudulent scheme. The response is telling evidence of Ameri's interest in protecting Moshe by preventing discovery of evidence harmful to Moshe. Far from carrying the burden necessary to quash a subpoena, it offers additional support for why the Minus deposition should be taken and Ameri should be disqualified.

This Court is familiar with the fraudulent scheme Plaintiffs have alleged. For purposes of this motion, the relevant allegations are that all bills submitted by the "Citimed"[1] defendants are fraudulent because the entities were owned and controlled by defendant Yan Moshe, a lay person, rather than his sister defendant Dr. Moshe who owned them on paper. Dkt. 388 ¶¶ 148–59, 163–65, 481–82. Under well-established New York law, only a licensed physician can own and operate a medical professional corporation, and any such corporation or facility owned by a lay person is not entitled to reimbursement under the New York No Fault laws. *See* 11 N.Y.C.R.R. § 65-3.16(a)(12). Plaintiffs also seek to recover all amounts paid to Citimed Surgery Center LLC because it failed to comply with laws and regulations requiring it to disclose its owners in licensing records filed with the New York Department of Health and be managed by its members. Dkt. 388 ¶¶ 143–45, 483–87. Plaintiffs have alleged Moshe improperly owned and managed Citimed Surgery's operations, and as a result it was not entitled to reimbursement for the bills it submitted. Third, Plaintiffs seek to recover all amounts paid to SCOB LLC because Moshe intentionally structured his acquisition of a 9.5% minority interest in SCOB to avoid strict regulatory review of the transaction as required for any acquisition of 10% or more. *See id.* ¶¶ 133–42, 501 (citing N.Y. Pub. Health L. § 2801-a(4)(b)(i)). These allegations and theories put at issue the financial activity

---

[1] "Citimed" refers to the following defendants: Citimedical I PLLC ("Citimedical I"), Citimed Services P.A., Citimedical Services P.C., Citimed Complete Medical Care P.C. ("Citimed Complete"), and Citimed Management Services P.C. ("Citimed Management").

of Citimed, Citimed Surgery, SCOB, Moshe, Dr. Moshe and the financial interactions between and among these individuals and entities. Simply stated, evidence Moshe benefited from or controlled the financial or economic interests of these entities would tend to show his ownership and control of the entities and support Plaintiffs' theories of the case.

On a motion to quash a subpoena seeking testimony, the party seeking discovery bears the initial burden of showing the testimony sought is relevant and proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1). Once shown, the burden then shifts to the movant to show the testimony sought is privileged or unduly burdensome. *See* Fed. R. Civ. P. 45(d)(3)(A)(iii)–(iv). The movant must "justify curtailing discovery" and "'conclusory obligations as to relevance, overbreadth, or burden are insufficient to exclude discovery of requested information.'" *Neogenix Oncology, Inc. v. Gordon*, 2017 WL 1207558, at *8 (E.D.N.Y. Mar. 31, 2017).

Minus is a critical witness because, as reflected in documents Plaintiffs have obtained in discovery, he served as the relationship manager at Moshe's primary bank, was responsible for the Moshe relationship, and worked with Moshe and his entities in a series of important financial transactions. These transactions include multiple instances in which Moshe benefited from and controlled the financial or economic interests of entities his sister Dr. Moshe purportedly owned on paper. Minus's testimony is thus highly relevant and something Moshe, and Moshe's long time lawyer Ameri, want to prevent.

Minus is a former Vice President at Popular Bank who worked as a Senior Commercial Relationship Officer for the Middle Market and Specialty Finance Group. In that position, Minus served as the client relationship manager for Moshe between at least 2015 and 2021. When Moshe needed financing for the purchase of new real estate or to refinance his existing loans with Popular Bank, he contacted Minus. *See, e.g.*, Ex. 1 (5/9/2018 email from Moshe to Minus requesting financing on purchase of property at 9901). But Moshe's commercial properties are not distinct from Citimed. Indeed, virtually every Citimed clinic operates out of a Moshe owned building and pays it "rent" for the purported use of space. Additionally, Moshe regularly used the assets of Citimed entities as collateral to finance Moshe's business dealings. Whether Citimed pays Moshe fair market "rent" for the use of space or makes payments to him to siphon proceeds of Citimed into the pocket of Moshe as their true owner is among the central issues in the case. Equally significant will be whether there is any legitimate reason why Citimed would allow its assets to be used to guarantee Moshe's personal and business borrowing. Popular Bank, and Minus as the relationship manager, were in a position to have direct insight into these dealings. Records show that in connection with extending credit to Moshe and the Citimed entities, Popular Bank expended significant time and resources analyzing Moshe, his businesses, Citimed, and their agreements and obligations. *See, e.g.*, Ex. 2 (8/22/2018 email from J. Vaiman to Minus providing bank statements and tax returns for Citimed for purchase of property). It was Popular Bank that required Moshe to provide guarantees and collateral as security, and it was those requirements that led to the use of Citimed assets to guarantee Moshe's borrowing. *See, e.g.*, Ex. 3 (9/4/20218 email from K. Mitchell at Popular Bank to Yan Moshe requiring loan guarantees from Dr. Moshe, Citimed, and Citimed Management). Minus was directly involved in these transactions and liaised with Moshe and his associates. *See, e.g.*, Ex. 2 (8/22/2018 email from J. Vaiman to Minus showing Minus as only Popular Bank employee on correspondence re documents required for loan); Ex. 4 (4/22/2019 email from Minus to Moshe and Esterov seeking information on Moshe's entities for underwriting of loans). Minus also served a role in obtaining and sharing an appraisal relating to Moshe's

acquisition of the property at which Citimed Surgery would ultimately operate, which describes Moshe's intentions as the buyer of the property: ███████████████████████████████
████████████████████████████████████████████████████████████████
██████████████ Ex. 5 (1/5/2018 email from Minus to Moshe attaching appraisal for 92-12 165 Street). Notably, this appraisal is dated December 14, 2015, which is more than seven months prior to Citimed Surgery's formation. Minus also sponsored the credit application presented to Popular Bank's executive committee to loan $5.625 million to Moshe for the purchase of real estate at which SCOB operated. Ex. 6 (Popular Bank Credit Approval Form re 313 43rd Street). In the section titled "Sponsor Summary on Commercial Mortgage," which was presumably generated by Minus as the sole sponsor to the transaction, Moshe's acquisition plan for SCOB is set forth in detail, stating ████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████ *Id.* at 4–5. Minus thus has firsthand knowledge of facts occurring during the operative period of the scheme and relevant to central issues in the case.

The response attempts to refute Minus's relevance by arguing Minus is no longer with Popular Bank, contending Minus had nothing to do with approval, credit review or underwriting, and noting Plaintiffs have documents from which they can obtain information. None of these contentions, however, undermines the relevance of his testimony. He was present during relevant transactions, regardless of his approval authority he had overall responsibility for and knowledge of the Moshe relationship and relevant transactions, and directing Plaintiffs to documents is not a substitute for testimony of a witness with direct personal knowledge. The only burden offered is that Minus will miss work, which is hardly unique or sufficient to support quashing the subpoena.[2] *Branch v. State Univ. of N.Y.*, 2020 WL 1233564, at *2–3 (S.D.N.Y. Mar. 13, 2020) (holding undue burden insufficient to quash where witness would need to miss work to attend deposition); *Kirschner v. Klemons*, 2005 WL 1214330, at *2 (S.D.N.Y. May 19, 2005) ("inconvenience alone will not justify an order to quash a subpoena that seeks potentially relevant testimony").

Significantly, the response of Minus and Ameri is another transparent attempt to obstruct access to evidence likely damaging to Moshe and offers yet another reason why Ameri should be disqualified. Through this case, Plaintiffs have sought information regarding transactions between and among Moshe, Dr. Moshe and their entities, including their respective interests in real estate. Moshe and Dr. Moshe initially failed to disclose such interests and agreements, and Moshe's real estate companies claimed to have destroyed all communications relating to the transactions involving Citimed, Citimed Surgery, and SCOB discussed above. Dr. Moshe further testified in this action as the corporate representative for Citimed Management that she had no dealings with Popular Bank regarding these transactions or the lease agreements entered into between Moshe

---

[2] The submission includes additional requests that Minus be treated differently than other deponents. There are requests Minus be allowed to attend by Zoom, be paid for his time beyond the statutory witness fee, and have his deposition shortened to less than the time allotted under the Federal Rules. The submission offers no grounds for such relief other than conclusory assertions that the deposition is inconvenient. Such contentions without more should not and cannot support exceptions to the rules governing depositions, which have been crafted to strike a balance between the search for truth and the needs of witnesses. *See, e.g., Macklin v. Sparta Ins. Co.*, 2022 WL 4592803, at *14 (S.D.N.Y. Sept. 30, 2022) ("[g]eneral and conclusory objections" as to burden insufficient to exclude discovery").

and Citimed, and that Moshe alone established the fair market value of the leases and presented them to her for signature, which she signed without negotiation or review. Ex. 7 at 192:12–193:1, 201:11–204:12, 210:5–211:2 (excerpts from 9/12/2023 Citimed Mgmt. 30(b)(6) Dep.). Throughout this action, Plaintiffs have largely been stonewalled by defendants and been forced to rely on nonparties for objective information regarding the alleged scheme.[3]

In an effort to obtain information from what appeared to be a disinterested non-party, Plaintiffs subpoenaed Popular Bank and then sought the deposition of the principal relationship manager, Minus. Plaintiffs were in the process of scheduling Minus's deposition with an attorney for Popular Bank when Ameri appeared, asserted he was Minus's attorney, and began taking steps to prevent Plaintiffs from deposing Minus. Plaintiffs considered Ameri's involvement inappropriate because Ameri represents Moshe, was on the Board of defendant Hudson Regional, and personally served as counsel to Moshe in the transactions between Popular Bank and Moshe, which will be the subject of the Minus deposition. Minus's protestations that Ameri does not represent any defendants in this case and has not represented any defendants in healthcare fraud litigation misses the point. Ameri was a player in the events about which Minus will testify. It is thus clear Ameri had a personal interest in blocking Minus's testimony, and his late in the game motion to quash the subpoena reflects that interest.

Significantly, the recent submission includes an assertion by Minus that Ameri "has been an attorney for me for many years on personal matters. I have always liked his work and have sought legal advice from him on personal business and church matters over the years." Dkt. 594-1 ¶ 14. This statement raises additional issues. It is evidence Ameri may have had an attorney-client relationship with both Moshe and Minus at the time of Moshe's transactions with Popular Bank. Understanding Moshe and Minus's relationship, how it came about, and whether it fostered transactions beneficial to Moshe and harmful to Citimed will be relevant. As a result, questioning at Minus's deposition could include inquiry about whether Ameri's relationships with Moshe and Minus were disclosed, whether more senior management at Popular Bank knew about Ameri's relationship with both Moshe and Minus, what role if any Ameri played in bringing Moshe and Minus together, and whether financial transactions which benefited Moshe and disadvantaged Citimed were properly vetted by Popular Bank given the fact that Moshe and Minus, the lead Popular Bank officer, were represented by the same lawyer. As Ameri was involved in the transactions at issue and his conduct may now be the subject of relevant inquiry, it would seem even more appropriate for Minus to find other counsel, particularly given Ameri's clear personal interest to block access to relevant evidence. These are precisely the rare and unique circumstances in which disqualification of an attorney is appropriate.[4]

---

[3] Plaintiffs have since learned communications between Moshe and Popular Bank relating to these transactions were not destroyed, but stored in Moshe's personal email account, yanmoshe@yahoo.com. Notably, Moshe's supplemental interrogatory responses sworn and served on Plaintiffs on February 5, 2024, state Moshe "DOES NOT utilize yanmoshe@yahoo.com for business purposes." This sworn response is belied by the tens of thousands of emails between Moshe, Citimed, and Popular Bank in his email account yanmoshe@yahoo.com, which have yet to be produced, ***including more than 3,200 emails with Minus***.

[4] While this Court' order dated July 18, 2024, directed Ameri to "immediately file a notice of appearance in this case to ensure electronic notification of activity in this case is received," he still has yet to do so despite being served with the order on this same date. *See* Dkt. 596.

Respectfully submitted,

*/s/ Jonathan L. Marks*

Jonathan L. Marks

## CERTIFICATE OF SERVICE

    I, Christopher T. Cook, an attorney, hereby certify that on July 25, 2024, I served the foregoing letter opposing Damon Minus's Motion to Quash on the following counsel of record by email:

    Nima Ameri, Esq. (by electronic mail to Nima.Ameri@amerilawfirm.com)
    John Vieira, Esq. (by electronic mail to jvieira@popular.com)

                                                    */s/ Christopher T. Cook*
                                                    *Attorney for Plaintiffs State Farm*
                                                    *Mutual and State Farm Fire*