

**Katten**
Katten Muchin Rosenman LLP

50 Rockefeller Plaza
New York, NY 10020-1605
+1.212.940.8800 tel
katten.com

September 18, 2024

**CHRISTOPHER T. COOK**
christopher.cook@katten.com
+1.212.940.6488 direct
+1.212.940.8776 fax

<u>VIA ECF</u>

Magistrate Judge Peggy Kuo
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:   *State Farm Mut. v. Metro Pain*, 1:21-cv-05523
       **Motion to Compel Compliance with Plaintiffs' Subpoenas to Nazar Burak**

Dear Judge Kuo:

  Plaintiffs State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company (collectively, "Plaintiffs") respectfully write to request the Court's assistance in resolving a dispute regarding a subpoena *duces tecum* and a subpoena *ad testificandum* served on non-party Nazar Burak ("Burak"). Plaintiffs served the document subpoena more than four months ago, and no written responses or documents have been produced. Plaintiffs have sought to meet and confer with various possible counsel for Burak and with Burak individually, but Burak is not currently represented, he has not responded to the subpoenas, and he has not provided a position on the issues raised herein, despite Plaintiffs' repeated attempts to obtain one. Given prolonged delays and the need to expeditiously prepare for and take Burak's deposition, Plaintiffs respectfully request the Court order Burak to produce all records responsive to the subpoena *duces tecum* by a date certain and to provide his availability to appear for deposition on a date after he will have produced all responsive documents.

  ***Relevant Background***:  On May 1, 2024, Plaintiffs served a subpoena *duces tecum* on Burak requiring his response within 14 days of service. *See* Ex. 1 (Affidavit of Service). On that same date, Burak contacted Plaintiffs by phone and confirmed he was gathering records and intended to provide an update the following week. Plaintiffs again spoke to Burak on May 22, and he stated the document subpoena was being provided to his accountant to gather responsive records. Ex. 2 (2024.05.22 email C. Cook to N. Burak). After not receiving any response, Plaintiffs sent an email requesting Burak provide written responses and produce responsive records by June 14. *Id*. (2024.06.07 email C. Cook to N. Burak). Separately, on June 1, Plaintiffs served a subpoena *ad testificandum* on Burak seeking his testimony at deposition on July 11, 2024. *See* Ex. 3 (Affidavit of Service). On June 20, attorney Nima Ameri contacted Plaintiffs and advised he would be representing Burak regarding the two subpoenas. Plaintiffs subsequently inquired with Ameri on July 8 and July 26, seeking a date by when documents would be produced and when Burak was available to testify, but received no response. On August 15, Plaintiffs served on Ameri a draft of joint letter raising outstanding discovery issues and seeking Burak's position for inclusion. On August 20, Ameri informed Plaintiffs that he would no longer be representing Burak. On August 21, Plaintiffs contacted Burak directly, provided him a draft joint letter to the Court, and requested his position for inclusion. Burak requested additional time to engage counsel,

and Plaintiffs agreed to provide him until August 30.  On August 29, Anthony Juliano of Brach Eichler LLP informed Plaintiffs that Burak had reached out for representation.  However, as recently as September 16, Juliano still could not confirm whether Brach Eichler would be representing Burak regarding the subpoenas served upon him.  To date, Burak has not provided a position regarding the issues described in this letter.  This letter follows.

*Analysis*:  Burak has failed to serve any written responses, produce any documents, or provide any date by which he will comply with the document subpoena.  He also has not responded to the subpoena seeking his testimony at deposition.

The Court is familiar with the fraudulent scheme Plaintiffs have alleged.  For purposes of this motion, the relevant allegations are that bills submitted by the "Citimed"[1] defendants are fraudulent because the entities were owned and controlled by defendant Yan Moshe ("Moshe"), a lay person, rather than Moshe's sister defendant Regina Moshe, M.D. ("Dr. Moshe"), who owns them on paper. Dkt. 388 ¶¶ 148–59, 163–65, 481–82. Under well-established New York law, only a licensed physician can own and operate a medical professional corporation, and any such corporation or facility owned by a lay person is not entitled to reimbursement under the New York No Fault laws. See 11 N.Y.C.R.R. § 65-3.16(a)(12). One of the ways Plaintiffs will prove Moshe's ownership in Citimed is by showing the myriad ways he shared in its insurance proceeds.

Burak appears to have facilitated the movement of millions of dollars in insurance proceeds from Citimed to Moshe.  Burak is the purported owner of five transportation entities that collectively received more than $7 million from corporate defendants owned by Moshe, Reuven Alon, and Dr. Moshe, including Citimed.  One of the ways Burak moves money received from defendants to Moshe is through billing agreements entered into between his transportation entities and defendant Star Solution Services Inc., which is owned by Moshe and purportedly provides billing services to corporate defendants owned by Dr. Moshe, Moshe, and Alon.  Discovery has also revealed Burak's personal involvement in facilitating defendants' payment of more than $7.8 million to three commonly owned and controlled construction companies, which collectively converted at least $7 million of these payments to cash at various check cashing facilities, including at least $1.6 million in payments from Citimed.  Burak's documents and testimony are highly relevant to numerous critical issues, including defendants' motives for engaging in the scheme, defendants' attempts to hide the proceeds generated through their racketeering activities, and defendants' use of proceeds to advance the scheme by generating cash to, among other things, pay kickbacks and transfer profits from Citimed (owned on paper by Dr. Moshe) to their secret owner, Moshe.

Rule 45 authorizes subpoenas to be issued to non-parties directing them to produce designated documents in that person's possession, custody, or control and to appear to provide deposition testimony.  *See* Fed. R. Civ. P. 45(a)(1)(A)(iii).  The scope of non-party subpoenas under Rule 45 is as broad as that permitted under the discovery rules and reaches all documents in the possession, custody, or control of the subpoena recipient.  *See* Fed. R. Civ. P. 45 (advisory committee's notes to 1970 amendment).  To preserve the right to object to a subpoena, a non-party must serve written objections within 14 days after service of the subpoena.  *Cruz v. Green Tree Mortg. Serv., LLC*, 2017 WL 658054, at *1 (D. Conn. Feb. 17, 2017) ("The failure to serve written

---

[1] "Citimed" refers to the following defendants: Citimedical I PLLC, Citimed Services P.A., Citimedical Services P.C., Citimed Complete Medical Care P.C., and Citimed Management Services Inc. ("Citimed Management").

objections to a subpoena within the time frame specified by Rule 45[] typically constitutes a waiver of such objections.").

Here, Burak has not served any written responses, produced any documents, or lodged any objections to the subpoenas.  By failing to respond to the document subpoena, Burak has failed to comply and waived any objections.  Accordingly, Plaintiffs respectfully request this Court order Burak to (1) serve written responses and produce all documents responsive to the document subpoena by a date certain, and (2) provide his availability to appear for deposition on a date after he will have produced responsive documents.

Respectfully Submitted,

By: /s/ *Christopher T. Cook*

Christopher T. Cook

Encl.  Exs. 1–3


cc:     Nazar Burak (via FedEx Overnight)