March 7, 2025

**VIA ECF**

Magistrate Judge Peggy Kuo
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:   *State Farm Mut. v. Metro Pain*, 1:21-cv-05523 - Joint Ltr. re Discovery Dispute

Dear Judge Kuo:

Pursuant to this Court's Individual Practice Rule VI.A.1, plaintiffs State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company (collectively, "Plaintiffs") and defendant Vadim Dolsky ("Dolsky"), respectfully write to request the Court's assistance in resolving a dispute regarding discovery demands served on Dolsky. The parties have met and conferred on these issues and have been unable to reach a resolution.[1]

## RELEVANT BACKGROUND

Plaintiffs have served document demands and interrogatories on Dolsky seeking information about more than $24 million in gold bullion and coins, luxury watches, and other jewelry Dolsky acquired since May 2018. Through Plaintiffs' Second Set of Interrogatories, Plaintiffs' Third Set of Document Requests, and Plaintiffs' Request for Inspection, Plaintiffs have sought the physical location of these assets, documents identifying the assets' location and reflecting their sale or transfer, and the ability to inspect and photograph the assets. Dolsky asserts he is in sole possession of each and every item but refuses to disclose their location or permit their timely inspection or photographing. The parties now ask the Court to determine whether Dolsky should be required to disclose the location of the objects and permit their timely inspection and photographing.

## PLAINTIFFS' POSITION

Plaintiffs seek to locate, inspect, and photograph more than $24 million in gold bullion, luxury watches, and other jewelry Dolsky purchased largely, if not entirely, with insurance proceeds obtained through the scheme at issue in this case. Plaintiffs make this request because (a) the location of these assets and (b) the identity of the person or persons who possess them is highly relevant. If, as Plaintiffs allege, Dolsky and his shell companies were used to siphon insurance proceeds to individuals who orchestrated the scheme and to hide that flow of money, who received the proceeds, and how much they received, then knowing where those ultimate proceeds are located and who has access to and control of them is critical.

The Second Amended Complaint ("SAC") alleges, among other things, defendants Yan Moshe, Reuven Alon, Dr. Regina Moshe, Dr. Leonid Shapiro, and their long-time friend and business associate Dolsky operate the Metro Pain clinics, the Citimedical clinics, and ambulatory surgery centers ("ASCs") to defraud insurers by rendering medically unnecessary services.

---

[1] The parties respectfully seek leave *nunc pro tunc* to submit this oversized brief. Additional pages are required due to the history and complexity of the issues raised herein.

Allegations include that although the Citimedical clinics are owned on paper by Dr. Moshe, they are secretly owned and controlled by her brother, Moshe. Dolsky is an acupuncturist who treats patients of the Citimedical clinics, an owner of former-defendant TopLab which provided unnecessary drug tests to patients of Moshe's ASCs, and importantly for purposes of this motion played a critical role in siphoning proceeds of the scheme. Plaintiffs allege Dolsky's role in moving proceeds advanced the scheme because, among other things, it allowed Moshe to surreptitiously obtain profits from the Citimedical clinics that he secretly owned and controlled and to generate funds to pay kickbacks to obtain patients.

Dolsky facilitated the movement of proceeds through his entities All Star Services Inc. ("All Star") and Five Star Services, Inc. ("Five Star"), which purport to operate as funding and medical billing companies, respectively. Between October 1, 2016 and December 28, 2022, All Star and Five Star received more than $22.5 million in direct payments from corporate defendants owned by Dr. Moshe, Moshe, Alon, or Dolsky, and more than $30 million in indirect payments from Russell Friedman and the Russell Friedman Law Group LLP, which collected No-Fault insurance proceeds on behalf of these defendants and Dr. Shapiro's Metro Pain Specialists P.C. Thus, Dolsky's entities Five Star and All Star collectively received more than $52 million in insurance proceeds directly and indirectly from defendants. More than $5.29 million in direct payments came from Citimed Management Services Inc., which appears to be a shell company purportedly owned by Dr. Moshe through which enormous sums are siphoned out of the Citimedical clinics (SAC ¶ 156), and the Russell Friedman Law Group transferred other insurance proceeds to Five Star on behalf of the Citimedical clinics, including at least $6.38 million in proceeds paid by No-Fault insurance carriers to settle bills submitted by the Citimedical clinics and other defendants. Dolsky maintained no ledgers for either business, failed to collect and produce emails from any business account associated with All Star and Five Star despite Plaintiffs having requested their collection, and he has produced no documents identifying anything All Star and Five Star did in exchange for the more than $52 million in defendants' insurance proceeds, despite Plaintiffs first requesting such information by subpoena served on him on April 15, 2022—nearly three years ago. Other Defendants' productions are similarly lacking.

Telling is what Dolsky did with the proceeds directed to All Star and Five Star. Between March 20, 2018, and December 2, 2022, Dolsky opened 10 bank accounts in his own name at 9 different banks into which Five Star alone transferred more than $21 million. From those and other accounts Dolsky controlled, he issued payments by wire or check to purchase more than $24 million in gold bullion, luxury watches, and other jewelry. Dolsky opened and closed several accounts within only three to four months, funding them solely with two or three large deposits from Five Star, and then using the funds to purchase these assets. At least one bank unilaterally terminated its relationship with Dolsky based on suspicious activity.

Most of these objects were purchased from two individuals. Dolsky purchased more than $18 million in gold from two companies, American Gold & Diamonds, Inc. and Elite Bullion Corp., which are owned by one person. He bought $3.7 million in luxury watches, including some watches costing half a million dollars each, from a single dealer, Exclusive Timepieces NYC. The watch dealer has a direct business relationship with Moshe. After Dolsky paid Exclusive Timepieces $3.68 million between December 2020 and September 2022, in February 2023, Exclusive Timepieces wired to Moshe's personal bank account two payments totaling $3.5 million. Exclusive Timepieces produced only 14 pages of invoices for these transactions and an unsigned promissory note dated May 1, 2023, permitting the owner of Exclusive Timepieces and

2

his wife to borrow up to $5 million from Moshe's company Giga Life LLC. The timing of Dolsky's acquisitions of gold and luxury watches also confirms they were made with proceeds from defendants' businesses. As one example, on December 6, 2021, Citimed Management and Star Solution together paid over $415,000 to Five Star; on December 14 and 15, Five Star paid $310,000 in three separate transactions into Dolsky's personal accounts; and on December 16, Dolsky paid over $220,000 in three transactions to purchase gold and jewelry.

The question this letter seeks to address is what happened to $24 million in gold and jewelry Dolsky purchased with money defendants obtained by providing medical services to automobile accident patients, including State Farm insureds. Dolsky insists he solely possesses all of the assets and would have Plaintiffs accept that an acupuncturist and operator of a purported funding and billing company—which cannot produce a single document reflecting any services they rendered—earned $52 million, converted at least $24 million of those earnings to gold and jewelry, and has hidden his stash away for safekeeping. But Dolsky will not reveal the location of any of these assets or allow Plaintiffs to timely inspect them. Plaintiffs should not be required to accept Dolsky's word on this issue, particularly given the lengths to which defendants have gone to hide the flow of funds from their businesses. Whether Dolsky subsequently transferred some or all of the assets back to defendants or others would at least be relevant to (a) whether Moshe secretly owns and controls the Citimedical clinics by sharing in their proceeds, (b) whether defendants paid unnamed co-conspirators to obtain patients necessary to fuel the scheme, (c) whether defendants took steps to protect and hide their ill-gotten gains by transferring them to locations outside the Court's jurisdiction, and (d) defendants' motives for engaging in the scheme. If Dolsky is unable to timely produce the assets or identify their present location, such information would be relevant and important to determine before deposing Dolsky. Accordingly, Plaintiffs respectfully request Dolsky comply with discovery demands by (1) identifying the location of each asset in a sworn interrogatory response, (2) producing documents reflecting the location of each asset and any sale or transfer thereof, and (3) producing or permitting Plaintiffs access to each asset for inspection and photographing.

## VADIM DOLSKY'S POSITION

### *A. PRELIMINARY STATEMENT*

Plaintiffs position is built on a foundation of conjecture and mischaracterization in an alarming attempt to circumvent the foundation of basic discovery principles set forth by the Federal Rules of Civil Procedure. Plaintiffs seek to pressure and harass Defendant Dolsky through unduly burdensome discovery requests, seeking to discover the precise location of millions of dollars in assets—specifically gold and luxury watches—items he lawfully purchased and disclosed to Plaintiffs'. Defendant Dolsky has fully accounted for each item purchased and provided information as to how he purchased these items over time. Bizarrely, Plaintiff's demand boils down to inferring that the mere existence of these assets constitutes proof of misconduct. That is a dangerous precedent they are asking this Court to set, by permitting an unwarranted intrusion on Defendant Dolsky's personal finances without adequately establishing the necessity for such an intrusion.

Plaintiff's entire argument hinges on a speculative hypothesis of "if". They state in the first paragraph of "PLAINTIFFS' POSITION" that "[i]f, as Plaintiffs allege, Dolsky and his shell companies were used to siphon insurance proceeds…" This is definition of pure conjecture.

3

Plaintiffs' base their entire position on unsubstantiated hypothesis which simply exposes that the entirety of their argument based purely on speculation. Mere conjecture cannot and should not justify a basis for infringing on the privacy rights of Defendant Dolsky.

Even more troubling is the fact that Plaintiff's' claim Defendant Dolsky used his entities Five Star (a company with over 100 employees) and All Star to fraudulently transfer funds, yet neither corporation is a named party in this action. If these corporations allegedly took part in this alleged conspiracy to defraud insurers, then why would Plaintiffs fail to name them as parties? Plaintiffs are now alleging that non-party businesses are central co-conspirators and attempt to use them for this purpose only to pierce the traditional boundaries of discovery and circumvent procedural due process safeguards.

### B. PLAINTIFFS' REQUEST IS OVERLY INTRUSIVE AND DISPPROPORTIONATE TO THE NEEDS OF THIS CASE.

Plaintiffs' request that Defendant Dolsky not only disclose the very location of these assets but permit Plaintiffs to inspect and photograph these assets are neither relevant nor proportional to the needs of this case as Plaintiffs are already in possession of the necessary information. Specifically, Plaintiffs' previously subpoenaed Elite Bullion Corp., and American Gold & Diamonds Inc. on March 26, 2024. Upon information and belief, Elite Bullion Corp., and American Gold & Diamonds Inc., both responded to Plaintiffs' subpoena. Not only did Plaintiffs receive the subpoena response from both corporations but Defendant Dolsky himself provided his own invoices for over $19,677,392.11 worth of purchases and along with each invoice which he provided to Plaintiffs. He also included the method of payment for said invoices verifying each transaction. Furthermore, Defendant Dolsky swears under oath that he remains in possession of said assets, and all assets were lawfully purchased with Defendant Dolsky's personal funds which he in fact paid taxes on.

Plaintiff's phrase "[i]f as Plaintiff's allege…" exposes their lack of actual evidence. Pure conjecture and speculation does not warrant such an invasive procedure. As stated above, every purchase made by Defendant Dolsky was made through transparent transactions and Plaintiffs' provide no evidence to suggest that assets were transferred to other defendants or hidden beyond this Court's jurisdiction.

### C. PLAINTIFFS' DEMANDS FAR EXCEED THE SCOPE OF THIS LITIGATION.

Plaintiffs are not seeking legitimate discovery; they are weaponizing this Court to pry into personal financial affairs under the guise of civil litigation. Plaintiffs' seek justification from this Court to continue their fishing expedition through highly intrusive means.

They fail to explain why inspecting and photographing gold bars and luxury watches is even remotely relevant, necessary, or proportional to their claims. The question they claim to be pursuing—"What happened to $24 million in gold and jewelry?"—has already been answered: it remains in Defendant Dolsky's possession, as he has repeatedly stated. Yet, rather than accept his statements where he attested to the accuracy of the information provided, Plaintiffs instead choose to belittle Defendant Dolsky's role as an acupuncturist and successful businessman, insinuating that he is incapable of wealth independent of their speculative and unsubstantiated allegations of fraud. Mere suspicion alone is not evidence. "What if" is not a legal standard, and the speculative needs of this civil litigation should never take precedent over Defendant Dolsky's individual privacy rights.

### D. DOLSKY DOES NOT OBJECT TO AN INSPECTION

The Court should be aware that Defendant Dolsky <u>is not denying</u> access to the assets in question. Defendant Dolsky consents to the videotaping and/or allowing State Farm to photograph the assets in question. Said assets would be produced in Counsel's office, at Defendant Dolsky's sole expense over the course of several days due to the sheer volume of the assets and safety concerns associated with the transfer. The real sticking point is Plaintiffs demand to know the exact location of the assets in question. Defendant Dolsky is willing to state under oath in an affidavit that he has exclusive control of said assets with no other individual having access to the assets. He is also willing to enter into a stipulation whereby he agrees not to encumber the assets or remove them from the Court's jurisdiction. Demanding to know the exact location of the assets seems misplaced.

Plaintiffs' position relies solely on conjecture and offers this court no actual evidence as to the alleged fraud complained of in this action. With the offer to allow inspection of the assets, Plaintiffs lacks evidence to convince the Court that Defendant Dolsky seeks to conceal and or defraud anyone. Merely, raising a suspicion of an intent to defraud is not enough to force my client to divulge the assets. In fact, Plaintiffs have not established liability. As stated above, Plaintiffs subpoenaed records which show that Defendant Dolsky purchased gold and other items. Defendant Dolsky has never denied these purchases and has been transparent with Plaintiffs. Additionally, Plaintiffs' were provided with Defendant Dolsky's personal tax returns and receipts to show how and when the items were purchased. Plaintiffs have not put forth any evidence thus far to show that items in question were dissipated or transferred in any fashion. This is particularly important in light of the fact that Defendant Dolsky is consenting to the inspection of all assets in his possession. The question as to why Plaintiffs need to know exactly where the items are located has yet to be satisfactorily answered. Defendant Dolsky is willing to state that the items are within this Court's jurisdiction and will remain so until the conclusion of this matter. Anything more is an overreach by Plaintiff.

Consequently, Plaintiff's discovery requests should be denied. In the alternative, the Plaintiff's should be confined to inspection as offered by Dolsky.

Respectfully Submitted,

By: /s/ *Christopher Cook*

KATTEN MUCHIN ROSENMAN LLP

Ross O. Silverman
Jonathan L. Marks
Michael L. Cardoza
Sarah M. Scruton
525 West Monroe Street
Chicago, Illinois 60661-3693
Telephone: 312.902.5200
Facsimile: 312.902.1061
ross.silverman@katten.com
jonathan.marks@katten.com
michael.cardoza@katten.com
sarah.scruton@katten.com

Christopher T. Cook
50 Rockefeller Plaza
New York, New York 10020-1605
Telephone: 212.940.8800
christopher.cook@katten.com

*Attorneys for Plaintiffs State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company*

By: /s/ *Byron Divins*

CAPETOLA & DIVINS P.C.

Byron A. Divins
Alexandra Mulé
2 Hillside Avenue
STE. Building C
Williston Park, NY 11596
516-746-2300
bdivins@capetoladivinslaw.com

*Attorneys for Defendants Vadim Dolsky and Optimum Health Acupuncture P.C.*