UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------------

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY and STATE FARM
FIRE AND CASUALTY COMPANY,

                      Plaintiffs,

                v.

METRO PAIN SPECIALISTS, P.C., TRI-
BOROUGH NY MEDICAL PRACTICE P.C.,
LEONID SHAPIRO, M.D., REGINA MOSHE,
M.D., CITIMEDICAL I, PLLC, CITIMED
SERVICES, P.A., CITIMEDICAL SERVICES P.C.,
CITIMED COMPLETE MEDICAL CARE P.C.,
CITIMED MANAGEMENT SERVICES INC.,
CITIMED SURGERY CENTER LLC *a/k/a* CMSC
LLC, YAN MOSHE *a/k/a* YAN LEVIYEV,
HACKENSACK SPECIALTY ASC LLC *f/k/a*
DYNAMIC SURGERY CENTER LLC, *f/k/a*
EXCEL SURGERY CENTER LLC, INTEGRATED
SPECIALTY ASC LLC *f/k/a* HEALTHPLUS
SURGERY CENTER LLC, SCOB LLC *a/k/a*
SURGICARE OF BROOKLYN, NJMHMC LLC
*d/b/a* HUDSON REGIONAL HOSPITAL, STAR
SOLUTION SERVICES INC., VADIM DOLSKY,
OPTIMUM HEALTH ACUPUNCTURE, P.C.,
MARK GLADSTEIN, M.D., VICTORIA
FRENKEL, ADVANCED COMPREHENSIVE
LABORATORY LLC *d/b/a* TOPLAB, REUVEN
ALON *a/k/a* ROB ALON, COLUMBUS IMAGING
CENTER LLC, MEDAID RADIOLOGY LLC,
BESHERT CORP., NIZAR KIFAIEH, M.D.,
PREMIER ANESTHESIA ASSOCIATES P.A.,
MOHAMED SAYED AHMED HASSAN, P.T.,
NILE REHAB PHYSICAL THERAPY, P.C.,
IRINA KATAEVA, P.T., CITYWORKS
PHYSICAL THERAPY P.C., AMRO MAHMOUD
BARAKAT, P.T., BARAKAT PT, P.C., RAOUF
AKL, P.T., PRIMAVERA PHYSICAL THERAPY,
P.C., AHMED MAHMOUD ABDELSHAFY
ELMANSY, P.T., SKY LIMIT PHYSICAL
THERAPY, P.C., SHERWIN CATUGDA
PALLER, P.T., FLORAL PARK PHYSICAL

**MEMORANDUM & ORDER**
21-CV-5523 (MKB)

THERAPY, P.C., LEONARD LUNA, D.C., KINGS
CHIROPRACTIC WELLNESS, P.C., JONGDUG
PARK, D.C., ALL ABOUT CHIROPRACTIC P.C.,
J PARK CHIROPRACTIC P.C., GIULIO
CARUSO, D.C., BROOK CHIROPRACTIC OF NY
P.C., INTEGRATED CHIROPRACTIC OF NY
P.C., PAUL VICTOR SCARBOROUGH, D.C.,
A.O.T. CHIROPRACTIC P.C., EVOLUTION
CHIROPRACTIC P.C., STACY JUYOUNG
MOON, L.AC., SJM ACUPUNCTURE P.C.,
HYEONGSOCK CHOI, L.AC., CHOICE
ACUPUNCTURE PLLC, CHOI-GO
ACUPUNCTURE PLLC, PETER KOPACH, L.AC.,
FIRST ALTERNATIVE PLM ACUPUNCTURE
P.C., LONGYU MA, L.AC., HIDDEN DRAGON
ACUPUNCTURE P.C., XIA GUAN, L.AC.,
REBOUND ACUPUNCTURE P.C., VLADIMIR
NAZAROV, and RIGHT AID MEDICAL SUPPLY
CORP.,

                    Defendants.

-----------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

Plaintiffs State Farm Mutual Automobile Insurance and State Farm Fire and Casualty

Company (collectively, "State Farm") commenced the above-captioned action on October 5,

2021, asserting claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"),

18 U.S.C. §§ 1962 (c)–(d), and state law claims for common law fraud, aiding and abetting

fraud, and unjust enrichment.  (Compl., Docket Entry No. 1.)  Plaintiffs allege that Defendants,

who are health care providers, owners, and related individuals and entities, engaged in a years-

long scheme to fraudulently obtain benefits under New York's Comprehensive Motor Vehicle

Insurance Reparations Act ("No-Fault Act") by providing medically unnecessary treatment

pursuant to illegal "pay-to-play" deals, seeking reimbursement for the claims from Plaintiffs, and

then bringing thousands of baseless arbitrations and state-court proceedings when Plaintiffs

ultimately deny the claims.  (*Id.*)  Plaintiffs filed a First Amended Complaint on December 14,

2021, (First Am. Compl. ("FAC"), Docket Entry No. 63), and a Second Amended Complaint on August 17, 2023 ("SAC"), (Second Am. Compl., Docket Entry No. 388).

On August 29, 2023, Metro Pain Specialists P.C. ("Metro Pain") and Tri-Borough NY Medical Practice, P.C.'s ("Tri-Borough," collectively the "Metro Pain Defendants") in their answer to the SAC, asserted three counterclaims against Plaintiffs, (Metro Pain Defs.' Answer to SAC & Counterclaims, Docket Entry No. 400).  On November 16, 2023, Metro Pain Defendants filed an amended answer and counterclaims against Plaintiffs, (Metro Pain Defs.' Am. Answer to SAC & Counterclaims ("Counterclaims"), Docket Entry No. 482).  Metro Pain Defendants' counterclaims are: (1) breach of the implied covenant of good faith and fair dealing, (2) deceptive business practices under New York General Business Law section 349 ("GBL § 349"), and (3) fraud/fraudulent misrepresentation.  (Counterclaims ¶¶ 10–12, 56–78.)  Metro Pain Defendants allege that State Farm's requests to verify the reimbursement eligibility of their claims were a ruse to unlawfully delay and ultimately deny valid no-fault claims by the Counterclaim Defendants while obtaining pre-litigation discovery for this case.  (Counterclaims ¶¶ 9, 40; Dolsky Defs.' Counterclaims ¶ 8, Docket Entry No 489.)[1]  Plaintiffs move to dismiss

---

[1] Metro Pain Defendants "do not contest that only Metro Pain and Tri-Borough" — and not Leonid Shapiro — "have standing to assert the [c]ounterclaims . . . ."  (Metro Pain Defs.' Opp'n to Pls.' Mot. to Dismiss Opp'n 25 n.8, Docket Entry No. 527-4.)  The Court therefore considers the counterclaims brought only on behalf of Metro Pain and Tri-Borough.  Plaintiffs also moved to dismiss counterclaims asserted by Optimum Health Acupuncture, P.C. ("Optimum") and its owner Vadim Dolsky (collectively, the "Dolsky Defendants"), (Pls.' Mem. in Supp. of Pls.' Mot. to Dismiss Mem. 2, Docket Entry No. 524), but in their amended answer, the Dolsky Defendants withdrew their counterclaims.  (Dolsky Defs.' Stip. to Amend., Docket Entry No. 522.)  The Court therefore denies Plaintiffs' motion to dismiss the Dolsky Defendants' counterclaims as moot.

Metro Pain Defendants' counterclaims pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure.[2]  For the reasons set forth below, the Court grants Plaintiffs' motion.

## I.  Background

Metro Pain is a corporation organized under the laws of New Jersey with its principal place of business in New Jersey.[3]  (SAC ¶ 39.)  Metro Pain's medical practices operate at as many as thirty multidisciplinary clinics in the New York area that cater to automobile accident victims.  (*Id.* ¶ 3.)  Tri-Borough is a corporation organized under the laws of New York with its principal place of business in New Jersey.  (*Id.* ¶ 40.)  Shapiro is a licensed anesthesiologist in New York and New Jersey and the sole original shareholder, director, officer, and incorporator of Metro Pain.  (*Id.* ¶¶ 38–39.)  In May of 2021, Shapiro began operating Tri-Borough as a successor entity to Metro Pain.  (*Id.* ¶ 40.)

Plaintiffs seek damages from Metro Pain Defendants and others for submitting "fraudulent bills and supporting documentation" for services that were "ineligible for reimbursement and/or medically unnecessary."  (SAC ¶ 1.)  The alleged services include "examinations, treatment, medical [resonance] imaging ("MRIs"), testing, orthotic devices and durable medical equipment ("DME," and together with orthotics, "Supplies"), pain management, and orthopedic procedures and related services provided to individuals involved in motor vehicle accidents and eligible for [n]o-[f]ault benefits" under Plaintiffs' policies (the "No-Fault Benefits").  (*Id.*)

---

[2]  (Pls.' Mot. to Dismiss ("Pls.' Mot."), Docket Entry No. 523; Pls.' Mem. in Supp. of Mot. ("Pls.' Mem."), Docket Entry No. 524; Pls.' Reply in Supp. of Pls.' Mot. ("Pls.' Reply"), Docket Entry No. 529; Defs.' Mem. in Opp'n to Pls.' Mot. ("Metro Pain Defs.' Opp'n"), Docket Entry No. 527-4.)

[3]  The Court assumes the truth of the factual allegations in the SAC and Counterclaims for the purpose of deciding Plaintiffs' motion.

### a. The alleged fraudulent scheme

Plaintiffs allege that beginning in November of 2016, Shapiro and others created a scheme to use "fraudulent services designed to manipulate patients and exploit their No-Fault Benefits." (*Id.* ¶¶ 2, 27.) Shapiro operated numerous "multidisciplinary clinics" through Metro Pain in and around Queens, Brooklyn, and Bronx, New York, directed at individuals who have been in automobile accidents. (*Id.* ¶¶ 3, 13.) Four of these locations operated as "gatekeeper" clinics where Metro Pain "perform[ed] initial examinations" of patients to "decid[e] what additional care patients receive and who would provide additional care."[4] (*Id.* ¶¶ 13–14.) The examinations "virtually always conclude [that] patients require a treatment plan consisting of a combination of physical therapy, chiropractic care, and acupuncture, as well as other services," which are performed by healthcare providers in Metro Pain clinics. (*Id.* ¶¶ 14–15.) Providers at Metro Pain performed these services "not . . . because they are necessary, but pursuant to 'pay to play' financial arrangements with Metro Pain and others with whom Metro Pain works." (*Id.* ¶¶ 15, 172.) For example, Plaintiffs allege that some providers are permitted to treat patients of Metro Pain "because they make kickback payments to Metro Pain in exchange for patient referrals, typically disguised as 'rent' pursuant to a sublease for space in the clinic."[5] (*Id.* ¶ 15.)

---

[4]  The four locations are (1) 105-10 Flatlands Ave., Brooklyn, New York 11236 ("105-10 Flatlands"); (2) 204-12 Hillside Ave., Hollis, New York 11423 ("204-12 Hillside"); (3) 717 Southern Blvd., Bronx, New York 10455 ("717 Southern"); and (4) 2451 E. Tremont Ave., Bronx, New York 10461 ("2451 E. Tremont"). (SAC ¶¶ 39–40.)

[5]  Plaintiffs also allege that "several participants in the scheme," including Shapiro, "likely did business with an entity known as Law Cash Advances and its owner Jelani Wray," who pleaded guilty in October of 2021 "to paying bribes and gratuities to an agent of a health care provider that received federal funds." (SAC ¶ 22.) The scheme involved bribing 911 operators and hospital personnel for the contact information of automobile accident victims and use of this information to "contact and steer accident victims to health care providers and lawyers who paid kickbacks for the referrals." (*Id.*) Plaintiffs allege that Shapiro "paid kickbacks to Law Cash Advances totaling more than $250,000" and that Metro Pain's patients were prescribed supplies provided by Jelani Wray's companies. (*Id.*)

Metro Pain Defendants submitted claims to State Farm for patients "falsely representing" that the treatments and services provided "were medically necessary and reimbursable when, in fact, they were performed to exploit patients' No-Fault Benefits." (*Id.* ¶¶ 23–25.)

In April of 2021, Metro Pain ceased operations, and Shapiro began treating patients through Tri-Borough, a successor entity, in May of 2021. (*Id.* ¶¶ 18, 505.) Tri-Borough operates at many of Metro Pain's prior locations, "treats the same patients that Metro Pain treated through physicians previously employed by Metro Pain," "performs the same types of treatment," "makes the same types of referrals as Metro Pain," and submits bills to Plaintiffs for Tri-Borough's services. (*Id.* ¶¶ 18, 213.) Plaintiffs allege that Shapiro operates Tri-Borough as a successor entity to Metro Pain "at least in part to induce insurance carriers, such as [Plaintiffs], to remit payment for fraudulent services they would not otherwise pay to Metro Pain." (*Id.* ¶ 214.) As part of the scheme, Metro Pain Defendants have sought to collect on reimbursement claims that Plaintiffs have denied by initiating arbitration actions and lawsuits. (*Id.* ¶ 538.)

### i.    Predetermined treatment protocols

Plaintiffs allege that Metro Pain Defendants provided treatment and services that were not medically necessary. (*Id.* ¶ 13.) Metro Pain Defendants "render[ed] predetermined examinations and testing to justify [patients'] additional treatment and services" and "subject[ed] its patients to identical treatment plans." (*Id.* ¶¶ 13, 342.) Regardless of the patient's medical needs, Metro Pain's predetermined treatment protocols "virtually always conclude" patients require physical therapy, chiropractic care, acupuncture, MRIs of at least two regions, Supplies, and other diagnostic testing. (*Id.* ¶¶ 14–15, 344.) For example, Metro Pain allows nearly "every patient who receives more than one office visit to receive cervical collars and/or lumbar orthoses." (*Id.* ¶ 17.) Metro Pain Defendants then bill Plaintiffs for these medically unnecessary treatment and services. (*Id.* ¶ 25.) As a result of the predetermined treatment protocols,

Plaintiffs allege that Metro Pain Defendants' conduct negatively impacted patients: "patients were not legitimately examined, diagnosed, and/or appropriately treated for conditions they may have had"; "patients were subjected to treatment for conditions they may not have had"; and "patients' limited No-Fault Benefits were reduced and therefore not available for legitimate treatment they may have needed as a result of their automobile accidents." (*Id.* ¶ 24.)

### ii. "Pay-to-play" financial agreements

Plaintiffs allege that Metro Pain Defendants referred patients to physical therapists, chiropractors, and acupuncturists "in exchange for kickback payments." (*Id.* ¶¶ 13–15.) Healthcare providers' kickback payments were often disguised rent for a sublease. (*Id.* ¶¶ 15, 167–69.) For example, at one gatekeeper clinic, Metro Pain paid a monthly rent of approximately $8,700 for its first year, but Metro Pain collected amounts "close to, and likely well in excess of" its rental obligations as a property owner and sublessor. (*Id.* ¶¶ 169, 180.) In addition to the subleasing agreements, Metro Pain entered into a "pay-to-play" financial agreement with Beshert, a marketing company directed at No-Fault healthcare providers, attorneys, and automobile accident victims. (*Id.* ¶¶ 20, 233.) Beshert requires members of their network to refer patients only to other network members, and members paid kickbacks in exchange for patients. (*Id.* ¶¶ 20, 237–38.) As part of the network, Shapiro and Metro Pain paid Beshert "monthly dues as high as $10,000," exclusively used certain ambulatory surgical centers for their procedures, and "routinely referred patients for MRIs at other member facilities." (*Id.* ¶ 238.)

### iii. Licensing violations

Plaintiffs allege that Metro Pain Defendants violated New York licensing requirements prohibiting secret ownership and control by laypersons. (*Id.* ¶¶ 174, 183, 192, 518.) Metro Pain Defendants entered into several financial arrangements, secured against Metro Pain's accounts

receivable, with Yan Moshe, a layperson who provided up to $2.5 million in capital to Metro Pain through his company Med Capital.  (*Id.* ¶¶ 5, 12, 209.)  Plaintiffs allege that Med Capital's "significant financial leverage" allowed Moshe to "influence, if not control and direct, Metro Pain's affairs," and that Tri-Borough "likely assumed any financial arrangements existing between Moshe and Metro Pain" when Metro Pain ceased operations.  (*Id.* ¶¶ 209–211.)

      **b.    Metro Pain Defendants' counterclaims**

In their answer to the SAC, Metro Pain Defendants assert three counterclaims: (1) breach of the implied covenant of good faith and fair dealing, (2) deceptive business practices under GBL § 349, and (3) fraud/fraudulent misrepresentation.  (Counterclaims ¶¶ 10–12, 56–78.)

Metro Pain Defendants allege that from October of 2017 to the present, "State Farm systematically and meticulously planned and carried out a coordinated scheme" "to unlawfully delay and deny valid No Fault medical claim reimbursement payments due to the Metro Pain Defendants" and their patients.  (*Id.* ¶ 9; Metro Pain Defs.' Opp'n 1.)  In support, Metro Pain Defendants allege that under the No-Fault Act, Plaintiffs are required to follow certain "claim practice principles," including to: "(a) [h]ave as [its] basic goal the prompt and fair payment to all automobile accident victims;" "(b) [a]ssist the applicant in the processing of a claim [and to] . . . not treat the applicant as an adversary;" and "(c) . . . not demand verification of facts unless there are good reasons to do so," and even then, to do so "as expeditiously as possible."  (Metro Pain Defs.' Opp'n 1–2 (second and fourth alterations in original) (citing 11 N.Y. Comp. Codes R. & Regs. ("11 N.Y.C.R.R.") § 65-3.2(a)–(c); Counterclaims ¶ 18.)  Metro Pain Defendants allege that State Farm appointed "Project counsel" to investigate claims submitted by them, (Counterclaims ¶¶ 23–24); diverted their claims to its Multi-Claim Investigative Unit ("MCIU"), (*id.* ¶¶ 27–28), which applied a special verification protocol, (*id.* ¶¶ 31–41, 52–53); solicited physicians to submit peer review reports in support of State Farm's denial of claims, (*id.* ¶¶ 44–

46); and instructed claim handlers to issue blanket denials of Metro Pain Defendants' claims, (*id.* ¶¶ 48–49, 54).  As part of the verification protocol, State Farm submitted verification requests to Metro Pain Defendants, which they represented as "necessary to its determination of whether to pay the claims, when, in fact, State Farm had already committed itself to justifying the denial of the claims."  (*Id.* ¶ 32.)  Metro Pain Defendants allege that State Farm's "template requests . . . had nothing to do with assessing the reasonableness" or medical necessity of treatments provided, but rather allowed "State Farm to conduct covert discovery and delay the claims by demanding the production of every scrap of paper," including Metro Pain's sensitive financial and personnel information.  (*Id.* ¶ 33.)

Metro Pain Defendants "did its best to comply" with every examination under oath ("EUO") request and submitted an affidavit from Shapiro, "attesting that Metro Pain had provided all of the records and information in its possession responsive to State Farm's information requests."  (*Id.* ¶ 36.)  Metro Pain Defendants allege that, despite internally acknowledging in July of 2020 that Metro Pain's counsel "supplied all of the requested verification materials," State Farm falsely represented to "Metro Pain Defendants and their counsel that their responses to the verification requests were incomplete" and required further document productions.  (*Id.* ¶ 37.)  State Farm continued to submit verification requests to Metro Pain Defendants.  (*Id.* ¶ 38.)  For example, in June of 2020, after "having already determined to file litigation to support the denial of claims," State Farm's counsel submitted a verification request to Metro Pain's counsel with a list of over 1,400 claims they "falsely misrepresented it needed" to verify Metro Pain's eligibility to receive No-Fault Benefits.  (*Id.* ¶ 40.)

## II.  Discussion

### a.  Standard of review

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court "must construe [the Complaint] liberally, accepting all factual allegations therein as true and drawing all reasonable inferences in the plaintiff['s] favor." *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 106–07 (2d Cir. 2021) (citing *Palin v. N.Y. Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019)); *see also Vaughn v. Phoenix House N.Y. Inc.*, 957 F.3d 141, 145 (2d Cir. 2020) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)).  A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *New Yorkers for Religious Liberty, Inc. v. New York*, 125 F.4th 319, 327 (2d Cir. 2024) (quoting *Twombly*, 550 U.S. at 570).  "A claim is plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Roe v. St. John's Univ.*, 91 F.4th 643, 651 (2d Cir. 2024) (quoting *Matson*, 631 F.3d at 63); *Cavello Bay Reinsurance Ltd. v. Shubin Stein*, 986 F.3d 161, 165 (2d Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678).  Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678; *Roe*, 91 F.4th at 651 ("Although all factual allegations contained in the complaint are assumed to be true, this rule does not extend 'to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'"  (quoting *Iqbal*, 556 U.S. at 678)).

"A motion to dismiss a counterclaim is evaluated under the same standard as a motion to dismiss a complaint." *CDC Newburgh Inc. v. STM Bags, LLC*, 692 F. Supp. 3d 205, 219 (S.D.N.Y. 2023) (citation omitted); *Ebel v. G/O Media, Inc.*, No. 20-CV-7483, 2021 WL

2037867, at *4 (S.D.N.Y. May 21, 2021) (quoting *Dubov v. Lewis*, No. 18-CV-3854, 2019 WL 1060652, at *2 (S.D.N.Y. Mar. 6, 2019)) (same); *GE Transp. Parts, LLC v. C. Ry. Mfg., LLC*, No. 19-CV-4826, 2021 WL 827146, at *2 (S.D.N.Y. Mar. 4, 2021) ("Federal Rule of Civil Procedure 12(b) applies equally to claims and counterclaims; therefore, a motion to dismiss a counterclaim is evaluated under the same standard as a motion to dismiss a complaint."); *800-Flowers, Inc., v. Floralbx, LLC*, No. 18-CV-2974, 2019 WL 4727533, at *1 (E.D.N.Y. Sept. 27, 2019) ("A motion to dismiss a counterclaim is evaluated under the same standard as a motion to dismiss a complaint." (quoting *Diamond Collection, LLC v. Underwraps Costume Corp.*, No. 17-CV-61, 2019 WL 347503, at *2 (E.D.N.Y. Jan. 22, 2019))); *see also GEOMC Co. v. Calmare Therapeutics Inc.*, 918 F.3d 92, 99 (2d Cir. 2019) ("As to content, a new counterclaim, like all pleadings, must conform to the pleading requirements of *Twombly* and *Iqbal*." (first citing 2 James WM. Moore et al., *Moore's Federal Practice* § 12.34[1][a] (3d ed. 2018); and then citing 6 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1407 (3d ed. 2018))); *Gov't Emps. Ins. Co. v. Cean*, No. 19-CV-2363, 2019 WL 6253804, at *2 (E.D.N.Y. Nov. 22, 2019) (quoting *GEOMC*, 918 F.3d at 99).

### b.  Breach of the implied covenant of good faith and fair dealing claims

Plaintiffs argue that Metro Pain Defendants' "identical claims for breach of the implied covenant of good faith and fair dealing fail twice over because they duplicate breach of contract claims the Counterclaim Defendants have already pursued in other proceedings, and the Counterclaim Defendants fail to allege bad faith."  (Pls.' Mem. 2.)  Plaintiffs contend that their "process of requesting information to verify that claims reflect treatment rendered in compliance with the No-Fault [l]aws is specifically permitted by the No-Fault [l]aws, which are incorporated into [Plaintiffs'] contracts with [Defendants]."  (*Id.* at 16–17.)  Plaintiffs argue that Metro Pain Defendants have failed to "allege how State Farm's verification of their claims — in furtherance

of the purposes of the No-Fault [l]aws — constitutes bad faith." (*Id.* at 17.)  In addition, Plaintiffs argue that Metro Pain Defendants' counterclaim "for breach of the implied covenant of good faith and fair dealing merely restates" the breach of contract claims made by Metro Pain Defendants in many state-court lawsuits "using the language of 'bad faith.'"  (*Id.* at 17–18.) Plaintiffs contend Metro Pain Defendants are seeking the same damages as their breach of contract claims — payment on unpaid No-Fault claims — and therefore Metro Pain Defendants' claim for breach of the covenant of good faith and fair dealing must be dismissed as duplicative. (*Id.*)  In support, Plaintiffs argue that under New York law, "a claim for breach of an implied covenant of good faith and fair dealing does not provide a cause of action separate from a breach of contract claim.'"  (*Id.* at 17 (quoting *O'Hearn v. Bodyonics, Ltd.*, 22 F. Supp. 2d 7, 11 (E.D.N.Y. 1998)).)  In addition, Plaintiffs argue that Metro Pain Defendants' bad faith claim fails because "[i]t cannot be a breach of the implied covenant of good faith and fair dealing to do what a contract explicitly authorizes a party to do."  (*Id.* at 16 (quoting *JN Contemp. Art LLC v. Phillips Auctioneers LLC*, 507 F. Supp. 3d 490, 505 (S.D.N.Y. 2020), *aff'd*, 29 F.4th 118 (2d Cir. 2022)).)

Metro Pain Defendants argue that Plaintiffs violated duties of good faith incumbent upon them under their contracts including "that the insurer must investigate claims for coverage in good faith, must not manufacture factually incorrect reasons to deny insurance coverage, must not deviate from its own practices or from industry practices, and must not act with 'gross disregard' of the insured's interests."  (Metro Pain Defs.' Opp'n 19 (quoting *E. Ramapo Cent. Sch. Dist. v. N.Y. Schs. Ins. Reciprocal*, 158 N.Y.S.3d 173, 177–78 (App. Div. 2021) (internal quotation marks omitted) (collecting cases).)  Metro Pain Defendants also argue that Plaintiffs "failed to investigate the claims . . . in good faith and violated industry practices," alleging that Plaintiffs were "secretly tagging and targeting Metro Pain as a 'Project' for investigation by its

MCIU, and immediately appointing 'Project counsel' to pursue the delay and predetermined

denial of the medical reimbursement claims submitted" by Metro Pain Defendants.  (*Id.* at 19.)

Metro Pain Defendants contend that Plaintiffs acted contrary to 11 N.Y.C.R.R. § 65-3.2(c) which

instructs insurers to "not demand verification of facts unless there are good reasons to do so,"

and argue that Plaintiffs "manufactured factually incorrect reasons to deny insurance coverage"

by "subjecting patients to phony so-called 'independent' medical examinations . . ." and issued

"blanket denials" of patients' claims.  (*Id.* at 20.)

    "Under New York law, 'implicit in every contract is a covenant of good faith and fair

dealing[,] which encompasses any promises that a reasonable promisee would understand to be

included.'"  *JN Contemp. Art LLC v. Phillips Auctioneers LLC*, 29 F.4th 118, 128 (2d Cir. 2022)

(quoting *Spinelli v. Nat'l Football League*, 903 F.3d 185, 205 (2d Cir. 2018)); *see also Aquino v.

Alexander Cap. LP*, No. 23-1109, 2024 WL 2952497, at *4 (2d Cir. June 12, 2024) (same).

"'[N]either party to a contract shall do anything [that] has the effect of destroying or injuring the

right of the other party to receive the fruits of the contract,' or to violate the party's 'presumed

intentions or reasonable expectations.'"  *Spinelli*, 903 F.3d at 205 (alterations in original)

(quoting *M/A–COM Sec. Corp. v. Galesi*, 904 F.2d 134, 136 (2d Cir. 1990)).

    The covenant "only impose[s] an obligation consistent with other mutually agreed upon

terms in the contract.  It does not add [ ] to the contract a substantive provision not included by

the parties."  *Woodard v. Reliance Worldwide Corp.*, 819 F. App'x 48, 49 (2d Cir. 2020)

(alterations in original) (quoting *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 198–99 (2d Cir.

2005)); *D & L Holdings, LLC v. RCG Goldman Co.*, 734 N.Y.S. 2d 25, 31 (App. Div. 2001)

("The covenant of good faith and fair dealing cannot be used to add a new term to a contract,

especially to a commercial contract . . . ."); *see also LightSquared Inc. v. Deere & Co.*, No. 13-

CV-5543, 2015 WL 585655, at *11 (S.D.N.Y. Feb. 5, 2015) ("The implied covenant of good

faith and fair dealing 'is not a means to add new terms to the agreement; it merely requires that the parties behave fairly and reasonably in the performance and enforcement of the contract.'" (quoting *C & E Servs., Inc. v. Ashland Inc.*, 601 F. Supp. 2d 262, 275 (D.D.C. 2009))), *aff'd sub nom. Harbinger Cap. Partners LLC v. Deere & Co.*, 632 F. App'x 653 (2d Cir. 2015). "Furthermore, the implied covenant 'does not extend so far as to undermine a party's general right to act on its own interests in a way that may incidentally lessen the other party's anticipated fruits from the contract.'" *Woodard*, 819 F. App'x at 49 (quoting *M/A–COM*, 904 F.2d at 136); *see also LJL 33rd St. Assocs., LLC v. Pitcairn Props. Inc.*, 725 F.3d 184, 196 (2d Cir. 2013) ("[T]he implied covenant of good faith cannot create duties that negate explicit rights under a contract."); *IGT v. High 5 Games, LLC*, 380 F. Supp. 3d 390, 397 (S.D.N.Y. 2019) ("This covenant does not add obligations beyond those set forth in the agreement; rather, it protects a party to a contract from improper conduct that 'subvert[s] the contract itself.'" (alteration in original) (quoting *Hard Rock Café Intern., (USA), Inc. v. Hard Rock Hotel Holdings, LLC*, 808 F. Supp. 2d 552, 567 (S.D.N.Y. 2011))); *Sec. Plans, Inc. v. CUNA Mut. Ins. Soc.*, 261 F.R.D. 4, 9 (W.D.N.Y. 2009) ("The covenant, however, only protects the bargained-for terms of the agreement and is not 'designed to enlarge or create new substantive rights between the parties.'" (quoting *Ferguson v. Lion Holding, Inc.*, 478 F. Supp. 2d 455, 479 (S.D.N.Y. 2007))).  In the context of insurance-related disputes, the implied covenant requires that "the insurer . . . investigate claims for coverage in good faith, . . . not manufacture factually incorrect reasons to deny insurance coverage, . . . not deviate from its own practices or from industry practices, and . . . not act with gross disregard of the insured's interests." *232 Dune Rd., LLC v. Scottsdale Ins. Co.*, No. 20-CV-7721, 2023 WL 1967501, at *11 (S.D.N.Y. Feb. 13, 2023) (quoting *E. Ramapo Cent. Sch. Dist.*, 158 N.Y.S.3d at 177–78).

Where a party has discretion in performance under a contract, New York law "includes a

promise not to act arbitrarily or irrationally in exercising its discretion." *Rynasko v. N.Y. Univ.*, 63 F.4th 186, 200 (2d Cir. 2023) (citing *Dalton v. Educ. Testing Serv.*, 87 N.Y.2d 384, 389 (1995)); *Sec. Plans, Inc. v. CUNA Mut. Ins. Soc.*, 769 F.3d 807, 810 (2d Cir. 2014) (explaining that "[u]nder New York law all contracts that confer discretion include an implied promise that neither party will 'act arbitrarily or irrationally' in exercising that discretion" (quoting *Dalton*, 87 N.Y.2d at 389)); *Fishoff v. Coty Inc.*, 634 F.3d 647, 653 (2d Cir. 2011) ("Where the contract contemplates the exercise of discretion, this pledge includes a promise not to act arbitrarily or irrationally in exercising that discretion." (quoting *Dalton*, 87 N.Y.2d at 389)). "Courts have equated the covenant of good faith and fair dealing with an obligation to exercise that discretion 'reasonably and with proper motive, . . . not . . . arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties.'" *Fishoff*, 634 F.3d at 653 (quoting *In re Kaplan*, 143 F.3d 807, 819 (3d Cir. 1998)); *see also Valley Stream Foreign Cars, Inc. v. Am. Honda Motor Co.*, 209 F. Supp. 3d 547, 555 (E.D.N.Y. 2016) (explaining that the implied covenant requires parties to exercise discretion in "a manner inconsistent with . . . reasonable expectations" (quoting *Fishoff*, 634 F.3d at 653)); *Sec. Plans*, 769 F.3d at 817–18 (explaining that a party "must demonstrate something more" than "evidence that the defendant's actions were negligent or inept" to state a claim for breach of the implied covenant, such as a party "act[ing] arbitrarily or irrationally in exercising [its] discretion" (citation omitted)). "[T]here can be no breach of the implied promise or covenant of good faith and fair dealing where the contract expressly permits the actions being challenged, and the [party] acts in accordance with the express terms of the contract." *JN Contemp. Art*, 29 F.4th at 128 (first alteration in original) (quoting 23 *Williston on Contracts* § 63:22 (4th ed. 2021)); *Access Bus. Grp. Int'l, LLC v. Refresco Beverages U.S. Inc.*, No. 21-CV-10779, 2023 WL 372883, at *3 (S.D.N.Y. Jan. 24, 2023) (dismissing the defendant's breach of contract counterclaim because "[t]here can be no

15

breach of the implied [covenant] where the contract expressly permits the actions being challenged" (first alteration in original) (quoting *JN Contemp. Art*, 29 F.4th at 128)).

"New York law does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach-of-contract claim, based upon the same facts, is also pled." *Creaven v. Erickson*, No. 22-874, 2023 WL 4247213, at *5 (2d Cir. June 29, 2023) (alteration omitted) (quoting *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 125 (2d Cir. 2013)). Therefore, "[w]hen a complaint alleges both a breach of contract and a breach of the implied covenant of good faith and fair dealing based on the same facts, the latter claim should be dismissed as redundant." *Bus. Exposure Reduction Grp. Assocs., LLC v. Pershing Square Cap. Mgmt., L.P.*, No. 21-CV-1980, 2022 WL 950959, at *3 (2d Cir. Mar. 30, 2022) (quoting *Cruz*, 720 F.3d at 125); *see also Lussoro v. Ocean Fin. Fed. Credit Union*, 456 F. Supp. 3d 474, 486 (E.D.N.Y. 2020) ("[A] claim for breach of the implied covenant will be dismissed as redundant where the conduct allegedly violating the implied covenant is also the predicate for breach of covenant of an express provision of the underlying contract." (quoting *Perks v. TD Bank, N.A.*, 444 F. Supp. 3d 635, 641 (S.D.N.Y. 2020))); *Learning Experience Sys., LLC v. Collins*, No. 20-CV-2504, 2023 WL 5835034, at *26 (E.D.N.Y. Sept. 8, 2023) (quoting same). "In order to avoid redundancy, claims of breach of the implied covenant must be premised on a distinct set of facts from those underlying a claim for breach of contract." *Hochfelder v. Pac. Indem. Co.*, No. 22-CV-2012, 2023 WL 2430497, at *3 (S.D.N.Y. Mar. 9, 2023); *see also Fleisher v. Phoenix Life Ins. Co.*, 858 F. Supp. 2d 290, 299 (S.D.N.Y. 2012) (alteration omitted) (quoting *Deutsche Bank Sec. Inc. v. Rhodes*, 578 F. Supp. 2d 652, 664 (S.D.N.Y. 2008) (same)).

Metro Pain Defendants' factual allegations are insufficient to support their claim that Plaintiffs "act[ed] arbitrarily or irrationally in exercising [their] discretion" under the insurance contract. *Spinelli*, 903 F.3d at 205 (quoting *Fishoff*, 634 F.3d at 653); *see also Spataro v. Liberty*

*Mut. Ins. Co.*, No. 22-CV-3, 2023 WL 6446470, at *6 (N.D.N.Y. Jan. 18, 2023) (granting the defendants' motion to dismiss because the complaint failed to state a plausible claim that the "[d]efendants acted arbitrarily and irrationally" where the "[d]efendants paid [the claim] in a timely fashion" and the plaintiff did not allege that the "[d]efendants were aware of evidence that indicated they should have refused payment on the claim").  Although Metro Pain Defendants allege that Plaintiffs' investigations and verification protocols were improper and resulted in the "*en masse*" denial of approximately "1,700 claims brought by hundreds of Metro Pain patients," (Counterclaims ¶¶ 9, 11), New York law requires Plaintiffs to, *inter alia*, file plans "for the detection, investigation and prevention of fraudulent insurance activities" and establish investigation units "responsible for investigating information on or cases of suspected fraudulent activity."  N.Y. Ins. Law § 409(a)–(b); *see id.* (requiring automobile insurers to provide for "a full-time special investigations unit and staffing levels within such unit"); *see also* N.Y. Comp. Codes R. & Regs., tit. 11 § 65-3.2(b)–(c) (requiring that insurers "[a]ssist the applicant in the processing of a claim" without "treat[ing] the applicant as an adversary," and permitting insurers to request verification of facts where "there are good reasons to do so").  Plaintiffs have alleged that Metro Pain Defendants were involved in a fraudulent insurance scheme, (*see generally* SAC ¶¶ 1–3, 39–40), and are therefore not liable for a breach of the implied covenant of good faith and fair dealing for investigating such fraud when New York law explicitly authorizes them to do so and where such laws are "incorporated into [Plaintiffs'] contracts with insureds," (Pls.' Mem. 16–17).  N.Y. Comp. Codes R. & Regs., tit. 11 § 65-1.1 (setting forth the minimum requirements for personal injury insurance policies); *Access Bus. Grp.*, 2023 WL 372883, at *3 (dismissing the defendant's breach of contract and breach of the implied covenant counterclaims because, although the defendant alleged the plaintiff breached the purchasing contract by failing to buy additional products from the defendant, the contract did not obligate plaintiff to purchase

any products from the defendant); *JN Contemp. Art*, 507 F. Supp. 3d at 505–06 (finding that discussions of, *inter alia*, moving the painting's auction to a later date, which occurred prior to the defendant terminating the auction agreement, did not breach the implied covenant because the contract permitted the defendant to terminate the auction contract and "[i]t cannot be a breach of the implied covenant of good faith and fair dealing to do what a contract explicitly authorizes a party to do"); *see also 232 Dune Rd.*, 2023 WL 1967501, at *12 (granting summary judgment in favor of the insurance company on the plaintiff's implied covenant claim because it was duplicative of the plaintiff's breach of contract claim and the plaintiff failed to show that backdating the policy was "a result of intentional wrongdoing or reckless indifference to [p]laintiff's rights"); *Ability Ins. Co. v. ST Paper, LLC*, No. 20-CV-3851, 2022 WL 912927, at *6 (S.D.N.Y. Mar. 29, 2022) (finding that the defendant's conduct in structuring loans to avoid repayment did not breach the implied covenant of good faith and fair dealing where the conduct "was contemplated and expressly permitted by the [s]ubordination [a]greement").  Instead, Metro Pains Defendants' examples — the fact that Plaintiffs solicited physicians for independent medical examinations, requested additional verification materials, and diverted claims to the MCIU for investigation — demonstrate that Plaintiffs exercised their "rights and obligations under the No-Fault [l]aws to determine whether the Metro Pain Defendants were entitled to payment under [Plaintiffs'] insurance policies with its insureds."  (Counterclaims ¶¶ 9, 27–28, 38–45; Pls.' Reply 8); *Cean*, 2019 WL 6253804, at *3 (dismissing defendant health care providers' counterclaims against plaintiff insurer where defendants failed to "assert any facts that would support . . . an inference" of bad faith on plaintiff's part in denying no-fault benefit payments to defendants).

Accordingly, Metro Pain Defendants fail to allege facts demonstrating that Plaintiffs' MCIU investigation and subsequent actions pursuant to the alleged verification protocol create

an inference of bad faith or unfair dealings, and the Court dismisses this counterclaim.[6]

### c.   GBL § 349 claim

Plaintiffs argue that Metro Pain Defendants' claim for deceptive business practices under GBL § 349 fails because State Farms' conduct "was not directed at consumers" and was not "misleading in any material way."  (Pls.' Mem. 2, 18.)  In support, Plaintiffs argue that "[c]ourts have repeatedly held disputes such as this one between insurers and medical providers do not concern consumer-oriented conduct, as required to state a claim under section 349."[7]  (*Id.* at 19–20.)  Plaintiffs also argue that an "insurer's denial of claims submitted by physicians' groups is directed, not at the underlying consumers of medical services, but at the physicians themselves" because "it only affects the extent of [the physician's] reimbursement."  (*Id.* at 20 (quoting *Precision Imaging of N.Y., P.C. v. Allstate Ins. Co.*, 263 F. Supp. 3d 471, 476–77 (S.D.N.Y. 2017)).)  In addition, Plaintiffs argue that their requests for "verification of claims pursuant to the No-Fault laws" were not materially misleading but were lawful means of determining Metro Pain Defendants' eligibility for reimbursement.  (Pls.' Mem. 22.)

---

[6]  Because the Court dismisses Metro Pain Defendants' claim for breach of the implied covenant of good fair and fair dealing for failure to state a claim, it does not address Plaintiffs' argument that the claim should be dismissed as duplicative of Metro Pain Defendants' claims brought in state court proceedings, (Pls.' Mem. 17–18), or as duplicative of Metro Pain Defendants' claim for common law fraud which Plaintiffs argue is premised on a breach of a contractual duty, (Pls.' Reply 1).

[7]  Plaintiffs cite to several cases in support of this argument: *Josephson v. United Healthcare Corp.*, No. 11-CV-3665, 2012 WL 4511365, at *8 (E.D.N.Y. Sept. 28, 2012) ("[A]ny improprieties in calculating the rate [at which a medical provider was reimbursed] are in the nature of a private dispute between Plaintiffs and Defendants that falls outside the scope" of GBL § 349), *on reconsideration in part on other grounds*, 2013 WL 3863921 (E.D.N.Y. July 24, 2013); *Daniels v. Provident Life & Cas. Ins. Co.*, No. 00-CV-668, 2001 WL 877329, at *8 (W.D.N.Y. July 25, 2001) ("[P]rivate contract disputes between the insured and insurer over policy coverage or the processing of claims are not covered by the statute because such disputes do not affect the consuming public at large."); and *Four Winds of Saratoga, Inc. v. Blue Cross & Blue Shield of Cent. N.Y.*, 660 N.Y.S.2d 236 (App. Div. 1997) (holding service provider may not bring action against insurer due to lack of impact on consumers at large).  (Pls.' Mem. 20.)

Metro Pain Defendants argue that because Plaintiffs have "allegedly adopted a covert policy and practice of violating the claim principles [they] must follow under New York Insurance [l]aw, such allegations are sufficient to allege a [GBL § 349] claim." (Metro Pain Defs.' Opp'n 22 (citing *Riordan v. Nationwide Mut. Ins. Co.*, 756 F. Supp. 732, 739 (S.D.N.Y. 1990)).) In support, Metro Pain Defendants argue that "the 'critical question [under GBL § 349] is whether the matter affects the public interest in New York,' not who brings the claim." (*Id.* at 23 (quoting *Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264 (2d Cir. 1995)).) In addition, Metro Pain Defendants argue that by launching special review protocols of them, Plaintiffs have "cause[d] great harm to the public by '[d]eliberately erecting barriers to reimbursement and imposing additional social costs,'" and they have therefore stated a GBL § 349 claim. (*Id.* (internal quotation marks omitted) (quoting *Greenspan v. Allstate Ins. Co.*, 937 F. Supp. 288 (S.D.N.Y. 1996)).) Metro Pain Defendants further argue that by obtaining premiums from insureds while having no intent to investigate their claims in good faith, Plaintiffs' actions are "sufficiently consumer-oriented to fall within the ambit of [GBL § 349]." (*Id.* at 23–24 (quoting *Allstate v. Lyons*, 843 F. Supp. 2d 358, 376 (E.D.N.Y. 2012)).)

GBL § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. Gen. Bus. Law § 349; *La Rosa v. Abbott Lab'ys*, No. 24-1575, 2025 WL 841687, at *1 (2d Cir. Mar. 18, 2025) (same). To assert a claim, "a plaintiff must allege: (1) the act or practice was consumer-oriented; (2) the act or practice was misleading in a material respect; and (3) the plaintiff was injured as a result." *Electra v. 59 Murray Enters., Inc.*, 987 F.3d 233, 258 (2d Cir. 2021) (quoting *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009)); *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) ("[A] plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) [the] plaintiff suffered injury as a result of the

allegedly deceptive act or practice."  (citing *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 944 (2012))); *see La Rosa*, 2025 WL 841687, at *1 (same).  GBL § 349 is "directed at wrongs against the consuming public" and is designed to "protect people from consumer frauds." *Yodice v. Touro Coll. & Univ. Sys.*, No. 21-2986, 2024 WL 3466546, at *2 (2d Cir. July 19, 2024) (quoting *Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 24–25 (1995)).

"Section 349 allows recovery by non-consumers if there is 'some harm to the public at large.'"  *Electra*, 987 F.3d at 258 (quoting *Securitron Magnalock*, 65 F.3d at 264); *SmileDirectClub, LLC v. Jacqueline I. Fulop, D.M.D. P.C.*, No. 19-CV-9582, 2020 WL 1322838, at *3 (S.D.N.Y. Mar. 20, 2020) ("Although each statute 'is, at its core, a consumer protection device,' 'corporate competitors' have standing to sue under . . . § 349 . . . 'so long as some harm to the public at large is at issue.'"  (quoting *Securitron Magnalock*, 65 F.3d at 264)). Therefore, "to successfully state a claim under [s]ection 349 'the gravamen of the complaint must be consumer injury or harm to the public interest.'"  *Electra*, 987 F.3d at 258 (quoting *Securitron Magnalock Corp.*, 65 F.3d at 264); *SmileDirectClub*, 2020 WL 1322838, at *3 ("[F]or a competitor to have standing under . . . § 349 . . . , 'the gravamen of the complaint must be consumer injury or harm to the public interest,' and the complaint 'must allege conduct that has significant ramifications for the public at large.'"  (first quoting *Securitron Magnalock*, 65 F.3d at 264; and then quoting *Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 277 F. Supp. 2d 269, 273–74 (S.D.N.Y. 2003))).  "Injury or harm that satisfy this standard include 'potential danger to the public health or safety.'"  *Dentsply Sirona, Inc. v. Dental Brands for Less LLC*, No. 15-CV-8775, 2020 WL 1643891, at *5 (S.D.N.Y. Apr. 2, 2020) (quoting *La Cibeles, Inc. v. Adipar, Ltd.*, No. 99-CV-4129, 2000 WL 1253240, at *15 (S.D.N.Y. Sept. 1, 2000)).  "Applying these principles, state and federal courts in New York have held that insurers' denials of claims by medical-

service providers do not satisfy the consumer-directed element of § 349" when there is no effect to the public at large.  *Allstate Ins. Co. v. Avetisyan*, 422 F. Supp. 3d 672, 677 (E.D.N.Y. 2019) (collecting cases); *Gov't Emps. Ins. Co. v. Clarke*, No. 23-CV-4605, 2024 WL 3069165, at *4 (E.D.N.Y. June 20, 2024) (finding that counterclaim defendants failed to prove the "first element of [the GBL § 349] standard because an insurer's denial of claims by medical-services providers 'are directed, not at the underlying consumers of medical services, but at the [medical-service providers] themselves'" (second alteration in original) (quoting *Avetisyan*, 422 F. Supp. 3d at 677)); *Greenspan*, 937 F. Supp. at 294 (noting that the insurer's deceptive acts "may also affect the public interest" where they "[d]eliberately erect[] barriers to reimbursement and impos[e] additional social costs").

"[C]laims under GBL § 349 are 'not subject to the pleading-with-particularity requirements of Rule 9(b).'"  *Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 577 (S.D.N.Y. 2021) (citation omitted); *Schwartzco Enters. LLC v. TMH Mgmt., LLC*, 60 F. Supp. 3d 331, 359 (E.D.N.Y. 2014) (quoting *Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005)); *see also Leonard v. Abbott Lab'ys, Inc.*, No. 10-CV-4676, 2012 WL 764199, at *19 (E.D.N.Y. Mar. 5, 2012) (considering case law and discerning a categorical rule that GBL § 349 claims, "regardless of whether they 'sound in fraud,' or are premised on specific misrepresentations rather than an 'advertising scheme,' are not subject to the heightened pleading requirement of Rule 9(b)").

Under New York law, a deceptive act is one that is "likely to mislead a reasonable consumer acting reasonably *under the circumstances*."  *Bustamante v. KIND, LLC*, 100 F.4th 419, 426 (2d Cir. 2024); *Orlander*, 802 F.3d at 300 (citation omitted and emphasis added); *Belfiore v. Procter & Gamble Co.*, 311 F.R.D. 29, 53 (E.D.N.Y. 2015) ("Courts view each allegedly misleading statement in light of its context on the product label or advertisement as a

whole.  The entire mosaic is viewed rather than each tile separately."  (internal quotation marks omitted) (first citing *Delgado v. Ocwen Loan Servicing, LLC*, No. 13-CV-4427, 2014 WL 4773991, at *8 (E.D.N.Y. Sept. 24, 2014); and then citing *Time Warner Cable, Inc. v. DIRECTV, Inc.*, No. 06-CV-14245, 2007 WL 1138879, at *4 (S.D.N.Y. Apr. 16, 2007))); *Koenig v. Boulder Brands, Inc.*, 995 F.Supp.2d 274, 288 (S.D.N.Y. 2014) ("[I]n resolving the reasonable consumer inquiry, one must consider the entire context of the label."  (alteration in original) (citation and internal quotation marks omitted)); *Ackerman v. Coca-Cola Co.*, No. CV-09-395, 2010 WL 2925955, at *15 (E.D.N.Y. July 21, 2010) (conducting the reasonable consumer analysis by "[v]iewing each allegedly misleading statement in light of its context on the label and in connection with the marketing of [the product] as a whole"); *see La Rosa*, 2025 WL 841687, at *1 ("[I]n order to survive a motion to dismiss, 'a plaintiff must plausibly allege that the deceptive conduct was likely to mislead a reasonable consumer acting reasonably under the circumstances.'"  (quoting *Mantikas v. Kellogg Co.*, 910 F.3d 633, 636 (2d Cir. 2018))).

Disputes between insurance companies, like Plaintiffs, and medical service providers, like Metro Pain Defendants, regarding an insurer's verifications process are private contract disputes that do not concern consumer-oriented conduct.  *See Clarke*, 2024 WL 3069165, at *4 (dismissing health insured defendant's counterclaim under GBL § 349 against insurer defendant because their claim was not consumer-oriented and defendants' argument that they overcame this hurdle by alleging the plaintiff's practices "erected barriers to reimbursement to their minority patients" were "entirely conclusory" and thus insufficient to cure the issue (brackets, internal quotation marks, and citation omitted)); *Avetisyan*, 422 F. Supp. 3d at 676–77 (dismissing defendant healthcare provider's counterclaim under GBL § 349 against plaintiff insurer because "state and federal courts in New York have held that insurers' denials of claims by medical-service providers do not satisfy the consumer-directed element of [GBL §] 349"); *Precision*

23

*Imaging of N.Y., P.C. v. Allstate Ins. Co.*, 263 F. Supp. 3d 471, 476–77 (S.D.N.Y. 2017) (dismissing the GBL § 349 claim following two other courts that found "insurer's denial of claims submitted by physicians' groups is directed, not at the underlying consumers of medical services, but at the physicians themselves" because "it only affects the extent of [the physician's] reimbursement"); *Allstate Ins. Co. v. Bogoraz*, 818 F. Supp. 2d 544, 552 (E.D.N.Y. 2011) (dismissing insurer's GBL § 349 claim against the defendant insured medical provider because the facts alleged did not support that defendant's conduct was consumer-oriented); *Daniels v. Provident Life & Cas. Ins. Co.*, No. 00-CV-668, 2001 WL 877329, at *8 (W.D.N.Y. July 25, 2001) ("[P]rivate contract disputes between the insured and insurer over policy coverage or the processing of claims are not covered by the statute because such disputes do not affect the consuming public at large."); *Four Winds of Saratoga, Inc. v. Blue Cross & Blue Shield of Cent. N.Y.*, 660 N.Y.S.2d 236, 237 (App. Div. 1997) (holding service provider may not bring action against insurer due to lack of impact on consumers at large).  Accordingly, Metro Pain Defendants fail to state a claim for deceptive business practices under GBL § 349.

### d.    Fraud/fraudulent misrepresentation claim

Plaintiffs argue that Metro Pain Defendants' fraud/fraudulent misrepresentation claim should be dismissed because (1) their claim is impermissibly based on an alleged breach of a contractual duty, (2) they "cannot establish its essential elements" of a fraud/fraudulent misrepresentation claim under "under Rule 8, let alone with the particularity required by Rule 9(b)" and the claim therefore fails on its merits.  (Pls.' Mem. 5, 11–12.)

Metro Pain Defendants argue that they sufficiently alleged a fraud/fraudulent misrepresentation claim because (1) their claim is based on fraudulent misrepresentations and material omissions made by Plaintiffs after the formation of the contract, not based on breach of contract, and (2) they have sufficiently alleged specific misrepresentations State Farm knowingly

made regarding the necessity of the verification requests to verify claims and that Metro Pain Defendants reasonably relied on those statements.  (Metro Pain Defs.' Opp'n 9, 13, 16.)  The Court addresses each of these in turn.

### i. Pleading a fraud/fraudulent misrepresentation claim based on a breach of contract

Plaintiffs argue that Metro Pain Defendants' fraud/fraudulent misrepresentation claim is "predicated on a legal duty that arises under contract, which 'is not sufficient to support a claim of fraud under New York law.'"  (Pls.' Mem. 5 (quoting *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 19 (2d Cir. 1996)).)  In support, Plaintiffs argue that a "cause of action to recover damages for fraud does not lie when, as here, the only fraud charged relates to the breach of a contract."  (*Id.* at 6 (quoting *Individuals Sec., Ltd v. Am. Int'l Grp., Inc.*, 826 N.Y.S.2d 92, 94 (App. Div. 2006)).)  Plaintiffs argue that Metro Pain Defendants cannot satisfy any of the three tests provided for in *Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc.*, 98 F.3d 13 (2d Cir. 1996), that would allow them to maintain such a claim, because Metro Pain Defendants fail to show a legal duty separate from Plaintiffs' duty to perform under contract, (*id.* at 6–7), have not alleged a fraudulent misrepresentation collateral to or extraneous to their patients' insurance contracts with Plaintiffs, (*id.* at 7–9), and are not seeking special damages, (*id.* at 9–11).  Plaintiffs argue that because interest and attorneys' fees "are provided for under the No-Fault [l]aws incorporated into [Plaintiffs'] contracts with insureds" these damages "would be recoverable in a breach of contract claim and cannot support a claim for fraud."  (*Id.* at 10–11.)

Metro Pain Defendants argue first that their fraud claim is not based on a breach of contract, but rather on Plaintiffs' deliberate and knowing misrepresentation of "present, existing facts" and is thus distinguishable from *Bridgestone/Firestone*.  (Metro Pain Defs.' Opp'n 10.)  In

25

addition, Metro Pain Defendants argue that even if their fraud claim is based on an existing

breach of contract claim, they have met *Bridgestone/Firestone*'s "three alternatives for pleading

a fraud claim based on an intention not to perform under a contract," — that is, (1) "a legal duty

separate from the duty to perform under the contract"; (2) "a fraudulent misrepresentation

collateral or extraneous to the contract"; and (3) "allegations of 'special damages that are caused

by the misrepresentation and unrecoverable as contract damages.'" (*Id.* at 11 (quoting

*Bridgestone/Firestone*, 98 F.3d at 20).)  Metro Pain Defendants argue that "the Counterclaims

allege special damages in the form of 'interest and attorney's fees responding to [Plaintiffs']

endless verification requests and commencing and pursuing litigation to obtain payment of the

claims.'"  (*Id.* at 13 (quoting Counterclaims ¶ 62).)

In interpreting New York law, the Second Circuit has held that to maintain a claim for

fraud based on intentionally false statements under a contract, a "plaintiff must either: (i)

demonstrate a legal duty separate from the duty to perform under the contract . . . , or (ii)

demonstrate a fraudulent misrepresentation collateral or extraneous to the contract . . . , or (iii)

seek special damages that are caused by the misrepresentation and unrecoverable as contract

damages."  *Negrete v. Citibank, N.A.*, 759 F. App'x. 42, 48 (2d Cir. 2019) (quoting

*Bridgestone/Firestone*, 98 F.3d at 20); *see also Reddy v. Mangino*, No. 08-CV-4805, 2010 WL

2771836, at *2 (E.D.N.Y. July 13, 2010) (holding that the plaintiff's fraud claim based on

"alleged intention not to perform [an] obligation under their agreement" was duplicative of the

breach of contract claim); *Cougar Audio, Inc. v. Reich*, No. 99-CV-4498, 2000 WL 420546, at

*6 n.4 (S.D.N.Y. Apr. 18, 2000) (explaining that the court follows the Second Circuit's rule in

*Bridgestone/Firestone*, 98 F.3d at 19–20); *Did-it.com, LLC v. Halo Grp., Inc.*, 102 N.Y.S.3d 687,

688 (2019) (reversing the lower court's dismissal of fraud claim as duplicative where the

plaintiff alleged that the defendant made "misrepresentations of present fact that were collateral

to the [contract] and further allege[d] that these misrepresentations induced the plaintiff to enter into the [contract]").

Metro Pain Defendants have failed to state a claim for fraud/fraudulent misrepresentation because they neither allege a "legal duty separate from the duty to perform under the contract" nor rely on a "fraudulent misrepresentation collateral or extraneous to the contract," and they have failed to sufficiently allege "special damages" that are not recoverable as contract damages. *Bridgestone/Firestone*, 98 F.3d at 20 (explaining that to maintain a fraud claim based on false statements, a party must "demonstrate a legal duty separate from the duty to perform under the contract," "demonstrate a fraudulent misrepresentation collateral or extraneous to the contract," or "seek special damages that are . . . unrecoverable as contract damages" (citations omitted)). First, Metro Pain Defendants have not alleged any misconduct unconnected to Plaintiffs' duties to process no-fault claims submitted by Metro Pain Defendants. (*See* Counterclaims ¶¶ 9–10.) Metro Pain Defendants describe Plaintiffs' conduct as "a coordinated scheme . . . to unlawfully delay and deny [their] valid No-Fault medical claim reimbursement payments" and that Plaintiffs' verification requests were "nothing more than a fraudulent attempt to delay and avoid payment" because Plaintiffs "had already decided to deny the claims submitted," (*id.*), but Plaintiffs' duties to ensure prompt payment of submitted claims, process claims in a non-adversarial manner, and verify submitted claims are part of Plaintiffs' contractual duties to pay covered claims under New York's No-Fault laws. *Bridgestone/Firestone*, 98 F.3d at 19–20 (explaining that New York law does not recognize fraud claims premised upon an alleged breach of contractual duties alone); *Clarke*, 2024 WL 3069165, at *2 (explaining that where the fraudulent conduct alleged is "simply the non-performance of [the insurer plaintiff's] contractual duties to process no-fault claims submitted on behalf of its insureds . . . [and defendants] have not alleged any misconduct extraneous to those contractual obligations, they have not alleged a

27

plausible claim for fraud"); *see Rosa v. Allstate Ins. Co.*, 981 F.2d 669, 673 n.7 (2d Cir. 1992) (describing how "an insurer's obligations under a no-fault insurance policy . . . arise" because of the "law's provisions and their legislatively mandated incorporation into its policy with the insured" (quoting *Liberty Mut. Ins. Co. v. State*, 405 N.Y.S.2d 945, 947 (Ct. Cl. 1978))); *Liberty Mut. Ins.*, 405 N.Y.S.2d at 947 (explaining that a "claimant's obligation to pay arose directly by reason of the [no fault] law's provisions and their legislatively mandated incorporation into its policy with the insured"). Thus, Metro Pain Defendants have failed to identify a legal duty of Plaintiffs that is unconnected to Plaintiffs' contractual duty to pay for eligible claims.

Second, Plaintiffs' alleged misrepresentations that they "had not yet made a determination regarding [their] obligation to pay the claims submitted by the Metro Pain Defendants," (Counterclaims ¶ 57), is not "collateral" or "extraneous" to the contract because the insurance contract's terms required Plaintiffs to investigate fraudulent insurance activities and promptly pay valid claims. *Bridgestone/Firestone*, 98 F.3d at 19–20 (explaining that New York law does not recognize fraud claims where "the supporting allegations do not concern representations which are collateral or extraneous to the terms of the parties' agreement" (quoting *McKernin v. Fanny Farmer Candy Shops, Inc.*, 574 N.Y.S.2d 58, 59 (App. Div. 1991))); *Servedio v. State Farm Ins. Co.*, 814 F. Supp. 2d 214, 220 (E.D.N.Y. 2011) (granting a motion to dismiss the plaintiff's common-law fraud claim because the defendant's description of his insurance coverage was "obviously intrinsic to the policy"), *on reconsideration in part*, 889 F. Supp. 2d 450 (E.D.N.Y. 2012), *aff'd*, 531 F. App'x 110 (2d Cir. 2013); *Greenspan*, 937 F. Supp. at 291 (finding that an insurer's pre-treatment statement that it "would honor its contractual obligations and obey the law" restated plaintiffs' breach of contract claim and therefore could not support a fraud claim); *Am. Transit Ins. Co. v. PDA NY Chiropractic, P.C.*, 195 N.Y.S.3d 427 (Sup. Ct. 2023) (noting that "[v]erification of the authenticity of claims is

consistent with one of the purposes underlying the adoption of" the no-fault laws and that such processes are intended to "rein in fraud" from "medical mills [generating] stacks of medical bills for each passenger, detailing treatments and tests that were unnecessary" (alteration in original) (quoting *Med. Soc'y of State v. Serio*, 100 N.Y.2d 854, 86 (2003))); *see also State Farm Mut. Auto. Ins. Co. v. Tri-Borough N.Y. Med. Prac., P.C.*, 120 F.4th 59, 71 (2d Cir. 2024) ("Providers . . . are ineligible to receive reimbursement of No-Fault benefits in a number of circumstances, including if they 'fail[ ] to meet any applicable New York State or local licensing requirement'" (quoting N.Y. Comp. Codes R. & Regs., tit. 11 § 65-3.16(a)(12))).  Although Metro Pain Defendants contend Plaintiffs' alleged misrepresentations are "collateral or extraneous to the contract" because they represent "present facts made post-contract formation," (Metro Pain Defs.' Opp'n 12), the cases Metro Pain Defendants rely on involved alleged deceptions that went beyond the parties' contractual performance obligations.  *Bayshore Cap. Advisors, LLC v. Creative Wealth Media Fin. Corp.*, 667 F. Supp. 3d 83, 132 (S.D.N.Y. 2023) (explaining that "false assurances of payment" do not "constitute the existence of a statement 'collateral or extraneous' to the contract," but finding a viable fraud claim where the alleged misrepresentation regarding financing guarantees were extraneous to the parties' initial investment contract); *Int'l Elecs., Inc. v. Media Syndication Glob., Inc.*, No. 02-CV-4274, 2002 WL 1897661, at *2 (S.D.N.Y. Aug. 17, 2002) (finding a viable fraud claim where "the complaint allege[d] more than a simple failure to disclose an intention not to perform" because the plaintiff's "injuries flowed not from any failure by [the defendant] to do what it [was] contracted to do," but from misleading the plaintiff to believe the defendant was discharging its performance obligations under the distribution contract instead of "stalling the distribution," "developing the knock-off," and "deter[ing] [the] plaintiff from selling its product directly").  Thus, Metro Pain Defendants

have not alleged a misrepresentation by Plaintiffs that is unconnected to its duties to pay or investigate under the terms of State Farm's contracts with insureds.

Third, Metro Pain Defendants fail to allege special damages beyond what they could otherwise obtain through a breach of contract claim.  (*See, e.g.*, Counterclaims ¶¶ 62–64.)  In particular, Metro Pain Defendants have failed to allege how the attorneys' fees they seek for responding to Plaintiffs' verification requests and for the instant litigation are distinct from the damages recoverable under New York's No-Fault law for "attorney's fees . . . for services necessarily performed in connection with securing payment" for denial of valid claims.  N.Y. Comp. Codes R. & Regs. tit. 11 § 65-3.10(a); (Metro Pain Defs.' Opp'n 13.)  Instead, Metro Pain Defendants only make a general allegation that Plaintiffs' conduct "warrants the imposition of punitive damages," (*id.* ¶ 64), which is insufficient to establish special damages.  *See Ahmed v. Cigna Health Mgmt., Inc.*, No. 23-CV-8094, 2024 WL 3345819, at *6 (S.D.N.Y. July 8, 2024) ("[C]ourts have repeatedly held that 'a general request for punitive damages is not enough to differentiate the damages recoverable for fraud from those sought for breach of contract.'" (quoting *Transnat'l Mgmt. Sys. II, LLC v. Carcione*, No. 14-CV-2151, 2016 WL 7077040, at *6 (S.D.N.Y. Dec. 5, 2016))); *Compass Prods. Int'l LLC v. Charter Commc'ns, Inc*., No. 18-CV-12296, 2019 WL 4198586, at *8 (S.D.N.Y. Aug. 8, 2019) ("[A] mere request for punitive damages does not suffice to render a fraud claim non-duplicative of a contract claim by virtue of differentiated damages."); *Russell Pub. Grp., Ltd. v. Brown Printing Co*., No. 13-CV-5193, 2014 WL 1329144, *3 & 3 nn.38–40 (S.D.N.Y. Apr. 3, 2014) ("A general request for punitive damages is not enough to differentiate the damages recoverable for fraud from those sought for breach of contract.") (collecting cases).  Thus, Metro Pain Defendants have failed to state a plausible claim for special damages for Plaintiffs' alleged fraud/fraudulent misrepresentations.

Accordingly, Metro Pain Defendants have failed to state a claim for fraud/fraudulent representation because they have not alleged a "legal duty separate from the duty to perform under the contract," a "fraudulent misrepresentation collateral or extraneous to the contract," or "special damages that are caused by the misrepresentation and unrecoverable as contract damages." *Bridgestone/Firestone*, 98 F.3d at 20.

### ii. Metro Pain Defendants failed to meet the Rule 9(b) requirements or suggest a strong inference of fraud

Plaintiffs argue that Metro Pain Defendants' fraud claim also fails because it does not provide facts which "raise a strong inference of fraud" and therefore does not "comport with the requirements of [Rule] 9(b)." (Pls.' Mem. 11 (first citing *Vaughn v. Consumer Home Mortg.*, No. 01-CV-7937, 2003 WL 21241669, at *4 (E.D.N.Y. Mar. 23, 2003); then citing *Naughright v. Weiss*, 826 F. Supp. 2d 676, 694 (S.D.N.Y. 2011)).) First, Plaintiffs argue that "Metro Pain Defendants fail to identify any specific statements they contend were fraudulent." (*Id.* at 12.) Second, Plaintiffs argue that Metro Pain Defendants "fail to allege how any of State Farm's alleged statements were fraudulent," and "plead no facts showing they relied on anything State Farm might have said to them." (*Id.* at 11–12.) In support, Plaintiffs argue that Metro Pain Defendants "fail to plead facts showing they supplied all the documents [that] State Farm requested . . . let alone that State Farm acknowledged this fact," and that Metro Pain Defendants "allege no facts to support their conclusion Plaintiffs 'already decided' to deny . . . Metro Pain Defendants' claims." [8] (*Id.* at 12–13.) Plaintiffs contend that these documents "were necessary

---

[8] Plaintiffs also argue that Metro Pain Defendants "selectively quoted" from the exhibit discussing State Farm's acknowledgement of receiving the requested verification materials, which Metro Pain Defendants attached to a previously proposed version of their counterclaims, but omitted the final version. (Pls.' Mem. 13; *see also* State Farm Memorandum, annexed to Motion to Seal Metro Pain Defendants' Proposed Am. Answer to FAC & Counterclaim as Ex. 7, Docket Entry No. 377-7; *see generally* Counterclaim.) Plaintiffs contend Metro Pain

to determine whether Metro Pain Defendants' claims reflected treatment rendered in compliance with the No-Fault [l]aws . . . given the complex relationships among the Metro Pain Defendants and several interrelated parties, the complex flow of funds, and the improper shadow owners of medical practices" and that New York law permits Plaintiffs to seek such records.  (*Id.* at 14.) Third, Plaintiffs also argue that that "even if the Metro Pain Defendants' allegations were sufficiently detailed, the existence of State Farm's claims-handling process is equally indicative of lawful conduct."  (*Id.*)

Metro Pain Defendants argue that their fraud claim satisfies Rule 9(b)'s pleading standard because "contrary to [Plaintiffs'] bald assertion, the fraudulent statements are not only identified, but are attached to the [c]ounterclaims as Exhibits."  (Metro Pain Defs.' Opp'n 13–14.)  Metro Pain Defendants argue that they identified specific examples of Plaintiffs' misrepresentations, including: (1) a July of 2019 statement from State Farm that they required financial records "in order to complete Metro Pain's proof of claim as to the claims identified in [an attached] Exhibit

_____

Defendants' "use of misleading and selection quotation in their final counterclaims does not prevent the Court from considering the full text of the underlying document on a motion to dismiss."  (*Id.*)  Metro Pain Defendants do not challenge the Court's ability to rely on the exhibits attached to their counterclaims.  (Metro Pain Defs.' Opp'n 14–15.)  Because Metro Pain Defendants quoted from the exhibit in their final counterclaim, (Counterclaim ¶ 9(d)), and quoted from the exhibit in their opposition papers, (Metro Pain Defs.' Opp'n 15), the Court considers the State Farm Memorandum for the purpose of deciding Metro Pain Defendants' fraud/fraudulent misrepresentation claim.  *See United States v. Strock*, 982 F.3d 51, 63 (2d Cir. 2020) (explaining that the district court "may consider documents that 'are attached to the complaint,' 'incorporated in it by reference,' 'integral' to the complaint, or the proper subject of judicial notice."  (quoting *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007)); *see Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230–31 (2d Cir. 2016) (holding that courts may consider on a motion to dismiss "any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference" and other documents "integral" to the complaint (first quoting *Chambers v. Time Warner Inc.*, 282 F.3d 147, 152 (2d Cir. 2002); and then quoting *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010))); *see also, e.g.*, *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 156 (2d Cir. 2006) (finding reversible error where the district court considered defendant's submission of a trial transcript in an unrelated proceeding and relied on it to "make a finding of fact that *controverted* the plaintiff's own factual assertions set out in its complaint" (emphasis in original)).

A"; (2) a June of 2020 statement from State Farm seeking records pursuant to their verification

protocol for over 1,400 claims "to verify whether Metro Pain Specialists is entitled to receive

No-Fault benefits"; and (3) October of 2021 statements from State Farm stating that the

requested verification documents were necessary "[i]n order to resolve the issues with Tri-

Borough and permit State Farm to verify whether Tri Borough is entitled to receive No-Fault

benefits." (*Id.* (alteration in original).)  In support, Metro Pain Defendants argue that they

sufficiently allege that Plaintiffs misrepresented in verification requests to them that Plaintiffs

needed additional documentation as part of a "verification protocol" when Plaintiffs had "already

decided to deny the claims." (*Id.* at 13–15.)  Metro Pain Defendants also argue they have

illustrated how Plaintiffs' misrepresentations were fraudulent because Plaintiffs diverted Metro

Pain Defendants' claims to the MCIU and "weaponized the verification process to delay the

claims long enough to obtain covert discovery and commission and complete a superficial global

peer review report to justify the pre-determined denial of the claims in blanket fashion." (*Id.* at

14–15.)  In support of this argument, Metro Pain Defendants contend that although Plaintiffs

acknowledged Metro Pain's counsel supplied "all of the requested materials" that they submitted

under the "mistaken belief" they were necessary "to verify claims," Plaintiffs had already

prepared to file a declaratory judgment action "denying any obligation to pay the claims"

submitted by Metro Pain Defendants. (*Id.* at 15.)  Metro Pain Defendants argue that "[a]

plethora of other facts . . . also indicate that State Farm had made the decision to deny the

claims," including Plaintiffs' decision to target Metro Pain for an MCIU investigation, reporting

Metro Pain Defendants to the Natural Insurance Crime Bureau, commissioning a global peer

review report to justify the denial of their claims, and Plaintiffs' approval of filing this RICO

action prior to sending the October of 2021 verification requests. (*Id.* at 16.)

"Under New York law, [t]he essential elements of a cause of action for fraud are representation of a material existing fact, falsity, scienter, deception, and injury." *Meridian Horizon Fund, LP v. KPMG (Cayman)*, 487 F. App'x 636, 641 (2d Cir. 2012) (internal quotation marks, footnote, and emphasis omitted) (quoting *N.Y. Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 318 (1995)); *Cargo Logs. Int., LLC v. Overseas Moving Specialists, Inc.*, 723 F. Supp. 3d 212, 226 (E.D.N.Y. 2024) ("Under New York law, the essential elements of a fraud claim include representation of a material existing fact, falsity, scienter, deception, and injury." (internal quotation marks omitted) (quoting *Manning v. Utils. Mut. Ins. Co.*, 254 F.3d 387, 400 (2d Cir. 2001))); *see also Cortes v. 21st Century Fox Am., Inc.*, 751 F. App'x 69, 72 (2d Cir. 2018) (stating the elements of a fraudulent misrepresentation claim). Specifically, "[t]o state a claim for fraud under New York law, a plaintiff must allege (1) a material misrepresentation or omission of fact; (2) which the defendant knew to be false; (3) which the defendant made with the intent to defraud; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." *Housey v. Proctor & Gamble Co.*, No. 22-CV-888, 2022 WL 17844403, at *1 n.1 (2d Cir. Dec. 22, 2022) (quoting *Fin. Guar. Ins. Co. v. Putnam Advisory Co.*, 783 F.3d 395, 402 (2d Cir. 2015)); *see also Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 13 F.4th 247, 259 (2d Cir. 2021) (same); *GEM Advisors, Inc. v. Corporación Sidenor, S.A.*, 667 F. Supp. 2d 308, 333 (S.D.N.Y. 2009) ("The second element of fraud in New York is intent to defraud, or scienter, which includes knowledge of the falsity of the representation." (citing *Banque Arabe et Internationale D'Investissement v. Md. Nat'l Bank*, 57 F.3d 146, 153 (2d Cir. 1995))).

"[I]n conjunction with the facial plausibility standard of Rule 12(b)(6)," pleadings for common law fraud claims "must satisfy the heightened pleading standard set forth in Rule 9(b)" of the Federal Rules of Civil Procedure. *Loreley Financing (Jersey) No. 3 Ltd. v. Wells Fargo Securities, LLC*, 797 F.3d 160, 171 (2d Cir. 2015); *Kearney v. Bayerische Motoren Werke*

*Aktiengesellschaft*, No. 17-CV-13544, 2018 WL 4144683, at *10 (D.N.J. Aug. 29, 2018)

("Federal Rule of Civil Procedure 9(b) governs [the] [p]laintiffs' fraud-based claims. It

provides: '[i]n alleging fraud or mistake, a party must state with particularity the circumstances

constituting fraud or mistake.'"); *Turk v. Rubbermaid Inc.*, No. 21-CV-270, 2022 WL 836894, at

*4 (S.D.N.Y. Mar. 21, 2022) ("[F]raud claims — including common law fraud claims — are

subject to the heightened pleading standard set forth in Rule 9(b)."); *see Powell v. Subaru of Am.,

Inc.*, 502 F. Supp. 3d 856, 887 (D.N.J. 2020) ("Because of this difference in standards, plaintiffs

may not benefit from the same inferences they enjoy under a 12(b)(6) analysis if they fail to meet

the heightened pleading requirements." (citing *Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.*, 394

F.3d 126, 156 (3d Cir. 2004))). "Rule 9(b) requires that '[i]n alleging fraud or mistake, a party

must state with particularity the circumstances constituting fraud or mistake.'" *United States ex

rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 25–26 (2d Cir. 2016) (alteration in original) (quoting Fed.

R. Civ. P. 9(b)).

"[T]he particularity pleading requirements of [Rule 9(b)] . . . 'require[ ] that the plaintiff

(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the

speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why

the statements (or omissions) are fraudulent.'" *Fin. Guar. Ins.*, 783 F.3d at 402–03 (quoting

*Eternity Glob. Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir.

2004)); *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007). "Put another way, Rule

9(b) 'requires that a plaintiff set forth the who, what, when, where[,] and how of the alleged

fraud.'" *U.S. ex rel. Henig v. Amazon.com, Inc.*, No. 19-CV-5673, 2025 WL 27736, at *6

(S.D.N.Y. Jan. 3, 2025) (quoting *U.S. ex rel. Kester Novartis Pharm. Corp.*, 23 F. Supp. 3d 242,

252 (S.D.N.Y. 2014)); *Kearney*, 2018 WL 4144683, at *10 (quoting *Institutional Invs. Grp. v.

Avaya, Inc.*, 564 F.3d 242, 253 (3d Cir. 2009)). "Although Rule 9(b) allows for '[m]alice, intent,

knowledge, and other conditions of a person's mind [to] be alleged generally,' Fed. R. Civ. P. 9(b), a plaintiff must still allege facts 'that give rise to a strong inference of fraudulent intent.'" *Red Apple 86 Fleet Place Dev., LLC v. State Farm Fire & Cas. Co.*, No. 23-1312, 2024 WL 4764060, at *3 (2d Cir. Nov. 13, 2024) (alterations in original) (quoting *Loreley Fin.*, 797 F.3d at 171). "[A] 'strong inference of fraudulent intent' . . . 'may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness.'" *Fed. Deposit Ins. Co. v. Fifth Third Bank, N.A.*, No. 23-209, 2023 WL 7130553, at *2 (2d Cir. Oct. 30, 2023) (quoting *United States v. Strock*, 982 F.3d 51, 66 (2d Cir. 2020)); *see also Honeyman v. Hoyt* (*In re Carter-Wallace, Inc., Sec. Litig.*), 220 F.3d 36, 39 (2d Cir. 2000) (quoting *Shields v. Citytrust Bancorp*, 25 F.3d 1124, 1128 (2d Cir. 1994)) (same).

To satisfy the intent element of a common law fraud claim, "though mental states may be pleaded 'generally,' [a fraud claimant] must nonetheless allege facts 'that give rise to a strong inference of fraudulent intent.'" *Loreley Fin.*, 797 F.3d at 171 (quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290–91 (2d Cir. 2006)). A "strong inference of fraudulent intent" can be shown "by (1) alleging facts to show that defendants had both motive and opportunity to commit fraud, or by (2) alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Gabriele v. Am. Home Mortg. Servicing, Inc.*, 503 F. App'x 89, 97 (2d Cir. 2012) (quoting *S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp.*, 84 F.3d 629, 634 (2d Cir. 1996)). A plaintiff must also establish that the defendant made the false material misrepresentation with the intent to deceive. *See, e.g.*, *Meda AB v. 3M Co.*, 969 F. Supp. 2d 360, 386 (S.D.N.Y. 2013) ("A fraud claim is not actionable without evidence that the misrepresentations were made with the intent to deceive." (quoting *Friedman v. Anderson*, 803 N.Y.S.2d 514, 517 (App. Div. 2005))).

### 1.    Metro Pain Defendants failed to meet the Rule 9(b) requirements

Metro Pain Defendants have failed to meet the particularity requirements of Rule 9(b).

Although Metro Pain Defendants allege with some particularity what specific statements they

contend are fraudulent (misrepresentations regarding the verifications process), who made the

statements (State Farm), where (in letters and other correspondence to Metro Pain), and when

(2019, 2020, and 2021), Metro Pain Defendants do not sufficiently demonstrate how and why the

statements they identify are fraudulent.  (Counterclaims ¶¶ 34, 40, 52); *Fin. Guar. Ins.*, 783 F.3d

at 402–03 (explaining that Rule 9(b) requires explanation as to why the alleged statements or

omissions are fraudulent).  In particular, Metro Pain Defendants failed to allege why Plaintiffs'

statements that the verification requests, including requests for financial records, were

unnecessary for verifying Metro Pain Defendants' claims in view of the fact that New York's

No-Fault laws permit Plaintiffs to seek "any . . . pertinent information that may assist the

Company in determining the amount due and payable," request verification of facts where "there

are good reasons to do so," and deny ineligible claims.  *See* N.Y. Comp. Codes R. & Regs., tit.

11 §§ 65-1.1, 65-3.2(b)–(c); *State Farm*, 120 F.4th at 71 (explaining that providers are

"ineligible to receive reimbursement of No-Fault benefits" under several circumstances and are

"prohibited from paying or receiving kickbacks in exchange for patient referrals or in connection

with the performance of professional services"); *State Farm Mut. Auto. Ins. Co. v. Grafman*, 655

F. Supp. 2d 212, 220 (E.D.N.Y. 2009) (explaining that "insurance carriers may withhold

payment for medical services provided by fraudulently incorporated enterprises to which

plaintiffs have assigned claims"); *All Health Med. Care, P.C. v. Gov't Emps. Ins. Co.*, 771

N.Y.S.2d 832, 836 (Civ. Ct. 2004) (noting that once an insurer receives a response to a

verification request, the insurer "could . . . pay the claim, deny the claim, or request further

verification if it finds the provided response insufficient").  Despite Metro Pain Defendants'

contention that Plaintiffs internally acknowledged that Metro Pain Defendants "had supplied all

the requested verification materials," (Counterclaims ¶¶ 9, 10, 37), State Farm's counsel based

the declaratory judgment action at issue on Metro Pain Defendants' "continuous billing . . .

without additional verification."  (State Farm Memorandum; June of 2020 Verification Request

4, annexed to Counterclaims as Ex. 7, Docket Entry No. 482-7 (noting that compliance with the

verification requests was "a condition of coverage"); September of 2021 EUO Letter 1, annexed

to Counterclaims as Ex. 12, Docket Entry No. 482-12 (attaching "an updated list of pending

claims for which verification is presently outstanding")); *Grafman*, 655 F. Supp. 2d at 221

(noting that "withholding payment for fraud did not conflict with the interest in prompt payment

of claims" submitted by medical providers); *All Health Med. Care*, 771 N.Y.S.2d at 836

(explaining that, even after receiving a response to a verification request, an insurer may "request

further verification if it finds the provided response insufficient").  Accordingly, because Metro

Pain Defendants do not sufficiently allege why Plaintiffs' statements regarding its ongoing

verification process are misrepresentations, Metro Pain Defendants do not meet the particularity

requirements of Rule 9(b).

> ## 2.    Metro Pain Defendants failed to suggest a strong inference of fraud

In addition, Metro Pain Defendants do not sufficiently allege facts to support a strong

inference of fraudulent intent.  First, Metro Pain Defendants fail to assert factual allegations

demonstrating a motive to commit fraud beyond the general corporate profitability that would

result from Plaintiffs "avoid[ing] payment" on submitted claims, (Counterclaim ¶ 10).  *Fed.*

*Deposit Ins. Co.*, 2023 WL 7130553, at *2 (explaining that Rule 9(b) requires Plaintiffs to "plead

the factual basis which gives rise to a strong inference of fraudulent intent" either by showing

"motive and opportunity to commit fraud" or "by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness").  Metro Pain Defendants allege that Plaintiffs' verification requests were "nothing more than a fraudulent attempt to delay and avoid payment while conducting covert pre-suit discovery" and benefit from "windfall premiums" from its insureds, but general allegations of Plaintiffs' financial incentive to deny claims are insufficient to allege intent.  (Counterclaim ¶¶ 10, 12); *see Chill v. Gen. Elec. Co.*, 101 F.3d 263, 268 (2d Cir. 1996) (explaining that general motive "to maintain the appearance of corporate profitability" does not establish scienter); *Colpitts*, 527 F. Supp. 3d at 586 (finding that allegations regarding a price premium paid for an allegedly mislabeled product did not sufficiently allege motive because "simply alleging a defendant's self-interested desire to increase sales does not give rise to an inference of fraudulent intent" (quoting *Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337, 354 (S.D.N.Y. 2020))); *In re Frito-Lay N. Am, Inc. All Nat. Litig.*, No. 12-MD-2413, 2013 WL 4647512, at *25 (E.D.N.Y. Aug. 29, 2013) ("Frito-Lay's generalized motive to satisfy consumers' desires, [and] increase sales and profits[] 'does not support a strong inference of fraudulent intent.'"  (quoting *Chill*, 101 F.3d at 268)).  Accordingly, because Metro Pain Defendants allege only a generalized corporate profit motive to avoid payment of claims, Metro Pain Defendants fail to allege that Plaintiffs had a motive to commit fraud that supports an inference of fraudulent intent.

Second, Metro Pain Defendants fail to allege circumstantial evidence of conscious misbehavior or recklessness sufficient to support an inference of fraudulent intent because they do not allege that Plaintiffs' verification requests were a "departure from [normal] standards" in the insurance claims industry.  *Carter-Wallace*, 220 F.3d at 39.  Although Metro Pain Defendants allege broadly that Plaintiffs' verifications requests, including requests for financial records, were "abusive," "patently intrusive," "overly intrusive," and "harassing,"

(Counterclaims ¶¶ 31–32, 51–52), Plaintiffs' verifications process and related representations illustrate Plaintiffs' compliance with New York requirements for investigating fraudulent activities. *Carter-Wallace*, 220 F.3d at 39 (noting that, to survive dismissal, the appellants "must show they alleged reckless conduct . . . , which is 'at the least, conduct which is highly unreasonable and which represents an extreme departure from [normal] standards'" (citation omitted)); *Am. Transit Ins.*, 195 N.Y.S.3d at 427 (explaining that "[v]erification of the authenticity of claims is consistent with one of the purposes underlying the adoption of" the No Fault laws, and verification processes are intended to "rein in fraud"). Further, Metro Pain Defendants fail to allege that Plaintiffs' verification requests conflicted with a lawful, iterative verification process. *New Eng. Carpenters Guaranteed Annuity & Pension Funds v. DeCarlo*, 122 F.4th 28, 49 (2d Cir. 2023) (explaining that the plaintiffs failed to "allege facts that provide 'strong circumstantial evidence of conscious misbehavior or recklessness'" because "[s]cienter based on conscious misbehavior . . . requires a showing of deliberate illegal behavior" and recklessness requires "an extreme departure from the standards of ordinary care" (first quoting *ATSI Commc'ns., Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007); then quoting *Gould v. Winstar Commc'ns, Inc.*, 692 F.3d 148, 158 (2d Cir. 2012); and then quoting *ECA & Loc. 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009))); *Gov't Emps. Ins. Co. v. Basia*, No. 13-CV-1720, 2015 WL1258218, at *15 (E.D.N.Y. Mar. 18, 2015) (finding that the plaintiffs adequately pleaded conscious misbehavior or recklessness giving rise to an inference of fraudulent intent by alleging detailed facts of the defendants' unlawful use of independent contractors and paying kickbacks for access to insureds). Thus, Metro Pain Defendants have not sufficiently alleged a strong inference of fraudulent intent.[9]

---

[9]  Because the Court finds that Metro Pain Defendants fail to allege a strong inference of fraudulent intent, it does not address Plaintiffs' arguments as to knowledge or reliance.

Accordingly, the Court grants Plaintiffs' motion and dismisses Metro Pain Defendants' fraud/fraudulent misrepresentation claim for the additional reason that they fail to sufficiently allege why Plaintiffs' statements in verification requests were fraudulent and fail to sufficiently allege Plaintiffs' fraudulent intent.

### III.  Conclusion

For the reasons discussed above, the Court grants Plaintiffs' motion to dismiss Metro Pain Defendants' counterclaims for breach of the implied covenant of good faith and fair dealing, deceptive business practices under GBL § 349, and fraud/fraudulent misrepresentation.

Dated:  March 26, 2025
         Brooklyn, New York

SO ORDERED:


_____s/ MKB_____
MARGO K. BRODIE
United States District Judge

41