*Exhibit A*

```
                    UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF NEW YORK (BROOKLYN)
-----------------------------:
STATE FARM MUTUAL AUTOMOBILE :
INSURANCE COMPANY, et al.,   :
                             :Case No. 21-CV-5523
            Plaintiffs,      :
     v.                      :Brooklyn, New York
                             :March 12, 2025
                             :10:07 a.m. - 11:08 a.m.
METRO PAIN SPECIALISTS P.C., :
et al.,                      :
            Defendants.      :
-----------------------------:
```

TRANSCRIPT AND STATUS CONFERENCE HEARING

BEFORE THE HONORABLE PEGGY KUO

UNITED STATES MAGISTRATE JUDGE


APPEARANCES:

| | |
|---|---|
| For Plaintiff: | KATTEN MUCHIN ROSENMAN LLP<br>BY:  Jonathan L. Marks, Esq.<br>     Christopher Cook, Esq.<br>525 West Monroe Street<br>Chicago, Illinois 60661 |
| For Defendant:<br>Vadim Dolsky | CAPETOLA & DIVINS, P.C.<br>BY:  Byron Divins, Esq.<br>     Alexandra D. Mule, Esq.<br>2C Hillside Avenue<br>Williston Park, New York 11783 |
| For Defendant:<br>Vadim Dolsky | WEINBERG ZAREH MALKIN PRICE LLP<br>BY:  Omid Zareh, Esq.<br>45 Rockefeller Plaza<br>New York, New York 10111 |

Proceedings recorded by electronic sound recording;
Transcript produced by transcription service

          AMM TRANSCRIPTION SERVICE - 631.334.1445

1          THE COURT:  All right.  Good morning,
2  everyone.
3          I scheduled this conference to discuss two
4  filings that the parties made; first, at Docket 660,
5  and this is with -- it's a plaintiffs' request for
6  the location -- information on the location of
7  various assets that defendant Dolsky has, and then
8  the second is Docket 661 with regard to a dispute as
9  to ESI and information that a defendant vendor has.
10 So why don't we start with the second one, 661.
11         So my understanding is that the discovery
12 vendor, DISCO, has information, but does not want to
13 turn it over because of its allegations that it has
14 not been properly paid by the defendant.
15         And so let me hear from Mr. Dolsky's
16 lawyers.  I don't know who wants to speak as to what
17 is the state of that dispute.
18         MR. DIVINS:  Yes, this is Byron Divins.
19 Good morning, Your Honor.
20         Very quickly some background.  We hired
21 DISCO as our vendor.  We paid the initial retainer,
22 and then they stopped billing our clients for
23 months.  We had access, and we were diligently
24 working to produce discovery.  And then without
25 notice they cut us off from access.

1              When we inquired -- we called them up and
2    inquired what was going on.  They claimed they
3    hadn't been paid and acknowledged that they hadn't
4    been sending the monthly invoices to our clients.
5    They finally sent us all the invoices, and now
6    they're alleging we owe some -- well, Mr. Dolsky
7    owes something around 130-, $140,000.  They're
8    demanding payment in full in one lump sum before
9    releasing any information instead of the, you know,
10   15-, 20,000 a month, or whatever they were charging.
11             When I explained to them that -- and they
12   concede that they hadn't been sending our client
13   invoices -- that we need to work a payment plan
14   out -- he's not a company, but an individual -- they
15   refused, and now they've refused access.
16             We have secured another vendor.  This, I
17   believe, is just a contract dispute between the
18   vendor and our client.  I explained to them that if
19   they don't release it, we would be joining in an
20   application with plaintiffs to get an order to get
21   them to release it, and then they can go pursue our
22   clients pursuant to the arbitration clause and the
23   retainer.  And that's where we're at.
24             So we've had multiple meet and confers.  So
25   this is actually a joint application.  We have a new

```
 1    vendor ready.  As soon as we can get DISCO to turn
 2    over the information, we could probably -- they're
 3    telling us we could produce everything that
 4    plaintiffs are requesting, that we have in our
 5    possession, within ten days.
 6              THE COURT:  So are you saying that the
 7    original vendor, DISCO, has completed its work or is
 8    in the middle of it?
 9              MR. DIVINS:  Well, we're not sure where
10    they are because they've stopped allowing us access.
11    The information plaintiffs want, we know has been
12    uploaded to the platform.  Now, we want to just
13    produce it, and they won't give us access to it.
14              THE COURT:  And even though your client
15    agreed to pay, as you said, 15- or $20,000 a month,
16    your client has not paid anything beyond the
17    original retainer; is that right?
18              MR. DIVINS:  Correct, Your Honor.
19              THE COURT:  Okay.
20              MR. DIVINS:  We hadn't gotten an invoice.
21    And now they won't -- I said, listen, let us
22    continue paying in accordance with the contract, and
23    we'll go forward and we'll keep paying, and they
24    said, no.  Essentially, they waited until they built
25    up a huge bill, and now they want it all or they
```

1  of the custodial accounts that we identified back in
2  early 2024 and potentially other custodial accounts
3  held by All Star, Five Star that may contain
4  responsive information.
5       I think that the plaintiffs would request
6  clear confirmation whether there is access to those
7  accounts and if there's not access to those
8  accounts.  And clearly this raises an issue with
9  regard to spoliation, including when the Dolsky
10 party's obligation to preserve relevant information
11 first arose.  And I think that that will be a
12 separate issue that we would have to address with
13 the Court potentially.
14      So at this time -- sorry.
15      THE COURT:  No.  Go ahead.  Finish.
16      MR. COOK:  Yeah, I was going to say, at
17 this time, the plaintiffs really are just seeking
18 from the Court an order requiring the Dolsky parties
19 to submit some report either to the Court, to the
20 plaintiffs, advising on two issues:  The steps that
21 he and the new vendor have taken to try and collect
22 ESI from these other custodial accounts; and second,
23 whether the ESI contained within any of these
24 custodial accounts is no longer accessible.
25      And we would ask that, again, that report

1    be issued within ten days.  And I think that that is
2    probably a reasonable timeline, given that the
3    Dolsky parties have represented they are actively
4    investigating these issues and have been looking
5    into them for some time.
6              THE COURT:  So what are the four custodial
7    accounts?
8              I see one here that is dolskylac@yahoo.com.
9    Is that one of them?
10             MR. COOK:  That is.  That is one of the
11   custodial accounts.
12             THE COURT:  So what are --
13             MR. COOK:  And that is the account from
14   which they have collected e-mails.
15             THE COURT:  Okay.  And what are the other
16   three?
17             MR. COOK:  There is an account: info --
18   I-N-F-O -- @fivestarserv.net.  Another account:
19   Natacha -- N-A-T-A-C-H-A -- @fivestarserv.com.
20   Another account:  Same Natacha -- N-A-T-A-C-H-A --
21   @allstarservicesinc.net.
22             And there is another account, which we
23   recently identified and have made the defendants
24   aware of, which I don't have directly in front of
25   me, but I would like to provide to the Court.  It

1  may take just a second for me to pull it up, if
2  that's okay.
3          THE COURT:  Yeah, that's fine.
4          So when you say, "four," it's the first
5  four, and the one you're about to give me is the
6  fifth?
7          MR. COOK:  That's correct.
8          There were two additional accounts that we
9  originally identified which apparently belong to
10 other entities for which Mr. Dolsky just has no
11 control over and probably could not have control
12 over those accounts.  So we're not contesting his
13 obligation to collect from those particular accounts
14 that were listed.
15         THE COURT:  Right.  Okay.  So then let me
16 just try to understand.
17         So you've been told that the dolskylac
18 Yahoo account information is being collected.
19         MR. COOK:  Has been collected, and is
20 currently being held by the vendor, DISCO.
21         THE COURT:  Okay.  And then the other three
22 you don't know information about.
23         MR. COOK:  That is correct, as well as the
24 account that I now have in front of me, that I can
25 provide to the Court.

```
 1            THE COURT:  Okay.  Tell me that.
 2            MR. COOK:  Okay.  It's all one word.  It's
 3   allstarservicesinc123@gmail.com.
 4            THE COURT:  Okay.  And you said that was
 5   provided or you're now providing it?
 6            MR. COOK:  We have made the defendants
 7   aware that we are requesting records from that
 8   account, and we have no information as to whether
 9   Mr. Dolsky has access to that account or can obtain
10   the information that's included in it.
11            THE COURT:  Okay.  Great.
12            So then let me find out from Mr. Divins for
13   each of these accounts.
14            For the account info@fivestarserv.net, does
15   your client have access to that account?
16            MR. DIVINS:  As of right now, no, Judge.
17            THE COURT:  When did he last have access?
18            MR. DIVINS:  He informed us he doesn't
19   remember having access.
20            THE COURT:  Ever?
21            MR. DIVINS:  That's his position.
22            THE COURT:  Oh, okay.
23            So somebody may not remember, but you need
24   to find out from him when he had access and when he
25   lost access because what I'm hearing also is some
```

1   implication that Five Star and All Star were
2   dissolved after the request for production of
3   these -- information from these accounts, and that
4   would be a problem, all right.  Because if he had --
5           MR. DIVINS:  I understand.
6           THE COURT:  If he had access at the time
7   when he was requested to produce, didn't produce,
8   then dissolved the corporations -- I see in a
9   footnote that there was an article of dissolution
10  filed in December 2024 for All Star.  So if that
11  happened in a sequence -- in this kind of sequence,
12  that is problematic, to say the least.  All right.
13          MR. DIVINS:  And I understand that, Judge.
14          All I would say is he had employees out of
15  Puerto Rico -- I believe Natacha, one of them -- who
16  had access, and he really didn't have any day-to-day
17  access to --
18          THE COURT:  It doesn't matter if it's day
19  to day, Mr. Divins.  It's control and access.  You
20  know what that means.
21          So if the request was made in 2023 and for
22  whatever reason the defendant sat on the request,
23  did not collect, did not preserve, and then filed
24  for dissolution in December 2024 and now says, oh,
25  gosh, that organization is -- that entity is

1  dissolved, we no longer have access, that's not how
2  things work.  That would be a very problematic time
3  frame -- timeline for your client.
4          So even if your client no longer has
5  access, I want to know when your client would still
6  have had access and when he lost access, all right.
7  The day to day is not the issue; it's control and
8  access.  So if the entity still existed and he had
9  control over the entity, then he had control over
10 the account.
11         So I want you to prepare a timeline for
12 those accounts, those three, because those are Five
13 Star and All Star domain names, it sounds like.  For
14 the more recent one, it's Gmail, so you should find
15 out who has access to that account.
16         MR. DIVINS:  Yes, Your Honor.
17         THE COURT:  Understood?  Okay.  Great.
18         So please produce that to the plaintiffs so
19 they can take a look at it, and then you can come
20 back to me if based on that there's an issue.
21         Mr. Cook?
22         MR. COOK:  Your Honor, I apologize.  This
23 is Chris Cook for the plaintiffs.
24         There was one additional account that we
25 would request the Dolsky parties provide us with a

```
 1    timeline on.  It's a Five Star account.  It's
 2    vadim@fivestarserv.com -- V-A-D-I-M.
 3              THE COURT:  Fivestarserv.com.
 4              MR. COOK:  Correct.
 5              THE COURT:  Okay.
 6              MR. COOK:  And that was an e-mail account
 7    that we identified for the defendants in, I believe,
 8    March of 2024.
 9              THE COURT:  Okay.  So, you know, get the
10    timeline.
11              Mr. Divins, please share -- create a
12    timeline based on detailed information from your
13    client, and then produce that to plaintiff.
14              Mr. Cook, you can superimpose it on the
15    timeline that you have for your requests and other
16    actions.  And if you then have an issue that you
17    want to bring to the Court, you can provide that
18    detail, okay?
19              MR. COOK:  Thank you, Your Honor.
20              THE COURT:  All right.  Thank you.
21              So is there anything else in 661 that we
22    need to discuss?
23              MR. COOK:  Nothing from plaintiff.
24              THE COURT:  Okay.  Great.
25              I guess the only other thing is,
```

```
 1   Mr. Divins, did you provide a time frame for
 2   production -- oh, no.  I'm sorry.  The dolskylac is
 3   part of the DISCO dispute, so never mind.  You'll
 4   work that out and get a time frame in place after
 5   discussion with the plaintiff.
 6           Okay.  So let's turn now to the assets
 7   issue.  And, Mr. Cook, I'd like to hear from you or
 8   Mr. Marks about why you need to get the location of
 9   these assets.
10           MR. MARKS:  All right.  So, Your Honor,
11   it's Jonathan Marks on behalf of plaintiff.
12           And so to be clear, you know, we want the
13   location.  There are a couple of other things that
14   we do want as well.
15           So we want to inspect and photograph the
16   items.  I think that's something that they've agreed
17   to.  We also want documents related to the location.
18   So, for example, if they're in a safe deposit box,
19   if they're in a storage locker, we want documents
20   related to that because we want, you know, who has
21   access to the safety deposit box, who has access to
22   the storage locker, and we would want documents
23   related to any sales or transaction that might be
24   related to those assets.
25           So it's location plus these things, which
```

1   is and who has access.  And if it's in Mr. Dolsky's
2   apartment or home or one of his homes or something
3   like that, he can say it's in his residence or a
4   home that he owns or lives in, or it's with his
5   spouse or with his, you know, children or -- you
6   know, whatever that is should be described.
7        So it's not to say he can just show up with
8   the goods at the lawyer's office.  And at the end of
9   it, I think it's fair for the plaintiffs to get a
10  more fulsome description of how these things are
11  being kept and by whom and who has access because it
12  is an important issue, whose things these actually
13  are at the end of the day.
14        All right.  So --
15        MR. MARKS:  Yeah.  So, Your Honor, you
16  know, I want -- thank you.  That was helpful
17  clarification.  I just want to make sure I
18  understand in terms of how this plays out.
19        So, you know, we have served this
20  procedurally as a request for inspection.  It sounds
21  like what the Court is contemplating is, we sort of
22  get everything but the precise location.  So, you
23  know, if, for example, these are in a safe deposit
24  box, you know, it would be incumbent upon Dolsky to
25  say, you know, X dollars worth of gold are in a safe

```
1    deposit box.  You know, I'm producing -- and produce
2    to us documents related to that safe deposit box
3    that provided all information.  And they could
4    redact the exact location, but otherwise would have
5    to produce the documents.
6              Am I, sort of, understanding what the Court
7    is, sort of, suggesting?
8              THE COURT:  Yes.
9              MR. MARKS:  Okay.
10             THE COURT:  Yes.
11             MR. MARKS:  Understood.  Understood.
12             THE COURT:  Okay.  So one way of thinking
13   about it is, I'm not requiring a GPS location of
14   where the goods are now.
15             MR. MARKS:  And everything but that is what
16   I mean.
17             THE COURT:  Right.
18             So the description of how it's being
19   secured and who has access, those kinds of things
20   are fair game.
21             And, in fact, when these things are going
22   to be produced at the lawyer's office, Mr. Dolsky is
23   going to have to go get them, and so he should be
24   documenting where he's getting them from.  And so it
25   would be fair when they're being inspected and
```

```
 1    photographed for plaintiffs' counsel to say, where
 2    did this -- where was this?  Or where is this being
 3    secured?  Where did you bring it from?  Right?  I
 4    mean, that's fairly simple.
 5              So I'm not saying you should have a
 6    deposition right there, but I'm just saying that it
 7    doesn't have to be in a degree of generality of,
 8    I've got some gold here.  I've got some watches
 9    there.  You could be more specific.
10              And, Mr. Divins, maybe you can work with
11    your client to have an inventory so that each item
12    can be specified where it's being kept and where it
13    came from because it had to travel from some
14    location to counsel's office.
15              MR. DIVINS:  Your Honor?
16              THE COURT:  All right.  So this kind of
17    thing is not -- I don't think is going to be that
18    difficult.  He's just going to have to do it.
19              So, Mr. Divins, did you have a question?
20              MR. DIVINS:  Yes, ma'am, if I may.  So it's
21    Byron Divins for Mr. Dolsky.
22              Isn't that the same thing?  If my client
23    has to turn around and say -- he comes to my office
24    with his gold and said, oh, it was located in a safe
25    that's in my apartment, doesn't that get around our
```

```
 1    entire objection from letting plaintiffs know
 2    exactly where it is?
 3              THE COURT:  Well, he could say it's his --
 4              MR. DIVINS:  Right?  We're trying to --
 5    we're arguing stuff that is all factual issues.
 6              THE COURT:  I don't know how many
 7    residences your client has.  I don't know if he's
 8    living in a house or apartment.  I'm trying to
 9    balance your client's valid concern about security.
10    I get that, okay.  And that is the only concern I
11    have about security.
12              And so if there is a way to have the
13    information that doesn't allow -- you know, I'm just
14    imagining in the -- you know, your worst-case
15    scenario that somebody somehow hacks into some
16    system that can figure out that he has all this
17    stuff in a safe in his home, that that would be
18    problematic.
19              But you can have a conversation with
20    Mr. Marks about your concerns because if you say
21    many things are being kept at his home, then maybe
22    there's a way certain information can be withheld,
23    okay.
24              But it doesn't sound like you know,
25    Mr. Divins, where things are, so it is incumbent on
```