# *Exhibit 1*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

```
------------------------------X  Docket#
STATE FARM MUTUAL AUTOMOBILE  : 21-cv-05523-MKB-PK
INSURANCE COMPANY, et al.,    :
                              :
              Plaintiffs,     :
                              :
    - versus -                : U.S. Courthouse
                              : Brooklyn, New York
METRO PAIN SPECIALISTS        :
P.C., et al.,                 :
                              : October 31, 2023
              Defendants      : 11:41 a.m.
------------------------------X
```

TRANSCRIPT OF CIVIL CAUSE FOR SHOW CAUSE HEARING
BEFORE THE HONORABLE PEGGY KUO
UNITED STATES MAGISTRATE JUDGE

**A P P E A R A N C E S:**
**(VIA VIDEO/AUDIO)**

**For the Plaintiffs**:    **Christopher T. Cook, Esq.**
                           **Jonathan L. Marks, Esq.**
                           Katten Muchin Rosenman LLP
                           525 W. Monroe St., Suite 1900
                           Chicago, IL 60661

**For the Defendants**:    **Shannon Carroll, Esq.**
                           **Anthony M. Juliano, Esq.**
                           Brach Eichler LLC
                           101 Eisenhower Parkway, Ste. 201
                           Roseland, NJ 07068

                           **Neil Flynn, Esq.**
                           The Russell Friedman Law Group
                           400 Garden City Plaza, Ste. 500
                           Garden City, NY 11530

                           **Elyse Schindel, Esq.**
                           London Fischer LLP
                           59 Maiden Lane
                           New York, NY 10038

**Transcription Service**: **Transcriptions Plus II, Inc.**
                           61 Beatrice Avenue
                           West Islip, New York 11795
                           RL.Transcriptions2@gmail.com

Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

2

Proceedings

1          THE CLERK:  This is Civil Cause For a Show

2     Cause Hearing, docket number 21-cv-5523, *State Farm*

3     *Mutual Automobile Insurance Company, et al., v. Metro*

4     *Pain Specialists, P.C., et al.*  Magistrate Judge Peggy

5     Kuo presiding.

6          Will the parties please state their appearances

7     beginning with plaintiff?

8          MR. COOK:  Good morning, your Honor.

9     Christopher Cook of Katten Muchin Rosenman on behalf the

10    plaintiff State Farm Mutual and State Farm Fire.

11         MR. MARKS:  Good morning, your Honor.  Jonathan

12    Marks also of Katten Muchin also on behalf of plaintiff

13    State Farm Mutual Automobile Insurance Company and State

14    Farm Fire and Casualty Company.

15         MS. CARROLL:  Good morning, your Honor.

16    Shannon Carroll from Brach Eichler on behalf of the

17    defendants Reuven Alon, Columbus Imaging Center LLC,

18    Medaid Radiology LLC, Yan Moshe, Hackensack Specialty ASC

19    LLC, Integrated Specialty ASC LLC, and non-party Gabriel

20    & Shapiro.

21         MR. FLYNN:  Good morning, your Honor.  This is

22    Neil Flynn for 1963 Concourse Holdings, East Gun Hill

23    Holdings, Woodhaven Realty, all LLCs, 63-36 Holdings LLC,

24    and 9220 165 Holdings LLC, all of which are subpoenaed

25    non-parties.

3

Proceedings

1          MR. JULIANO:  Good morning, Judge.  This is

2     Anthony Juliano from Brach Eichler LLC.  I'm appearing

3     along with Shannon Carroll for the same defendants as she

4     listed.

5          MS. SCHINDEL:  Good morning, your Honor.  Elyse

6     Schindel from London Fischer for defendants Regina Moshe,

7     MD, and Citimedical.  And I am just on the call listening

8     this morning.

9          THE COURT:  All right.  Thank you.  Good

10    morning, everyone.

11         We are having this conference to talk about

12    some discovery disputes that have arisen.  Mr. Flynn, I

13    heard you enter the appearance today but I just wanted to

14    start with your representation because in one of your

15    letters you talked about no longer being counsel or

16    moving to withdraw as counsel.  Are you remaining on this

17    case?

18         MR. FLYNN:  We have been substituted out for

19    the parties.  Our remaining representation is solely on

20    behalf of the real estate entities.  Actually we still

21    are involved in the representation but the day-to-day

22    defense of the defendants that Ms. Carroll just listed as

23    being turned over to Brach Eichler.  So we're appearing

24    on behalf of only the real estate non-parties.

25              THE COURT:  All right.  I'm looking to see --

4

Proceedings

1    on the docket I see that you are still the attorney of

2    record for Yan Moshe and several of the other defendants.

3    If you no longer are because you've been substituted out,

4    you need to file a motion with the Court to let the Court

5    know that because otherwise it's confusing to show that

6    you're still representing these parties.

7                MR. FLYNN:  Of course, your Honor.  I'll do

8    that.

9                THE COURT:  All right.

10               MR. FLYNN:  I'll take care of that today.

11               THE COURT:  All right.  Thank you.  So I'm just

12   looking to make sure I have the record clear as well

13   because the appearances are not in order.

14               So Ms. Carroll, you and Mr. Juliano are part of

15   the Brach Eichler firm and you both represent --

16               MS. CARROLL:  Yes.

17               THE COURT:  -- the Yan Moshe defendants.  Is

18   that right?

19               MS. CARROLL:  That's right, your Honor.  We

20   have been in the process of transitioning this matter

21   over to our firm over the last couple of weeks.

22               THE COURT:  I see.  Okay.  Great.  So I think

23   that helps me understand what's going on.

24               All right.  So I will start with the most

25   recent filing on this matter which was document 463.  Oh

5

Proceedings

1    sorry, 463 is actually just for scheduling purposes.  So

2    this is 451 in which the Russell Friedman firm responds

3    in a letter which I believe is erroneously dated May 31st

4    because it was filed on October 5th, and that talks about

5    certain documents that have been produced but also things

6    that are still not produced, and then also talks about

7    emails no longer being in the defendant's possession.

8    And so -- or rather the non-parties.

9           So Mr. Cook and Mr. Marks, let me start with

10   you so that you have a chance to respond and let the

11   Court know what your view is on where the production is

12   and what's still problematic.

13          MR. COOK:  Thank you, your Honor.  Christopher

14   Cook on behalf of the plaintiffs.

15          Presently before the Court there are two orders

16   to show cause that have been entered.  One order to show

17   cause is to the Moshe Holding Companies as to why they

18   have not yet complied with the Court's orders directing

19   them to produce all responsive documents pursuant to

20   plaintiff's subpoenas, and then a separate court order

21   directed to what are referred to as the Moshe and Alon

22   defendants which includes their corporate defendants

23   Hackensack Specialty, Integrated Specialty, Columbus

24   Imaging, and Medaid Radiology.

25          And that order to show cause also requested

6

Proceedings

1    that they respond and provide cause as to why they have

2    failed to comply with the Court's order directing them to

3    produce all outstanding responsive discovery pursuant to

4    the plaintiff's discovery request.

5        So I think it's probably best that we sort of

6    take this in turn.  And I'd like to address I guess first

7    the Moshe Holding Companies and the non-parties in the

8    case.

9        So with respect to the subpoenas that have been

10   served on the Moshe Holding Companies in the information

11   that they provided in their response to the Court at

12   docket 451, they have represented that they have produced

13   all of the non-electronically stored information in their

14   possession, custody, and control that is responsive to

15   State Farm's subpoenas.  And they have produced

16   information to us.  We really have no basis to challenge

17   their contention that they have now complied with the

18   Court's orders with respect to the non-electronically

19   stored information.

20       So as far State Farm is concerned, I mean we're

21   willing to accept them at their word that they have

22   produced all of the documentation in their custody or

23   control and that they have complied with the Court's

24   order.

25       Now, as to electronically stored information,

7

Proceedings

1    the Moshe Holding Companies represented in their letter

2    to the Court that they did not produce the requested

3    emails which, as plaintiffs have shown, they have existed

4    but according to the Moshe Holding Companies, those

5    emails were destroyed in the normal course of business

6    and they have none to produce to State Farm.

7         So again, we have no understanding or no

8    factual basis to state that they continue to possess

9    these emails and should turn them over.  So as far as

10   State Farm's concern, with respect to the Moshe Holding

11   Companies, you know, we accept that they have complied

12   with the Court's orders based on the representation that

13   they have nothing left to produce.

14        As to the Moshe and Alon defendants, in their

15   letter to the Court, docket 451, you know, they represent

16   that the respondents have additional documents to

17   produce, that those documents were forthcoming.  They did

18   not provide a date by which they would produce them.  And

19   therefore, they were not in compliance with the Court's

20   orders.

21        Since the filing of that letter on October 5th,

22   none of the Moshe or Alon defendants have produced any

23   additional documents, none have produced any revised

24   written responses as directed by the Court.  We still

25   have no understanding as to when the Moshe or Alon

8

Proceedings

1    defendants will cure the discovery deficiencies and

2    comply with this Court's order by producing those

3    remaining documents and those revised written responses.

4            State Farm pressures position is that these

5    issues have long been outstanding.  We served our

6    discovery in April of last year.  We've met and conferred

7    with the Moshe and Alon defendants regarding these

8    deficiencies.  We've attempted to engage them in letter

9    writing and identifying deficiencies that have long been

10   outstanding.  And as the Court is aware, numerous motions

11   have been filed regarding those deficiencies.  And in

12   fact, the Court has ordered them to remedy those

13   deficiencies and they remain outstanding.  And they are

14   not compliant with the Court's orders and they have not I

15   think shown cause as to why they are noncompliant.

16           As to the Moshe and Alon defendants, State Farm

17   would respectfully request that the Court find them in

18   contempt, set a date by which they will fully comply

19   which we would submit within 45 days of the order and for

20   any day after that period for which they fail to comply,

21   set a monetary penalty to be instituted on a per diem

22   basis as to both the Moshe and Alon defendants and their

23   corporate defendants in the case.

24           THE COURT:  All right.  Thank you.  So there

25   isn't any need for the Moshe Holding Companies to respond

9

Proceedings

1  at this point because it sounds like the plaintiffs are

2  satisfied with the production and have nothing to request

3  the Court to intervene on.

4          As far as the Moshe/Alon defendants, Ms.

5  Carroll and Mr. Juliano, you are new to this case and I

6  don't see a filing from you substantively.  But from the

7  last filing from Mr. Flynn, there was an acknowledgment

8  that there are still things that need to be produced and

9  there was this description of unforeseen confluence of

10 extremely (indiscernible) of occurrences including the

11 change of counsel and then responding to the second

12 amended complaint which I see was filed in August.  So I

13 don't quite understand how a party can simply say we're

14 going to enlarge the time in which we are required by law

15 and court order to respond just because we don't have

16 time to do anything.  So Ms. Carroll, do you want to

17 respond to that?

18         MS. CARROLL:  Yes, Judge.  I'll start with the

19 understanding that I am going to ask Mr. Flynn to comment

20 on this as well because, you know, we are just getting

21 involved in this case.  It is a very large file.  We have

22 had -- all of the file has not been transferred over to

23 us to date.  I understand that the volume of the

24 production has been a burden on the client.  You know, we

25 are new to this case and we are doing the best that we

10

Proceedings

1    can to get it shaped up appropriately, get the

2    appropriate vendors in place to deal with this

3    e-discovery that appears to be an issue here.

4             As far as what exactly is outstanding, I really

5    think that Mr. Flynn should talk to that.  My

6    understanding is that due to a file size issue that his

7    firm's server was being shut down due to the size of the

8    production.  I know that we similarly are having issues

9    getting the files properly transferred over from his firm

10   which is why we are, you know, trying to jump in to get

11   this taken care of.

12            But I do understand, and I want Mr. Flynn to

13   speak to this better, that it's an actual tech issue that

14   involves his law firm.  So if he can speak to that

15   matter, you know, I would ask that the party not be

16   prejudiced due to an issue that the law firm has had

17   managing this data that's been provided.

18            You know, Mr. Flynn, can you speak a little bit

19   more to that, please?

20            THE COURT:  Thank you, Ms. Carroll.  Before you

21   do that, Mr. Flynn, I would note that procedurally as I

22   look at this, you have acted improperly by withdrawing

23   from this case without Court permission because had you

24   sought Court permission and properly sought leave to

25   withdraw as counsel as required by the federal rules,

11

Proceedings

1   then I would have had the opportunity to examine these

2   issues of delay and work transferring a file and I might

3   have denied your motion to withdraw as counsel.  So you

4   know, all of this highlights why the rule exists which is

5   that counsel cannot just decide to withdraw even if

6   that's what the client wants because it can impact the

7   case.

8           So I'm greatly disturbed by the fact that you

9   unilaterally took this action and we are now in this

10  position where the new firm is saying they have not

11  received the files, there was not an orderly transfer of

12  the files.  And part of it is because the Court never had

13  the opportunity to grant your motion.  And in fact as of

14  this moment, you still represent the defendant because

15  you have not sought leave to be substituted.

16          So you are standing today before the Court

17  representing those defendants and so I would now give you

18  the opportunity to speak.

19          MR. FLYNN:  Thank you, your Honor.  I most

20  respectfully disagree.  I don't think I acted improperly

21  at all.  As I indicated, we are still involved and we're

22  working with Ms. Carroll's firm.  We're in the process of

23  transferring the file.  As she indicated, it's gigantic

24  and it's actually shut down our entire server several

25  times in the last few weeks as we tried to do this.  We

12

Proceedings

1    brought in an outside company to take care of it and

2    we're in the process of transferring it and we're working

3    closely with incoming counsel who are representing our

4    clients for the purposes of this hearing although we do

5    remain as counsel for those defendants.  We haven't

6    withdrawn.  We've been working with them and like I said

7    incoming counsel hand in glove on this matter.

8            As to the substantive issues, there are some

9    minor supplemental responses that are outstanding.  And

10   while we have no intention of attempting to unilaterally

11   extend the time to respond to the Court's order, we are

12   limited physically by the technological obstruction of

13   being able to access the information and get it off our

14   server.  We, like I said, brought in an outside tech

15   company to do this for us and they're working on it and

16   have been for some time now.  And it's literally shut

17   down our entire firm's server on several occasions due to

18   the massive volume of documents that have to be

19   extracted.

20           The supplements, just like plaintiff has been

21   supplementing their discovery response throughout the

22   course of this proceeding, these are supplemental

23   responses that are in the course of the proceeding being

24   provided.  They're just again -- we constantly get

25   discovery responses from plaintiffs, supplemental

13

Proceedings

1  discovery responses.  It's an ongoing issue.  And these

2  aren't new materials that they're providing.  These are

3  gigantic document dumps of millions of pages now at this

4  point that are an ongoing process regularly.

5        So here we're faced with a situation where

6  we're being placed again in front of the Court now for a

7  distinct response which is something that is ongoing as

8  part of this case.  And given the Court's order, we're

9  doing our best to comply but it is a matter of technology

10  and just a physical capability to actually access the

11  materials and extract them to produce them because of the

12  size of the file and the way it's actually corrupted our

13  computer servers.

14        So I can only ask that the Court consider the

15  fact that we again brought in a technology company to

16  extract these files.  They're working on it.  We were

17  just exchanging emails about it this morning and we are

18  doing our best to get it done.  But they are just

19  supplemental responses just like the parties, including

20  the plaintiff, have been exchanging throughout this

21  litigation.

22        THE COURT:  And when did the issue of the

23  server emerge?

24        MR. FLYNN:  It's been a matter of several weeks

25  now we've been trying to transfer.  We've been able to

14

Proceedings

1   transfer pieces of the file but it's been at least three

2   to four weeks at this point and they can't get it.  We

3   just -- literally the whole firm was shut down last week,

4   the middle of last week, because of the time, excuse me,

5   the scope of I guess the memory drain by trying to

6   download the files and it's ongoing.

7           But again, we were working on it this morning,

8   we're working on it every day trying to get it

9   transferred.  We transferred a large portion of the

10  material, but there are still, there is still a very

11  significant portion that we haven't been able to extract

12  for any purpose.

13          THE COURT:  And is this a problem with

14  transferring from your firm to Brach Eichler?

15          MR. FLYNN:  Yes, it is.  That's what it's about

16  regarding our attempt to transfer it to Brach Eichler.

17  That's how we became aware that we weren't able to do it.

18  And once we started attempting to extract the materials,

19  that's when everything essentially locked up and we've

20  been engaging this tech company, the IT company, to come

21  in and unlock it and see how we can get this transferred.

22  And at this point it doesn't appear that we can do it

23  just digital or without downloading it.  We may actually

24  have to print some of the materials and that is just

25  incredibly burdensome given the volume.  So we're trying

15

Proceedings

1  now to transfer it --

2          THE COURT:  Why does it have to be transferred?

3          MR. FLYNN:  Because --

4          THE COURT:  Why can't you --

5          MR. FLYNN:  Why does it have to be transferred?

6          THE COURT:  Because you still represent those

7  defendants.  Why can't the files remain on your server

8  and you and co-counsel just deal with it from that

9  stance?

10          MR. FLYNN:  Because some of it is so locked up

11  that we can't even extract it from the server to exchange

12  it.  I can't get it off there either.

13          My understanding from what we're been told that

14  the whole thing is now -- it's been running for days

15  trying to download these documents.  It's just not

16  happening.  So now they're trying to break it down into

17  pieces that are going to be downloaded to outside memory

18  storage and then transferred physically like that.  Or if

19  I want to try and produce a supplemental response, I may

20  be able to print some of it if we can download it to a

21  different source.  But from the server itself on our

22  cloud storage, we've been unable to get much of these

23  documents because they're just -- when we try and

24  download them, the whole thing seizes up and it's

25  incredibly frustrating.

Transcriptions Plus II, Inc.

16

Proceedings

1          Again, we did it last week and it had been

2    running over the weekend and into the following week.

3    This was our -- you know, this wasn't the first attempt

4    by far.  And it's just been incredibly frustrating.  And

5    now we're at the point where it has to be -- we may have

6    to actually figure out a way to download it to an outside

7    memory source without first downloading it to us.  And

8    it's extremely difficult and frustrating.

9          THE COURT:  What is the --

10          MR. FLYNN:  It's no fault of our own.  We're

11    trying our best.

12          THE COURT:  All right.  Mr. Flynn, in the

13    letter that you filed with the Court on October 5th, none

14    of this was described.  Did you know at that point?

15          MR. FLYNN:  Because at the time I was still

16    under the understanding that we were able to do that and

17    we were in the process of downloading.  I wasn't doing it

18    myself but was checking with my staff.  They advised me

19    that we were downloading and exchanging material, and we

20    have in fact been able to exchange a significant amount

21    of material, a significant portion of the file.

22          So it didn't come to my attention until after I

23    submitted that letter that this was such a difficult

24    endeavor given that, you know, we had already been able

25    to electronically transfer portions of the file.  But at

17

Proceedings

1   some point, it became either too voluminous or just for

2   whatever reason we were no longer able to transfer these

3   materials digitally through I think we're using Dropbox

4   or an equivalent program.  And now it's a matter of

5   having to download it physically to an external hard

6   drive and then transfer that.  But that attempt is just

7   beginning now and I don't know how successful it's going

8   to be.

9         I just don't want to -- personally, I don't

10  understand what the issue is but that's what the tech

11  company is here for.  It'll be expedited.  They're

12  handling it.  We brought them in as soon as we had the

13  issue.  They've been working on it for some time now and

14  that's where we are.

15        THE COURT:  And to what degree have you

16  conveyed this information to the plaintiff?

17        MR. FLYNN:  When it became known to me -- I've

18  been working on the issue instead of discussing it with

19  counsel because again, we were stepping back from the

20  day-to-day interaction and working with incoming counsel

21  to transfer the documents.  So I haven't conveyed it to

22  them until now.

23        THE COURT:  All right.  So --

24        MR. FLYNN:  Because it really is -- until

25  recently it wasn't my -- I had no idea the extent of this

18

Proceedings

1  problem and it was only after this hearing was scheduled

2  and frankly my time was better, I thought, better spent

3  trying to produce the documents and working with my staff

4  and the tech company trying to get what we needed to

5  include with our responses.  We have the drafted

6  essentially cover pages for the material and they're not

7  very big.  They're just in this file, in this server that

8  is essentially locked up from our standpoint.

9          THE COURT:  So the way electronically stored

10  information is handled in discovery is supposed to be a

11  collaborative effort because there are difficulties and

12  there are a roadblock and then there are solutions.  And

13  so the parties are supposed to stay in touch with each

14  other and mutually work out a solution.

15          So you should, and I will direct you going

16  forward, be in touch with the plaintiff to also let them

17  know of the difficulties you're having, number one, so

18  that they understand the timing issues that you are

19  confronting and they're not waiting for a response.

20          Number two, they can also help you troubleshoot

21  the issues that you're having so that you can come up

22  with a solution that makes the production of the

23  information as efficient and effective as possible.

24          So I don't know the nature of the exact problem

25  you're facing but the plaintiff might understand because

19

Proceedings

1   they might have a better idea of the type of information

2   they're seeking and the volume.  And there could be, for

3   example, adjustments to the way it's produced or the

4   volume of it or things of that nature.  But they don't

5   know how they can assist in this endeavor unless you let

6   them know the problems you're having.  So it is the

7   better practice for everybody to have these discussions.

8            I'm not saying to disclose, you know, the inner

9   workings of things that you don't have to expose, but it

10  is a collaborative process and people have different

11  ideas and different insights into how these things can

12  happen.

13           So Mr. Cook and Mr. Marks, do you know, do you

14  have any thoughts about this, or is it something that you

15  should just meet and confer with Mr. Flynn and Ms.

16  Carroll about going forward?

17           MR. COOK:  Your Honor, I think the plaintiffs

18  are certainly willing to proceed in whatever path the

19  Court deems is appropriate here.

20           However, sort of the sharing of this

21  information for the first time on this call is part of

22  sort of a broader pattern in our dealings with counsel

23  regarding discovery matters which I think are outlined

24  extensively in the filings that have been submitted to

25  the Court.  Even given the explanation on this call, it

20

Proceedings

1    is unclear to me whether Mr. Flynn is describing a

2    technical issue that applies to the transfer of the case

3    file between his firm and substituting counsel with Brach

4    Eichler, or whether that applies to the production of

5    discovery material from the Moshe and Alon defendants to

6    the plaintiffs.  None of this information has been

7    conveyed to us before.

8         And it is similar to Mr. Flynn and the Moshe

9    and Alon defendants raising for the first time in their

10    response at docket 451 the destruction of responsive

11    electronic information.  These issues have been

12    outstanding for 17 months and, you know, we have made

13    every attempt in good faith to resolve these issues

14    without judicial intervention.  We've encountered a

15    series of excuses and delays and it's what's brought us

16    here at present.  They have not yet supplemented their

17    documents or their written responses since August of last

18    year.

19         And in fact, in the submission to the Court,

20    they characterized the outstanding documents to be

21    produced as a very small number of documents.  I believe

22    they said it was five percent of the total documentation

23    produced by the Moshe Holding Companies which is really a

24    very small number of documents.  We are probably talking

25    about, you know, 1 to 2,000 documents tops.  So I'm not

21

Proceedings

1    sure how such a small volume of documentation could

2    generate such a significant technical issue,

3            And in any event, you know, the lack of

4    communication here I think between counsel obviously has

5    been a problem.  It's been a problem with the Court as

6    well as they have not I think advised the Court on their

7    inability to meet certain deadlines or dates by which

8    they will meet certain deadlines.

9            And in the plaintiff's response, which I know

10   it's sort of styled as a motion for sanctions, but it is

11   intended to respond to some of the issues raised in Mr.

12   Flynn's response to 451.  This is plaintiff's letter,

13   docket 454.  You know, we outline some of the concerns

14   that have arisen as a result of that response including

15   steps that we believe the parties and the non-parties

16   need to take to ensure the preservation of electronic

17   information in the case which by their own admission has

18   been spoliated, and additional steps that we believe are

19   necessary to better understand the scope of that

20   destruction and any efforts that were taken to preserve

21   that information.

22           So our position is that they have not shown

23   cause as to why they are not complying.  And in fact, the

24   issues that have come up for the first time in this

25   dialogue with the Court as a result of motion practice

22

Proceedings

1    have raised the need for additional remedial action from

2    the Court to ensure that discovery is being preserved and

3    is proceeding in an orderly fashion.

4            THE COURT:  All right.  And I think --

5            MR. MARKS:  Just to answer your -- I guess to

6    answer your question, we are more than happy to --

7            THE COURT:  Who's speaking?

8            MR. MARKS:  Jonathan Marks.  I apologize.

9    Yeah, I just wanted to answer your question sort of

10   directly.

11           We are more than happy to cooperate and work

12   with them but I think we are asking, and I think we do

13   need, given sort of the long history, we do need from the

14   Court a firm deadline with consequences that are very set

15   forth as to what will happen if the discovery is not

16   provided thereafter.

17           And then separately I think we do need the

18   Court to address this issue of the destruction of emails

19   which we can address separately.

20           THE COURT:  All right.  So as I mentioned

21   earlier, Mr. Flynn, you're still in the case so it is

22   still your responsibility to work with Ms. Carroll and

23   her firm to share the information that is necessary and

24   make the productions that are necessary.

25           I do not know the scope of the technical issues

23

Proceedings

1  and so I do not think it's wise for me to impose an

2  arbitrary deadline, but I think it should be an informed

3  deadline.

4         So I'm going to direct the Moshe/Alon

5  defendants through their counsel to confer with

6  plaintiff's counsel and fully describe what the problems

7  are and how long it's going to take, what steps you're

8  taking to rectify the problem, and then establish a

9  timetable for things to happen.  And then the parties can

10 jointly propose the time frame to the Court.  Then I can

11 so order some deadlines.  Okay.  So that's number one,

12        Number two, the issue of the destruction of the

13 emails.  Based on what I'm seeing, Mr. Cook and Mr.

14 Marks, and my understanding of the way spoliation works

15 isn't just that the emails were destroyed but you also,

16 if you're seeking sanctions for that destruction, would

17 have to show that these emails cannot be replaced for the

18 discovery.

19        So it is possible that if you can establish who

20 the internet service provider is that copies of the

21 emails still exist there.  So before you start seeking

22 sanctions, I suggest that you make sure that you've read

23 Rule 37(e) thoroughly to understand that there is also a

24 requirement that this information cannot be replaced.  So

25 I think you should at the very least be able to address

24

Proceedings

1   that.  And then also there will be a requirement that the

2   information that is lost is prejudicial.  So you know,

3   obviously these are things that you'll have to explore

4   more and perhaps you'll need to get information from the

5   defendant as to when these documents were destroyed.  You

6   said that's in the normal course of business but I didn't

7   see that stated in the letter, so I think that is

8   certainly fair for you to explore exactly when and how

9   these emails were destroyed.  But I think that the fact

10  that this issue has arisen makes it fair for both sides

11  to do discovery on that point.  And certainly you should

12  do that before you file motions.

13          And if you're seeking sanctions, you need to be

14  very specific as to the sanctions you're seeking.  Right?

15  So I'm not foreclosing a motion on that front, but I do

16  think that is beneficial for you and for both sides to

17  know fully what that will entail and what the

18  requirements will be before jumping to emails were

19  destroyed and therefore there should be sanctions.  All

20  right?  So --

21          MR. COOK:  Your Honor, this is Christopher

22  Cook.  If I could be heard?

23          THE COURT:  Yes.

24          MR. COOK:  As to the issue of spoliation, we

25  agree with your Honor.  If there are questions as to the

25

Proceedings

1    scope of spoliation that has taken place.  But as stated

2    in the response submitted to the Court, there has been

3    spoliation and I believe as plaintiffs attempted to lay

4    out in their letter submission to the Court at 454,

5    documents that we have obtained from third parties that

6    should have been produced by the defendants and non-

7    parties in this case are highly relevant to issues

8    alleged in the original complaint as well as the second

9    amended complaint.  And to the extent that they cannot be

10   recovered would be prejudicial.

11           The plaintiffs would respectfully request some

12   assistance from the Court in further inquiring as to the

13   scope and extent of spoliation that has taken place as

14   well as the ability to recover any of the spoliated

15   evidence either from ISP service or potentially from

16   third parties.

17           And one of the things that the plaintiffs have

18   requested is the ability to take limited depositions of

19   Mr. Moshe and Mr. Alon limited to the issues of

20   spoliation, preservation, and collection of responsive

21   discovery material in this action which would be separate

22   and apart from the depositions that the Court has already

23   entered and permitted the plaintiffs to proceed taking.

24           THE COURT:  All right.  So I've stated that

25   you're entitled to get discovery on this issue.  Whether

26

Proceedings

1    it takes the form of depositions or interrogatories you

2    can work out.  Certainly if depositions are necessary

3    because you're not getting the information that you need,

4    they are permitted as part of resolving this issue.  I

5    think there has been enough information raised as to

6    the -- I'll use the word destruction without any

7    judgment, but the destruction of the emails.  I think the

8    rules say the loss.  Right?  And so certainly you're

9    entitled to discovery on this issue.

10             As far as the -- you know, you've gotten some

11    of the emails through third parties and so as to those

12    emails, they have been replaced.  They're not lost.  As

13    to the emails that the third parties don't have, I raised

14    the issue of the ISPs and so you should have a discussion

15    as to what the proper ISP is, who it is, Google,

16    Microsoft, whoever it may be, so that you can subpoena

17    them to get the information from them.  And then if they

18    still exist there, then you have all those.  If you could

19    obtain the emails through the ISP, then that information

20    is not lost.  You been able to replace it and so there

21    wouldn't be sanctions under Rule 37(3).  All right?

22             As far as substantively, to the extent that

23    you're seeking them, monetary sanctions or whatever, you

24    can certainly consider those things.  But in terms of the

25    replacement, if you can replace that lost or destroyed

27

Proceedings

1   email, then the spoliation motion for sanctions pursuant

2   to that would not be applicable.  That's all I'm saying.

3        And the reason I raise it is I've seen a lot of

4   spoliation motions where it's clear that the information

5   was destroyed but it's not clear that it can't be

6   replaced through other means.  And if it can be replaced,

7   then under Rule 37(e), the Court doesn't impose the

8   sanctions set forth by that rule.

9        I just want the parties to have explored all

10  these things before filing the motion because, you

11  know -- I raise it again because I've seen it happen

12  quite a bit recently that people jump to say there's

13  spoliation and therefore there should be sanctions but

14  Rule 37(e), which granted is a fairly recent change,

15  imposes certain restrictions that people may not be very

16  conversant in or have not looked at carefully.  Okay?

17       So in response to your request or your inquiry,

18  the plaintiffs are entitled to discovery on this point of

19  destruction of the emails.  And if there should be other

20  points that come to light in terms of the destruction or

21  loss of information including electronically stored

22  information, you are entitled to get discovery for that.

23  And then what form that discovery takes, the parties

24  should work out and come to the Court only if you can't

25  agree on what form that discovery should take.  Okay?

28

Proceedings

1          MR. COOK:  Thank you, your Honor.  And just one

2    additional point I'd like to raise to the Court at this

3    time.

4          THE COURT:  Yes.

5          MR. COOK:  We understand that certain of the

6    emails can be obtained from third parties which is how

7    we've been able to show that ESI has indeed been

8    destroyed and the ESI is indeed relevant to the claims at

9    issue in this case.

10          Certain of the emails that we obtained were

11   negotiated for production through a third-party financial

12   institution and through those negotiations plaintiffs

13   agreed to bear certain costs associated with the

14   collection, the production of those documents.

15          As one part of our meet and confers with the

16   defendants going forward I believe that cost sharing and

17   shifting will be a portion of those discussions with the

18   defendants and it will be plaintiff's position in those

19   discussions that to the extent we're required to share in

20   costs of obtaining destroyed ESI from third parties, our

21   position will be that those costs are appropriately borne

22   by Moshe and Alon defendants.

23          And I understand the Court's guidance that, you

24   know, the parties should confer and it may be premature

25   to address that point now.  But I raised it just as a

29

Proceedings

1    preview that it may end up in filings before the Court in

2    the future.

3            THE COURT:  Yes.  And I anticipated that

4    because I said even if you're not entitled to sanctions

5    under Rule 37(e) for the actual spoliation of the ESI,

6    you could potentially seek costs.  Right?  And so that's

7    what you're talking about and certainly you can -- you

8    know, if you get to that point and you know what the

9    costs are and then there's a dispute as to who bears the

10   cost, you can certainly make that application to the

11   Court.  I didn't rule that out, but it is premature.

12           MR. COOK:  Thank you, your Honor.

13           THE COURT:  It's a topic for the parties to

14   discuss.  And if you can't agree on it, then it's

15   certainly something that the Court will rule on and

16   appropriately apportion the costs as appropriate

17   depending on what is presented to me.

18           All right.  So with regard to the Moshe/Alon

19   defendants, I'm directing the parties to confer as to the

20   ongoing technical issues that Mr. Flynn raised and try to

21   resolve them and then come up with a timetable that will

22   be filed with the Court so that I can consider and enter

23   some deadlines for production of the information.

24           And then as far as the emails and all those

25   kinds of things, as far as the spoliation, the plaintiffs

30

Proceedings

1   are entitled to get discovery on that issue so that they

2   can lay the groundwork for a motion for spoliation or for

3   costs as appropriate.  So I think those are the issues

4   that are outstanding at this point.

5         I know there is still that sanction issue.  Let

6   me just see.  But I don't think that's the topic of our

7   discussion today.  So I think I'll just leave it at that.

8         Were there any other issues?  Because we have

9   another -- I scheduled back-to-back conferences and I

10  understand the parties are currently on the call for the

11  next set of issues with the Gabriel & Shapiro LLC.  But

12  as far as the Moshe/Alon defendants' discovery issues,

13  Mr. Cook or Mr. Marks, was there anything else you wanted

14  to bring up today?

15        MR. COOK:  Your Honor, as to the Court's order

16  that the parties meet and confer as to the ongoing

17  technical issues and other issues that the Court has

18  raised, we would just request that the Court enter a firm

19  date by which the parties must meet and confer.  For

20  example, within seven days or so of the order.

21        THE COURT:  Yes, absolutely.  I mean I would

22  like for you to meet today if you could.  I just don't

23  know what the delay is.  But I'm going to say as soon as

24  possible but no later than November 6th.

25        MR. MARKS:  Thank you, your Honor.

31

Proceedings

1    THE COURT:  Is there any reason that can't
2  happen, Ms. Carroll?
3    MR. FLYNN:  This is Neil Flynn.  No, your
4  Honor.
5    MS. CARROLL:  Your Honor --
6    THE COURT:  I'm sorry, Ms. Carroll?
7    MS. CARROLL:  Not from my end, Judge.
8    THE COURT:  Okay.  Great.  And Mr. Flynn?
9    MR. FLYNN:  No, your Honor.  I think that's
10  reasonable.
11    THE COURT:  Okay.  Very good.  So you should do
12  that.  And then I would like to have a filing I'll just
13  say by the next day.  So November 7th, I would like to
14  get a joint letter letting me know the results of that
15  meet and confer.  Hopefully, you will have worked out a
16  time frame but if not, you can give me a deadline by
17  which you will give me a time frame.
18    All right.  So Ms. Carroll, is there anything
19  else you would like to raise?
20    MS. CARROLL:  Not on this issue, Judge.
21    THE COURT:  All right.  And Mr. Flynn?
22    MR. FLYNN:  No, your Honor.  Thank you.
23    THE COURT:  All right.  So let's move on to the
24  other conference.  It's the same case, so I don't think
25  we need to re-call the case.  And let me just take a

32

Proceedings

1    look.  Ms. Carroll, you are also appearing in this case

2    for Gabriel & Shapiro, correct?

3             MS. CARROLL:  That's correct, Judge.

4             THE COURT:  Okay.  Very good.  So the issues

5    here were raised I see at 464 was a response to what was

6    filed at 456.  Since the plaintiffs did not have a chance

7    to respond to that, I will also start with Mr. Cook and

8    Mr. Marks on that, on issues that were raised were with

9    regard to Gabriel & Shapiro.

10            MR. COOK:  Thank you, your Honor.

11            MR. FLYNN:  Your Honor, this is -- excuse me

12   one second.  Unless the Court has any more need of me --

13            THE COURT:  Mr. Flynn, are you asking to be

14   excused?

15            MR. FLYNN:  I'm sorry, your Honor?

16            THE COURT:  I didn't hear what you said.

17            MR. FLYNN:  Yes, I am.

18            THE COURT:  Okay.  If you don't --

19            MR. FLYNN:  If the Court has -- I don't have

20   anything --

21            THE COURT:  If you're not involved --

22            MR. FLYNN:  -- (inaudible) --

23            THE COURT:  If you are not involved with the

24   Gabriel & Shapiro issue and you want to be excused, you

25   may be excused.  You're free to stay if you think that

33

Proceedings

1    your presence will be helpful.

2              MR. FLYNN:  Thank you, your Honor.  I have no

3    issues with this.

4              THE COURT:  All right.

5              MR. FLYNN:  Be well, everyone.

6              THE COURT:  All right.  So Mr. Cook or Mr.

7    Marks, let me hear you on the Gabriel & Shapiro issue.

8              MR. COOK:  Thank you, your Honor.  The

9    plaintiffs had an opportunity to meet and confer with Ms.

10   Carroll on two occasions since she filed her response on

11   the order to show cause relating to Gabriel & Shapiro.

12   Based on her filing and our communications, plaintiffs'

13   understanding is that the only issue that remains

14   outstanding as to the subpoenas concerns the production

15   of electronically stored information, and in particular,

16   the question as to what should be collected and who

17   should bear the cost of collecting that ESI.

18             We are continuing to have conversations with

19   Ms. Carroll regarding both the process and the estimated

20   costs.  There are some outstanding questions as to what

21   that process looks like and what the costs are associated

22   with that process.

23             State Farm's position is that we can't

24   currently evaluate our position as to whether Gabriel &

25   Shapiro has complied and who should bear those costs

34

Proceedings

1   until we have this additional information.  We would

2   respectfully request that the Court order Gabriel &

3   Shapiro to submit estimates on costs and information

4   relating to the process of collecting and reviewing

5   outstanding electronically stored information within 14

6   days of today and that the parties very shortly

7   thereafter meet and confer regarding those open questions

8   and submit a joint letter to the Court advising the Court

9   on the status of the dispute.  And that would be within

10  21 days of today.

11         THE COURT:  Okay.  Thank you.  Ms. Carroll, do

12  you want to respond to that?

13         MS. CARROLL:  No, I concur with that, your

14  Honor.

15         THE COURT:  Okay.  Very good.  So I will order

16  that the parties confer -- well, I'll order that Gabriel

17  & Shapiro share what the estimated costs will be with

18  plaintiffs no later than November 14th.  And then no

19  later than November 21st two meet and confer.  And then

20  if there are any issues you need the Court to be involved

21  in that you file something no later than November 29th.

22  All right?  So I think that should give you a good time

23  frame for figuring out the costs.

24         If you can agree on how you're going to share

25  the costs or who's going to bear the cost, then you don't

35

Proceedings

1  need to file anything with the Court by November 29th.

2  But if there is a disagreement, then you should file that

3  letter so I can see what the problem is and try to

4  resolve it quickly.

5          All right.  So Mr. Cook, anything further on

6  that issue?

7          MR. COOK:  No, your Honor.  Thank you.

8          THE COURT:  And Ms. Carroll, anything from you?

9          MS. CARROLL:  No, your Honor.  Thank you.

10         THE COURT:  All right.  Good.  So that was

11  simple.  Thank you.  But the parties should continue to

12  work and to discuss things.  Ms. Carroll, I appreciate

13  that you are fairly new to this case, at least as far as

14  the representation of the Moshe/Alon defendants.  But as

15  I told Mr. Flynn, he is still on the case until such time

16  that any request to be -- granted leave to be released as

17  counsel is granted.  And so you need to work closely with

18  him and stay in touch with opposing counsel and keep them

19  updated so that they know what's going on and that you

20  can quickly bring disagreements to the Court's attention

21  that are up to date with the most up-to-date information

22  possible.  All right?

23         I also think there's a lot of cooperative

24  problem solving that can occur but counsel need to take

25  the initiative and participate in good faith in that

36

                              Proceedings

1    process.  So please do that.

2              MS. CARROLL:  I appreciate that, Judge.  I

3    completely understand.

4              THE COURT:  Okay.  So Mr. Cook, anything

5    further for today?

6              MR. COOK:  Nothing from plaintiffs.

7              THE COURT:  All right.  Ms. Carroll, anything

8    else from you?

9              MS. CARROLL:  Nothing for me either, your

10   Honor.

11             THE COURT:  Okay.  And then Ms. Schindel, you

12   haven't been saying anything.  There hasn't been any

13   issues that have affected your client, but since you're

14   here I'll hear if you have anything you want to raise

15   with the Court?

16             MS. SCHINDEL:  I do not, your Honor.  I was,

17   like I said, just listening in just to see everyone's

18   positions and what was going on today.  But thank you for

19   the opportunity.

20             THE COURT:  Great.  Thank you, everybody.  This

21   conference is adjourned.

22                         (Matter concluded)

23                              -oOo-

24

25

37

C E R T I F I C A T E

I, MARY GRECO, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this **21st** day of March, 2024.

_Mary Greco_
Transcriptions Plus II, Inc.