*Exhibit 2*

Case 1:21-cv-05523-MKB-PK Document 730-2 Filed 04/13/26 Page 2 of 111 PageID #: 11429

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---------------------------------------------------------------------------X

AMERICAN TRANSIT INSURANCE COMPANY, a
Subsidiary of AMERICAN T, INC.,

                Plaintiff,

     -against-

PETER D. ALBIS, D.C., REUVEN ALON aka ROB ALON, DIANA
BEYNIN, D.C., NACHMY BRONSTEIN, D.C., RONALD A.
HAYEK, D.C., MARK HEYLIGERS, D.C., TODD KOPPEL, M.D.,
MARGARITA MOSHE, REGINA MOSHE aka REGINA
LEVIYEV, M.D., YAN MOSHE aka YAN LEVIYEV,
RAMKUMAR PANHANI, M.D., DIPTI R. PATEL, D.C., LEONID
SHAPIRO, M.D., ADVANCED SPINAL CARE REHABILITATION,
PA, ALBIS CHIROPRACTIC CARE, P.C., AXIS CHIROPRACTIC
CARE, P.C., CITIMED SERVICES, P.A., CITIMEDICAL I, P.L.L.C.,
COLUMBUS IMAGING CENTER, L.L.C., DRUGS R US
PHARMACY, INC., DYNAMIC SURGERY CENTER, L.L.C.,
DYNASTY MEDICAL CARE, P.C., EXCEL SURGERY CENTER,
L.L.C., GARDEN STATE PAIN MANAGEMENT, P.A., METRO
PAIN SPECIALISTS PROFESSIONAL CORPORATION, PREMIER
HEALTH CHOICE CHIROPRACTIC, P.C., UNION WELLNESS
CENTER, L.L.C., JOHN DOES 1-3 and ABC CORPS. 1-3,

                Defendants.

---------------------------------------------------------------------------X

**SUMMONS**

**Index Number:**

**Date Index No.
Purchased:**

To the above named Defendants:

     You are hereby summoned and required to serve upon Plaintiff's attorney an answer to

the verified complaint in this action within 20 days after the service of this summons, exclusive

of the day of service, or within 30 days after the service is complete if the service is not

personally delivered to you within the State of New York. In the case of your failure to answer,

Judgment will be taken against you by default for the relief demand within this complaint.

Case 1:21-cv-05523-MKB-PK   Document 730-2   Filed 04/13/26   Page 3 of 111 PageID #: 11430

The basis of the venue designated in New York County is that the Plaintiff AMERICAN TRANSIT does business in this County, where the Defendant Metro Pain is registered with the Secretary of State and Defendants Heyligers, Panhani, Dr. Moshe, Citimed NY and Dynasty also maintain offices in New York County.

Dated: New York, New York
      December 27, 2018

SHORT & BILLY, P.C.

By _____
    Ioanna Zevgaras
    Skip Short
    Attorneys for Plaintiff
    217 Broadway
    New York, New York 10007
    (212) 732-3320

TO:

PETER D. ALBIS, D.C.
57 Thistle Lane
Hopewell Junction, New York 12533

REUVEN ALON
78 Oak Trail Road
Hillsdale, New Jersey 07642

NACHMY BRONSTEIN, D.C.
112-17 68th Road
Forest Hills, New York 11357

RONALD A. HAYEK, D.C.
74 Douglas Drive
Towaco, New Jersey 07082

MARK HEYLIGERS, D.C.
154 East 85th Street
New York, New York 10028

TODD KOPPEL, M.D.

Case 1:21-cv-05523-MKB-PK     Document 730-2     Filed 04/13/26     Page 4 of 111 PageID
#: 11431

80 Riverside Blvd. Apt. 11L
New York, New York 10069

MARGARITA MOSHE
32 Farmstead Lane
Glen Head, New York 11545

REGINA MOSHE aka REGINA LEVIYEV, M.D.
32 Farmstead Lane
Glen Head, New York 11545

YAN MOSHE aka YAN LEVIYEV
32 Farmstead Lane
Glen Head, New York 11545

RAMKUMAR PANHANI M.D.
226-48 76TH AVE
Bayside, New York 11364

DIPTI R. PATEL, D.C.
261-15 69th Avenue
Floral Park, New York 11004

LEONID SHAPIRO, M.D.
457 Lewelen Circle
Englewood, New Jersey 07631

ADVANCED SPINAL CARE REHABILITATION, PA
321 Essex Street
Hackensack, New Jersey 07601

ALBIS CHIROPRACTIC CARE, P.C.
c/o New York Secretary of State
99 Washington Avenue, 6th Floor
Albany, New York 12231

AXIS CHIROPRACTIC CARE, P.C.
c/o New York Secretary of State
99 Washington Avenue, 6th Floor
Albany, New York 12231

CITIMED SERVICES, P.A.
c/o Russel Friedman & Associates
829 Main Street
Hackensack, New Jersey 07601

Case 1:21-cv-05523-MKB-PK    Document 730-2    Filed 04/13/26    Page 5 of 111 PageID #: 11432

CITIMEDICAL I, P.L.L.C.
c/o New York Secretary of State
99 Washington Avenue, 6th Floor
Albany, New York 12231

COLUMBUS IMAGING CENTER, L.L.C.
481 N. 13TH STREET
Newark, New Jersey 07107

DRUGS R US PHARMACY, INC.
c/o New York Secretary of State
99 Washington Avenue, 6th Floor
Albany, New York 12231

DYNAMIC SURGERY CENTER, L.L.C.
321 Essex Street
Hackensack, New Jersey 07601

DYNASTY MEDICAL CARE, P.C.
c/o New York Secretary of State
99 Washington Avenue, 6th Floor
Albany, New York 12231

EXCEL SURGERY CENTER, L.L.C.
321 Essex Street
Hackensack, New Jersey 07601

GARDEN STATE PAIN MANAGEMENT, P.A.
118 N. Bedford Road, Ste. 200
Mount Kisco, New York 10549

METRO PAIN SPECIALISTS PROFESSIONAL CORPORATION
c/o Vladimir Begun CPA
1 Bridge Plaza North, Ste. 275
Fort Lee, New Jersey 07024

PREMIER HEALTH CHOICE CHIROPRACTIC, P.C.
c/o New York Secretary of State
99 Washington Avenue, 6th Floor
Albany, New York 12231

UNION WELLNESS CENTER, L.L.C.
169 Union Blvd.
Totowa, New Jersey 07512

Case 1:21-cv-05523-MKB-PK   Document 730-2   Filed 04/13/26   Page 6 of 111 PageID #: 11433

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-----------------------------------------------------------------------------------X
AMERICAN TRANSIT INSURANCE COMPANY, a
Subsidiary of AMERICAN T, INC.,

**VERIFIED
COMPLAINT**

Plaintiff,

-against-

PETER D. ALBIS, D.C., REUVEN ALON aka ROB ALON, DIANA
BEYNIN, D.C., NACHMY BRONSTEIN, D.C., RONALD A.
HAYEK, D.C., MARK HEYLIGERS, D.C., TODD KOPPEL, M.D.,
MARGARITA MOSHE, REGINA MOSHE aka REGINA
LEVIYEV, M.D., YAN MOSHE aka YAN LEVIYEV,
RAMKUMAR PANHANI, M.D., DIPTI R. PATEL, D.C., LEONID
SHAPIRO, M.D., ADVANCED SPINAL CARE REHABILITATION,
PA, ALBIS CHIROPRACTIC CARE, P.C., AXIS CHIROPRACTIC
CARE, P.C., CITIMED SERVICES, P.A., CITIMEDICAL I, P.L.L.C.,
COLUMBUS IMAGING CENTER, L.L.C., DRUGS R US
PHARMACY, INC., DYNAMIC SURGERY CENTER, L.L.C.,
DYNASTY MEDICAL CARE, P.C., EXCEL SURGERY CENTER,
L.L.C., GARDEN STATE PAIN MANAGEMENT, P.A., METRO
PAIN SPECIALISTS PROFESSIONAL CORPORATION, PREMIER
HEALTH CHOICE CHIROPRACTIC, P.C., UNION WELLNESS
CENTER, L.L.C., JOHN DOES 1-3 and ABC CORPS. 1-3,

Defendants.
-----------------------------------------------------------------------------------X

The Plaintiff American Transit Insurance Company, a subsidiary of American T, Inc., by

and through their attorneys, Short & Billy, P.C, for their Verified Complaint in this action, hereby

alleges as follows:

## Background and Introduction

1.      The State of New York has provided for no-fault automobile insurance as a form

of coverage designed to be useful to the consumer and to provide medical coverage, lost wages

and other benefits to people injured in automobile accidents so that they can recover from their

1

Case 1:21-cv-05523-MKB-PK   Document 730-2   Filed 04/13/26   Page 7 of 111 PageID #: 11434

injuries with minimal disruption in their lives. For approximately twenty years, commencing with its inception in 1974, the no-fault system functioned to the benefit of the consumer at premiums that were generally affordable.

2.      Since the mid-1990s New York's no-fault coverage has been targeted by perpetrators of fraud. An increasingly large number of such persons have gone into business with the purpose of abusively billing the New York no-fault system. The New York Court of Appeals commented in upholding changes to the Insurance Department's No-Fault regulations that the No-Fault system has been targeted by and is permeated with fraud. As the Court of Appeals explained in *Matter of Medical Society of New York v. Serio*, 100 N.Y.2d 854, 768 N.Y.S.2d 423 (2003), the fraud has included staged accidents, billing for unnecessary services and organized crime involvement. Id. at 861-62, 768 N.Y.S.2d at 731.

3.      The problem continues to the present, as the Department of Financial Services (formally the New York State Insurance Department) set forth in its March 15, 2016 Health Care Insurance Fraud Report. The report detailed the facts that health care fraud has serious adverse impacts on the public and consumers. The Department set forth that this fraud includes billing for services that were not provided and billing for unnecessary services. According to the Department, no-fault fraud constituted the majority of all health care fraud in New York. The Department set forth that insurers are required to investigate fraud and to have a plan for the investigation and initiation of civil actions. In the transmittal of this Report to the Governor, the Department set forth that no-fault insurance fraud costs the public in New York "hundreds of millions of dollars" in insurance costs. The abusive practices set forth herein, not only drive up the cost of insurance, they place in peril the quality of health care available to the public.

2

INDEX NO. 656455/2018
RECEIVED NYSCEF: 12/27/2018

Case 1:21-cv-05523-MKB-PK     Document 730-2     Filed 04/13/26     Page 8 of 111 PageID #: 11435

4.     The Department of Financial Services has also specifically expressed its concern with schemes that bring patients across State lines and submit billing in excess of the fee schedule.  The Department of Financial Services has gone on record as finding this practice to contain the potential for abuse and for depletion of the insured's coverage.

5.     The situation has become so grave that in a pronouncement that applies fully to the Defendants, the Department of Financial Services stated on October 10, 2017, that "certain providers have assumed a practice of charging the prevailing fee, or more, in their geographical location outside of New York, which exceeds New York limits and is believed to lead to inflated claims, depleted coverage, increased litigation and higher premiums."  The Department of Financial Services further expressed its concern that "New York residents eligible for no-fault benefits for their physical injuries often are influenced to seek healthcare services from non-New York providers that engage in such practice."

6.     Pursuant to its obligations under Article 4 of the New York Insurance Law, the Plaintiff, American Transit Insurance Company, has filed this action to remedy a pattern of serious fraud that has a significant impact on the public and consumers.

7.     The Defendants have exploited and abused the No-fault system and have engaged in abusive practices seeking to take advantage of insurers, patients, and the New York No-fault system. The Defendants submitted fraudulent claims. They have misrepresented both the injuries and medical findings of patients in order to inflate and fraudulently bill the Plaintiff. They improperly billed for medically unnecessary services, and they often billed for fictitious services that are not rendered as billed. Indeed, in many cases the services billed for are incompetent and the practices of the Defendants can endanger the welfare of their patients.

3

8.    The Defendants have engaged in a fraudulent scheme whereby they identify New York injured residents and transport them across state lines to New Jersey for cost inflated and often medically unnecessary surgeries pursuant to illegal patient referrals from financially related entities.

9.    Two of the named Defendants, Todd Koppel M.D. and Garden State Pain Management, P.A., were recently indicted by the State of New Jersey. According to the State of New Jersey, Koppel employed runners and paid cash kickbacks to five chiropractors as payment for more than 790 referrals. Attorney General Gurbir S. Grewal and the Office of the Insurance Fraud Prosecutor announced that Koppel was charged with first-degree conspiracy and money laundering, second-degree misconduct by a corporate official, four counts of healthcare fraud and other charges for allegedly submitting more than $4.4 million in fraudulent bills to insurance companies that netted him more than $500,000 in a medical kickback fraud scheme he operated. Three of the chiropractors involved admitted to receiving kickbacks from Koppel and pled guilty to being involved with kickback schemes. The Acting Insurance Fraud Prosecutor Christopher Iu said that "Medical kickback schemes like this are a form of insurance fraud that spreads like a cancer throughout the healthcare industry, putting more and more unsuspecting patients into the hands of doctors who use them as cash cows to drive up billable services."

10.    Attorney General Gurbir S. Grewal stated that Koppel "not only stole hundreds of thousands of dollars from insurance companies, He deprived patients of their right to be treated by doctors whose medical decisions were not clouded by unadulterated greed."

11.    The New York State Workers' Compensation Board has temporarily suspended the Defendants Todd Koppel, M.D. and Ramkumar Panhani, M.D. from treating injured workers in order to protect the patients.

4

Case 1:21-cv-05523-MKB-PK    Document 730-2    Filed 04/13/26    Page 10 of 111 PageID #: 11437

12.    The Defendants Ronald A. Hayek, D.C. and Union Wellness Center, L.L.C., have submitted fraudulent billing and have engaged in illegal referral practices. The Defendant Hayek has been prosecuted by the State of New Jersey and pled guilty for involvement in a scheme that included money laundering and payoffs to referring providers.

13.    In his plea allocution, the Defendant Hayek pled guilty and told the Court that for a period of approximately ten years, the Defendant Koppel directly made cash payments to him in exchange for patient referrals. In an examination under oath, the Defendant Hayek also admitted that he referred patients to Koppel and rented office space at Union Wellness to Koppel in the amount of $500 a month.

14.    In the words of the Department of Financial Services, the Defendants in this case have repeatedly "influenced" New York residents to have health care services in New Jersey. Again and again New York residents have been brought across State lines to New Jersey not knowing why they were sent there. The patients are never told that the actual reason they are brought out of State is for the Defendants to obtain compensation pursuant to an illegal referral scheme and to submit excessive billing that will deplete their no-fault benefits faster. The patients are not advised that the services performed could and should be performed in an. Office Based Surgery Practice ("OBSP") where the billing would not be as high; and the Defendants never appear to disclose to New York residents how much more of their benefits will be depleted by having the services performed in another State.

15.    The Defendants Hayek, Ramkumar Panhani, M.D., Reuven Alon, Mark Heyligers D.C., Regina Moshe, M.D., Leonid Shapiro, M.D., Todd Koppel, M.D. and their companies conspired with the Defendants Yan and Margarita Moshe, Excel Surgery Center, L.L.C., Dynamic Surgery Center, L.L.C. and other Defendants to bill American Transit for services that

5

are rendered as part of an illegal referral scheme in which excessive fees are billed and medically unnecessary services are provided to increase billing.

16.     The Defendants have submitted or assisted in submitting claims to American Transit for procedures and surgeries performed on New York residents at New Jersey Ambulatory Surgery Centers ("ASC").  In many instances, the New Jersey providers offered free transportation to unnecessarily transfer the claimants to New Jersey which is often a significant distance from their homes.

17.     The referring providers have financial relationships with the owners of the New Jersey ASCs. Some of the referring providers are blood relatives of the owners of the ASCs. Cooperating intermediaries were utilized to disguise the referrals. In other instances the referring providers lease office space at the ASCs and other properties owned by the owners of the New Jersey ASCs.

18.     The Defendants have utilized a referral network that is an elaborate system of financially interrelated professional and non-professional persons and entities. Beyond the illegal referral networks and the improper billing at the ASC, the Defendants have additionally perpetrated numerous other schemes to bill abusively and defraud the Plaintiff.

19.     The Defendant Columbus Imaging Center, L.L.C., its owner Defendant Reuven Alon, the Defendant Yan Moshe and non-party Richard Lipsky conspired to form a network in which they, as non-medical professionals, could share in professional fees. These parties obtained a share of these fees by leasing office space to professional entities within the network.

20.     All of the professional and non-professional Defendants are part of a larger

6

Case 1:21-cv-05523-MKB-PK Document 730-2 Filed 04/13/26 Page 12 of 111 PageID #: 11439

network named Beshert Corp. which is also owned by the Defendant Alon. Beshert Corp. refers patients to medical facilities within its network. The providers within the network then cross-refer patients to one another and profit from the illegal stream of patient referrals between the interrelated entities. This scheme provides a means for non-professionals to control patient referrals and to profit from such referrals.

21. In furtherance of the referral scheme, several of the Defendants that were part of the Beshert network also engaged in or assisted in falsifying records.

22. The Defendant Columbus Imaging Center, L.L.C. and its owner Defendant Reuven Alon exaggerated injuries and falsified MRI results to support findings of injuries, causation and necessity. These false findings facilitated other Defendants to bill for unnecessary procedures and established fake grounds for surgeons to refer patients to the Defendant ASCs where medical necessity and causality did not exist.

23. The Defendant ASCs used and submitted falsified operative reports and brought in the Defendants Metro Pain and/or Citimed NJ to provide additional medically unnecessary services and unnecessary anesthesia.

24. The Defendant chiropractors performed unnecessary manipulation under anesthesia ("MUA") that was performed upon huge numbers of patients without regard to diagnosis, symptoms, necessity or utility in furtherance of treatment. The Defendant chiropractors, together with the Defendant ASCs, billed for conditions that the patients did not have and subjected the patients to unnecessary anesthesia. MUA is a service that involves the administration of anesthesia to the patient and therefore subjects patients to the risks of anesthesia, including death. Doing so without necessity in order to inflate the billing is a serious abuse.

7

Case 1:21-cv-05523-MKB-PK    Document 730-2    Filed 04/13/26    Page 13 of 111 PageID #: 11440

25. The Defendants Albis, Beynin, Bronstein, Hayek, Patel and their chiropractic practices, have referred patients to the Defendant ASCs for MUA. These Defendants and the Defendant ASCs where the MUA is performed, regularly billed for services for alleged conditions that the patients do not have and without regard to diagnosis, symptoms, necessity or furtherance of treatment. They repeatedly billed for treatment of a pelvic ring fracture on patients who have no such fracture.

26. While MUA is a substantial scheme involving a great sum of money in abusive and fraudulent billing, the Defendants engaged in a variety of other schemes designed to inflate their improper, abusive and fraudulent billing.

27. In most of the claims that the Plaintiff has received from the Defendant ASCs, New York patients are transported across state lines and the Defendant ASCs submit excessive billing for facility fees. The health provider Defendants separately billed the actual services and anesthesia. Anesthesia services were initially improperly billed by the Defendant Excel. A New Jersey ASC cannot bill for anesthesia.

28. Many of the services billed by the Defendant ASCs do not require anesthesia and should not be billed as ambulatory surgery at all. Most services that the ASCs billed for could have been performed at an OBSP where the billing would not be as high and there would be no charges in New York for facility fees. The facility charges are added to the billing and hugely inflate the cost to the Plaintiff and to the injured parties' insurance benefits. The patients are being transported across state lines to ASCs for services that can be performed at an OBSP not because it is necessary for their care; rather they are brought to another State so that the Defendants can inflate the billing.

29. The Defendants have engaged in an illegal referral scheme in which the patients

8

Case 1:21-cv-05523-MKB-PK    Document 730-2    Filed 04/13/26    Page 14 of 111 PageID #: 11441

were passed to related financial entities and inflated and excessive billing was submitted. The Defendants' practices are against the interests of the very patients/assignors they purport to provide services to. Inflating billing for fictitious services depletes the patients' mandatory accident coverage limits, reducing what would be left for other expenses including lost wages.

30. The Defendants have repeatedly targeted New York residents who had been allegedly injured in accidents in New York and appeared to be covered by New York insurers including the Plaintiff. Pursuant to illegal referrals, the Defendants had patients transported to New Jersey in order to avoid New York's fee schedule and then submitted inflated billing. The excessive billing of the Defendants could have exhausted the insurance coverage, or reduced what would be left for other expenses including lost wages. Bringing the patients to another state far from their homes for unnecessary services including the risk of death which is associated with the administration of anesthesia, placed the patients at risk without regard to the welfare of the patients.

31. There is no possible justification for the abusive pattern of billing and referrals in these claims. As such, the practices the Defendants have engaged in are not only fraudulent, against the interests of the consumer and the general public, they are against the interests of the very patients/assignors these Defendants claim to be treating. The Defendants engaged in a fraudulent scheme that is tantamount to an assault against the well-being of the patients, the premium paying public, the insurers including the Plaintiff, the public of the State of New York and the professions of medicine and chiropractic.

32. The no-fault system is designed to provide compensation for health care expenses and to process claims quickly. As a consequence, the submission of bills for facially valid services will often result in payment from a no-fault insurer. The Defendants have taken

9

advantage of this system to submit and receive payment for fraudulent billing. The Defendants' practices have been relentless.

33.      This action is brought to recover expenses incurred and payments made by American Transit for no-fault claims that were improperly billed, intentionally misrepresented, provided pursuant to an illegal referral scheme, provided in violation of State licensing requirements, medically unnecessary and/or never rendered as billed. American Transit also seeks a declaratory judgment that American Transit is not required to pay any no-fault claims of the Defendants because of: (1) their licensing violations; (2) their fraudulent billing practices and billing for services that were not provided and/or were not medically necessary; (3) the Defendants' self-referral practices and violations of the New York Public Health Law and New Jersey law; (4) the Defendants' violation of the fee schedule; and (5) the Defendants' billing for the services of independent contractors.

34.      As a result of Defendants' actions alleged herein, American Transit was defrauded in an amount in excess of $5,603,996.83 the exact amount to be determined at trial, in payments which the Defendants received for fraudulent billing and costs as a result of the fraudulent billing. American Transit has received over $28 million in billing from the Defendants and American Transit seeks a declaration that no payments are due to the Defendants on these claims.  American Transit seeks to recover the expenses incurred and payments it has made for all claims paid and expenses incurred in the past six years including services that the Defendants never rendered, or were not entitled to bill for or that they knew or should have known were not medically necessary or were so improperly billed and performed as to be useless and of no value.

### The Parties

**Plaintiff**

10

Case 1:21-cv-05523-MKB-PK   Document 730-2   Filed 04/13/26   Page 16 of 111 PageID #: 11443

35.     The Plaintiff American Transit Insurance Company, (hereinafter referred to as "American Transit") was, and still is a subsidiary of American T., Inc., a corporation formed under the laws of the State of New York which is doing business in the County of New York, State of New York.

**Individual Defendants**

36.     The Defendant Peter D. Albis, D.C. (hereinafter referred to as "Albis") is a resident of the State of New York and is licensed by the States of New York and New Jersey to practice the profession of chiropractic. He is the owner of the Defendants Advanced Spinal Care Rehabilitation, PA, Albis Chiropractic Care, P.C., Axis Chiropractic Care, P.C. and Premier Health Choice Chiropractic, P.C.

37.     The Defendant Reuven Alon aka Rob Alon, (hereinafter referred to as "Alon") is a resident of the State of New Jersey and is the owner of the Defendant Columbus Imaging Center, L.L.C. and non-party Beshert Corp.

38.     The Defendant Diana Beynin, D.C. (hereinafter referred to as "Beynin") is a resident of the State of New Jersey and is licensed by the States of New York and New Jersey to practice the profession of chiropractic.

39.     The Defendant Nachmy Bronstein, D.C. (hereinafter referred to as "Bronstein") is a resident of the State of New York and is licensed by the States of New York and New Jersey to practice the profession of chiropractic.

40.     The Defendant Ronald A. Hayek, D.C. (hereinafter referred to as "Hayek") is a resident of the State of New Jersey and has been licensed by the States of New York and New Jersey to practice the profession of chiropractic.  He is the owner of the Defendant Union

11

Case 1:21-cv-05523-MKB-PK Document 730-2 Filed 04/13/26 Page 17 of 111 PageID #: 11444

Wellness Center L.L.C. His present license status in New Jersey is inactive and in New York it is not registered.

41. The Defendant Mark Heyligers D.C. (hereinafter referred to as "Heyligers") is a resident of the State of New York and has been licensed by the State of New York to practice the profession of chiropractic. His present license status in New Jersey is pending.

42. The Defendant Todd Koppel, M.D., (hereinafter referred to as "Koppel") is a resident of the State of New York, County of New York and is licensed by the States of New York and New Jersey to practice the profession of medicine. He is the owner of the Defendant Garden State Pain Management, P.A.

43. The Defendant Margarita Moshe (hereinafter referred to as "Margarita" is a resident of the State of New York and is licensed by the State of New York to practice the profession of pharmacy. Margarita is married to the Defendant Yan Moshe and is part owner of the Defendant Excel. Margarita owns the Defendant Drugs R Us Pharmacy, Inc. located at 1963 Grand Concourse, Bronx, NY.

44. The Defendant Regina Moshe, M.D. (hereinafter referred to as "Dr. Moshe") is a resident of the State of New York and is licensed by the States of New York and New Jersey to practice the profession of medicine. She is the owner of the Defendants Citimedical I P.L.L.C. and Citimed Services, P.A. Upon information and belief she is also the true owner of the Defendant Dynasty Medical Care, P.C. She is related to the Defendant Yan Moshe and she goes by the alias Regina Leviyev.

45. The Defendant Yan Moshe (hereinafter referred to as "Moshe") is resident of the

12

Case 1:21-cv-05523-MKB-PK    Document 730-2    Filed 04/13/26    Page 18 of 111 PageID #: 11445

State of New York. He is not a licensed health provider. He is the owner of the Defendants Excel Surgery Center, L.L.C. and Dynamic Surgery Center, L.L.C. Moshe is related to the Defendant Dr. Moshe and he goes by the alias Yan Leviyev.

46.    The Defendant Ramkumar Panhani, M.D. (hereinafter referred to as "Panhani") is a resident of the State of New York and is licensed by the State of New York to practice the profession of Medicine. He is the owner of record of the Defendant Dynasty Medical Care, P.C. which is controlled by Dr. Moshe.

47.    The Defendant Advanced Spinal Care Rehabilitation, P.A. (hereinafter referred to as "Advanced Spinal") is a professional association organized under the laws of the State of New Jersey and owned by the Defendant Albis.

48.    The Defendant Leonid Shapiro, M.D. (hereinafter referred to as "Shapiro") is a resident of the State of New Jersey and is licensed by the States of New York and New Jersey to practice the profession of medicine. He is the owner of the Defendant Metro Pain Specialists Professional Corporation.

**Corporate Defendants**

49.    The Defendant Advanced Spinal Care Rehabilitation, P.A. (hereinafter referred to as "Advanced Spinal") is a professional association organized under the laws of the State of New Jersey and owned by the Defendant Albis.

50.    The Defendant Albis Chiropractic Care, P.C. (hereinafter referred to as "Albis Chiro") is a professional corporation organized under the laws of the State of New York and owned by the Defendant Albis.

51.    The Defendant Axis Chiropractic Care, P.C. (hereinafter referred to

13

Case 1:21-cv-05523-MKB-PK    Document 730-2    Filed 04/13/26    Page 19 of 111 PageID #: 11446

as "Axis Chiro") is a professional corporation organized under the laws of the State of New York and owned by the Defendant Albis.

52.    The Defendant Citimed Services, P.A. (hereinafter referred to as "Citimed NJ") is a professional association organized under the laws of the State of New Jersey and owned by the Defendant Dr. Moshe.

53.    The Defendant Citimedical I P.L.L.C. (hereinafter referred to as "Citimed NY") is a professional limited liability company organized under the laws of the State of New York and owned by the Defendant Dr. Moshe.

54.    The Defendant Columbus Imaging Center, L.L.C. (hereinafter referred to as "Columbus Imaging") is a limited liability company organized under the laws of the State of New Jersey and owned by the Defendant Reuven Alon.

55.    The Defendant Drugs R Us Pharmacy, Inc. (hereinafter referred to as "Drugs R Us") is a corporation organized under the laws of the State of New York and owned by the Defendant Margarita Moshe. Drugs R Us is licensed as a pharmacy by the State of New York.

56.    The Defendant Dynamic Surgery Center, L.L.C. (hereinafter referred to as "Dynamic") is a limited liability company organized under the laws of the State of New Jersey and authorized to do business in New York. Dynamic is an ASC licensed by the New Jersey Department of Health and owned by the Defendants Yan Moshe and Margarita Moshe.

57.    The Defendant Dynasty Medical Care, P.C. (hereinafter referred to as "Dynasty") is a professional corporation organized under the laws of the State of New York and owned on paper by Dr. Ramkumar Panhani. Upon information and belief, this corporation is controlled by the Defendants Citimed NY and Dr. Moshe.

58.    The Defendant Excel Surgery Center, L.L.C. (hereinafter referred to as "Excel")

14

Case 1:21-cv-05523-MKB-PK    Document 730-2    Filed 04/13/26    Page 20 of 111 PageID #: 11447

is a limited liability company organized under the laws of the State of New Jersey and authorized to do business in New York. Excel was an ASC licensed by the New Jersey Department of Health and owned by the Defendants Yan Moshe and Margarita Moshe.

59.    The Defendant Garden State Pain Management, P.A. (hereinafter referred to as "GSP") is a professional association organized under the laws of the State of New Jersey and owned on paper by the Defendant Koppel. The Defendant GSP is authorized to do business in New York.

60.    The Defendant Metro Pain Specialists Professional Corporation (hereinafter referred to as "Metro Pain") is a professional corporation organized under the laws of the State of New Jersey and authorized to do business in New York, listing its county as New York with the Secretary of State and is owned by the Defendant Shapiro.

61.    The Defendant Premier Health Choice Chiropractic Care, P.C. (hereinafter referred to as "Premier Chiro") is a professional corporation organized under the laws of the State of New York and owned by the Defendant Albis.

62.    The Defendant Union Wellness Center, L.L.C. (hereinafter referred to as "Union Wellness") is a limited liability company organized under the laws of the State of New Jersey and owned by the Defendant Hayek.

**ABC Corp. and John Doe Defendants**

63.    ABC Corps. 1-3 are additional management companies and/or billing companies, whose names are not yet known to the Plaintiff that contracted with one or more of the Defendants to provide management and/or billing services and/or made improper referrals and conspired to and did assist in the fraudulent and unlawful conduct alleged in this Complaint.

15

These entities will be added as Defendants when their names and the extent of their participation become known through discovery.

64.     John Does 1-3 are additional individuals, whose names are not yet known to the Plaintiff, who are true owners of one or more of the Defendants and/or that contracted with one or more of the Defendants to provide management and/or billing services and/or made improper referrals and conspired to and did assist in the fraudulent and unlawful conduct alleged in this Complaint. These individuals will be added as Defendants when their names and the extent of their participation become known through discovery.

### Venue

65.     Venue is proper in New York County where the Plaintiff does business, where the Defendant Koppel is a resident and where the Defendant Metro Pain is registered with the Secretary of State. The Defendants Heyligers, Panhani, Dr. Moshe, Citimed NY and Dynasty also maintain offices in New York County.

### The Defendants' Fraudulent Scheme
### Was Enabled By Professional Licensing Violations

66.     The Defendants submitted fraudulent and abusive billing to the Plaintiff for payment under the no-fault insurance program. Most of the Defendants misrepresented that they were legally entitled to such benefits under the no-fault program and held themselves out as properly licensed and billing within the scope of their license for services that they were not entitled to bill for.

67.     Several of the Defendants also misrepresented that anesthesia was appropriately ordered by medical doctors, that several of the chiropractors billed for by the Defendants were surgeons and that the Defendant Union Wellness was authorized to practice in the State where the services were provided.

16

Case 1:21-cv-05523-MKB-PK    Document 730-2    Filed 04/13/26    Page 22 of 111 PageID #: 11449

68.     A proper license and providing service within the scope of that license is a prerequisite to payment under the no-fault program.

69.     The State of New York and the State of New Jersey regulate the practice of medicine and the practice of chiropractic.  It restricts the practice of medicine and the ownership of medical professional corporations and entities to licensed physicians.  The State does so in order to protect consumers and the public health.  Only licensed physicians, subject to the regulation and oversight of the State, are permitted to practice medicine.  The use of the title "physician" or "surgeon" by one who is not a physician is prohibited.  This statutory framework is designed to protect the public and ensure that medical services are provided by licensed physicians.

70.     The New York Department of Financial Services' (previously the New York State Department of Insurance) Regulations provide that to be compensated under no-fault, other professional health services must be provided by a licensed provider within the scope of his or her license. *See* 11 N.Y.C.R.R.  §§65-3.16(6) & (12).

71.     New Jersey has a similar requirement to be compensable under no-fault that all licensing requirements must be adhered to and a claim submitted in violation of New Jersey's requirements governing healthcare is not compensable.  *See, e.g., Liberty Mutual Ins. Co. v. Healthcare Integrated Services, Inc.*, 2008 westlaw 2595922 (App.Div. 2008).

72.     The Defendants Excel, Dynamic, Hayek, Beynin, Bronstein, Albis and Union Wellness have repeatedly billed the fee schedule code for a pelvic ring fracture -- 27194.  None of the patients appear to have had pelvic ring fractures and the billing appears to be fictitious.  However, had any of the patients actually had pelvic ring fractures it would have been outside the scope of chiropractic for the chiropractic Defendants to treat a pelvic ring fracture and absurd for chiropractors to seek to manipulate such fractures under anesthesia where the patient could give no feedback of

17

Case 1:21-cv-05523-MKB-PK    Document 730-2    Filed 04/13/26    Page 23 of 111 PageID
#: 11450

further injury. The Defendants even had the patients transported to New Jersey for such nonexistent procedures.

73.    One of the chiropractors providing the MUA services for the Defendant Union Wellness at the Defendant Excel -- Dipti Patel, D.C. -- has a prior disciplinary history.  Patel has been disciplined by both Massachusetts and New York.

74.     Chiropractors may not perform surgery and they cannot hold themselves out to be surgeons. Chiropractors may not order or use anesthesia in their practice.

75.    The Defendants Union Wellness, Benyin and Hayek repeatedly referred to themselves as surgeons.  In numerous operative reports provided to the Plaintiff in support of their claims, the Defendants label the employee/provider of the MUA procedure as the "Surgeon."  The Defendant Excel also regularly referred to the chiropractors performing MUA as surgeons.

76.    The Defendant Union Wellness holds its chiropractors out as physicians and surgeons.  In claim 781158-07 for patient V. B., Union Wellness performed MUA on May 1, 2015 and the operative report for MUA refers to the Defendant Hayek as Primary physician and the Defendant Beynin as Co Surgeon.  Union Wellness immediately followed this up with another MUA the very next day on May 2, 2015 and the report for MUA refers to Hayek as Primary Physician and Peter Albis, D.C. as Co Surgeon.

77.    The Defendants Hayek, Albis, Bronstein, Union Wellness, Advanced Spinal, Albis Chiro, Axis Chiro, Premier Chiro, Beynin and Patel performing MUA at the Defendant Excel and Dynamic illegally ordered anesthesia.

18

Case 1:21-cv-05523-MKB-PK    Document 730-2    Filed 04/13/26    Page 24 of 111 PageID #: 11451

78.     Although Union Wellness is not authorized to provide health care services in New York, it sees the patients initially in New York and its bills have used the address of "Union Wellness Center 591 Stewart Avenue Suite 513 Garden City New York 11530."

79.     The Defendant Union Wellness billed for and provided services that it was not authorized to provide. The Defendant Union Wellness brought New York injured parties across State lines distant from their homes to receive services in a New Jersey ASC that they could obtain in New York at a regular office or OBSP. They billed for procedures performed in a state with no nexus to the claim whatsoever. The out of state referrals aided the Defendants in seeking to evade the New York Workers' Compensation Fee Schedule.

80.     Despite the regular referrals to New Jersey from New York, at the time the services were provided, the Defendant Union Wellness was neither incorporated nor authorized to transact business in the State of New York.  By failing to be authorized in New York – when performing services – the Defendant Union Wellness violated the New York State Regulations requiring a provider of services seeking payment for no-fault benefits under the Insurance Law to meet all applicable local laws for a health provider to transact business in the state in which the service is performed, thus making Union Wellness ineligible for reimbursement of New York no-fault benefits.

81.     Despite the fact that the relevant statutes and case law preclude chiropractors from using anesthesia in their practice and from referring to themselves as medical doctors or surgeons, Defendants Hayek, Excel, Beynin and Union Wellness and their chiropractor employees and other PCs assisting MUA "surgeries" performed at the Defendant ASCs, repeatedly referred to the chiropractors as surgeons.

19

Case 1:21-cv-05523-MKB-PK    Document 730-2    Filed 04/13/26    Page 25 of 111 PageID #: 11452

82.    On numerous occasions the only providers of the MUA were chiropractors and the chiropractors were the only doctors present to order anesthesia.   The chiropractic Defendants who performed the MUAs repeatedly ordered the anesthesia which they are not permitted to do under their licenses.

## The Fraudulent Referral Scheme Between Financially Related Entities

83.    Patients were referred between the Defendants based upon the financial relationships between the Defendants.  Patients were brought to another State in many cases not because such care was unavailable where they lived; they were brought to the locations that would yield significant payments to the Defendants.  Many of these referrals were against the interests of the patients and risked using up all or most of the mandatory New York no-fault coverage in order to enrich the Defendants.  The patients were not told that the excessive charges and referrals back and forth between the Defendants and the trips to another State could exhaust all or most of the mandatory New York no-fault coverage potentially leaving no coverage for lost wages or anything else.  The patients were not told of the extensive interrelationships among the Defendants. These referrals were abusive, often against the interests of the patients and in violation of New York and New Jersey law.

84.    The Defendants Yan and Margarita Moshe and their ASCs, Excel and Dynamic, are financially related to most of the Defendants. These Defendants engaged in a pattern of improper referrals between financially related entities at the expense of the injured parties' insurance coverage. There is no record of any disclosure of the financial relationships between these Defendants. Referrals were repeatedly made that were not only in violation of the self-referral laws, they were also unnecessary and were simply a means to inflate the billing by providing unnecessary services.

20

Case 1:21-cv-05523-MKB-PK    Document 730-2    Filed 04/13/26    Page 26 of 111 PageID #: 11453

85.     The Defendant Alon, owner of the Defendant Columbus Imaging, conspired with the Defendant Moshe and non-party Richard Lipsky to form a network in which they, as non-medical professionals, could share in professional fees. They did so by contracting with several health care professionals, including the Defendants Citimed NY, Citimed NJ, GSP, Metro Pain and their respective owners to form a network of practitioners and facilities named Beshert Corp.

86.     Non-party Beshert Corp.'s network included patients, doctors and lawyers throughout New York and New Jersey. Pursuant to a compensation agreement, health providers paid Beshert for network participation. According to the agreement, participants are required to pay Beshert an enrollment fee and either an annual credentialing fee or a month to month fee. The Defendant GSP had issued checks to Beshert Corp. Upon being contacted by a patient or the patient's lawyer, Beshert Corp. would refer patients to a medical facility within its network. The providers within the network then cross-referred patients to one another and profited from the illegal stream of patient referrals between the interrelated entities. This scheme provided a means for non-professionals to control patient referrals and to profit from such referrals. Disclosure is not made of the financial interrelationship of the network and its related health providers.

87.     According to Beshert Corp.'s Agreement, Beshert network participants were required to perform surgical and special procedures at an ASC that is part of the referral network. The Defendant Dynamic, along with the Defendants Citimed, Columbus Imaging and non-party Hudson Regional Hospital, were part of the Beshert network and were listed on their website as advertisers. Participants also agreed to utilize providers in the Beshert network for pharmacy, durable medical equipment and diagnostic testing. Upon information and belief participants were directed to use the Defendants Drugs R' Us owned by the Defendant Margarita Moshe, Citimed NY owned by the Defendant Dr. Moshe for radiology services in New York and Columbus

21

Case 1:21-cv-05523-MKB-PK    Document 730-2    Filed 04/13/26    Page 27 of 111 PageID #: 11454

Imaging owned by the Defendant Alon who is also the named owner of Beshert Corp., for radiology services in New Jersey. The agreement also required any sublessee to utilize the Defendant ASCs which were part of the Beshert network ASCs.  Additionally, anytime arbitration was required to collect payment on a bill for services, participants were required to retain legal counsel in Beshert's network. Upon information and belief, Baker & Cantin PC, lawyers who actively represent the Defendants Columbus Imaging, Citimed NY and Citimed NJ in arbitration, were part of Beshert's network. Baker & Cantin, P.C. leased space from the Defendant Moshe. Baker & Cantin, P.C. is linked to two separate addresses 6336 99th Street and 92-16 165th Street, Jamaica, New York 11433, both owned by the Defendant Moshe, owner of the Defendants Excel and Dynamic, the New Jersey ASCs.

88.     The referrals through the Beshert network were illegal under both New York and New Jersey law.

89.     The Defendant Alon, owner of both Beshert Corp. and Columbus Imaging, is financially related to the Defendant Moshe, owner of the New Jersey ASCs and non-party Richard Lipsky. All three non-professionals leased office space to and/or from persons or entities within the network.

90.     The Defendant Alon used two addresses, one for Beshert Corp. and one for the Defendant Columbus Imaging.  Beshert Corp.'s registered address is 78 Oak Trail Road, Hillsdale, New Jersey. In 2008 the Defendant Alon purchased this residential property for $1,350,000. In 2016, he sold the property to the Defendant Moshe for $929,900. Upon information and belief the Defendant Alon resided in the home owned by the Defendant Moshe.

91.     The Defendant Columbus Imaging and non-party Beshert Corp., were both owned

22

Case 1:21-cv-05523-MKB-PK    Document 730-2    Filed 04/13/26    Page 28 of 111 PageID #: 11455

by the Defendant Alon and located at 481 N. 13th Street Newark, New Jersey. This location is owned by non-party Columbus Medrealty L.L.C. and its sole shareholder is non-party Lipsky.

92.     Non-party Lipsky also owned Hackensack Medical Realty L.L.C. which sold 321 Essex Street Hackensack, New Jersey, the property occupied by the Defendant ASCs, to 321 Essex Holding L.L.C. owned exclusively by the Defendant Moshe. Richard Lipsky, under MHA L.L.C. was also the corporate owner of Meadowlands Hospital which was acquired by the Defendant Moshe under NJMHMC, L.L.C. The land occupied by this hospital which is now named Hudson Regional Hospital, is now owned jointly by 55 Meadow Holding L.L.C. and NJMHMC L.L.C. Upon information and belief non-party Richard Lipsky and Defendant Alon are financially related to 55 Meadow Holding L.L.C.

93.     The Defendant Excel was initially formed as Essex Surgery Center, L.L.C.  The "manager" of Essex was Richard Lipsky, M.D.  Essex was owned by Eleanor Lipsky, Laureen Lipsky and Rimma Lipsky under ELR Realty, L.L.C. which in turn owned Essex. They were also owners in part along with Dr. Lipsky of Roseland Ambulatory Surgery Center and they were part owners of Columbus Hospital LTACH and MHA L.L.C. (Meadowlands Hospital Medical Center).

94.     Most of the professional Defendants were also interrelated and part of the Beshert network. The Defendant Dr. Moshe and her companies Citimed NY and Citimed NJ were financially related to the Defendants Moshe and Margarita and Excel and Dynamic. Defendants Dr. Moshe and Moshe are siblings and Dr. Moshe leased or shared space from her brother in New York and New Jersey.

95.     The Defendant Dr. Moshe also owned non-party Citimed Management Services

23

Inc., a New York corporation that managed the Defendant medical providers owned by Dr. Moshe. It is unknown whether ownership or financial interest in Citimed Management Services Inc. is shared with others.

96.     The Defendants Dr. Moshe and Citimed NY are related to and/or have an interest in the Defendant Dynasty which is owned on paper by the Defendant Panhani. The Defendants Citimed NY and Dynasty shared the same address and often billed on the same claims. The website www.dynastymedicalcare.com redirects viewers to www.citimedny.com.  The Defendant Koppel was an employee of the Defendant Dr. Moshe at Citimed NY.

97.     The Defendant Heyligers was also associated with Dynasty. Internet searches yield websites that refer to Heyligers as the founder and principal of Dynasty. The Defendant Heyligers exercised control over Dynasty and directed many of the illegal referrals made by Dynasty. Upon information and belief, the Defendant Heyligers was an owner of the Defendant Dynasty.  As a chiropractor, the Defendant Heyligers could not legally own a professional corporation that employed physicians. The Defendants Heyligers, Dynasty and Citimed NY all shared the same address and phone number. The websites for Defendants Heyligers and Dynasty redirect to www.citimedny.com.

98.     The Defendants Dr. Shapiro and Metro Pain have a financial relationship with the Defendant ASCs and their owners. The Defendant, Dr. Shapiro previously served as medical director of the Defendant Excel. The Defendant Moshe in an Examination Under Oath admitted that Excel previously billed for anesthesia provided by Dr. Shapiro. Later the Defendant Dr. Shapiro opened Metro Pain and began billing for previous employees of the Defendant Excel as its own. The Defendant Dr. Shapiro also owns non-party Premier Anesthesia Associates, P.A.,

24

Case 1:21-cv-05523-MKB-PK    Document 730-2    Filed 04/13/26    Page 30 of 111 PageID #: 11457

located at 55 Meadowlands Parkway Secaucus, New Jersey, which is the address of Meadowlands Hospital owned by the Defendant Yan Moshe.

99.    The Defendant Excel repeatedly billed for the services of the Defendant Shapiro in providing anesthesia and pre operative clearances.

100.    The claims submitted by the Defendants to the Plaintiff did not contain any disclosure of these financial relationships to the patients.

101.    The Defendants Koppel and GSP, and Defendants Dynasty and Panhani, followed an identical referral pattern. Rather than Dr. Moshe directly referring patients to her brother and sister in law through Citimed NY, Dr. Moshe has attempted to disguise the referral by separately using GSP and Dynasty as cooperating intermediaries who upon referral transfer the patient to the NJ ASCs owned by the Defendant Moshe.

102.    The Defendants Koppel and GSP received referrals from Dr. Moshe and then referred Dr. Moshe's patients to her brother and sister in law in New Jersey for surgeries and/or procedures at the Defendant ASCs. At the Defendant ASCs, the patients often received anesthesia services by the Defendants Dr. Shapiro and Metro Pain or Dr. Moshe and Citimed NJ.

103.    The Defendants Panhani and Heyligers, on behalf of the Defendant Dynasty, which is controlled by Dr. Moshe and has been controlled by Heyligers, also refer patients to the Defendant ASCs in New Jersey. These patients often receive anesthesia by the Defendants Dr. Shapiro and Metro Pain or Dr. Moshe and Citimed NJ. The Defendant Dr. Moshe has financial relationships with the Defendant ASCs and the Defendant intermediaries who assist to effectuate the patient referrals.

104.    The Defendant Heyligers, a chiropractor, also sees patients at the office of the

25

Defendant Dynasty and bills under his own name. He then refers his patients to the Defendants Koppel and GSP who then bring the patients to Excel and Dynamic in New Jersey. In exchange for patient referrals, the Defendant GSP issued monthly checks for rent to the Defendant Heyligers.

105.    The Defendants Heyligers, Koppel through GSP and Panhani through Dynasty all facilitated improper self-referrals of New York patients within the Beshert network from the Defendants Dr. Moshe and Citimed NY, to Dr. Moshe's brother and sister in law at Excel and Dynamic in New Jersey. The scheme was further perpetuated with the anesthesia services also provided by the Defendants Metro Pain and Citimed NJ who also have financial relationships with the Defendants ASCs.

106.    The Defendants Metro Pain and Citimed NJ owned by the Defendants Dr. Shapiro and Dr. Moshe, also directly referred patients to the Defendant ASCs for injections.

107.    Initially, the Defendant ASCs improperly billed for the anesthesia services in connection with these surgeries. A New Jersey ASC cannot bill for anesthesia. This was changed and the billing was placed into the names of financially related entities.

108.    The Defendant Citimed NJ owned by the Defendant Dr. Moshe and the Defendant Metro Pain owned by the Defendant Dr. Shapiro, began to bill for anesthesia services provided at the Defendant ASCs with which they had financial relationships with. These Defendants also began billing for services provided by the very same anesthesiologists which the Defendant Excel previously billed for.

109.    The Defendants Citimed NJ and Metro Pain have financial relationships with the Defendant ASCs and their owners. The Defendant Dr. Shapiro, owner of Metro Pain served as medical director of the Defendant Excel. The Defendant Citimed NJ is owned by the Defendant

26

Case 1:21-cv-05523-MKB-PK    Document 730-2    Filed 04/13/26    Page 32 of 111 PageID #: 11459

Dr. Moshe, Yan Moshe's sister. The claims do not contain any disclosure of these financial relationships to the patients.

110.    In addition to providing anesthesia for surgeries performed at the Defendant ASCs, the Defendants Metro Pain and Citimed NJ directly referred patients to other providers in the Beshert network with whom they had financial relationships with. The Defendants Dr. Moshe and Citimed NY and Alon and Columbus Imaging, received patient referrals for x-rays and MRIs from Dr. Moshe's other corporation, Defendant Citimed NJ, and also from the Defendant Metro Pain. The Defendants Citimed NJ and Metro Pain assist to facilitate an additional revenue stream.

111.    The complex web of interconnections amongst laypersons and professionals is a key element of the self-referral scheme. Many of the associations exist through leases for office space. The Defendants Koppel and GSP issued payments for rent to the Defendants Heyligers, Hayek, Dynasty and Panhani. The Defendants Margarita Moshe and Drugs R' Us and the Defendants Citimed NY and Dr. Regina Moshe leased office space from the Defendant Moshe at 1963 Grand Concourse, Bronx New York. The Defendants Citimed NY and Dr. Moshe also leased office space from the Defendant Moshe at 63-36 99th Street Rego Park, New York. The Defendants Metro Pain and Dr. Shapiro and Citimed NJ and Dr. Moshe leased space from the Defendant Moshe at the Defendant ASCs.

112.    In claim after claim, the Defendant Yan Moshe, through Excel and Dynamic, and the Defendant Alon, through Columbus Imaging, Dr. Moshe through Citimed NJ and Dr. Shapiro through Metro Pain, accepted referrals from financially related entities within the Beshert network and then billed the Plaintiff for services resulting from illegal self-referrals. The

Case 1:21-cv-05523-MKB-PK    Document 730-2    Filed 04/13/26    Page 33 of 111 PageID #: 11460

patients in most instances were New York residents. The Defendants Excel, Dynamic and Columbus Imaging provided transportation for New York patients to come to New Jersey.

113.   The Defendant Heyligers, the Defendant Koppel through the Defendant GSP and the Defendant Panhani through Dynasty all facilitated improper self-referrals of New York patients between the Defendants Dr. Moshe at Citimed NY to her brother and sister in law Yan and Margarita Moshe at Excel and Dynamic in New Jersey. The Defendants Excel and Dynamic provided transportation for New York patients to come to New Jersey.

114.   Although the Defendant GSP is a New Jersey provider, the Defendants Heyligers, Panhani, Dynasty, Dr. Moshe and Citimed NY referred New York patients to the Defendants Koppel and GSP. The Defendant Koppel was an employee at the Defendant Citimed NY and has a financial relationship with Dr. Moshe.

115.   These Defendants are extensively intertwined and financially related.  The Defendants Dr. Moshe and Citimed NJ have the same phone number and use the same address as the Defendants Excel and Dynamic. The Defendants either lease the ASC office space from the Defendant Moshe or are allowed to use office space for no compensation. The Defendants Excel and Dynamic owned by the Defendant Moshe, is located at 321 Essex Street Hackensack, New Jersey and use telephone number 201-692-9800. The Defendant Citimed NJ owned by Moshe's sister, shares the same phone number as Defendant ASCs and lists the ASC address on their incorporation papers with the State. The Defendant Citimed NJ alternatively uses 190 Midland Avenue Saddlebrook, New Jersey, which is the address for non-party Health Plus Surgery Center L.L.C. also owned by the Defendants Moshe and Margarita.

116.   The Defendants Moshe and Margarita utilize the Defendant Drugs R Us as a

28

Case 1:21-cv-05523-MKB-PK    Document 730-2    Filed 04/13/26    Page 34 of 111 PageID #: 11461

means inflate the billing to the Plaintiff and other insurers. Upon information and belief Drugs R Us is part of the Beshert network. The Defendant Margarita owns Drugs R Us located at 1963 Grand Concourse, Bronx, NY. 1963 Grand Concourse is owned by 63-36 99th Street I L.L.C. a Delaware L.L.C. and secured by a mortgage note for $7.5 million made by the Defendant Yan Moshe through his companies Tuhsur Development, L.L.C. and 1963 Grand Concourse Holdings, L.L.C. The Defendant Citimed NY also has offices at 1963 Grand Concourse. The Plaintiff has received claims where the Defendants Dr. Moshe and Citimed NY have referred patients to the Defendants Margarita and Drugs R Us and where the Defendants Excel and Dynasty also bill for services and surgeries provided to the patient.

117. The Defendant Heyligers referred patients to the Defendants Koppel and GSP. The Defendant Koppel issued recurrent payments to the Defendant Heyligers ostensibly for "rent." In exchange for payment, the Defendant Heyligers referred patients to the Defendant Koppel at GSP. The Defendant Heyligers however was working out of the office of Dynasty owned on paper by the Defendant Panhani.

118. Although the Defendant GSP is a New Jersey provider, the Defendant Citimed NY referred New York patients to the Defendants Koppel and GSP. Since the Defendants Panhani and Heyligers were only licensed to practice in New York, neither were able to participate in the surgeries and procedures at Excel in New Jersey. The referrals were made to the Defendant Koppel who was licensed to practice in both New York and New Jersey.

119. The Defendants Koppel and GSP's illegal referrals stretch far beyond the scheme herein. Records for GSP list 118 N. Bedford Rd., Ste. 200, Mount Kisco, New York as its address and Barbara H. Cohn is listed as business manager and signor on the account. Her husband, Mitchell D. Cohn MD is also an authorized signor. Barbara is President and CEO of

29

Case 1:21-cv-05523-MKB-PK    Document 730-2    Filed 04/13/26    Page 35 of 111 PageID #: 11462

Anesthesia Management Group Corporation whose address is also 118 N. Bedford Rd., Ste. 200, Mount Kisco, New York 10549. Monthly transfers were made from GSP to Anesthesia Management in the amount of $27,200. Dr. Mitchell Cohn is also Practice Manager at Northeastern Anesthesia Services PC which is also located at 118 N. Bedford Rd., Ste. 200, Mount Kisco, New York with Neil Patel as CEO. The Defendant GSP transferred money from GSP to Mitchell D. Cohn. The Mount Kisco address and suite number is also linked to Nyack Medical Associates PC DBA Highland Medical PC. Northeastern Pain Management is located at Nyack Hospital. These connections extend further to Valley and Rockland & Bergen Surgery Center where Northeastern Anesthesia provides services.

120.    On July 21, 2016 the Defendant Hayek pled guilty to charges of second-degree counts of conspiracy, money laundering and commercial bribery, as well as various third-degree offenses. Since the Defendant Koppel directly made cash payments to the Defendant Hayek in exchange for patient referrals, there was certainly a possibility at that point that the Defendant Koppel was likely to be indicted.

121.    In an effort to continue the referral stream of New York patients to Excel and Dynamic in New Jersey, the Defendants Dr. Moshe and Citimed NY took over the Defendant Dynasty from Defendants Panhani and Heyligers. The Defendant Citimed NJ was formed on October 13, 2016 before the indictment of the Defendant Koppel.

122.    Multiple layers of financial relationships exist amongst the Defendants. In addition to familial relationship, shared addresses, phone numbers, employees and websites, many of the Defendants lease office space or use office space for no compensation from entities which they have financial relationship with. The claims made by the Defendants to the Plaintiff do not include any disclosure of these financial relationships to the patients.

30

Case 1:21-cv-05523-MKB-PK    Document 730-2    Filed 04/13/26    Page 36 of 111 PageID #: 11463

123.    The Defendants Hayek and Union Wellness engaged in payments for referrals, money laundering, kickbacks and bribery. They obtained patients by paying for them and billed for unnecessary services.

124.    The Defendants Hayek and Union Wellness developed a network of referring providers who were willing to share their patients.  Again and again the referrals came from referring providers who they had financial relationship with in violation of Public Health Law § 238 and New Jersey law.

125.    The Defendants Hayek and Union Wellness sent chiropractors to locations of the referring providers in order to gather patients to perform MUAs on.  These chiropractors travelled to each location to perform an evaluation on the patients sent to them by that health care provider or referring individual.  The evaluation by the Defendants Hayek and Union Wellness then stated that a MUA was necessary.

126.    The Defendants Hayek and Union Wellness have submitted fraudulent billing and have engaged in illegal referral practices.  The Defendant Hayek has been prosecuted by the State of New Jersey and pled guilty for involvement in a scheme that included money laundering and payoffs to referring providers.

127.    The Defendant Hayek has admitted that he referred patients to the Defendants Koppel and GSP and rented office space at Union Wellness to Koppel in the amount of $500 a month.

128.    The Defendant Hayek was paid off in cash by the Defendant Koppel in exchange for a stream of patient referrals. The Defendant Hayek himself had paid kickbacks to obtain many patients.

129.    The Defendant Citimed NY has many offices in the five boroughs of New York.

31

Case 1:21-cv-05523-MKB-PK Document 730-2 Filed 04/13/26 Page 37 of 111 PageID #: 11464

Many of the offices are located in buildings owned by Moshe or companies which he owns. For instance, Citimed NY is located at 1963 Grand Concourse Bronx, New York 10453 which is owned by 63-36 99th Street 1 LLC, owned by Defendant Yan Moshe. The Defendant Moshe also owns 9220 165 Holdings LLC which owns the property located at 92-12 through 92-20 165th Street Jamaica, New York 11433. Citimed NY has offices at 92-18 165th Street Jamaica, New York 11433.

130. The Defendant Dynasty referred New York patients to the Defendants Koppel and GSP. Although GSP is a New Jersey provider, the Defendant Koppel initially evaluated the patients at the offices of Dynasty. The Defendant Dynasty has many offices in the five boroughs of New York. Like Citimed NY, some of Dynasty's offices are located in buildings owned by the Defendant Moshe or companies which he owns. The Defendants Koppel and GSP then refer the New York patients to Defendants Moshe and Margarita at the Defendant ASCs in New Jersey.

131. Patients have been transported across state lines for unnecessary services and surgeries that could be performed in New York in order to provide the financially related Defendants with a steady stream of billing.

132. The Defendants Columbus Imaging, GSP, Dynasty, Excel and Dynamic bill for procedures performed in a state with no nexus to the claims whatsoever. The out of state referrals are part of a scheme of Defendants Koppel, GSP, Columbus Imaging, Alon, Dr. Moshe, Citimed NY, Dynasty, Panhani, Heyligers, Moshe, Margarita and Excel. The elaborate scheme includes kickbacks and self-referrals aimed to evade the New York Workers' Compensation Fee Schedule at the expense of the insured's coverage and at the expense of the premium paying public in New York.

133. Patient care is compromised as patients are needlessly transported across state

32

36 of 110

Case 1:21-cv-05523-MKB-PK    Document 730-2    Filed 04/13/26    Page 38 of 111 PageID #: 11465

lines, distant from their families and homes to receive services and surgeries in a New Jersey ASC in order to provide the Defendants with a steady stream of billing as well as given numerous unnecessary procedures. The Defendants Columbus Imaging and Excel paid for patients to be transported from New York to New Jersey for services and surgeries. The abusive referrals are for procedures that could be performed in a regular office or OBSP. There was no necessity for these services to be performed at an ASC and they could have been performed in New York at an OBSP. The patients were fraudulently referred to Excel and Dynamic in order to bill unnecessary facility fees. In many cases the billing is so excessive that it could deplete all of the remaining mandatory New York insurance coverage for the injured parties. The referral of patients between these financially related entities is illegal under both New York and New Jersey law.

134. The services billed by the Defendants Columbus Imaging, GSP and Excel or Dynamic where the patient is initially referred by Citimed NY, Dr. Moshe, Dynasty, Panhani and Heyligers are not reimbursable as they result from an improper self-referral between financially related entities. GSP's financial relationship with the referring provider and Excel are in violation of New York and New Jersey law including Public Health Law §§ 238-a and/or 238-d and/or N.J.S.A. 45:9-22.5. The bills from the Defendant Drugs R Us where the patient is referred by Excel, Citimed NY, Dr. Moshe, or Citimed NJ are also not reimbursable.

135. Under both New York and New Jersey law where the Defendants Columbus Imaging, Excel and Dynamic receive referrals from the Defendant GSP and the patient originated from Defendants Citimed NY, Dynasty or Heyligers, an illegal financial relationship exists.

136. Under both New York and New Jersey law where the Defendants Citimed NJ and

33

Case 1:21-cv-05523-MKB-PK    Document 730-2    Filed 04/13/26    Page 39 of 111 PageID #: 11466

Metro Pain bill on the same date of service as the Defendants Excel or Dynamic, an illegal New York Public Health Law 238-d bars a practitioner from making a referral to another healthcare provider for the furnishing of any health or health related items or services where the referring provider has a financial relationship with the billing provider without disclosing such financial relationship to the patient.

137.    The Health Department has prescribed a mandatory form which must be used and sets forth the information which must be disclosed. The Department of Health Regulations require that this disclosure be in writing and that it be on a specific form that pursuant to the Regulations must be used.  See 10 NYCRR §34-1.5.

138.    The prohibition of self-referrals is a defense to payment, and for certain services it explicitly provides an insurer with the right to sue both the referring provider and the billing provider to recover amounts paid.  See Public Health Law §238-a(7).

139.    New Jersey has similar self-referral prohibitions which is set forth in both the Codey Law N.J.S.A. 45:9-22.5 and in the Administrative Code at N.J.A.C. 13:35-6.17.

140.    In N.J.S.A. 45:9-22.5, New Jersey's statute provides that the self-referral prohibition does not apply to practices and ASCs if they observe the specific conditions in the statute which include written disclosure to the patients.  These requirements are in addition to New York's statute and the conditions have not been met in the claims of the Defendants. A claim submitted in violation of these requirements governing healthcare is not compensable.

141.    According to N.J.A.C. 13:35-6.17(b), "A practitioner shall not refer a patient or direct an employee of the practitioner to refer a patient to a health care service in which the practitioner or the practitioner's immediate family, or the practitioner in combination with the

34

Case 1:21-cv-05523-MKB-PK     Document 730-2     Filed 04/13/26     Page 40 of 111 PageID #: 11467

practitioner's immediate family, has a significant beneficial interest…" Section C further expands the applicability of the self-referral prohibition to disallow miscellaneous monetary arrangements. "A licensee shall not, directly or indirectly, give to or receive from any licensed or unlicensed source a gift of more than nominal (negligible) value, or any fee, commission, rebate or bonus or other compensation however denominated, which a reasonable person would recognize as having been given or received in appreciation for or to promote conduct by a licensee …" The rule prohibits the giving or receiving of anything of value for a referral to or from another for professional services.

142.    None of the claims and supporting documents submitted to the Plaintiff by the Defendants include disclosure of the financial relationship with the referring entities and the affiliated network.

143.    The ASC Defendants, Columbus and other Defendants through the Beshert Corp. network transported patients from New York to another State.  These Defendants paid for the transportation and it was provided without charge to the patients.  This free transportation was an illegal gratuity designed to influence the patients to agree to travel to another State where the Defendants billed excessively and in many cases billed for services that were unnecessary and/or for injuries that did not exist. The illegal gratuities to the patients were a part of the scheme designed to lure the patients to the Defendants' New Jersey locations.  The patients were not told by the Defendants that by agreeing to do so, they risked having all their mandatory insurance coverage exhausted.

144.    The Defendant Koppel, through GSP, facilitated improper self-referrals of New York patients between the Defendants Dr. Moshe at Citimed NY to her brother and sister in law Moshe at Excel and Dynamic in New Jersey. The Defendants Koppel, GSP, Dr. Moshe,

35

Case 1:21-cv-05523-MKB-PK    Document 730-2    Filed 04/13/26    Page 41 of 111 PageID #: 11468

Citimed NY, Excel and Dynamic are all part of the Beshert network and they profit from the illegal stream of patient referrals while providing a means to transfer money to lay person Defendants Moshe, Alon and Lipsky.

145. The Defendant GSP mailed bills to American Transit for consultations conducted by the Defendant Koppel on patient M.P. identified by claim number 784557-06. Patient M.P. was referred to the Defendants Koppel and GSP by the Defendant Citimed NY. The Defendant Koppel examined patient M.P. on July 13, 2016 and September 7, 2016 at the offices of the Defendants Dr. Moshe and Citimed NY at the Bronx office leased from the Defendant Moshe and located at 1963 Grand Concourse Bronx, New York. These bills were mailed at or around the time they were dated. The bills were received on August 12, 2016 and December 27, 2016.

146. The Defendant Koppel also performed injections on patient M.P. on August 10, 2016, August 24, 2016 and November 30, 2016. The Defendant GSP mailed bills to American Transit for these injections at or around the time they were dated. The bills were received on September 7, 2016, September 19, 2016 and December 27, 2016. The injections were performed at the Defendant Excel owned by Defendants Moshe and Margarita. Patient M.P. was transported across state lines from Bronx, New York to the Defendant Excel in New Jersey. Rather than Dr. Moshe directly referring patient M.P. to her brother and sister in law, she disguised the improper referral by utilizing the Defendants GSP and Koppel as cooperating intermediaries. The Defendant Excel mailed bills to American Transit for the facility fees and anesthesia associated with the injections performed by the Defendants GSP and Koppel. These bills were mailed at or around the time they were dated. The bills were received on August 23, 2016, September 2, 2016 and December 28, 2016.

147. The individual and corporate Defendants who billed on this claim for patient M.P.

Case 1:21-cv-05523-MKB-PK    Document 730-2    Filed 04/13/26    Page 42 of 111 PageID #: 11469

are part of the Beshert network. The claims and supporting documents submitted to the Plaintiff by the Defendants for patient M.P. did not include a disclosure of financial relationships. Likewise, the Defendants who submitted billing to American Transit for patients J.C., S.Z., G.M., D.M., N.D., B.T. and G.G. are also part of the Beshert network and their claim submissions to American Transit lacked any disclosure of financial relationships.

148.    The Defendant GSP mailed bills to American Transit for consultations conducted by the Defendant Koppel on patient J.C. identified by claim number 787356-02. Patient J.C. was referred to the Defendants Koppel and GSP by the Defendant Citimed NY. The Defendant Koppel examined patient J.C. on May 25, 2016 and June 29, 2016 at the offices of the Defendants Dr. Moshe and Citimed NY at the Bronx office leased from Defendant Moshe and located at 1963 Grand Concourse Bronx, New York. These bills were mailed at or around the time they were dated. The bills were received on June 20, 2016 and July 25, 2016.

149.    The Defendant Koppel also performed injections on patient J.C. on June 15, 2016, June 22, 2016 and July 20, 2016. The Defendant GSP mailed bills to American Transit for these injections at or around the time they were dated. The bills were received on July 18, 2016, July 22, 2016 and August 12, 2016.  The injections were performed at the Defendant Excel owned by Defendants Moshe and Margarita. Patient J.C. was transported across state lines from Bronx, New York to the Defendant Excel in New Jersey. Rather than Dr. Moshe directly referring patient J.C. to her brother and sister in law, she disguised the improper referral by utilizing the Defendants GSP and Koppel as cooperating intermediaries. The Defendant Excel mailed bills to American Transit for the facility fees and anesthesia associated with the injections performed by the Defendants GSP and Koppel. These bills were mailed at or around the time they were dated. The bills were received on July 12, 2016, July 18, 2016 and August 15, 2016.

37

Case 1:21-cv-05523-MKB-PK    Document 730-2    Filed 04/13/26    Page 43 of 111 PageID #: 11470

150.    The Defendants Dr. Moshe and Citimed NY also referred patient J.C. to herself at Citimed NJ for knee arthroscopy surgery performed on June 30, 2017. Patient J.C. was transported across state lines from Bronx, New York to a non-party ASC in Saddle Brook, New Jersey named Health Plus Surgery Center, L.L.C. Non-party Health Plus is also owned by Dr. Moshe's brother and sister in law, Defendants Moshe and Margarita. The Defendant Citimed NJ mailed a bill to American Transit for the surgery and anesthesia at or around the time it was dated. The bill was received on July 19, 2016.

151.    The Defendant Koppel, through GSP facilitated improper self-referrals of New York patients between the Defendants Dr. Moshe at Citimed NY to her brother and sister in law Moshe at Excel in New Jersey. The Defendant GSP mailed bills to American Transit for consultations conducted by the Defendant Koppel on patient S.Z. identified by claim number 784535-02. Patient S.Z. was referred to the Defendants Koppel and GSP by the Defendant Citimed NY. The Defendant Koppel examined patient S.Z. on January 20, 2016 and March 23, 2016 at the offices of the Defendants Dr. Moshe and Citimed NY at the Bronx office leased from Defendant Moshe and located at 1963 Grand Concourse Bronx, New York. These bills were mailed at or around the time they were dated. The bills were received on February 23, 2016 and March 23, 2016.

152.    The Defendant Koppel also performed bilateral lumbar facet medial branch block under fluoroscopic localization on patient S.Z. on February 22, 2016. The Defendant GSP mailed a bill to American Transit for the procedure at or around the time it was dated. The bill was received on March 30, 2016.  The procedure was performed at the Defendant Excel owned by Defendants Moshe and Margarita. The bill however improperly stated that the services were performed at the Defendant Dynamic also owned by the Defendants Moshe and Margarita.

38

Patient S.Z. was transported across state lines from Bronx, New York to the Defendant Excel in New Jersey. Rather than Dr. Moshe directly referring patient S.Z. to her brother and sister in law, she disguised the improper referral by utilizing the Defendants GSP and Koppel as cooperating intermediaries. The Defendant Excel mailed a bill to American Transit for the facility fees and anesthesia associated with the procedure performed by the Defendants GSP and Koppel. The bill was mailed at or around the time it was dated. The bill was received on March 15, 2016. Although the report designates Dr. Hensen as the doctor who administered anesthesia, the bill indicated that Dr. Hamzeh Mehrdad was the anesthesiologist.

153.    The Defendant GSP mailed bills to American Transit for consultations conducted by the Defendant Koppel on patient G.M. identified by claim number 660003-09. Patient G.M. was referred to the Defendants Koppel and GSP by the Defendant Heyligers. The Defendant Heyligers treated patient G.M. at the Manhattan office which he leased from the Defendant Dynasty which is owned on paper by the Defendant Panhani and controlled by the Defendant Dr. Moshe. The Manhattan office is located at 127 E. 107th Street New York, New York. The Defendant Citimed NY also shares this office. The Defendant Heyligers referred patient G.M. to the Defendant Koppel who also leased the same space from the Defendant Dynasty. The Defendant Koppel and GSP examined patient G.M. on October 13, 2016 and October 27, 2016, January 26, February 23, March 23, May 18 and July 13, 2017. These bills were mailed at or around the time they were dated. The bills were received on November 14, 2016, November 21, 2016, March 6, March 23, April 23, June 9 and August 7, 2017.

154.    The Defendant Koppel also performed injections on patient G.M. on February 8, 2017, April 26, 2017 and May 31, 2017. The Defendant GSP mailed bills to American Transit for these injections at or around the time they were dated. The bills were received on March 9,

Case 1:21-cv-05523-MKB-PK    Document 730-2    Filed 04/13/26    Page 45 of 111 PageID #: 11472

2017, May 3, 2017 and June 23, 2017. The injections were performed at the Defendant Dynamic owned by Defendants Moshe and Margarita. Patient G.M. was transported across state lines from Riverdale, New York to the Defendant Dynamic in New Jersey. Rather than Dr. Moshe through Dynasty directly referring patient G.M. to her brother and sister in law, she disguised the improper referral by utilizing the Defendants Heyligers, Panhani, Dynasty, GSP and Koppel as cooperating intermediaries. This scheme permitted the Defendants Koppel and GSP to bill the Plaintiff when the referral could have come directly from the Defendant Dynasty.

155. The Defendant Dynamic mailed bills to American Transit for the facility fees and anesthesia associated with the injections performed by the Defendants GSP and Koppel on patient G.M. These bills were mailed at or around the time they were dated. The bills were received on March 9, 2017, May 3, 2017 and June 23, 2017.

156. The Defendants Dr. Moshe and Citimed NJ also mailed bills to American Transit for the anesthesia associated with the injections to patient G.M. The Defendant Citimed NJ mailed bills to American Transit for the surgery and anesthesia at or around the time they were dated. The bills were received together with the bills from the Defendant Dynamic on March 9, 2017, May 3, 2017 and June 23, 2017.

157. The Defendant GSP mailed a bill to American Transit for a consultation conducted by the Defendant Koppel on patient D.M. identified by claim number 782775-03. Patient D.M. was referred to the Defendants Koppel and GSP by the Defendant Citimed NY. The Defendant Koppel examined patient D.M. on January 11, 2017 at the offices of the Defendants Dr. Moshe and Citimed NY at the Bronx office leased from Defendant Moshe and located at 1963 Grand Concourse Bronx, New York. This bill was mailed at or around the time it was dated. The bill was received by the Plaintiff on February 6, 2017.

40

Case 1:21-cv-05523-MKB-PK Document 730-2 Filed 04/13/26 Page 46 of 111 PageID #: 11473

158.     The Defendant Koppel also performed injections on patient D.M. on January 18, 2017. The Defendant GSP mailed a bill to American Transit for injections at or around the time it was dated. The bill was received on February 16, 2017.  The injections were performed at the Defendant Dynamic owned by Defendants Moshe and Margarita. Patient D.M. was transported across state lines from Bronx, New York to the Defendant Dynamic in New Jersey. Rather than Dr. Moshe directly referring patient D.M. to her brother and sister in law, she disguised the improper referral by utilizing the Defendants GSP and Koppel as cooperating intermediaries. The Defendant Dynamic mailed a bill to American Transit for the facility fees associated with the injections performed by the Defendants GSP and Koppel. The bill was mailed at or around the time it was dated. The bill was received on February 6, 2017.

159.     The Defendants Dr. Moshe and Citimed NJ also mailed bills to American Transit for the anesthesia associated with the injections to patient D.M. The Defendant Citimed NJ mailed a bill to American Transit for the anesthesia at or around the time it was dated. The bill was received on February 8, 2017.

160.     The Defendant GSP mailed a bill to American Transit for consultations conducted by the Defendant Koppel on patient N.D. identified by claim number 777931-04-03. Patient N.D. was referred to the Defendants Koppel and GSP by the Defendant Citimed NY. The Defendant Koppel examined patient N.D. on November 10, 2014 at the offices of the Defendants Dr. Moshe and Citimed NY at the Bronx office leased from Defendant Moshe and located at 1963 Grand Concourse Bronx, New York. This bill was mailed at or around the time it was dated. The bill was received on September 18, 2017.

161.     The Defendant Koppel also performed injections on patient N.D. on

41

Case 1:21-cv-05523-MKB-PK Document 730-2 Filed 04/13/26 Page 47 of 111 PageID #: 11474

December 17, 2014. The Defendant GSP mailed a bill to American Transit for the injections at or around the time it was dated. The bill was received on September 18, 2017. The injections were performed at the Defendant Excel owned by Defendants Moshe and Margarita. Patient N.D. was transported across state lines from Bronx, New York to the Defendant Excel in New Jersey. Rather than Dr. Moshe directly referring patient N.D. to her brother and sister in law, she disguised the improper referral by utilizing the Defendants GSP and Koppel as cooperating intermediaries. The Defendant Excel mailed the bill to American Transit for the facility fees and anesthesia associated with the injections performed by the Defendants GSP and Koppel. The Defendant Excel billed for the Defendant Shapiro as an employee of Excel. The bill was mailed at or around the time it was dated. The bill was received on January 20, 2015.

162. The Defendant GSP mailed bills to American Transit for consultations conducted by the Defendant Koppel on patient B.T. identified by claim number 664026-02. Patient B.T. was referred to the Defendants Koppel and GSP by the Defendant Dynasty. Although owned on paper by Defendant Panhani, the Defendant Dynasty is now controlled by Dr. Moshe. The Defendant GSP treated patient B.T. at Dynasty's Queens location at 100-05 Roosevelt Avenue Ste. 102. Corona, NY 11368. The Defendant GSP paid rent to the Defendant Dynasty for use of the office. Upon information and belief, the Defendant Moshe has an ownership interest in the property located at 100-05 Roosevelt Avenue Corona, New York. The Defendant Dynasty is owned on paper by the Defendant Panhani and controlled by the Defendant Dr. Moshe. The Defendants Koppel and GSP examined patient B.T. at Dynasty on March 30, 2016 July 11, 2016 and September 19, 2016. These bills were mailed at or around the time they were dated. The bills were received on April 25, 2016, September 7, 2016 and November 21, 2016. The Defendant Koppel also performed injections on patient B.T. on May 4,

42

Case 1:21-cv-05523-MKB-PK    Document 730-2    Filed 04/13/26    Page 48 of 111 PageID #: 11475

2016, August 10, 2016 and August 24, 2016. The Defendant GSP mailed bills to American Transit for these injections at or around the time they were dated. The bills were received on June 3, 2016, September 27, 2016 and September 27, 2016. The injections were performed at the Defendant Excel owned by Defendants Moshe and Margarita. Patient B.T. was transported across state lines from Jackson Heights, New York to the Defendant Excel in New Jersey. Rather than Dr. Moshe through Dynasty directly referring patient B.T. to her brother and sister in law, she disguised the improper referral by utilizing the Defendants Dynasty, GSP and Koppel as cooperating intermediaries. This scheme permitted the Defendants Koppel and GSP to bill the Plaintiff when the referral could have come directly from the Defendant Dynasty.

163.    The Defendant Excel mailed bills to American Transit for the facility fees and anesthesia associated with the injections performed by the Defendants GSP and Koppel for patient B.T. These bills were mailed at or around the time they were dated. The bills were received on June 16, 2016, December 20, 2016 and January 5, 2017.

164.    The Defendant GSP mailed bills to American Transit for a consultation conducted by the Defendant Koppel on patient G.G. identified by claim number 1006745-04. Patient G.G. was referred to the Defendants Koppel and GSP by the Defendant Citimed NY. The Defendant Koppel examined patient G.G. on October 11, 2017 at the office of the Defendants Dr. Moshe and Citimed NY at the Bronx location leased from the Defendant Moshe and located at 1963 Grand Concourse Bronx, New York. The bill was mailed at or around the time it was dated. The bill was received on November 8, 2017.

165.    The Defendant Koppel also performed injections on patient G.G. on October 18, 2017. The Defendant GSP mailed a bill to American Transit for these injections at or around the time they were dated. The bill was received by American Transit on November 10,

43

Case 1:21-cv-05523-MKB-PK    Document 730-2    Filed 04/13/26    Page 49 of 111 PageID #: 11476

2017. The injections were performed at the Defendant Dynamic owned by Defendants Moshe and Margarita. Patient G.G. was transported across state lines from Bronx, New York to the Defendant Dynamic in New Jersey. Rather than Dr. Moshe directly referring patient G.G. to her brother and sister in law, she disguised the improper referral by utilizing the Defendants GSP and Koppel as cooperating intermediaries. The Defendant Dynamic mailed a bill to American Transit for the facility fees associated with the injections performed by the Defendants GSP and Koppel. The bill was mailed at or around the time they were dated. The bill was received by American Transit on November 8, 2017.

166. The Defendants Dr. Moshe and Citimed NJ also mailed a bill to American Transit for the anesthesia associated with the injections to patient G.G. The Defendant Citimed NJ mailed a bill to American Transit for the anesthesia at or around the time it was dated. The bill was received by American Transit together with the bill from the Defendant Dynamic on November 8, 2017.

167. Members of the Beshert network are required to retain legal counsel from within the network. Baker & Cantin PC, have filed with the American Arbitration Association seeking reimbursement on behalf of Defendants Dynamic and Citimed NJ in connection with the bills for date of service October 18, 2017. Baker & Cantin PC leases space from the Defendant Moshe at 6336 99TH Street and 92-16 165th St, Jamaica, NY 11433, both owned by the Defendant Yan Moshe. The claims and supporting documents submitted to the Plaintiff by the Defendants for patient G.G. did not include a disclosure of financial relationships.

168. The Plaintiff also received bills from Meadowlands Hospital owned by the Defendant Moshe. Although both ownership and the hospital name had changed, bills were submitted in the name of Hudson Regional Hospital seeking reimbursement in the amount of

44

Case 1:21-cv-05523-MKB-PK    Document 730-2    Filed 04/13/26    Page 50 of 111 PageID #: 11477

$222,975.12 for a spine surgery performed on patient G.G. on March 16, 2018. The Plaintiff also received a w-9 form in the name of MHA L.L.C. owned by non-parties Dr. Richard Lipsky, Anastasia Burlyuk, Tamara Dunaev, and Pavel Pogodi. The anesthesia provider for the surgery was non-party Premier Anesthesia Associates, PA, owned by the Defendant Shapiro.

169. The Defendant Columbus Imaging mailed a bill to American Transit for a CT scan conducted on July 10, 2017 on patient R.P. identified by claim number 678477-09. Patient R.P. was a resident of Bronx, New York. Patient R.P. was referred to the Defendant Columbus Imaging by Dr. Stuart Springer who works for Defendant Dr. Moshe at Defendant Citimed NY and is part of the Beshert network. The Defendant Columbus Imaging paid for patient R.P. to be transported across state lines to New Jersey for the CT scan. This bill was mailed at or around the time it was dated. The bill was received by American Transit on August 18, 2017.

170. The Defendant Dr. Shapiro who was the prior medical director of the Defendant Excel, directly referred patients to the Defendant Excel through the Defendant Metro Pain. The Defendant Metro Pain mailed a bill to American Transit for cervical facet joint injections conducted on patient M.B. on September 16, 2016 and identified by claim number 790089-06. Patient M.B. resided in Brooklyn New York. The Defendant Excel paid for patient M.B. to be unnecessarily transported across state lines to New Jersey for services which were medically unnecessary and for which no causality existed. The bill was received on October 18, 2016. The Defendant Excel also mailed a bill to American Transit for the facility fees associated with the cervical facet joint injections conducted on patient M.B. on September 16, 2018. The bill was received on December 28, 2016.

171. The Defendant Dr. Shapiro who was the prior medical director of the Defendant Excel, directly referred patients to the Defendant Excel through the Defendant Metro Pain. The

45

Case 1:21-cv-05523-MKB-PK    Document 730-2    Filed 04/13/26    Page 51 of 111 PageID #: 11478

Defendant Metro Pain mailed a bill to American Transit for cervical epidural injections conducted on patient Y.A. on December 30, 2016 and identified by claim number 671626-05. Patient Y.A. resided in Glen Oaks, New York. The Defendant Excel paid for patient Y.A. to be unnecessarily transported across state lines to New Jersey. The bill was received on January 23, 2017. The Defendant Excel also mailed a bill to American Transit for the facility fees associated with the injections conducted on patient Y.A. on December 30, 2016. The bill was received on January 30, 2017.

172.    On December 28, 2017, the Defendant Metro Pain referred patient F.B. identified by claim number 1016401-03 to Citimed NY at 1963 Grand Concourse, Bronx, New York owned by the Defendant Moshe for scans. The Defendant Metro Pain mailed a bill for the consultation to American Transit on or about the time it was dated. The bill was received by American Transit on February 5, 2018. Patient F.B. was seen at Citimed NY owned by the Defendant Dr. Moshe on February 13, 2018. The bill was mailed by Citimed NY on or about the time it was dated and received by American Transit on March 8, 2018. American Transit also received bills for date of service February 22, 2018 from Citimed NJ and Dynamic. Patient F.B. was unnecessarily transported across state lines for services at an ASC. American Transit received the bills of Citimed NJ and Dynamic on March 19, 2018.

<u>**The Fraudulent Scheme to Falsify Records**</u>

173.    Many of the Defendants falsified medical reports and invented injuries to provide support for their billing for unnecessary anesthesia, surgeries and services where causation and necessity did not exist. Upon referral within the Beshert network, these false findings facilitated other Defendants to bill for unnecessary procedures and established false grounds for surgeons to

Case 1:21-cv-05523-MKB-PK   Document 730-2   Filed 04/13/26   Page 52 of 111 PageID #: 11479

illegally refer patients to the Defendant ASCs in order to bill excessive and unnecessary facility fees. These Defendants have transported patients across state lines for unnecessary services and surgeries that could be performed in New York in order to provide the financially related Defendants with a steady stream of billing.

174.    The Defendant Columbus Imaging Center, L.L.C. and its owner Defendant Reuven Alon exaggerated injuries and falsified MRI results to support findings of injuries, causation and necessity. These false findings facilitated other Defendants to bill for unnecessary procedures and established fake grounds for surgeons to refer patients to the Defendant ASCs where medical necessity and causality did not exist.

175.    The Defendant surgeons and ASCs used and submitted falsified operative reports and brought in the Defendants Metro Pain and/or Citimed NJ to provide additional medically unnecessary services and unnecessary anesthesia.

176.    As set forth in this Complaint the Defendant chiropractors performed unnecessary MUAs without regard to diagnosis, symptoms, necessity or utility in furtherance of the scheme to inflate billing. The Defendant chiropractors, together with the Defendant ASCs, billed for conditions that the patients did not have and subjected the patients to unnecessary anesthesia. They generated boilerplate MUA operative reports that in large sections were word for word the same for all patients. Several of them also misrepresented that patients needed MUA because they were fearful of other treatment. The Defendant chiropractors and ASCs mailed these false operative reports in many cases on the letterhead of Excel to the Plaintiff and proceeded to perform one unnecessary surgery after another based upon these misrepresentations.

177.    The Defendant Columbus Imaging mailed a bill to American Transit for an MRI of the left knee performed on patient V.T. and identified by claim number 1012236-04. The MRI

Case 1:21-cv-05523-MKB-PK     Document 730-2     Filed 04/13/26     Page 53 of 111 PageID #: 11480

was performed on November 26, 2017 and the bill was mailed on or about the time it was dated. Patient V.T. resided in Bronx, New York. The Defendant Columbus Imaging unnecessarily transported patient V.T. across state lines to New Jersey for the MRI. The MRI reported false findings and did not establish medical necessity for operative interventional services or anesthesia. American Transit received the bill on January 19, 2018.

178.    The Defendant Dynamic mailed a bill to American Transit for a left knee arthroscopy performed on patient H.Q. and identified by claim number 1010743-01. The surgery was performed on January 15, 2018 and the bill was mailed on or about the time it was dated. The intraoperative report of the surgery reported false findings and the photos of the surgery failed to depict traumatic injuries or tears in the left knee and did not establish medical necessity and/or causality. American Transit received the bill on February 21, 2018.

179.    The Defendant Citimed NY mailed a bill to American Transit for an MRI of the right knee performed on patient M.S. and identified by claim number 1003045-02. The MRI was performed in New York on July 25, 2017 and the bill was mailed on or about the time it was dated. The Defendant Citimed NY falsely reported a complex tear of the medial meniscus of the right knee and a partial tear of the ACL. American Transit received the bill September 13, 2 017. The Defendant Dynamic mailed a bill to American Transit for the right knee arthroscopy surgery performed on patient M.S. and identified by claim number 1003045-02. The surgery was performed on July 25, 2017 and the bill was mailed on or about the time it was dated. Patient M.S. resided in Bronx, New York. The Defendant Dynamic unnecessarily transported patient M.S. across state lines to New Jersey for the surgery. The intraoperative photos of the surgery fail to depict traumatic injuries or tears in the right knee and did not establish medical necessity and/or causality. American Transit received the bill on December 26, 2017. American Transit

48

also received a bill for the anesthesia which was administered during the surgery by the Defendant Citimed NJ. The bill was mailed on or about the time it was dated. American Transit received the bill on December 26, 2017.

180. The Defendant Dynamic mailed a bill to American Transit for a right knee arthroscopy performed on patient C.K. and identified by claim number 1008772-04. The surgery was performed on February 25, 2018 and the bill was mailed on or about the time it was dated. Patient C.K. resided in Brooklyn, New York. The Defendant Dynamic unnecessarily transported patient C.K. across state lines to New Jersey for the surgery. The intraoperative photos of the surgery fail to depict traumatic injuries or tears in the right knee and did not establish medical necessity and/or causality. American Transit received the bill on April 3, 2018. American Transit also received a bill for the anesthesia which was administered during the surgery by the Defendant Citimed NJ. The bill was mailed on or about the time it was dated. American Transit received the bill on April 3, 2018.

### The Manipulation Under Anesthesia Scheme

181. The Defendants Hayek, Albis, Bronstein, Union Wellness, Advanced Spinal, Albis Chiro, Axis Chiro, Premier Chiro, Dynamic and Excel with the assistance of the Defendants Beynin, Patel and Shapiro regularly submitted billing to the Plaintiff for MUA and/or related services including ASC charges, anesthesia and/or consultations. This procedure subjects the patients to all of the risks of anesthesia, including death. These MUAs were regularly billed without regard to necessity in a pattern of abusive billing.

182. The Defendants Hayek, Albis, Bronstein, Union Wellness, Advanced Spinal, Albis Chiro, Axis Chiro, Premier Chiro, Dynamic and Excel with the assistance of the Defendants Beynin, Patel and Shapiro routinely recommended and billed for MUA on patients with limited

49

soft tissue injuries. These patients were prescribed MUA which subjected them to all of the risks of anesthesia, including death.

183. These referrals involved danger to the patients. The patients were often herded into car services provided by the Defendant Excel and Dynamic. They were then brought to Excel and Dynamic's location in New Jersey where they were placed under anesthesia and chiropractic treatments were administered.

184. MUA is considered to be a rarely indicated procedure. By definition it involves the use of anesthesia and the risks of anesthesia for a patient. The Defendants Hayek, Albis, Bronstein, Union Wellness, Advanced Spinal, Albis Chiro, Axis Chiro, Premier Chiro, Dynamic and Excel with the assistance of the Defendants Beynin, Patel and Shapiro generally recommended MUA indiscriminately to numerous patients regardless of their individual injuries, symptomology, treatment plan or diagnosis.

185. In actuality none of the MUA provided by the Defendants was medically necessary. These Defendants, however, did not even make a pretense of necessity with their pattern of referrals and sloppy and boilerplate paperwork. Again and again they subjected the patients to all of the risks of MUA and anesthesia without necessity.

186. Again and again, the patient's standard chiropractic care was unchanged by the patient having had MUA, and continued with the same services and schedule that was in place prior to the MUA.

187. This huge pattern of unnecessary services was often administered to unsophisticated injured parties. Arbitrators, judges, professors and surgeons for the most part were not brought to New Jersey to undergo these unnecessary procedures and were not subjected

50

to its unnecessary risks.  It was those patients who had the least knowledge who were directed to do this.

188.    Even under the claimed justification of the Defendants, in order for there to be any justification for recommending MUA with its risks, the patient must not be progressing optimally with standard chiropractic care from his or her treating chiropractor.  In order to make that determination, a full review of the patient's progress with conservative chiropractic care is necessary prior to reaching the conclusion that the patient needs MUA.

189.    The Defendants did not review the patient's charts kept by the patient's treating healthcare providers.  The operative reports do not indicate if the surgeons performing the procedure even knew who referred the patient for an MUA consultation.

190.    The Defendants Hayek, Albis, Bronstein, Union Wellness, Advanced Spinal, Albis Chiro, Axis Chiro, Premier Chiro, Dynamic and Excel with the assistance of the Defendants Beynin, Patel and Shapiro routinely scheduled patients to undergo three consecutive days of MUA, without a thorough assessment of the patient's improvement after the first date of MUA in order to determine if the patient would benefit from additional MUA procedures. When patient assessments were purportedly made between the second and third days of scheduled MUA procedures, those assessments were generally boilerplate and self-serving.  On numerous occasions the first two days of MUA were on consecutive days leaving no opportunity for a thorough assessment of the patient's improvement after the first date of MUA in order to determine if the patient would benefit from additional MUA procedures.

191.    The Defendants Hayek, Albis, Bronstein, Union Wellness, Advanced Spinal, Albis Chiro, Axis Chiro, Premier Chiro, Dynamic and Excel repeatedly billed for fee schedule code 27194.  This was a misrepresentation in two respects.  First, 27194 modifies 27193 which means

51

Case 1:21-cv-05523-MKB-PK Document 730-2 Filed 04/13/26 Page 57 of 111 PageID #: 11484

that treatment other than the manipulation was required. No such treatment was provided.

Second a chiropractor may not treat by manipulation a fracture of a pelvic ring under CPT Code 27194 and none of the patients had pelvic ring fractures.

192. Code 27194 is for a pelvic ring fracture, dislocation or subluxation. No such injury is documented at all in any of the medical records. This code is for a pelvic ring fracture, subluxation or dislocation. This Code falls under the Section of "Fracture and/or Dislocation." This Code is reserved for treatment of a fractured bone – the pelvic ring. The New Jersey fee schedule lists CPT Code 27194 as treatment of a closed fracture or dislocation. Not only did the patients not have any fractures, a chiropractor cannot even treat a fracture by the limitations imposed by his chiropractic license. A chiropractor may not order or prescribe anesthesia. In numerous claims of the Defendants Hayek, Albis, Bronstein, Union Wellness, Advanced Spinal, Albis Chiro, Axis Chiro, Premier Chiro, Dynamic and Excel, only two chiropractors were present with the anesthesiologist.

193. In numerous claims, there is no record of any medical doctor determining that MUA with its anesthesia and risks was necessary for the patient. The records indicate that the chiropractor determined that anesthesia was necessary beyond a regular chiropractic manipulation.

194. The Defendants Hayek, Albis, Bronstein, Union Wellness, Advanced Spinal, Albis Chiro, Axis Chiro, Premier Chiro, Dynamic, Excel, Beynin, Patel and Shapiro regularly failed to properly evaluate the patients before performing MUAs. The MUAs were repeatedly performed without medical necessity. Repeatedly, second and third days of MUA were ordered, and the MUA procedure reports and letters of medical necessity were boiler plate, with little or no reference to the patient's individual medical history and diagnosis.

52

Case 1:21-cv-05523-MKB-PK    Document 730-2    Filed 04/13/26    Page 58 of 111 PageID #: 11485

195.    There was no medical basis to perform the MUA.  MUAs have no established benefits for the diagnoses established in any of these patients – there was no reason at all in any case for any of their body parts to be managed by MUA.  MUA could have been harmful in some of these cases and was risky for some of the patients.  All MUAs subjected the patients to the risk of anesthesia without necessity.

196.    The risks of manipulation and harm to patients depend upon the body part being manipulated.  For example, cervical spine manipulation carries special risks of fracture and paralysis.  The first two cervical vertebrae are connected by ligaments that may be loose and unstable. There can be disk herniations that may be worsened with manipulation.  The awake patient may be able to warn the chiropractor if he is manipulating the spine too hard, but the asleep person has no ability to communicate protective sensation.

197.    In the thoracic spine, if the manipulation was in theory strong enough to actually move the vertebrae, there would be risk of rib fracture.

198.    This was a dangerous pattern and was engaged in to generate unnecessary billing which in turn depleted the patients' insurance coverage if paid.

199.    In addition to the fact that none of this billing was medically necessary, the Defendants billing for MUA billed for more procedures and for the treatment of more body parts than could conceivably be necessary and for services that were not performed.

200.    The Defendants Hayek, Albis, Bronstein, Union Wellness, Advanced Spinal, Albis Chiro, Axis Chiro, Premier Chiro, Dynamic, Excel, Beynin, Patel and Shapiro used boilerplate MUA operative reports that in large sections of the operative reports were word for word the same for all patients.  The Defendants Union Wellness, Hayek, Beynin, Bronstein, Albis and Excel misrepresented that patients needed MUA because they were fearful of other treatment.

53

Case 1:21-cv-05523-MKB-PK    Document 730-2    Filed 04/13/26    Page 59 of 111 PageID #: 11486

This was a completely made up claim submitted for patient after patient. The Defendants Union Wellness, Hayek, Beynin, Bronstein, Albis and Excel mailed operative reports on the letterhead of Excel to the Plaintiff with this false claim and proceeded to perform one unnecessary surgery after another based upon these misrepresentations.

201.    In claim after claim the Defendants Union Wellness, Hayek, Beynin, Bronstein, Albis and Excel falsely represented that:

Indication: Upon review of the patient's history and supplied medical records, a plateau has been reached reflecting minimal further improvement with past treatment attempts. Upon examination, less than optimum range of motion is present with significant end range pain and myofascial tenderness to palpitation and/or paresthesias.

Considering this patient is not a surgical candidate/failed surgery; or has received minimal to no relief from other aggressive treatments/is fearful of other aggressive treatments/ is fearful of other aggressive treatments such as epidural and/or facet and/or trigger point injections and that no other conservative medical intervention other than MUA is available at this point in time. It is deemed appropriate to commence with a series of three MUA's. The standards of protocol being followed are set forth by the National Academy of MUA physicians.

202.    In claim after claim the Defendants Union Wellness, Hayek, Beynin, Bronstein, Albis and Excel made these same word for word claims and represented that the patients were fearful of other treatment even when they were in fact getting other treatment.

203.    Similar boilerplate claims were made by all of the MUA Defendants showing no regard for the interests of the patients whatsoever.

54

Case 1:21-cv-05523-MKB-PK   Document 730-2   Filed 04/13/26   Page 60 of 111 PageID #: 11487

204.    The Defendants Albis, Benyin, Patel, Bronstein and Excel used the following representation for patient after patient with no thought for the individual symptoms or condition of the patients:

Indications for Procedure:

Based on the recent consultation and review of the patient's history and supplied medical records, I believe a less than optimal response has been reached in the patient's recovery, which is still considerably less then the maximum medical improvement (MMI).  On today's examination, there remains a less than optimum range of motion, significant end-range pain, myofascial tenderness and pain to palpation.  The patient's subjective and objectives findings provide indication for the MUSA being done today.  Considering this patient has not achieved MMI from other aggressive and/or conservative treatment modalities and no other conservative medical intervention other than MUSA is available at this point in time, it is deemed appropriate to commence with a series of one to three MUAs, as in office manipulation has provided intermittent relief to the patient.  The standard of protocols set forth by the National Academy of MUA Physicians were followed.

205.    Not only was this same paragraph used by these Defendants for MUA provided by one chiropractic provider, it was used by these Defendants even when the MUA was done by different entities.  The patients came last.  There was no customization for the patients' actual conditions.  In a sloppy boilerplate rationalization for procedures the patients did not need, they were placed under anesthesia with all of its risks, usually on multiple occasions and these Defendants billed huge amounts of money which could have exhausted or depleted the patients' insurance coverage.

Case 1:21-cv-05523-MKB-PK    Document 730-2    Filed 04/13/26    Page 61 of 111 PageID #: 11488

206.    The MUA Defendants manipulated the same areas whether the patients had injuries or not. Operative report after operative report showed the same treatment word for word. Tall, short, younger, older, in good health or bad, virtually everyone was treated the same. It didn't matter if their medical records showed serious injuries that could be aggravated or further injured by manipulation, the treatment was the same.

207.    Just as the indications were the same, and the treatment was the same, the results were reported to be the same for virtually everyone. There was no variation. Virtually all reports were of successful outcomes in the MUA. There was no actual feedback for the specific patients. The claims of need and the results of the treatment were all made up.

208.    The Defendants Excel, Beynin and Albis regularly used the same exact wording for the claimed results for each patients. The Defendants Excel, Beynin and Albis regularly submitted reports with the same exact results for each patient as follows:

The patient underwent MUA of the axial spine and supporting musculature. The patient tolerated the procedure well; there were no intra-operative or post-operative complications. The patient was able to achieve increased motion post-MUA without significant muscle guarding. The patient also showed decrease in trigger points and muscle spasm. With the improvement of range of motion it is medically reasonable to conclude that this patient's fibro-adhesive conditions were significantly impacted, increasing the potential for appropriate neuromuscular re-education of affected myofascial structures and before having reestablishment of collagen deposition during the healing phase. Prior to performing any additional procedures we will have the patient complete an additional VAS as well as having the patient evaluated.

209.    Again and again Excel and Dynamic submitted billing for treatment of pelvic ring

56

Case 1:21-cv-05523-MKB-PK    Document 730-2    Filed 04/13/26    Page 62 of 111 PageID #: 11489

fractures which the patient not have.

210.    On April 30, 2015, May 1, 2015 and May 2, 2015, patient V.B. claim 781158-07 underwent MUA at the Defendant Excel.  There was no necessity for these services and the Defendants falsely represented that it was necessary for the patient's condition as a result of a covered accident.  In mailings to the Plaintiff made at or about the time of the services, the Defendants Excel, Union Wellness, Hayek, Albis and Beynin represented that Hayek was the Primary physician and Beynin and Albis were the Co Surgeons.  Each MUA was performed by two chiropractors.  The billing for these individual doctors by the Defendants Excel, Union Wellness included CPT code 27194 which is treatment of a pelvic fracture and was mailed to the Plaintiff at or about the time of the dates of service.  The patient did not suffer a pelvic fracture.  The anesthesia was ordered by the chiropractors performing the MUA.  Excel illegally billed for the anesthesia.

211.    Patient V.B. was transported from his residence in the Bronx by the Defendant Excel to New Jersey.  The Defendant Excel billed for a pre surgery clearance allegedly performed at Excel; on April 30, 2015 by the Defendant Shapiro.  Excel also billed for treatment of a non-existent pelvic ring fracture.

212.    By billing for MUA on three successive days, these Defendants gave no opportunity for the patient V B to respond and for an assessment to be made of any need for the second and third MUAs.  These MUAs were performed in serial fashion and the claim of need was a complete sham.

213.    Although Union Wellness is not authorized to provide health care services in New York, its bills for these services for Patient V.B. used the address of "Union Wellness Center 591 Stewart Avenue Suite 513 Garden City New York 11530."

57

Case 1:21-cv-05523-MKB-PK   Document 730-2   Filed 04/13/26   Page 63 of 111 PageID #: 11490

214.    The billing for approximately thirty minutes of chiropractic manipulation over these three dates including two different bills for each date by the Defendant Union Wellness for the chiropractors, one illegal bill for anesthesia for each procedure by the Defendant Excel and one facility fee bill for each date by Excel exceeded $16,000 and if paid would have used a substantial part of the patient's mandatory no-fault coverage.  No disclosure of this was made by the Defendants to the patient.

215.    On April 17, 2015, April 18, 2015 and May 2, 2015, patient J.D. claim 658897-04 underwent MUA at the Defendant Excel.  There was no necessity for these services and the Defendants falsely represented that it was necessary for the patient's condition as a result of a covered accident.  In mailings to the Plaintiff made at or about the time of the services, the Defendants Excel, Union Wellness, Hayek, Albis and Bronstein represented that Hayek was the Primary physician and Bronstein and Albis were the Co Surgeons.  Each MUA was performed by two chiropractors.  The billing for these individual doctors by the Defendants Excel, Union Wellness included CPT code 27194 which is treatment of a pelvic fracture and was mailed to the Plaintiff at or about the time of the dates of service.  The patient did not suffer a pelvic fracture.  The anesthesia was ordered by the chiropractors performing the MUA.  Excel illegally billed for the anesthesia.

216.    Patient J.D. was transported from his residence in the Bronx by the Defendant Excel to New Jersey.  The Defendant Excel billed for a pre surgery clearance allegedly performed at Excel; on April 17, 2015 by the Defendant Shapiro.  Excel also billed for treatment of a non-existent pelvic ring fracture.

217.    By billing for MUA on two successive days, these Defendants gave no opportunity

58

Case 1:21-cv-05523-MKB-PK   Document 730-2   Filed 04/13/26   Page 64 of 111 PageID #: 11491

for the patient J.D. to respond and for an assessment to be made of any need for the second MUA. These MUAs were performed in serial fashion and the claim of need was a complete sham.

218.    Although Union Wellness is not authorized to provide health care services in New York, its bills for these services for Patient J.D. used the address of "Union Wellness Center 591 Stewart Avenue Suite 513 Garden City New York 11530."

219.    The billing for approximately thirty minutes of chiropractic manipulation over these three dates including two different bills for each date by the Defendant Union Wellness for the chiropractors, one illegal bill for anesthesia for each procedure by the Defendant Excel and one facility fee bill for each date by Excel exceeded $16,000 and if paid would have used a substantial part of the patient's mandatory no-fault coverage. No disclosure of this was made by the Defendants to the patient.

220.    The Defendants submitted "Operative Reports" representing that an operation had taken place. Each of the "Operative Reports" for dates of service April 17, 2015, April 18 and May 2, 2015 for patient J.D. was on the letterhead of the Defendant Excel. The Defendants Union Wellness, Hayek and Excel mailed these operative reports to the Plaintiff in April and May of 2015.

221.    On July 1, 2014, July 3, 2014 and July 8, 2014, patient S T claim 656750-02 underwent MUA at the Defendant Excel. There was no necessity for these services and the Defendants falsely represented that it was necessary for the patient's condition as a result of a covered accident. In mailings to the Plaintiff made at or about the time of the services, the Defendants Excel, Union Wellness, Hayek and Bronstein represented that Hayek was the Primary physician and Bronstein was the Co Surgeon. Each MUA was performed by two

59

Case 1:21-cv-05523-MKB-PK    Document 730-2    Filed 04/13/26    Page 65 of 111 PageID #: 11492

chiropractors. The billing for these individual doctors by the Defendants Excel, Union Wellness and Bronstein through his professional corporation Target Chiropractic, P.C. included CPT code 27194 which is treatment of a pelvic fracture and was mailed to the Plaintiff at or about the time of the dates of service. The patient did not suffer a pelvic fracture. Bronstein through his professional corporation Target Chiropractic, P.C. billed three times for the same date of service for CPT code 22505 which is in violation of the fee schedule and excessive. The anesthesia was ordered by the chiropractors performing the MUA. Excel illegally billed for the anesthesia, Shapiro provided the anesthesia for the July 8, 2014 MUA and signed the bill for that MUA by Excel on behalf of Excel.

222. Patient S.T. was transported from his residence in the Bronx by the Defendant Excel to New Jersey. Excel also billed for treatment of a non-existent pelvic ring fracture.

223. Although Union Wellness is not authorized to provide health care services in New York, its bills for these services for Patient S.T. used the address of "Union Wellness Center 591 Stewart Avenue Suite 513 Garden City New York 11530."

224. The billing for approximately thirty minutes of chiropractic manipulation over these three dates including two different bills for each date by the Defendant Union Wellness and Bronstein through his professional corporation for the chiropractors, one illegal bill for anesthesia for each procedure by the Defendant Excel and one facility fee bill for each date by Excel exceeded $16,000 and if paid would have used a substantial part of the patient's mandatory no-fault coverage. No disclosure of this was made by the Defendants to the patient.

225. The Defendants submitted "Operative Reports" representing that an operation had taken place. Each of the "Operative Reports" for dates of service July 1, 2014, July 3, 2014 and July 8, 2014 for patient S.T. was on the letterhead of the Defendant Excel. The Defendants

60

Case 1:21-cv-05523-MKB-PK Document 730-2 Filed 04/13/26 Page 66 of 111 PageID #: 11493

Union Wellness, Hayek, Bronstein and Excel mailed these operative reports to the Plaintiff in July of 2014.

226. On December 21, 2016 patient E.R. 792275-03 underwent MUA at the Defendant Excel. On January 4, 2017 and January 11, 2017, patient E.R. underwent MUA at the Defendant Dynasty. The Defendant Beynin participated in each MUA and signed the operative reports. There was no necessity for these services and the Defendants falsely represented that it was necessary for the patient's condition as a result of a covered accident. Each MUA was performed by two chiropractors. The anesthesia was ordered by the chiropractors performing the MUA. The billing for these individual doctors by the Defendants Excel and Dynasty included CPT code 27194 which is treatment of a pelvic fracture and was mailed to the Plaintiff at or about the time of the dates of service. The patient did not suffer a pelvic fracture. The anesthesia was ordered by the chiropractors performing the MUA. Excel illegally billed for the anesthesia for the December 21. 2016 MUA. The Defendant Citimed NJ billed for the anesthesia for the January 4, 2017 and January 11, 2017 MUAs.

227. Patient E.R. was transported from her residence in the Bronx by the Defendants Excel and Dynamic to New Jersey. The Defendant Excel billed for a pre surgery clearance allegedly performed at Excel on December 21, 2016. Excel also billed for treatment of a non existent pelvic ring fracture. The Defendant CitiMed NJ billed for a pre surgery clearance allegedly performed at Dynamic on January 4, 2017. The Defendants submitted "Operative Reports" representing that an operation had taken place.

228. On April 1, 2016, April 2, 2016 and April 22, 2016, patient M.H. claim 664357-03 underwent MUA at the Defendant Excel. There was no necessity for these services and the Defendants falsely represented that it was necessary for the patient's condition as a result of a

61

Case 1:21-cv-05523-MKB-PK   Document 730-2   Filed 04/13/26   Page 67 of 111 PageID #: 11494

covered accident. In mailings to the Plaintiff made at or about the time of the services, the Defendants Excel, Hayek and Bronstein represented that Hayek was the Primary physician and Bronstein was the Co Surgeon. Each MUA was performed by two chiropractors. The anesthesia was ordered by the chiropractors performing the MUA. The billing for these individual doctors by the Defendants Excel included CPT code 27194 which is treatment of a pelvic fracture and was mailed to the Plaintiff at or about the time of the dates of service. The patient did not suffer a pelvic fracture. Excel illegally billed for the anesthesia, Shapiro provided the anesthesia for the April 22, 2016 MUA and signed the bill for that MUA by Excel on behalf of Excel.

229. The Defendants Hayek, Beynin and Excel misrepresented that patient M.H. needed MUA because she was fearful of other treatment. This was a completely made up claim. The Defendants Excel, Hayek and Beynin mailed operative reports on the letterhead of Excel to the Plaintiff with this false claim and proceeded to perform unnecessary MUAs based upon these misrepresentations. Excel knew these claims were false because Excel itself billed for epidural and trigger point injections administered to the patient two months earlier on February 26, 2016. Despite this fact, Defendants Hayek, Beynin and Excel represented that the patient was fearful of epidural and/or trigger point injections. These Defendants showed no regard for the patient and used the patient as an object to bill fraudulently for including services that were not provided and services that were not necessary with a statement about the patient that was in large part word for word the same as those used for completely different patients.

230. Patient M.H. was transported from her residence in the Bronx by the Defendant Excel to New Jersey. Excel billed for the pre operative clearance provided by the Defendant Shapiro on April 1, 2016. Excel also billed for treatment of a non existent pelvic ring fracture.

62

Case 1:21-cv-05523-MKB-PK    Document 730-2    Filed 04/13/26    Page 68 of 111 PageID #: 11495

231.    The Defendants submitted "Operative Reports" representing that an operation had taken place. Each of the "Operative Reports" for dates of service April 1, 2016, April 2, 2016 and April 22, 2016 for patient M.H. was on the letterhead of the Defendant Excel. The Defendants Hayek, Bronstein and Excel mailed these operative reports to the Plaintiff in April of 2016.

232.    On April 8, 2016, April 9, 2016 and April 23, 2016, patient J.L. claim 663349-05 underwent MUA at the Defendant Excel. There was no necessity for these services and the Defendants falsely represented that it was necessary for the patient's condition as a result of a covered accident. The patient had been receiving chiropractic care and no specific reason was provided for the MUAs being performed. Instead, the Defendants Excel, Hayek, Union Wellness and Beynin made statements of necessity that were word for word the same as other patients. The Defendants Excel, Hayek, Union Wellness and Beynin represented that patient J.L. needed MUA because he was fearful of other treatment. This was a completely made up claim. Each MUA was performed by two chiropractors. The anesthesia was ordered by the chiropractors performing the MUA. The billing for these individual doctors by the Defendants Excel included CPT code 27194 which is treatment of a pelvic fracture and was mailed to the Plaintiff at or about the time of the dates of service. The patient did not suffer a pelvic fracture. Excel illegally billed for the anesthesia.

233.    Patient J.L. was transported from her residence in Brooklyn by the Defendant Excel to New Jersey. Excel also billed for treatment of a non existent pelvic ring fracture.

234.    The billing for approximately thirty minutes of chiropractic manipulation over these three dates including two different bills for each date by the Defendant Union Wellness, one illegal bill for anesthesia for each procedure by the Defendant Excel and one facility fee bill

63

Case 1:21-cv-05523-MKB-PK   Document 730-2   Filed 04/13/26   Page 69 of 111 PageID #: 11496

for each date by Excel exceeded $16,000 and if paid would have used a substantial part of the patient's mandatory no-fault coverage. No disclosure of this was made by the Defendants to the patient.

235. The Defendants submitted "Operative Reports" representing that an operation had taken place. Each of the "Operative Reports" for patient J.L. was on the letterhead of the Defendant Excel. The Defendants Union Wellness, Hayek, Beynin and Excel mailed these operative reports to the Plaintiff in April of 2016.

236. On June 11 and June 13, 2014, patient J.P. claim 656579-04 underwent MUA at the Defendant Excel. There was no necessity for these services and the Defendants falsely represented that it was necessary for the patient's condition as a result of a covered accident. In mailings to the Plaintiff made at or about the time of the services, the Defendants Excel, Hayek, Union Wellness and Bronstein represented that Hayek was the Primary physician and Bronstein was the Co Surgeon. The Defendant Excel in its intra operative record represented that the Defendants Hayek and Bronstein were surgeons. Each MUA was performed by two chiropractors. The anesthesia was ordered by the chiropractors performing the MUA. The billing for these individual doctors by the Defendants Excel, Union Wellness and Bronstein through his professional corporation Target Chiropractic, P.C. included CPT code 27194 which is treatment of a pelvic fracture and was mailed to the Plaintiff at or about the time of the dates of service. The patient did not suffer a pelvic fracture. Bronstein through his professional corporation Target Chiropractic, P.C. billed three times for the same date of service for CPT code 22505 which is in violation of the fee schedule and excessive. Excel illegally billed for the anesthesia.

64

Case 1:21-cv-05523-MKB-PK   Document 730-2   Filed 04/13/26   Page 70 of 111 PageID #: 11497

237.    The Defendants Hayek, Union Wellness, Bronstein and Excel misrepresented that patient M H needed MUA because he was fearful of other treatment including epidural and trigger point injections. This was a completely made up claim which was word for word identical to the same claim these Defendants made for other patients.  The Defendants Hayek, Union Wellness, Bronstein and Excel mailed operative reports on the letterhead of Excel to the Plaintiff with this false claim and proceeded to perform unnecessary MUAs based upon these misrepresentations.  These claims were false and the month before the MUA the patient had needle EMG and had numerous needles inserted.  These Defendants showed no regard for the patient and used the patient as an object to bill fraudulently for including services that were not provided and services that were not necessary with a statement about the patient that was in large part word for word the same as those used for completely different patients.

238.    Patient J.P. was transported from his residence in the Bronx by the Defendant Excel to New Jersey.

239.    The Defendants submitted "Operative Reports" representing that an operation had taken place. Each of the "Operative Reports" for dates of service June 11 and June 13, 2014 for patient J P was on the letterhead of the Defendant Excel.  The Defendants Excel, Hayek, Union Wellness and Bronstein mailed these operative reports to the Plaintiff in June of 2014.

240.    On April 9, 2015, April 16, 2015 and May 14, 2015, patient H.F. claim 779314-01 underwent MUA at the Defendant Excel.  There was no necessity for these services and the Defendants falsely represented that it was necessary for the patient's condition as a result of a covered accident.  Each MUA was performed by two chiropractors.  The anesthesia was ordered by the chiropractors performing the MUA. The billing for these individual doctors by the Defendants Excel, Albis, Albis Chiro and Beynin included CPT code 27194 which is treatment

65

Case 1:21-cv-05523-MKB-PK     Document 730-2     Filed 04/13/26     Page 71 of 111 PageID #: 11498

of a pelvic fracture and was mailed to the Plaintiff at or about the time of the dates of service. The patient did not suffer a pelvic fracture. Excel illegally billed for the anesthesia. The Defendant Shapiro provided the anesthesia for the April 9, 2015 MUA and signed the bill submitted by Excel on behalf of Excel. Excel billed for a pre operative clearance on April 9, 2015.

241.     Patient H.F. was transported from his residence in Manhattan by the Defendant Excel to New Jersey. Excel also billed for treatment of a non existent pelvic ring fracture.

242.     The billing for approximately thirty minutes of chiropractic manipulation over these three dates including two different bills for each date by the Defendant Albis Chiro, one illegal bill for anesthesia for each procedure by the Defendant Excel and one facility fee bill for each date by Excel exceeded $16,000 and if paid would have used a substantial part of the patient's mandatory no-fault coverage. No disclosure of this was made by the Defendants to the patient.

243.     The Defendants submitted "Operative Reports" representing that an operation had taken place. The Defendants Albis Chiro, Albis and Excel mailed these operative reports to the Plaintiff in April and May of 2016.

244.     On May 25, 2017, patient M.M. claim 795001-07 underwent MUA at the Defendant Dynamic. There was no necessity for these services and the Defendants falsely represented that it was necessary for the patient's condition as a result of a covered accident. In mailings to the Plaintiff made at or about the time of the services, the Defendants Dynamic, Advanced Spinal, Citimed NJ, and Beynin represented that Beynin was the Primary physician. The Defendant Dynamic in its intra operative record represented that the Defendant Beynin was a surgeos. Each MUA was performed by two chiropractors. The anesthesia was ordered by the

66

Case 1:21-cv-05523-MKB-PK   Document 730-2   Filed 04/13/26   Page 72 of 111 PageID #: 11499

chiropractors performing the MUA. Dynamic illegally billed for the anesthesia which was provided by and billed for by the Defendant Metro Pain.

245. Patient M.M. was transported from his residence in the Bronx by the Defendant Dynamic to New Jersey.

246. The Defendants submitted an "Operative Report" representing that an operation had taken place. The "Operative Reports" for date of service May 25, 2017 for patient M.M. was on the letterhead of the Defendant Dynamic. The Defendant Advanced Spinal used the address of Dynamic on its letterhead and its Certificate of Incorporation lists 321 Essex Street Hackensack, New Jersey as its registered address. The Defendants Advanced Spinal, Dynamic, Citimed NJ, Albis and Beynin mailed the operative report to the Plaintiff along with the bills at or about the time of the dates of service. American Transit received the bill for Advanced Spinal on May 30, 3017 and for Dynamic and Citimed NJ on June 9, 2017.

247. The Defendant Albis with the assistance of his professional entities the Defendants Advanced Spinal, Albis Chiro, Axis Chiro and Premier Chiro regularly billed for unnecessary MUA including MUA at the Defendants Excel and Dynamic and billed for services that were not provided, were not necessary and were not billed properly.

**The Independent Contractor Scheme**

248. Under New York no-fault coverage a health provider may not bill for services provided by independent contractors. In order to permit insurers to know whether services have been provided by employees or independent contractors, the Department of Financial Services promulgated a prescribed claim form – the NF 3 form – that requires a health provider to disclose whether or not the services being billed for were provided by employees or independent contractors.

67

Case 1:21-cv-05523-MKB-PK Document 730-2 Filed 04/13/26 Page 73 of 111 PageID #: 11500

249.    Since 2001, the New York State Department of Insurance (now the New York State Department of Financial Services) consistently has reaffirmed its longstanding position that healthcare providers are not entitled to receive reimbursement under the no-fault laws for healthcare professionals performing services as independent contractors.

250.    The Defendants Columbus Imaging and Union Wellness have billed American Transit for the services of a number of independent contractors. The Defendant Columbus Imaging often discloses the independent contractor on the bill submission to the Plaintiff. The Defendant Union Wellness submits bills claiming that the chiropractors were their employees. For example, Diana Beynin, D.C. and Peter Albis, D.C. have been held out to be employees of Union Wellness.  By claiming these chiropractors were its employees the Defendant Union Wellness was able to bill for these services, when it was not entitled to reimbursement since they were independent contractors.

251.    In billing mailed to the Plaintiff for Patient J.D. claim 658897-04 in April and May of 2015, the Defendant Union Wellness misrepresented that the Defendants Albis and Bronstein were employees when they were independent contractors.

252.    In billing mailed to the Plaintiff for Patient J.L. claim 663349-05 in April of 2016, the Defendant Union Wellness misrepresented that the Defendant Beynin was an employee when she was an independent contractor.

253.    In billing mailed to the Plaintiff for Patient H.F. claim 779314-01 in April of 2015, the Defendant Albis Chiro concealed the fact that the Defendant Beynin was an independent contractor.

### The Fraudulent Scheme to Bill in Violation of the Fee Schedule

68

Case 1:21-cv-05523-MKB-PK   Document 730-2   Filed 04/13/26   Page 74 of 111 PageID #: 11501

254.     In the overall pattern in which New York resident patients were transported to New Jersey for health services they could have received in New York, the Defendants generally submitted excessive billing that depleted the patients' insurance coverage and contributed to the cost of no fault insurance for consumers.  As the Department of Financial Services stated on October 10, 2017 "certain providers have assumed a practice of charging the prevailing fee, or more, in their geographical location outside of New York, which exceeds New York limits and is believed to lead to inflated claims, depleted coverage, increased litigation and higher premiums."  The Department of Financial Services further expressed its concern that "New York residents eligible for no-fault benefits for their physical injuries often are influenced to seek healthcare services from non-New York providers that engage in such practice."

255.     In this pattern of inflated and unnecessary services, the Defendants regularly submitted inflated and unnecessary billing to the Plaintiff.  Most of the services at the Defendant ASCs did not need to be provided in an ASC to begin with and there was no basis for the billing of unnecessary facility fees other than to enrich the Defendants at the expense of the patients' insurance coverage.

256.     A New Jersey ASC can only bill for services that appear in the New Jersey ASC fee schedule.  The Defendant Excel routinely billed for anesthesia services and office visits which it is not permitted to bill for. Both Defendants Excel and Dynamic billed for supplies and other procedure-related services which they are not permitted to bill for. Such billing constitutes improper unbundling of claims.  Pursuant to the codified New Jersey Fee Schedule Rules, these services are considered part of the global services provided by an ASC in New Jersey.  The Defendants Excel and Dynamic frequently failed to apply these codified rules in their bills that include charges well in excess of the appropriate fee schedule amounts.

69

Case 1:21-cv-05523-MKB-PK   Document 730-2   Filed 04/13/26   Page 75 of 111 PageID #: 11502

257.    The New Jersey fee schedule is codified by the legislature in the New Jersey Administrative Code 11:3-29.1, et al.

258.    Billing under the New Jersey Fee Schedule is first divided into 2 Regions, North and South.  The Region designation for any given provider is based upon the provider's address, and is determined by its zip code.  N.J.C.A. § 11:3-29.3.  The Defendants Excel and Dynamic are considered to be in the North Region with a zip code of 07601.  Thus, these Defendants must utilize billing amounts that appear in the columns designated for the North Region.

259.    The New Jersey Fee Schedule billing amounts appear in a chart containing four (4) columns.  The first two columns reflect the billable amounts available for providers separated into North and South regions.  The third and fourth columns represent what ASCs may bill, also separated into North and South regions.  As stated, the applicant herein is considered to be in the North Region.

260.    According to the New Jersey Fee Schedule rules, ASCs may bill only for CPT Codes that appear in the ASC Fee columns.  N.J.S.A. § 11:3-29.3(e)(3):

261.    Codes in Appendix, Exhibit 1 that do not have an amount in the ASC facility fee column are not reimbursable if performed in an ASC and are not subject to the provision in (e) above concerning services not set forth in or covered by the fee schedules.

262.    Anesthesia services are specifically addressed in the first line of the Fee Schedule. No amount is posted in either region in the ASC columns of the fee schedule.  Thus, pursuant to the New Jersey Fee Schedule rules, anesthesia services are not a reimbursable fee for a facility. N.J.A.C. 11:3-29.5.  This section, entitled "Outpatient surgical facility fees."  N.J.A.C. 11:3-29.5(a)(3) specifically states:

70

Case 1:21-cv-05523-MKB-PK    Document 730-2    Filed 04/13/26    Page 76 of 111 PageID #: 11503

"(a) ASC facility fees are listed in Appendix, Exhibit 1, by CPT code. Codes that do not have an amount in the ASC facility fee column are not reimbursable if performed in an ASC." (See Fee Schedule rules at page 19).

263.    This provision of the New Jersey Fee Schedule has been upheld by the Appellate Division in New Jersey in *New Jersey Healthcare Coalition v. New Jersey Dept of Banking and Ins.*, 440 N.J.Super. 129 (App.Div. 2015), *cert denied*, 222 NJ 17 (2015). The Defendant Excel routinely includes additional charges for anesthesia services in its bills despite being precluded from doing so. The Defendant Excel has routinely submitted billing for anesthesia services in amounts ranging from $900.00 to $2,475.00 under various CPT Codes depending upon the procedure performed and the length of time that the patient(s) was allegedly under anesthesia.

264.    The Defendant Excel submitted numerous such claims to the Plaintiff.

265.    The Defendant Excel mailed a bill to American Transit for an arthroscopic surgery of the left shoulder on patient A.S.J. claim number 791785-05 allegedly performed on December 19, 2016. This bill was mailed at or around the time it is dated. It was received by American Transit on January 30, 2017. Excel billed for anesthesia services under CPT Code 01630 in the amount of $1,800.00.

266.    The Defendant Excel mailed a bill to American Transit for an arthroscopic surgery of the left shoulder on patient C.G. claim number 791692-02 allegedly performed on December 5, 2016. This bill was mailed at or around the time it is dated. It was received by American Transit on December 27, 2016. Excel billed for anesthesia services under CPT Code 01630 in the amount of $2,025.00.

267.    The Defendant Excel mailed a bill to American Transit for an arthroscopic surgery of the left shoulder on patient I.T. claim number 792187-03 allegedly performed on

71

Case 1:21-cv-05523-MKB-PK Document 730-2 Filed 04/13/26 Page 77 of 111 PageID #: 11504

December 19, 2016. This bill was mailed at or around the time it is dated. It was received by American Transit on January 30, 2017. Excel billed for anesthesia services under CPT Code 01630 in the amount of $1,575.00.

268. The Defendant Excel mailed a bill to American Transit for an arthroscopic surgery of the left shoulder on patient J.L. claim number 663349-05 allegedly performed on December 20, 2016. This bill was mailed at or around the time it is dated. It was received by American Transit on January 23, 2017. Excel billed for anesthesia services under CPT Code 01400 in the amount of $1,350.00.

269. The Defendant Excel mailed a bill to American Transit for an arthroscopic surgery of the left shoulder on N.A.K., claim number 791607-03, allegedly performed on December 19, 2016. This bill was mailed at or around the time it is dated. It was received by American Transit on January 30, 2017. Excel billed for anesthesia services under CPT Code 01400 in the amount of $1,575.00.

270. The Defendant Excel mailed a bill to American Transit for an arthroscopic surgery of the left shoulder on T.W. under claim number 663349-03 allegedly performed on December 13, 2016. This bill was mailed at or around the time it is dated. It was received by American Transit on January 12, 2017. Excel billed for anesthesia services under CPT Code 01630 in the amount of $1,575.00.

271. The Defendant Excel mailed a bill to American Transit for an arthroscopic surgery of the left shoulder on V.D.E. claim number 786408-05 allegedly performed on December 13, 2016. This bill was mailed at or around the time it is dated. It was received by American Transit on January 12, 2017. Excel billed for anesthesia services under CPT Code 01630 in the amount of $1,800.00.

72

Case 1:21-cv-05523-MKB-PK    Document 730-2    Filed 04/13/26    Page 78 of 111 PageID #: 11505

272.    The Defendant Excel mailed a bill to American Transit for an arthroscopic surgery of the left shoulder on D.A. claim number 661642-04 allegedly performed on November 9, 2015. This bill was mailed at or around the time it is dated. It was received by American Transit on December 14, 2016.  Excel billed for anesthesia services under CPT Code 01630 in the amount of $2,475.00.

273.    The Defendant Excel mailed a bill to American Transit for an arthroscopic surgery of the left shoulder on D.J. under claim number 666955-03 allegedly performed on November 3, 2016. This bill was mailed at or around the time it is dated. It was received by American Transit on December 9, 2016.  Excel billed for anesthesia services under CPT Code 01630 in the amount of $2,025.00.

274.    The Defendant Excel mailed a bill to American Transit for an arthroscopic surgery of the left shoulder on H.I., claim number 655722-02, allegedly performed on June 24, 2014. This bill was mailed at or around the time it is dated.  It was received by American Transit on July 31, 2016. Excel billed for anesthesia services under CPT Code 01630 in the amount of $2,250.00. The Defendant Drugs R' Us also mailed a bill to American Transit for pharmacy services provided to patient H.I. on July 22, 2014. American Transit received the bill on July 31, 2014. The records for Drugs R' Us lists 1963 Grand Concourse Bronx, New York on its letterhead which is owned by the Defendant Moshe.

275.    The Defendant Excel mailed a bill to American Transit for an arthroscopic surgery of the left shoulder on I.S., claim number 786252-05, allegedly performed on May 23, 2016. This bill was mailed at or around the time it is dated. It was received by American Transit on June 21, 2016. Excel billed for anesthesia services under CPT Code 01630 in the amount of $1,800.00.

73

Case 1:21-cv-05523-MKB-PK    Document 730-2    Filed 04/13/26    Page 79 of 111 PageID #: 11506

276.    The Defendants Excel and Dynamic routinely inflated their billing by adding charges for supplies and services which, pursuant to the New Jersey Fee Schedule rules, are included in the ASC charges and cannot be billed independently. In addition, these CPT Codes either have no amount in the ASC columns or are not listed on the fee schedule at all.

277.    Supplies are encompassed in the overall ASC facility fee adopted by the New Jersey legislature. The codified rules specifically preclude a provider from artificially inflating their bill by breaking its billing into multiple parts when it should be billed as one procedure, or the improperly "unbundling" of its claim. N.J.A.C. 11:3-29.4(g)(1) specifically states:

> Artificially separating or partitioning what is inherently one total procedure into subparts that are integral to the whole for the purpose of increasing medical fees is prohibited. Such practice is commonly referred to as "unbundling" or "fragmented" billing. N.J.A.C. 11:3-29.4(g)(1)

278.    ASC facility fees include expenses that are provided during the administration of a procedure as part of the global procedure charge. According to N.J.A.C. 11:3-29.5 (a), the ASC facility fee includes services that would be covered if the services were furnished in a hospital on an inpatient or outpatient basis, including:

1. Use of operating and recovery rooms, patient preparation areas, waiting rooms, and other areas used by the patient or offered for use to persons accompanying the patient;

2. All services and procedures in connection with covered procedures furnished by nurses, technical personnel and others involved in the patient's care;

3. Drugs, biologicals, surgical dressings, supplies, splints, casts, appliances, and equipment;

4. Diagnostic and therapeutic items and service.

74

Case 1:21-cv-05523-MKB-PK    Document 730-2    Filed 04/13/26    Page 80 of 111 PageID #: 11507

5. Administrative, recordkeeping, and housekeeping items and services;

6. Blood, blood plasma, platelets, etc.;

7. Anesthesia materials, including the anesthetic itself, and any materials, whether disposable or re-usable, necessary for its administration; and

8. Implantable DME and prosthetics.

279.    N.J.A.C. 11:3-29.5(a) at subparagraph (2), specifically indicates that "included in the facility fee are all services and procedures in connection with covered procedures furnished by nurses, technical personnel and others involved in the patient's care." As the rules specifically include "others involved in the patient's care," this includes any physician in the employment of the facility who administers anesthesia.

280.    On virtually every procedure billed by the Defendants Excel and Dynamic, they include billing for supplies under CPT Codes 99070 (supplies & materials…) and A4565 (sling). CPT Code 99070 does not have an amount in the ASC columns of the Fee Schedule. CPT Code A4565 is durable medical equipment and not listed in the ASC Fee Schedule at all. In addition, both of these CPT Codes are covered under N.J.A.C. 11:3-29.5(a) at subparagraph (3).

281.    The Defendant Excel billed for office visits under CPT Code 99242. In the section of the bill entitled "Description of treatment or health related services rendered," Excel states "Off. Visit Pre-op clearance Lim." Any office visit and/or pre-surgery clearance clearly falls under N.J.A.C. 11:3-29.5(a) at subparagraph (2). In addition, upon review of the New Jersey Fee Schedule, there is no amount listed in the ASC columns for either region for CPT Code 99242. This CPT Code is not reimbursable to the Defendant Excel.

282.    On certain facility billing for surgeries, Excel has billed under CPT Code 93005 for an EKG with report in the amount of $37.50; under CPT Code 36415 in the amount of $18.00

75

(for collection of blood – part of the non-billable office visit); under CPT Code 80047 in the amount of $215.42 (for a blood panel – a supply used as part of the non-billable office visit) and under CPT Code 85014 in the amount of $22.61 (for a blood count hemocrit – a supply used as part of the non-billable office visit). These are unbundled parts of an alleged "office visit" which Excel can not bill for per the fee schedule. These incidental services to the non-billable office are also not reimbursable to the Applicant ASC.

283. Both ASC Defendants Excel and Dynamic routinely inflated their billing by improperly unbundling expenses for supplies, office visits and services incidental to the facility fee that they provide.

284. The Defendant Excel mailed a bill to American Transit for an arthroscopic surgery of the shoulder on patient A.S.J. claim number 791785-05 allegedly performed on December 19, 2016. This bill was mailed at or around the time it was dated. It was received by American Transit on January 30, 2017. The Defendant Excel billed for supplies under CPT Code 99070 in the amount of $500.00 and under CPT Code A4565 (sling) in the amount of $40.00.

285. The Defendant Dynamic mailed a bill to American Transit for an arthroscopic surgery of the shoulder on patient T.R. claim number 669309-02 allegedly performed on January 21, 2017. This bill was mailed at or around the time it was dated. It was received by American Transit on February 27, 2017. The Defendant Dynamic billed for supplies under CPT Code 99070 in the amount of $500 and under CPT Code A4565 in the amount of $40.

286. The Defendant Excel mailed a bill to American Transit for an arthroscopic surgery of the shoulder on patient C.G. claim number 791692-02 allegedly performed on December 5, 2016. This bill was mailed at or around the time it is dated. It was received by

American Transit on December 27, 2016. The Defendant Excel billed for supplies under CPT Code 99070 in the amount of $500.00 and under CPT Code A4565 (sling) in the amount of $40.00.

287. The Defendant Dynamic mailed a bill to American Transit for an arthroscopic surgery of the shoulder on patient D.D. claim number 668831-07 allegedly performed on March 13, 2017. This bill was mailed at or around the time it was dated. It was received by American Transit on April 7, 2017. The Defendant Dynamic billed under CPT Code c1713 (anchor/screw) in the amount of $1113 and under CPT Code A4565 (sling) in the amount of $40.

288. The Defendant Excel mailed a bill to American Transit for an arthroscopic surgery of the shoulder on patient I.T. claim number 792187-03 allegedly performed on December 19, 2016. This bill was mailed at or around the time it is dated. It was received by American Transit on January 30, 2017. The Defendant Excel billed for supplies under CPT Code 99070 in the amount of $500.00 and under CPT Code A4565 (sling) in the amount of $40.00.

289. The Defendant Dynamic mailed a bill to American Transit for an arthroscopic surgery of the shoulder on patient L.A. claim number 677513-13 allegedly performed on July 24, 2017. This bill was mailed at or around the time it was dated. It was received by American Transit on August 21, 2017. The Defendant Dynamic billed under CPT Code L3670 (canvas/webbing) in the amount of $556.50 and under CPT Code C1713 (anchor/screw) in the amount of $556.50.

290. The Defendant Excel mailed a bill to American Transit for an arthroscopic surgery of the shoulder on patient J.L. claim number 663349-05 allegedly performed on December 20, 2016. This bill was mailed at or around the time it is dated. It was received by

77

Case 1:21-cv-05523-MKB-PK   Document 730-2   Filed 04/13/26   Page 83 of 111 PageID #: 11510

American Transit on January 23, 2017. The Defendant Excel billed for supplies under CPT Code 99070 in the amount of $500.00 and under CPT Code E0100 (cane) in the amount of $44.73.

291.    The Defendant Dynamic mailed a bill to American Transit for an arthroscopic surgery of the knee on patient D.G. claim number 679767-02 allegedly performed on July 20, 2017. This bill was mailed at or around the time it was dated. It was received by American Transit on July 31, 2017. The Defendant Dynamic billed under CPT Code E0100 (cane) in the amount of $44.73.

292.    The Defendant Excel mailed a bill to American Transit for an arthroscopic surgery of the shoulder on N.A.K. claim number 791607-03 allegedly performed on December 19, 2016. This bill was mailed at or around the time it is dated. It was received by American Transit on January 30, 2017. The Defendant Excel billed for supplies under CPT Code 99070 in the amount of $500.00 and under CPT Code E0100 (cane) in the amount of $44.73.

293.    The Defendant Dynamic mailed a bill to American Transit for an arthroscopic surgery of the knee on patient F.C. claim number 668602-02 allegedly performed on March 31, 2017. This bill was mailed at or around the time it was dated. It was received by American Transit on April 21, 2017. The Defendant Dynamic billed under CPT Code E0114 (crutches) in the amount of $64.99.

294.    The Defendant Excel mailed a bill to American Transit for an arthroscopic surgery of the shoulder on T.W. claim number 663349-03 allegedly performed on December 13, 2016. This bill was mailed at or around the time it is dated. It was received by American Transit on January 12, 2017. The Defendant Excel billed for supplies under CPT Code 99070 in the amount of $500.00 and under CPT Code A4565 (sling) in the amount of $40.00.

Case 1:21-cv-05523-MKB-PK    Document 730-2    Filed 04/13/26    Page 84 of 111 PageID #: 11511

295.     The Defendant Dynamic mailed a bill to American Transit for an arthroscopic surgery of the knee on patient D.C. claim number 678236-03 allegedly performed on July 17, 2017. This bill was mailed at or around the time it was dated. It was received by American Transit on August 4, 2017. The Defendant Dynamic billed under CPT Code L3650 (clavicle strap) in the amount of $73.06.

296.     The Defendant Excel mailed billing to American Transit for an arthroscopic surgery of the shoulder on V.D.E. claim number 786408-05 allegedly performed on December 13, 2016. This bill was mailed at or around the time it is dated. It was received by American Transit on January 12, 2017. The Defendant Excel billed supplies under CPT Code 99070 in the amount of $906.00 and under Code A4565 (sling) in the amount of $40.00.

297.     The Defendant Excel mailed billing to American Transit for an arthroscopic surgery of the shoulder on D.A. claim number 661642-04 allegedly performed on November 9, 2015. This bill was mailed at or around the time it is dated. It was received by American Transit on December 14, 2016. The Defendant Excel billed for supplies under CPT Code 99070 in the amount of $1,166.00 and under CPT Code A4565 (sling) in the amount of $40.00.

298.     The Defendant Excel mailed billing to American Transit for an arthroscopic surgery of the shoulder on D.J. claim number 666955-03 allegedly performed on November 3, 2016.  This bill was mailed at or around the time it is dated. It was received by American Transit on December 9, 2016.  The Defendant Excel billed for supplies under CPT Code 99070 in the amount of $300.00 and under CPT Code A4565 (sling) in the amount of $40.00.

299.     The Defendant Excel mailed billing to American Transit for an arthroscopic surgery of the shoulder on H.I., claim number 655722-02, allegedly performed on June 24, 2014. This bill was mailed at or around the time it is dated. It was received by American Transit on

79

Case 1:21-cv-05523-MKB-PK Document 730-2 Filed 04/13/26 Page 85 of 111 PageID #: 11512

July 31, 2016. The Defendant Excel billed for supplies under CPT Code 99070 in the amount of $300.00, under CPT Code A4565 (Anchor/screw) in the amount of $556.50 and under CPT Code L3650 (shoulder orthosis) in the amount of $73.06.

300.    On or about June 15, 2016, the Defendant Excel mailed a bill to American Transit for an arthroscopic surgery of the shoulder on patient I.S., claim number 786252-05, allegedly performed on May 23, 2016, wherein it billed for supplies under CPT Code 99070 in the amount of $300.00 and under CPT Code A4565 (sling) in the amount of $40.00.

301.    Pursuant to NJAC 11:3-29.5(a), ASC facility fees are listed next to the CPT procedure codes associated with them in columns three and four of the Fee Schedule.  When a surgery requires more than one procedure, each procedure must be billed pursuant to its CPT Code descriptor.  When more than one procedure is performed in a single surgery, for billing purposes, the various procedures are subject to a multiple procedure reduction formula.

302.    N.J.A.C. § 11:3-29.5(d) provides the following:

(d) When multiple procedures are performed in an ASC or in an HOSF in the same operative session, the ASC facility fee or the HOSF fee, as applicable, for the procedure with the highest payment amount is reimbursed at 100 percent and reimbursement of any additional procedures furnished in the same session is 50 percent of the applicable facility fee.

303.    The Defendants Dynamic and Excel repeatedly billed American Transit in violation of the fee schedule for its facility services by failing to apply the multiple procedure reduction formula.

304.    In addition, the Defendants Dynamic and Excel billed fee schedule codes 29874 and 29877 as additional billing codes on their bills for arthroscopy.  Under the New Jersey ASC fee schedule rules 11:3-29(3)(g)(9)(i) these codes are specifically not billable when other

80

Case 1:21-cv-05523-MKB-PK   Document 730-2   Filed 04/13/26   Page 86 of 111 PageID #: 11513

arthroscopic codes are billed. When the provider bills CPT code 29786 as the primary procedure performed by the provider as to this patient's treatment, CPT codes 29877 and 29874 are included in the primary procedure and as a result they are not separately reimbursable. This applies both to the provider and facility.

305.    The Defendant Excel mailed a bill to American Transit for an arthroscopic surgery of the shoulder on patient A.S.J. claim number 791785-03 allegedly performed on December 19, 2016. This bill was mailed at or around the time it is dated. It was received by American Transit on January 30, 2017. The Defendant Excel billed under CPT Code 29807 in the amount of $6,462.39, under CPT Code 29820 in the amount of $6,462.39, under CPT Code 29826 in the amount of $6,462.39 and under CPT Code 29824 in the amount of $3,997.71 all of which were billed at 100%. These four procedures, performed during the same operative session, are subject to New Jersey's multiple procedure reduction formula and three should have been reduced by 50%.

306.    The Defendant Dynamic mailed a bill to American Transit for an arthroscopic surgery of the shoulder on patient M.R. claim number 1021266-01 allegedly performed on June 14, 2018. This bill was mailed at or around the time it is dated. It was received by American Transit on July 25, 2018. The Defendant Dynamic billed under CPT Code 29807 in the amount of $6,462.39, under CPT Code 29820 in the amount of $6,462.39, under CPT Code 29826 in the amount of $6,462.39 and under CPT Code 29822 in the amount of $3,997.71 all of which were billed at 100%. These four procedures, performed during the same operative session, are subject to New Jersey's multiple procedure reduction formula and three should have been reduced by 50%.

81

Case 1:21-cv-05523-MKB-PK    Document 730-2    Filed 04/13/26    Page 87 of 111 PageID #: 11514

307.    The Defendant Excel mailed a bill to American Transit for an arthroscopic surgery of the shoulder on patient C.G. claim number 791692-02 allegedly performed on December 5, 2016. This bill was mailed at or around the time it is dated. It was received by American Transit on December 27, 2016. The Defendant Excel billed under CPT Code 29807 in the amount of $6,462.39, under CPT Code 29820 in the amount of $6,462.39, under CPT Code 29826 in the amount of $6,462.39 and under CPT Code 29824 in the amount of $3,997.71 all of which were billed at 100%.  These four procedures, performed during the same operative session, are subject to New Jersey's multiple procedure reduction formula and three should have been reduced by 50%.

308.    The Defendant Dynamic mailed a bill to American Transit for an arthroscopic surgery of the shoulder on patient J.D. claim number 1008072-02 allegedly performed on June 14, 2018. This bill was mailed at or around the time it is dated. It was received by American Transit on July 25, 2018. The Defendant Dynamic billed under CPT Code 29807 in the amount of $6,462.39, under CPT Code 29820 in the amount of $6,462.39, under CPT Code 29826 in the amount of $6,462.39 and under CPT Code 29824 in the amount of $3,997.71 all of which were billed at 100%.  These four procedures, performed during the same operative session, are subject to New Jersey's multiple procedure reduction formula and three should have been reduced by 50%.

309.    The Defendant Excel mailed a bill to American Transit for an arthroscopic surgery of the shoulder on patient I.T. claim number 792187-03 allegedly performed on December 19, 2016. This bill was mailed at or around the time it is dated. It was received by American Transit on January 30, 2017. The Defendant Excel billed under CPT Code 29807 in the amount of $6,462.39, under CPT Code 29820 in the amount of $6,462.39, under CPT Code

82

Case 1:21-cv-05523-MKB-PK    Document 730-2    Filed 04/13/26    Page 88 of 111 PageID #: 11515

29826 in the amount of $6,462.39 and under CPT Code 29824 in the amount of $3,997.71 all of which were billed at 100%. These four procedures, performed during the same operative session, are subject to New Jersey's multiple procedure reduction formula and three should have been reduced by 50%.

310.    The Defendant Dynamic mailed a bill to American Transit for an arthroscopic surgery of the shoulder on patient R.F. claim number 678030-02 allegedly performed on August 21, 2017. This bill was mailed at or around the time it is dated. It was received by American Transit on September 20, 2017. The Defendant Dynamic billed under CPT Code 29807 in the amount of $6,462.39, under CPT Code 29820 in the amount of $6,462.39, under CPT Code 29826 in the amount of $6,462.39 and under CPT Code 29824 in the amount of $3,997.71 all of which were billed at 100%. These four procedures, performed during the same operative session, are subject to New Jersey's multiple procedure reduction formula and three should have been reduced by 50%.

311.    The Defendant Excel mailed a bill to American Transit for an arthroscopic surgery of the shoulder on patient J.L. claim number 663349-05 allegedly performed on December 20, 2016. This bill was mailed at or around the time it is dated. It was received by American Transit on January 23, 2017. The Defendant Excel billed under CPT Code 29876 in the amount of $3,997.71 and under CPT Code 29881 in the amount of $3,997.71 both of which were billed at 100%. These two procedures, performed during the same operative session, are subject to New Jersey's multiple procedure reduction formula and one should have been reduced by 50%.

312.    The Defendant Dynamic mailed a bill to American Transit for an arthroscopic surgery of the shoulder on patient K.Z. claim number 1011753-04 allegedly performed on July

83

Case 1:21-cv-05523-MKB-PK Document 730-2 Filed 04/13/26 Page 89 of 111 PageID #: 11516

12, 2018. This bill was mailed at or around the time it is dated. It was received by American Transit on August 24, 2018. The Defendant Dynamic billed under CPT Code 29876 in the amount of $3,997.71, CPT 29877 in the amount of $3,997.71, 29881 in the amount of $3,997.71, and CPT 29874 in the amount of $3,997.71 all of which were billed at 100%. These four procedures, performed during the same operative session, are subject to New Jersey's multiple procedure reduction formula and one should have been reduced by 50%. CPT 29874 and CPT 29877 should not have been billed at all in addition to the other codes.

313. The Defendant Excel mailed a bill to American Transit for an arthroscopic surgery of the left shoulder on N.A.K. claim number 791607-03 allegedly performed on December 19, 2016. This bill was mailed at or around the time it is dated. It was received by American Transit on January 30, 2017. The Defendant Excel billed under CPT Code 29876 in the amount of $3,997.71, under CPT Code 29879 in the amount of $3,997.71 and under CPT Code 29881 in the amount of $3,997.71 both of which were billed at 100%. These three procedures, performed during the same operative session, are subject to New Jersey's multiple procedure reduction formula and two should have been reduced by 50%.

314. The Defendant Excel mailed a bill to American Transit for an arthroscopic surgery of the left shoulder on T.W. claim number 663349-03 allegedly performed on December 13, 2016. This bill was mailed at or around the time it is dated. It was received by American Transit on January 12, 2017. Excel billed under CPT Code 29820 in the amount of $6,462.39 and under CPT Code 29826 in the amount of $6,462.39 both of which were billed at 100%. These two procedures, performed during the same operative session, are subject to New Jersey's multiple procedure reduction formula and one should have been reduced by 50%.

84

Case 1:21-cv-05523-MKB-PK    Document 730-2    Filed 04/13/26    Page 90 of 111 PageID #: 11517

315.    The Defendant Excel mailed a bill to American Transit for an arthroscopic surgery of the left shoulder on V.D.E. claim number 786408-05 allegedly performed on December 13, 2016. This bill was mailed at or around the time it is dated. It was received by American Transit on January 12, 2017. The Defendant Excel billed under CPT Code 29807 in the amount of $6,462.39, under CPT Code 29826 in the amount of $6,462.39 and under CPT Code 29824 in the amount of $3,997.71 all of which were billed at 100%.  These three procedures, performed during the same operative session, are subject to New Jersey's multiple procedure reduction formula and two should have been reduced by 50%.

316.    The Defendant Excel mailed a bill to American Transit for an arthroscopic surgery of the left shoulder on D.A. claim number 661642-04 allegedly performed on November 9, 2015. This bill was mailed at or around the time it is dated. It was received by American Transit on December 14, 2016. The Defendant Excel billed under CPT Code 29823 in the amount of $6,462.39, under CPT Code 29820 in the amount of $6,462.39, under CPT Code 29825 in the amount of $6,462.39 and under CPT Code 29826 in the amount of $6,462.39 all of which were billed at 100%.  These four procedures, performed during the same operative session, are subject to New Jersey's multiple procedure reduction formula and three should have been reduced by 50%.

317.    The Defendant Excel mailed a bill to American Transit for an arthroscopic surgery of the left shoulder on D.J. claim number 666955-03 allegedly performed on November 3, 2016. This bill was mailed at or around the time it is dated. It was received by American Transit on December 9, 2016. The Defendant Excel billed under CPT Code 29823 in the amount of $6,462.39, under CPT Code 29825 in the amount of $6,462.39, under CPT Code 29826 in the amount of $6,462.39 and under CPT Code 29824 in the amount of $3,997.71 all of which were

Case 1:21-cv-05523-MKB-PK   Document 730-2   Filed 04/13/26   Page 91 of 111 PageID #: 11518

billed at 100%. These four procedures, performed during the same operative session, are subject to New Jersey's multiple procedure reduction formula and three should have been reduced by 50%.

318.    The Defendant Excel mailed a bill to American Transit for an arthroscopic surgery of the left shoulder on H.I., claim number 655722-02, allegedly performed on June 24, 2014. This bill was mailed at or around the time it is dated. It was received by American Transit on July 31, 2016. The Defendant Excel billed under CPT Code 29807 in the amount of $6,462.39, under CPT Code 29821 in the amount of $6,462.39 and under CPT Code 29826 in the amount of $6,462.39 all of which were billed at 100%. These three procedures, performed during the same operative session, are subject to New Jersey's multiple procedure reduction formula and two should have been reduced by 50%.

319.    The Defendant Excel mailed a bill to American Transit for an arthroscopic surgery of the left shoulder on I.S., claim number 786252-05, allegedly performed on May 23, 2016. This bill was mailed at or around the time it is dated. It was received by American Transit on June 21, 2016. The Defendant Excel billed under CPT Code 29807 in the amount of $6,462.39, under CPT Code 29820 in the amount of $6,462.39, under CPT Code 29826 in the amount of $6,462.39 and under CPT Code 29824 in the amount of $3,997.71 all of which were billed at 100%. These four procedures, performed during the same operative session, are subject to New Jersey's multiple procedure reduction formula and three should have been reduced by 50%.

320.    During arthroscopic surgical procedures performed at the Defendant Excel, the providers routinely performed nerve block injections, in addition to the anesthesia for the procedures. When submitting its billing, the Defendant Excel not only billed for the injections,

86

Case 1:21-cv-05523-MKB-PK    Document 730-2    Filed 04/13/26    Page 92 of 111 PageID #: 11519

but also included billing under CPT Code 76942 for echo guide for biopsy of the injection needle.

321.    CPT Code 76942 does not have an amount in the ASC Columns in the New Jersey Fee Schedule.  Pursuant to N.J.S.A. § 11:3-29.3(e)(3), the Defendant Excel is specifically precluded from billing for this procedure code.

322.    CPT Code 76942 has an "N1" in the fifth column of the New Jersey Fee Schedule which is entitled Payment Indicator.  According to New Jersey's Department of Banking and Insurance, certain codes do not have fees in the ASC facility fee column but have "N1" in the payment indicator column.  "The "N1" payment indicator means that the service can be performed in an ASC but a facility fee is not separately reimbursable because the service is included in another procedure."  (DOBI FAQs 6).  Pursuant to the New Jersey Fee Schedule rules, the Defendant Excel cannot bill under CPT Code 76942 however the Defendant Excel repeatedly submitted such billing.

323.    The Defendant Excel mailed a bill to American Transit for an arthroscopic surgery of the left shoulder on patient A.S.J. claim number 791785-05 allegedly performed on December 19, 2016. This bill was mailed at or around the time it is dated. It was received by American Transit on January 30, 2017. The Defendant Excel Surgery Center billed for echo guide for biopsy under CPT Code 76942 in the amount of $700.00.

324.    The Defendant Excel mailed a bill to American Transit for an arthroscopic surgery of the left shoulder on patient C.G. claim number 791692-02 allegedly performed on December 5, 2016. This bill was mailed at or around the time it is dated. It was received by American Transit on December 27, 2016. The Defendant Excel billed for echo guide for biopsy under CPT Code 76942 in the amount of $700.00.

87

Case 1:21-cv-05523-MKB-PK   Document 730-2   Filed 04/13/26   Page 93 of 111 PageID #: 11520

325.    The Defendant Excel mailed a bill to American Transit for an arthroscopic surgery of the left shoulder on patient I.T. claim number 792187-03 allegedly performed on December 19, 2016. This bill was mailed at or around the time it is dated. It was received by American Transit on January 30, 2017. The Defendant Excel billed for echo guide for biopsy under CPT Code 76942 in the amount of $700.00.

326.    The Defendant Excel mailed a bill to American Transit for an arthroscopic surgery of the left shoulder on patient J.L. claim number 663349-05 allegedly performed on December 20, 2016. This bill was mailed at or around the time it is dated. It was received by American Transit on January 23, 2017. The Defendant Excel billed for echo guide for biopsy under CPT Code 76942 in the amount of $700.00.

327.    The Defendant Excel mailed a bill to American Transit for an arthroscopic surgery of the left shoulder on patient V.D.E. claim number 786408-05 allegedly performed on December 13, 2016 wherein it billed for echo guide for biopsy under CPT Code 76942 in the amount of $700.00.

328.    The Defendant Excel mailed a bill to American Transit for an arthroscopic surgery of the left shoulder on T.W. claim number 663349-03 allegedly performed on December 13, 2016. This bill was mailed at or around the time it is dated. It was received by American Transit on January 12, 2017. The Defendant Excel billed for echo guide for biopsy under CPT Code 76942 in the amount of $700.00.

329.    On May 16, 2016, the Defendant Excel mailed a bill to American Transit for an arthroscopic surgery of the left shoulder on patient I.S., claim number 786252-05 allegedly performed on May 23, 2016 wherein it billed for echo guide for biopsy under CPT Code 76942 in the amount of $700.00.

Case 1:21-cv-05523-MKB-PK Document 730-2 Filed 04/13/26 Page 94 of 111 PageID #: 11521

330. When shoulder arthroscopies were performed, Excel and Dynamic routinely added additional procedure codes to inflate its billing. In many cases, Excel and Dynamic included billing under CPT code 29820 for the partial synovectomy which is improper as it is unbundled from the surgical code CPT Code 29826 in violation of N.J.A.C. 11:3-29.5(g) and the applicable NCCI edits.

331. The use of CPT Code 29820 improper because, according to the NCCI Edit Guidelines, it is an inclusive code for codes 29807, 29824, and 29826. Even if the billing includes the use of the modifier, this cannot be done solely to bypass an NCCI edit if the circumstances do not justify its use. N.J.A.C. 11:3-29.4(g)(1) states:

(g) Except as specifically stated to the contrary in this subchapter, the fee schedules shall be interpreted in accordance with the following, incorporated hererin by reference, as amended and supplemented: the relevant chapters of the Medicare Claims Processing Manual, updated periodically by CMS, that were in effect at the time the service was provided. The Medicare Claims Processing Manual is available at https://www.cms.gov/Manuals/IOM/itemdetail.asp?itemID=CMS018912; the NCCI Policy Manual for Medicare Services, as updated periodically by CMS and available at http://www.cms.gov/NationalCorrectCodInitEd/Downloads/NCCI_Policy_Manual.zip; Modifier 59 Article: Proper Usage Regarding Distinct Procedural Service, available from CMS at https://www.cms.gov/NationalCorrectCodInitEd/Downloads/modifier59.pdf; and the CPT Assistant available from the American Medical Association (www.AMAbookstore.com).

(1) Artificially separating or partitioning what is inherently one total procedure into subparts that are integral by the whole for the purpose of increasing medical fees is prohibited. Such practice is commonly referred to an "unbundling" or "fragmented" billing. Providers and

89

Case 1:21-cv-05523-MKB-PK    Document 730-2    Filed 04/13/26    Page 95 of 111 PageID #: 11522

payors shall use the National Correct Coding Initiative (NCCI) Edits, incorporated herein by reference, as updated quarterly by CMS and available at ttps://www.cms.hhs.gov/NationalCorrectCodInitEd/. Modifier 59 and other NCCI-associated modifiers should not be used to bypass an NCCI edit unless the proper criteria for use of the modifier are met. Documentation in the medical records must satisfy the criteria required by any NCCI-associated modifier used. For more information on the criteria for the use of modifiers, see the NCCI Policy Manual and Modifier 59 Article referenced in (g) above.

332.    In case after case, the Defendants Excel and Dynamic billed codes defined as: CPT 29807– Arthroscopy, shoulder, surgical; repair of SLAP lesion; CPT 29826 – Arthroscopy, shoulder, surgical; decompression of subacromial space with partial acromioplasty, with coracoacromial ligament (ie, arch) release, when performed (list separately in addition to code for primary procedure) and CPT 29820 – Arthroscopy, shoulder, synovectomy, partial. Excel has submitted no proof that the procedure, 29820, was done at a separate site or during a second encounter. Even if billed with a modifier, the billing for CPT 29820 does not bypass the edit.

333.    The Defendant Excel mailed a bill to American Transit for an arthroscopic surgery of the shoulder on patient A.S.J. claim number 791785-05 allegedly performed on December 19, 2016. This bill was mailed at or around the time it is dated. It was received by American Transit on January 30, 2017. The Defendant Excel billed for a single arthroscopic shoulder procedure under CPT Codes 29807, 29826 and 29820.

334.    The Defendant Excel mailed a bill to American Transit for an arthroscopic surgery of the shoulder on patient C.G. claim number 791692-02 allegedly performed on December 5, 2016. This bill was mailed at or around the time it is dated. It was received by

90

Case 1:21-cv-05523-MKB-PK Document 730-2 Filed 04/13/26 Page 96 of 111 PageID #: 11523

American Transit on December 27, 2016. The Defendant Excel billed for a single arthroscopic shoulder procedure under CPT Codes 29807, 29826 and 29820.

335. The Defendant Excel mailed a bill to American Transit for an arthroscopic surgery of the shoulder on patient I.T. claim number 792187-03 allegedly performed on December 19, 2016. This bill was mailed at or around the time it is dated. It was received by American Transit on January 30, 2017. The Defendant Excel billed for a single arthroscopic shoulder procedure under CPT Codes 29807, 29826 and 29820.

336. The Defendant Excel mailed a bill to American Transit for an arthroscopic surgery of the shoulder on patient J.L. claim number 663349-05 allegedly performed on December 20, 2016. This bill was mailed at or around the time it is dated. It was received by American Transit on January 23, 2017. The Defendant Excel billed for a single arthroscopic shoulder procedure under CPT Codes 29826 and 29820.

337. The Defendant Excel mailed a bill to American Transit for an arthroscopic surgery of the shoulder on patient D.A. claim number 661642-04 allegedly performed on November 9, 2015 wherein it billed for a single arthroscopic shoulder procedure under CPT Codes 29825, 29823, 29826 and 29820.

338. The Defendant Excel mailed a bill to American Transit for an arthroscopic surgery of the shoulder on I.S., claim number 786252-05, allegedly performed on May 23, 2016. This bill was mailed at or around the time it is dated. It was received by American Transit on June 21, 2016 where in it billed for a single arthroscopic shoulder procedure under CPT Codes 29807, 298243, 29826 and 29820.

339. The Defendant Dynamic mailed a bill to American Transit for an arthroscopic surgery of the shoulder on patient M.R. claim number 1021266-01 allegedly performed on June 14,

91

2018. This bill was mailed at or around the time it is dated. It was received by American Transit on July 25, 2018. The Defendant Dynamic billed for a single arthroscopic shoulder procedure under CPT Codes 29807, 29826, 29822 and 29820.

340. The Defendant Dynamic mailed a bill to American Transit for an arthroscopic surgery of the shoulder on patient D.M. claim number 1016223-02 allegedly performed on March 22, 2018. This bill was mailed at or around the time it is dated. It was received by American Transit on May 15, 2018. The Defendant Dynamic billed for a single arthroscopic shoulder procedure under CPT Codes 29823, 29826 and 29820.

341. The Defendant Dynamic mailed a bill to American Transit for an arthroscopic surgery of the shoulder on patient J.D. claim number 1008072-02 allegedly performed on November 20, 2017. This bill was mailed at or around the time it is dated. It was received by American Transit on December 26, 2017. The Defendant Dynamic billed for a single arthroscopic shoulder procedure under CPT Codes 29824, 29820, 29826 and 29807.

342. The Defendant Dynamic mailed a bill to American Transit for an arthroscopic surgery of the shoulder on patient R.F. claim number 678030-02 allegedly performed on August 21, 2017. This bill was mailed at or around the time it is dated. It was received by American Transit on September 20, 2017. The Defendant Dynamic billed for a single arthroscopic shoulder procedure under CPT Codes 29807, 29824, 29820 and 29826.

## FIRST CLAIM FOR RELIEF
### (Against All Defendants)
### (Common Law Fraud)

343. American Transit repeats and realleges the allegations set forth in paragraphs 1 through 342 of this Verified Complaint with the same force and effect as if set forth fully herein.

344. As part of the fraudulent scheme implemented by the Defendants, as

92

Case 1:21-cv-05523-MKB-PK   Document 730-2   Filed 04/13/26   Page 98 of 111 PageID #: 11525

set forth in detail in this Verified Complaint, the Defendants made material misrepresentations and/or omitted material statements in submitting no fault claims to American Transit for payment.

345. American Transit has no obligation to pay for health care services allegedly rendered by health care providers acting in the employ of a professional corporation, where, as here, the services were not provided by properly licensed providers, the services billed were not provided, the services were not provided as billed, the services were provided by independent contractors, the services were provided pursuant to an illegal referral scheme, the claimed injuries did not exist, the submitted claims are fraudulent in nature and/or the services were billed in violation of the fee schedule.

346. The Defendants intentionally, knowingly, fraudulently, and with an intent to deceive American Transit and the public, omitted material facts and made various misleading statements (i) intending to hold out the Defendants as legal and lawfully operating professional entities licensed in the State where the services were provided when in fact they were not; (ii) intending to fraudulently induce claim payments, thereby inducing American Transit to make payments that the Defendants were not entitled to because of their illegal operation or because of the existence of an illegal referral arrangement and/or because the services were not provided as billed and/or because the findings and reports of the Defendants were fictitious; (iii) intending to fraudulently induce claim payments, thereby inducing American Transit to make payments by representing that the services had been provided by properly licensed doctors; (iv) misrepresenting the nature of services that had been administered; (v) misrepresenting that the referrals were necessary; (vi) misrepresenting that the services were provided by employees; (vii)

93

Case 1:21-cv-05523-MKB-PK    Document 730-2    Filed 04/13/26    Page 99 of 111 PageID #: 11526

misrepresenting the applicable fees for the services that were allegedly provided; and (viii) setting forth fictitious diagnoses and representations of services provided.

347.    The Defendants intentionally, knowingly, fraudulently, and with an intent to deceive American Transit, their own patients and the general public, hid improper referral relationships and did not provide the services that were billed by making false representations of material facts, including, but not limited to, the following fraudulent misrepresentations:  (i) false and misleading statements that services had been provided and were provided by employees when the services were fictitious and were not provided as billed and were not provided by employees; (ii) false and misleading statements contained in each separate bill, medical record and report submitted to American Transit regarding the nature of service provided and/or the relationship between the Defendants, the shareholder-doctors, and entities to which referrals were made; and (iii) false and misleading statements as to the details of the services administered to patients and the applicable fees.

348.    The Individual Defendants acting in concert with the Defendants, participated in, conspired together, aided and abetted, and furthered the fraudulent schemes through a common course of conduct and purpose.

349.    The Defendants knew the foregoing material misrepresentations to be false when made and made or facilitated these false representations with the intention and purpose of inducing American Transit to rely thereon.

350.    American Transit did in fact reasonably and justifiably rely on the foregoing material misrepresentations and upon a state of facts that American Transit was led to believe existed as a result of the Defendants' acts of fraud and deception, and which led to American Transit making payments to the Defendants and incurring expenses as a result.

94

Case 1:21-cv-05523-MKB-PK Document 730-2 Filed 04/13/26 Page 100 of 111 PageID #: 11527

351. Had American Transit known of the fraudulent content of the reports, the fictitious nature of the claimed injuries, the fictitious nature of the services that were represented to be provided, the referrals by financially related entities, the illegal kickbacks made to obtain referrals and the fact that the services had not been provided as billed, the fact that the fees billed were excessive and in violation of the law, the fact that the services had not been provided by licensed providers in a State in which they were licensed and the fact that the services were provided by independent contractors, it would not have paid the Defendants' claims for no-fault insurance benefits submitted in connection therewith.

352. In reliance upon these false representations and/or omissions, American Transit has made payments to the Defendants and incurred additional costs as a result of the fraudulent billing in the approximate amount of $5,603,996.83.

353. American Transit was thus injured as a proximate result and is entitled to recover the payments it made to the Defendants. As a result of the fraud of the Defendants, American Transit should recover all of its payments and be reimbursed for the costs incurred as a result of the fraudulent billing. This Court should also declare that the Defendants have been formed, controlled, owned and operated contrary to law and that American Transit has no obligation to make any payments to such Defendants on pending no-fault claims. American Transit also requests punitive damages in the amount of $1,000,000 plus interest.

354. The Defendants concealed the fraudulent nature of their claims through their misrepresentations and material omissions. In addition to concealing the fraudulent nature of each individual claim, the Defendants also concealed the existence of the overall scheme to defraud. The Defendants' fraudulent concealment of their scheme to defraud prevented

95

Case 1:21-cv-05523-MKB-PK    Document 730-2    Filed 04/13/26    Page 101 of 111 PageID #: 11528

American Transit from discovering or asserting, until now, the foregoing fraud, or the injury resulting therefrom to American Transit.

## SECOND CLAIM FOR RELIEF
### (Against All Defendants)
### (New York General Business Law § 349)

355.    American Transit repeats and realleges the allegations set forth in paragraphs 1 through 354 of this Verified Complaint with the same force and effect as if set forth fully herein.

356.    The actions of Defendants constitute violations of New York General Business Law § 349.

357.    Each separate bill, record and report submitted to American Transit constituted a separate violation of General Business Law § 349.

358.    The conduct engaged in by the Defendants is an attempted fraud not only against the Plaintiff but against the patients, the premium paying public of the State of New York and the public of the State of New York.

359.    The Department of Financial Services stated on October 10, 2017 that "certain providers have assumed a practice of charging the prevailing fee, or more, in their geographical location outside of New York, which exceeds New York limits and is believed to lead to inflated claims, depleted coverage, increased litigation and higher premiums." The Department of Financial Services further expressed its concern that "New York residents eligible for no-fault benefits for their physical injuries often are influenced to seek healthcare services from non-New York providers that engage in such practice." These statements of the Department of Financial Services apply directly to the actions of the Defendants who put their own financial interests ahead of the interests of the patients.

Case 1:21-cv-05523-MKB-PK    Document 730-2    Filed 04/13/26    Page 102 of 111
PageID #: 11529

360.    Two of the named Defendants, Koppel and GSP were recently indicted by the State of New Jersey. Upon information and belief, they employed runners and paid cash kickbacks to five chiropractors as compensation for more than 790 patient referrals.  Attorney General Gurbir S. Grewal and the Office of the Insurance Fraud Prosecutor announced that KOPPEL was charged with first-degree conspiracy and money laundering, second-degree misconduct by a corporate official, four counts of healthcare claims fraud and other charges for allegedly submitting more than $4.4 million in fraudulent bills to insurance companies that netted him more than $500,000 in a medical kickback fraud scheme he operated.  Three of the chiropractors involved admitted to receiving kickbacks from Koppel and pled guilty to being involved with other kickback schemes. The Acting Insurance Fraud Prosecutor Christopher Iu said that "Medical kickback schemes like this are a form of insurance fraud that spreads like a cancer throughout the healthcare industry, putting more and more unsuspecting patients into the hands of doctors who use them as cash cows to drive up billable services."  This is a very serious abuse that jeopardizes the quality of health care and the cost of insurance for the public.

361.    Attorney General Gurbir S. Grewal stated that Koppel "not only stole hundreds of thousands of dollars from insurance companies, He deprived patients of their right to be treated by doctors whose medical decisions were not clouded by unadulterated greed."

362.    The New York State Workers' Compensation Board has temporarily suspended the Defendants Koppel and Panhani from treating injured workers in order to protect the patients.

363.    The Defendant Hayek was prosecuted by the State of New Jersey for money laundering and paying for referrals and he pled guilty.

Case 1:21-cv-05523-MKB-PK   Document 730-2   Filed 04/13/26   Page 103 of 111 PageID #: 11530

364.    The Defendants Hayek and Union Wellness have submitted fraudulent billing and have engaged in illegal referral practices.  The Defendant Hayek has been prosecuted by the State of New Jersey and pled guilty for involvement in a scheme that included money laundering and payoffs to referring providers.

365.    In his plea allocution, the Defendant Hayek pled guilty and told the Court that for a period of approximately ten years, the Defendant Koppel directly made cash payments to him in exchange for patient referrals. In an examination under oath, the Defendant Hayek also admitted that he referred patients to Koppel and rented office space at Union Wellness to Koppel in the amount of $500 a month.

366.    The Defendants Union Wellness and Excel billed for the services of Dipti Patel who has been disciplined by the States of Massachusetts and New York.

367.    These deceptive acts and the fraud described in detail in this Verified Complaint were committed knowingly and maliciously with intent to deceive American Transit and the public.  The Defendants engaged in a serious fraud that not only involved fraudulent billing to American Transit but was a fraud upon the general public and upon their own patients as well. Many of the practices set forth herein were against the interests of the patients.  The Defendants submitted abusive billing that if paid reduced the coverage of the patients for lost wages and other benefits.  The Defendants engaged in a massive scheme to defraud and along with other fraudulent providers in the State have contributed to the fraud that imperils the value of the no-fault coverage and provides a destabilizing influence on the premium for the public.  Upon information and belief, the Defendants Koppel and GSP paid kickbacks and employed runners and an unlicensed provider in order to obtain patients.  The Defendants engaged in an incredibly brazen fraud that is tantamount to an assault against the well being of the patients, the premium

Case 1:21-cv-05523-MKB-PK   Document 730-2   Filed 04/13/26   Page 104 of 111 PageID #: 11531

paying public, the insurers including the Plaintiffs and the public of the State of New York. The Defendants brought the patients to another State where excessive charges and unnecessary facility fees and other fees were billed that could have exhausted the patients' insurance coverage with no disclosure of this to the patients. Time and again the Defendants submitted billing for services that were not provided. Patients were repeatedly subjected to MUA and the risks of anesthesia including death in order to maximize the billing. Anesthesia was ordered by chiropractors rather than medical doctors. These are very serious abuses that go beyond fraudulent billing, which is itself an egregious abuse.

368.     The Defendants knew that their representations and/or omissions or the representations/omissions they were facilitating, were deceptive and that they would be relied upon by American Transit. Such representations included that the Defendant entities were properly operated in compliance with the law; that the services were provided as billed and that the fees were in compliance with the applicable fee schedule; that the patients were properly referred for the services administered; that the services were actually administered; that the services were provided by doctors and employees of each Defendant entity; and concerned the nature and necessity of the services provided.

369.     The false claims of the Defendants were deceptive and misleading and were relied upon by American Transit in making their claim payments to the Defendants.

370.     American Transit has been damaged by the actions of Defendants in that American Transit made substantial claim payments to the Defendants and incurred expenses as a result of the deceptive claims in the approximate amount of $5,603,996.83.

371.     American Transit is thus entitled to recover from the Defendants the payments it made to the Defendants and the expenses it incurred as a result of the deceptive claims.

Case 1:21-cv-05523-MKB-PK    Document 730-2    Filed 04/13/26    Page 105 of 111
PageID #: 11532

American Transit requests the return of these payments and reimbursement of the expenses from the Defendants plus interest and attorneys' fees. This Court should also declare that the Defendants have been managed and/or operated contrary to law and that American Transit has no obligation to make any payments to such Defendants on pending no-fault claims.

### THIRD CLAIM FOR RELIEF
### (Against All Defendants)
### (Unjust Enrichment)

372. American Transit repeats and realleges the allegations set forth in paragraphs 1 through 371 of this Verified Complaint with the same force and effect as if set forth fully herein.

373. By reason of their wrongdoing, the Defendants have been unjustly enriched, in that they have received monies from American Transit that are the result of unlawful conduct, and that in equity and good conscience, they should not be permitted to keep.

374. No contract exists between American Transit and the Defendants. American Transit is not asserting any ground for recovery that arises from any contract.

375. American Transit is therefore entitled to restitution from the Defendants in the amount by which the Defendants have been unjustly enriched.

### FOURTH CLAIM FOR RELIEF
### (Against All Defendants)
### (Declaratory Judgment)

376. The Plaintiff repeats and realleges each and every allegation contained in paragraphs numbered 1 through 375 hereof of this Verified Complaint with the same force and effect as if set forth fully herein.

377. All of the Defendants made and/or received referrals from providers they had financial relationships with and did not properly disclose these relationships to the patients in violation of New York and New Jersey statutes.

100

Case 1:21-cv-05523-MKB-PK   Document 730-2   Filed 04/13/26   Page 106 of 111 PageID #: 11533

378. All of the Defendants made or received referrals in violation of New York and New Jersey law including Public Health Law §§ 238-a and/or 238-d and/or N.J.S.A. 45:9-22.5.

379. All of the Defendants failed to disclose the financial relationship with the referring providers to the patients pursuant to Public Health Law §238-d and N.J.S.A. 45:9-22.5.

380. The Defendants Columbus Imaging, Excel and Dynamic paid for free transportation for the patients as an illegal gratuity to the patients to lure them to come to another State for services billed by the Defendants.

381. All of the Defendants submitted claims in violation of the fee schedules that were applicable in violation of New York and New Jersey statutes.

382. The Defendants Excel and Dynamic billed for facility fees when no such fees should have been recoverable because the services could have been provided in OBSPs.

383. The Defendants Union Wellness, Albis Chiro and Columbus Imaging billed for the services of independent contractors in violation of the No Fault Regulations.

384. The Defendant Union Wellness billed for services performed in the State of New York that it was not authorized to provide.

385. The Defendants Excel and Dynamic billed the services of chiropractors as physician services under the surgery fee schedule when they were not permitted to do so under New Jersey law.

386. The Defendant Dynasty was controlled by the Defendant Heyligers who is not a medical doctor.

387. Each of the Defendants billed for services that were not provided as billed.

388. The Defendants Hayek, Albis, Bronstein, Union Wellness, Advanced Spinal, Albis Chiro, Axis Chiro, Premier Chiro, Dynamic and Excel with the assistance of the

101

Case 1:21-cv-05523-MKB-PK    Document 730-2    Filed 04/13/26    Page 107 of 111
PageID #: 11534

Defendants Beynin, Patel and Shapiro billed for MUA under the surgery fee schedule and the

Defendants Hayek, Albis, Bronstein, Union Wellness, Advanced Spinal, Albis Chiro, Axis

Chiro, Premier Chiro, Beynin and Patel ordered anesthesia that they were neither authorized to

provide nor bill for under their chiropractic licenses.

389.    The Defendants Koppel and GSP paid cash kickbacks, employed runners and

employed an unlicensed provider to obtain patients.

390.    The Defendants continue to submit assigned no-fault claims to the Plaintiff.

391.    The Plaintiff has and will be prejudiced without a judicial declaration that the

Defendants are not entitled to payment of assigned first-party no-fault benefits in any claims

from American Transit due to:  (1) the Defendants' financial relationship with their referring

providers in violation of New York and New Jersey law including Public Health Law §§ 238-a

and/or 238-d and/or N.J.S.A. 45:9-22.5; (2) the Defendants' failure to disclose their financial

relationship with their referring providers to their patients pursuant to Public Health Law §238-d

and N.J.S.A. 45:9-22.5; (3) the violation of the fee schedule; (4) the use by the Defendants of

independent contractors to provide services; (5) the control of Dynasty by Heyliger was is not a

medical doctor; (6) the permitting and billing by the Defendant chiropractors performing MUAs

and ordering anesthesia outside the scope of their licensure; (7) the providing of services by

Union Wellness in New York; (8) the billing of supplies and anesthesia by Excel and Dynamic;

(9) the billing of facility fees by Excel and Dynamic (10) the providing of free transportation by

Columbus Imaging, Excel and Dynamic as an illegal gratuity to the patients to lure them to come

to another State for services billed by the Defendants; and (11) the billing by Excel and Dynamic

of the services of chiropractors as physician services under the surgery fee schedule when they

102

Case 1:21-cv-05523-MKB-PK    Document 730-2    Filed 04/13/26    Page 108 of 111
PageID #: 11535

were not permitted to do so under New Jersey law; and that the Defendants may not seek to assert a lien against any assignors

392. There exists a real, actual and justifiable controversy between the Plaintiff and the Defendants.

393. The Plaintiff has no adequate remedy at law.

## REQUEST FOR A STAY OF OTHER PROCEEDINGS

394. To avoid a multiplicity of piecemeal litigation where all claims have in common the same issues, all lawsuits or arbitrations brought by the Defendants should be stayed.

WHEREFORE, the Plaintiff demands Judgment against the Defendants named in each Claim For Relief, jointly and severally, as follows:

(a) On the Plaintiff's First Claim For Relief for fraud, the damages that Plaintiff has sustained as a result of the Defendants' conduct in the amount of $5,603,996.83, plus one million dollars punitive damages, plus a declaratory judgment decreeing that the Plaintiff has no obligation to pay pending no–fault claims submitted by the Defendants;

(b) On the Plaintiff's Second Claim For Relief, under Section 349 of New York's General Business Law, the damages that Plaintiff has sustained as a result of the Defendants' conduct in the amount of $5,603,996.83, plus Plaintiff's costs in this action, including reasonable attorneys' fees, plus a declaratory judgment decreeing that the Plaintiff has no obligation to pay pending no–fault claims submitted by the Defendants;

(c) On the Plaintiff's Third Claim For Relief for unjust enrichment, the amount by which the Defendants were unjustly enriched, such amount to be determined at trial;

Case 1:21-cv-05523-MKB-PK   Document 730-2   Filed 04/13/26   Page 109 of 111 PageID #: 11536

(d)      On the Plaintiff's Fourth Claim For Relief, a declaratory judgment decreeing that the Plaintiff has no obligation to pay pending nor future no-fault claims submitted to it by the Defendants;

(e)      Awarding the Plaintiff interest and costs, including attorneys' fees and such other relief as the Court may deem just and proper.

Dated: New York, New York
      December 27, 2018              SHORT & BILLY, P.C.

By _____
Ioanna Zevgaras
Skip Short
Attorneys for Plaintiff
217 Broadway
New York, New York 10007
(212) 732-3320

104

Case 1:21-cv-05523-MKB-PK   Document 730-2   Filed 04/13/26   Page 110 of 111 PageID #: 11537

Our File #:      58532

## VERIFICATION

STATE OF NEW YORK      )
                      ) ss:
COUNTY OF KINGS        )

Cheryl Glaze, being duly sworn, deposes and says:

That she is the No Fault manager of American Transit Insurance Company.

That she has read the foregoing Verified Complaint and knows the contents thereof, and that the same is true to her own knowledge except as to those matters herein stated to be alleged upon information and belief, and as to those matters she believes it to be true.

Sworn to before me this
27͡ Day of December, 2018

_____
Notary Public

ANDREW LI
Notary Public, State of New York
No. 01LI6200467
Qualified in Queens County
Commission Expires Feb. 2, 20__21

Case 1:21-cv-05523-MKB-PK    Document 730-2    Filed 04/13/26    Page 111 of 111 PageID #: 11538

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
--------------------------------------------------------------------------------X

AMERICAN TRANSIT INSURANCE COMPANY, a
Subsidiary of AMERICAN T, INC.,

                         Plaintiff,

        -against-

PETER D. ALBIS, D.C., REUVEN ALON aka ROB ALON, DIANA
BEYNIN, D.C., NACHMY BRONSTEIN, D.C., RONALD A.
HAYEK, D.C., MARK HEYLIGERS, D.C., TODD KOPPEL, M.D.,
MARGARITA MOSHE, REGINA MOSHE aka REGINA
LEVIYEV, M.D., YAN MOSHE aka YAN LEVIYEV,
RAMKUMAR PANHANI, M.D., DIPTI R. PATEL, D.C., LEONID
SHAPIRO, M.D., ADVANCED SPINAL CARE REHABILITATION,
PA, ALBIS CHIROPRACTIC CARE, P.C., AXIS CHIROPRACTIC
CARE, P.C., CITIMED SERVICES, P.A., CITIMEDICAL I, P.L.L.C.,
COLUMBUS IMAGING CENTER, L.L.C., DRUGS R US
PHARMACY, INC., DYNAMIC SURGERY CENTER, L.L.C.,
DYNASTY MEDICAL CARE, P.C., EXCEL SURGERY CENTER,
L.L.C., GARDEN STATE PAIN MANAGEMENT, P.A., METRO
PAIN SPECIALISTS PROFESSIONAL CORPORATION, PREMIER
HEALTH CHOICE CHIROPRACTIC, P.C., UNION WELLNESS
CENTER, L.L.C., JOHN DOES 1-3 and ABC CORPS. 1-3,

                         Defendants.
--------------------------------------------------------------------------------X

SUMMONS
AND VERIFIED
COMPLAINT

Index Number:

---

## SUMMONS AND VERIFIED COMPLAINT

---

Pursuant to the rules of the Chief Administrator (22NYCRR§130-1), I certify that to the best of my

knowledge, information and belief, formed after an inquiry reasonable under the circumstances, that the

contentions in the complaint are not frivolous.

Ioanna Olivia Zevgaras
SHORT & BILLY, P.C.
Attorneys for Plaintiff
217 Broadway
New York, New York 10007
(212) 732-3320