**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, and STATE FARM FIRE AND CASUALTY COMPANY,<br><br>    Plaintiffs,<br><br>  vs.<br><br><br>METRO PAIN SPECIALISTS, P.C., et al.,<br><br><br>    Defendants. | Civil Action No.:<br><br>**1:21-cv-05523-MKB-PK** |

---

**BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR SANCTIONS (SPOLIATION) AGAINST DEFENDANT YAN MOSHE**

---

**BRACH EICHLER LLC**
101 Eisenhower Parkway
Roseland, New Jersey 07068-1067
(973) 228-5700
*Attorneys for Defendant Yan Moshe*

<u>Of Counsel and on the Brief</u>:

    Keith J. Roberts, Esq.
    Anthony M. Juliano, Esq.

**TABLE OF CONTENTS**

I.    BACKGROUND ....................................................................................................1

    A.    State Farm's Complaint Consists of Unproven Allegations ..............................1

    B.    Moshe's Sworn Testimony Confirms he did not Destroy Relevant Emails................................................................................................................2

        1.    Moshe Had No Preservation Obligation Prior to This Lawsuit Being Filed ....................................................................................4

        2.    The yanmoshe@yahoo.com Account ..................................................6

        3.    Moshe Preserved all Relevant Emails ................................................6

        4.    State Farm's Discovery to obtain Emails............................................8

        5.    Spoliation Hearing with Moshe's Prior Counsel................................9

        6.    Discovery of Moshe's emails ..............................................................9

        7.    Emails in the yanmoshe@yahoo.com Account Have Not Been Destroyed ..........................................................................................11

        8.    Order Regarding Moshe's Limited Deposition ...................................12

        9.    Moshe's Collection of Emails.............................................................12

        10.    Moshe's Testimony Regarding Emails Alleged to be Missing.............14

        11.    State Farm's Additional Sources to Collect Emails............................15

II.    LEGAL STANDARD .........................................................................................16

III.   ARGUMENT......................................................................................................17

    A.    Moshe Preserved ESI and did not Intentionally Delete Anything ...................18

    B.    State Farm Has Obtained Significant Emails From Other Sources ...............20

    C.    Moshe Has Not Engaged in any Intentional Act Whatsoever to Deprive State Farm from Receiving ESI ...........................................................21

    D.    State Farm Has Not Been Prejudiced .................................................................23

    E.    State Farm is not Entitled to Sanctions for Spoliation ...................................26

IV.   CONCLUSION ...................................................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Adler v. Sonotec,
 2025 WL 2614993 (E.D.N.Y. Sept. 10, 2025) ........................................................................22

Fujitsu Ltd. v. Fed. Express Corp.,
 247 F.3d 423 (2d Cir. 2001)........................................................................................................5

Grammar v. Sharinn & Lipshie,
 P.C., No. 14 Civ. 6774, 2016 WL 525478 (S.D.N.Y. Feb. 8, 2016) .......................................27

Johnson v. L'Oreal USA,
 No. 18-CV-09786 (LGS), 2020 WL 5530022 (S.D.N.Y. Sept. 15, 2020) ...............................20

In re Keurig Green Mountain Single-Serve Coffee Antitrust Litigation,
 341 F.R.D. 474 (S.D.N.Y. 2022) ...................................................................................20, 22, 32

Kortright Cap. Partners LP v. Investcorp Inv. Advisers Ltd.,
 330 F.R.D. 134 (S.D.N.Y. 2019) ..............................................................................................28

Leidig v. Buzzfeed, Inc.,
 2017 WL 6512353 (S.D.N.Y. Dec. 19, 2017) ..........................................................20, 21, 328

Lokai Holdings LLC v. Twin Tiger USA, LLC,
 2018 WL 1512055 (S.D.N.Y March 12, 2018) .................................................................25, 28

Morgan Art Found. Ltd. v. McKenzie,
 No. 18-CV-4438 (AT) (BCM), 2020 WL 5836438 (S.D.N.Y. Sept. 30, 2020) ......................20

Ottoson v. SMBC Leasing and Finance, Inc.,
 268 F. Supp. 3d 570 (S.D.N.Y. 2017).......................................................................................24

PDV USA,
 2026 WL 203036 .......................................................................................................................22

State Farm Mut. Auto. Ins. Co. v. Grafman,
 274 F.R.D. 442 (E.D.N.Y. 2011) ..............................................................................................29

Ungar v. City of New York,
 329 F.R.D. 8 (E.D.N.Y. 2018)...................................................................................................24

Zubulake v. UBS Warburg LLC,
 220 F.R.D. 212 (S.D.N.Y. 2003) ................................................................................................5

**Rules**

Fed. R. Civ. P. 37..............................................................................................................27

Fed. R. Civ. P. 37(e) .............................................................................................5, 9, 26, 30

Fed. R. Civ. P. 37(e)(1).................................................................................24, 26, 27, 28, 30

Fed. R. Civ. P. 37(e)(2)......................................................................... 26, 28, 30

Plaintiffs State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company (collectively "State Farm" or "Plaintiffs") file this motion pursuant to Federal Rule 37(e) seeking sanctions against defendant Yan Moshe ("Defendant" or "Moshe") for spoliation of evidence, specifically electronically stored information, or ESI. State Farm alleges Moshe "failed to take reasonable steps to preserve electronically stored information," "intentionally deleted evidence . . . with the intent to deprive Plaintiffs of the information's use." When the entirety of the facts are examined, including vital facts that State Farm blatantly ignores, it is clear Moshe understood his preservation obligation, and did absolutely nothing to intentionally delete evidence in this lawsuit. In fact, Moshe's affidavit and sworn deposition testimony confirm that he understood his preservation obligation, did in fact preserve evidence, and collected and served the electronically stored information in his possession and control.

State Farm's motion incredulously seeks the entry of default judgment against Moshe. As the following will demonstrate, State Farm is not entitled to any spoliation sanctions let alone the most drastic remedy of the entry of default judgment against Moshe. In fact, State Farm's motion should be denied in its entirety.

## I.    BACKGROUND

### A.    State Farm's Complaint Consists of Unproven Allegations

Plaintiffs devote the opening section of their motion to reciting allegations from their Second Amended Complaint as though they were proven facts. They are not. Every assertion is an unproven allegation. No liability has been adjudicated; no finding of fraud has been entered; and no evidence has been weighed by any factfinder. Moshe disputes each allegation.

State Farm alleges that defendants participated in "a scheme to defraud insurers of money paid for purported medical treatment to individuals who have been in automobile accidents" and that "Moshe plays a central role in this scheme." No court has determined that any such scheme

exists or that Moshe participated in any fraudulent conduct. Presenting these contested allegations as background "facts" in this motion is improper and any suggestion that any allegation is true should be disregarded.

The same applies for each of State Farm's allegations.  No court has found that Moshe improperly owned or controlled any medical professional corporation.  No expert testimony has been served and no factual finding has been made establishing that any treatment protocol was "predetermined" or that services provided were medically unnecessary. No factual finding supports any allegation of improper referrals by Moshe or any participation by Moshe in an illegal call center.  That State Farm alleges such conduct in a complaint does not make it true, and these unproven allegations should carry no weight in the Court's consideration of this motion.

State Farm claims they have sustained damages of more than $22 million in insurance benefits provided to defendants.  Of course, no factfinder or court has determined that State Farm has suffered any damages, let alone $22 million, as a result of Moshe's (or any defendant's) actions.  In sum, this court should not be swayed by State Farm's wholesale reproduction of unproven pleading allegations presented as established facts.  Every factual assertion remains in dispute, and no liability determination has been made against Moshe or any defendant.  This Court should evaluate this motion on the narrow procedural and evidentiary questions actually at issue, and not on the basis of State Farm's untested narrative of alleged fraud.

**B.      Moshe's Sworn Testimony Confirms he did not Destroy Relevant Emails**

State Farm brazenly argues in bold text that "Moshe intentionally destroyed emails." The facts, however, paint a different picture.  Moshe testified at a limited deposition regarding his personal email account. Ex. 1.  The testimony in its entirety confirms Moshe did not destroy any relevant emails.  Specifically, Moshe testified as follows:

2

- After this lawsuit was filed, Moshe only deleted "emails that [were] unrelated to the State Farm case." Ex. 1 at 55:21–56:1.

- After the lawsuit was filed, Moshe only deleted emails that have nothing to do with work, nothing to do with State Farm, and nothing to do with any of the defendants in the lawsuit.  Ex. 1 at 56:7 – 13.

- When Moshe received State Farm's first document request in around April of 2022, he testified he preserved the emails by confirming he "just kept them," and confirming he did not delete them.  Ex. 1 at 63:19 - 64:10; 64:22 - 65:4.

- When Moshe was questioned about destroying emails related to various companies, his testimony was consistent. After being advised to retain emails, he did not delete any communication with anyone that was on the preservation list.  He further confirmed he did not destroy any emails related to 910 East Gun Hill Holdings, 65-55 Woodhaven Realty, 9220 165 Holdings LLC, Hackensack Specialty Surgery Center, Dynamics Surgery Center, Excel Surgery Center, Integrated Specialty Surgery Center, Surgicare of Brooklyn, CitiMed Surgery Center, Star Solution Services, CitiMedical, CitiMed Services, CitiMed Complete, CitiMed Management Services, Leonid Shapiro, Regina Moshe, Vadim Dolsky, Mark Gladstein, Reuven Alon, Nizar Kifaieh, Isaias Barrera-Perez, Roma Yusupov, Olivia Yusupov, Ariel Secanayev, Vladamir Mataov, Jelani Wray, Beshert Corp., Marina Katayeva, Michelle Simon, Estevan Roman, Roman Yunusov, Tatyana Rabinovich, Patrick Situ, Yenny Escano, Complete Radiology Reading Services, Alkies Lapas, Contemporary Diagnostic, CDI Managing Group, Allstar Services Inc., Five Star Services, Expert Billing Solutions, New York Spine Institute, Sovereign Health Medical, Pinnacle Health Consultants, Green Bills, John Mitamura, Norman Rowe, Advanced Comprehensive, Anthony Rose, or Todd Chambers. Ex. 1 at 79:23-80:9; 82:21 - 91:16.

Moshe further testified he only deleted emails that involved either a business or person that State Farm alleges are relevant to the lawsuit in two (2) instances.  Moshe was clear neither email had any relevance to the lawsuit whatsoever.  The first instance regarded 1963 Concourse Holdings.  Moshe testified:

A.     "I want to make this clear I do have other businesses in 1963 that has nothing to do with State Farm.

Q.     How did you decide what has to do with State Farm and what doesn't?

A.     My tax abatement, some of the repairs that are happening in the lobby that has nothing to do with

3

> my tenants sitting there or my parking lot attendant has nothing to do with sitting there. I think I can make the decision for myself. I know what you are looking for so I preserved everything in this case.

Ex. 1 at 81:17-82:13.

The second instance regarded Nizar Burak, Moshe testified he destroyed "some emails that are unrelated to this case." Ex. 1 at 89:21 - 90:4  In summarizing both instances, Moshe further testified "if it was a construction of a personal property that is not business related, some emails from Nizar about the types of toilets or the type of tile you are going to use, its[sic] irrelevant, so those, I deleted. To those issues that relate to the real estate holdings companies where CitiMed is no longer a tenant which is 63-36, CitiMed hasn't been a tenant for years now that relates to ongoing issues now, I don't think that needs to be preserved with new tenants so those were deleted. I don't need them, they are irrelevant." Ex. 1 at 91:17 – 92:16.  Moshe further testified "You are alleging that I erased emails and I explained to you that I did not. Everything that was there is there. Not one email is deleted, not one except those three instances that I told you about myself." Ex. 1 at 147:24 – 148:4.

State Farm's argument that "Moshe intentionally destroyed emails" is clearly unsupported by Moshe's direct sworn testimony.  State Farm's attempt to amplify Moshe's deletion of limited irrelevant emails into more than it actually is, should be viewed as an attempt to misdirect this Court from the actual facts relevant to this motion.

### 1.     Moshe Had No Preservation Obligation Prior to This Lawsuit Being Filed

State Farm devotes considerable attention to the fact that Moshe was a named defendant in prior civil proceedings, including an American Transit lawsuit (filed December 27, 2018) and a GEICO lawsuit (filed February 27, 2020).  Prior litigation does not trigger a preservation obligation for this lawsuit.

4

In the Second Circuit, "[t]he obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 436 (2d Cir. 2001). "Once a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents." *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 218 (S.D.N.Y. 2003).

Even accepting Plaintiffs' assertion that the American Transit and GEICO Actions "named many of the same defendants" and "involved many of the same issues," there is no authority for the claim that Moshe had any preservation obligation for this lawsuit until the complaint was filed in October 2021. Whatever obligations Moshe had in the American Transit Action (resolved by approximately November 2021) or the GEICO Action (resolved by approximately January 2021) are specific to those lawsuits.

The advisory committee notes to Rule 37(e) reinforce this principle, cautioning that "[t]he fact that a party had an independent obligation to preserve information does not necessarily mean that it had such a duty with respect to the litigation, and the fact that the party failed to observe some other preservation obligation does not itself prove that its efforts to preserve were not reasonable with respect to a particular case." *Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendments*. This makes sense, otherwise any person who had ever been involved in a lawsuit would face a perpetual preservation obligation. It is clear Moshe's preservation obligation for this lawsuit began when he became aware it was filed in or around November of 2021. Moshe testified that when he became aware of this at that time, he stopped his normal practice of deleting some emails, and he followed his counsel's advice to preserve communications. Ex. 1 at 49:11 -

5

50: 9; 51:4-16.  Any application by State Farm for sanctions related to spoliation prior to November of 2021 must be denied.

### 2.    The yanmoshe@yahoo.com Account

Moshe does not dispute his ownership of the yanmoshe@yahoo.com email account and that he used the account regularly.  Ex. 1 at 7: 10-13.  Moshe also does not dispute he was in control of the account until his IT personnel began the collection of relevant emails for production in this lawsuit.  Ex. 1 at 10:10–20.

State Farm's assertion that Moshe was instructed not to answer questions about whether the account contained emails involving "a long list of relevant entities and individuals" is irrelevant to this application and is outside of the scope of the order for Moshe's limited deposition.  The order states "Defendant Yan Moshe is ordered to testify at a limited scope deposition concerning the circumstances of why emails from his Yahoo account are no longer available."  (9/26/25 Text Order).  Despite the limited scope of the order, Moshe answered multiple repeated questions about his use of the account.  See Ex. 1, generally.  Moshe's counsel directed him not to answer questions concerning content of his Yahoo emails simply because the scope of the limited deposition order did not include testimony related to content of the emails. Ex. 1 at 22:6 - 23:5; 25:5 - 25:19.

### 3.    Moshe Preserved all Relevant Emails

As set forth above, Moshe preserved all relevant emails once learning about this lawsuit. Moshe testified about receiving preservation correspondence from his then attorneys, which was updated to include persons and entities as State Farm served its litany of subpoenas in this case. Ex. 1 at 50:10-16; 52:11-53:2; 56:19-57:6; 60:18-61:8.  Despite this, State Farm suggests that Moshe "made sure he was in a position to delete damaging emails to ensure Plaintiffs would have 'no case' against him."  Of course, State Farm makes this allegation in direct contrast to Moshe's

6

repeated sworn testimony, which repeatedly confirms he did not delete or destroy damaging emails.

In its brief, State Farm repeatedly (three times, pgs. 6, 18, and 23) quotes one statement made by Moshe during his deposition testimony. The testimony states: "I think I can make the decision for myself. I know what you are looking for so I preserved everything in this case so you got no case." Ex. 1 at 82:10-13. This statement, however, is the last sentence of a longer answer. The first part of the answer, which State Farm conveniently leaves out, provides the context of Moshe's testimony. State Farm's failure to provide the entire answer with full context is an attempt to mislead this court into believing Moshe intentionally deleted emails, when the answer itself confirms Moshe's entire intent was to preserve emails relevant to this lawsuit! The entire question and answer is as follows:

Q.    Did you, at any point in time,
delete any emails in the Yan Moshe at
Yahoo.com account concerning 1963 Concourse
Holdings?

A.    I did. Those emails that are not
related to the State Farm case and the people
on this list.
I want to make this clear. I do have other businesses
In 1963 that has nothing to do with State Farm.

Q.    How did you decide what has to do
with State Farm and what doesn't?

A.    My tax abatement, some of the
repairs that are happening in the lobby that
has nothing to with my tenants sitting there
or my parking lot attendant has nothing to do
with sitting there.
I think I can make the decision for
myself. I know what you are looking for so I
preserved everything in this case so you got
no case.

Ex. 1 at 81:17-82:13

7

This question and answer seems to be State Farm's "smoking gun" regarding its argument that Moshe should have default judgment entered against him for spoliating evidence, as it is quoted three (3) times in State Farm's brief.  What this question and answer actually establishes, however, is that Moshe deleted emails that "are not related to the State Farm case" and that Moshe "preserved everything in this case."

### 4.     State Farm's Discovery to obtain Emails

Moshe does not dispute State Farm served document demands that included relevant communications in his possession.  Moshe does dispute State Farm's contention that "nothing was done to preserve the account" or "remove it from Moshe's absolute control to decide for himself what to delete."  Again, the arguments being made to this court by State Farm are not consistent with Moshe's sworn testimony.

Regarding State Farm's argument that "nothing was done to preserve the account," Moshe testified that when he received State Farm's first document request in around April of 2022, he preserved the emails by confirming he "just kept them," and confirming he did not delete them. Ex. 1 at 63:19 - 64:10; 64:22 - 65:4.  So, Moshe testifies he kept them and did not delete them, and State Farm argues "nothing was done."

Regarding State Farm's argument that nothing was done "to remove it from Moshe's absolute control to decide for himself what to delete," Moshe's Affidavit confirms the collection process and how he was uninvolved in same.  See Ex. 13.  Moshe also testified at his deposition regarding the process, and the testimony confirms Moshe stayed out of the collection process and left it to his IT people with instructions from counsel. Moshe testified, "My attorneys have communicated with Simon and his team to identify what is related. I did not have any say on they should produce, what they should not. They discussed that with the attorneys and they gave them

8

instructions." Ex. 1 at 138:16-25.  Again, State Farm's argument is completely inconsistent with the actual facts related to the issue.

State Farm also argues about the length of time it took for Moshe's emails to be produced, although there is no real point made regarding how the timing affects this application.  As this court is well aware, discovery in this case has been prolonged.  When Moshe's current counsel took over defense of the lawsuit in September of 2023 (Docket Nos. 433-434), counsel worked with State Farm's counsel to get the outstanding discovery completed.  Extensions were required due to the massive amounts of ESI in the lawsuit, but all State Farm's discovery demands were responded to.

### 5.    Spoliation Hearing with Moshe's Prior Counsel

Moshe does not dispute there was court intervention related to discovery issues in this case, or that his prior counsel submitted correspondence regarding emails of Moshe owned non-party entities.  Neither has anything to do with this motion.  Moshe's prior counsel October 5, 2023 correspondence regarding non- party emails does not reference the Yahoo email account.  (Docket No. 451).

State Farm's argument that court intervention related to non-party emails somehow heightened the significance of preserving his personal Yahoo email account is unsupported.  In any event, it doesn't matter because as State Farm's brief confirms, Moshe testified he was continuing to follow his preservation practice related to this lawsuit.  Ex. 1 at 75:8-76:13.

Moshe does not dispute the court entered a text order permitting discovery on the issue of spoliation.

### 6.    Discovery of Moshe's emails

State Farm suggests Moshe was avoiding his discovery obligations by noting there were multiple extensions related to the production of ESI in the lawsuit.  That argument, however, leaves

out vital facts.  As stated above, Moshe was transitioning from prior counsel to current counsel in the fall of 2023.  (Docket Nos. 433-434).  It took time to transfer the file from prior counsel, and those issues were discussed with the Court in the October 2023 hearing.  When the initial deadlines were agreed to, current counsel did not have a complete understanding of the magnitude of the outstanding discovery.  In any event, each time an extension was necessary counsel worked with State Farm's counsel and arranged for same.  Moshe was not avoiding any discovery obligation.

State Farm represents that in February 2024, counsel agreed that "any collection and review of emails would be performed by Moshe's attorneys."  In support of this representation, State Farm cites to an email from its counsel to Moshe's counsel that contains State Farm's "understanding" of the issue.  While Moshe's counsel does not recall the specifics of the conversation, the plan for discovery at that time was to utilize vendors to capture emails and for those emails to be reviewed by counsel to determine responsiveness.  That process was utilized for many email accounts. Regarding Moshe's personal Yahoo email account, he determined that he was not comfortable with either a third party vendor or counsel having access to the entirety of his personal emails, and instead he instructed his IT personnel to work with his counsel to collect the appropriate emails, a process that was left to complete between the IT personnel and counsel, without Moshe's involvement.  Ex. 1 at 138:16-25.

State Farm then argues that "during this period nothing was done to preserve the yanmoshe@yahoo.com account or to remove it from Moshe's absolute control to decide for himself what to delete."  Again, this is completely contrary to Moshe's deposition testimony regarding his preservation of Yahoo emails relevant to this lawsuit.

Moshe does not dispute State Farm served a second set of document requests to Moshe which included information obtained through State Farm's subpoena to Yahoo.

10

**7.    Emails in the yanmoshe@yahoo.com Account Have Not Been Destroyed**

State Farm argues that because Moshe's production did not include emails that Yahoo metadata suggested existed in February of 2024, and because emails from other sources were collected, that emails in the yanmoshe@yahoo.com email account were either deleted or destroyed. Again, State Farm ignores vital facts that are detrimental to its argument.

Moshe provided an affidavit detailing the collection process of his personal Yahoo email account. See Ex. 13. Moshe also testified at length regarding the preservation, retention and collection of the emails. See Section I(B) above. The relevant facts also include the following:

- When Moshe learned his personal Yahoo email account would need to be searched and responsive items produced, he instructed Hudson Regional Hospital IT employees Simon Farouss (Chief Information Officer) and Jonathan Lograno to obtain the appropriate search terms from counsel and collect response items accordingly. Ex. 13 Par. 2.

- Moshe utilized hospital employees to collect emails from my personal Yahoo account because he was not comfortable with a separate third party vendor accessing and collecting his personal email account. Ex. 13 Par. 3.

- In order to complete the collection, Hudson Regional Hospital purchased and utilized a digital forensics software program. Ex. 13 Par. 4.

- The search terms were run using digital forensics software program, which resulted in items collected from the account. Ex. 13 Par. 5.

- Due to the large number of search terms, the process was extensive and many searches had to be rerun. Ex. 13 Par. 6.

- All items collected were provided to Moshe's counsel who reviewed same for responsiveness and privilege before serving to Plaintiffs' counsel. Ex. 13 Par. 7.

- Moshe did not delete any emails relating to this dispute with Plaintiffs since the filing of the complaint in October 2021. Ex. 13 Par. 8.

- In response to Plaintiffs' second document demand, Moshe testified, "search was started using tools that we have in our IT department, that didn't work, we bought a third party tool. When I say we, my IT department, and they were working on this for more than a month I believe and ran hundreds of searches because so many and

11

so many entities and all of the emails were able to locate were produced to you." Ex. 1 at 108 :3 – 15.

- The decision to have Moshe's IT department collect the emails was done with consultation with counsel. Moshe testified, "Yes, with my attorneys, as long as they said that we'd do this fairly and we get a third party tool that can justify what we do, we have a copy of all the search names, we have it approved as a backup that there was no comingling and that I didn't have any influence on Simon and his team when they are doing it, I gave it to my attorneys and they dealt with it. Ex. 1 at 141:2 – 18.

It is again clear that State Farm's unsupported assumption of emails being deleted or destroyed directly contradicts Moshe's sworn statements. The facts make clear that Moshe preserved the emails and instructed his highest level Hospital employee to purchase a tool and run searches to collect the emails. As noted, Moshe stayed out of the process and allowed the Hospital employees to deal with counsel in conducting the searches and collecting emails. There is no evidence to support State Farm's allegations that emails were intentionally deleted or destroyed.

### 8.    Order Regarding Moshe's Limited Deposition

Moshe does not dispute his position that he appear for deposition on one occasion rather than two separate occasions. When the Court ordered a separate limited deposition related to his personal Yahoo email account, he appeared as ordered and answered questions under oath from approximately 10:00 a.m. until 1:30 p.m., some three and a half (3.5) hours.

### 9.    Moshe's Collection of Emails

State Farm argues that "Contrary to the agreement made with Moshe's attorneys in February 2024, Moshe's attorneys were not involved in the collection process." Once again, State Farm makes arguments that do not align with the facts. As stated above, Moshe testified at his deposition regarding the collection process, confirming he stayed out of the process and left it to his IT people with instructions from counsel. Moshe testified, *"My attorneys have communicated with Simon and his team to identify what is related.* I did not have any say on they should produce,

12

what they should not. They discussed that with the attorneys and they gave them instructions. Ex. 1 at 138:16-25 (emphasis added).

Moshe does not dispute he did not want his personal email account in the hands of a third party.  Despite this, Moshe testified the process that his IT employees utilized was the same as the remaining defendants in the case. The testimony is as follows:

> Q.    What exactly was it about what was
> going to be done by Simon and Jonathan that
> was going to be different, how was the
> process -- exactly how was the process
> different?
>
> A.    The process is not different. The
> information that is not related to this case
> would not be disclosed to anyone else so they
> would not have a copy of it, it's my personal
> information.
>
> Q.    Got it. So to the extent there was
> information that you didn't want to get into
> the case –
>
> A.    No, not into the case. I didn't
> want any third-party entity to have it.
> Information gets lost, information gets
> stolen. My whole life is in that email
> account, my family pictures, my taxes, my
> accounts, it's a lot of personal stuff
> unrelated to the case. Everything related to
> the case, we gave you, but I didn't want that
> information to be out there.

Ex. 1 at 137:18-138:15.

Moshe's explanation is reasonable.  More importantly, as set forth above, Moshe confirmed the collection process was handled by his IT employees and counsel.  There is simply no evidence to suggest the collection process utilized to collect and produce the emails was done to somehow prevent State Farm from obtaining relevant discovery.

13

#### 10.    Moshe's Testimony Regarding Emails Alleged to be Missing

When asked about State Farm's allegation that emails were missing from Moshe Yahoo account email production, Moshe did testify that he believed the missing emails were likely calendar invites or calendar meetings.  State Farm's argument that Moshe "appears to be claiming" that all of these items are not substantive emails is not supported by Moshe's testimony.

When Moshe was asked why emails identified by Yahoo were not included in the production, Moshe's testimony confirmed he did not delete any emails after receiving the preservation letter, and his testimony continued to state "*A lot of the message confirmations* that you have are not necessarily to an email to or from me, it's probably from meetings. That's while some people, I have 2,000 email. I would never, in my right mind, send 2,000 emails to these people." Ex. 1 at 117:12 – 21 (emphasis added).

Moshe also testified that he believed any emails missing from his production could have been calendar invites rather than substantive emails. The testimony is as follows:

> Q.    So what else could these emails be?
>
> A.    And the rest are communications I produced to you that I have.
>
> Q.    So your testimony is that everything in there is either a communication that was produced, a meeting or a scheduling of a meeting?
>
> A.    Correct. *It might be some other things in there, I just don't recall.*

Ex. 1 at 123:4-12 (emphasis added).

It is clear that State Farm's argument that Moshe "appears to be claiming" that all of these items are not substantive emails is false.  Moshe is obviously not an IT expert.  His testimony was nothing more than a lay person's attempt to explain why some emails that Yahoo indexed were not included in his production.  Nothing more.

14

### 11.    State Farm's Additional Sources to Collect Emails

Moshe does not dispute State Farm has served various subpoenas for discovery related to the Yahoo emails.  State Farm's characterization that emails were destroyed, or can no longer be recovered, or that emails were lost through destruction are unsupported.  Similarly, State Farm's assertion that Moshe "continues to block efforts to understand the scope of the missing emails, as his attorney refused to allow him to answer questions as to whether Moshe used the account to conduct business for relevant entities" is misleading.  State Farm again fails to include the entire exchange during the deposition that provides the proper context.

In this instance, Moshe's attorney objected to Moshe answering the question because it was not within the limited scope of the deposition.  Again, the order states "Defendant Yan Moshe is ordered to testify at a limited scope deposition concerning the circumstances of why emails from his Yahoo account are no longer available." (9/26/25 Text Order).  Questions related to whether Moshe used the account to conduct business for relevant entities has nothing to do with the circumstances of why emails are no longer available, are clearly outside the scope of the order. However, Moshe's attorney further stated "I'm objecting and instructing the witness not to answer on the limited basis that the question is not appropriate for today.  I'm not making the objection based upon any other basis and I'm not saying that the witness would never answer these questions at a deposition in the future, but I believe it exceeds the scope of today's deposition." Ex. 1 at 26:23-27:18.  State Farm has not sought to have Moshe answer these questions as they may relate to this application.

State Farm also argues that missing items must contain significant information is also unsupported.  Many of the people at issue are family or friends of Moshe.  Regina Moshe, M.D. is Moshe's sister.  Nizar Kifaieh, M.D. is Moshe's long time friend.  Reuven Alon is Moshe's cousin. Popular Bank is Moshe's personal bank.  Rina Estoerov is Moshe's personal accountant.  Nazar

15

Burack is a friend of Moshe. Marina Katayeva is a friend of Moshe. It is just as likely, perhaps even more likely, that emails between Moshe and these people in Moshe's personal email account had nothing to do with business whatsoever. State Farm's assertion that it "must be accepted missing items contain even more significant information and were intentionally deleted" is an unsupported guess.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 37(e) governs spoliation of electronically stored information. The Rule states:

> (e) Failure to Preserve Electronically Stored Information. If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost *because a party failed to take reasonable steps to preserve it,* and it cannot be *restored or replaced* through additional discovery, the court:
>
> > (1) *upon finding prejudice to another party from loss of the information*, *may* order measures *no greater than necessary to cure the prejudice*; or
> >
> > (2) *only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may*:
> >
> > > (A) presume that the lost information was unfavorable to the party;
> > >
> > > (B) instruct the jury that it *may or must* presume the information was unfavorable to the party; or
> > >
> > > (C) dismiss the action or enter a default judgment.

(emphasis added).

It is well settled that the Rule governing discovery sanctions for spoliation of ESI requires the following three-part analysis: (1) decide if the rule applies at all, that is, if a party failed to take reasonable steps to preserve ESI that should have been preserved in the anticipation or conduct of litigation; (2) if so, then decide if there has been prejudice to another party from loss of the

16

information, in which case the district court may order measures no greater than necessary to cure the prejudice; and (3) consider, regardless of prejudice to any other party, whether the destroying party acted with the intent to deprive another party of the information's use in the litigation, in which event a court may consider whether to impose the most severe of measures such as mandatory presumptions or instructions that the lost information was unfavorable or the entry of default judgment. In re Keurig Green Mountain Single-Serve Coffee Antitrust Litigation, S.D.N.Y. 2022, 341 F.R.D. 474.

The following will demonstrate that State Farm's application fails on multiple levels. First, Moshe did take reasonable steps to preserve his ESI, and as such Rule 37(e) does not even apply. Second, State Farm has recovered a significant portion of the ESI it says was improperly destroyed or deleted. Third, State Farm cannot establish it has been prejudiced. Fourth, even if this Court determines Moshe failed to take reasonable steps to preserve ESI and State Farm can establish it has been prejudiced, this Court should exercise its discretion not to impose any sanction, because any prejudice is extremely limited. Fifth, there is absolutely no evidence whatsoever to establish Moshe acted with the intent to deprive State Farm of the information's use in the litigation. Sixth, even if this Court determines Moshe acted intentionally despite any evidence supporting State Farm's allegation, the Court is not obligated to, and in fact should not, take any adverse action against Moshe.

### III.   ARGUMENT

As set forth throughout this brief, Moshe took appropriate steps to preserve his email and did not intentionally deprive State Farm from receiving ESI information. State Farm has received a substantial number of emails from other sources, and also has the ability to depose other witnesses to obtain additional information it claims to be missing. State Farm cannot meet the

17

required elements to obtain any sanction whatsoever against Moshe, especially a terminating sanction.

## A.    Moshe Preserved ESI and did not Intentionally Delete Anything

State Farm's characterization of Moshe's conduct as an intentional scheme to destroy ESI is a distortion of the record. In reality, the facts demonstrate Moshe took preservation steps and that any loss of ESI resulted from routine email management practices and technical limitations collecting ESI from the Yahoo platform rather than intentional conduct.

State Farm's allegation that Moshe "took no affirmative steps whatsoever to preserve" misstates the deposition record. Moshe testified unambiguously that upon learning of this lawsuit, he stopped deleting emails relevant to same. Ex. 1 at 55:21–56:1; 56:7–13. Moshe's preservation method, maintaining all relevant emails within his Yahoo account, constitutes a reasonable step under the circumstances. The Rule 37(e) Advisory Committee Notes recognize that "'reasonable steps' to preserve suffice; [the rule] does not call for perfection." (2015 amendment).

Moshe is a businessperson, not a lawyer or an IT professional. His reliance on counsel and his IT personnel to collect and review his emails is reasonable conduct for an individual litigant operating in good faith. State Farm faults Moshe for not downloading all emails to a separate medium or producing multiple litigation holds. But Rule 37(e) does not require any particular method of preservation, and the failure to institute formal litigation holds is not dispositive. As the court recognized in In re Keurig Green Mountain Single-Serve Coffee Antitrust Litigation, 341 F.R.D. 474 (S.D.N.Y. 2022), "[f]ailing to institute a litigation hold is not gross negligence per se, but a factor the court should consider, along with 'whether the party implemented good document or evidence preservation practices.'" Id. at 493-494. Moshe did implement a preservation practice: he followed counsel's instructions, and ceased deleting relevant emails within the identified categories. Ex. 1 at 55:21–56:1; 56:7–13.

18

State Farm again cites to Moshe's testimony "I think I can make the decision for myself. I know what you are looking for so I preserved everything in this case so you got no case" and brazenly twists it into a confession of intentional destruction. In context, this statement demonstrates the complete opposite of what State Farm contends: Moshe was asserting confidence that he had preserved everything relevant and that State Farm's claims would fail on the merits. Any argument to the contrary is absurd.

State Farm further mischaracterizes Moshe's explanation of missing items. Moshe testified that many of the items Yahoo's metadata identified as "emails" were in fact "confirmations of conferences we attended or events we attended," "calendar meeting[s]," "calendar request meeting[s]," or "calendar invites and scheduling and repetitive emails." Ex. 1 at 117:12 – 21. Moshe's explanation is his layperson understanding of why some emails may have been missing. Not an attempt to divert that he intentionally deleted or destroyed emails. Ex. 1 at 123:4-12.

State Farm argues that the collection process that Moshe utilized for his Yahoo emails was part of Moshe's plan to "hide the scope of his destruction" of emails, and that Moshe's explanation that he utilized IT employees to conduct the collection because he didn't want his counsel or anyone else inspecting emails about his personal life and family "makes no sense." In reality, any rational person would understand an individual's desire to keep their private life, private. Despite State Farm's argument to the contrary, Moshe was clear that he stayed out of the collection process. Moshe testified, *"My attorneys have communicated with Simon and his team to identify what is related.* I did not have any say on they should produce, what they should not. They discussed that with the attorneys and they gave them instructions. Ex. 1 at 138:16-25 (emphasis added).

Rule 37(e) states "If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost ***because a party failed to take reasonable steps to***

*preserve it,* and it cannot be restored or replaced through additional discovery, the court: . . ." (emphasis added). The "reasonable steps" inquiry has been equated to "roughly a negligence standard." Leidig v. Buzzfeed, Inc., 2017 WL 6512353, at *10 (S.D.N.Y. Dec. 19, 2017). In this case, Moshe took reasonable steps to preserve his emails, as stated. His preservation process of no longer deleting relevant emails cannot and should not be considered negligent.

Because State Farm cannot meet the first prong of the Rule 37(e) analysis, i.e., establish Moshe failed to take reasonable steps to preserve, the analysis ends there and State Farm's application must be denied.

**B.      State Farm Has Obtained Significant Emails From Other Sources**

Rule 37(e) also requires a showing that lost ESI "cannot be restored or replaced through additional discovery" before determining if any court action is appropriate. State Farm admits to replacing significant portions of the yahoo emails it alleges are missing. State Farm also alleges it cannot replace portions of the alleged missing ESI through other discovery because it has issued subpoenas to non-parties and has reviewed co-defendant discovery responses.

It is undisputed the burden is on State Farm to establish the ESI cannot be restored or replaced. Morgan Art Found. Ltd. v. McKenzie, No. 18-CV-4438 (AT) (BCM), 2020 WL 5836438, at *18 (S.D.N.Y. Sept. 30, 2020); Johnson v. L'Oreal USA, No. 18-CV-09786 (LGS), 2020 WL 5530022, at *3 (S.D.N.Y. Sept. 15, 2020). The 2015 advisory committee note states "If the information is restored or replaced, no further measures should be taken. At the same time, it is important to emphasize that efforts to restore or replace lost information through discovery should be proportional to the apparent importance of the lost information to claims or defenses in the litigation."

The tone of State Farm's motion attempts to persuade this Court that the emails alleged to be missing are vital, and that it has been substantially prejudiced as a result. However, State Farm

20

has not attempted to have this Court explore any other option to determine whether the alleged

missing emails are still in fact recoverable.  State Farm has not sought an order requiring Moshe's

counsel to engage a third party vendor to attempt collection of Moshe's Yahoo account, despite

knowing the collection process Moshe utilized since *August of 2025*.  Ex. 13.  Instead, State Farm

twists Moshe's testimony about the preservation and collection process into an attempt to obtain a

default judgment against him, rather than seeking to litigate this matter on the merits.  Without

certainty the alleged missing emails are actually missing, State Farm is not entitled to any relief

pursuant to Rule 37(e).

**C.      Moshe Has Not Engaged in any Intentional Act Whatsoever to Deprive State Farm from Receiving ESI**

Rule 37(e)(2) confirms that in order for a party to be entitled to a remedy for lost ESI, the

court must determine a party acted with the intent to deprive another party of the information's use

in the litigation.  "[T]he intent contemplated by Rule 37 is not merely the intent to perform an act

that destroys ESI but rather the intent to actually deprive another party of evidence." Leidig v.

Buzzfeed Inc., 2017 WL 6512353, at *11 (S.D.N.Y. Dec. 19, 2017).

The 2015 advisory committee note states:

"Subdivision (e)(2) requires a finding that the party acted with the intent to deprive another party of the information's use in the litigation.  This finding may be made by the court when ruling on a pretrial motion, when presiding at a bench trial, or when deciding whether to give an adverse inference instruction at trial. ***If a court were to conclude that the intent finding should be made by a jury, the court's instruction should make clear that the jury may infer from the loss of the information that it was unfavorable to the party that lost it only if the jury first finds that the party acted with the intent to deprive another party of the information's use in the litigation. If the jury does not make this finding, it may not infer from the loss that the information was unfavorable to the party that lost it.***

(emphasis added).

The advisory committee makes clear that a jury may make the determination

regarding intent.  In this case, as State Farm is seeking "a terminating sanction" requiring

a showing of intent, a jury should be required to make that determination. In any event, the facts demonstrate State Farm cannot establish Moshe acted with intent to deprive State Farm of any information's use in this lawsuit.

As set forth in State Farm's brief, in order for a court to determine such intent to deprive occurred, there must be a "conscious dereliction of a known duty," and failure "to take any reasonable steps to preserve relevant communications satisfies the level of intent required of Rule 37(e)(2). Adler v. Sonotec, 2025 WL 2614993, at *8 (E.D.N.Y. Sept. 10, 2025). Factors that courts in the Second Circuit have considered in determining whether a party acted with the intent to deprive another party of discovery include: (1) evidence once existed that could fairly be supposed to have been material to the proof or defense of a claim at issue in the case; (2) the spoliating party engaged in an affirmative act causing the evidence to be lost; (3) the spoliating party did so while it knew or should have known of its duty to preserve the evidence; and (4) the affirmative act causing the loss cannot be credibly explained as not involving bad faith by the reason proffered by the spoliator. PDV USA, 2026 WL 203036, at *9.

Despite State Farm's argument to the contrary, three (3) of the four (4) elements do not exist in this case. As has been stated in great detail herein, Moshe did not delete any relevant emails after learning of this lawsuit. In fact, there were only two (2) instances where Moshe made a determination that emails did not need to be preserved, both of which have nothing whatsoever to do with the lawsuit. Ex. 1 at 55:21–56:1; 56:7–13; 81:17-82:13.

Regarding the four (4) factors set forth in PDV USA, State Farm cannot establish the second, third or fourth factor. Moshe did not engage in any affirmative act causing the evidence to be lost. As such, he could not have done so while knowing of a duty to preserve, and he cannot be found to have acted in bad faith related to any alleged missing emails. In a weak effort to

22

establish Moshe engaged in an affirmative act causing evidence to be lost, State Farm argues "emails were affirmatively destroyed," and provides a cite to "see page 6" of its brief. A review of page 6 confirms what Moshe has argued here throughout: He preserved emails upon learning of this lawsuit and in two instances deleted emails "that had nothing to do with the State Farm case." Ex. 1 at 56:3-13. State Farm's attempt to use this factual record to establish an intentional affirmative act to destroy emails cannot be accepted. Factors two (2) and three (3), therefore, cannot be met.

Regarding the fourth (4th) factor, State Farm argues that Moshe's testimony regarding his belief that many of the alleged missing emails are calendar and scheduling emails, and the fact that Moshe utilized IT personnel to conduct the collection, establishes the requisite showing of bad faith. Again, State Farm ignores Moshe's sworn testimony to create its false narrative. Regarding the calendar and scheduling issue, Moshe's explanation is his layperson understanding of why some emails may have been missing. Not an attempt to divert that he intentionally deleted or destroyed emails. Ex. 1 at 123:4-12. Regarding the email collection issue, Moshe testified, "My attorneys have communicated with Simon and his team to identify what is related. I did not have any say on they should produce, what they should not. They discussed that with the attorneys and they gave them instructions." Ex. 1 at 138:16-25.

It is clear State Farm cannot establish any intent to deprive State Farm of any information relevant to this lawsuit. Even if this Court disagrees, the issue of intent should be left to a jury to decide at the time of trial.

## D.    State Farm Has Not Been Prejudiced

If this Court determines Moshe failed to take reasonable steps to preserve ESI that cannot be restored or replaced, it may order measures no greater than necessary to cure any prejudice incurred by State Farm. Rule 37(e)(1). Rule 37 advisory committee note from 2015 states "[a]n

23

evaluation of prejudice from the loss of information necessarily includes an evaluation of the information's importance in the litigation." While the moving party ordinarily "has the burden of establishing the elements of a spoliation claim," Ottoson v. SMBC Leasing and Finance, Inc., 268 F. Supp. 3d 570, 580 (S.D.N.Y. 2017) (quoting Sekisui Am. Corp. v. Hart, 945 F. Supp. 2d 494, 509-10 (S.D.N.Y. 2013)), Rule 37(e)(1), as amended, "does not place a burden of proving or disproving prejudice on one party or the other.... The rule leaves judges with discretion to determine how best to assess prejudice in particular cases." Fed. R. Civ. P. 37(e)(1) advisory committee's note to 2015 amendments.

Courts within the Second Circuit generally require that the lost evidence was not only probative, but also would affirmatively support the movant's claim to find prejudice. Ungar v. City of New York, 329 F.R.D. 8, 15 (E.D.N.Y. 2018). The requirement that a movant show that the evidence would have supported his or her case serves the purpose of elucidating the appropriate remedy for the alleged spoliation. Id. (citing Kronisch v. United States, 150 F.3d 112, 127 (2d Cir. 1998).

State Farm first argues that Moshe was prevented from answering questions at his limited deposition as part of an effort "to block Plaintiffs' from understanding the scope of destruction." However, as set forth above, Moshe's attorney objected to Moshe answering the question because it was not within the limited scope of the deposition. Moshe's attorney further stated "I'm objecting and instructing the witness not to answer on the limited basis that the question is not appropriate for today. I'm not making the objection based upon any other basis and I'm not saying that the witness would never answer these questions at a deposition in the future, but I believe it exceeds the scope of today's deposition." Ex. 1 at 26:23-27:18. State Farm has not sought to have

24

Moshe answer these questions as they may relate to this application, but now attempt to hold it against Moshe.

State Farm then argues that the information contained in the emails produced by Moshe and others confirms that alleged missing emails "would almost certainly have contained substantive discussions, been relevant to the issues, and would have been supportive of Plaintiffs' allegations." A closer look, however, casts doubt on this argument. A large number of the alleged "missing emails" are between Moshe and Dr. Moshe, his sister. Another substantial portion of alleged "missing" emails are between Moshe and Popular Bank, a bank that Moshe uses for both business and personal banking. Additional alleged "missing" emails are between Moshe and Nizar Kifaieh, M.D., Moshe's long time friend; Reuven Alon, Moshe's cousin; Rina Estoerov, Moshe's personal accountant; Nazar Burack, a friend of Moshe; and Marina Katayeva, a friend of Moshe. It is just as likely, perhaps even more likely, that emails between Moshe and these people in Moshe's personal email account had nothing to do with business whatsoever. State Farm's assertion that "missing" emails between Moshe and these people cannot support its argument that the emails would be relevant and support State Farm's allegations."

Even if this Court determines that State Farm is missing relevant emails, the analysis regarding whether or not it has been prejudiced must also consider the emails that it does possess. In Lokai Holdings LLC v. Twin Tiger USA, LLC, 2018 WL 1512055, at *14-15 (S.D.N.Y March 12, 2018), the Court considered the fact that the plaintiff did possess ESI in support of its claims in determining whether a finding of prejudice could be supported. The Court stated "Lokai is again trying to explain the extent of its "prejudice" by touting favorable evidence that is actually now in its possession." Same too here. State Farm goes to great length in including emails that it suggests supports its allegations in the lawsuit against Moshe, while simultaneously arguing it has

25

been prejudiced.  State Farm cannot have it both ways, and cannot sustain a showing of prejudice

based on missing ESI.

**E.      State Farm is not Entitled to Sanctions for Spoliation**

The severe sanctions State Farm requests in this motion, including the entry of default

judgment or a mandatory adverse inference at trial, each require a finding that Moshe failed to take

reasonable steps to preserve ESI, the ESI cannot be restored or replaced, and that Moshe "acted

with the intent to deprive another party of the information's use in the litigation." Fed. R. Civ. P.

37(e) and (e)(2).  This is a demanding standard that State Farm has not and cannot meet.  Without

establishing intent to deprive another party of the information's use in the litigation, the only

available remedy is that upon a showing of prejudice, a court may order measures no greater than

necessary to cure the prejudice.  Fed. R. Civ. P. 37(e)(1).  This remedy also requires a finding that

Moshe failed to take reasonable steps to preserve ESI, the ESI cannot be restored or replaced.  As

set forth in Section III (A) above, State Farm cannot establish Moshe failed to take reasonable

steps to preserve his Yahoo emails, and as such the analysis should end there and State Farm's

motion should be denied.  Even if this court disagrees, however, State Farm cannot establish the

remaining elements required to obtain sanctions.

The advisory committee notes for the 2015 amendment to Rule 37(e) also provide much

insight into when and what type of sanction is appropriate in certain situations.  The advisory

committee notes include the following:

- Once a finding of prejudice is made, the court is authorized to employ measures "no greater than necessary to cure the prejudice." The range of such measures is quite broad if they are necessary for this purpose. There is no all-purpose hierarchy of the severity of various measures; the severity of given measures must be calibrated in terms of their effect on the particular case. *But authority to order measures no greater than necessary to cure prejudice does not require the court to adopt measures to cure every possible prejudicial effect. Much is entrusted to the court's discretion.*  Fed. R. Civ. P. 37(e)(1) advisory committee's note to 2015 amendments (emphasis added).

26

- Courts should exercise caution, however, in using the measures specified in (e)(2). *Finding an intent to deprive another party of the lost information's use in the litigation does not require a court to adopt any of the measures listed in subdivision (e)(2). The remedy should fit the wrong, and the severe measures authorized by this subdivision should not be used when the information lost was relatively unimportant or lesser measures such as those specified in subdivision (e)(1) would be sufficient to redress the loss.* Fed. R. Civ. P. 37(e)(1) advisory committee's note to 2015 amendments (emphasis added).

- Adverse-inference instructions were developed on the premise that a party's intentional loss or destruction of evidence to prevent its use in litigation gives rise to a reasonable inference that the evidence was unfavorable to the party responsible for loss or destruction of the evidence. *Negligent or even grossly negligent behavior does not logically support that inference. Information lost through negligence may have been favorable to either party, including the party that lost it, and inferring that it was unfavorable to that party may tip the balance at trial in ways the lost information never would have. The better rule for the negligent or grossly negligent loss of electronically stored information is to preserve a broad range of measures to cure prejudice caused by its loss, but to limit the most severe measures to instances of intentional loss or destruction.* Fed. R. Civ. P. 37(e)(1) advisory committee's note to 2015 amendments (emphasis added).

- Subdivision (e)(2) applies to jury instructions that permit or require the jury to presume or infer that lost information was unfavorable to the party that lost it. Thus, it covers any instruction that directs or permits the jury to infer from the loss of information that it was in fact unfavorable to the party that lost it. The subdivision does not apply to jury instructions that do not involve such an inference. *For example, subdivision (e)(2) would not prohibit a court from allowing the parties to present evidence to the jury concerning the loss and likely relevance of information and instructing the jury that it may consider that evidence, along with all the other evidence in the case, in making its decision. These measures, which would not involve instructing a jury it may draw an adverse inference from loss of information, would be available under subdivision (e)(1) if no greater than necessary to cure prejudice.* In addition, subdivision (e)(2) does not limit the discretion of courts to give traditional missing evidence instructions based on a party's failure to present evidence it has in its possession at the time of trial. Fed. R. Civ. P. 37(e)(1) advisory committee's note to 2015 amendments (emphasis added).

Courts in this district have followed the Rule and advisory notes in deciding the appropriate analysis and standards in awarding sanctions. In <u>Grammar v. Sharinn & Lipshie</u>, P.C., No. 14 Civ. 6774, 2016 WL 525478, at *3 (S.D.N.Y. Feb. 8, 2016), the court confirmed the law is clear that

27

courts "should always seek to impose the *least harsh* sanction that will remedy the discovery violation and deter such conduct in the future." (emphasis added).  In Kortright Cap. Partners LP v. Investcorp Inv. Advisers Ltd., 330 F.R.D. 134, 139 (S.D.N.Y. 2019), the court confirmed "Ultimately, it is always preferable for issues to be adjudicated on the merits, rather than pursuant to discovery sanctions."  Rule 37 and its progeny make very clear that a terminating sanction including the entry of default judgment must be avoided at all costs.  State Farm's ask, that default motion or some other terminating sanction be entered against Moshe on this record, is unjustified.

Even if this Court were to find Moshe's preservation efforts were negligent, or even grossly negligent, that finding alone cannot support the imposition of sanctions under Rule 37(e)(2). Negligence and gross negligence, while potentially sufficient to satisfy the culpability element for lesser sanctions under the court's inherent power or Rule 37(e)(1), do not satisfy the stringent "intent to deprive" standard of Rule 37(e)(2).  In re Keurig Green Mountain, 341 F.R.D. at 527 (S.D.N.Y. 2022) (declining to award adverse inference or other Rule 37(e)(2) sanctions where evidence of intent was "capable of more than one interpretation" and court would "not make a finding of intent to deprive on the basis of suspicion alone" (citing Lokai Holdings, 2018 WL 1512055, at *16)).

Courts have confirmed the intent requirement, stating such a finding is a necessary predicate to the imposition of the "particularly harsh" sanctions permitted under subsection (e)(2). Lokai Holdings, 2018 WL 1512055, at *8 (characterizing adverse-inference instructions as "extreme sanction[s] that should not be given lightly," and default judgments as "even more drastic")  The intent standard is both stringent and specific: "[T]he intent contemplated by Rule 37 is not merely the intent to perform an act that destroys ESI but rather the intent to actually deprive another party of evidence."  Leidig v. Buzzfeed Inc., 2017 WL 6512353, at *11 (S.D.N.Y. Dec.

28

19, 2017) (holding that although plaintiff intended to "disable his websites" and delete certain email files, he did not do so for the purpose of depriving defendants of the use of the ESI in litigation and therefore could not be sanctioned under subsection (e)(2)).

In this case, State Farm cannot meet its heavy burden for sanctions against Moshe. State Farm cannot establish Moshe failed to take reasonable steps to preserve his Yahoo emails, as set forth in Section III (A) above. State Farm has recovered a substantial portion of the alleged "missing" emails, as set forth in Section III (B) above. State Farm has not been prejudiced as it has established it has voluminous emails regarding each of its allegations against Moshe, as set forth in Section III (D) above. Moshe has not acted with the intent to deprive State Farm of the information's use in the litigation, as set forth in Section III (C) above.

State Farm relies on one of its own cases, State Farm Mut. Auto. Ins. Co. v. Grafman, 274 F.R.D. 442, 450 (E.D.N.Y. 2011) in an attempt to argue default judgment should be entered against Moshe. An examination of that case, however, makes clear it is distinguishable from this lawsuit. First, State Farm v. Grafman was decided in 2011, before Rule 37 was amended in 2015. Second, State Farm v. Grafman confirms that a default judgment is a "drastic remedy" reserved for the most egregious cases which involve willful destruction of evidence coupled with sustained defiance of court orders, perjury, and a complete refusal to participate in discovery.

In State Farm v. Grafman, the court granted default only after defendant destroyed computers "immediately upon receipt," refused to execute waivers, engaged in a "pattern of prolonged and vexatious obstruction of discovery," and committed "willful disregard of court orders" and "intentional spoliation of relevant evidence" spanning nearly seven years of litigation. That case is worlds apart from this one. Moshe has not destroyed hardware or refused to participate in discovery. Moshe has not willfully disregarded court orders. Moshe has not refused to execute

29

waivers.  Moshe has <u>not</u> engaged in a pattern of prolonged and vexatious obstruction of discovery. To the contrary, Moshe has participated in discovery by both producing documents and appearing for his limited deposition.  Moshe has complied with court orders related to his discovery obligations, even were extensions may have been necessary.  Moshe has not intentionally spoliated relevant evidence.

State Farm is not entitled to default judgment or any terminating sanction against Moshe. State Farm is not entitled to its alternate request for relief in the form of adverse inference jury instructions.  Even if this court were to consider such a sanction, that decision must be made at the time of trial on a full discovery record in order to determine what instruction, if any, is appropriate. State Farm is not entitled to attorney's fees or costs associated with this motion.

## IV.    CONCLUSION

State Farm's request for sanctions under Federal Rule of Civil Procedure 37(e), whether in the form of a default judgment, an adverse inference instruction, or any other sanction, should be denied.  State Farm has failed to establish the elements required for the imposition of sanctions under either Rule 37(e)(1) or Rule 37(e)(2).  The record, when viewed objectively, demonstrates that Moshe took preservation steps when he learned of this lawsuit, State Farm has suffered no cognizable prejudice, and the drastic sanctions State Farm seeks are entirely disproportionate to the circumstances of this case.

State Farm's characterization of any missing e-mails as intentionally deleted or intentionally destroyed ignores Moshe's unrebutted testimony that he did not delete any relevant e-mails, and in fact only deleted emails in two (2) instances (with people State Farm allege are relevant) that are wholly unrelated to the lawsuit.

State Farm has admittedly recovered a significant number of the allegedly missing emails from other defendants and non-party sources, as well as significant emails from the period before

30

February 2024.  State Farm has established it has many emails on each claim in its complaint.  Any claim of prejudice is therefore belied by these facts, or at a minimum, substantially reduced.

Finally, there are no facts to support State Farm's argument that Moshe acted with the "intent to deprive" it of the use of his emails.  The sanctions State Farm seeks, including case-terminating default judgment, are grossly disproportionate to the factual record and wholly unwarranted.  Moshe acted in reliance on the advice of counsel, cooperated with the collection process through his IT personnel, certified in a sworn affidavit and at his deposition that all collected items from the yanmoshe@yahoo.com account were provided to his counsel for production.  This Court should decline to impose any sanction and permit the case to proceed on the merits.

Accordingly, Moshe respectfully requests this Court deny State Farm's Motion for Spoliation Sanctions in full, including the requests for default judgment, adverse inference instructions, and attorneys' fees.

**BRACH EICHLER LLC**

_____

Anthony M. Juliano
*Attorneys for Yan Moshe*

Dated:  May 11, 2026

31