# *Exhibit 17*

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - x
STATE FARM MUTUAL AUTOMOBILE
INSURANCE, et al.,

        Plaintiffs,

                   Case No.:

  -against-            1:21-cv-05523
                      (MKB)(PK)

METRO PAIN SPECIALISTS P.C., et al.,

        Defendants.

- - - - - - - - - - - - - - - - - - - - - x


        Videotaped deposition of YAN MOSHE,
taken pursuant to notice, was held at
the law offices of KATTEN MUCHIN
ROSENMAN, LLP, 50 Rockefeller Plaza, New
York, New York, New York, commencing
January 6, 2026, 9:53 a.m., on the above
date, before Leslie Fagin, a Court
Reporter and Notary Public in the State
of New York.

                 - - -


MAGNA LEGAL SERVICES - (866) 624-6221
           www.MagnaLS.com



APPEARANCES:

KATTEN MUCHIN ROSENMAN, LLP
Attorneys for Plaintiffs
        50 Rockefeller Plaza
        New York, New York 10020
BY:     CHRISTOPHER COOK, ESQUIRE
        MICHAEL CARDOZA, ESQUIRE (Via Zoom)
        JONATHAN MARKS, ESQUIRE


LONDON FISCHER, LLP
Attorneys for Defendants DR. REGINA MOSHE,
CITMEDICAL I, PLLC, CITIMED SERVICES, P.A.,
CITIMEDICAL SERVICES P.C., CITIMED COMPLETE
MEDICAL CARE, P.C., CITIMED MANAGEMENT
SERVICES INC., and DR. ANAM AZEEM
        59 Maiden Lane
        New York, New York 10038
BY:     THOMAS LEGHORN, ESQUIRE

BRACH EICHLER, LLC
Attorneys for Defendants YAN MOSHE, YAN MOSHE
SURGICAL CENTERS and HUDSON REGIONAL HOSPITAL
        101 Eisenhower Parkway, Suite 201
        Roseland, New Jersey 07068
BY:     ANTHONY JULIANO, ESQUIRE (Via
        Zoom)
        KEITH ROBERTS, ESQUIRE


ALSO PRESENT:

JEREMY KOVACS, Videographer



Page 3

THE VIDEOGRAPHER:  Good morning. We are now on the record.

Today's date is Tuesday January 6, 2026 and the time is 9:53 a.m.

This begins the video deposition of Yan Moshe in the matter of State Farm versus Metro Pain Specialist, et al.

Will all counsel identify themselves for the record?

MR. MARKS:  For the plaintiff, Jonathan Marks of Katten Muchin Rosenman.

MR. COOK:  Christopher Cook of Katten Muchin on behalf of the plaintiffs.

MR. ROBERTS:  On behalf of the witness, Keith Roberts, Brach Eichler.

MR. LEGHORN:  Thomas Leghorn of London Fischer for the Citimed defendants with the exception of Citimed Surgery.

THE VIDEOGRAPHER:  Will the court please swear in the witness, then we may begin.



Page 4

Y. Moshe

Y A N   M O S H E,   called as a witness, having been duly sworn by a Notary Public, was examined and testified as follows:

EXAMINATION BY

MR. MARKS:

Q.   Could you please state your name for the record?

A.   Yan Moshe.

Q.   Mr. Moshe, have you been deposed before?

A.   Yes.

Q.   So today's deposition is going to concern your email account known as Yan Moshe at Yahoo.com.

Are you familiar with that email account?

A.   Yes.

Q.   During today's deposition, I will refer to it is as the Yan Moshe at Yahoo.com account or the Moshe Yahoo account, I will refer to it as one or the other.

Can we agree that when I say the Moshe Yahoo account, we are talking about the



Y. Moshe

Yan Moshe at Yahoo.com account?

A.    Okay.

Q.    There are a few ground rules, you have been deposed before, but I just want to go through what those rules are so we understand each other.

First of all, I'm going to be asking questions and you are going to be answering.

You understand that you are under oath?

A.    I do.

Q.    I ask that you let me finish my questions, I will let you finish your answers before, so let me finish my question before you answer so that we are not talking on top of each other.

Will you agree to do that?

A.    Agreed.

Q.    I will assume if you answered my question, you understand the question, will you agree, but if you don't understand the question, you will let me know.

Will you agree to do that?



Y. Moshe

A.   I agree.

Q.   I will ask that you not guess or speculate.  I will assume that if you are answering my question, you are answering my question, you are answering with your knowledge of what the answer is.

Will you agree to do that?

A.   Yes.

Q.   Of course, at any point during the deposition, if you would like to take a break and consult with your attorney, you are certainly free to do that, but I ask that if you need to take a break, that you wait until you complete an answer to your question.  I will ask that you that agree to do that, if you would please do that.

A.   Okay.

Q.   Thank you.  So as I said, we are here to talk about the either Moshe Yahoo account or Yan Moshe at Yahoo.com account.

Is that email account your email account?

A.   Yes.

Q.   Did you open the Moshe Yahoo



Page 7

                    Y. Moshe

account?

        A.    Yes.

        Q.    When did you open that email
account?

        A.    I do not remember.

        Q.    Do you currently use the Moshe
Yahoo account?

        A.    Yes.

        Q.    Is that an account you use
regularly?  Do you use that account all the
time?  How often do you use that account?

        A.    Regularly.

        Q.    Do you pay any fee or charge to use
the Moshe Yahoo account?

        A.    I don't know.

        Q.    Do you have the password for the
Moshe Yahoo account?

        A.    I do.

        Q.    Have you always had the password to
the Moshe Yahoo account since its been
opened?

        A.    Yes.

        Q.    Does anyone other than you have the
password to the Moshe Yahoo account?


MAGNA
LEGAL SERVICES

Y. Moshe

A.    No.

Q.    At any point in time, has anyone other than you had the password to the Moshe Yahoo account?

A.    My IT people.

Q.    Who are the IT people who have had the password to the Moshe Yahoo account other than you?

A.    Simon and his team members.

Q.    What is Simon's last name?

THE WITNESS:    Keith, can you help out here?

MR. ROBERTS:    Yes.    Farous, F-A-R-O-U-S.

Q.    Simon Farous?

A.    Correct.

Q.    Mr. Roberts, as skilled as he is, is not allowed to testify.

Now that your attorney refreshed your recollection, is Simon Farous the person who has had a password to the Moshe Yahoo account?

A.    Yes.

Q.    Other than Simon Farous, is there



Y. Moshe

anyone else who has had the password to the Moshe Yahoo account?

A.    Some people from his team.

Q.    Do you know who those other people are?

A.    No.

Q.    How many other people in number?

A.    I don't know, but I know he was working on it with his team, but a few people so I'm not sure exactly who they are.

Q.    Any of those people would be people working for Simon Farous?

A.    Yes.

Q.    When did Simon Farous first have the password to the Moshe Yahoo account?

A.    At the time when the search was requested.

Q.    Do you know when that was?

A.    No.

Q.    Would that have been within the last year?

A.    Yes.

Q.    So since approximately -- it would have been in 2024 or later?



Page 10

Y. Moshe

A.   I don't want to guess.  You asked me not to guess.  It was the time when the search was requested.

Q.   But at no point prior to when the search was requested has Simon Farous or any other person had the password to the Moshe Yahoo account, correct?

A.   Correct.

Q.   So who has permission then to send emails from the Moshe Yahoo account?

A.   No one.

Q.   Other than you?

A.   Other than me.

Q.   And the only persons who had access to see the emails from the Moshe Yahoo account has been you up until it was Simon Farous who -- and his team who had a chance to conduct the search, is that correct?

A.   Correct.

Q.   From what devices have you accessed the Moshe Yahoo account?

A.   My cell phone and my iPad.

Q.   Any other devices?

A.   Throughout the time, I had many



Page 11

Y. Moshe

different devices which was my personal device, that was the device accessing it.

Q.    Are you aware that in this case, plaintiffs subpoenaed records from Yahoo related to the Moshe Yahoo account?

A.    I was told.

Q.    I don't want you to disclose any communications that you've had with your attorneys so I don't want to know the substance of any communications you had with your attorney, but how did you become aware that a subpoena was served for the Yahoo account?

A.    My attorney advised me.

        (Deposition Exhibit 417, documents
        bearing Bates stamp No. Yahoo 039704
        through Yahoo 039705, marked for
        identification, as of this date.)

        MR. ROBERTS:  Has this been
        previously produced before?

        MR. MARKS:  Yes.

        MR. ROBERTS:  Thank you.  Because I
        don't see a Bates on it.

Q.    I'm showing you what has been


MAGNA
LEGAL SERVICES

Page 12

Y. Moshe

marked as Deposition Exhibit 417.

MR. ROBERTS:  Excuse me, Chris, is there a prior Bates number for your production?  Any prior Bates number from your production before?  In other words, when you previously produced it, did you ever Bates mark it so I have it on the record, if you can give it to me.

MR. COOK:  Yes, there is a Bates number.  I will get that for you.

MR. ROBERTS:  I would appreciate it because it will keep the record appropriately clear.  Thank you.

Go ahead.  Sorry for the interruption.

Q.   I'm showing you what's been marked as Deposition Exhibit 417 which was a record that was produced to us by Yahoo regarding your email account and you will see here that it references the Yan Moshe, Yan Moshe at Yahoo.com account and it references, first of all, a full name, Yan Moshe, and an address in the middle of the page, 8 Roads End, Brooksville, New York, U.S. 11545.



Page 13

Y. Moshe

Is that or was that at some point your address?

A.   Yes.

Q.   Is that currently your address?

A.   No.

Q.   Was that you your address at some point in time?

A.   Yes.

Q.   Was that your address at the time you opened the Moshe Yahoo account?

A.   I don't remember.

Q.   Has a birth date of what looks like July 7, 1978.

Is that your birthday?

A.   Yes.

Q.   It has a recovery email of Yan Moshe at iCloud.com.

Is Yan Moshe at iCloud.com an email address that you have?

A.   Yes.

Q.   Was that the recovery email that you used when you opened the Yan Moshe at Yahoo.com email address?

A.   I don't remember.  I don't think



Y. Moshe

so.

Q.   There is a recovery phone number, mobile phone number of (516) 902-0001.

Is that your cell phone number?

A.   Yes.

Q.   Did you use that cell phone number as a recovery cell phone when you opened the Yan Moshe at Yahoo.com email account?

A.   I don't remember.

Q.   Turning to the second page, it references number -- so this document, I will show you, this document was provided to plaintiffs on March 28th of 2024 and it indicates that on that date, there are 84,413 emails in the account with the oldest email in the -- with the most recent email in the account of February 15, 2024.

Do you know or did you know on March 28, 2024 how many email messages were still in your Yahoo account?

A.   I did not know.

Q.   Did you know anything about how Yahoo kept emails on its server for your Yan Moshe at Yahoo.com account?



Page 15

Y. Moshe

A.   I did not.

Q.   Did you have any understanding as to what their process was for keeping emails?

A.   I did not.

Q.   Do you have any reason to doubt that on March 28, 2024 there were 84,413 messages in your account as of that date?

A.   If that's what you tell me, that's what you tell me.

Q.   Were you aware of this production from Yahoo that is document 417 on or about March of 2024?

MR. ROBERTS:  Objection to form.

You can answer.

A.   I don't know.

Q.   You don't know?

A.   I was sent emails from my attorneys.  I don't know what exactly was in there.  Did I see this document before?  No, I did not.

Q.   Did anyone tell you -- were you aware in shortly after March of 2024, how many emails Yahoo had in that account?  Did anybody inform you as to how many emails were



Page 16

Y. Moshe

there?

A.   No, unless it was part of the attachment that I received from my attorneys, it was an email to me maybe because a lot of communication goes back and forth.

MR. COOK:  For the record, the exact 417 is identified as Bates No. Yahoo 039704 to Bates No. Yahoo 039705.

Q.   Are you aware that Yahoo produced -- do you know what metadata is?

A.   No.

Q.   Are you aware that Yahoo keeps a record of -- strike that.

Are you aware that Yahoo produced, in March of 2024, a record of emails that were in your account, the date those emails were sent, the date those emails were received, the email address from which they were sent and the email address from which they were received?

A.   No.

Q.   Did you have any knowledge that it was possible for Yahoo to keep track of the emails that were in your account the date



Y. Moshe

they were sent, the date they were received, the email address from which they were sent or the email address to which they were sent?

A.   Of course.   Everything has a record.

Q.   You knew that?

A.   Of course.

Q.   For what purposes did you use the Moshe Yahoo account?

A.   This is my personal email account, but, unfortunately, some people send some business emails to it as well because when they design my business card, they put in my personal email address on it as well.

Q.   You say unfortunately.  Was it not your intent then to use the Moshe Yahoo account for business purposes?

A.   It was not at all, but some emails came through.

Q.   Do you have other email addresses that you intended to use for business purposes?

A.   Yes.

Q.   What email addresses did you intend



                    Y. Moshe

to use for business purposes?

        A.    At each different time, for
whatever business I was doing, I had an email
address for that business.

        Q.    What are the other email addresses
that you had that you intended to use for
business purposes?

        A.    So I had one for my surgery centers
and I had one for the hospital.

        Q.    What was the email address that you
had for your surgery centers that you
intended to use for business purposes?

        A.    I do not remember exact address,
but you guys had it in some of the
communication that we had.

        Q.    Then you said you had another email
address that you intended to use for business
purposes?

        A.    Correct, the one I am currently
using.

        Q.    What email address is that?

        A.    YM at Hudson Regional.com.

        Q.    So from the Moshe Yahoo account,
did you perform work at Kibadeis (phonetic)



Y. Moshe

for Hackensack Specialty?

A.    Maybe.

Q.    Did you perform work activities from the Yan Moshe account for Dynamic Surgery?

A.    Maybe.

Q.    Did you perform work activities from the Yan Moshe account for Excel Surgery?

A.    Maybe.

Q.    Did you perform business activities from the Yan Moshe account for Integrated Specialty?

A.    Maybe.

Q.    Did you perform business activities from the Moshe account for HealthPlus Surgery?

A.    Maybe.

Q.    Did you perform business activities from the Yan Moshe account for SurgiCare Brooklyn or SCOB?

A.    Maybe.

Q.    Did you perform business activities from the Yan Moshe account for Hudson Regional Hospital or NJMHMC?


MAGNA
LEGAL SERVICES

Y. Moshe

A.   Maybe.

Q.   Did you perform business activities from the Yan Moshe account for Citimed Surgery Center?

A.   Maybe.

Q.   Did you perform business activities from the Yan Moshe account for Star Solution Services?

A.   Maybe.

Q.   Did you perform business activities from the Yan Moshe account for Citimedical I?

A.   No.

Q.   Did you perform business activities from the Yan Moshe account for Citimed Services, P.A.?

A.   No.

Q.   Did you use the Yan Moshe account to perform business activities for Citimed Complete Medical Care?

A.   No.

Q.   Did you perform business activities from the Moshe Yahoo account for Citimed Management Services?

A.   I hope I'm answering the questions



Page 21

Y. Moshe

correctly.  Those are not my companies so I do not work for that company.  I might receive emails with that information, but I'm not an employee of that company.

Q.   Then maybe I should be asking the questions differently.

A.   Please.

Q.   Are there emails that you would have sent or received related to the activities of Citimedical I from the Moshe Yahoo account?

MR. LEGHORN:  Objection to form.

A.   I still don't understand what you mean by activities.  Citimed is a tenant of mine.  There may be some emails going back and forth that relates to that business, but I'm not an employee of that entity.

Q.   All right, fine, so we are speaking the same terms then.

When you say -- I -- we will have another deposition where we talk about your relationship to these businesses.

What I just want to understand is, I'm asking if we are looking at the Moshe



Page 22

                    Y. Moshe

Yahoo account, will the Moshe Yahoo account

at some point in time have an email that

discusses Citimedical I?

        A.    Possibly.

            MR. ROBERTS:  I'm going to note for

        the record at this point that the text

        order is as follows:  Defendant, Yan

        Moshe, is ordered to testify in a

        limited scope deposition concerning the

        circumstances of why emails from his

        Yahoo account are no longer available.

            Now, I'm perfectly happy to permit

        some leeway what the text order says for

        purposes of laying a foundation,

        developing a line of questioning that is

        in line with the court's order.

            These last string of questions,

        unless they're going to transition to

        something directly relevant to the Yahoo

        account in terms of why certain emails

        are not available don't appear to do

        that.  They appear to be expanding into

        his relationship with other entities,

        communications with other entities and



Y. Moshe

it's fine for a moment or so, but I'm reminding -- I'm just reminding you that the witness is here for that certain purpose.

MR. MARKS:  I appreciate that, the questions...

Q.   What I want to know, just so we are clear, I'm not asking about your relationship with these entities.  What I want to know is if we looked at these emails, will these emails discuss any of these subjects?  Will this email account concern any of these subjects?

MR. ROBERTS:  The subject of a future deposition for which Mr. Moshe will present himself in accordance with 30(b) is a seven-hour deposition that you will be able to explore those topics.

We are here today to discuss your specific application to the court which resulted in an order as to why certain emails are not available.

The content of the emails, quite



Y. Moshe

frankly, really isn't within the court's contemplation.  It doesn't appear in the order.

MR. MARKS:  I will ask the questions.  You can decide --

MR. ROBERTS:  That's fine.  I'm just laying the ground rules where the objections that are soon to come that I believe he can answer at another date.

Q.    So I guess my question then is, did any emails from the Moshe Yahoo -- will any emails from the Moshe Yahoo account discuss Citimed Complete Medical Care?

A.    I can look at him to see if I can answer?

MR. ROBERTS:  You can answer that one question, to the extent, No. 1, it presumes you wrote such emails and you remember, but besides that foundation, just you can go right ahead and answer this one limited question.

A.    I already answered it.

Q.    You haven't answered this question.

A.    Possibly.



Y. Moshe

MR. MARKS:  I will ask questions, you can lodge your objections and instruct him as you see fit.

Q.   Will emails of the Moshe Yahoo account discuss 1963 Concourse Holdings?

MR. ROBERTS:  I will object to that.  We are here to --

MR. MARKS:  Objection.

Are you going to allow him to answer or not?

MR. ROBERTS:  No, I will not allow him to answer questions now that are going afield.  You are going to what the content is of emails that we don't even know exist.

MR. MARKS:  Are you instructing him not to answer?

MR. ROBERTS:  Yeah, I am.

Q.   Are you going to follow your attorney's instruction not to answer?

A.   Do I have a choice?

Q.   You do have a choice, but I need to make a record that you are following your attorney's instructions.



Page 26

Y. Moshe

A.    Of course.

Q.    Your answer is yes, you are following your attorney's instructions?

A.    That's what I'm here for.  If it wasn't for my attorney, I wouldn't be here.

MR. ROBERTS:  I'm not suggesting by the objection that the witness will not answer the question.  The witness is not here to answer that question today, big difference.

Q.    Let's make the record on these questions.

Will emails in the Moshe Yahoo account discuss 1910 East Gun Hill Holdings?

MR. ROBERTS:  Objection.

MR. MARKS:  Are you instructing the witness not to answer?

MR. ROBERTS:  I believe I did, yes.

Q.    Are you going to follow your attorney's instruction?

A.    I believe I do.

Q.    So we can cut to the chase here, will the emails from the Moshe Yahoo account discuss any of the following entities, 65-55



MAGNA
LEGAL SERVICES

Page 27

                    Y. Moshe

Woodhill Realty, 63-36 Holdings, 9220 165

Holdings, 55-B Green Avenue, 31343 Realty

Holdings, 9901 Holdings, Tersher Development,

1010 North Broadway Holdings, 190 Midland

Avenue Realty Holdings, 29 East 29th Street

Holdings, 321 Essex Holdings, 43 Meadowlands

Holdings?

          MR. ROBERTS:  I'm objecting and

     instructing the witness not to answer on

     the limited basis that the question is

     not appropriate for today.

          I'm not making the objection based

     upon any other basis and I'm not saying

     that the witness would never answer

     these questions at a deposition in the

     future, but I believe it exceeds the

     scope of today's deposition.

     Q.   Are you following your attorney's

instruction and not answering the question?

     A.   Yes, going forward in this

deposition, I will listen to my attorney's

advice unless he tells me otherwise.

     Q.   So the record is clear, will the

Moshe Yahoo account contain emails discussing



Y. Moshe

Citimed Services, P.A. or Citimed Services, P.C.?

A.    You already asked me that question.

Q.    I didn't ask with respect to these two entities.

A.    You did.

MR. ROBERTS:  Same objection, the content of the deposition exceeds the scope and for good reason.

We didn't even know these emails exist or, if so, they were so far afield in my mind of how that question would be appropriate for the scope of today's deposition so I would instruct him not to answer.

Q.    Are you following your attorney's instruction to not to answer?

A.    As I advised before.

Q.    Anticipating this, let me ask this question so the record is clear.

Have you sent emails to or have you sent emails from the Yan Moshe account to or received email into the Yan Moshe account from Leonid Shapiro?


MAGNA
LEGAL SERVICES

Page 29

Y. Moshe

A.    Yes.

MR. ROBERTS:  He answered it.

MR. MARKS:  Off the record for a second.

THE VIDEOGRAPHER:  We are off.

(Off the record.)

THE VIDEOGRAPHER:  We are back on the record.  The time is 10:20 a.m.

Q.    Have you sent emails from the Yan Moshe account to or received emails into the Yan Moshe account from any of the following individuals, Regina Moshe?

MR. ROBERTS:  You are talking about the Yahoo Yan Moshe account?

Q.    The Yan Moshe account -- let me ask it again.

MR. ROBERTS:  There are a few Yan Moshe account, iCloud is on here.  We talked about others.

Q.    Just so we are clear, when I'm referring in this deposition to the Moshe Yahoo account, I'm referring to Yan Moshe at Yahoo.com.

Do we understand each other?


MAGNA
LEGAL SERVICES

Y. Moshe

A.    Yes, as we did before.

Q.    Have you sent emails from Yan Moshe at Yahoo.com to or received emails to Yan Moshe at Yahoo.com from any of the following individuals, Regina Moshe, Vadim Dolskey, Mark Gladstein, Reuvon Alon, Nizar Kifaieh, Isaias Barrera-Perez, Roma Yusupov, Olivia Yusupov, Ariel Sezanayev, Vladimir Matatov, Jelani Wray, Beshert Corp., Marina Katayeva, Michelle Simon, Estevan Roman, Roman Yunusov, Tatyana Rabinovich, Patrick Situ, Yenny Escano, Complete Radiology Solutions, Alkies Lapas, Contemporary Diagnostic Imaging, CDI Management Group, All Star Services Inc., Five Star Services Inc., Nizar Burak, Expert Billing Solutions, New York Spine Institute, Sovereign Health Medical, Pinnacle Health Consultants, Greenbills, John Mitamura, Norman Rowe, Advanced Comprehensive, Anthony Rose or Todd Chambers?

MR. ROBERTS:  I will object and instruct the witness not to answer.

I made it clear on the record the limited scope of today's deposition.


MAGNA
LEGAL SERVICES

Y. Moshe

I'm not instructing the witness would never answer those questions, but only for the purposes of today's deposition, given the application to the court and given the very specific ruling by the court which is clear in the text order, these questions would be appropriate for Mr. Moshe's general discovery deposition which will subsequently proceed in the future of this case to be scheduled.

Q.   Are you going to follow your attorney's instructions and not answer the question?

A.   I will.

Q.   You identified other email accounts that you had during the period of October 2021 to the present.

The recovery account for the Yan Moshe at Yahoo.com account is Yan Moshe at iCloud.com?

A.   It's not.

Q.   Do you have an account at Yan Moshe at iCloud.com?

A.   I do.



Page 32

Y. Moshe

Q.  Do you use that account?

A.  No.

Q.  Have you ever used that account?

A.  No.

Q.  There is an email account, Yan Moshe 1 at Yahoo.com.

Is that an email account that belongs to you?

A.  Yes.

Q.  Do you use that account?

A.  I think that's the recovery email address.

Q.  That's the recovery email address for the Yahoo --

A.  For Yan Moshe at Yahoo.

Q.  Do you use that account for any purpose other than as a recovery account for the Yan Moshe at Yahoo.com account?

A.  No.

Q.  You referred to an account YM at Hudson Regional Hospital.com.

That is the business account you use for Hudson Regional Hospital?

A.  Correct.



Page 33

Y. Moshe

Q.   Then there is an account, Yan Moshe at Excel Surgery Center.com.

Is that the surgery center email account that you have?

A.   That I had.

Q.   Do you no longer use that account?

A.   No.

Q.   When did you stop using that account?

A.   When Excel stopped to exist.

Q.   When approximately was that?

A.   Somewhere '15, '16, '17.

Q.   Other than these four accounts that I've just been through and Yan Moshe at Yahoo.com, have you had any other email accounts?

A.   Possibly.

Q.   As you sit here now --

MR. ROBERTS:  In total, historically?

MR. MARKS:  In total.

A.   When each business is created, they automatically open up an email account for me.



Y. Moshe

Q.   Do you know as you sit here now what those email accounts are?

A.   I don't.

Q.   I want to talk about, again, Yan Moshe at Yahoo.com.

At any point in time, have you had a policy or practice regarding the preservation of emails?

A.   Other than what Yahoo uses?

Q.   Other than what Yahoo uses.

A.   No.

Q.   Have you had any practice or routine, policy that you followed with respect to deleting emails in that account?

A.   I receive an email, I read it, I delete it.  I receive an email, it might be a spam.  Without opening it, I just delete it.

Q.   Is that a practice you have followed since the account, since you opened the account?

A.   For the most part, yes.

Q.   At any point in time, have you changed that practice?

A.   Maybe I didn't get a chance to



Y. Moshe

delete, maybe I didn't go to account for a while.

Q.    So the practice is as soon as you read an email, you delete it, that's your practice?

A.    No.

Q.    How long --

A.    If I don't need the email, I delete it.

Q.    Under what circumstances would you decide you need the email for the future?

A.    If I need to follow up on it.

Q.    And at some point in time, would you then delete an email that you needed to follow up on -- strike that.

I want to understand, you have an email, you followed up on it, then what happens to that email?

A.    There is an email chain, right, it goes back and forth, back and forth.  Once the subject is done and I no longer need it, I might just delete it and it deletes all 30 messages or 40 message, whatever that might be, it deletes the chain.



Y. Moshe

Q.    Would it be your practice then, once you no longer need the chain, to delete it or do you just don't do anything with it?

A.    If an issue is closed out, there might be an issue that we are working on. The issue is still not closed out, it's still an open issue, we are still dealing with it. I will keep the email once the issue is resolved and that item is put to rest.  I don't need it, that last email, then I probably delete it.

Q.    When you say probably, is it an affirmative practice that you have adopted that if an issue is resolved and closed, you will go in and delete the email?

A.    Not specifically go in and delete, but if I am on that subject and it's closed out, I will delete it.  It might be lingering there somewhere also.

Q.    Over the years, you have been involved in litigation, is that correct?

A.    Correct.

Q.    And businesses that you have been involved in have been involved in litigation,



Y. Moshe

that's correct?

A.   Correct.

Q.   You know from being involved in litigation that from time to time, documents are requested in litigation?

A.   You are assuming that I know that.

Q.   I'm asking you.

A.   I do know that, yes.

Q.   And do you know that in litigation, when those documents are requested, you have to produce those documents in litigation, do you know that?

A.   Yes.

Q.   And do you know that in litigation, when documents are requested, it sometimes includes emails, do you know that?

A.   Yes.

Q.   Do you know when lawsuits are filed, that you sometimes have an obligation to preserve the documents that you may need to produce in litigation, are you aware of that obligation?

A.   Yes.

Q.   Are you aware that that obligation,


MAGNA
LEGAL SERVICES

Page 38

Y. Moshe

that when a lawsuit is filed, that you may have an obligation to preserve emails that may be responsive to document requests that may be served?

A.   Yes.

Q.   Are you aware that government, from time to time, conducts criminal investigations?

A.   Yes.

Q.   Are you aware that from time to time, the government can issue subpoenas for documents?

A.   Yes.

Q.   Are you aware that sometimes when the government issues subpoenas in connection with criminal investigations, those subpoenas sometimes call for emails?

A.   Possibly.

Q.   Are you aware that that can sometimes happen and they may sometimes ask for emails?

A.   Possibly.

Q.   Are you aware if you have documents and you have an obligation to preserve and


MAGNA
LEGAL SERVICES

Page 39

Y. Moshe

you destroy them, that can result in

penalties, are you aware of that?

A.    Yes.

Q.    Are you aware that those penalties

can include civil penalties?

A.    Possibly, I don't know the law.

Q.    Are you aware that they can also

sometimes include criminal penalties, are you

aware of that?

A.    Possibly.

Q.    You were sued in December 2018 in

the lawsuit American Transit Insurance

Company in New York Superior Court, is that

correct?

A.    I don't remember.

Q.    Do you remember being sued about

December of 2018 by American Transit

Insurance?

A.    I do remember being sued by

American Transit, but I do not remember the

date.

Q.    Do you remember that generally

speaking, the allegations included, among

other things, that you were alleged to have


MAGNA
LEGAL SERVICES

Y. Moshe

lay ownership of Citimedical?

MR. ROBERTS:  Objection.

MR. MARKS:  Are you instructing him not to answer?

MR. ROBERTS:  Yes.

Q.   Are you following your attorney's instruction and not answering?

A.   I want to ask a question.  Are you talking about the lawsuit where they held out, pay out millions of dollars to us, is that the one?

Q.   Yes.

A.   Then probably, yes.

Q.   Are you aware when it was filed, you were going to need to produce records?

A.   Of course.

Q.   Were you aware that when that lawsuit was filed, you had an obligation to preserve documents?

MR. ROBERTS:  Objection.  You've asked him generally about this specifically and he answered, No. 1.

No. 2, I'm not suggesting an answer to him.  Commonly, I wouldn't make this



Y. Moshe

type of objection, but I'm staring at a very limited set of circumstances in a text order, so unless we are going to get to the Yahoo account, we can probably wrap up this whole line with one objection.

MR. MARKS:  Are you instructing him not to answer?

MR. ROBERTS:  The last question, yes.

Q.  Are you following your attorney's instruction and not answering the question?

A.  Yes.

MR. ROBERTS:  I will note for the record that he already answered that question, just in more a general sense and his answer would clearly apply.

MR. MARKS:  I will note for the record that the pleadings that were filed that led to the order requiring this deposition referenced this case, okay, and referenced the knowledge that arose from this case.

MR. ROBERTS:  You will get to



Case 1:21-cv-05523-MKB-PK  Document 748-1  Filed 05/21/26  Page 43 of 195 PageID #: 14390

Page 42

Y. Moshe

depose him on that, just not twice.

Q. You are following your attorney's instructions?

A. Yes, yes. I'm just thinking, how do I make a standing order that I follow his advice?

Q. You have to answer the questions.

A. All right.

Q. Did you produce records from the Moshe Yahoo account in the American Transit litigation?

A. I do not remember.

Q. Did you take any steps following the filing of the American Transit litigation to preserve any emails in the Moshe Yahoo account?

A. I was advised to preserve my emails by my attorney and we preserved them, they were in the account.

Q. So you did take steps following the lawsuit to preserve the emails?

A. No, I didn't download them anywhere or did anything. They were in the account. Whatever was not deleted at that time was not



Y. Moshe

deleted.

Q.   So you had previously said, I have a practice of deleting emails when they come in and when I finish up the work, I delete them.  That was your practice, correct?

A.   Correct.

Q.   So when the American Transit lawsuit was filed, you stopped that practice?

A.   If there were those defendants that were in that lawsuit and it was in the preservation rights letter from my attorney, then I followed it.

Q.   So in the American Transit lawsuit, you said you got a preservation direction from your attorney and you followed that preservation direction, is that what you are saying?

A.   Yes.

Q.   The preservation direction you got from your attorney identified specific types of communications you were not to delete, correct?

A.   Correct.

Q.   And those are the emails that you



Y. Moshe

stopped deleting from your Moshe Yahoo account, is that correct?

A.   If I was still communicating with those people.  The emails might have been deleted already prior to that notice.

Q.   Understood.  So going forward, you stopped deleting emails to the extent that they were designated by the communication you got from your attorney after the filing of the American Transit lawsuit, correct?

A.   Correct.

Q.   Similarly then, in February of '20, you were sued by Geico, is that correct?

A.   Correct.

Q.   And in the Geico -- did you change any practices with respect to the Yan Moshe at Yahoo account after the filing of the Geico litigation?

A.   I do not think we got that far because they paid out on that case right away, they settled it out.

Q.   Did you do anything following the Geico litigation with respect to the Yan Moshe at Yahoo.com account?



Page 45

Y. Moshe

A.    I don't remember exactly.  If I received the preservation rights letter, I followed it, but that case closed out very quickly.

Q.    So you don't remember one way or the other whether you did anything?

A.    Correct.

Q.    You are aware of the complaint that was filed in this case?

A.    Yes.

Q.    That complaint was filed on October 5, 2021, are you aware of that?

A.    I'm aware of the complaint, I don't know exactly.

MR. ROBERTS:  Say the date again, please.

MR. MARKS:  October 5, 2021.

MR. ROBERTS:  Thank you.

Q.    With respect to the American Transit case, did you change -- at any point during that litigation, did you change how you preserved the Yahoo -- the Moshe Yahoo account from what you had previously testified to?



Y. Moshe

A.   When I received the preservation of rights letter from my attorney, it identified which communication needs to be reserved.  If I received an email from people on that list, I preserved that email.  If there were other people, I followed my regular routine the way that I do with my account.

Does that answer the question, was that clear?

Q.   It does, yes.  And at no point over the course of the litigation did you change that practice, that you didn't do anything different than what you just testified to?

A.   Yes.

Q.   When the lawsuit was filed in this case, were you aware that you were going to need to produce documents in this case?

A.   Are you talking about your case?

Q.   Yes.

A.   Yes, that's the assumption.

Q.   Were you aware when this lawsuit was filed, that the documents you were going to produce were going to include emails?

A.   I can't agree to that.  I don't



Page 47

Y. Moshe

know what you would ask for.

Q.    So you didn't know, it might include emails, it might not, you didn't know that?

A.    Right.

Q.    Is it your testimony that you -- did you know at the time the -- did you have any belief at the time this lawsuit was filed that you might need to produce emails from the Yan Moshe at Yahoo.com account?

A.    I would not assume so when the subpoenas came in.

Q.    When the lawsuit was filed, the only thing that happened is the lawsuit was filed.

At the time the lawsuit is filed, did you believe there was a possibility that you were going to have to produce emails from the Yan Moshe at Yahoo.com account?

A.    I don't want to assume.  I didn't really think about it.

Q.    Didn't think about it?

A.    No.

Q.    At the time this lawsuit was filed,



Page 48

Y. Moshe

did you do anything to preserve emails in the Yan Moshe at Yahoo.com account?

A. Before I got a preservation of documents letter from my attorney?

Q. At the time the lawsuit was filed, did you do anything?

A. No.

Q. You didn't do anything?

A. Nothing. I think I was served, like, a few months later, everyone got it, I didn't get it.

(Deposition Exhibit 418, document from Jennifer Strong of The Russell Friedman Law Group, marked for identification, as of this date.)

Q. I'm showing you what has been marked as deposition Exhibit 418.

This is a lawyer from Jennifer Strong of Russell Friedman Law Group filed in court on November 15th which says, This firm was recently retained by defendants, Rubin Long, Columbus Imaging, Medic Radiology and Yan Moshe in the above-referenced matter. Please accept this correspondence as formal



Page 49

Y. Moshe

request by responding defendants on consent

of plaintiffs for an extension of time to

respond or otherwise move with regard to

plaintiff's complaint until November 24,

2021.

This is a letter -- first of all,

did you retain at Russell Friedman Law Group

to retain you in this litigation?

A.    Yes.

Q.    Are you aware on November 15th,

they indicated that they represented you, at

least as of November 15th in connection with

this lawsuit, correct?

A.    That's what the letter says, yes.

Q.    At least as of November 15th, you

hired a law firm to represent you in this

litigation?

A.    Correct.

Q.    So at least as of November 15,

2021, you were aware of this litigation,

correct?

A.    Correct.

Q.    So as of November 15th, now that we

have the time, did you do anything about that



Page 50

Y. Moshe

time to preserve the emails in the Yan Moshe
at Yahoo.com account?

    A.    No, I just didn't delete them.

    Q.    You stopped deleting them?

    A.    I stopped deleting them.

    Q.    Why did you do that?

    A.    At some point, my attorney notified
me I need to keep them.

    Q.    Did your attorney notify -- did you
get that -- was that instruction in writing
or did they tell you orally, don't do that
anymore?

    A.    I think the instruction was in
writing, they send a preservation of rights
letter.

    Q.    Was the instruction, don't delete
anything, from the Yan Moshe at Yahoo.com
account or was it only don't delete specific
things from the Yan Moshe at Yahoo.com
account?

        MR. ROBERTS:  Hold on.  I'm going
    to assert privilege.  I think you are
    expressly asking what his lawyer advised
    him to do.



MAGNA
LEGAL SERVICES

Page 51

Y. Moshe

MR. MARKS:  Fair point.  Let me ask the question differently.

Q.   At the time of the lawsuit being filed, what preservation practice did you undertake?  Did you undertake to preserve everything in -- strike that.

At the time the lawsuit was filed, was your practice to stop deleting everything in the Yan Moshe at Yahoo.com account or was your practice to only stop deleting certain emails from the Yan Moshe at Yahoo.com account?

A.   I followed my attorney's advice. It was an email that I received to preserve communication and I followed it.

Q.   Again, I don't want to know what your communication was with your attorney.  I want to know what you did.  What did you do?

A.   Followed his advice.

Q.   What did you do?

A.   Followed his advice.

Q.   What specifically did you do?

A.   You want to know the details of what he advised me?



Y. Moshe

Q. I want to know the details of what you did.

A. I followed his advice not to delete the emails that are related to this case.

Q. What did you understand to be related to this case?

A. That everything that relates to these criminal people and this complaint should be kept.

Q. So how did you decide what to keep and what not to delete?

A. You guys have names that are listed.

Q. What names, what names did you use to decide what you were going to delete and not delete?

A. I had the case there and all the related parties.

Q. So what did you look at?

A. An email, an attachment of email.

Q. An email from your attorney?

A. Correct.

Q. It was a list of names?

A. There was a list of communication


MAGNA
LEGAL SERVICES

Page 53

Y. Moshe

that needs to be preserved.

Q.    Was it a list of individuals --

MR. ROBERTS:  Same objection.  I think what you are trying to do, I understand, but it's really an end run, you know, around what the privilege is I'm asserting.

We can certainly have, you know, we can certainly have an argument over this, we can certainly raise it before the court, but without him divulging what the specific instruction was, he really doesn't have a way to answer that question.  He's answered it multiple times.

MR. MARKS:  I understand and I don't want to know what his attorney instructed him to do.

MR. ROBERTS:  But precisely what he did gives you that answer, he told you he followed the specific instruction.

MR. MARKS:  No.  What he is doing is he is avoiding answering the question by saying he did what his attorney said,



Page 54

Y. Moshe

but what he did is not a privileged act. What he did is highly relevant and that is an act he took and that act --

MR. ROBERTS:  If you read back his answer.  He said he was given a specific instruction with a list of names and a list of parties and he followed it.

You want him to remember exactly what that says right now, good luck with that.

MR. LEGHORN:  I think what you are getting at is other than following the instruction to preserve, were there still categories of emails you continued to delete?

MR. MARKS:  Let's start with that, but we need to know what you continued to delete.  Let's start with that.

MR. ROBERTS:  You don't know he deleted anything based on his answers, truthfully, and we are so wide open here with what -- we are talking about his travel plans, vacant, we are so wide open here.



Y. Moshe

MR. MARKS:  Time out.  Let's get focused here.

MR. ROBERTS:  I'm focused.

Q.    After this lawsuit was filed, did you continue to delete emails from the Yan Moshe at Moshe.com email account?

A.    Unrelated emails to this case or related emails to this case?

Q.    The question is very simple.  After the lawsuit was filed, did you or did you not continue to delete emails from the Yan Moshe at Moshe.com account?

MR. ROBERTS:  I believe he means any.

A.    Any emails, yes.

Q.    What emails did you continue to delete from the Yan Moshe at Moshe.com account after this lawsuit was filed?

A.    That I was allowed to delete?

Q.    No.  The question is, what emails did you continue to delete after the lawsuit was filed from the Yan Moshe at Moshe.com account?

A.    Those emails that are unrelated to



Page 56

Y. Moshe

the State Farm case.

Q.   What emails did you delete?

A.   There are thousands of emails.  I do not remember what I deleted, but they had nothing to do with State Farm's case.

Q.   How did you decide what emails you were going to delete and what emails you didn't delete?

A.   Because they have nothing to do with work and nothing to do with State Farm and nothing to do with any of the defendants in the lawsuit.

Q.   That was the decision you made yourself about what you were going to delete and not going to delete?

A.   Correct, that's what I was advised by my attorney.

Q.   You had a list of what you considered the things you could delete and the things you couldn't delete, correct?

A.   Correct.

Q.   That list of what you decided --

A.   Let's go back for a second.  There was no list of what I can


MAGNA
LEGAL SERVICES

Y. Moshe

delete and not delete.  There was a list of people that I should not delete communication with and the rest I can delete.  There wasn't a list you can delete this and not delete this.

Q.  There was a list of what you had to keep and there was a list that you couldn't delete?

A.  No, there was a list of what I needed to keep for this case and I kept it.

MR. MARKS:  We are making a request now for that list of what -- of the categories and specific emails that he was instructed to preserve.

MR. ROBERTS:  You are going to paper me on that, right?

MR. MARKS:  Yes.

Q.  Did -- other than stop deleting emails that were on a list provided to you by your attorneys, did you do anything else to preserve emails in the Yan Moshe at Moshe.com account?

A.  No.

Q.  Other than you stopping the



Y. Moshe

deletion of emails on the email list provided to you by your attorneys, did anyone else do anything to preserve emails in the Yan Moshe at Yahoo.com account?

A.  No.

Q.  What was the date the list was provided to you by your attorneys?

A.  I do not remember.

Q.  Approximately how long after the case was filed was the list provided to you?

A.  I don't want to guess.

Q.  Do you still have a copy of the instruction?

A.  I'm sure it's somewhere.  We have it.

Q.  Did you consult the instruction when emails arrived as you made a decision on whether to delete or not delete?

A.  Again, please ask your question.

Q.  Did you consult the instructions, so an email comes in and you have to make a decision, do I delete this or not.  Did you look at the instruction that you had gotten to make the decision?


MAGNA
LEGAL SERVICES

Y. Moshe

A.   I will go back to my answer before. Once I received the preservation of rights letter, any communication with those individuals on your complaint we preserved, we kept in the account, we did not delete.

The letter came in from my attorney and it went to my GC and GC reviewed the letter and gave me the opinion on all these things that need to be preserved, that's it.

Q.   I'm asking how it worked in practice, you have your account --

A.   I would get an --

Q.   You would get an email, it comes in, maybe you remember the names on the list, maybe not.

Do you have to go back to look at this list?  What I'm trying to understand is if you -- have you got a cheat sheet or something, did you go back to the list, do you physically actually look at this list as an email comes in to make a decision?

A.   There are only a handful of people that I'm communicating with that are on that list.  For example, if I'm getting an email



                    Y. Moshe

from Regina, I do not delete it because I

know this is gold for you so I keep it for

you.  It's very simple.

        Q.    So you don't consult the list?

        A.    I don't need the list.  I know

these people very well.

        Q.    What about the nonparties that are

referenced in the complaint, do you know

those?

        A.    If those were provided at the time,

because you have amended your complaint many

times, added many people and your subpoena

changed many times.

                If it was advice on that letter, we

will provide you with that letter so you can

see who they are.

        Q.    So was the list updated then over

time?

        A.    I'm sure a few times, we got that

email.

        Q.    So the answer is yes, it was

updated over time?

        A.    Yes.

        Q.    Do you know how many times it was



Y. Moshe

updated?

A.    No idea.  You coming up with new subpoenas every day.  I'm surprised you didn't subpoena my grandma.

Q.    Every time subpoenas were issued, the list was updated?

A.    Yes.

(Deposition Exhibit 419, plaintiff's first set of document requests to defendant, Yan Moshe, dated April 1, 2022, marked for identification, as of this date.)

Q.    Showing you what has been marked as Deposition Exhibit 419 which is plaintiff's first set of document requests to defendant, Yan Moshe.  This is dated April 1, 2022.

Were you aware of this document request at or about the time it was served?

A.    Yes.

Q.    Were you aware that its definition of communications on page 2, go to the second page, defines communications among the things included among communications is on the third line, electronic mail.



Y. Moshe

Do you see that?

A.    Yes.

Q.    And then if you look under documents, among the things included in documents around the middle of that paragraph, it includes emails.

Do you see that?

A.    Yes.

Q.    Then if you look at question 27 which is on page 9, it says, Communications reflecting and relating to, and there are a long list of things there.

Do you see that?

A.    Yes.

Q.    So were you aware then at or about April 1, 2022 that plaintiffs had served document requests on you that sought, among other things, email communications, were you aware of that?

A.    Yes.

Q.    And you knew that to respond to this request, you were going to have to produce emails, were you aware of that?

A.    Well, I think my attorneys had to



Y. Moshe

try to object to this discovery.

Q.    You were aware at least that this document request at least asked for emails?

A.    Yes.

Q.    And you were aware, whether your attorney was going to object to it or not, this document request at least would have asked for emails that were in the Yan Moshe at Moshe.com account?

A.    Yes.  You asked for a lot of things.  It doesn't mean I have to give all of it.

Q.    Whether you are going to give it or not, this document request, among other things, asked for emails in the Yan Moshe at Moshe.com account, correct?

A.    Yes.

Q.    Did you do anything after April 1, 2022 until, say, August 25 of 2023 to collect anything from the Yan Moshe at Moshe.com account that would have been responsive to this document request which is Deposition Exhibit No. 419?

A.    Yes.  You provided a list of terms



Page 64

Y. Moshe

that you wanted us to search and my IT director got a third-party device to search for those emails and search names and all those things and we turned over what we were able to find.

Q.   I'm talking about between April 1, 2022 and August 25, 2023.

A.   No, not at that time, just kept them.

MR. ROBERTS:   Your question was collect?

MR. MARKS:   Right, collect.

Q.   Did you do anything to collect?

A.   No, I did not.

Q.   Did anyone, between April 1, 2022 and August 25, 2023, do anything to collect emails from the Yan Moshe at Moshe.com account to collect anything that would be responsive to Exhibit 419?

A.   No.

Q.   Did anyone do anything to preserve emails in the Yan Moshe at Moshe.com account that would be responsive to 419 between April 1, 2022 and August 25, 2025?



Page 65

Y. Moshe

A.    Yes, I preserved by not deleting.

Q.    You preserved by not deleting?

A.    Correct.

Q.    But other than that, did anyone do anything --

A.    No.

MR. ROBERTS:  By the way, other than what the record will reflect by his counsel.

Q.    Well, are you aware of anyone doing anything between April 1, 2022 and April 25 -- August 25, 2023 -- let me ask the question again so it's clear.

Did anyone, to your knowledge, do anything between April 1, 2022 and August 25, 2023 to preserve emails in the Yan Moshe at Yahoo.com account that would be responsive to Deposition Exhibit 419?

MR. ROBERTS:  Now, his question is preserve.  It switches between collect and preserve.

Q.    Preserve.

A.    I preserved them by not deleting them.



Y. Moshe

Q.   To your knowledge, did anyone do anything other than that?

A.   Not to my knowledge.

(Deposition Exhibit 420, order of the court, marked for identification, as of this date.)

Q.   I'm showing you what has been marked as Deposition Exhibit No. 420 which is an order of the court in this case and in relevant portions, it reads -- it refers to letters describing discovery disputes, then it says, In these letters, plaintiffs state the defendants have failed to fully respond to document requests and interrogatories and outline in detail how those responses are deficient.

It then says, Defendants have the obligation, when responding to requests for production, to ascertain first whether the requested documents exist and if they do exist, to produce them to plaintiffs or state a valid basis for withholding them.  If such documents do exist, defendants must confirm their nonexistence.  Defendants state they



Page 67

Y. Moshe

are perfectly willing to make further investigation to determine whether any such materials remain outstanding.

The court orders defendants to do so forthwith and respond in writing to plaintiffs stating specifically, for each requested item, whether or not responsive documents exist.

Defendants request the parties meet and confer to identify the materials that exist and should be exchanged. This is not necessary because plaintiffs have identified the requested materials with specificity in the letters as well as in the attached deficiency letters which the court knows were sent to defendants and it indicates the dates.

The court then goes on, The defendant is ordered to produce all responsive documents and provide complete responses to plaintiff's request and interrogatories by September 8, 2023.

Were you aware of the court's order issued on August 25, 2023?



Y. Moshe

A.    I do not recall.

Q.    Were you aware that the court ordered you to produce all responsive documents by September 8, 2023?

MR. ROBERTS:  He answered the question.

Objection to form.

A.    I do not remember.

Q.    Did you do anything, you do anything after August 25, 2023 to produce the emails that were in the Yan Moshe at Yahoo.com account?

MR. ROBERTS:  After August --

Q.    After August 25, 2023, before September 8, 2023.

A.    I don't remember.

MR. ROBERTS:  So I will just make a notation for the record.

Counsel, you both are aware that my law firm entered the case in or about that time and there was extensive communication with you which included the court to extend deadlines, to bring discovery up to speed, to get the case



Y. Moshe

in a posture by which discovery was compliant and there was a massive amount of undertaking there and extensive communication between counsel on these subjects.

To the extent Mr. Moshe remembers that, that's fine, it's all borne out in the record in this case.

MR. MARKS:  We will argue about that.

MR. ROBERTS:  It's a fact.  If you are going to quiz the witness about what he remembers about whether he produced an email, come on.  I know exactly what's going on and I don't have sit here and watch this technical demonstration of what we are going to do with this witness to ultimately try to get a spoliation charge.

MR. MARKS:  What I'm going to ask you to do is to save the argument and save the speaking objection.

MR. ROBERTS:  You can ask me to do it, that's fine.  You can ask me to do



Y. Moshe

it, but your questions are improper.

MR. MARKS:  I will ask you to do it and if it keeps going on then --

MR. ROBERTS:  Fine by me.

MR. MARKS:  All right, then that's what we will do.

I will note that this is the first speaking objection to which I am interjecting, this is one.

Will you note this point in the record please.  Make a note if we need to come back to it please.

Q.   Are you aware of whether anyone did anything after the August 25, 2023 order? Are you aware of whether anyone did anything to collect the emails in the email account between August 25, 2023 and September --

MR. ROBERTS:  Which email account?

MR. MARKS:  The Yan Moshe Yahoo.com account.

MR. ROBERTS:  I will put a stipulation on the record, all questions will be specifically limited to the Yahoo account unless, of course, you



Y. Moshe

have a reason to ask a different question because now we are going to come back in super tight now to the order.

MR. MARKS:  Read back my question.

MR. ROBERTS:  Unless you consider that a speaking objection.  It's called following the court order, that's what it's called and we talked about this, but you don't seem to be concerned about, but I am.

A.   I don't.

Q.   Are you aware of anyone having done anything to preserve the emails after the court order of August 25, 2023 --

MR. ROBERTS:  The Yan Moshe emails in the Yan Moshe Yahoo account.  I want a clarification, was that your question? It's not an objection, it's a question.

MR. MARKS:  Read my question back please.

(Record read.)

Q.   Are you aware of anyone having done anything to preserve the emails in the Moshe



Page 72

Y. Moshe

Yahoo account after August 25, 2023 until September 8, 2023?

A.    I do not remember.

Q.    Did you collect emails from the Moshe Yahoo account between August 25, 2023 and September 8, 2023?

A.    I did not.

Q.    Were you aware of whether anyone else -- strike that.  I asked that.

(Deposition Exhibit 421, letter filed by Yan Moshe's lawyers with the court, marked for identification, as of this date.)

Q.    Showing you what has been marked as Deposition Exhibit 421.

This is a letter filed by your lawyers with the court.  It is filed on behalf of defendants, among others.  It refers to Yan Moshe and nonparties, 1963 Concourse Holdings, 910 East Gun Hill Holdings, 65-55 Woodhaven Realty, 63-36 Holdings and 9220 165 Holdings LLC.

Do you see that?

A.    Yes.



Y. Moshe

Q.    On the second page?

MR. ROBERTS:  Would that be 17925 at the top?

MR. MARKS:  Yes.

Q.    Specifically, it says specifically in response to subpoena, Popular Bank and possibly other entities have produced emails to which --

MR. ROBERTS:  I would like to know where you are.

MR. MARKS:  Up at the top.

MR. ROBERTS:  I don't know where you are.  It's a long page and he didn't know either.

Q.    At the top of the page, in the spill-over paragraph, there is the word, specifically.

MR. ROBERTS:  All right.  You didn't lead with that.  That's all I'm trying to say.

MR. MARKS:  All right.  We are good.

MR. ROBERTS:  I'm getting Mr. Cook upset.  I don't want to do that.



Y. Moshe

MR. MARKS:  Everybody is good.

Q.   Specifically in response to plaintiff's subpoena, Popular Bank and possibly other entities have produced emails to which the nonparties were parties, but the same emails have not been produced by the nonparties.  Mr. Cook has advised that these emails relate to one or more loans and other financial arrangements relating to construction and remodeling of the premises owned by the nonparty.

It is my understanding from these discussions that in addition to Popular Bank, at least some of these emails involve my client's co-defendants, including Mr. Moshe's sister, Dr. Regina Moshe, and her companies.

I'm now going to skip down a little bit to a paragraph that begins, The emails described to me by Mr. Cook.

Do you see that?

MR. ROBERTS:  I do.  Thank you.

Q.   It says, The emails described to me by Mr. Cook which plaintiffs have received from other sources were deleted by the



                    Y. Moshe

nonparties before they could reasonably have

expected them to be sought by plaintiffs in

this action, much less the issuance of

plaintiff's subpoenas.

          Do you see that?

     A.    Yes.

     Q.    This letter appears to describe

some emails that were destroyed.  That was a

discussion that ultimately became the subject

of a hearing that took place on October 31,

2023.  I have some questions about that

email.

          Are you familiar with the apparent

destruction of emails that is being described

by your attorneys in this letter?

     A.    No.

     Q.    Were you aware of whether there

were emails that were requested concerning

Popular Bank, construction and remodeling of

premises by nonparties that had been

requested by plaintiffs that were destroyed?

     A.    Nothing was destroyed after the

preservation of rights letter.

     Q.    Do you have any idea then why your



Y. Moshe

lawyer would have written to the court on or about October 5, 2023 referencing the destruction of emails?

A.    Is it my emails, is he talking about my emails?

Q.    I don't know.  That's what I'm trying to find out.

A.    My emails were not deleted after the preservation of rights letter. Communication with all the defendants are kept in that email account which was provided to you.

Q.    Did you use your personal account -- strike that.

Did you use the Yan Moshe at Yahoo.com account to conduct business -- strike that.

Did you use the Yan Moshe at Moshe.com account to communicate regarding construction or remodeling of the premises owned by the nonparties referenced in this letter?

MR. ROBERTS:  I'm going to object. Same objection as before.  I don't have


MAGNA
LEGAL SERVICES

Y. Moshe

to give you my reasoning.  You will have your opportunity to examine him subsequently on anything you like, just not today.

I don't see how that's relevant to how X amount of emails have escaped your subpoena which is the limited focus of the deposition today and you have gone far afield of it many times today.

MR. MARKS:  Just for the record, there is a representation in this letter submitted by counsel that emails have been destroyed.

MR. ROBERTS:  From the Yan Moshe account, his emails?

MR. MARKS:  That's what we are trying to find out, and the only way to find out whether these are in this account is to get an answer to this question.  I'm trying to find out whether this representation concerns the account we are talking about right now and the only way to do that is to ask these questions and if you are not going



Y. Moshe

to allow me -- let me finish -- what I want to find out right now is whether the emails that are referenced in this letter that were destroyed, and this is a letter from the law firm, his lawyer representing emails have been destroyed, and whether the emails that have been destroyed are in that account, I need to find out if -- he tells me he doesn't know what emails have been destroyed so I need to find out whether emails that were destroyed are in that account or not and so any question that gets to whether that account is among the emails that were destroyed, I think is a fair game question right now.

MR. ROBERTS:  Okay, fair enough. My suggestion is, which I would instruct him to answer, did you delete any emails from that account between you and these parties?  Direct question.

MR. MARKS:  Let's start with that.

Q.    Did you delete any emails between -- did you delete any emails -- strike that.



Y. Moshe

MR. MARKS:  He is these parties.

MR. LEGHORN:  It's nonparties.

MR. MARKS:  He is these nonparties. He is 1963 Concourse Holdings.

MR. ROBERTS:  It's simple.  Did you destroy any emails that would have been contained in the Yan Moshe Yahoo account involving these parties?

MR. MARKS:  That's what I tried to ask.

MR. ROBERTS:  You did not.  You asked if you had communications.  You were going to the substance of the communication, you didn't ask about destruction and I'm happy, if you want to ask that question, I will allow him to answer it.

MR. MARKS:  All right.

Q.   Did you destroy any emails in the Yan Moshe at Moshe.com account -- strike that.

Did you destroy any emails in the Yan Moshe at Yahoo.com account concerning 1963 Concourse Holdings?



Y. Moshe

A. I will answer that question. I just want to go back to my answer again.

After I was put on notice for preservation of rights letter, I did not delete any communication with anyone that was on this list, with anyone that was on this list and lists to follow and lists before, I did not delete emails.

Does that answer your question? I feel like we are going in circles.

Q. No, it doesn't.

MR. MARKS: Read my question back please.

(Record read.)

A. After I got the preservation of rights letter, I did not delete any emails that have anything to do with 1963 and any of the defendants or the nonparty people on the subpoena.

Q. So the answer is no?

A. I said I did not delete.

Q. Listen to the question and answer the question.

Repeat the question?



Y. Moshe

A.    I'm doing as best I can.

MR. ROBERTS:  Hold on.

MR. LEGHORN:  Read it back.

MR. MARKS:  Read the question back?

MR. ROBERTS:  He did answer your question.  We can read it back and ask it again, that's fine.

(Record read.)

MR. MARKS:  No, it doesn't because I don't know what the list is, I don't know what you are talking about.  Yes or no?

MR. ROBERTS:  Just reask it.

MR. MARKS:  We will be here all day.  Let's try it again.

Q.    Did you, at any point in time, delete any emails in the Yan Moshe at Yahoo.com account concerning 1963 Concourse Holdings?

A.    I did.  Those emails that are not related to the State Farm case and the people on this list.

I want to make this clear.  I do have other business in 1963 that has nothing



Y. Moshe

to do with State Farm.

Q.    How did you decide what has to do with State Farm and what doesn't?

A.    My tax abatement, some of the repairs that are happening in the lobby that has nothing to with my tenants sitting there or my parking lot attendant has nothing to do with sitting there.

I think I can make the decision for myself.  I know what you are looking for so I preserved everything in this case so you got no case.

MR. LEGHORN:  Can we take a break?

THE VIDEOGRAPHER:  We are going off the record.  The time is 11:20 a.m.

(Recess.)

THE VIDEOGRAPHER:  We are back on the record.  The time is 11:46 a.m.

BY MR. MARKS:

Q.    Did you destroy emails in the Yan Moshe at Yahoo.com account concerning 910 East Gun Hill Holdings?

A.    No.

Q.    Did you destroy emails in the Yan



Y. Moshe

Moshe at Yahoo.com account concerning Woodhaven Realty?

A.    Are you talking about 65-55 building?

Q.    65-55 Woodhaven Realty.

A.    No.

Q.    Did you destroy emails concerning -- in the Yan Moshe at Yahoo.com concerning 63-36 Holdings?

A.    Yes.

MR. ROBERTS:  Chris, I'm not authorized on the thing, maybe you can send him an email from me.

A.    I just want to clarify, emails not related to any of the defendants in this case.

Q.    Did you destroy emails in the Yan Moshe at Yahoo.com concerning 9220 165 Holdings LLC?

A.    No.

Q.    Previously, we talked about a number of entities where I asked whether you had used this account to conduct business, I'm going to ask this question a little bit



Y. Moshe

differently.

Did you use the account at Yan Moshe at -- strike that.

Did you destroy any emails concerning Yan -- strike that.

Did you destroy any emails in the Yan Moshe at Yahoo.com account concerning Hackensack Specialty?

A.    No.

Q.    Did you destroy any emails in the Yan Moshe at Yahoo.com account concerning Dynamic Surgery Center?

A.    No.

Q.    Did you destroy any emails in the Moshe Yahoo account concerning Excel Surgery Center?

A.    No.

Q.    Did you destroy any emails in the Moshe Yahoo account concerning Integrated Specialty?

A.    No.

Q.    Did you destroy any emails in the Moshe Yahoo account concerning SurgiCare of Brooklyn?


MAGNA
LEGAL SERVICES

Y. Moshe

A.    No.

Q.    Did you destroy any emails in the Moshe Yahoo account concerning Citimed Surgery Center?

A.    No.

Q.    Did you destroy any emails in the Moshe Yahoo account concerning Star Solution Services?

A.    No.

Q.    Did you destroy any emails in the Moshe Yahoo account concerning Citimedical?

A.    No.

Q.    Did you destroy any emails in the Moshe Yahoo account concerning Citimed Services?

A.    No.

Q.    Did you destroy any emails in the Moshe Yahoo account concerning Citimed Complete?

A.    No.

Q.    Did you destroy any emails in the Moshe Yahoo account concerning Citimed Management Services?

A.    No.



Page 86

Y. Moshe

Q.    Did you destroy any emails in the Moshe Yahoo account concerning Citimed Surgery Center?

A.    No.

Q.    Did you destroy any emails in the Yahoo Moshe account sent to or from Leonid Shapiro?

A.    No.

Q.    Did you destroy any emails in the Yahoo Moshe account sent to Regina Moshe?

A.    No.

Q.    Did you destroy any emails in the Yahoo Moshe account concerning Vadim Dolskey?

A.    No.

Q.    Did you destroy any emails in the Yahoo Moshe account concerning Mark Gladstein?

A.    No.

Q.    Did you destroy any emails in the Yahoo Moshe account concerning Reuvon Alon?

A.    No.

Q.    Did you destroy any emails in the Yahoo Moshe concerning Nizar Kifaieh?

A.    No.



Y. Moshe

Q.    Did you destroy any emails in the Moshe Yahoo account concerning Isaias Barrera-Perez?

A.    No.

Q.    Did you destroy any emails in the Yan Moshe account concerning Roma Yusupov or Olivia Yusupov?

A.    Does that matter that I don't know these people and I might not have emails from them.

Q.    Did you destroy any emails --

A.    No.

Q.    Did you destroy any emails in the Yahoo Moshe account concerning Ariel Sezanayev?

A.    No.

Q.    Did you destroy any emails in the Yahoo Moshe account concerning Vladimir Matatov?

A.    No.

Q.    Did you destroy any emails in the Yan Moshe account concerning Jelani Wray?

A.    No.

Q.    Did you destroy any emails in the



                        Y. Moshe

Yan Moshe account concerning Beshert Corp.?

     A.   No.

     Q.   Did you destroy any emails in the Yan Moshe account concerning Marina Katayeva?

     A.   No.

     Q.   Did you destroy any emails in the Yan Moshe account concerning Michelle Simon?

     A.   No.

     Q.   Did you destroy any emails in the Yan Moshe account concerning Estevan Roman?

     A.   No.

     Q.   Did you destroy any emails in the Yan Moshe account concerning Roman Yunusov?

     A.   No.

     Q.   Do you destroy any emails in the Yan Moshe account concerning Tatyana Rabinovich?

     A.   No.

     Q.   Did you destroy any emails in the Yan Moshe account concerning Patrick Situ?

     A.   No.

     Q.   Did you destroy any emails concerning Yenny Escano?

     A.   No.



Y. Moshe

Q.   Did you destroy any emails in the Yan Moshe account concerning Complete Radiology Solutions?

A.   No.

Q.   Did you destroy any emails in the Yan Moshe account concerning Alkies Lapas?

A.   No.

Q.   Did you destroy any emails in the Yan Moshe account concerning Contemporary Diagnostic?

A.   No.

Q.   Did destroy any emails in the Yan Moshe account concerning CDI Management Group?

A.   No.

Q.   Did you destroy any emails in the Yan Moshe account concerning All Star Services Inc.?

A.   No.

Q.   Did you destroy any emails in the Yan Moshe account concerning Five Star Services?

A.   No.

Q.   Did you destroy any emails in the



                    Y. Moshe

Yan Moshe account concerning Nizar Burak?

A.    To some emails that are unrelated to this case.

Q.    Did you destroy any emails in this account concerning Expert Billing Solutions?

A.    No.

Q.    Did you destroy any emails in the Yan Moshe account concerning New York Spine Institute?

A.    No.

Q.    Did destroy any emails in this account concerning Sovereign Health Medical?

MR. ROBERTS:    Can you say that again.

Q.    Sovereign Health Medical.

A.    No.

Q.    Did you destroy any emails in the Yan Moshe account concerning Pinnacle Health Consultants?

A.    No.

Q.    Did you destroy any emails in the Yan Moshe account concerning Greenbills?

A.    No.

Q.    Did you destroy any emails in the



MAGNA
LEGAL SERVICES

Y. Moshe

Yan Moshe account concerning John Mitamura?

A.    No.

Q.    Did you destroy any emails in the Yan Moshe account concerning Norman Rowe?

A.    No.

Q.    Did you destroy any emails in the Yan Moshe account concerning Advanced Comprehensive?

A.    No.

Q.    Did you destroy any emails in the Yan Moshe account concerning Anthony Rose?

A.    No.

Q.    Did you destroy any emails in the Yan Moshe account concerning Todd Chambers?

A.    No.

Q.    To the extent that you did destroy emails concerning any of the individuals or entities that I've just been through, you said you destroyed them to the extent they did not relate to this lawsuit, that's what you testified?

A.    Correct.

Q.    How did you decide what related to the lawsuit and what didn't relate to the



Y. Moshe

lawsuit?

A.   If it was a construction of a personal property that is not business related, some emails from Nizar about the type of toilets or the type of tile we are going to use, it's irrelevant, so those, I deleted.

To those issues that relate to the real estate holdings companies where Citimed is no longer a tenant which is 63-36, Citimed hasn't been a tenant for years now that relates to ongoing issues now, I don't think that needs to be preserved with new tenants so those were deleted.  I don't need them, they are irrelevant.

Q.   To the extent -- you testified that you had gotten a list of what was to be preserved.

That was a list of persons and entities that you were preserving, correct?

A.   Correct, it was similar to the one you gave me.

Q.   It was a list, preserve these, right?



Y. Moshe

A.    Yes.

Q.    So in terms of the decision, if something was on the list, if you made a decision it was on the list, I'm then going to make a decision whether it was relevant or not, that was a decision you went on and made yourself, correct?

A.    Yes, and it was based on this particular issue has no relevance to this case whatsoever in any way.

Q.    So that was not an instruction, conversation, direction that was part of the preservation conversation that you had with your attorney, that was something that you went on and did yourself, correct?

A.    No, we did discuss what I need to preserve.

Q.    So I want to make sure I understand.  With your attorneys, they gave you a list.  You said there is an added layer, so with some people on the list, you said I'm going to make an added decision, does it relate or does it not relate to the lawsuit, right?



Y. Moshe

A.    No.    So when we discuss this with my GC, I said, Harry, exactly what do we need to keep and he said everything related to this case and these people and that's exactly what I did, after he consulted our litigation counsel.

Q.    So I just want to make sure I understand the preservation practice that you followed, okay.

The preservation practice that you followed is; A, there is a list and; B, if it relates to the lawsuit, that's the preservation practice you followed after the lawsuit was filed?

A.    A.    There is a list; B, there is unrelated business in that particular building that has nothing to do, there is no longer tenants that are part of this lawsuit, it's post timeline.

Q.    So if it's a building that doesn't relate to the lawsuit -- strike that.

MR. MARKS:    Can you read that last part back please?

(Record read.)



Y. Moshe

Q. So the preservation practice is for something to be preserved, it has to be both on the list and not be related to a building that doesn't have anything to do with the lawsuit, is that a fair characterization of what you said?

A. Yes.

Q. Is there any other element of the preservation practice that you followed other than what I have just said?

A. No.

Q. And this preservation practice, just so we are clear because I have a feeling we have to fight about where we get it and where we find it, this preservation practice is one that was -- you came up with with your GC or you came up with with your outside counsel?

A. Outside counsel notified us and then my GC notified me and we went over some details what are we keeping what are we not, what are we supposed to keep and not supposed to keep and I have a discussion with my counsel as well.



Y. Moshe

Q.    To the extent there is a list, that is a list that was created by your outside counsel and shared with your GC?

A.    I think these attachments to this document that you gave me, there are several of them.  The lists are the same.

Q.    So we are going to fight about whether we get the list or not, but I want to know what we are fighting about.

The list, to the extent there is a list, that list -- you were provided a list by -- the list is a creation of your GC or the list is a document that was created by plaintiff provided to you by your lawyer?

A.    The document that was created by you guys, sent to my lawyer, then sent to my GC and me.

MR. ROBERTS:  He answered the question.

A.    There might be some different variations of it, but...

Q.    Who is your GC?

A.    Harry Kapralos.

Q.    Is that the GC for Hudson Regional



Y. Moshe

Hospital?

A.   Yes.

Q.   So turning then back to 421 which is the letter that started this conversation, when your lawyer is referring to emails that have been destroyed and he is saying these are emails that have been deleted before they could have recently been expected to have been sought by plaintiffs in this action, much less the issuance of subpoenas.

Among the emails that your lawyer is referring to are at least the emails -- they at least include some emails in the Yan Moshe at Yahoo.com account concerning at least 1963 Holdings and 63-36 Holdings, is that correct?

A.   What's the date?

Q.   The date of the letter, it was filed October 5, 2023.

A.   No, it does not.  This -- I don't think it's to my emails.

Q.   You testified that at least some emails concerning 1963 Holdings and 63-34 Holdings at Yan Moshe at Yahoo.com account


MAGNA
LEGAL SERVICES

Y. Moshe

were destroyed, correct?

A.    Definitely post this date.  This is unrelated issues that are happening with my tenants of my buildings post litigation, that is not in this timeline.

Q.    The destruction of emails that we talked about -- the destruction of emails in the Moshe Yahoo account that we've been talking about concerning 1963 Concourse and 63-36 Holdings happened after October 5, 2023, is that correct?

A.    Yes.

Q.    So do you know what emails being destroyed your lawyer is talking about when he files a letter on October 5, 2023?

A.    I don't.

Q.    Do you know whether there were any emails destroyed in the Moshe Yahoo account before October 5, 2023 that he could be talking about?

A.    Not my emails.

Q.    You don't --

A.    Not my Yahoo email account.

Q.    What emails do you believe he is



Y. Moshe

talking about having been destroyed on October 5, 2023?

A.    I don't know.

Q.    Were you using any other account before October 5, 2023 in which emails could have been destroyed?

MR. ROBERTS:  Objection.

Don't answer.

You will get your opportunity to discover everything you want about other email accounts and what he used and the substance of those, but this does not go to the limited issue for which we are here today.

As a matter of fact, a host of your questions don't and I have a tried to object sparingly, but you don't need to answer that.  It's not related to the Yahoo account, you don't need to answer that.

Q.    You are not going to answer that question?

A.    I will take my attorney's advice.

Q.    So your testimony is, just so we



Page 100

Y. Moshe

are clear, your testimony is that on October 5, 2023, your lawyer told the court that some emails had been destroyed, that's correct?

A.   I would like to clarify.  Is he saying my emails were destroyed?

Q.   Yes, he is.

A.   Can you show me where he says that so I can refresh my memory?

Q.   Specifically in response to plaintiff's subpoena, Popular Bank has produced emails to which nonparties or parties.

MR. LEGHORN:  Top of second page.

Q.   Top of second page, but these same emails have not been produced by the nonparties.  The nonparties, just so you know, are defined on the first page as your entities?

A.   Yes.

Q.   So some emails to which you are a party have been destroyed?

MR. ROBERTS:  It does not say that.

Q.   Well, that's what the first sentence says, we are defining nonparties,



Page 101

                    Y. Moshe

okay.  The emails described to me by Mr.

Cook, that's the emails up above, which

plaintiffs have received from other sources

were deleted by the nonparties.

        MR. ROBERTS:  It doesn't say

    deleted --

    A.   Was it prior to the litigation and

preservation of rights letters?

    Q.   I'm asking you a simple question.

        MR. MARKS:  Please don't interrupt

    my question.

        MR. ROBERTS:  Hold on.  Wait a

    second.  You can leave the room, you can

    leave the room.  I'm not going to do

    this.

        MR. MARKS:  We are going to call

    the court.

        THE WITNESS:  Leave the room?

    Don't leave the room?

    Q.   I will ask my question.  I'm

reading you what the letter says.

        MR. ROBERTS:  Go ahead and read the

    letter.  You have an interpretation of

    the letter.  Go ahead.


MAGNA
LEGAL SERVICES

Page 102

Y. Moshe

Q.   Let me read the letter to you.  The letter says, The email described to me by Mr. Cook which plaintiffs have received from other sources were deleted by the nonparties before they could have reasonably expected to be sought by plaintiffs in this action, much less the issuance of a subpoena.

Why don't you tell me, were emails -- did 1963 Concourse Holdings, 910 East Gun Hill Holdings 65-55 Woodhaven Realty, 63-36 Holdings or 9220 165 Holdings destroy any emails before October 5, 2023?

A.   No.

MR. ROBERTS:  Fine.

Q.   Why did your attorney, on October 5, 2023, tell the court that those entities had deleted emails?

MR. ROBERTS:  Objection.

You don't have to answer the question.

Q.   You are going to follow your attorney's instruction?

A.   Yes.

Q.   I will ask again, did you conduct



                    Y. Moshe

business on behalf of 1963 Concourse

Holdings, 910 East Gun Hill Holdings, 65-55

Woodhaven Realty, 63-36 Holdings or 9221 65

Holdings by using the Yahoo Moshe -- the

Moshe Yahoo account?

            MR. ROBERTS:  Can you read that

     question back please?

            (Record read.)

            MR. ROBERTS:  That's enough.

     Objection.

            Instruct you not to answer.

     Q.   Are you going to follow your

attorney's instruction?

     A.   Yes.

            MR. ROBERTS:  When you get to why

     we are here, I'm good with it.

            (Deposition Exhibit 422, documents,

     marked for identification, as of this

     date.)

     Q.   Showing you what has been marked as

deposition Exhibit No. 422.

            You previously testified that at

some point, you may have seen lists that were

provided by plaintiffs.



Page 104

Y. Moshe

On or about February 15th, which is the last page, a letter was sent from Christopher Cook to Shannon Carol?

MR. ROBERTS:  Well, Mr. Juliano.

MR. MARKS:  The last page.

MR. ROBERTS:  You are on February 15, 2024?

MR. MARKS:  Yes.

Q.   That letter identifies various accounts that plaintiffs wanted to be searched as part of the ESI search.

First of all, at some point shortly after February 15, 2024, did you see this letter?

A.   Yes.

Q.   So were you aware sometime shortly after February 15, 2024 that plaintiffs at least wanted the account at Yan Moshe at Yahoo.com searched?

A.   Yes.

Q.   Did you do anything after February 15, 2024 to preserve the emails in the Moshe Yahoo account other than what you previously testified to, which was to stop deleting



Page 105

Y. Moshe

emails pursuant to the preservation directive we've discussed?

A. No.

Q. To your knowledge, did anyone other than you do anything to preserve emails in the Moshe Yahoo account other than what you were doing to stop deleting emails?

A. I don't know and I don't remember.

(Deposition Exhibit 423, defendant's second set of document requests to defendant, Yan Moshe, marked for identification, as of this date.)

Q. Showing you what has been marked as Deposition Exhibit 423.

This is defendant's second set of document requests to defendant, Yan Moshe.

Have you seen this document request before?

A. Yes.

Q. You are aware of the document requests and the attachment to it?

A. Yes.

Q. You are aware that this request specifically requires the production of



Page 106

Y. Moshe

emails sent to the Moshe Yahoo account?

A.    Yes.

Q.    This specifically requires the production of emails sent from the Yan Moshe account, correct?

A.    Yes.

Q.    And you are aware that this request specifically includes about 15,000 specifically identified emails sent to and from the Moshe Yahoo account?

A.    I don't know exactly how many, but, yes.

Q.    They are identified in that enormous stack at the bottom?

A.    Yes.

Q.    Are you aware that that stack of approximately 15,000 emails was identified from email data provided to plaintiffs by Yahoo?

A.    Yes.

Q.    That at least according to Yahoo, those were emails that were in the Moshe Yahoo account at least as of March 2024?

A.    No, according to Yahoo, it says



Y. Moshe

there was an email to and from.  It doesn't say they're there.  It says there is an email to and from, it gives a confirmation, but it does not tell you that particular email is in the box.  It tells you how many emails are there.  Most of them are junk emails, they go to junk folder.  I have a filter for primary emails and junk emails and then emails for confirmation of appointments that I had appointments with these people.  The scheduler, when she books, everyone gets receipt of confirmation on virtual or physical appointments or meetings.

So, yes, there is a lot of emails, but it doesn't mean that it's all in that account.

Q.   Just so we are clear, your understanding is that to the extent that there is this list here that contains data produced to plaintiffs by Yahoo on March 28, 2024, your understanding is that's a record Yahoo has of emails sent and received, but that does not mean, to your knowledge, that those emails are still in the account?



Y. Moshe

A.   Correct.

Q.   What was done to find the emails that are identified in document request, on the second document request which was Deposition Exhibit 423?

A.   Search was started using tools that we have in our IT department, that didn't work, we bought a third-party tool.  When I say we, my IT department, and they were working on this for more than a month I believe and ran hundreds of searches because of so many names and so many entities and all of the emails we were able to locate were produced to you.

Q.   So when was the search started?

A.   I don't know.

Q.   Who was involved in doing the search?

A.   I tasked my IT director, Simon Farous.

Q.   And who worked with Simon Farous?

A.   Some of his team members.  I don't know who they are exactly.

Q.   How many people were involved with



Y. Moshe

him?

A.   I don't know.  I know it's definitely more than one.

Q.   Is this the first time anyone searched the Moshe Yahoo account?

A.   I don't know.

Q.   Who would know whether --

A.   I don't remember because in this timeline, there were many requests for email searches and then when I couldn't be able to do it myself because the data was too large, that's why I engaged him.

Q.   Do you have any -- is there any basis for you to assert that at any time before April 26, 2024, that anybody -- well, let me strike that.

Are you aware of anyone searching or looking at emails in the Yan Moshe Yahoo account prior to April 26, 2024?

A.   I don't remember.  I don't know the timeline, that's why I cannot comment to specific timeline.

Q.   But as you sit here now, you cannot identify -- can you identify as you sit here



Y. Moshe

now, any instance in which anyone searched the emails of the Moshe Yahoo account prior to April 26th, '24 in connection with this case?

A.    I searched them and I forwarded them to my attorney I believe.

Q.    When?

A.    Sometime before that.  I don't remember exactly when.

Q.    Would you have a record of when you did that?

A.    I'm sure if we look at the emails that I forwarded to my attorney.

Q.    When was the first time anyone attempted to collect emails in order to produce them from the Moshe Yahoo account?

A.    Other than me?

Q.    Anyone.

A.    I'm telling you again, initially, I did it myself.  I found several hundred emails which I forwarded to my attorney, then they said there is more emails that they need, then I started to run tests again, I failed at it.  I said I need to get someone


MAGNA
LEGAL SERVICES

Page 111

Y. Moshe

professional.  I engaged my IT director.  He did it with local resources that they had, they failed and then went and got a third-party tool, implemented it and did the search and produced what we produced.

Q.  When was the first time you collected the first hundred?

A.  As I told you, I don't remember the timeline, but I remember I did it.

Q.  Was it before -- was it after you became aware of the Yan Moshe at Yahoo.com account being sought on February 15, 2024?

A.  I don't know.  I don't want to give you wrong date or wrong timeline.

(Deposition Exhibit 424, plaintiff's third set of document requests to defendant, Yan Moshe, marked for identification, as of this date.)

Q.  Showing you what has been marked as 424.

This is plaintiff's third set of document requests to defendant, Yan Moshe.

Have you seen this document request before?



Y. Moshe

A.    Yes.

Q.    Did you see it at or about the time it was issued which is September 4, 2024?

A.    Yes.

Q.    You are aware that this document request like the ones before it defines communications at section 2 to include electronic mail?

A.    Yes.

Q.    And it defines documents that also includes emails?

A.    Yes.

Q.    And you are aware that this document request also would include within its scope, emails in the Moshe Yahoo account?

A.    Yes.

Q.    Did you do anything to collect emails from the Moshe Yahoo account that would be responsive to Deposition Exhibit 424?

A.    Yes, I think I searched them.

Q.    Who did the search to respond to Deposition Exhibit 424?

A.    At that time, I did.



Page 113

Y. Moshe

Q.    How did you do that?

A.    Searched the names that are listed here in the email box.

Q.    Did you find anything?

A.    If I found something, I forwarded it to my attorney.

Q.    Do you know if you found anything?

A.    I don't remember.

Q.    Was anyone else involved in searching for the emails that would be responsive to 424 other than you?

A.    So it was only me initially, I failed and then it was Simon and his team. Those were the two timelines. I don't know exactly where this fell.

Q.    So it sounds like the process to respond to both 423 and 424 was the same, if I'm hearing you right, which is that you did an initial search, you failed, you passed it off to Simon and his team, they searched.

Do I have that right?

A.    It's several times I failed in the timeline and once I gave it to him and they worked at it for months and they got what



MAGNA
LEGAL SERVICES

Page 114

Y. Moshe

they got.

Q.    So both with respect to the second document request which is 423 and 424, you tried initially to get the documents that were responsive to the request, correct?

A.    Correct.

Q.    And did you try once or multiple times?

A.    Several times, several days.

Q.    Then when you couldn't, both with respect to the second document request and the third document request, you passed it off to Simon and his team, correct?

A.    Correct.

Q.    And then his team attempted several times and we will talk about that process in a second, correct?

A.    Correct.

Q.    And then when they finished their collection, they passed whatever they found on to the lawyers, is that correct?

A.    Correct.

(Deposition Exhibit 425, letter from Yan Moshe's attorneys dated August


MAGNA
LEGAL SERVICES

Page 115

Y. Moshe

18, 2025, marked for identification, as of this date.)

Q.    I'm showing you what is marked as Deposition Exhibit 425.

This is a letter from your attorneys dated August 18, 2025, and just so we are clear, the second paragraph says a general matter relating to ESI collection and production.  All ESI collected and reviewed has been produced along with privilege logs related to the same.

So we understand that at least as of August 18, 2025, your lawyers are representing, on behalf of you, that to the extent there is email in the Yan Moshe Yahoo account that is responsive to any of the requests that have been served, it has been produced, is that correct?

A.    Correct.

Q.    So any --

A.    To my understanding.

Q.    So any email in your possession, custody, control in the Moshe Yahoo account responsive to plaintiff's first document



Page 116

Y. Moshe

request, second document request or third document request, has been produced, is that correct?

A.    To my understanding, yes.

Q.    You do not currently have any other emails in the Moshe Yahoo account in your possession, custody or control that you have not produced, is that correct?

A.    Correct.

Q.    So in other words, if we don't have it, at least as of August 18, 2025, it doesn't exist, is that correct?

A.    Correct.

Q.    The production that was made as of August 18, 2025, does not include approximately 15,000 emails that are identified in the document request which is the second document request which is Deposition Exhibit 423, it doesn't include that?

A.    But they're not all emails, your 15,000 communication are not all emails.

Q.    That's what I want to understand. What is your explanation?  I just want to



Page 117

Y. Moshe

hear your explanation for why your production, as of August 18, 2025, does not include the approximately 15,000 emails that have been identified by Yahoo as of March 28, 2025?

A.   Okay, so let me explain.  First of all, based on the emails you have seen, you know I'm not an email person, I do not email a lot and if I do email, it's one or two sentences, very quick, to the point.

No. 2, emails prior to preservation of rights letter were deleted in the normal course of action.  Post preservation rights of letter, they were saved.  A lot of the message confirmations that you have are not necessarily to an email to or from me, it's probably from meetings.  That's why with some people, I have 2,000 email.  I would never, in my right mind, send 2,000 emails to these people.

These are confirmations of emails or conferences we attended or events we attended.  This is all a general calendar that is managed where everyone gets a



Page 118

Y. Moshe

confirmation of an email so you have to go

through it and see what you really missing.

So No. 3, if you think I'm hiding

emails from you, you already got them from

all the other defendants, you got all of the

email addresses and all of their emails so

what else are we looking for here?  I gave

you everything I have.

Q.    So thank you.  I want to follow0up

on your answer.

First, you said the extent that

there are items that had been destroyed

before you had the preservation instruction.

You did not consider when -- if you

had an obligation to preserve emails in the

Yahoo -- the Moshe Yahoo account that may

have existed from other litigation that you

were involved in, were you under any

obligation on October 2021 to preserve the

Yan -- strike that.

On October 2021, were you aware of

any other obligation you had to preserve

emails in the Yan Moshe Yahoo account from

any other litigation you are involved in?





Page 119

Y. Moshe

A.   I do not know the exact timeline, but if I was in the obligation to preserve because of my litigation, I preserved, very simple.

Q.   You understood, at least as of October 2021, when this lawsuit was filed, you said you had a preservation order and you followed it?

A.   I don't know the timeline, but if I had a preservation, I followed it.

Q.   You said some of the emails that are identified in this are not, in fact, emails, all they are are confirmation of meetings so there wouldn't actually be an email, is that what you're telling us?

A.   Correct, there wouldn't be an email body, it would be a calendar meeting.

Q.   Let's take a look at I guess Deposition 523.

Can you show us an example of what would -- so we can know -- help us figure out what is the difference between what would be a meeting invite and what would be -- how are we going to know the difference



Y. Moshe

between a meeting invite and what would be an email?

A.    I don't have my glasses so I cannot see this.  This is very small print.  If you have it larger, I can do it on a computer, I can pull it up, but you can see some of them.

Q.    You don't have your glasses with you?

MR. COOK:  We can get you a magnifying glass.

A.    So you see it says data Citimed, for example, right, it says data Citimed?

Q.    Data Citimed, okay.

A.    And then it has all of this email addresses.  This is not an email exchange, it's a calendar request meeting, so someone has to get to this.

Q.    Let's try to make a record of what it is we are talking about here.

A.    So, look, this is an email.

Q.    Hold it.

A.    If you get some magnifying glass so we can be on the same page.  I'm sorry, I didn't know it would be such small print.



Page 121

Y. Moshe

MR. MARKS:  Why don't we go off the record for a second.

THE VIDEOGRAPHER:  We are going off the record.  The time is 12:29.

(Recess.)

THE VIDEOGRAPHER:  We are back on the record.  The time is 12:34 p.m.

BY MR. MARKS:

Q.    So you were testifying that you believe that some of the emails that Yahoo identified on March 28, 2024 are not, in fact, emails, they are calendar invites, is that your testimony?

A.    Most of the emails that are here are calendar invites and scheduling and repetitive emails that are coming out and generated, most of them, out of the 15,000, as you say.

Q.    Are you saying a repetitive email and a calendar invite are the same thing or are they different things?

A.    Different things, repetitive emails would include schedule of -- anesthesia schedule, physician schedule, block time,



Page 122

Y. Moshe

everything that happens in the center of the

hospital where email comes up every Friday,

every Thursday, right, it's repetitive.

And then there is meetings that are

held in person or virtual, that would be

second type of email.

Q.    So when you say a repetitive email,

that is an email that has content, but you

think it's unimportant because it's

repetitive and uninteresting?

A.    I didn't say that it's not

important.  I said it would be a content of a

schedule, for example, anesthesia schedule or

scrub tech schedule or physician schedule.

It would be a schedule that would go into the

calendar.  Once the email'S received, it

syncs into the calendar.  I'm not saying it's

not important.

Q.    It's an email scheduling an event?

A.    Yes.

Q.    And what is the other type of

things these could be?

A.    In person or virtual meetings, so

there is a schedule for the operations and


MAGNA
LEGAL SERVICES

Page 123

Y. Moshe

then there is an in person or virtual meeting.

Q.    So what else could these emails be?

A.    And the rest are communications I produced to you that I have.

Q.    So your testimony is that everything in there is either a communication that was produced, a meeting or a scheduling of a meeting?

A.    Correct.  It might be some other things in there, I just don't recall.

Q.    You had previously, I think, testified that this list of emails were things that Yahoo was just saying had been sent and received and was not necessarily a record of what was in the account on March 28, 2024.  I'm trying to square that with what you are saying now.

Are you saying this information was in the account and was accessible on March 28, 2024 or was not?

A.    No.  What I said is that Yahoo has different folders.  There is a junk folder and then there is a primary folder.  My junk


MAGNA
LEGAL SERVICES

Page 124

Y. Moshe

folder has thousands and thousands of emails that are there. This is just junk emails. I don't delete them. They are already in a junk folder. I don't even open them, but there are active emails in my primary mailbox which are emails that I need, that I keep and I delete.

So what I'm saying is in this 15,000 emails, when you are looking for your 15,000 communication emails you got from Yahoo sent and received with these defendants or nonparty or party to the lawsuit, you also have those junk emails that are in the box and then you have to go through substance of these emails to see which ones that have a body or substance they are looking for that are not invites and schedules.

Q. On March 28, 2024, Yahoo advised plaintiffs that there were 84,413 emails accessible in your account.

Do you dispute that?

A. No, I don't.

Q. On March 24 -- on March 28, 2024, Yahoo advised that communications reflected



Page 125

Y. Moshe

in plaintiff's exhibit, Deposition 423, were in your account and accessible, do you dispute that?

A.   Communications that were in my account?

Q.   Yes.  That the communications that are in -- that are attached as Exhibit 1, Exhibit 423, were in your account and accessible according to Yahoo on March 28, 2024, do you dispute that?

A.   I do not dispute that, but is it a communication or is it a schedule or it's a meeting, that's what I'm disputing.  Look, I'm saying yes, this is all there, but figure out which emails that are you looking for to get them.  I'm not disputing they are there, it's here and we produced what we have.

Q.   So forgetting -- setting aside what it is, it was there on March 28, 2024, it is not there on August 18, 2025, is that correct?

A.   No.  They told you what overall is there.  We gave you what is a communication, what we have, that meeting notifications just


MAGNA
LEGAL SERVICES

Page 126

Y. Moshe

go to a calendar, it's a received receipt, it's not a communication.

And you can look at, based on what's here, I just explain to you how to identify what's what.

Q. So your testimony is -- I want to make sure I understand what you are saying.

You are saying it hasn't disappeared?

A. It has not disappeared, I did not delete it, 100 percent fact.

Q. It's because even though, according to Yahoo, on March 28, 2024, the communications that it says are there on that date, you can't find them because they don't exist as communications in your email account?

A. Correct, it's a line item of an email coming in, but it's not an email, it's a schedule, it's an appointment. That's what you are looking for and you guys can pull one of those and see. You can pull those emails and you can see it, right, you got from Shapiro, you got from Regina, you got from



Y. Moshe

all of them, you can put it together to see that it's really an appointment. Just Yahoo is not an advanced email address, the other ones is advanced, the ones from Hudson Regional is very advanced so you have a detail of it.

Q.   To the extent that these created an event, a scheduled event on a schedule, so if they created an event, a scheduled event, would that have created an appointment on someone's calendar?

A.   Yes.

Q.   On an Outlook calendar, for example?

A.   For Yahoo, I did not use Outlook. For Hudson, we did use Outlook and we gave it to you.

Q.   For Yahoo, what calendar did you use?

A.   I did not use at all.

Q.   Did you use any calendar?

A.   That was linked to my iPhone.

Q.   If the Yahoo emails created an event, where would that event be scheduled?



Page 128

Y. Moshe

A.   On Yahoo's calendar and it would show on my phone.

Q.   So to the extent that any of the events that are Exhibit 1 created a calendar event, that would be a calendar event on your phone?

A.   On Yahoo and my phone.

Q.   On your Yahoo calendar?

A.   Yes.

Q.   If we wanted to see, for example, the 15,000 events here and if they are all events, if everything that's Exhibit 1 is an event --

A.   Some are calendar, some events, don't mix two things.  Calendar for the operations of the surgery center is not an appointment, it's a calendar.  You look at the schedule.

Q.   What's the difference between a calendar and event?

A.   So you know that this conference room is booked from Monday through Thursday for Katten Muchin and you know that it's booked for Monday through Wednesday for Yan


MAGNA
LEGAL SERVICES

Y. Moshe

and Keith, right, it would show, there is a
calendar, that's what is happening in the ORs
and what is happening in the facility.

Q.   Would we see both a calendar and an
event on your phone?

A.   No.  You would see my appointments
on my phone.  The calendar you would see on
everyone else's employees' calendar, not on
my phone.  It was linked to a particular
email at that time.

Q.   It was linked to each person's
individual phone at that time?

A.   Correct.

Q.   So if we wanted to see the calendar
invites -- to the extent we wanted to see the
events that involved you, we would have to
look at your phone and your Yahoo calendar,
so to the extent Exhibit 1 had events or
calendars to which you were invited, we could
look at your phone, it would say, all right,
there is a calendar invite, it's to Yan's
phone, there will be a calendar invite on
Yan's phone that corresponds to an event
that's in Exhibit 1?



Page 130

Y. Moshe

A.   Correct.

Q.   That would be the only record that would exist of that transaction identified by Yahoo, correct?

A.   I think so, yes.

Q.   To the extent there was a calendar invite that included somebody else, the only record of that that would exist on August 18, 2025 would be a calendar invite that would be on somebody else's phone or somebody else's calendar, correct?

A.   Correct.

Q.   There wouldn't be an email, is what you are saying, in the way we traditionally think of an email, correct, is that what you are saying?

A.   Can I show you on my phone?

Q.   Sure.

A.   So, for example, this is an email from my personal assistant, you click on it, this is just a meeting calendar, it has no body, no substance.  You click on it, it shows you what it is.  It's just an email with the schedule, there is no body to it,



Page 131

Y. Moshe

it's an email, but there is no body to it,
it's an attachment of a meeting.

This one is in Outlook, the other
one was not so whoever got that email, they
should have it under Outlook if they use
Outlook.

MR. ROBERTS:  Was that responsive?

MR. MARKS:  Yes.

MR. ROBERTS:  We definitely do not
have a magnifying glass at Brach
Eichler.

THE WITNESS:  They just went to the
store across the street.

MR. ROBERTS:  Mr. Marks, how are
you doing on time?

MR. MARKS:  We are getting close.

Q.   So when you were asked to look for
these, we will call them 15,000
communications that Yahoo had identified as
of March 28, 2024, did you go looking for
emails and figure out they were calendar
invites, what did you do?

MR. ROBERTS:  Objection, to the
extent I serve privilege other than what



Page 132

Y. Moshe

you discussed with your lawyers.

Q.    What you figured out, other than what you discussed with your lawyers?

A.    So initially, when I got the list, I thought I can do it myself.

You put in Leonid Shapiro, all of the emails with Leonid Shapiro come up, forward those to the attorneys.  This is one task, very simple, right, but then not everything was there and need an extensive search.

Then they started searching with local tools they had in our IT department. We have a very large IT department of 40 something people.  They couldn't figure it out.  They had to buy a special tool recognized by the court system of doing the searches and they did a search and we produced what we have, we gave you everything we have.

Q.    Okay, but when -- at some point, you have come to the conclusion that -- what you are telling me is that of the 15,000 in Exhibit 1, you think the majority of these



Page 133

Y. Moshe

are calendars or events, that's what you are saying?

A.   I didn't come to conclusion.  I knew this from the beginning.  When they threw such an extensive number of emails, I started laughing.  Everyone knows I am not an email person.  Speak to any of my employees, I don't send emails.

So I already knew what you were looking for.  I just thought you would figure these out.

Q.   You knew these were calendars and events from the beginning, you said they are going to be events and calendar so why are we looking?

A.   No, no, let them look.  We will give you everything that we have.

(Deposition Exhibit 426, Yan Moshe's affirmation, marked for identification, as of this date.)

Q.   Showing you what has been marked as Deposition Exhibit 426 which is the affirmation you filed in this case.

This is your affirmation?



Page 134

Y. Moshe

A.    Yes.

Q.    You signed this and you signed this under oath, is that correct?

A.    Yes.

Q.    So directing your attention to paragraph 2.  You said, When I learned my personal email account would need to be searched and responsive items produced.

Do you see that first clause there?

A.    Yes.

Q.    When is it that you learned that your personal Yahoo email account would need to be searched and responsive items produced?

A.    When the first subpoena came out with the request.  This is going back in time.  I don't know the exact date, but this is going way back to the beginning of the case.

Q.    So are you referring then to the first document request which is April 1, 2022 that we showed you at the beginning of the deposition, that would be deposition -- this, at the time you got 419?

A.    That I engaged Simon and the second



Page 135

Y. Moshe

person, Jonathan.  Is that your question?

Q.  No, no, no, no.  My question is, the first sentence says, When I learned my personal Yahoo account would need to be served, I wanted to know when, when when was?

A.  This is already the second time when we engaged Simon and Jonathan, this is already last try.

Q.  Let me be a little clearer what I'm asking.  I'm asking, at some point, you learned your personal email account would need to be searched and responsive items produced?

A.  Yes.

Q.  I want to know when that -- what's the date?

A.  When is this one or when I learned?

Q.  When you learned.

A.  When I first learned, when I received the first subpoena and first notification from my attorney.

Q.  So you would not have been issued a subpoena, so I want to make sure that we are talking about the same thing, you would not



Page 136

Y. Moshe

have been issued a subpoena.  What I'm trying

to understand, is that the document request

that's in front of you which is Deposition

Exhibit 419?

A.   Okay.

Q.   Is that when you first learned that

your email account, personal email account

would need to be searched in this case?

A.   I don't know, but it was around

that timeline.

Q.   Okay.  So -- okay.

And so you instructed Simon Farous

and Jonathan Lagrano to obtain appropriate

search terms from counsel and collect

responsive items accordingly, is that

correct?

A.   Yes.

Q.   And why is it that you wanted them

to conduct the search rather than the other

process that was being employed to collect

emails for your entities in this case?

MR. ROBERTS:  Hold on.  Can I have

clarification, what other process?

Q.   I will ask you then, was the



Page 137

Y. Moshe

process you employed for collecting emails with respect to the Yan Moshe account different than a process you employed for any other emails in this case?

A.   Yes.

Q.   Why?

A.   Because it contains a lot of my personal information and I didn't want any third-party place or my law firm have all of that information because it's a lot of personal information.

Today, the law firm works for me, tomorrow they work for my competitor, so I want to make sure that they don't have my personal stuff that relates to my family or my life, not work life.

Q.   What exactly was it about what was going to be done by Simon and Jonathan that was going to be different, how was the process -- exactly how was the process different?

A.   The process is not different.  The information that is not related to this case would not be disclosed to anyone else so they



Page 138

Y. Moshe

would not have a copy of it, it's my personal information.

Q.   Got it.  So to the extent there was information that you didn't want to get into the case --

A.   No, not into the case.  I didn't want any third-party entity to have it.  Information gets lost, information gets stolen.  My whole life is in that email account, my family pictures, my taxes, my accounts, it's a lot of personal stuff unrelated to the case.  Everything related to the case, we gave you, but I didn't want that information to be out there.

Q.   And in terms of I think you testified before that the decision of what's related and not related to the case, that was a decision -- who was making that decision?

A.   My attorneys have communicated with Simon and his team to identify what is related.  I did not have any say on what they should produce, what they should not.  They discussed that with the attorneys and they gave them instructions.



Page 139

Y. Moshe

Q.   So the decision of what's related and not related was being made by Simon and Jonathan based on instructions from the attorney, correct?

A.   Correct.

Q.   Jonathan and Simon work for you?

A.   Yes.

Q.   How do you know Simon?

A.   He works as the IT director for the system.

Q.   How long have you known Simon?

A.   I think he worked for Care Point sometime and then he worked for us for four, five years.

Q.   Are you related by blood or marriage to Simon?

A.   No.

Q.   Are you related by blood or marriage to Jonathan Lagrano?

A.   No.

Q.   Do you have any other business with Simon other than him being the Hudson Regional IT director?

A.   No.



Page 140

Y. Moshe

Q.   Do you have any other business with Jonathan Lagrano other than his work for Hudson regional?

A.   No, they are true third-party.

Q.   They work for you, correct?

A.   Yes.

Q.   And when did you hire Simon Farous?

A.   Four, five years ago.

Q.   When did you hire Jonathan Lagrano?

A.   I don't know.

Q.   Do they still work for you?

A.   Yes.

Q.   Both of them?

A.   Yes.

Q.   You were concerned, however, with having your lawyers do this because if your lawyers -- your lawyers work for you now, but your lawyers may not work for you again in the future?

A.   Correct, and there is a lot of personal information, medications, health-related trauma, family related, kids related, there is a lot of personal information.



Page 141

Y. Moshe

Q.   The decision of this process, the decision that you were going to do your Yan Moshe account one way and you were going to do your other accounts another way, whose decision was that?

A.   My decision.

Q.   Did you consult with anyone regarding that decision?

A.   Yes, with my attorneys, as long as they said that we do this fairly and we get a third-party tool that can justify what we do, we have a copy of all the search names, we have it all to prove as a backup that there was no commingling and that I didn't have any influence on Simon and his team when they are doing it, gave it to my attorneys and they dealt with it.

Q.   In order to make sure you didn't have any influence, how did you do that, how did you make sure you didn't have any influence over Simon?

A.   I think it was someone on Keith's team, I said please speak to them, explain what we need and, Simon, please work with



Page 142

Y. Moshe

them, let me know when you are done.

Q.   Did you speak to them -- did you speak to Simon or Jonathan in connection with how to do this?

A.   No, I said whatever they need, please provide to them, but please make sure they are not getting my personal information or personal items that are unrelated to this case, to my health issues, to my family's health issues, to bank accounts and whatever else we might have in there.

Q.   Did you give Simon and Jonathan any other instructions other than that?

A.   No.

Q.   How many times did you speak to Simon and Jonathan about what they should do?

A.   Once when they needed my password and once when I asked them, can I change the password now.  They said no, we are still running a search and a few weeks later, maybe a month later, he texted me, we are done, you can change the password.

Q.   Did you speak to them together or separately?



Page 143

Y. Moshe

A.    I think it was -- once it was in a conference call with some of the attorneys and second time when I texted him is he done to change the password and he said not yet, then later -- several times, but not together, once with the attorney and once in a text message I think.

Q.    You had one conversation with the two of them together with your attorneys?

A.    No, one conversation with Simon and my attorney.

Q.    Did you ever speak to Jonathan?

A.    Jonathan, I spoke with before I engaged Simon because he is a lower level guy when I was trying to do searches myself months before that, when he came to my office and showed me how, we had a conversation about that, after that, zero.

Q.    So you had one conversation with Jonathan, you, one on one with Jonathan?

A.    Maybe one or two.  He came up a few times.

Q.    Okay.  You had one conversation with Simon and the attorneys?



Page 144

Y. Moshe

A.    Yes.

Q.    And you had one text exchange with Simon?

A.    When he is done on this issue.

Q.    Any other conversations with Simon about this issue?

A.    No.

Q.    Down at paragraph 8, I have not deleted any emails relating to this dispute with plaintiffs since the filing of the complaint in October of 2021.

Do you see that?

A.    Yes.

Q.    So we've talked about when you understood you had an obligation to preserve. You understood that, according to this at least, that as of October 2021, that's when had you an obligation to preserve?

A.    Correct.

Q.    And that's when the complaint was filed, correct?

A.    Correct.

Q.    And we've talked about this before, but when you say emails relating to this



Page 145

Y. Moshe

dispute, as you have expressed it in this affidavit, what do you mean?

A.   The same thing we discussed before, it's all the related parties on your complaint and all the people that you added on and they moved throughout the time.

Q.   Just so we are clear, if a person or entity is named in the complaint, that's related to the dispute, correct?

A.   Correct.

Q.   If a person or entity is named in a subpoena issued in this case, that's related to this dispute?

A.   Correct.

Q.   If a person or entity is named in a document request that's been served on you, that's related to this dispute?

A.   Correct.

Q.   Despite that, in some circumstances, if a person or entity has been identified as related to this dispute, in some circumstances, you made the decision that it might be a subject not related to this dispute and you went ahead and deleted



Page 146

Y. Moshe

it, correct?

A.   Yes.

Q.   And those were decisions that you made in some circumstances, correct?

A.   Correct, three circumstances.

Q.   Those three circumstances are?

A.   63-36 99th Street, that building for tenants that are unrelated to any of this because Citimed has not been a tenant there for a long time.

Some email from Nizar Burak, a marketing promotional material for the type of bathroom I was getting for my house and 910 for things that related to my parking lot tenant that has nothing to do with the Citimed or any of the defendants here and some renovations in the lobby.

Q.   Other than that, you saved all emails concerning any persons or entities that were named in the complaint, any subpoena issued in this case, any document request issued in the case, that's your testimony?

A.   Correct.



Page 147

Y. Moshe

Q.   To the extent that anything -- strike that.

To the extent anything in Exhibit 1 to Deposition Exhibit 423 is, in fact, an email, I understand you've testified that they're not emails, they're events, they're calendars, but to the extent anything is an email that was identified by Yahoo as in the account and accessible on March 28, 2024 and is not in the account on August 18, 2025, do you have an explanation you would like to share with us as to why it may not be in the account?

MR. ROBERTS:  Objection to form.

First, okay -- you know, I would ask you rephrase the question.

I will object to the form and I have a very good reason and I don't need to tip the witness off to the answer, I'm happy to excuse him, but there is a fundamental issue I have with the question.

A.   You are alleging that I erased emails and I explained to you that I did not.



Page 148

Y. Moshe

Everything that was there is there.  Not one email was deleted, not one except those three instances that I told you about myself.

Q.   So the answer is, if something is not there and it is a communication, there is no explanation?

A.   We are living in an electronic world --

MR. ROBERTS:  You don't have to answer.  It's an improper question.  I object to the form, it's outside the scope.

You presumed in your question many things --

MR. MARKS:  Just object to the form.

MR. ROBERTS:  You don't have to answer.

First of all, it's been asked 25,000 times today.  It's off base on the order and you've answered it 20 times so that's that.

Q.   So your --

MR. ROBERTS:  You are fundamentally



Page 149

Y. Moshe

just incorrect, sorry, you are confused, I'm trying to help you.

Q.   Do you have an explanation as to why communications identified by Yahoo is in the account on March 28, 2024, are not there on August 18, 2025?

MR. ROBERTS:  Who says they are not there?

A.   Your facts are wrong.  Your facts are wrong.  I urge you, please speak to your IT team, have someone review so they can give explanation.  It's very easy for you to create this bubble.  This judge has given you everything.  You guys did not deserve a lot of things you got in this case.

Again, we are going back to this place.  You have to get proper people to analyze this data.

Q.   Is that your answer?

A.   That's my answer.

MR. MARKS:  Off the record.

THE VIDEOGRAPHER:  We are going off the record.  The time is 1:07 p.m.

(Recess.)



Page 150

Y. Moshe

THE VIDEOGRAPHER:  We are back on the record.  The time is 1:28 p.m.

BY MR. MARKS:

Q.  I'm directing your attention to a page of Exhibit 423.  This is Exhibit 8.  I see you are taking a look at it with a page with the magnifying glass.

As a reminder, this is a list of communications that Yahoo has identified as communications that they say were in the account on March 28, 2024 and we've been talking about it early in the deposition, do you recall?

A.  Yes.

Q.  Directing your attention to one line which Chris pointed out to you.  There is a line that begins with document IDED 412-070424.

Do you see that line?

A.  Yes.

Q.  As you read it across, it refers to a communication sent on 5/26/2016.  The author is T-A-T-Y-A-N-A-R at Citimed NY.com.  The recipient in Yan Moshe at Yahoo.com.



Page 151

Y. Moshe

Do you see that?

A.    Yes.

Q.    That appears to be an email sent from Tatyana Rabinovich to your Yan Moshe at Yahoo.com account.

That email was not produced to us as of August 18, 2025.  Why did you not produce that email to us?

A.    We produced everything I had.

Q.    Why did you not produce that email to us?

A.    If it doesn't exist, it doesn't exist.  If it existed, it was produced to you.

Q.    It existed as far as Yahoo was concerned on March 28, 2024.  It did not exist as of August 18, 2025.

Do you have an explanation as to why?

A.    Can you show me where it shows that it existed and it doesn't show you anymore?

Q.    I'm showing you Exhibit 423.

A.    What you produced from Yahoo is that there was an email to and from.  It does


MAGNA
LEGAL SERVICES

Page 152

Y. Moshe

not say that it was in my mailbox at the time.  You have no proof that says that this email was in my mailbox.  If you do, please show me.

Q.    I will show you what has been marked as Deposition Exhibit 427 which is the email.

(Deposition Exhibit 427, email chain, marked for identification, as of this date.)

Q.    First of all, this appears to be an email from Tatyana Rabinovich dated May 26, 2016 to Yan Moshe at Yan Moshe at Yahoo.com which appears to correspond to the email we are talking about.

First of all, do you recognize this email?

A.    Yes.

Q.    And is this the email that appears to be referenced in that line that we've been talking about in Deposition Exhibit 423?

A.    How would I identify that?

Q.    So you don't know?

A.    How would I -- tell me how to



Page 153

                    Y. Moshe

identify it.

        Q.    I'm asking, do you know?

        A.    I do not know.

        Q.    You recognize this email?

        A.    I do.

        Q.    You did not produce Exhibit 427?

        A.    How do you know I have it?  Do you
have proof that you know I have it?

        Q.    I'm asking, did you produce
deposition exhibit --

        A.    You asked me why I didn't produce.
I'm telling you what I had was produced.  You
telling me you know for a fact that I have
this email.  Can you give me proof that I
have this email?

        Q.    Did you receive this email?

        A.    Did I receive this particular
email?  I do remember this email.

        Q.    You do remember receiving this
email?

        A.    No, I do remember this email and
writing this email, I do remember.

              Your question was, why didn't I
produce it to you.  I'm telling you, what


MAGNA
LEGAL SERVICES

Page 154

Y. Moshe

proof do you have that I have this email and I didn't produce it to you?

Q.    That's not what I asked.

My question is -- first of all, did you produce the email?

A.    Every single email I had was produced to you.

Q.    Did you produce 427?

A.    I don't know.  You are telling me I didn't.

Q.    I'm asking you for your explanation as to why you didn't?

A.    The only reason I would not produce to you this email is because I do not have it.  You've made an allegation that Yahoo said that I had it a certain date and later, I didn't have it.  What proof do you have for that?

Q.    I don't want to get in an argument with you.

A.    I don't want to get argument, but there has been a lot of allegation that you guys made that makes no sense.

I would like to really resolve this


MAGNA
LEGAL SERVICES

Y. Moshe

and give you what you need, but you can't

allege that I'm hiding something from you.

That's what you are going to do now.

Q.   All I'm asking you for now, sir, is

what is your -- I'm giving you a chance to --

A.   Thank you, I appreciate it.

Q.   I'm giving you a chance to give

your explanation for why you didn't produce

it, whatever that explanation is.

I don't want to argue with you.

What I want to know is what is your

explanation for why you did not produce 427?

A.   Mr. Marks, I've given you

everything we have and if it was not

produced, I do not have it.

Q.   Okay.  And I assume that's the same

explanation that you would give for any other

emails that are on Exhibit 423 that you have

not produced?

A.   Correct.

Q.   And you have no other explanation

that you would like to provide at this time

for why you are unable to produce those

emails?



Page 156

A.    Correct.

          MR. MARKS:  We are done.

          MR. LEGHORN:  I have nothing.

          MR. ROBERTS:  I have no questions.

          THE VIDEOGRAPHER:  This concludes today's deposition.  The time is 1:35 p.m.

          (Time noted:  1:35 p.m.)



Page 157

YAN MOSHE                                      PAGE

    By Mr. Marks                               4


                   - - -

              E X H I B I T

                   - - -

DEPOSITION EXHIBIT                             PAGE

Exhibit 417 Documents bearing Bates    11

    Stamp No. Yahoo 039704 through

    Yahoo 039705

Exhibit 418 Document from Jennifer     48

    Strong of The Russell Friedman

    Law Group

Exhibit 419 Plaintiff's first set      61

    of document requests to defendant,

    Yan Moshe, dated April 1, 2022

Exhibit 420 Order of the court         66

Exhibit 421 Letter filed by Yan        72

    Moshe's lawyers with the court

Exhibit 422 Documents                  103



Page 158

                        - - -

                  E X H I B I T

                        - - -

DEPOSITION EXHIBIT                              PAGE

Exhibit 423 Defendant's second set        105

    of document requests to defendant,

    Yan Moshe

Exhibit 424 Plaintiff's third set of      111

    document requests to defendant,

    Yan Moshe

Exhibit 425 Letter from Yan Moshe's       114

    attorneys dated August 18, 2025

Exhibit 426 Yan Moshe's affirmation       133

Exhibit 427 Email chain                   152



Page 159

- - -

DEPOSITION SUPPORT INDEX

- - -

Request for Production of Documents

| Page | Line | Page | Line | Page | Line |
|------|------|------|------|------|------|
| 57   | 11   |      |      |      |      |

- - -

Stipulations

| Page | Line | Page | Line | Page | Line |
|------|------|------|------|------|------|
| None |      |      |      |      |      |

- - -

Questions Marked

| Page | Line | Page | Line | Page | Line |
|------|------|------|------|------|------|
| None |      |      |      |      |      |

- - -

To Be Filled In

| Page | Line | Page | Line | Page | Line |
|------|------|------|------|------|------|
| None |      |      |      |      |      |

- - -



Page 160

CERTIFICATE

I HEREBY CERTIFY that the witness, YAN MOSHE, was duly sworn by me and that the deposition is a true record of the testimony given by the witness.

*Leslie Fagin*
_____
Leslie Fagin,
Registered Professional Reporter
Dated: January 6, 2026

(The foregoing certification of this transcript does not apply to any reproduction of the same by any means, unless under the direct control and/or supervision of the certifying reporter.)



Page 161

ACKNOWLEDGMENT OF DEPONENT

I, _____, do hereby certify that I have read the foregoing pages, and that the same is a correct transcription of the answers given by me to the questions therein propounded, except for the corrections or changes in form or substance, if any, noted in the attached Errata Sheet.


YAN MOSHE                          DATE


Subscribed and sworn
to before me this
    day of _____, 2026.

My commission expires:

Notary Public



```
           - - - - - -

         E  R  R  A  T  A

           - - - - - -

PAGE   LINE   CHANGE
```



# Magna
## Key Contacts

Schedule a Deposition:

Scheduling@MagnaLS.com | 866-624-6221

Order a Transcript:

CustomerService@MagnaLS.com | 866-624-6221

General Billing Inquiries:

ARTeam@MagnaLS.com | 866-624-6221

Scheduling Operations Manager:

Patricia Gondor (E: PGondor@MagnaLS.com | C: 215-221-9566)

Customer Care:

Cari Hartley (E: CHartley@MagnaLS.com | C: 843-814-0841)

Director of Production Services:

Ron Hickman (E:RHickman@MagnaLS.com | C: 215-982-0810)

National Director of Discovery Support Services:

Carmella Mazza (E: CMazza@MagnaLS.com | C: 856-495-1920)

Billing Manager:

Maria Capetola (E: MCapetola@MagnaLS.com | C: 215-292-9603)

Director of Sales Operations:

Kristina Moukina (E: KMoukina@MagnaLS.com | C: 215-796-5028)



| A |
|---|

**abatement**
82:5
**able**
23:19 64:6 108:14
109:11
**about**
4:25 6:20 14:23
15:12 21:22 23:9
29:14,20 34:5 39:17
40:10,22 46:19
47:22,23 49:25
54:23 56:15 60:8
61:19 62:16 64:7
68:21 69:10,13,14
71:10,12 75:12 76:3
76:6 77:23 79:15
81:12 83:4,22 92:5
95:15 96:8,10 98:8
98:10,15,21 99:2,11
104:2 106:9 112:3
114:17 120:20
135:25 137:18
142:17 143:19
144:7,15,24 148:4
150:13 152:16,22
**above**
1:15 101:3
**above-referenced**
48:24
**accept**
48:25
**access**
10:15
**accessed**
10:21
**accessible**
123:21 124:21 125:3
125:10 147:10
**accessing**
11:3
**accordance**
23:17
**according**
106:22,25 125:10

126:13 144:17
**accordingly**
136:16
**accounts**
31:16 33:14,17 34:3
99:12 104:11
138:12 141:5
142:11
**ACKNOWLEDG...**
161:2
**across**
131:14 150:22
**act**
54:2,4,4
**action**
75:4 97:10 102:7
117:14
**active**
124:6
**activities**
19:4,8,11,15,19,23
20:3,7,11,14,19,22
21:11,15
**actually**
59:21 119:15
**added**
60:13 93:21,23 145:6
**addition**
74:14
**address**
12:23 13:3,5,7,10,20
13:24 16:19,20 17:3
17:4,15 18:5,11,14
18:18,22 32:13,14
127:4
**addresses**
17:21,25 18:6 118:7
120:16
**adopted**
36:14
**advanced**
30:20 91:8 127:4,5,6
**advice**
27:23 42:7 51:14,20
51:22 52:4 60:15
99:24

**advised**
11:15 28:19 42:18
50:24 51:25 56:17
74:8 124:19,25
**affidavit**
145:3
**affirmation**
133:20,24,25 158:14
**affirmative**
36:14
**afield**
25:14 28:12 77:10
**after**
15:23 44:10,18 55:5
55:10,19,22 58:10
63:19 68:11,14,15
70:15 71:15 72:2
75:23 76:9 80:4,16
94:6,14 98:11
104:14,18,22
111:11 143:19
**again**
29:17 34:5 45:16
51:17 58:20 65:14
80:3 81:8,16 90:15
102:25 110:20,24
140:19 149:17
**against**
1:7
**ago**
140:9
**agree**
4:24 5:19,23,25 6:2,8
6:16 46:25
**Agreed**
5:20
**ahead**
12:15 24:21 101:23
101:25 145:25
**al**
1:5,8 3:8
**Alkies**
30:13 89:7
**all**
3:9 5:8 7:11 12:23
17:19 21:19 30:15

35:23 42:9 49:7
52:18 59:9 63:12
64:4 67:20 68:4
69:8 70:6,23 73:19
73:20,22 76:11
79:19 81:15 89:18
104:13 107:16
108:13 115:10
116:22,23 117:8,24
118:6,6,7 119:14
120:15 125:15
127:2,21 128:12
129:21 132:7
137:10 141:13,14
145:5,6 146:19
148:20 152:12,17
154:5 155:5
**allegation**
154:16,23
**allegations**
39:24
**allege**
155:3
**alleged**
39:25
**alleging**
147:24
**allow**
25:10,12 78:2 79:17
**allowed**
8:19 55:20
**Alon**
30:7 86:21
**along**
115:11
**already**
24:23 28:4 41:16
44:6 118:5 124:4
133:10 135:7,9
**also**
2:20 36:20 39:8
112:11,15 124:13
**always**
7:20
**am**
18:20 25:19 36:18



70:9 71:12 133:7
**amended**
60:12
**American**
39:13,18,21 42:11,15
43:8,14 44:11 45:20
**among**
39:24 61:23,24 62:5
62:18 63:15 72:19
78:15 97:12
**amount**
69:3 77:7
**analyze**
149:19
**ANAM**
2:11
**and/or**
160:12
**anesthesia**
121:24 122:14
**another**
18:17 21:22 24:10
141:5
**answer**
5:17 6:7,15 15:15
24:10,16,17,21
25:11,13,18,21 26:3
26:9,10,18 27:10,15
28:16,18 30:23 31:3
31:13 40:5,24 41:9
41:18 42:8 46:9
53:14,21 54:6 59:2
60:22 77:20 78:20
79:18 80:2,3,10,21
80:23 81:6 99:9,19
99:20,22 102:20
103:12 118:11
147:20 148:5,11,19
149:20,21
**answered**
5:21 24:23,24 29:3
40:23 41:16 53:15
68:6 96:19 148:22
**answering**
5:10 6:5,5,6 20:25
27:20 40:8 41:13

53:24
**answers**
5:15 54:21 161:4
**Anthony**
2:17 30:20 91:12
**Anticipating**
28:20
**anybody**
15:25 109:16
**anymore**
50:13 151:22
**anyone**
7:24 8:3 9:2 15:22
58:3 64:16,22 65:5
65:11,15 66:2 70:14
70:16 71:14,24 72:9
80:6,7 105:5 109:5
109:18 110:2,15,19
113:10 137:25
141:8
**anything**
14:23 36:4 42:24
44:23 45:7 46:13
48:2,7,9 49:25
50:18 54:21 57:21
58:4 63:19,21 64:14
64:17,19,22 65:6,12
65:16 66:3 68:10,11
70:15,16 71:15,25
77:4 80:18 95:5
104:22 105:6
112:18 113:5,8
147:2,4,8
**anywhere**
42:23
**apparent**
75:14
**appear**
22:22,23 24:3
**APPEARANCES**
2:2
**appears**
75:8 151:4 152:12,15
152:20
**application**
23:22 31:5

**apply**
41:18 160:11
**appointment**
126:21 127:3,11
128:18
**appointments**
107:10,11,14 129:7
**appreciate**
12:12 23:6 155:7
**appropriate**
27:12 28:14 31:8
136:14
**appropriately**
12:14
**approximately**
9:24 33:12 58:10
106:18 116:17
117:4
**April**
61:12,17 62:17 63:19
64:7,16,24 65:12,12
65:16 109:16,20
110:4 134:21
157:21
**argue**
69:10 155:11
**argument**
53:10 69:22 154:20
154:22
**Ariel**
30:9 87:15
**arose**
41:24
**around**
53:7 62:6 136:10
**arrangements**
74:10
**arrived**
58:18
**as**
4:2,4,15,21,23 6:19
8:18,18 11:19 12:2
12:18 14:8 15:3,8
15:25 16:8 17:13,15
22:8 23:23 25:4
28:19 30:2 32:18

33:19 34:2 35:4,4
48:16,18,25 49:13
49:16,20,24 58:18
59:21 61:13,14 66:6
66:9 67:15,15 72:13
72:15 76:25 81:2
95:25 99:16 100:18
103:19,21 104:12
105:13,14 106:24
109:24,25 111:9,19
111:20 115:2,4,13
116:12,15 117:3,5
119:6 121:19 125:8
126:17 131:20
133:21,22 139:10
141:10,10,14
144:18 145:2,22
147:9,13 149:4
150:9,10,22 151:8
151:16,16,18,19
152:7,10 154:13
**ascertain**
66:20
**aside**
125:19
**ask**
5:14 6:3,13,16 24:5
25:2 28:5,20 29:16
38:21 40:9 47:2
51:2 58:20 65:13
69:21,24,25 70:3
71:2 77:24 79:11,15
79:17 81:7 83:25
101:21 102:25
136:25 147:17
**asked**
10:2 28:4 40:22 63:4
63:9,11,16 72:10
79:13 83:23 131:18
142:19 148:20
153:12 154:4
**asking**
5:9 21:6,25 23:9 37:8
50:24 59:11 101:10
135:11,11 153:3,10
154:12 155:5



**assert**
50:23 109:15
**asserting**
53:8
**assistant**
130:21
**assume**
5:21 6:4 47:12,21
155:17
**assuming**
37:7
**assumption**
46:21
**attached**
67:15 125:8 161:6
**attachment**
16:4 52:21 105:22
131:3
**attachments**
96:5
**attempted**
110:16 114:16
**attendant**
82:8
**attended**
117:23,24
**attention**
134:6 150:5,16
**attorney**
6:12 8:20 11:12,15
26:6 42:19 43:12,16
43:21 44:10 46:3
48:5 50:8,10 51:18
52:22 53:18,25
56:18 59:7 63:7
93:15 102:16 110:7
110:14,22 113:7
135:22 139:5 143:7
143:12
**attorneys**
2:4,9,15 11:10 15:19
16:4 57:21 58:3,8
62:25 75:16 93:20
114:25 115:7 132:9
138:20,24 141:10
141:17 143:3,10,25

158:13
**attorney's**
25:21,25 26:4,21
27:19,22 28:17
31:13 40:7 41:12
42:3 51:14 99:24
102:23 103:14
**August**
63:20 64:8,17,25
65:13,16 67:25
68:11,14,15 70:15
70:18 71:16 72:2,6
114:25 115:7,14
116:12,16 117:3
125:21 130:9
147:11 149:7 151:8
151:18 158:13
**author**
150:24
**authorized**
83:13
**automatically**
33:24
**AUTOMOBILE**
1:5
**available**
22:12,22 23:24
**Avenue**
27:3,6
**avoiding**
53:24
**aware**
11:4,12 15:11,23
16:10,13,15 37:22
37:25 38:7,11,15,20
38:24 39:3,5,8,10
40:15,18 45:9,13,14
46:17,22 49:11,21
61:18,21 62:16,20
62:24 63:3,6 65:11
67:24 68:3,20 70:14
70:16 71:14,24 72:9
75:18 104:17
105:21,24 106:8,17
109:18 111:12
112:6,14 118:22

**away**
44:22
**AZEEM**
2:11
**a.m**
1:15 3:5 29:9 82:16
82:19

---
**B**
---

**B**
94:12,16 157:10
158:3
**back**
16:6 21:16 29:8
35:21,21 54:5 56:24
59:2,17,20 70:13
71:4,6,21 80:3,13
81:4,5,7 82:18
94:24 97:4 103:8
121:7 134:16,18
149:17 150:2
**backup**
141:14
**bank**
73:7 74:4,14 75:20
100:11 142:11
**Barrera-Perez**
30:8 87:4
**base**
148:21
**based**
27:13 54:21 93:9
117:8 126:4 139:4
**basis**
27:11,14 66:23
109:15
**Bates**
11:17,24 12:4,5,8,10
16:8,9 157:13
**bathroom**
146:14
**be**
5:8,9 9:12 21:6,16
22:23 23:19 26:6
28:13 31:8,11 34:17
35:25 36:2,6,19

38:4,5 46:4 52:6,10
53:2 59:10 64:19,24
65:18 67:12 70:24
71:11 73:3 75:3
81:15 92:14,18 95:3
95:3,4 96:21 98:20
102:7 104:11
109:11 112:20
113:11 119:15,17
119:18,24,25 120:2
120:24,25 122:6,13
122:16,23 123:4,11
127:25 128:6
129:23 130:3,10,10
130:14 133:15
134:8,14,23 135:5
135:10,13 136:9
137:19,20,25
138:15 145:24
147:13 151:4
152:12,21 159:13
**bearing**
11:17 157:13
**became**
75:10 111:12
**because**
11:23 12:13 16:5
17:13 44:21 56:10
60:2,12 67:13 71:3
81:10 95:14 108:12
109:9,12 119:4
122:10 126:13,16
137:8,11 140:17
143:15 146:10
154:15
**become**
11:12
**been**
4:3,11 5:5 7:21 9:21
9:25 10:17 11:20,25
12:17 33:15 36:21
36:24,25 44:5 48:17
61:14 63:22 66:8
72:15 74:7 75:21
77:14 78:7,8,11
79:7 91:19 92:12



**97:7,8,9,10 98:9
99:2,7 100:4,16,22
103:21 105:14
111:20 115:11,18
115:18 116:3 117:5
118:13 123:15
133:22 135:23
136:2 145:17,21
146:10 148:20
150:12 152:6,21
154:23**
**before**
1:16 4:12 5:5,16,16
11:21 12:6 15:20
28:19 30:2 48:4
53:11 59:2 68:15
75:2 76:25 80:8
97:8 98:20 99:6
102:6,13 105:19
109:16 110:9
111:11,25 112:7
118:14 138:17
143:14,17 144:24
145:4 161:11
**begin**
3:25
**beginning**
133:5,14 134:18,22
**begins**
3:6 74:19 150:18
**behalf**
3:15,17 72:19 103:2
115:15
**being**
37:4 39:17,20 51:4
75:15 98:14 111:13
136:21 139:3,23
**belief**
47:9
**believe**
24:10 26:19,22 27:17
47:18 55:14 98:25
108:12 110:7
121:11
**belongs**
32:9

**Beshert**
30:10 88:2
**besides**
24:20
**best**
81:2
**between**
64:7,16,24 65:12,16
65:21 69:5 70:18
72:6 78:21,24
119:23 120:2
128:20
**big**
26:10
**Billing**
30:17 90:6
**birth**
13:13
**birthday**
13:15
**bit**
74:19 83:25
**block**
121:25
**blood**
139:16,19
**body**
119:18 124:17
130:23,25 131:2
**booked**
128:23,25
**books**
107:12
**borne**
69:8
**both**
68:20 95:3 113:18
114:3,11 129:5
140:14
**bottom**
106:15
**bought**
108:9
**box**
107:6 113:4 124:14
**Brach**

2:15 3:18 131:11
**break**
6:11,14 82:14
**bring**
68:24
**Broadway**
27:5
**Brooklyn**
19:21 84:25
**Brooksville**
12:25
**bubble**
149:14
**building**
83:5 94:18,21 95:4
146:8
**buildings**
98:5
**Burak**
30:16 90:2 146:12
**business**
17:13,14,18,22 18:2
18:4,5,8,13,18
19:11,15,19,23 20:3
20:7,11,14,19,22
21:17 32:23 33:23
76:17 81:25 83:24
92:4 94:17 103:2
139:22 140:2
**businesses**
21:23 36:24
**but**
5:5,23 6:13 9:9,10
10:5 11:12 17:12,19
18:15 21:4,17 23:2
24:20 25:23 27:17
31:3 36:18 39:21
41:2 45:4 53:6,12
53:20 54:2,18 56:5
65:5 70:2 71:11,12
74:6 96:9,22 99:13
99:18 100:15
106:12 107:4,16,23
109:24 111:10
116:22 119:3,10
120:7 122:9 124:5

125:12,15 126:20
131:2 132:10,22
134:17 136:10
138:14 140:18
142:7 143:6 144:25
147:8,21 154:22
155:2
**buy**
132:17
**by**
2:6,13,17 4:3,6 12:19
21:15 26:7 31:6
39:18,20 42:19 44:9
44:14 48:22 49:2
53:25 56:18 57:20
58:3,8 65:2,3,8,9,24
67:23 68:5 69:2
70:5 72:12,17 74:7
74:12,20,24,25 75:3
75:16,21,22 76:22
77:13 82:20 96:3,13
96:14,15,16 97:10
100:16 101:2,5
102:3,5,7 103:5,25
106:19 107:21
117:5 121:9 130:4
132:18 137:19
139:3,16,19 147:9
149:5 150:4 157:7
157:23 160:4,5,11
161:4

---

**C**

**calendar**
117:24 119:18
120:17 121:13,16
121:21 122:17,18
126:2 127:12,14,19
127:22 128:2,5,6,9
128:15,16,18,21
129:3,5,8,9,15,18
129:22,23 130:7,10
130:12,22 131:22
133:15
**calendars**
129:20 133:2,13



147:8
**call**
38:18 101:17 131:19
143:3
**called**
4:2 71:8,10
**came**
17:20 47:13 59:7
95:17,18 134:15
143:17,22
**can**
4:24 8:12 12:9 15:15
24:6,10,15,15,17,21
25:3 26:23 38:12,20
39:2,6,8 41:5 53:9
53:10,11 56:25 57:4
57:5 60:16 69:24,25
81:2,7 82:10,14
83:13 90:14 94:23
100:8,9 101:14,14
103:7 109:25
119:21,22 120:6,7,7
120:10,24 126:4,22
126:23,24 127:2
130:18 132:6
136:23 141:12
142:19,23 149:12
151:21 153:15
**cannot**
109:22,24 120:4
**can't**
46:25 126:16 155:2
**card**
17:14
**CARDOZA**
2:6
**Care**
2:11 20:20 24:14
139:13
**Carol**
104:4
**case**
1:7 11:4 31:11 41:22
41:24 44:21 45:4,10
45:21 46:17,18,19
52:5,7,18 55:8,9

56:2,6 57:11 58:11
66:10 68:21,25 69:9
81:22 82:12,13
83:17 90:4 93:11
94:5 110:5 133:24
134:19 136:9,22
137:5,24 138:6,7,13
138:14,18 142:10
145:13 146:22,23
149:16
**categories**
54:15 57:14
**CDI**
30:14 89:14
**cell**
10:23 14:5,7,8
**center**
20:5 33:4 84:13,17
85:5 86:4 122:2
128:17
**centers**
2:16 18:9,12
**Center.com**
33:3
**certain**
22:21 23:4,23 51:11
154:17
**certainly**
6:13 53:9,10,11
**CERTIFICATE**
160:2
**certification**
160:10
**certify**
160:3 161:3
**certifying**
160:12
**chain**
35:20,25 36:3 152:10
158:15
**Chambers**
30:21 91:15
**chance**
10:18 34:25 155:6,8
**change**
44:16 45:21,22 46:12

142:19,23 143:5
162:3
**changed**
34:24 60:14
**changes**
161:5
**characterization**
95:6
**charge**
7:14 69:20
**chase**
26:23
**cheat**
59:19
**choice**
25:22,23
**Chris**
12:3 83:12 150:17
**Christopher**
2:6 3:14 104:4
**circles**
80:11
**circumstances**
22:11 35:11 41:3
145:21,23 146:5,6,7
**Citimed**
2:10,10,11 3:20,21
20:4,15,19,23 21:15
24:14 28:2,2 85:4
85:15,19,23 86:3
92:10,11 120:12,13
120:14 146:10,17
150:24
**Citimedical**
2:10 20:12 21:11
22:4 40:2 85:12
**CITMEDICAL**
2:10
**civil**
39:6
**clarification**
71:19 136:24
**clarify**
83:15 100:5
**clause**
134:10

**clear**
12:14 23:9 27:24
28:21 29:21 30:24
31:7 46:10 65:14
81:24 95:14 100:2
107:18 115:8 145:8
**clearer**
135:10
**clearly**
41:18
**click**
130:21,23
**client's**
74:16
**close**
131:17
**closed**
36:5,7,15,18 45:4
**collect**
63:20 64:12,13,14,17
64:19 65:21 70:17
72:5 110:16 112:18
136:15,21
**collected**
111:8 115:10
**collecting**
137:2
**collection**
114:21 115:9
**Columbus**
48:23
**come**
24:9 43:4 69:15
70:13 71:4 132:8,23
133:4
**comes**
58:22 59:14,22 122:3
**coming**
61:3 121:17 126:20
**commencing**
1:15
**comment**
109:22
**commingling**
141:15
**commission**



161:12
**Commonly**
40:25
**communicate**
76:20
**communicated**
138:20
**communicating**
44:4 59:24
**communication**
16:6 18:16 44:9 46:4
51:16,18 52:25 57:3
59:4 68:23 69:5
76:11 79:15 80:6
116:23 123:8
124:11 125:13,24
126:3 148:6 150:23
**communications**
11:9,11 22:25 43:22
61:22,23,24 62:11
62:19 79:13 112:8
123:5 124:25 125:5
125:7 126:15,17
131:20 149:5
150:10,11
**companies**
21:2 74:17 92:10
**company**
21:3,5 39:14
**competitor**
137:14
**complaint**
45:9,12,14 49:5 52:9
59:5 60:9,12 144:12
144:21 145:6,9
146:21
**complete**
2:10 6:15 20:20
24:14 30:13 67:21
85:20 89:3
**compliant**
69:3
**Comprehensive**
30:20 91:9
**computer**
120:6

**concern**
4:15 23:13
**concerned**
71:11 140:16 151:17
**concerning**
22:10 75:19 79:24
81:19 82:22 83:2,8
83:9,19 84:6,8,12
84:16,20,24 85:4,8
85:12,15,19,23 86:3
86:14,17,21,24 87:3
87:7,15,19,23 88:2
88:5,8,11,14,17,21
88:24 89:3,7,10,14
89:18,22 90:2,6,9
90:13,19,23 91:2,5
91:8,12,15,18 97:15
97:24 98:10 146:20
**concerns**
77:22
**concludes**
156:6
**conclusion**
132:23 133:4
**Concourse**
25:6 72:21 79:5,25
81:19 98:10 102:10
103:2
**conduct**
10:19 76:17 83:24
102:25 136:20
**conducts**
38:8
**confer**
67:11
**conference**
128:22 143:3
**conferences**
117:23
**confirm**
66:24
**confirmation**
107:4,10,13 118:2
119:14
**confirmations**
117:16,22

**confused**
149:2
**connection**
38:16 49:13 110:4
142:4
**consent**
49:2
**consider**
71:7 118:15
**considered**
56:20
**construction**
74:11 75:20 76:21
92:3
**consult**
6:12 58:17,21 60:5
141:8
**Consultants**
30:19 90:20
**consulted**
94:6
**contain**
27:25
**contained**
79:8
**contains**
107:20 137:8
**contemplation**
24:3
**Contemporary**
30:14 89:10
**content**
23:25 25:15 28:9
122:9,13
**continue**
55:6,12,17,22
**continued**
54:15,18
**control**
115:24 116:8 160:12
**conversation**
93:13,14 97:5 143:9
143:11,18,20,24
**conversations**
144:6
**Cook**

2:6 3:14,14 12:10
16:7 73:24 74:8,20
74:24 101:3 102:4
104:4 120:10
**copy**
58:13 138:2 141:13
**Corp**
30:10 88:2
**correct**
8:17 10:8,9,19,20
18:20 32:25 36:22
36:23 37:2,3 39:15
43:6,7,23,24 44:3
44:11,12,14,15 45:8
49:14,19,22,23
52:23 56:17,21,22
63:17 65:4 91:23
92:21,22 93:8,16
97:17 98:2,12 100:4
106:6 108:2 114:6,7
114:14,15,18,19,22
114:23 115:19,20
116:4,9,10,13,14
119:17 123:11
125:22 126:19
129:14 130:2,5,12
130:13,16 134:4
136:17 139:5,6
140:6,21 144:20,22
144:23 145:10,11
145:15,19 146:2,5,6
146:25 155:21
156:2 161:4
**corrections**
161:5
**correctly**
21:2
**correspond**
152:15
**correspondence**
48:25
**corresponds**
129:24
**could**
4:8 56:20 75:2 97:9
98:20 99:6 102:6



122:23 123:4
129:20

**couldn't**
56:21 57:8 109:11
114:11 132:16

**counsel**
3:9 65:10 68:20 69:5
77:13 94:7 95:19,20
95:25 96:4 136:15

**course**
6:10 17:5,8 26:2
40:17 46:12 70:25
117:14

**court**
1:2,16 3:23 23:22
31:5,7 39:14 48:21
53:12 66:6,10 67:5
67:16,19 68:3,24
71:9,16 72:13,18
76:2 100:3 101:18
102:17 132:18
157:22,24

**court's**
22:17 24:2 67:24

**co-defendants**
74:16

**create**
149:14

**created**
33:23 96:3,14,16
127:8,10,11,24
128:5

**creation**
96:13

**criminal**
38:8,17 39:9 52:9

**currently**
7:7 13:5 18:20 116:6

**custody**
115:24 116:8

**cut**
26:23

---

**D**

**D**
157:3

**data**
106:19 107:20
109:12 120:12,13
120:14 149:19

**date**
1:16 3:4 11:19 13:13
14:15 15:8 16:17,18
16:25 17:2 24:10
39:22 45:16 48:16
58:7 61:13 66:7
72:14 97:18,19 98:3
103:20 105:13
111:15,19 115:3
126:16 133:21
134:17 135:17
152:11 154:17
161:8

**dated**
61:11,17 114:25
115:7 152:13
157:21 158:13
160:7

**dates**
67:18

**day**
61:4 81:16 161:11

**days**
114:10

**deadlines**
68:24

**dealing**
36:8

**dealt**
141:18

**December**
39:12,18

**decide**
24:6 35:12 52:11,16
56:7 82:3 91:24

**decided**
56:23

**decision**
56:14 58:18,23,25
59:22 82:10 93:3,5
93:6,7,23 138:17,19
138:19 139:2 141:2

141:3,6,7,9 145:23

**decisions**
146:4

**defendant**
22:8 61:11,16 67:20
105:12,17 111:18
111:23 157:20
158:7,10

**defendants**
1:9 2:9,15 3:21 43:10
48:22 49:2 56:12
66:14,18,24,25 67:5
67:10,17 72:19
76:11 80:19 83:16
118:6 124:12
146:17

**defendant's**
105:11,16 158:6

**deficiency**
67:16

**deficient**
66:17

**defined**
100:18

**defines**
61:23 112:7,11

**defining**
100:25

**definitely**
98:3 109:4 131:10

**definition**
61:21

**delete**
34:17,18 35:2,5,9,15
35:23 36:3,12,16,17
36:19 43:5,22 50:4
50:17,19 52:4,12,16
52:17 54:16,19 55:6
55:12,18,20,22 56:3
56:8,9,15,16,20,21
57:2,2,3,4,5,5,9
58:19,19,23 59:6
60:2 78:20,24,25
80:6,9,17,22 81:18
124:4,8 126:12

**deleted**

42:25 43:2 44:6
54:21 56:5 74:25
76:9 92:8,15 97:8
101:5,7 102:5,18
117:13 144:10
145:25 148:3

**deletes**
35:23,25

**deleting**
34:15 43:4 44:2,8
50:5,6 51:9,11
57:19 65:2,3,24
104:25 105:8

**deletion**
58:2

**demonstration**
69:18

**department**
108:8,10 132:14,15

**DEPONENT**
161:2

**depose**
42:2

**deposed**
4:11 5:5

**deposition**
1:13 3:6 4:14,20 6:11
11:16 12:2,18 21:22
22:10 23:16,18
27:16,18,22 28:9,15
29:22 30:25 31:4,9
41:22 48:13,18 61:9
61:15 63:23 65:19
66:5,9 72:11,16
77:9 103:18,22
105:10,15 108:6
111:16 112:20,24
114:24 115:5
116:20 119:20
125:2 133:19,23
134:23,23 136:4
147:5 150:13 152:7
152:9,22 153:11
156:7 157:12 158:5
159:3 160:4

**describe**



75:8
**described**
74:20,23 75:15 101:2
102:3
**describing**
66:12
**deserve**
149:15
**design**
17:14
**designated**
44:9
**Despite**
145:20
**destroy**
39:2 79:7,20,23
82:21,25 83:8,18
84:5,7,11,15,19,23
85:3,7,11,14,18,22
86:2,6,10,13,16,20
86:23 87:2,6,12,14
87:18,22,25 88:4,7
88:10,13,16,20,23
89:2,6,9,13,17,21
89:25 90:5,8,12,18
90:22,25 91:4,7,11
91:14,17 102:12
**destroyed**
75:9,22,23 77:14
78:5,7,9,11,13,16
91:20 97:7 98:2,15
98:19 99:2,7 100:4
100:6,22 118:13
**destruction**
75:15 76:4 79:16
98:7,8
**detail**
66:16 127:7
**details**
51:24 52:2 95:22
**determine**
67:3
**developing**
22:16
**Development**
27:4

**device**
11:3,3 64:3
**devices**
10:21,24 11:2
**Diagnostic**
30:14 89:11
**didn't**
28:5,11 34:25 35:2
42:23 46:13 47:3,4
47:21,23 48:9,12
50:4 56:9 61:5
73:14,20 79:15
91:25 108:8 120:25
122:12 133:4 137:9
138:5,7,14 141:15
141:19,21 153:12
153:24 154:3,11,13
154:18 155:9
**difference**
26:11 119:23,25
128:20
**different**
11:2 18:3 46:14 71:2
96:21 121:22,23
123:24 137:4,20,22
137:23
**differently**
21:7 51:3 84:2
**direct**
78:22 160:12
**directing**
134:6 150:5,16
**direction**
43:15,17,20 93:13
**directive**
105:2
**directly**
22:20
**director**
64:3 108:20 111:2
139:10,24
**disappeared**
126:10,11
**disclose**
11:8
**disclosed**

137:25
**discover**
99:11
**discovery**
31:9 63:2 66:12
68:25 69:2
**discuss**
23:12,21 24:13 25:6
26:15,25 93:17 94:2
**discussed**
105:3 132:2,4 138:24
145:4
**discusses**
22:4
**discussing**
27:25
**discussion**
75:10 95:24
**discussions**
74:14
**dispute**
124:22 125:4,11,12
144:10 145:2,10,14
145:18,22,25
**disputes**
66:12
**disputing**
125:14,17
**DISTRICT**
1:2,3
**divulging**
53:12
**document**
14:12,13 15:12,20
38:4 48:13 61:10,16
61:18 62:18 63:4,8
63:15,23 66:15 96:6
96:14,16 105:11,17
105:18,21 108:4,5
111:17,23,24 112:6
112:15 114:4,12,13
115:25 116:2,3,18
116:19 134:21
136:3 145:17
146:22 150:18
157:16,20 158:7,10

**documents**
11:16 37:5,11,12,16
37:21 38:13,24
40:20 46:18,23 48:5
62:5,6 66:21,24
67:9,21 68:5 103:18
112:11 114:5
157:13,25 159:5
**does**
7:24 46:9,11 80:10
87:9 93:24,24 97:21
99:13 100:23 107:5
107:24 116:16
117:3 151:25
160:11
**doesn't**
24:3 53:14 63:12
78:10 80:12 81:10
82:4 94:21 95:5
101:6 107:2,16
116:13,20 151:13
151:13,22
**doing**
18:4 53:23 65:11
81:2 105:8 108:18
131:16 132:18
141:17
**dollars**
40:11
**Dolskey**
30:6 86:14
**done**
35:22 71:14,24 108:3
137:19 142:2,22
143:4 144:5 156:3
**doubt**
15:6
**down**
74:18 144:9
**download**
42:23
**Dr**
2:9,11 74:17
**duly**
4:3 160:4
**during**



4:20 6:10 31:17
45:22

**Dynamic**
19:5 84:13

**E**

**E**
4:2 157:3,10 158:3
162:2
**each**
5:7,18 18:3 29:25
33:23 67:7 129:12
**early**
150:13
**East**
26:15 27:6 72:21
82:23 102:10 103:3
**EASTERN**
1:3
**easy**
149:13
**Eichler**
2:15 3:18 131:12
**Eisenhower**
2:16
**either**
6:20 73:15 123:8
**electronic**
61:25 112:9 148:8
**element**
95:9
**else**
9:2 57:21 58:3 72:10
113:10 118:8 123:4
130:8 137:25
142:12
**else's**
129:9 130:11,11
**email'S**
122:17
**employed**
136:21 137:2,4
**employee**
21:5,18
**employees**
129:9 133:8

**end**
12:24 53:6
**engaged**
109:13 111:2 134:25
135:8 143:15
**enormous**
106:15
**enough**
78:18 103:10
**entered**
68:21
**entities**
22:24,25 23:10 26:25
28:6 73:8 74:5
83:23 91:19 92:21
100:19 102:17
108:13 136:22
146:20
**entity**
21:18 138:8 145:9,12
145:16,21
**erased**
147:24
**Errata**
161:6
**Escano**
30:13 88:24
**escaped**
77:7
**ESI**
104:12 115:9,10
**ESQUIRE**
2:6,6,7,13,17,18
**Essex**
27:7
**estate**
92:10
**Estevan**
30:11 88:11
**et**
1:5,8 3:8
**even**
25:15 28:11 124:5
126:13
**event**
122:20 127:9,9,10,10

127:25,25 128:6,6
128:14,21 129:6,24
**events**
117:23 128:5,12,13
128:15 129:17,19
133:2,14,15 147:7
**ever**
12:8 32:4 143:13
**every**
61:4,6 122:3,4 154:7
**Everybody**
74:2
**everyone**
48:11 107:12 117:25
129:9 133:7
**everything**
17:5 51:7,9 52:8
82:12 94:4 99:11
118:9 122:2 123:8
128:13 132:11,20
133:18 138:13
148:2 149:15
151:10 155:15
**exact**
16:8 18:14 119:2
134:17
**exactly**
9:11 15:19 45:2,15
54:9 69:15 94:3,5
106:12 108:24
110:10 113:16
137:18,21
**EXAMINATION**
4:6
**examine**
77:3
**examined**
4:4
**example**
59:25 119:21 120:13
122:14 127:15
128:11 130:20
**exceeds**
27:17 28:9
**Excel**
19:9 33:3,11 84:16

**except**
148:3 161:5
**exception**
3:21
**exchange**
120:16 144:3
**exchanged**
67:12
**excuse**
12:3 147:21
**exhibit**
11:16 12:2,18 48:13
48:18 61:9,15 63:24
64:20 65:19 66:5,9
72:11,16 103:18,22
105:10,15 108:6
111:16 112:20,24
114:24 115:5
116:20 125:2,8,9
128:5,13 129:19,25
132:25 133:19,23
136:5 147:4,5 150:6
150:6 151:23 152:7
152:9,22 153:7,11
155:19 157:12,13
157:16,19,22,23,25
158:5,6,9,12,14,15
**exist**
25:16 28:12 33:11
66:21,22,24 67:9,12
116:13 126:17
130:4,9 151:13,14
151:18
**existed**
118:18 151:14,16,22
**expanding**
22:23
**expected**
75:3 97:9 102:6
**Expert**
30:16 90:6
**expires**
161:12
**explain**
117:7 126:5 141:24
**explained**



147:25
**explanation**
 116:25 117:2 147:12
   148:7 149:4,13
   151:19 154:12
   155:9,10,13,18,22
**explore**
 23:19
**expressed**
 145:2
**expressly**
 50:24
**extend**
 68:24
**extension**
 49:3
**extensive**
 68:22 69:4 132:11
   133:6
**extent**
 24:18 44:8 69:7
   91:17,20 92:17 96:2
   96:11 107:19
   115:16 118:12
   127:8 128:4 129:16
   129:19 130:7
   131:25 138:4 147:2
   147:4,8

---

**F**

**facility**
 129:4
**fact**
 69:12 99:16 119:13
   121:13 126:12
   147:5 153:14
**facts**
 149:10,10
**Fagin**
 1:16 160:6
**failed**
 66:14 110:25 111:4
   113:14,20,23
**fair**
 51:2 78:16,18 95:6
**fairly**

141:11
**familiar**
 4:17 75:14
**family**
 137:16 138:11
   140:23
**family's**
 142:10
**far**
 28:12 44:20 77:10
   151:16
**Farm**
 1:5 3:7 56:2,11 81:22
   82:2,4
**Farm's**
 56:6
**Farous**
 8:14,16,21,25 9:13
   9:15 10:6,18 108:21
   108:22 136:13
   140:8
**February**
 14:18 44:13 104:2,7
   104:14,18,22
   111:13
**fee**
 7:14
**feel**
 80:11
**feeling**
 95:14
**fell**
 113:16
**few**
 5:4 9:10 29:18 48:11
   60:20 142:21
   143:22
**fight**
 95:15 96:8
**fighting**
 96:10
**figure**
 119:23 125:15
   131:22 132:16
   133:11
**figured**

132:3
**filed**
 37:20 38:2 40:15,19
   41:21 43:9 45:10,12
   46:16,23 47:9,14,16
   47:17,25 48:6,20
   51:5,8 55:5,11,19
   55:23 58:11 72:12
   72:17,18 94:15
   97:20 119:7 133:24
   144:22 157:23
**files**
 98:16
**filing**
 42:15 44:10,18
   144:11
**Filled**
 159:13
**filter**
 107:8
**financial**
 74:10
**find**
 64:6 76:8 77:18,19
   77:21 78:3,10,12
   95:16 108:3 113:5
   126:16
**fine**
 21:19 23:2 24:7 69:8
   69:25 70:5 81:8
   102:15
**finish**
 5:14,15,16 43:5 78:2
**finished**
 114:20
**firm**
 48:21 49:17 68:21
   78:6 137:10,13
**first**
 5:8 9:15 12:22 49:7
   61:10,16 66:20 70:8
   100:18,24 104:13
   109:5 110:15 111:7
   111:8 115:25 117:7
   118:12 134:10,15
   134:21 135:4,20,21

135:21 136:7
   147:16 148:20
   152:12,17 154:5
   157:19
**Fischer**
 2:9 3:20
**fit**
 25:4
**five**
 30:16 89:22 139:15
   140:9
**focus**
 77:8
**focused**
 55:3,4
**folder**
 107:8 123:24,25
   124:2,5
**folders**
 123:24
**follow**
 25:20 26:20 31:12
   35:13,16 42:6 80:8
   102:22 103:13
**followed**
 34:14,20 35:18 43:13
   43:16 45:4 46:7
   51:14,16,20,22 52:4
   53:22 54:8 94:10,12
   94:14 95:10 119:9
   119:11
**following**
 25:24 26:4,25 27:19
   28:17 29:12 30:5
   40:7 41:12 42:3,14
   42:21 44:23 54:13
   71:9
**follows**
 4:5 22:8
**follow0up**
 118:10
**foregoing**
 160:10 161:3
**forgetting**
 125:19
**form**



**form**
 15:14 21:13 68:8
  147:15,18 148:12
  148:17 161:5
**formal**
 48:25
**forth**
 16:6 21:17 35:21,21
**forthwith**
 67:6
**forward**
 27:21 44:7 132:9
**forwarded**
 110:6,14,22 113:6
**found**
 110:21 113:6,8
  114:21
**foundation**
 22:15 24:20
**four**
 33:14 139:14 140:9
**frankly**
 24:2
**free**
 6:13
**Friday**
 122:3
**Friedman**
 48:15,20 49:8 157:17
**front**
 136:4
**full**
 12:23
**fully**
 66:14
**fundamental**
 147:22
**fundamentally**
 148:25
**further**
 67:2
**future**
 23:16 27:17 31:11
  35:12 140:20
**F-A-R-O-U-S**
 8:15

**G**

**game**
 78:17
**gave**
 59:9 92:23 93:20
  96:6 113:24 118:8
  125:24 127:17
  132:20 138:14,25
  141:17
**GC**
 59:8,8 94:3 95:18,21
  96:4,13,18,23,25
**Geico**
 44:14,16,19,24
**general**
 31:9 41:17 115:9
  117:24
**generally**
 39:23 40:22
**generated**
 121:18
**get**
 12:11 34:25 41:5,25
  48:12 50:11 55:2
  59:13,14 68:25
  69:20 77:20 95:15
  96:9 99:10 103:16
  110:25 114:5
  120:10,18,23
  125:17 138:5
  141:11 149:18
  154:20,22
**gets**
 78:14 107:12 117:25
  138:9,9
**getting**
 54:13 59:25 73:24
  131:17 142:8
  146:14
**give**
 12:9 63:12,14 77:2
  111:14 133:18
  142:13 149:12
  153:15 155:2,8,18
**given**

 31:5,6 54:6 149:14
  155:14 160:5 161:4
**gives**
 53:21 107:4
**giving**
 155:6,8
**Gladstein**
 30:7 86:18
**glass**
 120:11,23 131:11
  150:8
**glasses**
 120:4,8
**go**
 5:6 12:15 24:21 35:2
  36:16,17 56:24 59:2
  59:17,20 61:22 80:3
  99:13 101:23,25
  107:7 118:2 121:2
  122:16 124:15
  126:2 131:21
**goes**
 16:6 35:21 67:19
**going**
 4:14 5:8,9 21:16 22:6
  22:19 25:10,14,14
  25:20 26:20 27:21
  31:12 40:16 41:4
  44:7 46:17,23,24
  47:19 50:22 52:16
  56:8,15,16 57:16
  62:23 63:7,14 69:13
  69:16,18,21 70:4
  71:3 74:18 76:24
  77:25 79:14 80:11
  82:15 83:25 92:7
  93:5,23 96:8 99:22
  101:15,17 102:22
  103:13 119:25
  121:4 133:15
  134:16,18 137:19
  137:20 141:3,4
  149:17,23 155:4
**gold**
 60:3
**gone**

 77:9
**good**
 3:2 28:10 54:10
  73:23 74:2 103:17
  147:19
**got**
 43:15,20 44:10,20
  48:4,11 59:19 60:20
  64:3 80:16 82:12
  111:4 113:25 114:2
  118:5,6 124:11
  126:24,25,25 131:5
  132:5 134:24 138:4
  149:16
**gotten**
 58:24 92:18
**government**
 38:7,12,16
**grandma**
 61:5
**Green**
 27:3
**Greenbills**
 30:19 90:23
**ground**
 5:4 24:8
**Group**
 30:15 48:15,20 49:8
  89:15 157:18
**guess**
 6:3 10:2,3 24:11
  58:12 119:19
**Gun**
 26:15 72:21 82:23
  102:10 103:3
**guy**
 143:15
**guys**
 18:15 52:13 96:17
  126:22 149:15
  154:24

**H**

**H**
 4:2 157:10 158:3
**Hackensack**


MAGNA
LEGAL SERVICES

19:2 84:9
**had**
7:20 8:4,7,22 9:2
10:7,15,18,25 11:9
11:11 15:24 18:4,7
18:9,10,12,15,16,17
31:17 33:6,16 34:7
34:13 40:19 43:3
45:24 52:18 56:5,19
57:7 58:24 62:17,25
75:21 79:13 83:24
92:18 93:14 100:4
102:18 107:10
111:3 118:13,14,16
118:23 119:8,11
123:13,15 129:19
131:20 132:14,17
143:9,18,20,24
144:3,16,19 151:10
153:13 154:7,17
**handful**
59:23
**happen**
38:21
**happened**
47:15 98:11
**happening**
82:6 98:4 129:3,4
**happens**
35:19 122:2
**happy**
22:13 79:16 147:21
**Harry**
94:3 96:24
**has**
8:3,22 9:2 10:6,10,17
11:20,25 13:13,17
17:5 48:17 61:14
66:8 72:15 74:8
81:25 82:3,7,8
93:10 94:18 95:3
100:11 103:21
105:14 107:23
111:20 115:11,18
116:3 120:15,18
122:9 123:23 124:2

126:11 130:22
133:22 145:21
146:10,16 149:14
150:10 152:6
154:23
**hasn't**
92:12 126:9
**haven't**
24:24
**having**
4:3 71:14,24 99:2
140:17
**he**
8:18 9:9 24:10 27:23
29:3 40:23 41:16
51:25 53:13,20,21
53:22,23,24,25 54:2
54:3,4,6,6,8,20
55:14 57:14 68:6
69:14,14 73:14 76:5
78:10,10 79:2,4,5
81:6 94:4,6 96:19
97:7 98:16,20,25
99:12 100:5,7,8
111:2 139:10,13,14
142:22 143:4,5,15
143:17,22 144:5
**health**
30:18,18 90:13,16,19
142:10,11
**HealthPlus**
19:16
**health-related**
140:23
**hear**
117:2
**hearing**
75:11 113:19
**held**
1:13 40:10 122:6
**help**
8:12 119:22 149:3
**her**
74:17
**here**
6:20 8:13 12:20 23:4

23:21 25:8 26:5,6
26:10,23 29:19
33:19 34:2 54:22,25
55:3 69:17 81:15
99:15 103:17
107:20 109:24,25
113:4 118:8 120:20
121:15 125:18
126:5 128:12
146:17
**hereby**
160:3 161:3
**He's**
53:15
**hiding**
118:4 155:3
**highly**
54:3
**Hill**
26:15 72:21 82:23
102:11 103:3
**him**
24:15 25:4,10,13,17
28:15 40:4,22,25
41:8 42:2 50:25
53:12,19 54:9 77:3
78:20 79:17 83:14
109:2,13 113:24
139:23 143:4
147:21
**himself**
23:17
**hire**
140:8,10
**hired**
49:17
**his**
8:10 9:4,10 10:18
22:11,24 41:18 42:6
50:24 51:20,22 52:4
53:18,25 54:5,21,23
65:9,20 77:16 78:6
108:23 113:14,21
114:14,16 138:21
140:3 141:16
**historically**

33:21
**Hold**
50:22 81:3 101:13
120:22 136:23
**holdings**
25:6 26:15 27:2,3,4,4
27:5,6,7,7,8 72:21
72:22,23,23 79:5,25
81:20 82:23 83:10
83:20 92:10 97:16
97:16,24,25 98:11
102:10,11,12,12
103:3,3,4,5
**hope**
20:25
**hospital**
2:16 18:10 19:25
32:24 97:2 122:3
**Hospital.com**
32:22
**host**
99:16
**house**
146:14
**how**
7:12 9:8 11:12 14:20
14:23 15:23,25
28:13 35:8 42:5
45:22 52:11 56:7
58:10 59:11 60:25
66:16 77:6,7 82:3
91:24 106:12 107:6
108:25 113:2
119:25 126:5
131:15 137:20,21
139:9,12 141:20,20
142:5,16 143:18
152:23,25,25 153:8
**however**
140:16
**Hudson**
2:16 18:23 19:24
32:22,24 96:25
127:5,17 139:23
140:4
**hundred**



110:21 111:8
**hundreds**
108:12

**I**

**iCloud**
29:19
**iCloud.com**
13:18,19 31:21,24
**idea**
61:3 75:25
**IDED**
150:18
**identification**
11:19 48:16 61:13
66:6 72:13 103:19
105:13 111:19
115:2 133:21
152:10
**identified**
16:8 31:16 43:21
46:3 67:13 106:10
106:14,18 108:4
116:18 117:5
119:13 121:12
130:4 131:20
145:22 147:9 149:5
150:10
**identifies**
104:10
**identify**
3:9 67:11 109:25,25
126:6 138:21
152:23 153:2
**if**
5:21,23 6:4,11,13,16
12:9 15:9 21:25
23:11 24:15 26:5
28:12 35:9,13 36:5
36:15,18 38:24
43:10 44:4 45:2
46:4,6 54:5 59:19
59:25 60:11,15 62:4
62:10 66:21,23
69:12 70:4,12 77:25
78:10 79:13,16 92:3

93:3,4 94:12,21
110:13 113:6,8,18
116:11 117:10
118:4,15 119:3,10
120:5,23 127:9,24
128:11,12,13
129:15 131:6
140:17 145:8,12,16
145:21 148:5
151:13,14 152:4
155:15 161:6
**Imaging**
30:14 48:23
**implemented**
111:5
**important**
122:13,19
**improper**
70:2 148:11
**Inc**
2:11 30:15,16 89:19
**include**
39:6,9 46:24 47:4
97:14 112:8,15
116:16,20 117:4
121:24
**included**
39:24 61:24 62:5
68:23 130:8
**includes**
37:17 62:7 106:9
112:12
**including**
74:16
**incorrect**
149:2
**INDEX**
159:3
**indicated**
49:12
**indicates**
14:15 67:17
**individual**
129:13
**individuals**
29:13 30:6 53:3 59:5

91:18
**influence**
141:16,20,22
**inform**
15:25
**information**
21:4 123:20 137:9,11
137:12,24 138:3,5,9
138:9,15 140:22,25
142:8
**initial**
113:20
**initially**
110:20 113:13 114:5
132:5
**instance**
110:2
**instances**
148:4
**Institute**
30:17 90:10
**instruct**
25:4 28:15 30:23
78:19 103:12
**instructed**
53:19 57:15 136:13
**instructing**
25:17 26:17 27:10
31:2 40:4 41:8
**instruction**
25:21 26:21 27:20
28:18 40:8 41:13
50:11,14,17 53:13
53:22 54:7,14 58:14
58:17,24 93:12
102:23 103:14
118:14
**instructions**
25:25 26:4 31:13
42:4 58:21 138:25
139:4 142:14
**Insurance**
1:5 39:13,19
**Integrated**
19:12 84:20
**intend**

17:25
**intended**
17:22 18:7,13,18
**intent**
17:17
**interjecting**
70:10
**interpretation**
101:24
**interrogatories**
66:15 67:23
**interrupt**
101:11
**interruption**
12:16
**into**
22:23 28:24 29:11
122:16,18 138:5,7
**investigation**
67:3
**investigations**
38:9,17
**invite**
119:24 120:2 121:21
129:22,23 130:8,10
**invited**
129:20
**invites**
121:13,16 124:18
129:16 131:23
**involve**
74:15
**involved**
36:22,25,25 37:4
108:18,25 113:10
118:19,25 129:17
**involving**
79:9
**iPad**
10:23
**iPhone**
127:23
**irrelevant**
92:7,16
**Isaias**
30:8 87:3



**isn't**
24:2
**issuance**
75:4 97:11 102:8
**issue**
36:5,6,7,8,9,15 38:12
93:10 99:14 144:5,7
147:22
**issued**
61:6 67:25 112:4
135:23 136:2
145:13 146:22,23
**issues**
38:16 92:9,13 98:4
142:10,11
**item**
36:10 67:8 126:19
**items**
118:13 134:9,14
135:13 136:16
142:9
**its**
7:21 14:24 61:21
112:16
**it's**
23:2 31:22 36:7,18
53:6 58:15 60:4
65:14 69:8,12 71:8
71:10,20,20 73:14
79:3,6 92:7 94:20
94:21 97:22 99:19
107:16 109:3
113:23 117:10,17
120:17 122:4,10,10
122:12,18,20
125:13,18 126:2,3
126:13,19,20,20,21
127:3 128:18,24
129:22 130:24
131:2,3 137:11
138:2,12 145:5
148:11,12,20,21
149:13
**I'm**
5:8 9:11 11:25 12:17
20:25 21:4,18,25

22:6,13 23:2,3,9
24:7 26:5,7 27:9,13
27:14 29:21,23 31:2
37:8 40:24 41:2
42:5 45:14 48:17
50:22 53:8 55:4
58:15 59:11,18,24
59:25 60:20 61:4
64:7 66:8 69:21
73:20,24 74:18 76:7
76:24 77:21 79:16
81:2 83:12,25 93:5
93:23 101:10,15,21
103:17 110:13,20
113:19 115:4 117:9
118:4 120:24
122:18 123:18
124:9 125:14,15,17
135:10,11 136:2
147:21 149:3 150:5
151:23 153:3,10,13
153:25 154:12
155:3,5,6,8
**I've**
33:15 91:19 155:14

---

### J

**January**
1:15 3:4 160:7
**Jelani**
30:10 87:23
**Jennifer**
48:14,19 157:16
**JEREMY**
2:21
**Jersey**
2:17
**John**
30:19 91:2
**Jonathan**
2:7 3:12 135:2,8
136:14 137:19
139:4,7,20 140:3,10
142:4,13,17 143:13
143:14,21,21
**judge**

149:14
**Juliano**
2:17 104:5
**July**
13:14
**junk**
107:7,8,9 123:24,25
124:3,5,14
**just**
5:5 21:24 23:3,8 24:8
24:21 29:21 33:15
34:18 35:23 36:4
41:17 42:2,5 46:14
50:4 64:9 68:18
77:4,11 80:3 81:14
83:15 91:19 94:8
95:11,14 99:25
100:17 107:18
115:7 116:25
123:12,15 124:3
125:25 126:5 127:3
130:22,24 131:13
133:11 145:8
148:16 149:2
**justify**
141:12

---

### K

**Kapralos**
96:24
**Katayeva**
30:10 88:5
**Katten**
1:14 2:4 3:12,15
128:24
**keep**
12:13 16:24 36:9
50:9 52:11 57:8,11
60:3 94:4 95:23,24
124:7
**keeping**
15:4 95:22
**keeps**
16:13 70:4
**Keith**
2:18 3:18 8:12 129:2

**Keith's**
141:23
**kept**
14:24 52:10 57:11
59:6 64:9 76:12
**Kibadeis**
18:25
**kids**
140:23
**Kifaieh**
30:7 86:24
**knew**
17:7 62:22 133:5,10
133:13
**know**
5:24 7:16 9:5,9,9,19
11:10 14:19,19,22
14:23 15:16,17,19
16:11 23:8,10 25:16
28:11 34:2 37:4,7,9
37:10,13,15,17,19
39:7 45:15 47:2,3,4
47:8 51:17,19,24
52:2 53:7,9,18
54:18,20 60:3,6,9
60:25 69:15 73:10
73:13,15 76:7 78:11
81:11,12 82:11 87:9
96:10 98:14,18 99:4
100:18 105:9
106:12 108:17,24
109:3,3,7,8,21
111:14 113:8,15
117:9 119:2,10,22
119:25 120:25
128:22,24 134:17
135:6,16 136:10
139:9 140:11 142:2
147:16 152:24
153:3,4,8,9,14
154:10 155:12
**knowledge**
6:7 16:23 41:23
65:15 66:2,4 105:5
107:24
**known**



4:15 139:12
**knows**
67:16 133:7
**KOVACS**
2:21

**L**

**Lagrano**
136:14 139:20 140:3
140:10
**Lane**
2:12
**Lapas**
30:14 89:7
**large**
109:12 132:15
**larger**
120:6
**last**
8:11 9:22 22:18
36:11 41:10 94:23
104:3,6 135:9
**later**
9:25 48:11 142:21,22
143:6 154:17
**laughing**
133:7
**law**
1:14 39:7 48:15,20
49:8,17 68:21 78:6
137:10,13 157:18
**lawsuit**
38:2 39:13 40:10,19
42:22 43:9,11,14
44:11 46:16,22 47:9
47:14,15,17,25 48:6
49:14 51:4,8 55:5
55:11,19,22 56:13
91:21,25 92:2 93:25
94:13,15,19,22 95:6
119:7 124:13
**lawsuits**
37:19
**lawyer**
48:19 50:24 76:2
78:6 96:15,17 97:6

97:12 98:15 100:3
**lawyers**
72:12,18 114:22
115:14 132:2,4
140:17,18,18,19
157:24
**lay**
40:2
**layer**
93:22
**laying**
22:15 24:8
**lead**
73:20
**learned**
134:7,12 135:4,12,18
135:19,20 136:7
**least**
49:13,16,20 63:3,4,8
74:15 97:13,14,16
97:23 104:19
106:22,24 115:13
116:12 119:6
144:18
**leave**
101:14,15,19,20
**led**
41:21
**leeway**
22:14
**LEGAL**
1:24
**Leghorn**
2:13 3:19,19 21:13
54:12 79:3 81:4
82:14 100:14 156:4
**Leonid**
28:25 86:7 132:7,8
**Leslie**
1:16 160:6
**less**
75:4 97:11 102:8
**let**
5:14,15,16,24 28:20
29:16 51:2 65:13
78:2 102:2 109:17

117:7 133:17
135:10 142:2
**letter**
43:12 45:3 46:3 48:5
49:7,15 50:16 59:4
59:7,9 60:15,16
72:11,17 75:8,16,24
76:10,23 77:12 78:5
78:6 80:5,17 97:5
97:19 98:16 101:22
101:24,25 102:2,3
104:3,10,15 114:24
115:6 117:13,15
157:23 158:12
**letters**
66:12,13 67:15,16
101:9
**Let's**
26:12 54:17,19 55:2
56:24 78:23 81:16
119:19 120:19
**level**
143:15
**life**
137:17,17 138:10
**like**
6:11 13:13 48:11
73:10 77:4 80:11
100:5 112:7 113:17
147:12 154:25
155:23
**limited**
22:10 24:22 27:11
30:25 41:3 70:24
77:8 99:14
**line**
22:16,17 41:6 61:25
126:19 150:17,18
150:20 152:21
159:5,5,5,8,8,8,11
159:11,11,13,13,13
162:3
**lingering**
36:19
**linked**
127:23 129:10,12

**list**
46:5 52:24,25 53:3
54:7,8 56:19,23,25
57:2,5,7,8,10,13,20
58:2,7,11 59:15,18
59:20,21,25 60:5,6
60:18 61:7 62:13
63:25 80:7,8 81:11
81:23 92:18,20,24
93:4,5,21,22 94:12
94:16 95:4 96:2,3,9
96:11,12,12,12,13
96:14 107:20
123:14 132:5 150:9
**listed**
52:14 113:3
**listen**
27:22 80:23
**lists**
80:8,8 96:7 103:24
**litigation**
36:22,25 37:5,6,10
37:12,15,22 42:12
42:15 44:19,24
45:22 46:12 49:9,18
49:21 94:6 98:5
101:8 118:18,25
119:4
**little**
74:18 83:25 135:10
**living**
148:8
**LLC**
2:15 72:23 83:20
**LLP**
1:14 2:4,9
**loans**
74:9
**lobby**
82:6 146:18
**local**
111:3 132:14
**locate**
108:14
**lodge**
25:3



**logs**
115:11
**London**
2:9 3:20
**long**
35:8 48:23 58:10
62:13 73:14 139:12
141:10 146:11
**longer**
22:12 33:7 35:22
36:3 92:11 94:19
**look**
24:15 52:20 58:24
59:17,21 62:4,10
110:13 119:19
120:21 125:14
126:4 128:18
129:18,21 131:18
133:17 150:7
**looked**
23:11
**looking**
21:25 82:11 109:19
118:8 124:10,17
125:16 126:22
131:21 133:11,16
**looks**
13:13
**lost**
138:9
**lot**
16:5 63:11 82:8
107:15 117:10,15
137:8,11 138:12
140:21,24 146:15
149:15 154:23
**lower**
143:15
**luck**
54:10

---
**M**
---

**M**
4:2
**made**
30:24 56:14 58:18

93:4,7 116:15 139:3
145:23 146:5
154:16,24
**MAGNA**
1:24
**magnifying**
120:11,23 131:11
150:8
**Maiden**
2:12
**mail**
61:25 112:9
**mailbox**
124:6 152:2,4
**majority**
132:25
**make**
25:24 26:12 40:25
42:6 58:22,25 59:22
67:2 68:18 70:12
81:24 82:10 93:6,19
93:23 94:8 120:19
126:8 135:24
137:15 141:19,21
142:7
**makes**
154:24
**making**
27:13 57:12 138:19
**managed**
117:25
**Management**
2:11 20:24 30:15
85:24 89:14
**many**
9:8 10:25 14:20
15:24,25 60:12,13
60:14,25 77:10
106:12 107:6
108:13,13,25
109:10 142:16
148:14
**March**
14:14,20 15:7,13,23
16:16 106:24
107:21 117:5

121:12 123:17,21
124:19,24,24
125:10,20 126:14
131:21 147:10
149:6 150:12
151:17
**Marina**
30:10 88:5
**mark**
12:8 30:7 86:17
**marked**
11:18 12:2,17 48:15
48:18 61:12,14 66:6
66:9 72:13,15
103:19,21 105:12
105:14 111:18,20
115:2,4 133:20,22
152:7,10 159:10
**marketing**
146:13
**Marks**
2:7 3:11,12 4:7 11:22
23:6 24:5 25:2,9,17
26:17 29:4 33:22
40:4 41:8,19 45:18
51:2 53:17,23 54:17
55:2 57:12,18 64:13
69:10,21 70:3,6,20
71:6,21 73:5,12,22
74:2 77:11,17 78:23
79:2,4,10,19 80:13
81:5,10,15 82:20
94:23 101:11,17
104:6,9 121:2,9
131:9,15,17 148:16
149:22 150:4
155:14 156:3 157:7
**marriage**
139:17,20
**massive**
69:3
**Matatov**
30:9 87:20
**material**
146:13
**materials**

67:4,11,14
**matter**
3:7 48:24 87:9 99:16
115:9
**may**
3:24 21:16 37:21
38:2,4,5,21 103:24
118:17 140:19
147:13 152:13
**maybe**
16:5 19:3,7,10,14,18
19:22 20:2,6,10
21:6 34:25 35:2
59:15,16 83:13
142:21 143:22
**me**
5:14,16,24 10:3,14
11:15 12:3,9 15:9
15:10 16:5 27:23
28:4,20 29:16 33:25
50:9 51:2,25 57:17
59:9 65:13 69:24,25
70:5 74:20,23 78:2
78:2,10 83:14 92:23
95:21 96:6,18 100:8
101:2 102:2,3,9
109:17 110:18
113:13 117:7,17
132:24 135:10
137:13 142:2,22
143:18 151:21
152:5,25 153:12,14
153:15 154:10
160:4 161:4,11
**Meadowlands**
27:7
**mean**
21:15 63:12 107:16
107:24 145:3
**means**
55:14 160:11
**Medic**
48:23
**Medical**
2:11 20:20 24:14
30:18 90:13,16



MAGNA
LEGAL SERVICES

**medications**
140:22
**meet**
67:10
**meeting**
119:18,24 120:2,17
123:3,9,10 125:14
125:25 130:22
131:3
**meetings**
107:14 117:18
119:15 122:5,24
**members**
8:10 108:23
**memory**
100:9
**message**
35:24 117:16 143:8
**messages**
14:20 15:8 35:24
**metadata**
16:11
**Metro**
1:8 3:8
**MICHAEL**
2:6
**Michelle**
30:11 88:8
**middle**
12:24 62:6
**Midland**
27:5
**might**
21:3 34:17 35:23,24
36:6,19 44:5 47:3,4
47:10 87:10 96:21
123:11 142:12
145:24
**millions**
40:11
**mind**
28:13 117:20
**mine**
21:16
**missing**
118:3

**Mitamura**
30:19 91:2
**mix**
128:16
**MKB**
1:8
**mobile**
14:4
**moment**
23:2
**Monday**
128:23,25
**month**
108:11 142:22
**months**
48:11 113:25 143:17
**more**
41:17 74:9 108:11
109:4 110:23
**morning**
3:2
**Moshe's**
31:9 72:12 74:16
114:25 133:20
157:24 158:12,14
**Moshe.com**
55:7,13,18,23 57:22
63:10,17,21 64:18
64:23 76:20 79:21
**most**
14:17 34:22 107:7
121:15,18
**move**
49:4
**moved**
145:7
**much**
75:4 97:11 102:7
**Muchin**
1:14 2:4 3:12,15
128:24
**multiple**
53:15 114:8
**must**
66:24
**MUTUAL**

1:5
**myself**
82:11 109:12 110:21
132:6 143:16 148:4

---

**N**

**N**
4:2 157:3
**name**
4:8 8:11 12:23
**named**
145:9,12,16 146:21
**names**
52:13,15,15,24 54:7
59:15 64:4 108:13
113:3 141:13
**necessarily**
117:17 123:16
**necessary**
67:13
**need**
6:14 25:23 35:9,12
35:13,22 36:3,11
37:21 40:16 46:18
47:10 50:9 54:18
59:10 60:6 70:12
78:9,12 92:15 93:17
94:3 99:18,20
110:24,25 124:7
132:11 134:8,13
135:5,13 136:9
141:25 142:6
147:19 155:2
**needed**
35:15 57:11 142:18
**needs**
46:4 53:2 92:14
**never**
27:15 31:3 117:19
**new**
1:3,14,15,15,17 2:5,5
2:12,12,17 12:25
30:17 39:14 61:3
90:9 92:14
**Nizar**
30:7,16 86:24 90:2

92:5 146:12
**NJMHMC**
19:25
**None**
159:9,11,14
**nonexistence**
66:25
**nonparties**
60:8 72:20 74:6,8
75:2,21 76:22 79:3
79:4 100:12,17,17
100:25 101:5 102:5
**nonparty**
74:12 80:19 124:13
**normal**
117:13
**Norman**
30:20 91:5
**North**
27:5
**Notary**
1:16 4:3 161:14
**notation**
68:19
**note**
22:6 41:15,19 70:8
70:11,12
**noted**
156:9 161:6
**nothing**
48:10 56:6,10,11,12
75:23 81:25 82:7,8
94:18 146:16 156:4
**notice**
1:13 44:6 80:4
**notification**
135:22
**notifications**
125:25
**notified**
50:8 95:20,21
**notify**
50:10
**November**
48:21 49:5,11,13,16
49:20,24



**now**
3:3 8:20 22:13 25:13
33:19 34:2 49:24
54:10 57:13 65:20
71:3,4 74:18 77:23
78:3,17 92:12,13
109:24 110:2
123:19 140:18
142:20 155:4,5
**number**
9:8 12:4,5,11 14:3,4
14:5,7,12 83:23
133:6
**NY.com**
150:24

**O**

**O**
4:2
**oath**
5:12 134:4
**object**
25:7 30:22 63:2,7
76:24 99:18 147:18
148:12,16
**objecting**
27:9
**objection**
15:14 21:13 25:9
26:8,16 27:13 28:8
40:3,21 41:2,7 53:4
68:8 69:23 70:9
71:8,20 76:25 99:8
102:19 103:11
131:24 147:15
**objections**
24:9 25:3
**obligation**
37:20,23,25 38:3,25
40:19 66:19 118:16
118:20,23 119:3
144:16,19
**obtain**
136:14
**October**
31:17 45:12,18 75:11

76:3 97:20 98:11,16
98:20 99:3,6 100:2
102:13,16 118:20
118:22 119:7
144:12,18
**off**
29:4,6,7 82:15
113:21 114:13
121:2,4 147:20
148:21 149:22,23
**office**
143:17
**offices**
1:14
**often**
7:12
**okay**
5:3 6:18 41:23 78:18
94:10 101:2 117:7
120:14 132:22
136:6,12,12 143:24
147:16 155:17
**oldest**
14:16
**Olivia**
30:8 87:8
**once**
35:21 36:3,9 59:3
113:24 114:8
122:17 142:18,19
143:2,7,7
**one**
4:23 10:12 18:9,10
18:20 24:18,22
40:12 41:7 45:6
70:10 74:9 92:22
95:17 109:4 117:10
126:22 131:4,5
132:9 135:18 141:4
143:9,11,20,21,21
143:22,24 144:3
148:2,3 150:16
**ones**
112:7 124:16 127:5,5
**ongoing**
92:13

**only**
10:15 31:3 47:15
50:19 51:11 59:23
77:18,24 113:13
130:3,8 154:14
**open**
6:25 7:4 33:24 36:8
54:22,25 124:5
**opened**
7:22 13:11,23 14:8
34:20
**opening**
34:18
**operations**
122:25 128:17
**opinion**
59:9
**opportunity**
77:3 99:10
**orally**
50:12
**order**
22:8,14,17 23:23
24:4 31:7 41:4,21
42:6 66:5,10 67:24
70:15 71:5,9,16
110:16 119:8
141:19 148:22
157:22
**ordered**
22:9 67:20 68:4
**orders**
67:5
**ORs**
129:3
**other**
4:23 5:7,18 7:24 8:4
8:8,25 9:5,8 10:7,13
10:14,24 12:6 17:21
18:6 22:24,25 27:14
29:25 31:16 32:18
33:14,16 34:10,11
39:25 45:7 46:6
54:13 57:19,25
62:19 63:15 65:5,8
66:3 73:8 74:5,9,25

81:25 95:9,10 99:5
99:11 101:4 102:5
104:24 105:5,7
110:18 113:12
116:6,11 118:6,18
118:23,25 122:22
123:11 127:4 131:4
131:25 132:3
136:20,24 137:5
139:22,23 140:2,3
141:5 142:14,14
144:6 146:19
155:18,22
**others**
29:20 72:19
**otherwise**
27:23 49:4
**our**
94:6 108:8 132:14
**out**
8:13 36:5,7,19 40:11
40:11 44:21,22 45:4
55:2 69:8 76:8
77:18,19,21 78:3,10
78:12 119:23
121:17,18 125:16
131:22 132:3,17
133:12 134:15
138:15 150:17
**outline**
66:16
**Outlook**
127:14,16,17 131:4,6
131:7
**outside**
95:18,20 96:3 148:12
**outstanding**
67:4
**over**
36:21 46:11 53:10
60:18,23 64:5 95:21
141:22
**overall**
125:23
**owned**
74:12 76:22



**ownership**
40:2

---

**P**

---

**page**
12:24 14:11 61:22,23
62:11 73:2,14,16
100:14,15,18 104:3
104:6 120:24 150:6
150:7 157:6,12
158:5 159:5,5,5,8,8
159:8,11,11,11,13
159:13,13 162:3
**pages**
161:3
**paid**
44:21
**Pain**
1:8 3:8
**paper**
57:17
**paragraph**
62:7 73:17 74:19
115:8 134:7 144:9
**parking**
82:8 146:15
**Parkway**
2:16
**part**
16:3 34:22 93:13
94:19,24 104:12
**particular**
93:10 94:17 107:5
129:10 153:18
**parties**
52:19 54:8 67:10
74:6 78:22 79:2,9
100:13 145:5
**party**
100:22 124:13
**passed**
113:20 114:13,21
**password**
7:17,20,25 8:4,8,22
9:2,16 10:7 142:18
142:20,23 143:5

**Patrick**
30:12 88:21
**pay**
7:14 40:11
**penalties**
39:3,5,6,9
**people**
8:6,7 9:4,5,8,10,12
9:12 17:12 44:5
46:5,7 52:9 57:3
59:23 60:7,13 80:19
81:22 87:10 93:22
94:5 107:11 108:25
117:19,21 132:16
145:6 149:18
**percent**
126:12
**perfectly**
22:13 67:2
**perform**
18:25 19:4,8,11,15
19:19,23 20:3,7,11
20:14,19,22
**period**
31:17
**permission**
10:10
**permit**
22:13
**person**
8:21 10:7 117:9
122:6,24 123:2
133:8 135:2 145:8
145:12,16,21
**personal**
11:2 17:11,15 76:14
92:4 130:21 134:8
134:13 135:5,12
136:8 137:9,12,16
138:2,12 140:22,24
142:8,9
**persons**
10:15 92:20 146:20
**person's**
129:12
**phone**

10:23 14:3,4,5,7,8
128:3,7,8 129:6,8
129:10,13,18,21,23
129:24 130:11,18
**phonetic**
18:25
**physical**
107:14
**physically**
59:21
**physician**
121:25 122:15
**pictures**
138:11
**Pinnacle**
30:18 90:19
**PK**
1:8
**place**
75:11 137:10 149:18
**plaintiff**
3:11 96:15
**plaintiffs**
1:6 2:4 3:16 11:5
14:14 49:3 62:17
66:13,22 67:7,13
74:24 75:3,22 97:10
101:4 102:4,7
103:25 104:11,18
106:19 107:21
124:20 144:11
**plaintiff's**
49:5 61:10,15 67:22
74:4 75:5 100:11
111:17,22 115:25
125:2 157:19 158:9
**plans**
54:24
**Plaza**
1:14 2:5
**pleadings**
41:20
**please**
3:24 4:8 6:17 21:8
45:17 48:25 58:20
70:12,13 71:22

80:14 94:24 101:11
103:8 141:24,25
142:7,7 149:11
152:4
**PLLC**
2:10
**point**
6:10 8:3 10:5 13:2,8
22:3,7 34:7,23
35:14 45:21 46:11
50:8 51:2 70:11
81:17 103:24
104:13 117:11
132:22 135:11
139:13
**pointed**
150:17
**policy**
34:8,14
**Popular**
73:7 74:4,14 75:20
100:11
**portions**
66:11
**possession**
115:23 116:8
**possibility**
47:18
**possible**
16:24
**possibly**
22:5 24:25 33:18
38:19,23 39:7,11
73:8 74:5
**post**
94:20 98:3,5 117:14
**posture**
69:2
**practice**
34:8,13,19,24 35:4,6
36:2,14 43:4,6,9
46:13 51:5,9,11
59:12 94:9,11,14
95:2,10,13,16
**practices**
44:17



**precisely**
53:20
**premises**
74:11 75:21 76:21
**present**
2:20 23:17 31:18
**preservation**
34:9 43:12,15,17,20
45:3 46:2 48:4
50:15 51:5 59:3
75:24 76:10 80:5,16
93:14 94:9,11,14
95:2,10,13,16 101:9
105:2 117:12,14
118:14 119:8,11
**preserve**
37:21 38:3,25 40:20
42:16,18,22 48:2
50:2 51:6,15 54:14
57:15,22 58:4 64:22
65:17,21,22,23
71:15,25 92:24
93:18 104:23 105:6
118:16,20,23 119:3
144:16,19
**preserved**
42:19 45:23 46:6
53:2 59:5,10 65:2,3
65:24 82:12 92:14
92:19 95:3 119:4
**preserving**
92:21
**presumed**
148:14
**presumes**
24:19
**previously**
11:21 12:7 43:3
45:24 83:22 103:23
104:24 123:13
**primary**
107:8 123:25 124:6
**print**
120:5,25
**prior**
10:5 12:4,5 44:6

101:8 109:20 110:3
117:12
**privilege**
50:23 53:7 115:11
131:25
**privileged**
54:2
**probably**
36:12,13 40:14 41:6
117:18
**proceed**
31:10
**process**
15:4 113:17 114:17
136:21,24 137:2,4
137:21,21,23 141:2
**produce**
37:12,22 40:16 42:10
46:18,24 47:10,19
62:24 66:22 67:20
68:4,11 110:17
138:23 151:9,11
153:7,10,12,25
154:3,6,9,14 155:9
155:13,24
**produced**
11:21 12:7,19 16:10
16:15 69:14 73:8
74:5,7 100:12,16
107:21 108:15
111:6,6 115:11,19
116:3,9 123:6,9
125:18 132:20
134:9,14 135:14
151:7,10,14,24
153:13 154:8
155:16,20
**production**
12:5,6 15:11 66:20
105:25 106:5
115:10 116:15
117:3 159:5
**professional**
111:2 160:7
**promotional**
146:13

**proof**
152:3 153:9,15 154:2
154:18
**proper**
149:18
**property**
92:4
**propounded**
161:5
**prove**
141:14
**provide**
60:16 67:21 142:7
155:23
**provided**
14:13 57:20 58:2,8
58:11 60:11 63:25
76:12 96:12,15
103:25 106:19
**Public**
1:16 4:4 161:14
**pull**
120:7 126:22,23
**purpose**
23:5 32:18
**purposes**
17:9,18,23 18:2,8,13
18:19 22:15 31:4
**pursuant**
1:13 105:2
**put**
17:14 36:10 70:22
80:4 127:2 132:7
**P.A**
2:10 20:16 28:2
**P.C**
1:8 2:10,11 28:3
**p.m**
121:8 149:24 150:3
156:8,9

_____
**Q**
_____
**question**
5:16,22,22,24 6:5,6
6:15 24:11,18,22,24
26:9,10 27:11,20

28:4,13,21 31:14
40:9 41:10,13,17
46:9 51:3 53:15,24
55:10,21 58:20
62:10 64:11 65:13
65:20 68:7 71:3,6
71:19,20,21 77:21
78:14,17,22 79:17
80:2,10,13,23,24,25
81:5,7 83:25 96:20
99:23 101:10,12,21
102:21 103:8 135:2
135:3 147:17,23
148:11,14 153:24
154:5
**questioning**
22:16
**questions**
5:9,15 20:25 21:7
22:18 23:7 24:6
25:2,13 26:13 27:16
31:3,8 42:8 70:2,23
75:12 77:25 99:17
156:5 159:10 161:4
**quick**
117:11
**quickly**
45:5
**quite**
23:25
**quiz**
69:13

_____
**R**
_____
**R**
162:2,2
**Rabinovich**
30:12 88:18 151:5
152:13
**Radiology**
30:13 48:23 89:4
**raise**
53:11
**ran**
108:12
**rather**



136:20
**read**
34:16 35:5 54:5 71:6
71:21,23 80:13,15
81:4,5,7,9 94:23,25
101:23 102:2 103:7
103:9 150:22 161:3
**reading**
101:22
**reads**
66:11
**real**
92:10
**really**
24:2 47:22 53:6,14
118:3 127:3 154:25
**Realty**
27:2,3,6 72:22 83:3,6
102:11 103:4
**reask**
81:14
**reason**
15:6 28:10 71:2
147:19 154:14
**reasonably**
75:2 102:6
**reasoning**
77:2
**recall**
68:2 123:12 150:14
**receipt**
107:13 126:2
**receive**
21:4 34:16,17 153:17
153:18
**received**
16:4,19,21 17:2
21:10 28:24 29:11
30:4 45:3 46:2,5
51:15 59:3 74:24
101:4 102:4 107:23
122:17 123:16
124:12 126:2
135:21
**receiving**
153:20

**recent**
14:17
**recently**
48:22 97:9
**Recess**
82:17 121:6 149:25
**recipient**
150:25
**recognize**
152:17 153:5
**recognized**
132:18
**recollection**
8:21
**record**
3:3,10 4:9 12:9,13,18
16:7,14,16 17:6
22:7 25:24 26:12
27:24 28:21 29:4,7
29:9 30:24 41:16,20
65:9 68:19 69:9
70:12,23 71:23
77:11 80:15 81:9
82:16,19 94:25
103:9 107:22
110:11 120:19
121:3,5,8 123:17
130:3,9 149:22,24
150:3 160:4
**records**
11:5 40:16 42:10
**recovery**
13:17,22 14:3,8
31:19 32:12,14,18
**refer**
4:21,23
**referenced**
41:22,23 60:9 76:22
78:4 152:21
**references**
12:21,22 14:12
**referencing**
76:3
**referred**
32:21
**referring**

29:22,23 97:6,13
134:20
**refers**
66:11 72:20 150:22
**reflect**
65:9
**reflected**
124:25
**reflecting**
62:12
**refresh**
100:9
**refreshed**
8:20
**regard**
49:4
**regarding**
12:19 34:8 76:20
141:9
**Regina**
2:9 29:13 30:6 60:2
74:17 86:11 126:25
**regional**
2:16 19:25 32:22,24
96:25 127:6 139:24
140:4
**Regional.com**
18:23
**Registered**
160:7
**regular**
46:7
**regularly**
7:11,13
**relate**
74:9 91:21,25 92:9
93:24,24 94:22
**related**
11:6 21:10 52:5,7,19
55:9 81:22 83:16
91:24 92:5 94:4
95:4 99:19 115:12
137:24 138:13,18
138:18,22 139:2,3
139:16,19 140:23
140:24 145:5,10,13

145:18,22,24
146:15
**relates**
21:17 52:8 92:13
94:13 137:16
**relating**
62:12 74:10 115:9
144:10,25
**relationship**
21:23 22:24 23:9
**relevance**
93:10
**relevant**
22:20 54:3 66:11
77:6 93:6
**remain**
67:4
**remember**
7:6 13:12,25 14:10
18:14 24:20 39:16
39:17,20,21,23
42:13 45:2,6 54:9
56:5 58:9 59:15
68:9,17 72:4 105:9
109:9,21 110:10
111:9,10 113:9
153:19,20,22,23
**remembers**
69:7,14
**reminder**
150:9
**reminding**
23:3,3
**remodeling**
74:11 75:20 76:21
**renovations**
146:18
**repairs**
82:6
**Repeat**
80:25
**repetitive**
121:17,20,23 122:4,8
122:11
**rephrase**
147:17



**reporter**
1:16 160:7,12
**represent**
49:17
**representation**
77:12,22
**represented**
49:12
**representing**
78:7 115:15
**reproduction**
160:11
**request**
49:2 57:12 61:19
62:23 63:4,8,15,23
67:10,22 105:18,24
106:8 108:4,5
111:24 112:7,15
114:4,6,12,13 116:2
116:2,3,18,19
120:17 134:16,21
136:3 145:17
146:23 159:5
**requested**
9:18 10:4,6 37:6,11
37:16 66:21 67:8,14
75:19,22
**requests**
38:4 61:11,16 62:18
66:15,19 105:12,17
105:22 109:10
111:18,23 115:18
157:20 158:7,10
**requires**
105:25 106:4
**requiring**
41:21
**reserved**
46:4
**resolve**
154:25
**resolved**
36:10,15
**resources**
111:3
**respect**

28:5 34:15 44:17,24
45:20 114:3,12
137:3
**respond**
49:4 62:22 66:14
67:6 112:23 113:18
**responding**
49:2 66:19
**response**
73:7 74:3 100:10
**responses**
66:16 67:22
**responsive**
38:4 63:22 64:20,24
65:18 67:8,21 68:4
112:20 113:12
114:6 115:17,25
131:8 134:9,14
135:13 136:16
**rest**
36:10 57:4 123:5
**result**
39:2
**resulted**
23:23
**retain**
49:8,9
**retained**
48:22
**Reuvon**
30:7 86:21
**review**
149:12
**reviewed**
59:8 115:10
**right**
21:19 24:21 35:20
42:9 44:21 47:6
54:10 57:17 64:13
70:6 73:19,22 77:23
78:3,17 79:19 92:25
93:25 113:19,22
117:20 120:13
122:4 126:24 129:2
129:21 132:10
**rights**

43:12 45:3 46:3
50:15 59:3 75:24
76:10 80:5,17 101:9
117:13,14
**Roads**
12:24
**Roberts**
2:18 3:17,18 8:14,18
11:20,23 12:3,12
15:14 22:6 23:15
24:7,17 25:7,12,19
26:7,16,19 27:9
28:8 29:3,14,18
30:22 33:20 40:3,6
40:21 41:10,15,25
45:16,19 50:22 53:4
53:20 54:5,20 55:4
55:14 57:16 64:11
65:8,20 68:6,14,18
69:12,24 70:5,19,22
71:7,17 73:3,10,13
73:19,24 74:22
76:24 77:15 78:18
79:6,12 81:3,6,14
83:12 90:14 96:19
99:8 100:23 101:6
101:13,23 102:15
102:19 103:7,10,16
104:5,7 131:8,10,15
131:24 136:23
147:15 148:10,18
148:25 149:8 156:5
**Rockefeller**
1:14 2:5
**Roma**
30:8 87:7
**Roman**
30:11,11 88:11,14
**room**
101:14,15,19,20
128:23
**Rose**
30:21 91:12
**Roseland**
2:17
**Rosenman**

1:14 2:4 3:13
**routine**
34:14 46:7
**Rowe**
30:20 91:5
**Rubin**
48:22
**rules**
5:4,6 24:8
**ruling**
31:6
**run**
53:6 110:24
**running**
142:21
**Russell**
48:14,20 49:8 157:17

---
**S**
---

**S**
4:2
**said**
6:19 18:17 43:3,15
53:25 54:6 80:22
91:20 93:21,23 94:3
94:4 95:7,11 110:23
110:25 118:12
119:8,12 122:13
123:23 133:14
134:7 141:11,24
142:6,20 143:5
154:17
**same**
21:20 28:8 53:4 74:7
76:25 96:7 100:15
113:18 115:12
120:24 121:21
135:25 145:4
155:17 160:11
161:4
**save**
69:22,23
**saved**
117:15 146:19
**say**
4:24 17:16 21:21


MAGNA
LEGAL SERVICES

36:13 45:16 63:20 73:21 90:14 100:23 101:6 107:3 108:10 121:19 122:8,12 129:21 138:22 144:25 150:11 152:2

**saying**
27:14 43:18 53:25 97:7 100:6 121:20 122:18 123:15,19 123:20 124:9 125:15 126:8,9 130:15,17 133:3

**says**
22:14 48:21 49:15 54:10 62:11 66:13 66:18 73:6 74:23 100:8,25 101:22 102:3 106:25 107:3 115:8 120:12,13 126:15 135:4 149:8 152:3

**schedule**
121:24,25,25 122:14 122:14,15,15,16,25 125:13 126:21 127:9 128:19 130:25

**scheduled**
31:11 127:9,10,25

**scheduler**
107:12

**schedules**
124:18

**scheduling**
121:16 122:20 123:9

**SCOB**
19:21

**scope**
22:10 27:18 28:10,14 30:25 112:16 148:13

**scrub**
122:15

**search**

9:17 10:4,6,19 64:2,3 64:4 104:12 108:7 108:16,19 111:6 112:23 113:20 132:12,19 136:15 136:20 141:13 142:21

**searched**
104:12,20 109:6 110:2,6 112:22 113:3,21 134:9,14 135:13 136:9

**searches**
108:12 109:11 132:19 143:16

**searching**
109:18 113:11 132:13

**second**
14:11 29:5 56:24 61:22 73:2 100:14 100:15 101:14 105:11,16 108:5 114:3,12,18 115:8 116:2,19 121:3 122:7 134:25 135:7 143:4 158:6

**section**
112:8

**see**
10:16 11:24 12:20 15:20 24:15 25:4 60:17 62:2,8,14 72:24 74:21 75:6 77:6 104:14 112:3 118:3 120:5,7,12 124:16 126:23,24 127:2 128:11 129:5 129:7,8,15,16 134:10 144:13 150:7,20 151:2

**seem**
71:11

**seen**
103:24 105:18 111:24 117:8

**send**
10:10 17:12 50:15 83:14 117:20 133:9

**sense**
41:17 154:24

**sent**
15:18 16:18,20 17:2 17:3,4 21:10 28:22 28:23 29:10 30:3 67:17 86:7,11 96:17 96:17 104:3 106:2,5 106:10 107:23 123:16 124:12 150:23 151:4

**sentence**
100:25 135:4

**sentences**
117:11

**separately**
142:25

**September**
67:23 68:5,16 70:18 72:3,7 112:4

**serve**
131:25

**served**
11:13 38:5 48:10 61:19 62:17 115:18 135:6 145:17

**server**
14:24

**Services**
1:24 2:10,10,11 20:9 20:16,24 28:2,2 30:15,16 85:9,16,24 89:19,23

**set**
41:3 61:10,16 105:11 105:16 111:17,22 157:19 158:6,9

**setting**
125:19

**settled**
44:22

**seven-hour**
23:18

**several**
96:6 110:21 113:23 114:10,10,16 143:6

**Sezanayev**
30:9 87:16

**Shannon**
104:4

**Shapiro**
28:25 86:8 126:25 132:7,8

**share**
147:13

**shared**
96:4

**she**
107:12

**sheet**
59:19 161:6

**shortly**
15:23 104:13,17

**should**
21:6 52:10 57:3 67:12 131:6 138:23 138:23 142:17

**show**
14:13 100:8 119:21 128:3 129:2 130:18 151:21,22 152:5,6

**showed**
134:22 143:18

**showing**
11:25 12:17 48:17 61:14 66:8 72:15 103:21 105:14 111:20 115:4 133:22 151:23

**shows**
130:24 151:21

**signed**
134:3,3

**similar**
92:22

**Similarly**
44:13

**Simon**
8:10,16,21,25 9:13



9:15 10:6,17 30:11 88:8 108:20,22 113:14,21 114:14 134:25 135:8 136:13 137:19 138:21 139:3,7,9,12 139:17,23 140:8 141:16,22,25 142:4 142:13,17 143:11 143:15,25 144:4,6

**Simon's**
8:11

**simple**
55:10 60:4 79:6 101:10 119:5 132:10

**since**
7:21 9:24 34:20,20 144:11

**single**
154:7

**sir**
155:5

**sister**
74:17

**sit**
33:19 34:2 69:16 109:24,25

**sitting**
82:7,9

**Situ**
30:12 88:21

**skilled**
8:18

**skip**
74:18

**small**
120:5,25

**Solution**
20:8 85:8

**Solutions**
30:13,17 89:4 90:6

**some**
9:4 13:2,7 17:12,12 17:19 18:15 21:16 22:3,14 35:14 50:8

74:15 75:9,12 82:5 90:3 92:5 93:22 95:21 96:21 97:14 97:23 100:3,21 103:24 104:13 108:23 117:18 119:12 120:7,23 121:11 123:11 128:15,15 132:22 135:11 143:3 145:20,23 146:5,12 146:18

**somebody**
130:8,11,11

**someone**
110:25 120:17 141:23 149:12

**someone's**
127:12

**something**
22:20 59:20 93:4,15 95:3 113:6 132:16 148:5 155:3

**sometime**
104:17 110:9 139:14

**sometimes**
37:16,20 38:15,18,21 38:21 39:9

**somewhere**
33:13 36:20 58:15

**soon**
24:9 35:4

**sorry**
12:15 120:24 149:2

**sought**
62:18 75:3 97:10 102:7 111:13

**sounds**
113:17

**sources**
74:25 101:4 102:5

**Sovereign**
30:18 90:13,16

**spam**
34:18

**sparingly**

99:18

**speak**
133:8 141:24 142:3,4 142:16,24 143:13 149:11

**speaking**
21:19 39:24 69:23 70:9 71:8

**special**
132:17

**Specialist**
3:8

**SPECIALISTS**
1:8

**Specialty**
19:2,13 84:9,21

**specific**
23:22 31:6 43:21 50:19 53:13,22 54:6 57:14 109:23

**specifically**
36:17 40:23 51:23 67:7 70:24 73:6,6 73:18 74:3 100:10 105:25 106:4,9,10

**specificity**
67:14

**speculate**
6:4

**speed**
68:25

**spill-over**
73:17

**Spine**
30:17 90:9

**spoke**
143:14

**spoliation**
69:20

**square**
123:18

**stack**
106:15,17

**stamp**
11:17 157:14

**standing**

42:6

**Star**
20:8 30:15,16 85:8 89:18,22

**staring**
41:2

**start**
54:17,19 78:23

**started**
97:5 108:7,16 110:24 132:13 133:7

**state**
1:5,16 3:7 4:8 56:2,6 56:11 66:13,22,25 81:22 82:2,4

**STATES**
1:2

**stating**
67:7

**steps**
42:14,21

**still**
14:21 21:14 36:7,7,8 44:4 54:15 58:13 107:25 140:12 142:20

**stipulation**
70:23

**Stipulations**
159:8

**stolen**
138:10

**stop**
33:9 51:9,11 57:19 104:25 105:8

**stopped**
33:11 43:9 44:2,8 50:5,6

**stopping**
57:25

**store**
131:14

**street**
27:6 131:14 146:8

**strike**
16:14 35:16 51:7



72:10 76:15,18 78:25 79:21 84:4,6 94:22 109:17 118:21 147:3

**string**
22:18

**Strong**
48:14,20 157:17

**stuff**
137:16 138:12

**subject**
23:15 35:22 36:18 75:10 145:24

**subjects**
23:12,14 69:6

**submitted**
77:13

**subpoena**
11:13 60:13 61:5 73:7 74:4 77:8 80:20 100:11 102:8 134:15 135:21,24 136:2 145:13 146:22

**subpoenaed**
11:5

**subpoenas**
38:12,16,17 47:13 61:4,6 75:5 97:11

**Subscribed**
161:10

**subsequently**
31:10 77:4

**substance**
11:11 79:14 99:13 124:15,17 130:23 161:5

**such**
24:19 66:23 67:3 120:25 133:6

**sued**
39:12,17,20 44:14

**suggesting**
26:7 40:24

**suggestion**
78:19

**Suite**
2:16

**super**
71:4

**Superior**
39:14

**supervision**
160:12

**SUPPORT**
159:3

**supposed**
95:23,23

**sure**
9:11 58:15 60:20 93:19 94:8 110:13 126:8 130:19 135:24 137:15 141:19,21 142:7

**surgery**
3:22 18:9,12 19:6,9 19:17 20:5 33:3,4 84:13,16 85:5 86:4 128:17

**SURGICAL**
2:16

**SurgiCare**
19:20 84:24

**surprised**
61:4

**swear**
3:24

**switches**
65:21

**sworn**
4:3 160:4 161:10

**syncs**
122:18

**system**
132:18 139:11

---
**T**
---

**T**
157:10 158:3 162:2

**take**
6:11,14 42:14,21 82:14 99:24 119:19

**taken**
1:13

**taking**
150:7

**talk**
6:20 21:22 34:5 114:17

**talked**
29:20 71:10 83:22 98:8 144:15,24

**talking**
4:25 5:17 29:14 40:10 46:19 54:23 64:7 76:5 77:23 81:12 83:4 98:10,15 98:21 99:2 120:20 135:25 150:13 152:16,22

**task**
132:10

**tasked**
108:20

**Tatyana**
30:12 88:17 151:5 152:13

**tax**
82:5

**taxes**
138:11

**team**
8:10 9:4,10 10:18 108:23 113:14,21 114:14,16 138:21 141:16,24 149:12

**tech**
122:15

**technical**
69:17

**tell**
15:9,10,22 50:12 102:9,17 107:5 152:25

**telling**
110:20 119:16 132:24 153:13,14 153:25 154:10

**tells**
27:23 78:10 107:6

**tenant**
21:15 92:11,12 146:10,16

**tenants**
82:7 92:14 94:19 98:5 146:9

**terms**
21:20 22:21 63:25 93:3 136:15 138:16

**Tersher**
27:4

**testified**
4:4 45:25 46:14 91:22 92:17 97:23 103:23 104:25 123:14 138:17 147:6

**testify**
8:19 22:9

**testifying**
121:10

**testimony**
47:7 99:25 100:2 121:14 123:7 126:7 146:24 160:4

**tests**
110:24

**text**
22:7,14 31:7 41:4 143:8 144:3

**texted**
142:22 143:4

**than**
7:24 8:4,9,25 10:13 10:14 32:18 33:14 34:10,11 46:14 54:13 57:19,25 65:5 65:9 66:3 95:11 104:24 105:6,7 108:11 109:4 110:18 113:12 131:25 132:3 136:20 137:4 139:23 140:3



142:14 146:19
**thank**
6:19 11:23 12:14
45:19 74:22 118:10
155:7
**that's**
15:9,9 24:7 26:5
32:12,14 35:5 37:2
46:21 49:15 56:17
59:10 69:8,25 70:6
71:9 73:20 76:7
77:6,17 79:10 81:8
91:21 94:5,13 100:4
100:24 101:3
103:10 107:22
109:13,22 116:24
117:18 125:14
126:21 128:13
129:3,25 133:2
136:4 144:18,21
145:9,13,17,18
146:23 148:23
149:21 154:4 155:4
155:17
**their**
15:4 66:25 114:20
118:7
**them**
39:2 42:19,23 43:6
50:4,5,6,9 64:10
65:24,25 66:22,23
75:3 87:11 91:20
92:15 96:7 107:7
110:6,7,17 112:22
118:5 120:7 121:18
124:4,5 125:17
126:16 127:2
131:19 133:17
136:19 138:25
140:14 141:24
142:2,3,7,19,24
143:10
**themselves**
3:10
**then**
3:24 10:10 17:17

18:17 21:6,20 24:11
33:2 35:15,18 36:2
36:11 40:14 43:13
44:13 60:18 62:4,10
62:16 66:12,18
67:19 70:4,6 75:25
93:5 95:21 96:17
97:4 107:9 109:11
110:22,24 111:4
113:14 114:11,16
114:20 120:15
122:5 123:2,25
124:15 132:10,13
134:20 136:25
139:14 143:6
**therein**
161:5
**these**
21:23 22:18 23:10,11
23:11,12,13 26:12
27:16 28:5,11 31:8
33:14 52:9 59:9
60:7 66:13 69:5
74:8,13,15 77:19,25
78:21 79:2,4,9
87:10 92:24 94:5
96:5 97:7 100:15
107:11 117:20,22
122:23 123:4
124:12,16 127:8
131:19 132:25
133:12,13
**they**
9:11 16:19,21 17:2,2
17:3,4,14,14 22:23
28:12 33:23 38:21
39:8 40:10 42:19,24
43:4 44:9,21,22
49:12,12 50:12,15
56:5,10 60:17 66:21
66:25 75:2 91:20
92:16 93:20 97:8,14
102:6 106:14 107:7
108:10,24 110:23
110:23 111:3,4
113:21,24,25 114:2

114:20,21,21
117:15 119:14
121:13,22 124:4,17
125:17,23 126:16
127:10 128:12
131:5,6,13,22
132:13,14,16,17,19
133:5,14 137:14,15
137:25 138:22,23
138:23,24 140:5,6
140:12 141:11,16
141:17 142:6,8,17
142:18,20 145:7
149:8,12 150:11
**they're**
22:19 107:3 116:22
147:7,7,7
**thing**
47:15 83:13 121:21
135:25 145:4
**things**
39:25 50:20 56:20,21
59:10 61:23 62:5,13
62:19 63:12,16 64:5
121:22,23 122:23
123:12,15 128:16
146:15 148:15
149:16
**think**
13:25 32:12 44:20
47:22,23 48:10
50:14,23 53:5 54:12
62:25 78:16 82:10
92:13 96:5 97:22
112:22 118:4
122:10 123:13
130:6,16 132:25
138:16 139:13
141:23 143:2,8
**thinking**
42:5
**third**
61:24 111:17,22
114:13 116:2 158:9
**third-party**
64:3 108:9 111:5

137:10 138:8 140:5
141:12
**Thomas**
2:13 3:19
**those**
5:6 9:5,12 16:17,18
21:2 23:19 31:3
34:3 37:11,12 38:17
39:5 43:10,25 44:5
55:25 59:4 60:10,11
64:4,5 66:16 81:21
92:7,9,15 99:13
102:17 106:23
107:25 113:15
124:14 126:23,23
132:9 146:4,7 148:3
155:24
**though**
126:13
**thought**
132:6 133:11
**thousands**
56:4 124:2,2
**three**
146:6,7 148:3
**threw**
133:6
**through**
5:6 11:18 17:20
33:15 91:19 118:3
124:15 128:23,25
157:14
**throughout**
10:25 145:7
**Thursday**
122:4 128:23
**tight**
71:4
**tile**
92:6
**time**
3:5 7:12 8:3 9:17
10:3,25 13:8,10
18:3 22:3 29:9 34:7
34:23 35:14 37:5,5
38:8,8,11,12 42:25



MAGNA
LEGAL SERVICES

47:8,9,17,25 48:6
49:3,25 50:2 51:4,8
55:2 60:11,19,23
61:6,19 64:9 68:22
81:17 82:16,19
109:5,15 110:15
111:7 112:3,25
121:5,8,25 129:11
129:13 131:16
134:17,24 135:7
143:4 145:7 146:11
149:24 150:3 152:3
155:23 156:7,9
**timeline**
94:20 98:6 109:10,22
109:23 111:10,15
113:24 119:2,10
136:11
**timelines**
113:15
**times**
53:16 60:13,14,20,25
77:10 113:23 114:9
114:10,17 142:16
143:6,23 148:21,23
**tip**
147:20
**today**
23:21 26:10 27:12
77:5,9,10 99:15
137:13 148:21
**today's**
3:4 4:14,20 27:18
28:14 30:25 31:4
156:7
**Todd**
30:21 91:15
**together**
127:2 142:24 143:7
143:10
**toilets**
92:6
**told**
11:7 53:21 100:3
111:9 125:23 148:4
**tomorrow**

137:14
**too**
109:12
**took**
54:4 75:11
**tool**
108:9 111:5 132:17
141:12
**tools**
108:7 132:14
**top**
5:17 73:4,12,16
100:14,15
**topics**
23:20
**total**
33:20,22
**track**
16:24
**traditionally**
130:15
**transaction**
130:4
**transcript**
160:11
**transcription**
161:4
**Transit**
39:13,18,21 42:11,15
43:8,14 44:11 45:21
**transition**
22:19
**trauma**
140:23
**travel**
54:24
**tried**
79:10 99:17 114:5
**true**
140:5 160:4
**truthfully**
54:22
**try**
63:2 69:19 81:16
114:8 120:19 135:9
**trying**

53:5 59:18 73:21
76:8 77:18,21
123:18 136:2
143:16 149:3
**Tuesday**
3:4
**turned**
64:5
**turning**
14:11 97:4
**twice**
42:2
**two**
28:6 113:15 117:10
128:16 143:10,22
**type**
41:2 92:6,6 122:7,22
146:13
**types**
43:21
**T-A-T-Y-A-N-A-R**
150:24

---

**U**

**ultimately**
69:19 75:10
**unable**
155:24
**under**
5:11 35:11 62:4
118:19 131:6 134:4
160:12
**understand**
5:7,11,22,23 21:14
21:24 29:25 35:17
52:6 53:6,17 59:18
93:20 94:9 115:13
116:24 126:8 136:3
147:6
**understanding**
15:3 74:13 107:19,22
115:22 116:5
**understood**
44:7 119:6 144:16,17
**undertake**
51:6,6

**undertaking**
69:4
**unfortunately**
17:12,16
**unimportant**
122:10
**uninteresting**
122:11
**UNITED**
1:2
**unless**
16:3 22:19 27:23
41:4 70:25 71:7
160:11
**unrelated**
55:8,25 90:3 94:17
98:4 138:13 142:9
146:9
**until**
6:14 10:17 49:5
63:20 72:2
**up**
10:17 33:24 35:13,16
35:18 41:6 43:5
61:3 68:25 73:12
95:17,18 101:3
120:7 122:3 132:8
143:22
**updated**
60:18,23 61:2,7
**upon**
27:14
**upset**
73:25
**urge**
149:11
**us**
12:19 40:11 64:2
95:20 119:16,21,22
139:14 147:13
151:7,9,12
**use**
7:7,10,11,12,14 14:7
17:9,17,22 18:2,7
18:13,18 20:18 32:2
32:11,17,24 33:7


MAGNA
LEGAL SERVICES

52:15 76:14,16,19
84:3 92:7 127:16,17
127:20,21,22 131:6
**used**
13:23 32:4 83:24
99:12
**uses**
34:10,11
**using**
18:21 33:9 99:5
103:5 108:7
**U.S**
12:25

---
**V**
---

**vacant**
54:24
**Vadim**
30:6 86:14
**valid**
66:23
**variations**
96:22
**various**
104:10
**versus**
3:8
**very**
31:6 41:3 45:4 55:10
60:4,7 117:11 119:4
120:5 127:6 132:10
132:15 147:19
149:13
**Via**
2:6,17
**video**
3:6
**Videographer**
2:21 3:2,23 29:6,8
82:15,18 121:4,7
149:23 150:2 156:6
**Videotaped**
1:13
**virtual**
107:13 122:6,24
123:2

**Vladimir**
30:9 87:19

---
**W**
---

**wait**
6:14 101:13
**want**
5:5 10:2 11:8,10
21:24 23:8,10 34:5
35:17 40:9 47:21
51:17,19,24 52:2
53:18 54:9 58:12
71:18 73:25 78:3
79:16 80:3 81:24
83:15 93:19 94:8
96:9 99:11 111:14
116:24,25 118:10
126:7 135:16,24
137:9,15 138:5,8,14
154:20,22 155:11
155:12
**wanted**
64:2 104:11,19
128:11 129:15,16
135:6 136:19
**wasn't**
26:6 57:4
**watch**
69:17
**way**
45:6 46:7 53:14 65:8
77:18,24 93:11
130:15 134:18
141:4,5
**Wednesday**
128:25
**weeks**
142:21
**well**
17:13,15 60:7 62:25
65:11 67:15 95:25
100:24 104:5
109:16
**went**
59:8 93:7,16 95:21
111:4 131:13

145:25
**we've**
98:9 105:3 144:15,24
150:12 152:21
**whatever**
18:4 35:24 42:25
114:21 142:6,11
155:10
**whatsoever**
93:11
**what's**
12:17 69:16 97:18
126:5,6 128:20
135:16 138:17
139:2
**when**
4:24 7:4 9:15,17,19
10:3,5 12:7 13:23
14:8 17:13 21:21
29:21 33:9,11,12,23
36:13 37:11,16,19
38:2,15 40:15,18
43:4,5,8 46:2,16,22
47:12,14 58:18
66:19 94:2 97:6
98:15 103:16
107:12 108:9,16
109:11 110:8,10,11
110:15 111:7
114:11,20 118:15
119:7 122:8 124:10
131:18 132:5,22
133:5 134:7,12,15
135:4,6,6,6,8,16,18
135:18,19,20,20
136:7 140:8,10
141:16 142:2,18,19
143:4,16,17 144:5
144:15,18,21,25
**where**
21:22 24:8 40:10
73:11,13 83:23
92:10 95:15,16
100:8 113:16
117:25 122:3
127:25 151:21

**whether**
45:7 58:19 63:6,14
66:20 67:3,8 69:14
70:14,16 72:9 75:18
77:19,22 78:3,8,12
78:15 83:23 93:6
96:9 98:18 109:8
**which**
11:2 12:18 16:19,20
17:3,4 23:16,22
31:7,10 46:4 48:21
61:15 62:11 63:23
66:9 67:16 68:23
69:2 70:9,19 73:9
74:6,24 76:12 77:8
78:19 92:11 97:4
99:6,14 100:12,21
101:3 102:4 104:2
104:25 108:5 110:2
110:22 112:4
113:19 114:4
116:18,19 124:7,16
125:16 129:20
133:23 134:21
136:4 150:17 152:7
152:15
**while**
35:3
**who**
8:7,7,22 9:2,5,11
10:10,15,18,18
60:17 96:23 108:18
108:22,24 109:8
112:23 138:19
149:8
**whoever**
131:5
**whole**
41:6 138:10
**whose**
141:5
**why**
22:11,21 23:23 50:7
75:25 102:9,16
103:16 109:13,22
117:2,18 121:2


MAGNA
LEGAL SERVICES

**133:15 136:19
137:7 147:13 149:5
151:8,11,20 153:12
153:24 154:13
155:9,13,24**
**wide**
54:22,24
**will**
3:9,23 4:20,22 5:15
5:19,21,22,24,25
6:3,4,8,16 12:11,13
12:20 14:12 21:21
22:2 23:11,12,17,19
24:5,12 25:2,5,7,12
26:8,14,24 27:22,24
30:22 31:10,15 36:9
36:16,19 41:15,19
41:25 59:2 60:16
65:9 68:18 69:10
70:3,7,8,11,22,24
77:2 79:17 80:2
81:15 99:10,24
101:21 102:25
114:17 129:23
131:19 133:17
136:25 147:18
152:6
**willing**
67:2
**withholding**
66:23
**within**
9:21 24:2 112:15
**without**
34:18 53:12
**witness**
3:18,24 4:2 8:12 23:4
26:8,9,18 27:10,15
30:23 31:2 69:13,19
101:19 131:13
147:20 160:3,5
**Woodhaven**
72:22 83:3,6 102:11
103:4
**Woodhill**
27:2

**word**
73:17
**words**
12:6 116:11
**work**
18:25 19:4,8 21:3
43:5 56:11 108:9
137:14,17 139:7
140:3,6,12,18,19
141:25
**worked**
59:11 108:22 113:25
139:13,14
**working**
9:10,13 36:6 108:11
**works**
137:13 139:10
**world**
148:9
**would**
6:11,17 9:12,21,24
12:12 21:9 27:15
28:13,15 31:2,8
35:11,14 36:2 41:18
47:2,12 59:13,14
63:8,22 64:19,24
65:18 73:3,10 76:2
78:19 79:7 100:5
109:8 110:11
112:15,20 113:11
117:19 119:18,22
119:24,24 120:2,25
121:24 122:6,13,16
122:16 127:11,25
128:2,6 129:2,5,7,8
129:17,21 130:3,4,9
130:10,10 133:11
134:8,13,23 135:5
135:12,23,25 136:9
137:25 138:2
147:12,16 152:23
152:25 154:14,25
155:18,23
**wouldn't**
26:6 40:25 119:15,17
130:14

**wrap**
41:6
**Wray**
30:10 87:23
**writing**
50:11,15 67:6 153:23
**written**
76:2
**wrong**
111:15,15 149:10,11
**wrote**
24:19
**www.MagnaLS.com**
1:24

_____

|       X       |
| :---: |

**x**
1:4,10 77:7 157:3,10
158:3

_____

|       Y       |
| :---: |

**Yahoo's**
128:2
**Yahoo.com**
4:16,21 5:2 6:21
12:22 13:24 14:9,25
29:24 30:4,5 31:20
32:7,19 33:16 34:6
44:25 47:11,20 48:3
50:3,18,20 51:10,12
58:5 65:18 68:13
70:20 76:17 79:24
81:19 82:22 83:2,9
83:19 84:8,12 97:15
97:25 104:20
111:12 150:25
151:6 152:14
**Yan's**
129:22,24
**Yeah**
25:19
**year**
9:22
**years**
36:21 92:12 139:15
140:9

**Yenny**
30:12 88:24
**yet**
143:5
**YM**
18:23 32:21
**York**
1:3,15,15,15,17 2:5,5
2:12,12 12:25 30:17
39:14 90:9
**yourself**
56:15 93:8,16
**you're**
119:16
**you've**
11:9 40:21 147:6
148:22 154:16
**Yunusov**
30:11 88:14
**Yusupov**
30:8,9 87:7,8

_____

|       Z       |
| :---: |

**zero**
143:19
**Zoom**
2:6,18

_____

|       0       |
| :---: |

**039704**
11:17 16:9 157:14
**039705**
11:18 16:9 157:15
**07068**
2:17

_____

|       1       |
| :---: |

**1**
24:18 32:7 40:23
61:12,17 62:17
63:19 64:7,16,25
65:12,16 125:8
128:5,13 129:19,25
132:25 134:21
147:4 157:21
**1:07**



149:24
**1:21-cv-05523**
 1:7
**1:28**
 150:3
**1:35**
 156:7,9
**10:20**
 29:9
**100**
 126:12
**10020**
 2:5
**10038**
 2:12
**101**
 2:16
**1010**
 27:5
**103**
 157:25
**105**
 158:6
**11**
 157:13 159:6
**11:20**
 82:16
**11:46**
 82:19
**111**
 158:9
**114**
 158:12
**11545**
 12:25
**12:29**
 121:5
**12:34**
 121:8
**133**
 158:14
**15**
 14:18 33:13 49:20
    104:8,14,18,23
    111:13
**15th**

48:21 49:11,13,16,24
    104:2
**15,000**
 106:9,18 116:17,23
    117:4 121:18
    124:10,11 128:12
    131:19 132:24
**152**
 158:15
**16**
 33:13
**165**
 27:2 72:23 83:19
    102:12
**17**
 33:13
**17925**
 73:3
**18**
 115:2,7,14 116:12,16
    117:3 125:21 130:9
    147:11 149:7 151:8
    151:18 158:13
**190**
 27:5
**1910**
 26:15
**1963**
 25:6 72:20 79:5,25
    80:18 81:19,25
    97:16,24 98:10
    102:10 103:2
**1978**
 13:14

_____
2
_____
**2**
 40:24 61:22 112:8
    117:12 134:7
**2,000**
 117:19,20
**20**
 44:13 148:22
**201**
 2:16
**2016**

152:14
**2018**
 39:12,18
**2021**
 31:18 45:13,18 49:6
    49:21 118:20,22
    119:7 144:12,18
**2022**
 61:12,17 62:17 63:20
    64:8,16,25 65:12,16
    134:21 157:21
**2023**
 63:20 64:8,17 65:13
    65:17 67:23,25 68:5
    68:11,15,16 70:15
    70:18 71:16 72:2,3
    72:6,7 75:12 76:3
    97:20 98:12,16,20
    99:3,6 100:3 102:13
    102:17
**2024**
 9:25 14:14,18,20
    15:7,13,23 16:16
    104:8,14,18,23
    106:24 107:22
    109:16,20 111:13
    112:4 121:12
    123:18,22 124:19
    124:24 125:11,20
    126:14 131:21
    147:10 149:6
    150:12 151:17
**2025**
 64:25 115:2,7,14
    116:12,16 117:3,6
    125:21 130:10
    147:11 149:7 151:8
    151:18 158:13
**2026**
 1:15 3:5 160:7
    161:11
**24**
 49:5 110:4 124:24
**25**
 63:20 64:8,17,25
    65:12,13,16 67:25

68:11,15 70:15,18
 71:16 72:2,6
**25,000**
 148:21
**26**
 109:16,20 152:13
**26th**
 110:4
**27**
 62:10
**28**
 14:20 15:7 107:21
    117:5 121:12
    123:18,22 124:19
    124:24 125:10,20
    126:14 131:21
    147:10 149:6
    150:12 151:17
**28th**
 14:14
**29**
 27:6
**29th**
 27:6

_____
3
_____
**3**
 118:4
**30**
 35:23
**30(b)**
 23:18
**31**
 75:11
**31343**
 27:3
**321**
 27:7

_____
4
_____
**4**
 112:4 157:7
**40**
 35:24 132:15
**412-070424**
 150:19



**417**
 11:16 12:2,18 15:12
  16:8 157:13
**418**
 48:13,18 157:16
**419**
 61:9,15 63:24 64:20
  64:24 65:19 134:24
  136:5 157:19
**420**
 66:5,9 157:22
**421**
 72:11,16 97:4 157:23
**422**
 103:18,22 157:25
**423**
 105:10,15 108:6
  113:18 114:4
  116:20 125:2,9
  147:5 150:6 151:23
  152:22 155:19
  158:6
**424**
 111:16,21 112:21,24
  113:12,18 114:4
  158:9
**425**
 114:24 115:5 158:12
**426**
 133:19,23 158:14
**427**
 152:7,9 153:7 154:9
  155:13 158:15
**43**
 27:7
**48**
 157:16

———————————
5
———————————
**5**
 45:13,18 76:3 97:20
  98:11,16,20 99:3,6
  100:3 102:13,17
**5/26/2016**
 150:23
**50**

**1:14 2:5**
**516**
 14:4
**523**
 119:20
**55-B**
 27:3
**57**
 159:6
**59**
 2:12

———————————
6
———————————
**6**
 1:15 3:4 160:7
**61**
 157:19
**624-6221**
 1:24
**63-34**
 97:24
**63-36**
 27:2 72:22 83:10
  92:11 97:16 98:11
  102:11 103:4 146:8
**65**
 103:4
**65-55**
 26:25 72:22 83:4,6
  102:11 103:3
**66**
 157:22

———————————
7
———————————
**7**
 13:14
**72**
 157:23

———————————
8
———————————
**8**
 12:24 67:23 68:5,16
  72:3,7 144:9 150:6
**84,413**
 14:15 15:7 124:20
**866**

**1:24**

———————————
9
———————————
**9**
 62:11
**9:53**
 1:15 3:5
**902-0001**
 14:4
**910**
 72:21 82:22 102:10
  103:3 146:15
**9220**
 27:2 72:23 83:19
  102:12
**9221**
 103:4
**99th**
 146:8
**9901**
 27:4



MAGNA
LEGAL SERVICES