July 24, 2026

**VIA ECF**

Magistrate Judge Peggy Kuo
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

**Re:**    *State Farm Mut. v. Metro Pain*, **1:21-cv-05523 - Joint Ltr. re Discovery Dispute**

Dear Judge Kuo:

Pursuant to this Court's Individual Practice Rule VI.A.1, plaintiffs State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company (collectively, "Plaintiffs") and defendants Vadim Dolsky ("Dolsky") and Optimum Health Acupuncture P.C. ("Optimum") (collectively, "Defendants"), respectfully write to request the Court's assistance regarding electronically stored information ("ESI") and other discovery. Per the Court's order dated March 6, 2026, fact discovery is set to close on July 24, 2026, and thus the parties wish to raise with the Court the final remaining issues requiring judicial intervention ahead of that deadline.[1]

**PLAINTIFFS' POSITION**

Plaintiffs write to request a Court order directing Defendants to address a series of long-standing discovery issues to ensure compliance with the revised case schedule entered March 6, 2026 (Dkt. 723), which was formulated to ensure fact discovery could be completed by the new fact discovery cutoff of July 24, 2026. Defendants should be ordered to: (1) produce a complete privilege log reflecting any document withheld and the bases for doing so; and (2) produce all gold bullion identified in Dolsky's asset inventory for inspection on a single day, and schedule the inspection of all assets on dates within 21 days of the filing of this letter. Based on the upcoming close of fact discovery, Defendants should be required to complete these tasks by the deadlines set forth below.

**Background**: Defendants' compliance with discovery has been heavily litigated. On April 28, the Court ordered Defendants to produce all documents for which they were withdrawing a claim of privilege by May 8 and a revised privilege log by May 15. Separately, on February 27, the Court ordered Defendants to schedule an inspection of the Assets by March 15. On May 21, the parties convened for the mutually agreed upon inspection of all Assets at the offices of Dolsky's counsel, and Dolsky produced only a small fraction of the gold bullion and luxury watches and none of the pieces of jewelry identified on the inventory of Assets Dolsky produced in this case (the "Asset Inventory").

**Privilege Log:** Since the Court's order on April 28, Defendants have produced multiple supplemental privilege logs. However, these supplemental privilege logs fail to account for all documents withheld or redacted. On July 2, Plaintiffs sent a letter to Defendants identifying this issue and further met and conferred with counsel for Defendants about it on July 15.

---

[1] The parties respectfully seek leave *nunc pro tunc* to submit this oversized brief. Additional pages are required due to the history and complexity of the issues raised herein.

Counsel for Defendants is further reviewing and has agreed to produce a final complete privilege log. To ensure the timely advancement of discovery, Plaintiffs seek an order requiring Defendants to produce a completed amended privilege log identifying by Bates number each redacted or withheld document and related information necessary to evaluate the basis for privilege by August 7, 2026.

**Asset Inspection**: On May 21, Plaintiffs appeared for the Court-ordered inspection of all Assets. However, only upon arrival did Dolsky inform Plaintiffs that not all of the Assets had been brought for inspection and that another inspection would need to be scheduled to inspect the remainder of the Assets. Indeed, Dolsky produced only 15% of the gold bullion, six of 39 watches, and none of the 18 pieces of jewelry identified on the Asset Inventory. Further, upon inspection by Plaintiffs' expert, it became clear that certain of the Assets that had been produced only in part, namely the gold bars, had been altered in such a way that they had no specific identifying information (*i.e.*, a serial number, stamp, etc). Since May 21, Plaintiffs have endeavored to schedule the inspection of the remaining Assets. In seeking to so schedule, Plaintiffs have requested that all of the gold bullion be inspected on a single day, as the lack of identifying information would make it easy for the same gold bars to be produced at more than one inspection. Plaintiffs experts have advised that based on what they have seen of the gold in the initial inspection, and the absence of sufficient identifying marks, the only way to confirm the same items are not being presented more than once is to see all of the items at one time. After multiple overtures to Defendants, counsel for Defendants finally advised on July 15 that Dolsky would only agree to produce the gold over the course of two days "due to the weight of the gold and for security reasons." Indeed, Dolsky Defendants' true concern seems to be that if all the gold bullion is gathered in one place, it will be seized by law enforcement for some unarticulated reason. But even if this concern were legitimate, spreading the inspection over two days would do nothing to alleviate it. Moreover, these vague justifications do nothing to allay Plaintiffs' concerns about producing the same unmarked gold bars multiple times. As Plaintiffs have alleged multiple times in the numerous filings relating to the Assets, Plaintiffs, through analysis of financial transactions, have traced funds from numerous other defendants in this case[2] as moving to Dolsky's entity Five Star Services, Inc. ("Five Star") for dubious services, then transferred into a web of 15 personal accounts held by Dolsky, and then used to purchase more than $26 million in Assets. These Assets are essentially untraceable and determining their location and legitimacy is critical evidence supporting Plaintiffs' allegations of lay ownership and extraction of profits from the alleged scheme. If Dolsky has significantly less gold than the invoices he has produced show that he has purchased, this would support Plaintiffs' argument that these assets are being used to extract money from the scheme in an untraceable manner. Plaintiffs request that this Court enter an order requiring Dolsky to present all gold bullion for inspection in one day and that such inspection take place by August 14, 2026. Dolsky has agreed to produce all luxury watches and jewelry on one date for inspection, and Plaintiffs respectfully request the Court order that inspection to take place by August 14, 2026. Further, the Court has already addressed the issue of responsibility for the

---

[2] Defendants sending money to Five Star include the following: Advanced Comprehensive Laboratory LLC, Citimed Management Services Inc., Citimed Surgery Center LLC, Dynamic Surgery Center LLC, HealthPlus Surgery Center LLC, NJMHMC LLC, Medaid Radiology LLC, Optimum Health Acupuncture P.C., SCOB LLC, and Star Solution Services Inc.

cost of the Asset inspection, and thus Plaintiffs respectfully request the Court deny Dolsky Defendants' request for reimbursement.

**DEFENDANTS' POSITION**

**Privilege Log:** This office on behalf of Dolsky has produced nearly a half a dozen updated privilege logs reviewing thousands of documents again and again, removing dozens, if not hundreds, of privilege claims by prior counsel for Dolsky this office did not think were warrant, removing dozens and dozens of redactions, repeating the same when faced with continued objections from plaintiff's counsel as to continued redactions, and spending many, many hours in the process. Plaintiff's counsel has identified certain items claimed as privileged by prior counsel on their January 2026 privilege log and not listed as privileged on our July 16 privilege log but for which the documents were not produced. We are currently analyzing the discrepancy of the work done by our firm and prior counsel to produce a final privilege log. As the attorneys on this case are on trial next week, we would request August 14, 2026 to produce but otherwise agree

**Asset Inspection**: The first asset inspection occurred on May 21. Prior to that time, this office had notified Plaintiff's office that the inspection may need several days as the amount and weight of the gold in particular made it difficult to transport securely and practically and Dolsky was extremely worried about the security of his items and that it might be stolen as it represented potentially millions of dollars in value. Plaintiff's gold expert came without the proper scales to weigh gold of that weight (despite the weight being disclosed) or the proper equipment to test its purity/carat, and did at best a cursory inspection of what was produced. Nevertheless we offered to produce the gold over three or four inspections and pay reasonable costs of the experts extra time (Counsel for State Farm never followed up on this offer). Since May 21, there have only been a handful of discussions about the gold. Plaintiff's counsel had some wild theories that the gold could be melted and changed in weight in between inspections so that no matter what weight was brought any time, they would not be satisfied even though this could all be explored by questioning Dolsky under oath at his deposition. In any case, assets, documents, etc are at risk at being destroyed, altered etc. in theory and we guard against this by questioning witnesses under oath. State Farm seems almost paranoid about this and Dolsky is equally untrusting of State Farm and its representative. With great effort, we convinced our client to agree to produce all the jewelry and watches not produced prior in one visit at our offices, which is across the street from State Farm's watch expert. As for the gold, due to the weight, the practicality of producing that much gold at once (the bars are extremely heavy) and his security concerns of producing millions of dollars of gold at once, he agreed to produce it over two (2) inspections. Plaintiff has rejected that reasonable request. State Farm's position is also misleading. The gold was melted down from loose gold into bars long ago. State Farm makes it sound like the bars were altered but the bars were never altered. The bars never had any serial numbers or stamps. That is their natural state. Besides the differences in weight, each one looks different. The melting process produces differing swirls similar to fingerprints, as well as blotches from where the gold cooled and stuck to the molds. State Farm's photographer took pictures of the bars produced already and can easily see the difference between different bars. Their concern of melting down two five kilo bars, for example, to make one ten on a later inspection is paranoia but also subject to Dolsky being questioned at a deposition under oath, with all the associated penalties for lying under oath that

3

come with it.[3] Dolsky submits that two inspections for that much gold is reasonable and can be separated by weight.  To the extent the court orders one day to produce it, which will be very difficult to do, Dolsky requests written assurances that State Farm and its counsel will not work with the government or any other entity to seize the assets/gold and that he be reimbursed for the cost of transporting and security for all that gold at once.  Dolsky agreed to produce the jewelry and watches on one date but seeks dates in the second week of September for any production of assets (September  8 or later). Plaintiff  moved Dolsky's deposition several times causing havoc with his travel plans and he plans to be travelling most of August. The Dolsky deposition of August 5 was scheduled and agreed to by Dolsky to accommodate  State Farm's counsel's vacation plans in August and Dolsky asks for the same courtesy.

---

[3] Plaintiff mischaracterizes the source of the money for the gold, all of which Dolsky will confirm came from personal monies, paid for by him and not his companies, and properly taxed

Respectfully Submitted,

By: /s/ *Jonathan L. Marks*

KATTEN MUCHIN ROSENMAN LLP

Jonathan L. Marks
Sarah M. Scruton
525 West Monroe Street
Chicago, Illinois 60661-3693
Telephone:  312.902.5200
Facsimile:  312.902.1061
jonathan.marks@katten.com
sarah.scruton@katten.com

Christopher T. Cook
50 Rockefeller Plaza
New York, New York 10020-1605
Telephone:  212.940.8800
christopher.cook@katten.com

*Attorneys for Plaintiffs State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company*

By: /s/ *Robert Hewitt*

SCHWARTZ, CONROY & HACK P.C.

Robert Hewitt
Matthew Conroy
666 Old Country Road, Suite 900
Garden City, New York 11530-2020
516.745.1122
reh@schlawpc.com
mjc@schlawpc.com

*Attorneys for Defendants Vadim Dolsky and Optimum Health Acupuncture P.C., and non-parties All Star Services Inc. and Five Star Services Inc.*